UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **RASHAD WALSTON,** on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br>v.<br><br>**NATIONAL RETAIL SOLUTIONS, INC. D/B/A NRS PAY,**<br><br>Defendant. | Case No.: 2024-cv-83<br><br>Judge Harjani |

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO ENFORCE SETTLEMENT**

Defendant moves to enforce a non-existent settlement agreement because, short of accepting accountability, Defendant has few other options. There was no settlement, or even anything resembling a settlement, agreed to by the Parties. Defendant's January 3 letter in response to a long-expired and rejected settlement demand was unquestionably a counteroffer which was rejected. Its attempt to reframe this January 3 letter as an acceptance of a *different* demand is neither factually based nor helpful to Defendant, as the letter does not actually accept anything.

Defendant knows all of this. It has litigated this case for five months, serving numerous discovery requests and even taking Plaintiff's deposition, all the while remaining completely silent as to any belief that this case had settled. As recently as May 20, in a status report filed with the Court addressing the possibility of settlement, Defendant simply stated it had no interest in a class wide settlement, omitting any

1

indication of a belief that this case had already settled. Such an omission is inexplicable unless Defendant's "belief" is treated as the recent fabrication that it is.

In any event, neither the law nor public policy supports Defendant's Motion here. It should be denied in full.

## **BACKGROUND**

Defendant placed prerecorded telemarketing calls to Plaintiff without his consent. Fed up, on October 19, 2023, Plaintiff, then *pro se*, sent a letter addressed to Defendant's COO, Eli Korn, demanding that the calls stop and asking for $9,800 for Defendant's violations of the Telephone Consumer Protection Act ("TCPA") ("October 19 Demand"). The October 19 Demand expressly required acceptance *within five days of delivery*. [Dkt. 22-1, pp. 6-8.] ("October 19 Demand.")

This letter was delivered on October 23, 2023, and the demand therefore expired, by its terms, on October 28, 2023. Ex. A. Defendant did not contact Plaintiff until Defendant's CEO, Elie Katz, called Plaintiff on November 13, 2023—more than two weeks after the demand had the demand had expired.

On that November 13, 2023 telephone call, Defendant orally offered Plaintiff $800 to settle his claims. [Dkt. 22-1 p. 3, Declaration of Elie Katz ("Katz Decl."), ¶ 8.]

As Defendant acknowledges, Plaintiff orally rejected this $800, and instead countered by demanding some amount between $3,000 and $5,000 ("November 13 Demand"). Mr. Katz rejected this demand, stating he—again, Defendant's CEO—did not have authority to do anything more than $800. In Plaintiff's own testimony, "[h]e made it seem like that was it, $800.00 flat, that's it." [Dkt. 22-2, 125:16-127:2.] The Parties

2

concluded this conversation with no deal and no outstanding offers or demands, but did express optimism for conversations in the immediate future. No such conversations occurred.

On November 21, 2023, Plaintiff retained current counsel.[1]

Between November 21, 2023 and January 3, 2024, Defendant and Plaintiff's counsel had numerous conversations regarding the possibility of litigation. In hopes of avoiding litigation, or at least distilling the issues, Plaintiff repeatedly requested, and Defendant repeatedly agreed, to provide information regarding Plaintiff's consent (or lack thereof) and the calls to Plaintiff. There was no discussion between the parties of settlement during this time. After numerous delays in providing the promised information, Plaintiff gave an ultimatum of January 5, 2024, on which date he would file his lawsuit.

On January 3, 2024, rather than provide the information it had repeatedly promised, Defendant's then-counsel, Alison Ellis of Holland & Knight, informed Plaintiff's counsel that she had "authority … to accept Mr. Walston's settlement demand of $9,800 … contingent upon Mr. Walston's executing a written agreement containing full releases of his claims, confidentiality provisions, and other customary terms." [Dkt. 22-3, p. 18, Ex. B.] ("January 3 Letter"). Ms. Ellis then <u>asked for Plaintiff's confirmation</u> that the aforementioned terms were acceptable, at which point she would "circulate a proposed settlement agreement for Mr. Walston's review and endorsement." *Id*. Plaintiff's counsel

---

[1] If Plaintiff believed an offer was still outstanding and he was simply waiting for Defendant to get back to him—the fictional narrative Defendant implores this Court to believe—it would objectively be odd to hire counsel without further conversation.

