**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| **RASHAD WALSTON,** on behalf of himself and all others similarly situated,<br><br>                       **Plaintiff,**<br>        **v.**<br><br>**NATIONAL RETAIL SOLUTIONS, INC. D/B/A NRS PAY,**<br><br>                    **Defendant.** | Civil Case No.: 24-cv-83<br>District Judge: Hon. Sunil R. Harjani<br>Magistrate Judge: Hon. Jeffrety T. Gilbert |

Formatted: Left

**FIRST AMENDED CLASS ACTION COMPLAINT**

**INTRODUCTION**

1.      This action arises out of Defendant National Retail Solutions, Inc.'s ("NRS") prerecorded telemarketing telephone calls to cellular telephone numbers without the prior express written consent of the ~~recipient~~called party, in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227(b).

2.      Plaintiff Walston was one such ~~recipient~~called party.

3.      Despite never providing his telephone number or having any interaction with NRS, Defendant placed multiple prerecorded telemarketing calls to his cellular telephone number soliciting him to use its point of sale ("POS") system.

~~2~~4.      Defendant did so by utilizing the services of a third-party marketing firm, Infolink Communications Ltd. d/b/a VoiceLogic ("VoiceLogic"), to which it provided the telephone numbers to be called, the prerecorded voice files to be used on those calls, and instructions on how and when to place those calls.

**JURISDICTION AND VENUE**

~~3~~5.      This Court has subject matter jurisdiction under 28 U.S.C. § 1331, as this action arises under the TCPA, which is a federal statute.

~~4~~6.      The Court has personal jurisdiction over Defendant because Defendant conducts significant business in this District and committed tortious acts directed at this District.

~~5~~7.      Venue is proper in this District because Defendant conducts significant amounts of business transactions within this District, because some of the wrongful

1

conduct giving rise to this case occurred in and was directed to this District.

**PARTIES**

6.8.    Plaintiff is, and at all relevant times herein was, a resident of Chicago, Illinois.

7.9.    Plaintiff is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

8.10.    Plaintiff is, and at all times mentioned herein was, the "called party" with respect to the telephone number at issue herein, 773-###-4088.

9.11.    Defendant NRS is, and at all times mentioned herein was, a Delaware corporation headquartered at 520 Broad Street, Newark, NJ 07102.

10.12.    Defendant NRS is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

11.13.    Defendant NRS is, and at all times mentioned herein was, a division of IDT Corporation.

~~FACTUAL ALLEGATIONS~~CALLS TO PLAINTIFF

12.14.    Plaintiff's telephone number is 773-###-4088.

13.15.    Plaintiff's telephone number is and was a cellular telephone number.

14.16.    Plaintiff is the regular user of this telephone number.

15.17.    Plaintiff received prerecorded voicemails from Defendant on at least the following dates:

- March 7, 2022

- May 19, 2022

2

- August 8, 2022

- March 20, 2023

- May 4, 2023

- July 31, 2023

- October 12, 2023

~~16.~~18.  All the above calls were prerecorded rather than a live person leaving a voicemail.

~~17.~~19.  Plaintiff knows that these calls were prerecorded due to his familiarity with normal human mannerisms, speaking, and intonations, as well as through comparison of the messages.

~~18.~~20.  For example, the March 20, 2023 and May 4, 2023 voicemails are literally identical—not just in terms of content, but in terms of background and ambient noise, inflections, pauses, etc.

~~19.~~21.  Specifically, the March 20, 2023 voicemail is 42 seconds long and states:

Hi, this is Alex from NRSPay Credit Card Processing. Accepting credit cards doesn't have to be expensive. NRSPay offers our cost-cutting cash discount program. If you process over $18,000 a month, you pay no monthly fee. With NRSPay Cash Discount, your point-of-sale system calculates dual pricing, so you can offer your customers a discount for paying with cash. The plan includes a free credit card reader with no long-term contract and no early termination fee. Check out NRSPay.com to learn more about our cash discount plan, or you can call me back at this number.

