UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **RASHAD WALSTON,** on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>**NATIONAL RETAIL SOLUTIONS, INC. D/B/A NRS PAY,**<br><br>Defendant. | Civil Case No.: 24-cv-83 |

## JOINT STATUS REPORT

Pursuant to docket entry 24, the Parties submit this status report on discovery.

### Progress with written discovery.

a. **Plaintiff**: To date, Plaintiff has served five sets of requests for production[1] (57 unique requests), four of which have come due:

| Set | Numbers | Due | Written Responses Made | Pages Produced |
|---|---|---|---|---|
| 1 | 1-24 | April 17*[2] | April 17 | 31 |
| 2 | 25-37 | June 10* | June 10 | 0 (see below) |
| 3 | 38-46 | June 10* | June 10 | 0 (see below) |
| 4 | 47-52 | June 12 | June 12 | 0 (see below) |
| 5 | 53-57 | July 10 | | - |

---

[1] Plaintiff has also served four sets of requests for admission, 32 requests in total, three of which have come due; and three sets of interrogatories, seven requests in total, all of which have come due.
[2] Asterisk denotes an agreed one-week extension (e.g. the April 17 responses were originally due April 10).

Of the 31 pages produced to date, approximately half were Plaintiff's own documents.

Upon receiving Defendant's written responses on June 10, Plaintiff that same evening notified Defendant of perceived issues with the responses and requested a meet-and-confer pursuant to Rule 37.2. Upon receiving Defendant's written responses on June 12, Plaintiff that same evening notified Defendant of perceived issues with the responses and requested a meet-and-confer pursuant to Rule 37.2. These meetings were consolidated to a telephonic meeting on June 21, which continued on June 25.

On that June 25 call, Defendant represented that it would amend its written responses the week of July 8 and begin rolling production of documents responsive to sets two through four at the end of that same week. Defendant could not provide an estimated date for completing this production.

Unfortunately, this lack of certainty or willingness to cooperate in discovery has proved par for the course to date. Each set of Plaintiff's requests has necessitated a meet-and-confer initiated by Plaintiff under Rule 37.2 to resolve numerous issues, including several repeat issues that Plaintiff thought were fully resolved. Specifically, in every single set of written responses, Defendant has 1) failed to identify a reasonable date certain for production, as required by Fed. R. Civ. P. 34(b)(2)(B), and 2) failed to state if any documents are being withheld on the basis of its objections, as required by Fed. R. Civ. P. 34(b)(2)(C). These failures have forced Plaintiff to undergo the Rule 37 process on every set and every objection, because without that process, Plaintiff has no idea if and when he will receive documents, or which objections, if any, are going to result in withheld documents.

In addition, Defendant has made openly frivolous objections to discovery requests, knowing that such objections would force time-consuming and wasteful meet-and-confers, to delay its discovery obligations. For example, in its written responses to sets 2-4, Defendant unilaterally stated it would not produce documents until the Court ruled on a then-pending Motion to Enforce Settlement—which the Court unequivocally deemed without merit, Dkt. 31—despite no court order staying discovery, and despite asking a Plaintiff for a stay of discovery and Plaintiff not agreeing to such a stay. While this delay proved short because the Court ruled promptly, Defendant nevertheless had no right nor legal authority to impose its own stay on discovery.

Defendant's substantive objections have been similarly frivolous and without legal authority. Plaintiff will not list them here, because the meet-and-confer process has served to—at least verbally—resolve the substance of each. But the delay this process causes is the point, and Defendant's approach of openly flouting the Federal Rules and its discovery obligations, only to give in before the issues can be brought to the Court's attention, risks eroding both trust and the schedule.

Further, as noted, Plaintiff still has not received any documents since April 19, and Defendant has only promised a rolling production of some documents beginning approximately July 12, with no promise as to frequency of production or an end date for this production. Defendant has been aware of or litigating this potential case for nearly nine months.

As such, Plaintiff's representation in the May 20 status report remains true: Plaintiff anticipates additional written discovery being necessary, but cannot predict the nature, timing, or volume until Defendant completes its production.

One other note: Defendant's insinuation that Plaintiff callously disregarded serious medical issues in rejecting any discovery extension is disappointing and demonstrably false. This status report is the first time Plaintiff was made aware of any non-law-related need for an extension.

There are no outstanding subpoenas. Plaintiff intends to file a Motion in the coming weeks requesting the Court issue a letter rogatory to its Canadian counterpart to compel a Canadian third-party in possession of documents relevant to this case to produce said documents and make itself available for a deposition. To that end, Plaintiff has retained Canadian counsel and has sent a draft of the letter to Canadian counsel for review.

b. **Defendant**:

Defendant just received the amended complaint and reserves the right to respond appropriately, including by moving to stay and/or bifurcate if warranted. Plaintiff's chronology of his discovery requests is an improper attempt to draw the Court into the minutiae of discovery despite there being no discovery dispute. The Court's standing order directs that "parties can and should work out most discovery disputes," which Defendant has endeavored to do. Plaintiff served nearly 30 requests for production in three separate requests, including numerous requests for class merits discovery far beyond what the Court needs to make an informed decision on certification, should it ultimately need to make such decision. *Bilek v. Fed. Ins. Co.*, 2022 WL 18912277, at *3

(N.D. Ill. Dec. 12, 2022) ("As other courts have held, "responding to class-wide discovery before the plaintiffs have demonstrated the requirements for class certification frequently presents an undue burden on the responding party."). Plaintiff has likewise refused to agree to routine extensions. And while the parties were working through these issues, and the Defendant was spending time and resources to address them, Plaintiff just very recently amended his Complaint, modifying the scope of his class definition, ECF No. 35 ¶ 64, as well as certain additional new claims, which in turn alters the scope of discovery. *Ronat v. Martha Stewart Living Omnimedia, Inc.*, 2007 WL 865681, at *2 (S.D. Ill. Mar. 16, 2007) ("the scope of discovery will not be broadened beyond . . . the amended complaint[.]").

