UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **RASHAD WALSTON,** on behalf of himself and all others similarly situated,<br><br>**Plaintiff,**<br>v.<br><br>**NATIONAL RETAIL SOLUTIONS, INC. D/B/A NRS PAY,**<br><br>Defendant. | Civil Case No.: 24-cv-83<br><br>District Judge: Hon. Sunil R. Harjani<br>Magistrate Judge: Jeffrey T. Gilbert |

### PLAINTIFF'S MOTION TO MODIFY SCHEDULING ORDER (RESET PLEADING DEADLINE)

Plaintiff respectfully requests that the Court reset the June 12 pleading deadline in its initial scheduling order to September 30. In support, Plaintiff states as follows:

On March 11, 2024, Plaintiff served his First Set of Requests for Production (numbered 1-24). On April 19, Defendant produced 31 pages of responsive documents and indicated that this was its complete production of documents responsive to these requests. No other documents were produced between then and the June 12 deadline for amended pleadings.

On August 9, Defendant produced a heavily redacted, 529-page document containing significant class data. Importantly, this document appears to contain Plaintiff's telephone number,[1] which makes it directly responsive to Plaintiff's First Set of Requests

---

[1] The best Plaintiff can say is "appears to be", due to the redactions. The last four digits of Plaintiff's phone number appears twice in the list. The odds seem small that Defendant, alleged to have called Plaintiff, has a list of phone numbers, two of which have the same last four digits as Plaintiff's, without either of them being Plaintiff's.

1

for Production, in which Plaintiff sought all documents containing his telephone number. The document also contains header columns suggesting that the redacted data may shed light on key issues such as the source(s) from which Defendant obtained Plaintiff's and putative class members' telephone numbers, and more efficient ways to define the class.[2]

Neither this nor anything else in this Motion is meant to cast blame or "backdoor" litigate discovery issues. But just as Defendant might be blameless for its April 19 representation of completeness, Plaintiff is also blameless for relying on that representation. While supplementation is required and expected, a supplementation of 529 pages to a previously "complete" production of 31 pages is not. Had Plaintiff believed that Defendant's April 19 production was incomplete to this degree, Plaintiff may have approached the June 12 amendment deadline differently.

To be clear, it is not *just* the August 9 production that justifies a reset of the June 12 deadline. Plaintiff was already preparing to make this Motion based on *other* circumstances that had arisen after the deadline. Specifically, in chronological order:

- On July 8, a highly regarded attorney, previously unknown to the case, reached out to Plaintiff on Defendant's behalf, indicating that Defendant would be providing evidence refuting significant factual allegations regarding consent found in both Plaintiff's original complaint and First Amended Complaint, only to then disappear without providing such evidence.

---

[2] The Parties are working together to resolve any disputes over the propriety of redactions, and nothing in this Motion is intended to circumvent that process.

- On July 22, Defendant issued factual denials in its answer, Dkt. 40, to the First Amended Complaint ("FAC"), Dkt. 35, that appear to contradict previously served discovery answers.

- On July 31, Defendant provided the first estimated date for its completed production responsive to Plaintiff's Second, Third, and Fourth Sets of Requests for Production (September 14).

Considering the above, additional amendments to the pleadings are almost certainly going to be necessary.[3] The question this Motion presents is the most efficient way to deal with those amendments. Is it better to do so on an *ad hoc* basis, applying a contested "good cause" analysis for each amendment? Or, given the ample runway between now and any other deadline of note, is it better to reset the pleading deadline until after discovery matures, allowing amendments under the more liberal Rule 15 standard? Plaintiff believes efficiency and the posture of the case support the latter.

Accordingly, Plaintiff requests that the amended pleading deadline be reset to September 30, 2024.

<b><u>BACKGROUND AND OVERVIEW OF DISCOVERY</u></b>

### I. <u>Background</u>

On January 3, 2024, Plaintiff filed a putative class action lawsuit alleging that Defendant placed prerecorded telemarketing calls to Plaintiff and others similarly situated without their consent. [Dkt. 1.] On January 4, this matter was assigned to Judge

---

[3] This does not even touch upon the unknown timing and volume of obtaining documents from third party entity VoiceLogic and the remaining scope of Defendant's rolling production.

