**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| **RASHAD WALSTON,** on behalf of himself and all others similarly situated,<br><br>**Plaintiff,**<br><br>v.<br><br>**NATIONAL RETAIL SOLUTIONS, INC. D/B/A NRS PAY,**<br><br>**Defendant.** | Civil Case No.: 24-cv-83<br><br>District Judge: Hon. Sunil R. Harjani<br>Magistrate Judge: Jeffrey T. Gilbert |

**PLAINTIFF'S MOTION TO COMPEL PRODUCTION OF UNREDACTED DOCUMENTS**

With minimal explanation outside of a hypothetical fear of solicitation, Defendant has refused to produce the unredacted telephone numbers of putative class members to whom Defendant placed the calls at issue. These telephone numbers are relevant and crucial to several issues.

For example, to certify the currently proposed class, Plaintiff must show which telephone numbers to which Defendant placed its calls are cellular. To establish class member damages, Plaintiff must show which calls went to which cellular telephone numbers. To narrowly tailor discovery in the way Defendant has repeatedly insisted, Plaintiff must limit that discovery to specific telephone numbers called as part of specific campaigns. At worst, Plaintiff cannot do any of this without the full telephone numbers. At best, denying Plaintiff access to the full telephone numbers forces Plaintiff to litigate at a severe disadvantage that leaves his case more vulnerable than would be the case if

1

Plaintiff were simply given access to the same information that Defendant has had since this case began.

More broadly, with discovery *not* bifurcated, so long as the full telephone numbers are relevant to *anything*, discovery of those full telephone numbers is permitted now rather than at some point linked to class certification.

Accordingly, as discussed in more detail below, Plaintiff asks that the Court compel Defendant to produce the unredacted list of putative class member telephone numbers.

## BACKGROUND

### I. Plaintiff's Claim.

On January 3, 2024, Plaintiff filed the instant litigation alleging that Defendant made prerecorded telemarketing telephone calls to Plaintiff and others similarly situated without their consent, in violation of the TCPA. Such a claim requires Plaintiff to show that 1) Defendant placed (or had placed on its behalf) a telephone call, 2) to a cellular telephone, 3) using a prerecorded or artificial voice. *See, e.g., Cunningham v. Foresters Fin. Servs.*, 300 F. Supp. 3d 1004, 1014 (N.D. Ind. 2018); *Mehaffey v. Navient Sols., LLC*, 544 F. Supp. 3d 1128, 1132 (D. Col. 2021). While a few cases mention consent as an element, in the Seventh Circuit, "[p]rior express consent is an affirmative defense on which [defendant] bears the burden of proof." *Craftwood II, Inc. v. Generac Power Sys., Inc.*, 63 F.4th 1121, 1127 (7th Cir. 2023); *see also, e.g., Blow v. Bijora, Inc.*, 855 F.3d 793, 803 (7th Cir. 2017); *Paldo Sign & Display Co. v. Wavener Equities, Inc.*, 67 F. Supp. 3d 874, 884 (N.D. Ill. 2014).

## II.     Discovery at issue.

On August 9, 2024, as part of the rolling production discussed during the July 31 status conference with the Court, Defendant produced a heavily redacted 529-page document containing the first significant class data. As initially produced, this document contained four columns with the headers left unredacted. The first column contained approximately 17,000 telephone numbers, redacted except for the last four numbers of each. Defendant completely redacted the data beneath the second, third, and fourth headers.

Plaintiff immediately sought a Rule 37 conference on the propriety of these redactions. On August 13, the Parties conferred in good faith as required. On this call, Defendant's counsel indicated that the document was a list of telephone numbers associated with campaigns containing the key phrases in the current class definition.[1] Declaration of Jeremy M. Glapion ("Glapion Decl."), ¶¶ 4-5. Defendant's counsel proposed potentially stipulating that some or most of the telephone numbers were cellular telephone numbers, but Plaintiff declined. *Id.* at ¶ 6. On August 16, Defendant's counsel confirmed it would not produce the phone numbers in unredacted form but re-produced the documents fully unredacted otherwise.[2] *Id.* at ¶ 7.

---

[1] Between January 3, 2020 and January 3, 2024, all persons within the United States to whose cellular telephone number Defendant sent, or had sent on its behalf, a telephone call (including a ringless voicemail) using a prerecorded message containing the phrase(s) "check out nrspay.com" and/or "if you process over" and/or "to learn more" and/or "free credit card reader". [Dkt. 35, ¶ 64.]