3

responded that day, in writing, confirming what Defendant already knew: that all settlement offers had been withdrawn. [Dt. 22-3, p.19, Ex. B.]

Since then, and until the Motion to Enforce, Defendant has remained completely silent about any belief it held that a settlement had been reached. *Not once* did it try to tender the payment it now claims it has owed since January. *Not once* did it send Plaintiff a written document memorializing the terms of this supposed agreement. In fact, the Parties *filed a status report just last week in which settlement was expressly addressed*, and the most Defendant could muster was "at this point, Defendant does not have any interest in class-wide settlement." [Dkt. 21.] One would think that if Defendant believed what it now asks the Court to believe, it would have said *something*.[2]

## **LEGAL STANDARD**

Under Illinois law, "a contract requires an offer, acceptance, and a meeting of the minds as to the material terms." *Dillard v. Starcon Int'l, Inc.*, 483 F.3d 502, 506 (7th Cir. 2007). "It is well-settled that in order to constitute a contract by offer and acceptance, the acceptance must conform exactly to the offer." *Finnin v. Bob Lindsay, Inc.*, 366 Ill. App. 3d 546, 548 (3d Dist. 2006). "An acceptance requiring any modification or change in terms constitutes a rejection of the original offer and becomes a counteroffer that must be accepted by the original offeror before a valid contract is formed." *Id.* "It matters not how minor the deviation." *Nomanbhoy Family L.P. v. McDonald's Corp.*, 579 F. Supp. 2d 1071, 1093 (N.D. Ill. 2008). "A rejected offer cannot be revived by a later acceptance." *Sementa*

---

[2] This is *not* a matter of Defendant's current counsel only recently becoming aware of actions taken by Defendant's previous counsel. Plaintiff's counsel raised, on *several* occasions, his frustration with Defendant's January 3 attempt to pick off Plaintiff. *See, e.g.*, Ex. B.

4

*v. Tylman*, 230 Ill. App. 3d 701, 705 (2d Dist. 1992); *see also Nomanbhoy Family L.P.*, 579 F. Supp. 2d at 1093 ("[O]nce rejected, the offer is extinguished and any subsequent attempt to accept is inoperative.").

## DISCUSSION

Defendant's Motion is easily dispatched by these basic, fundamental principles of contract formation. But apart from these fundamental flaws, Defendant's misuse of pre-litigation settlement conversations should not be encouraged. A defendant should not be permitted to back-pocket settlement conversations, spend five months litigating a case—including taking Plaintiff's deposition—and, when the case does not go as it hoped, say "just kidding, this was already settled."

There was no settlement. Defendant did not believe there was a settlement. Plaintiff did not believe there was a settlement. Defendant's Motion is a ploy to either delay the case or inject confusion and should be treated accordingly.

**I.    Defendant's January 3 Letter Related to the Expired and Rejected October 19 Demand.**

Plaintiff's October 19 Demand expressly required a response within five days of delivery. [Dkt. 22-1, p 7.] ("Should you decline [this offer to settle], or fail to respond within 5 days from its time-tracked delivery … I reserve the right to pursue civil action[.]")The Demand was delivered on October 23, 2023. Ex. A. Under Illinois law, "[e]very person has the right to dictate the terms upon which he will contract and the proposer may limit the time for acceptance." *Johnson v. Whitney Metal Tool Co.*, 342 ll. App. 258, 265 (1950). "An

5

acceptance after the time limited in the offer … will not bind the party making the offer and imposes no obligation upon him." *Id.*

Therefore, the October 19 Demand gave Defendant until October 28, 2023 to respond. Both Defendant's first post-Demand contact and its January 3 Letter came well after this expiration.

Furthermore, when Defendant first contacted Plaintiff about the October 19 Demand on November 13, it, by its own admission, made a counteroffer. [Dkt. 22-1 p. 3, Katz Decl., ¶ 8.] "Under Illinois law, a counteroffer operates as a rejection of the original offer and the counteroffer must then be accepted before a contract exists." *AGA S'holders, LLC v. CSK Auto, Inc.*, 467 F. Supp. 2d 834, 847 (N.D. Ill. 2006). "A rejected offer cannot be revived by a later acceptance." *Sementa*, 230 Ill. App. 3d at 705.

Despite the fact the October 19 Demand was no longer live, Defendant's January 3 Letter clearly relates to this Demand. To believe otherwise requires acceptance of two facially absurd premises.