~~20.~~22. The May 4, 2023 voicemail is also 42 seconds long, and identically states:

Hi, this is Alex from NRSPay Credit Card Processing. Accepting credit cards doesn't have to be expensive. NRSPay offers our cost-cutting cash discount program. If you process over $18,000 a month, you pay no monthly fee. With NRSPay Cash Discount, your point-of-sale system calculates dual pricing, so

3

you can offer your customers a discount for paying with cash. The plan includes a free credit card reader with no long-term contract and no early termination fee. Check out NRSPay.com to learn more about our cash discount plan, or you can call me back at this number.

21.23.  What's more, the waveforms (i.e. the visual representation that shows how loud or quiet the sound is at different moments in the file) of both audio files is identical, as seen in the three figures below:

- March 20 Waveform:



- May 4 Waveform:



- Overlaid Waveforms with March 20 in blue and May 4 in yelllow:

4



22.    Upon information and belief, it would be nearly impossible for two audio files to have identical length, content, and waveforms *without* the audio used to create the files ~~actually being~~being identical—that is, prerecorded.

24.

25.    Discovery obtained to date has also confirmed that each call to Plaintiff was prerecorded.

**TELEMARKETING AND CONSENT**

26.    The content of Defendant's voicemails—some of which differ slightly in language, but not substance, from the two transcribed above—make clear that the calls are telemarketing, which the TCPA defines as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person." 47 C.F.R. § 64.1200(f)(13).

27.    Defendant's calls were clearly to encourage the purchase or rental of its payment processing products and services, making them telemarketing.

28.    The TCPA has strict rules regarding prerecorded telemarketing calls to cell

5

phones.

29.　Specifically, section 227(b) of the TCPA prohibits making "any call ... using ... an artificial or prerecorded voice ... to any telephone number assigned to a... cellular telephone service" without the prior express consent of the called party. 47 U.S.C. § 227(b)(1)(A)(iii).

30.　Importantly, unlike other sections of the TCPA,[1] as is clear from the plain language and interpreting calls the prohibition on unconsented prerecorded calls applies to calls to *any* cell phone, no matter how it is used (i.e. even if used by a business). *See, e.g. Callier v. Multiplan, Inc.*, 2021 U.S. Dist. LEXIS 256747, *21 (W.D. Tex. Aug. 26, 2021).

31.　When the prerecorded call introduces an advertisement or constitutes telemarketing, like Defendant's calls here, the consent requirement is heightened to "prior express *written* consent."

32.　"Prior express written consent" requires a signed writing that clearly authorizes the seller to deliver to the person called advertisements or telemarketing messages using an automatic telephone dialing system or an artificial or prerecorded voice. 47 C.F.R. § 64.1200(f)(9).

33.　This written agreement must clearly and conspicuously disclose that the calls would be made using an automatic telephone dialing system or an artificial or prerecorded voice, and that the person is not required to sign the agreement as a condition of purchasing any property, goods, or services. *Id.* at (f)(9)(i)(A-B).

---

[1] For example, the do-not-call list provisions of the TCPA expressly only protect "residential telephone subscribers", which could preclude numbers registered to a business rather than an individual. 47 C.F.R. § 64.1200(C).

6

34.  Plaintiff provided no consent whatsoever here, and certainly not the kind that would rise to the level of prior express written consent.

35.  First, Plaintiff never provided Defendant with his telephone number in the first place.

36.  Instead, it appears that Defendant scraped his telephone number from a third-party database, currently believed to be either taxrpo.com or the IRS website directly.

37.  Second, even if Plaintiff *had* provided his telephone number to Defendant—which he did not—none of the locations through which Defendant solicited telephone numbers prior to the initiation of this litigation (an example of which is shown below) contained sufficient disclosures to qualify as prior express written consent (e.g. that calls might be made using a prerecorded or artificial voice):

### Enter your info to unlock this deal:

Email Address *

Phone *

**UNLOCK MY DEAL!**

*SUBMIT THIS FORM FOR NRS TO CONTACT YOU OR EMAIL YOU REGARDING THIS & OTHER RELEVANT PROMOTIONS

7

## **VIOLATIONS**

38.   Because Defendant lacked any consent, let alone prior express written consent, to place prerecorded telemarketing calls to Plaintiff, Defendant's prerecorded telemarketing calls to Plaintiff's cellular telephone violate § 227(b) of the TCPA.