The responses to Plaintiff's class discovery requests only came due on June 10, barely more than two weeks ago. Defendant, whose primary decision maker underwent open-heart surgery during the same period that Defendant was responding to Plaintiff's third round of class discovery without any extensions (because Plaintiff refused them), is now reviewing its records to make an appropriate production. In light of the parties' preliminary agreement on discovery, reached within weeks of the discovery response due dates before Plaintiff amended his Complaint, Plaintiff's attempt to draw the Court into discovery minutiae is intentionally inflammatory and inappropriate.

## Upcoming Depositions

a. **Plaintiff**: On May 10, Plaintiff first informed Defendant of his intent to take Diana Stern's deposition in early June in New Jersey. On June 21, Defendant provided several dates, and the Parties agreed to July 31 for the deposition of Diana Stern.

Documents relevant to this deposition are part of the rolling production promised to begin the week of July 8. While Defendant has expressed optimism about producing all documents relevant to Diana Stern's deposition prior to July 31, the timing (i.e. whether those documents are provided with sufficient time to review) and contours of this production remain unclear, so this July 31 date may shift.

As for Plaintiff's deposition of Defendant pursuant to Fed. R. Civ. P. 30(b)(6), three things need to occur before Plaintiff can take it. First, the deposition of Diana Stern. Second, Plaintiff needs production from Defendant. Third, Plaintiff must review Defendant's production and determine if follow up discovery is necessary prior to the deposition.

Plaintiff would also prefer receiving discovery from foreign third-party VoiceLogic prior to Defendant's deposition. Obtaining that discovery, however, requires specific permission from this Court and its Canadian counterpart. Plaintiff sought to have VoiceLogic produce relevant information without the formal letter rogatory process, but VoiceLogic declined. Plaintiff has retained Canadian counsel and anticipates filing the necessary Motion in this Court in the next couple of weeks. It is Plaintiff's understanding that this process could take 2-3 months from the time the Motion is filed with the Canadian court (after it is granted here), but it is impossible to say for sure.

    b.    **<u>Defendant</u>**:

Defendant just received the amended complaint and reserves the right to respond appropriately, including by moving to stay and/or bifurcate if warranted. Given that Plaintiff only recently served class discovery request and Defendant's responses only recently

became due, that Plaintiff just amended his complaint, with new claims and class definition, and that Defendant is in the process of reviewing discovery materials to determine what relevant and responsive information might exist (during a time its primary decisionmaker is recovering from open heart surgery no less), Defendant obviously cannot commit to complete a production by a specific date. Notwithstanding that, Defendant represented that it would endeavor to produce certain documents for Ms. Stern's deposition in time to proceed on July 31st, if feasible. All of the burden of this production falls on Defendant, something that appears lost on Plaintiff. Plaintiff's reference to the timing of dates being provided for Ms. Stern's deposition is also pointlessly inflammatory, since Plaintiff demands production of documents requested in discovery that had not even been served yet at the time he first asked for Ms. Stern's deposition dates. So the deposition could not possibly have occurred any earlier than it is currently scheduled for, by Plaintiff's own logic.

And while Plaintiff claims he needs certain information to serve a Rule 30(b)(6) notice, he knows generally the topics he will seek testimony on. Plaintiff is free to notice Defendant's 30(b)(6) deposition with preliminary topics at the appropriate time, which would allow Defendant to begin the process of identifying an appropriate witness or witnesses at such time applicable time. His failure to do so appears intentionally calculated to enable him to make a dispute of non-issues in this and future reports.

### Any other information relevant to case management

a. **Plaintiff**: Plaintiff believes that additional status reports every two to four weeks (from the week of July 8) would be beneficial to monitor and encourage the Parties'

progress. Plaintiff proposes that the parties provide joint status reports on July 22, August 12, and August 26 addressing 1) Defendant's production; 2) the status of depositions; 3) the letters rogatory process; and 4) any other topics the Court requests.

b. **Defendant**:

Defendant is open to providing the Court with reasonable updates on the parties' continued discovery efforts, but Plaintiff's proposal is unreasonable. Plaintiff effectively asks the Court to sit "in the role of babysitter at the slightest discovery problem." *Weichman v. Clarke*, 2010 WL 2181288, at *2 (E.D. Wis. May 25, 2010). Again, the parties are expected and able to resolve most discovery disputes among themselves. Asking the parties to prepare and the Court to entertain a bi-weekly status report, which would entail a bi-weekly meeting of counsel, is unreasonable and unnecessary.

Dated: June 26, 2024
                                                  s/ Jeremy M. Glapion
Jeremy M. Glapion
The Glapion Law Firm, LLC
1704 Maxwell Drive
Wall, New Jersey 07719
Tel: 732-455-9737
Fax: 732-965-8006
jmg@glapionlaw.com
Counsel for Plaintiff and the Putative Class


*/s/ Ryan D. Watstein*
Ryan D. Watstein (pro hac vice)
ryan@wtlaw.com
Patrick J. Fitzgerald (pro hac vice)
pfitzgerald@wtlaw.com
**WATSTEIN TEREPKA LLP**
1055 Howell Mill Road, 8th Floor
Atlanta, Georgia 30318
Tel: (404) 782-9821

Fax: (404) 537-1650
Justin M. Penn, ARDC 6283726
jpenn@hinshawlaw.com
**HINSHAW & CULBERTSON LLP**
151 North Franklin Street, Suite 2500
Chicago, Illinois 60606
Tel:  (312) 704-3000
*Counsel for Defendant*