3

Valderrama. [Dkt. 2.] The Parties conducted their Rule 26 conference on March 11 and timely filed their Rule 26(f) report on March 18. [Dkt. 12.] Judge Valderrama reviewed the Parties' report and set the requested June 12, 2024 deadline for amendment to the pleadings. [Dkt. 13.] The remaining deadlines were referred to and set by Judge Gilbert. [Dkt. 15.] Specifically, Judge Gilbert ordered that fact discovery be completed by December 13, 2024; initial expert reports disclosed by January 17, 2025; rebuttal expert reports by March 15, 2025; and depositions of expert witnesses by March 31, 2025. On April 2, this matter was re-assigned to Your Honor. [Dkt. 16.] Your Honor set an in-person status hearing for January 8, 2025. [Dkt. 20.]

II. **Discovery and posture before June 12.**

Plaintiff began discovery at the first possible opportunity. On March 11, 2024—the same day as the Parties' Rule 26 conference—Plaintiff served his first set of Requests for Production (1-24); first set of Interrogatories (1-3); and first set of Requests for Admission (1-11). Declaration of Jeremy M. Glapion ("Glapion Decl."), ¶¶ 4-5. Responses to these requests were initially due on April 10, but the Parties agreed to a one-week extension to April 17. *Id.* at ¶ 6.

On April 17, Defendant provided written responses to these requests but did not indicate when documents would be produced or if documents were being withheld based on any of its objections. *Id.* at ¶ 7. Given the impending deposition of Plaintiff on April 26, Plaintiff requested a discovery conference under Rule 37(a)(1), which was conducted on April 19. *Id.* at ¶ 8. Immediately prior to the conference, Defendant produced 31 pages of

4

documents, which it subsequently indicated on the call was its complete production to this first set of requests. *Id.* at ¶¶ 9-10.

Subsequently, Plaintiff served three more sets of Requests for Production.[4] The second and third sets were served on April 18 and April 20, respectively, and due May 20. The fourth set was served on May 13 and was due June 12. *Id.* at ¶ 11.

On May 16, Defendant requested an extension of time to June 3 to respond to the second and third sets of Requests for Production, and Plaintiff agreed. *Id.* at ¶ 12. On May 28, Defendant informed Plaintiff of its intention to file a Motion to Enforce Settlement, *id.* at ¶ 13, which it filed that same day. [Dkt. 22.] After an additional one-week extension of time to respond to the second and third sets, Defendant served written responses but again did not indicate when documents would be produced or if documents were being withheld based on its objection, necessitating an additional Rule 37 conference. Glapion Decl., ¶¶ 14-15. Defendant's Motion to Enforce Settlement was denied on June 13. [Dkt. 31.]

As of June 12, no responsive documents to sets two through four had been produced. Glapion Decl., ¶ 16. The total production remained the 31 pages from April 19.

On June 12, Plaintiff sought leave to file an amended complaint based on discovery conducted to that point. [Dkt. 29.] This was granted, and Plaintiff filed his First Amended Complaint ("FAC") on June 24. [Dkt. 35.] The amendments primarily focused on a tweak

---

[4] Plaintiff also served three more interrogatories and 12 more Requests for Admission that were due before the deadline.

5

to the class definition and additional information about the third party Defendant used for its calls to Plaintiff. *Id.*

### III. Discovery and posture after June 12.

Since June 12, the Parties have continued to productively work through numerous discovery issues, across no less than four additional Rule 37 meetings (in addition to the two prior to June 12). These meetings have covered a wide array of objections and often involved figuring out the timing and scope of any additional production. On June 25, Defendant confirmed that it would begin rolling production of documents responsive to the second, third, and fourth sets of requests for production on July 12, but it could not provide an estimated date of completion or an estimated scope. Glapion Decl., ¶¶ 17-18.

In the interim, on July 8, Plaintiff's counsel received a call from Attorney Paul Heeringa of Manatt, Phelps & Phillips. Attorney Heeringa indicated he had been retained to represent Defendant [5] Among other things, Attorney Heeringa indicated his understanding that Defendant had found evidence of the source of Plaintiff's telephone number and consent and would provide that information. *Id.* at ¶ 21. Plaintiff heard nothing further from Attorney Heeringa until August 12, when Plaintiff's counsel reached out via email to determine if Attorney Heeringa was still on the case. *Id.* at ¶ 22. Attorney Heeringa responded that he was not. *Id.* at ¶ 23. Plaintiff has heard nothing further on this source/consent issue.