[2] In an abundance of caution, Plaintiff is being intentionally vague as to the data in the document beyond the phone numbers because the document is marked confidential pursuant to the confidentiality order entered in this matter. To the extent it matters, these columns did *not* contain

3

**DISCUSSION**

I. **Plaintiff is entitled to the unredacted phone numbers.**

"Courts in TCPA cases have repeatedly held that outbound call lists which contain the names and telephone numbers of plaintiffs and putative class members called by defendant or by others on defendant's behalf are relevant to numerosity, commonality, and typicality and are therefore discoverable." *Gebka v. Allstate Corp.*, 2021 U.S. Dist. LEXIS 41078, *21 (N.D. Illinois Mar. 4, 2021) (collecting cases); s*ee also, e.g., Fralish v. Digital Media Solutions*, 2021 U.S. Dist. LEXIS 225281, *27 (N.D. Ind. Nov. 17, 2021); *Frey v. Frontier Utils. Northeast LLC*, 2020 U.S. Dist. LEXIS 260620, *5 (E.D. Pa. Apr. 13, 2020) (ordering production of outbound call list as relevant to class certification because they can be used to identify which calls were made to cell phones); *Medina v. Enhanced Recovery Co., Ltd. Liab. Co.*, 2017 U.S. Dist. LEXIS 186651, *9 (S.D. Fla. Nov. 9, 2017) ("Outbound call lists are relevant in TCPA class actions to establish the numerosity and commonality requirements for class certification under Rule 23, as well as to prove the merits of Plaintiffs' claims.") (collecting cases).

The relevance of such "call logs, transmission summaries, outbound call lists, and the information contained therein" is even more pronounced in cases, like here, where the case is not bifurcated[3] and such information is "relevant both to the merits of Plaintiff's

---

class member identifying information and have no bearing on the need for the phone numbers as discussed herein.
[3] The fact discovery is not bifurcated is really the ball game. If the full phone numbers are relevant to anything in this case, from now through trial, then Plaintiff may discover them during the singular discovery period.

claims and to … [Rule 23 requirements].” *Warren v. Credit Pros Int'l Corp.*, 2021 U.S. Dist. LEXIS 79150 (M.D. Fla. Apr. 26, 2021) (collecting cases).

In general, cases denying discovery of class member information appear to do so only when the information sought has no relevance to the issues of the case and is instead sought solely to contact putative class members (such as to provide notice). *See Oppenheimer Fund v. Sanders*, 437 U.S. 340, 353-54 (1978).

Both Your Honor and Judge Harjani have previously addressed similar requests. In 2021, Judge Harjani compelled the production of a company's internal "do not call" list (containing phone numbers) over the defendant's objections because the information was relevant to, among other things, class certification (including numerosity) and standing. *Hossfeld v. Allstate Ins. Co.*, 2021 U.S. Dist. LEXIS 199023, *8-12 (N.D. Ill. Oct 15, 2021) (Harjani, J.)

By contrast, a few months later, Your Honor denied a request for putative class member address and phone information in a TCPA case. *Bilek v. Nat'l Cong. of Employers, Inc.*, 2022 U.S. Dist. LEXIS 30611 (N.D. Ill. Feb. 22, 2022). But as Your Honor noted, the plaintiff in *Bilek* did "not argue that putative class members' names and addresses are critical or even relevant to her ability to support class certification in this case under" Rule 23. *Id.* at *4. Similarly, the case cited in footnote 1 of *Bilek* rejected compelling the disclosure of such information when the plaintiff did not argue she needed it for anything she did not already have. *Id.* at *6 n.1 (citing *Swelnis v. Universal Fid. L.P.*, 2014 U.S. Dist. LEXIS 53058 (N.D. Ind. Apr. 17, 2014)).

5

Plaintiff's request and case here are different from *Bilek*. The class member information sought is narrower—phone numbers rather than name and address information—and directly relevant to several class certification and merits issues, discussed below.

    a. <u>Telephone numbers of putative class members are relevant to class certification.</u>

Plaintiff's class definition is limited to "cellular telephone numbers." To establish numerosity, Plaintiff must identify which of the 17,000 telephone numbers were cellular. But this is only part of the inquiry. Plaintiff must also show that Defendant placed (or had placed on its behalf) calls to those numbers and that those calls used a prerecorded voice. Plaintiff is unsure how he can show either if he is prevented from knowing the telephone numbers.

To illustrate, if Defendant is permitted to keep telephone numbers secret, Plaintiff would have no way to match any forthcoming production of call logs to a particular telephone number, let alone to a cellular telephone number. Plaintiff must see the telephone numbers to whittle the list down to cell phone numbers and then match call logs to those numbers accordingly to establish numerosity.

This is also why a stipulation that most telephone numbers were cellular telephones would be insufficient. Such a stipulation only gets Plaintiff part of the way to numerosity and deprives Plaintiff of the information needed to finish the journey.