First, it requires accepting that when the January 3 Letter references "authority … to accept Mr. Walston's settlement demand of $9,800", Dkt. 22-3, p. 18, it was actually referring to Plaintiff's November 13 Demand of $5,000. [Dkt. 22, p. 6.]; *see also* [Dkt. 22-1 p. 3, Katz Decl., ¶ 9.] (Plaintiff "said he needed at least $5,000 to resolve his claims.") This makes little sense. If Defendant had intended its January 3 Letter to respond to the November 13 Demand of $5,000, why would it reference a demand of $9,800? *Even if* it intended to pay more than the $5,000 demanded, would it not instead express "authority

6

to accept Mr. Walston's settlement demand of $5,000, and as a show of good faith, is willing to do this by paying $9,800", or something to that effect?

Second, it requires accepting that Defendant, an arm of a publicly-traded company with a fiduciary duty to shareholders, which purportedly required its CEO to get authority to pay anything over $800, sought to accept a demand of $5,000 by agreeing to pay $9,800—which happens to be the exact amount of the long-expired October 19 Demand. Saying this strains credibility is charitable.

The simpler (and only plausible) explanation is that Defendant's January 3 Letter related to Plaintiff's October 19 Demand. Defendant's contention to the contrary is a recent fabrication borne out of necessity rather than reality. Though this fabrication does not help the merits of Defendant's Motion, it nevertheless lays bare the faith in which the Motion is brought.

## II. Defendant's January 3 Letter Did Not Create a Settlement.

While the January 3 Letter clearly relates to the October 19 Demand, Defendant's Motion fares no better as a response to the November 13 Demand. Not only was the November 13 Demand no longer live and able to be accepted, the January 3 Letter did not actually accept it. It instead only expressed the "authority" to accept a demand on terms that did not mirror Plaintiff's November 13 Demand.

### a. The November 13 Demand was not able to be accepted.

On November 13, 2023, Defendant's CEO called Plaintiff and offered Plaintiff $800 to resolve his claims. [Dkt. 22-1 p.3, Katz Decl., ¶ 8.] Plaintiff rejected this offer and made

7

his second demand of at least $5,000.[3] [Dkt. 22-1 p. 3, Katz. Decl., ¶ 9.] Mr. Katz replied that Defendant could not afford that type of settlement, thereby rejecting the demand. [Dkt. 22-2 p. 5, Transcript of Deposition of Rashad Walston "Walston Depo. Tr."), 124:17-23.] Defendant does not contradict this testimony in its Motion or the accompanying material. While Defendant claims it intended to obtain authority to reach Plaintiff's demand, Dkt. 22 p. 5, Plaintiff testified instead that Mr. Katz "never said he's going to check to get authority…. He made it seem like that was it, $800.00 flat, that's it."[4] [Dkt. 22-2, pp. 6-7, Walston Depo Tr., 125:16-126:2.]

Accordingly, at the conclusion of the November 13 call, Plaintiff's $9,800 demand had expired (or been rejected); Defendant's $800 counter had been rejected; and Plaintiff's $5,000 demand had been rejected. There was nothing outstanding for Defendant to accept.

      b. <u>The January 3 Letter was not an acceptance.</u>

Defendant's Motion still fails even if Plaintiff's November 13 Demand remained live. Defendant's January 3 Letter informed Plaintiff of the *authority* to accept a settlement demand, contingent upon other terms, rather than *actually accepting* the Demand. The letter also did not mirror Plaintiff's November 13 Demand.[5]

---

[3] Plaintiff testified he may have thrown out amounts of $3,000, $4,000, or $5,000. [Dkt. 22-2, p. 5, Walston Depo. Tr., 124:3-8.] Because this does not change the analysis, however, Plaintiff does not contest that the November 13 Demand was for $5,000.

[4] Defendant's contention regarding authority raises the question of who, if not the CEO, had authority to commit to a settlement of $5,000. It seems more likely that "lack of authority" was a negotiating ploy, as Plaintiff suggested in Plaintiff's sworn deposition testimony. *Id.* at 125:17-126:2.

[5] Nor did it mirror Plaintiff's October 19 Demand, but for the reasons discussed previously, Plaintiff only need address the January 3 Letter vis-à-vis the November 13 Demand.