39.   In addition, because Defendant did not obtain sufficient consent for prerecorded telemarketing calls as a matter of course, *all* of its prerecorded telemarketing calls to cellular telephones of putative class members violated the TCPA.

40.   A violation of § 227(b) carries minimum statutory damages of $500 per call, and up to $1,500 per call if the violations were found to be willful and/or knowing. 47 U.S.C. § 227(b)(3).

41.   Given Defendant intentionally scraped hundreds of thousands of telephone numbers from databases and placed unsolicited calls to those numbers, Plaintiff believes that the violations were willful and/or knowing.

**DIRECT AND VICARIOUS LIABILTY** ~~Furthermore, the content of these voicemails— some of which differ slightly in language, but not substance, from the two transcribed above—make clear that the calls are telemarketing, which the TCPA defines as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person." 47 C.F.R. § 64.1200(f)(13).~~

42.   Defendant's calls to Plaintiff and putative class members were, at least in part, ringless voicemails.

43.   "Ringless voicemails" involve manipulating the voicemail system in such a

8

way that an entity can directly deposit a prerecorded message into a target's voicemail box, often without ringing the phone.

44.     Unlike a standard phone call, which can often be ignored, the ringless voicemail process forces a recipient to deal with it at some point because voicemail capacity is limited and each voicemail necessarily takes up some of that capacity (and storage on the device).

45.     Defendant utilized the ringless voicemail services of third-party entity VoiceLogic.

46.     VoiceLogic's ringless voicemail services *only* use prerecorded or artificial voice messages rather than live calls.

47.     According to VoiceLogic's description[2] of its ringless voicemail service:

> Voicecasting is ... our Ringless Voicemail service. It is a software system that will deliver a message to someone's voicemail without ringing their phone. The message is pre-recorded by you, and broadcasted to thousands of voice mail boxes using our Ringless Voicemail Services.

48.     To use VoiceLogic's services, Defendant created an account with VoiceLogic.

49.     Defendant then provided VoiceLogic with the telephone numbers to which ringless voicemails should be sent; the prerecorded voice messages to be used; and instructions on when to send these calls/voicemails.

50.     Defendant also provided VoiceLogic with a telephone number that

---

[2] https://voicelogic.com/ringless-voicemail/

9

Defendant owns for VoiceLogic to use as the caller ID for the ringless voicemails.

51.     Specifically, for the calls to Plaintiff, Defendant provided VoiceLogic with telephone number 973-649-9264, a number its parent company, IDT, has owned since October 2020.

52.     The form Defendant submitted to begin its ringless broadcasting campaigns looked identical or substantially similar to the following:



**Formatted:** Centered, Indent: First line:  0.5",  No bullets or numbering

53.     As shown in the screenshot, Defendant provides the date to transmit the calls, the time to transmit the calls, the date to complete transmission, the number of recipients, uploads the voice file and list of telephone numbers, decides between ring or ringless voicemails, and provides the display number.

11

54.     Defendant paid VoiceLogic for this service.

55.     Defendant's extreme involvement with the placement of these calls is sufficient to make it directly liable, even if the final step of placing the calls was done by VoiceLogic.

56.     As the FCC held in its 2013 discussion of vicarious liability in the TCPA context, while there is typically a distinction between a call made by a seller and call made by a telemarketer on the seller's behalf, "one can imagine a circumstance in which a seller is so involved in the placing of a specific telephone call as to be directly liable for initiating it – by giving the third party specific and comprehensive instructions as to timing and the manner of the call, for example." *In re Dish Network, LLC*, 28 FCC Rcd. 6574, ¶ 27.

57.     In the alternative, Defendant is liable for any illegal calls described herein under several agency principles.

58.     First, VoiceLogic acted with Defendant's express actual authority, which occurs "when the principal expressly grants the agent the authority to perform a particular act." *Aranda v. Caribbean Cruise Line, Inc.*, 179 F. Supp. 3d 817, 831 (N.D. Ill. 2016).

59.     As described above, Defendant provided VoiceLogic with express actual authority to place these calls on its behalf by, *inter alia*, providing the prerecorded files to be used, the list of telephone numbers to be used, the timing of the calls, and instructing VoiceLogic to make the calls.