---

[5] Plaintiff's counsel has worked opposite Attorney Heeringa in other TCPA cases involving other parties and holds him in high regard. He has no reason to doubt this representation. Glapion Decl., ¶ 20.

6

Defendant began its rolling production on July 12, as promised. As of the Parties' July 31 status conference with Judge Gilbert, Defendant had produced a total of 68 pages of documents and four audio files. During that July 31 status conference, Defendant was optimistic it could complete its outstanding production within 45 days of the conference (September 14).

On August 9, as part of its rolling production, Defendant produced a heavily redacted additional 529 pages, which contains, among other things, a list of phone numbers. Notably, Plaintiff's phone number appears on this list. Yet Plaintiff's very first Request for Production—served March 11, and for which Defendant had indicated its production was complete—expressly sought all documents containing Plaintiff's telephone number.

## IV. **Remaining discovery**

In addition, to Defendant's rolling production, tentatively set to be completed on or before September 14, Plaintiff has been preparing to seek assistance from the Canadian judicial authorities to obtain documents from the third-party vendor Defendant used to make its calls, including through retaining Canadian counsel. The Parties have been working together on this issue since June 4 to resolve numerous concerns, including concerns about the scope of the intended requests.[6] It was not until August 12 that the

---

[6] An issue which could be mooted via a modification to the class definition. In fact, Plaintiff initially intended to seek leave to file a second amended complaint in part to modify the class definition to address this dispute. After a thorough review of the past few weeks of discovery, however, an overall reset of the deadline seemed like a more efficient approach in the long term.

Parties reached a suitable compromise. Plaintiff intends to make the Motion imminently, but the exact timing from filing to receipt of documents is unclear.

Plaintiff also intends to provide a tentative list of Rule 30(b)(6) deposition topics on August 14, with the hopes of taking this deposition in October or November. Plaintiff has a deposition of one of Defendant's employees scheduled for August 19.

Plaintiff also anticipates serving additional written discovery requests, particularly after Defendant completes its rolling production and Plaintiff has time to review.

As such, though the Parties have been working diligently, most of the relevant production in this case remains ahead of us. This forthcoming discovery will bear on myriad issues, such as the contours of the class definition; agency (Defendant has denied vicarious liability); the relationship between Defendant, its parent company IDT, and the calls at issue; consent; and willfulness and damages.

## **LEGAL STANDARD**

Fed. R. Civ. P. 16(b)(4) requires "good cause" to modify a scheduling order. *Alito v. Town of Lisbon*, 651 F.3d 715, 719 (7th Cir. 2011). "In making a Rule 16(b) good-cause determination, the primary consideration for the district courts is the diligence of the party seeking amendment." *Id.* at 720. "[A]mong the aims of Rule 16 are to prevent parties from delaying or procrastinating and to keep the case moving toward trial." *Id.* "[C]ourts often consider the posture of the case when making a good cause determination." *Woodson v. 3M Co.*, 2022 U.S. Dist. LEXIS 83288, *6-7 (N.D. Ill. May 9, 2022)

Courts have found "good cause" exists for amendments requested after the deadline in circumstances where the contours of a party's position "were not revealed

8

until months after the pleading deadline, and then only became apparent through tardy discovery responses." *Midland Nat'l Life Ins. Co. v. Ash Fin. Holdings Group, Inc.*, 2007 WL 1749222, 2007 U.S. Dist. LEXIS 44046, *11 (N.D. Ind. June 15, 2007) (allowing amended pleading seven months after deadline). Courts have also found good cause present "[i]n light of the steps taken by Plaintiffs to obtain discovery, and the related days in production." *Gold v. YouMail, Inc.*, 2013 WL 652549, 2013 U.S. Dist. LEXIS 23618, *2-3 (S.D. Ind. Feb. 21, 2013); *see also, e.g.*, *Walker v. United States*, 2023 WL 2712296, 2023 U.S. Dist. LEXIS 54754, *6 (S.D. Ind. Mar. 30, 2023) (posture of case and motion made before key deadlines had passed support a finding of diligence and good cause). While these cases dealt with the standard in the context of an actual proposed amendment, there seems to be little reason to confine the analysis to such a narrow circumstance.

Further, though it obviously cannot abrogate this standard, the Parties jointly added the following language to the standard "good cause" language in the submitted status report: "the parties also note that sometimes good cause exists in putative class actions, given the procedural issues and complexities that can arise because of the class certification process." [Dkt. 12.] At minimum, this language suggests that the Parties intended flexibility on the submitted dates.