It is also unclear how reliable Defendant's stipulation would be. Defendant has previously admitted it did not distinguish between landline and cellular telephone

6

numbers. For example, Defendant admitted Request for Admission 30, which asked it to "ADMIT that YOU did not distinguish between cellular and non-cellular telephone numbers prior to providing those telephone numbers to VoiceLogic." Glapion Decl., ¶ 10. Plaintiff is unsure how Defendant can stipulate a count of cell phone numbers if it did not distinguish between cell phones and non-cell phones.

Numerosity is not the only reason Plaintiff needs the numbers for class certification. Plaintiff must also demonstrate superiority, which requires courts to address class member identification issues under the "likely difficulties of managing a class action" prong. *Practice Mgmt. Support Servs. v. Cirque Du Soleil, Inc.*, 301 F. Supp. 3d 840, 857 (N.D. Ill. 2018) (citing *Mullins v. Direct Digital, LLC*, 795 F.3d 654 (7th Cir. 2015)). Plaintiff will need to show that his ability to identify class members successfully—e.g., identifying which telephone numbers were cell phones, who got what calls, and what was the content of those calls—is comparatively superior to alternatives. Without the telephone numbers, Plaintiff can offer a plan to identify class members but is deprived of the ability to demonstrate the feasibility of that plan, making it more vulnerable to attack.

    b. <u>The telephone numbers are relevant to consent.</u>

For a telemarketer to be liable for making prerecorded calls to cellular telephones, it must have made the calls without consent. The type of call dictates the type of consent needed. For telemarketing calls, the TCPA requires "prior express written consent." 47 C.F.R. § 64.1200(a)(2). "Prior express written consent" means a written agreement "clearly authoriz[ing] the seller to deliver or cause to be delivered to the person called ... telemarketing messages using an automatic telephone dialing system or artificial or

7

prerecorded voice[.]" 47 C.F.R. § 64.1200(f)(9). As discussed previously, consent is an affirmative defense, which Defendant raised in its answer. [Dkt. 40, pp. 29-33.]

If Defendant intends to oppose class certification or the merits of any putative class member's claim on the grounds of consent, Defendant must produce evidence (i.e., the written agreement) supporting that consent. As such, discovery requests seeking Defendant's evidentiary support for any consent defense as to each class member are categorically proper to the merits of the defense, as well as to commonality and typicality under Rule 23. *See, e.g., Gossett v. CMRE Fin. Servs.*, 142 F. Supp. 3d 1083, 1087-89 (S.D. Cal. 2015); *Martin v. Bureau of Collection Recovery*, 2011 U.S. Dist. LEXIS 157579, *5-6, *11 (N.D. Ill. June 13, 2011) (compelling answer to interrogatory seeking all information and documents supporting consent because "this discovery is not only relevant to the merits of [defendant]'s affirmative defense, but it will demonstrate that each class member is like Plaintiff as to this defense").

Because discovery is not bifurcated, Plaintiff can make such requests in the singular discovery period rather than after class certification. Plaintiff can either ask for Defendant's evidence of consent for all numbers on the list—which, for reasons discussed in the next section, Defendant will resist—or Plaintiff can narrow the list to cellular telephone numbers and serve requests that way. To do the latter, Plaintiff needs the full telephone numbers.

    c. <u>The telephone numbers are relevant to damages.</u>

As the class is currently defined, only those persons to whose cell phone Defendant placed calls using a prerecorded message containing specific key phrases are in the class.

However, this does *not* mean those class members may only recover damages for calls containing one of those key phrases. While "key phrase" calls determine who is in the class as currently defined, *all* prerecorded telemarketing calls without consent to those persons are relevant to determining their statutory damages.

Consider a hypothetical class member, Jim. Jim never provided Defendant consent for calls. Nevertheless, Defendant placed 21 calls using a prerecorded voice to Jim's cellular telephone. All 21 calls were telemarketing. Of those 21 calls, only one used a script containing a class phrase ("check out nrspay.com"). This call makes Jim a class member. The other 20 calls, while identical in telemarketing purpose, instead used a script that said, "check out nrspay.net." Those calls are irrelevant to Jim's class membership but are still part of Jim's statutory damages calculation. The class definition determines who may recover; the cause of action defines what they may recover.

Why does this require the production of the numbers? Because Defendant has repeatedly objected to requests seeking information on communications that do not contain one of the key phrases in the class definition and withheld documents based upon this objection. Glapion Decl., ¶¶ 10-11. Compounding this issue is that Defendant has repeatedly raised objections that Plaintiff's discovery requests are overbroad in that they seek information on calls that were not sent to non-cellular telephones.[4]

---

[4] For example, Defendant made an objection substantively identical to the following on five occasions in its June 10 response to Plaintiff's Third Set of Requests for Production: "Request is likewise objectionable to the extent it seeks documents reflecting communications that were … to non-residential landline numbers, which are irrelevant to Plaintiff's claims." Defendant has not said it is withholding documents on this specific ground. Glapion Decl., ¶¶ 12-13.