8

### i. The January 3 letter claimed authority to accept a demand but it did not accept anything.

"To create an enforceable contract, there must be an unequivocal acceptance." *Vincent Di Vito, Inc. v. Vollmar Clay Products Co.*, 179 Ill. App. 3d 325, 329 (1st Dist., 1989); *see also Bankcard Am. v. American Timeshare Assocs.*, 1994 U.S. Dist. LEXIS 12205, *18 (N.D Ill. Aug. 29, 1994). "There can be no contract where the offeror cannot reasonably treat the offeree's response as an acceptance." *Vincent Di Vito*, 179 Ill. App. 3d at 329. Problematic for Defendant is that at no point does the January 3 Letter unequivocally accept anything. Instead, it says that Defendant's then-attorney "ha[d] authority … to accept Mr. Walston's settlement demand of $9,800." [Dkt. 22-3, p. 18.]

Having authority to accept an offer is not the same as actual acceptance, nor did Defendant think it was. As it wrote on January 3, 2024 at 2:40 pm Eastern: "[r]ather than argue over contract law, our client is making a good faith effort to resolve the dispute without litigation… <u>Please confirm that you have relayed our good faith **settlement offer** of $9,800 to your client.</u>" Ex. C (underlining in original; bold and italics added).

Furthermore, as discussed below, Defendant's January 3 Letter was expressly contingent upon additional terms. [Dkt. 22-3, p. 18.] "A conditional acceptance does not constitute an acceptance; rather, a conditional acceptance is effectively a counteroffer." *USA Satellie & Cable, Inc. v. MacNaughton*, 2018 U.S. Dist. LEXIS 16835, *4 n.3 (N.D. Ill. Jan. 9, 2018) (citing *Deere & Co v. Ohio Gear*, 462 F.3d 701, 707 (7th Cir. 2006)). A counteroffer rejects the offer to which it responds. *See e.g. Finnin*, 366 Ill. App. 3d at 548.

### ii. The January 3 letter did not mirror Plaintiff's November 13 Demand and was thus at best a counteroffer.

9

"Under Illinois law, a response to an offer to enter into a contractual relationship that does not comply strictly with it – that is, that is not the 'mirror image' of the offer – is not an acceptance, but a counteroffer. It matters not how minor the deviation. And once rejected, the offer is extinguished and any subsequent attempt to accept is inoperative." *Nomanbhoy Family L.P.*, 579 F. Supp. 2d at 1093. Illinois courts require strict compliance with this rule. *Finnin*, 366 Ill. App. 3d at 549. Indeed, even a change as minor as correcting inaccurate date of acceptance precludes formation of a contract. *Id.* (discussing *Whitelaw v. Brady*, 3 Ill. 2d 583 (1954)). While some other states require a change to be material in order to constitute a counteroffer rather than acceptance, Illinois rejects this approach. *Id.* at 550. Defendant's January 3 Letter failed to mirror Plaintiff's November 13 Demand in multiple ways.

For starters, Defendant's offer to pay $9,800 *cannot* constitute an acceptance of Plaintiff's November 13 Demand for $5,000, because the amounts are not mirror images. To be clear, very few cases—if any—discuss the mirror image rule in the context of a response to a demand that is ostensibly more favorable than the demand itself.[6] There is nothing in the mirror image rule, however, that admits of an exception for differences that a third party might consider more favorable.

While it is presumably true that most people would accept a counteroffer for *more* money than what was demanded,[7] assuming everything else is the same, what "most

---

[6] Because this does not happen, it further highlights the absurdity of Defendant's position that it gratuitously sought to pay Plaintiff 96 percent more than the demand it claims to have accepted.
[7] This is not, however, a foregone conclusion. There are numerous reasons one might prefer a lower dollar amount, such as reporting requirements (e.g. to the IRS), financial planning, or avoiding the reduction or loss of certain income-based benefits.

10

people" would do is irrelevant. The recipient of the counteroffer retains the agency to accept or reject that offer, and it is not the role of the attorneys or the Court to substitute the hypothetical judgment of "most people" for that of the counteroffer recipient. An "acceptance" on different terms remains a counteroffer which "constitutes a rejection of the original offer … that must be accepted by the original offeror before a valid contract is formed." *Finnin*, 366 Ill. App. 3d at 548. It does not, cannot, and should not matter that those different terms appear to be more favorable. The only opinions that matter are the opinions of those with the authority to accept or reject a given offer.