60.     This would be sufficient for implied actual authority as well, which occurs "when the principal's reasonably interpreted words or conduct would cause an agent to believe that the principal consents to have an act done on her behalf." *Id.*

12

61. Second, the above would be sufficient for apparent authority, which occurs when the principal "speak[s], write[s], or otherwise act[s] toward a third party" in a way that makes the "third party reasonably believe that [the principal] has consented to an action done on his behalf by someone purporting to act for him." *Bridgeview Health Care Ctr., Ltd.*, 816 F.3d 935, 939 (7th Cir. 2016).

62. Finally, this would be sufficient for ratification, which occurs "when an agent acts for the principal's benefit and the principal does not repudiate the agent's actions." *Aranda*, 179 F. Supp. 3d at 831.

63. As such, Defendant is either directly or vicariously liable for any illegal calls VoiceLogic placed on its behalf, including the calls to Plaintiff here.

23.

**Formatted:** Centered, No bullets or numbering

24. The TCPA has strict rules regarding prerecorded telemarketing calls to cell phones.

25. Specifically, section 227(b) of the TCPA prohibits making "any call ... using ... an artificial or prerecorded voice ... to any telephone number assigned to a ... cellular telephone service" without the prior express consent of the called party. 47 U.S.C. § 227(b)(1)(A)(iii).

26. Importantly, unlike other sections of the TCPA,[3] as is clear from the plain language and interpreting calls the prohibition on unconsented prerecorded calls applies to calls to *any* cell phone, no matter how it is used (i.e. even if used by a business). *See,*

---

[3] For example, the do not call list provisions of the TCPA expressly only protect "residential telephone subscribers", which could preclude numbers registered to a business rather than an individual. 47 C.F.R. § 64.1200(C).

*e.g. Callier v. Multiplan, Inc.*, 2021 U.S. Dist. LEXIS 256747, *21 (W.D. Tex. Aug. 26, 2021).

27. When the prerecorded call introduces an advertisement or constitutes telemarketing, like Defendant's calls here, the consent requirement is heightened to "prior express *written* consent."

28. "Prior express written consent" requires a signed writing that clearly authorizes the seller to deliver to the person called advertisements or telemarketing messages using an automatic telephone dialing system or an artificial or prerecorded voice. 47 C.F.R. § 64.1200(f)(9).

29. This written agreement must clearly and conspicuously disclose that the calls would be made using an automatic telephone dialing system or an artificial or prerecorded voice, and that the person is not required to sign the agreement as a condition of purchasing any property, goods, or services. *Id.* at (f)(9)(i)(A-B).

30. Plaintiff provided no consent whatsoever here, and certainly not the kind that would rise to the level of prior express written consent.

31. First, Plaintiff never provided Defendant with his telephone number in the first place.

32. Instead, it appears that Defendant scraped his telephone number from a database such as taxrpo.com, which purports to be a list of tax preparers nationwide and lists Plaintiff's telephone number (along with 730,000 others).

33. This is further made clear by Defendant's pre-litigation inability to provide Plaintiff with the source of Plaintiff's lead despite nearly two months' worth of discussion and requests from Plaintiff.

14

34. ~~While Defendant is under no legal obligation to provide any information pre-litigation, the burden is on the caller to prove consent, so Defendant's failure to do so—despite knowing that such failure would lead to the instant lawsuit—is suggestive of its lack of the requisite consent. *See* 2015 TCPA Declaratory Ruling and Order, 30 FCC Rcd. at 7989-7990, ¶ 47; *Physicians Healthsource, Inc. v. A-S Medication Sols., LLC,* 950 F.3d 959, 964-65 (7th Cir. 2020).~~

35. ~~Second, even if Plaintiff *had* provided his telephone number to Defendant—which he did not—the form through which Defendant solicits such telephone numbers, as shown below, lacks the required disclosures (e.g. that calls might be made using a prerecorded voice):~~

**Enter your info to unlock this deal:**

Email Address *

Phone *

**UNLOCK MY DEAL!**

*SUBMIT THIS FORM FOR NRS TO CONTACT YOU OR EMAIL YOU REGARDING
THIS & OTHER RELEVANT PROMOTIONS

36. ~~Accordingly, Defendant's prerecorded telemarketing calls to Plaintiff's cellular telephone number were made without his prior express written consent in violation~~

15

of § 227(b) of the TCPA.