## DISCUSSION

Good cause exists to reset the amended pleading deadline. As discussed above, discovery is in its infancy, and there are no imminent deadlines. In addition, only recently has the timing of this come into more focus, with Defendant's July 31 representation that it could complete its outstanding production within 45 days, and with the Parties' recent

9

resolution of issues pertaining to the forthcoming foreign discovery. Plaintiff will also send an initial list of 30(b)(6) deposition topics to Defendant on or before August 14 (with hopes of taking this deposition in October or November) and is taking the first of his depositions on August 19.

More importantly, there have been significant post-deadline developments that contradict pre-deadline understandings and representations. At minimum, these developments warrant further investigation and discovery, without prejudice to the showing of "diligence" necessary to establish good cause. As such, rather than seek to amend now, Plaintiff believes that the more efficient approach is to reset the amended pleading deadline until discovery matures.

### I. Post-amendment developments

Since the June 12 amendment deadline, there have been significant developments that impact how Plaintiff would have dealt with the June 12 deadline and his FAC. Again, without casting blame, Defendant's 529-page August 9 production appears responsive to Plaintiff's very first Request for Production, served in March, and for which Defendant said production was complete. Specifically, Plaintiff's very first Request for Production sought "all DOCUMENTS and/or ESI" containing Plaintiff's telephone number. Defendant's August 9 production appears to contain Plaintiff's phone number, as well as additional data that may not only help clarify the source of Plaintiff's phone number, but also help refine the class definition.

This also is not the only post-deadline contradiction of a pre-deadline representation. For example, Defendant admitted in its May 17 responses to Plaintiff's

Third Set of Requests for Admission that "all communications identified in paragraph 15 of docket entry 1 were ringless voicemails sent through the VoiceLogic platform" and that "it is not aware of any communications to the subject number prior to October 19, 2023 that were made using something other than the VoiceLogic platform." Glapion Decl. ¶¶ 29-30. Defendant also repeatedly indicated in its May 28 written responses to Plaintiff's Second Set of Interrogatories that it "used VoiceLogic's platform in communicating with the subject number." Yet in its July 22 answer to Plaintiff's FAC, Defendant explicitly denied that it "utilized the ringless voicemail services of third-party entity VoiceLogic". [Dkt. 40, ¶ 45.]

Consider consent, as well. Prior to the deadline, Defendant repeatedly indicated in discovery responses that it had no idea where it obtained Plaintiff's phone number and could not find evidence of consent. Glapion Decl., ¶¶ 33-34. Yet as discussed above, on July 8, Defendant's short-lived counsel, Attorney Heeringa, indicated to Plaintiff's counsel that Defendant had located such evidence and would provide it shortly. *Id.* at ¶ 21. To date, nothing has been provided, and Attorney Heeringa is no longer on the case. In its July 22 answer, Defendant was back to indicating it "lacked knowledge or information" as to whether "Plaintiff []ever provided Defendant with his telephone number in the first place." [Dkt. 40, ¶ 35.]

At a certain point, regardless of culpability, mulligans for one party should not be at the expense of the other. If Plaintiff knew that Defendant's April 19 production was not even *close* to complete, Plaintiff would have treated the deadline (and his FAC) differently. If Plaintiff knew that there was some distinction Defendant was drawing between using

11

VoiceLogic's platform to send ringless voicemails and utilizing VoiceLogic's ringless voicemail services, Plaintiff would have treated the deadline (and his FAC) differently. So on and so forth. Plaintiff is confident Defendant did not act maliciously, but there should nevertheless be some recourse for how the process played out. Plaintiff is not asking for much. Discovery is still early and there are no imminent deadlines. Resetting the amended pleading deadline as requested herein would prejudice no one.

Defendant has indicated it intends to oppose this Motion because Plaintiff "should have known that he might need to file additional amendments." At a high level, this is true. This is a putative class case with potentially millions of dollars at stake, being vigorously litigated by capable attorneys. The need for subsequent amendments was a foregone conclusion. But this is a red herring. The issue here is *not* whether Plaintiff knew about the abstract possibility of future amendments. The issues are whether Plaintiff had a fair opportunity (1) to meaningfully and accurately amend his complaint prior to the deadline and (2) to determine whether it was necessary to seek modification of the deadline prior to the deadline.