9

While we are not here to litigate the merits of these objections, Defendant cannot have it both ways. Defendant cannot 1) withhold data on calls containing non-class phrases because it might cover calls to non-class members and 2) object to requests for communications to non-cell phones while also withholding the documents and information that would allow Plaintiff to narrow his discovery in the way Defendant insists. With the unredacted list, Plaintiff could extract all cell phones from the list and request production of all prerecorded telemarketing calls directed to those cell phone numbers, addressing Defendant's concerns. Without the list, he cannot.

In addition, Defendant has repeatedly suggested throughout this case that it intends to argue that Plaintiff needs to prove a ringless voicemail was successfully transmitted for the intended recipient to recover and that Defendant believes Plaintiff cannot do so. Glapion Decl. ¶¶ 14-15. Plaintiff disagrees, but if Defendant wants to make this argument, then Plaintiff is entitled to the unredacted telephone numbers to rebut this argument through some of the numerous ways that courts have previously approved (e.g., subpoenas to carriers).

**II. Defendant's concerns about Plaintiff's counsel contacting class members are unfounded and insufficient to withhold discovery.**

During the August 13 call, Defendant's main concern was that Plaintiff's counsel would solicit new clients using the class list. This paranoia is insufficient grounds to withhold production. "[P]laintiffs have a right to contact members of the putative class." *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 101 (1981); *see also Williams v. Chartwell Financial Servs., Ltd.*, 204 F.3d 748, 759 (7th Cir. 2000).

While District courts have the authority to restrict communications between parties and prospective class members, this discretion is not unlimited. *Gulf Oil Co.*, 452 U.S. 89 at 101. "[A]n order limiting communications between parties and potential class members should be based on a clear record and specific findings that reflect a weighing of the need for a limitation and the potential interference with the rights of the parties." *Id.* at 102. "[S]uch a weighing ... should result in a carefully drawn order that limits speech as little as possible[.]" *Id.* A district court "may not exercise the power" to restrict certain communications with class members "without a specific record showing by the moving party of the particular abuses by which it is threatened." *Id.* Put another way, a court may only restrict communications with a putative class where the potentially restricted party has engaged in or has threatened to engage in "coercive, misleading, or other abusive communications." *Reid v. Unilever U.S., Inc.*, 964 F. Supp. 2d 893, 926 (N.D. Ill. 2013). This is because such restrictions involve "serious restraints on expression" which require "caution on the part of a district court in drafting such an order, and attention to whether the restraint is justified by a likelihood of serious abuses." *Id.* at 104.

In 15 years of practice, Plaintiff's counsel has never been accused of improperly soliciting clients despite multiple significant TCPA class actions. If Plaintiff's counsel were to obtain an additional named plaintiff for the case against Defendant, whether on the list or not, Defendant is free to depose that plaintiff and explore improper solicitation and inducement at that time. But, as it stands, Defendant's concerns that Plaintiff's counsel might hypothetically contact witnesses to hypothetically improperly solicit these witnesses

11

to hypothetically bring additional cases against Defendant cannot prevent Plaintiff from obtaining evidence needed for his decidedly non-hypothetical case.

In addition, it would be inequitable to restrict Plaintiff from contacting putative class members when Defendant has had an unrestricted and unmonitored ability to do so for nearly a year. Whether Defendant took advantage of this head start is both unknowable and beside the point. What is good for the goose is good for the gander.

Even if the Court is inclined to credit Defendant's concerns about class member solicitation, the solution is *not* to permit Defendant to withhold class member contact information, but instead craft a narrowly tailored restriction on the Parties' ability to use that information.

## **CONCLUSION**

For the reasons above, Plaintiff respectfully requests that the Court compel Defendant to produce the unredacted list of telephone numbers.

Dated: August 22, 2024

s/ Jeremy M. Glapion
Jeremy M. Glapion
The Glapion Law Firm, LLC
1704 Maxwell Drive
Wall, New Jersey 07719
Tel: 732-455-9737
Fax: 732-965-8006
jmg@glapionlaw.com

Counsel for Plaintiff and the Putative Class

**CERTIFICATION OF SERVICE**

I hereby certify that on August 22, 2024, I filed the foregoing document using the CM/ECF system which will send notice of electronic filing to all counsel of record.

**CERTIFICATION OF RULE 37.2 COMPLIANCE**

On August 13, 2024, the Parties conferred telephonically on, among other things, the production of unredacted telephone numbers as discussed herein. Defendant indicated it would get back to Plaintiff. On August 16, Defendant informed Plaintiff via telephone that it would not produce the unredacted telephone numbers.

s/ Jeremy M. Glapion