Defendant's citation to *Dillard* does not help it. In *Dillard*, the plaintiff stated he "would not accept less than $65,000." 483 F.3d at 505. The defendant responded by agreeing to pay $65,000. *Id.* The acceptance mirrored the amount, and therefore did not create an issue with respect to the mirror image rule.

Beyond the differing amounts, Defendant's January 3 Letter expressly makes any settlement "contingent upon [1] Mr. Walston executing a written agreement containing [2] full releases of his claims, [3] confidentiality provisions, and [4] other customary terms." [Dkt. 22-3, p. 18.] The January 3 Letter also implicitly requires that [5] Plaintiff accept Defendant's disclaimer of "liability to Mr. Walston under the TCPA[.]" *Id.* Finally, the letter requires [6] Plaintiff's confirmation, stating "upon your confirmation, I will circulate a proposed settlement agreement…" [8] *Id.* None of these additional terms mirror the

---

[8] Once again, if Defendant believed the January 3 Letter completed a settlement, there would be no need to circulate a "proposed" settlement agreement.

November 13 Demand, which simply demanded $5,000, nor have any of them been accepted.

Defendant half-heartedly attempts to avoid this issue by claiming in the self-serving Katz Declaration that Plaintiff said on the November 13 call that he was fine with confidentiality.[9] [Dkt. 22-1 p. 3, Katz Decl., ¶ 9.] Hearsay issues aside, this only addresses one condition of Defendant's January 3 Letter. The other conditions and differences remain.

Accordingly, Defendant's January 3 Letter was, at best, a counteroffer that Plaintiff did not accept.

### III. Public Policy Disfavors Defendant's Conduct Here.

Though basic contract law disproves the existence of any settlement here, public policy is in accord. Defendant correctly notes that "[v]oluntary resolution of litigation, through settlement, is favored by courts." *Steadfast Ins. Co. v. Auto Marketing Network, Inc.*, 2004 WL 906118, *4 (N.D. Ill. Apr. 28, 2004). Axiomatically, then, if *settlement* is favored, *settlement discussions* are favored. Defendant's approach here of litigating a case for five months to see which way the winds are blowing and then attempting to enforce preliminary discussions as if they amounted to a binding settlement discourages such discussions. It is difficult to imagine any potential plaintiff or plaintiff's counsel wanting to engage with Defendant pre-litigation after learning of Defendant's motion here.

---

[9] Plaintiff reiterates that his October 19 Demand specifically asked that all communications be in writing, precisely to avoid the he said-she said argument Defendant makes here.

12

In fact, presumably for these reasons, one court strongly criticized a defendant for doing just what Defendant here attempts to do. In *Sharp v. Keeling*, defendants sought to enforce a settlement agreement based on discussions held with a *pro se* litigant. 2019 U.S. Dist. LEXIS 70025 (S.D. Ill. Apr. 25, 2019). The court found that even though there was an agreement on the monetary amount (which is already a step beyond what we have here), defendants "predicated that acceptance on two more material terms: no admission of liability by the defendants and a non-disparagement clause in the release." *Id.* at *5. Under Illinois law, this served to reject the original offer and became a counteroffer. *Id.* The court concluded by denying the motion to enforce and strongly criticizing defendant, writing "[w]hile the Court understands that negotiating with pro se litigants with no formal legal training can be frustrating at times, the approach that the defendants took here—filing a sealed motion with the Court to enforce a settlement in which there was never a valid contract in the first place—is not to be encouraged." *Id.* at 6 (also noting that defendants' approach had "mucked up" the case schedule); s*ee also McKinney v. Holme*s, 2021 U.S. Dist. LEXIS 243030, *6 n.2 (D.N.J. Dec. 20, 2021) (finding a party that continued to litigate a case without invoking a supposed settlement, thereby consuming the resources of the parties and the court, was judicially estopped from enforcing a supposed settlement agreement).

## **CONCLUSION**

Plaintiff respectfully requests that Defendant's Motion to Enforce be denied in full.

13

Dated: June 3, 2024

s/ Jeremy M. Glapion

Jeremy M. Glapion
The Glapion Law Firm, LLC
1704 Maxwell Drive
Wall, New Jersey 07719
Tel: 732-455-9737
Fax: 732-965-8006
jmg@glapionlaw.com

Counsel for Plaintiff and the Putative Classes