37. A violation of § 227(b) carries minimum statutory damages of $500 per call, and up to $1,500 per call if the violations were found to be willful and/or knowing. 47 U.S.C. § 227(b)(3).

38. Given Defendant likely scraped hundreds of thousands of telephone numbers from databases and placed unsolicited calls to those numbers, Plaintiff believes that the violations were willful and/or knowing.

**CLASS ACTION ALLEGATIONS**

39.64. Plaintiff brings this action under Fed. R. Civ. P. 23 on behalf of a class defined as:

> Between January 3, 2020 and January 3, 2024, all persons within the United States to whose cellular telephone number Defendant sent, or had sent on its behalf, a telephone call (including a ringless voicemail) using a prerecorded message containing the phrase(s) "check out nrspay.com" and/or "if you process over" and/or "to learn more" and/or "free credit card reader". Since January 5, 2020, all persons to whose cellular telephone number the Defendant initiated, or had initiated on their behalf, a prerecorded call inviting the call recipient to learn more about Defendant's point-of-sale system, when that cellular telephone number was obtained through the same or similar source or mechanism as Plaintiff's cellular telephone number.

40.65. Excluded from the Class are Defendant and any entities in which Defendant has a controlling interest; Defendant's agents and employees; any Judge and Magistrate Judge to whom this action is assigned and any member of their staffs and immediate families; and any claims for personal injury, wrongful death, and/or emotional distress.

**Numerosity and Ascertainability**

41.66. The putative members of the Class for whose benefit this action is brought

are so numerous that joinder of all members is impracticable.

42.67. The exact number and identities of the persons who fit within the Classes are ascertainable in that Defendant maintain's written and electronically stored data showing:

    a.  The dates and times Defendant placed its calls;

    b.  The telephone numbers to which Defendant placed its calls;

    c.  The purpose and content of its calls.

43.68. The Class is comprised of tens of thousands of individuals nationwide.

44.69. Plaintiff Walston is a member of the Class because Defendant placed a prerecorded telemarketing call call containing the aforementioned phrases to his cellular telephone number without his prior express written consent.

**Commonality**

45.70. There are common questions of law and fact affecting the rights of the members of the Class, including, *inter alia*, the following:

    a.  Where Defendant obtained Class Member telephone numbers;

    b.  Whether Defendant placed prerecorded calls;

    c.  Whether Defendant's calls constitute telemarketing;

    d.  Whether Defendant has any evidence of prior express written consent from Class Members;

    e.  Whether Plaintiff and the Class were damaged thereby, and the extent of damages for such violations; and

    f.  Whether Defendant should be enjoined from engaging in such conduct in

17

the future.

### Typicality

46.71. Plaintiff's claims are typical of the claims of members of the Class in that they arise from Defendant's uniform conduct and are based on the same legal theories.

47.72. Plaintiff has no interests antagonistic to, or in conflict with, the Class.

48.73. On information and belief, Plaintiff avers that Defendant treated him in same manner as it has treated hundreds, if not thousands of individuals.

### Adequacy of Representation

49.74. Plaintiff will thoroughly and adequately protect the interests of the Class, as Plaintiff and his retained counsel do not have any conflicts of interest with the proposed Class; Plaintiff's counsel is experienced in class actions of this type and can adequately represent the interests of the class; and Plaintiff and his counsel have adequate financial resources to assure that the interests of the class will not be harmed.

### Superiority

50.75. Defendant has acted and refused to act on grounds generally applicable to the Class, thereby making injunctive and declaratory relief appropriate for the Class.

51.76. The prosecution of separate actions by individual Class Members would create a risk of inconsistent or varying adjudications.

52.77. A class action provides a fair and efficient method for adjudication of the controversy.

53.78. Common questions will predominate, and there will be no unusual manageability issues.

54.79. The prosecution of separate actions would risk confronting Defendant with incompatible standards of conduct.

55.80. There does not appear to be any litigation already commenced by or against members of the class involving the same issues.