"[A] party ordinarily will have the benefit of a responsive pleading and some discovery before it faces a deadline for amendment of pleadings." *Pinnacle Great Plains Operating Co., LLC v. Wynn Dewsnup Revocable Tr.*, 2015 WL 759003, at *3 (D. Idaho Feb. 23, 2015). While Plaintiff technically had "some discovery" before the amendment deadline, both Parties, through no obvious fault of either, believed Plaintiff had more than he did.

    II.    **<u>The timing of Defendant's production has become clearer.</u>**

Practically speaking, only recently has the timing of discovery come into more focus. The Parties have spent significant amounts of time sorting through numerous objections and production issues. The Parties conducted Rule 37 meetings on at least six occasions (April 19; May 31; June 21; June 25; July 23; August 13), and it was not until June 25 that Defendant indicated when additional production beyond the initial 31 pages would begin. It was not until July 12 that production began. It was not until July 31 that an estimated date of completion was given (September 14). And it was not until August 9 that some class data was provided.

The Parties have also resolved issues surrounding the letters rogatory, which Plaintiff intends to move for imminently. Plaintiff will send an initial list of 30(b)(6) deposition topics to Defendant on or before August 14 (with hopes of taking this deposition in October or November). Plaintiff is taking the first of his depositions on August 19 (of an individual witness).

Though the lack of clarity would not necessarily have prevented Plaintiff from asking to move the pleading deadline prior to the deadline, it nevertheless makes the instant Motion more grounded than it would have been previously.

### III. **Efficiency favors a reset of the deadline.**

Defendant expressed concerns that a reset of the deadline would encourage multiple amendments to the pleadings. Respectfully, Defendant has it backwards. Plaintiff intends to seek leave to amend as many times as is proper and necessary to litigate this case. But requiring Plaintiff to show diligence with respect to each amendment broadens the umbrella of what is "necessary". Plaintiff would be encouraged to err on the side of

13

caution to preserve diligence, potentially seeking more frequent amendments than might otherwise be the case. It becomes amendment-by-a-thousand-cuts. This would likely not matter if discovery were near its end, but the bulk of discovery remains ahead. With a reset pleading deadline, however, Plaintiff can make more comprehensive amendments, evaluated under the more lenient Rule 15 standard.

In a way, this Motion illustrates the point. On August 6, Plaintiff sought Defendant's position on the Motion. On August 12, Defendant indicated it would oppose. On August 13, the Parties conducted a meet-and-confer on other issues but touched on this Motion. While Defendant did not suggest it would change its mind, the diligence requirement becomes incrementally more difficult to show with each passing day, leaving no time to explore a possible compromise.

It is true that most cases dealing with amended pleadings, including those cited previously, primarily consider the "good cause" standard in the context of an actual proposed amended complaint, but there is no reason to limit the principle to such an *ad hoc* evaluation. In a case like this, where it is undisputed that most of the discovery remains ahead, a brief reset of the amended pleading deadline is the better approach. Plaintiff's requested reset to September 30 poses no threat to this case's progress toward trial, and the next key deadline is not until December 13. Though it seems likely that the Parties will ultimately seek to move this deadline, that will have nothing to do with a pleading deadline that expires 2.5 months prior.

Accordingly, given Defendant's optimism that it will complete outstanding production on or before September 14, Plaintiff believes a reset of the amendment

14

deadline of September 30 would be sufficient. While the Parties may end up requesting additional changes, given the proximity to other deadlines, such requests would likely be made in the context of a larger change to the schedule.

## CONCLUSION

Plaintiff respectfully requests that amended pleading deadline be reset to September 30, 2024.

Dated: August 13, 2024                    s/ Jeremy M. Glapion

Jeremy M. Glapion
The Glapion Law Firm, LLC
1704 Maxwell Drive
Wall, New Jersey 07719
Tel: 732-455-9737
Fax: 732-965-8006
jmg@glapionlaw.com

Counsel for Plaintiff and the Putative Classes

## CERTIFICATION OF SERVICE

I hereby certify that on August 13, 2024, I filed the foregoing document using the CM/ECF system which will send notice of electronic filing to all counsel of record.

## CERTIFICATION OF CONFERRAL

Pursuant to the rules of this Court, Plaintiff certifies that he conferred with Defendant's counsel regarding the relief sought in this Motion, and that Defendant indicated its intent to oppose the Motion.

s/ Jeremy M. Glapion