56.81. The forum is appropriate, as discussed above.

57.82. The expense of individual litigation and the limited recovery in individual litigation justify a class action.

**FIRST CAUSE OF ACTION**
**Violations of the TCPA, 47 U.S.C. § 227(b)**

58.83. Section 227(b) of the TCPA prohibits making "any call ... using ... an artificial or prerecorded voice ... to any telephone number assigned to a... cellular telephone service" without the prior express consent of the called party. 47 U.S.C. § 227(b)(1)(A)(iii).

59.84. Plaintiff and putative Class Members all received prerecorded calls from Defendant on their cellular telephone numbers, without providing any form of consent.

60.85. When the prerecorded call introduces an advertisement or constitutes telemarketing, the consent requirement is heightened to "prior express *written* consent."

61.86. The TCPA defines telemarketing as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person." 47 C.F.R. § 64.1200(f)(13).

62.87. Defendant's calls regarding its POS system and services qualify as telemarketing.

63.88. Therefore, the heightened "prior express written consent" requirement

19

applies to Defendant's calls to Plaintiff and putative Class Members.

64.89. "Prior express written consent" requires a signed writing that clearly authorizes the seller to deliver to the person called advertisements or telemarketing messages using an automatic telephone dialing system or an artificial or prerecorded voice. 47 C.F.R. § 64.1200(f)(9).

65.90. This written agreement must clearly and conspicuously disclose that the calls would be made using an automatic telephone dialing system or an artificial or prerecorded voice, and that the person is not required to sign the agreement as a condition of purchasing any property, goods, or services. *Id.* at (f)(9)(i)(A-B).

66.91. As mentioned, Defendant did not obtain *any* form consent from Plaintiff or putative Class Members.

67.92. Even if it did, however, the mechanisms through which it solicits such consent are inadequate to qualify as "prior express written consent", as they lack the required disclosures.

68.93. Accordingly, Defendant's prerecorded calls to Plaintiff and putative Class Members violate the TCPA.

69.94. Plaintiff and putative Class Members are entitled to minimum statutory damages of $500 per violative call, and up to $1,500 per call if the violations are found to be willful and/or knowing. 47 U.S.C. § 227(b)(3).

95. Each member of the putative Class has Article III standing as unwanted prerecorded calls invaded their privacy and intruded upon their seclusion, which is the exact harm the TCPA was designed to prevent.

70.96. In addition, voicemails necessarily take up both voicemail capacity and storage capacity on a device.

71.97. Such injuries  are is sufficient for Article III standing in the Seventh Circuit. *See, e.g. Gadelhak v. AT&T Servs.*, 950 F.3d 458, 461-63 (2020) (Barrett, J.); *Koester v. Pelican Inv. Holdings Grp., LLC*, 2023 U.S. Dist. LEXIS 23825, *3 (N.D. Ill. Feb. 10, 2023) (citing *Gadelhak*, which dealt with unwanted text messages, and noting that there is no material difference between unwanted phone calls or voicemails).

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff Walston, individually and on behalf of the proposed Class, prays for the following relief:

A.      An order certifying the Class as defined above, appointing Plaintiff Walston as the representative of the Class, and appointing his counsel as Class Counsel;

B.      An order declaring that Defendant's actions, as set out above, violate 47 U.S.C. § 227(c) and § 501.059(5).

C.      An award of injunctive and other equitable relief as necessary to protect the interests of the Class, including, *inter alia*, an order prohibiting Defendant from engaging in the wrongful and unlawful acts described herein;

D.      An award of statutory damages for violations of 47 U.S.C. § 227(b);

E.      An award of enhanced damages for willfulness;

F.      Such other and further relief that the Court deems just.

JURY DEMAND

Plaintiff requests a trial by jury of all claims that can be so tried.

21

Dated: June 12, 2024 ~~June 11, 2024~~          s/ Jeremy M. Glapion

Jeremy M. Glapion
**THE GLAPION LAW FIRM, LLC**
1704 Maxwell Drive
Wall, New Jersey 07719
Tel: 732-455-9737
Fax: 732-965-8006
jmg@glapionlaw.com
(*Pro Hac Vice*)

***Counsel for Plaintiff and the Putative Class~~es~~***

22