```
                IN THE UNITED STATES DISTRICT COURT
                   NORTHERN DISTRICT OF ILLINOIS
                          EASTERN DIVISION


 RASHAD WALSTON, on behalf    )   Docket No. 24 CV 83
 of himself and all others    )
 similarly situated,          )
                              )
               Plaintiff,     )
                              )   Chicago, Illinois
          -vs-                )   June 11, 2024
                              )   9:45 o'clock a.m.
 NATIONAL RETAIL SOLUTIONS,   )
 INC., d/b/a NRS PAY,         )
                              )
               Defendant.     )


            TRANSCRIPT OF VIDEO PROCEEDINGS - Motion
            BEFORE THE HONORABLE SUNIL R. HARJANI


 APPEARANCES:

 For the Plaintiff:      GLAPION LAW FIRM LLC
                         BY:  MR. JEREMY M. GLAPION
                         1704 Maxwell Drive
                         Wall, New Jersey 07719

 For the Defendant:      WATSTEIN TEREPKA LLP
                         BY:  MR. RYAN D. WATSTEIN
                              MR. PATRICK J. FITZGERALD
                         1055 Howell Mill Road NW
                         8th Floor
                         Atlanta, Georgia 30318




                Laura LaCien, CSR, RMR, F/CRR
                     Official Court Reporter
                  219 South Dearborn Street
                          Suite 1728
                    Chicago, Illinois 60604
                         312.408.5032
```

1    (Proceedings heard in open court:)
2    COURTROOM DEPUTY: 24 C 83, Walston v. National
3    Retail. Would the parties please state your name for the
4    record starting with plaintiff's counsel?
5    MR. GLAPION: Good morning, everyone. Good
6    morning, your Honor. Jeremy Glapion on behalf of plaintiff
7    Walston.
8    MR. WATSTEIN: Good morning, your Honor. Ryan
9    Watstein and Patrick Fitzgerald on behalf of the defendant.
10   THE COURT: Okay. Good morning. This is Judge
11   Harjani here.
12   So I am holding this hearing on the motion to
13   enforce the settlement and I'm a little puzzled by this. You
14   know, this allegedly happened -- this settlement -- alleged
15   settlement happened in January. It is now in June. You've
16   gone through a lot of discovery since then. Out of the blue,
17   you're telling me that there's a settlement with the
18   plaintiff. I look at the letter that purportedly accepted a
19   settlement and it says "the settlement payment is contingent
20   upon plaintiffs executing a written agreement containing full
21   releases of his claims, confidentiality provisions, and other
22   customer terms." So, I mean, by its own terms, your
23   acceptance is contingent. Plaintiff says in response to this
24   "there's no settlement, we don't accept." That generally
25   ended matter.

1            You know, you had a contingent acceptance and the
2    contingency was not accepted by or agreed to by the plaintiff
3    so this seems pretty straightforward to me.  I'm not sure
4    what we're doing here arguing about this alleged settlement
5    and what I don't understand is why don't you actually try to
6    settle this case versus trying to jam something down that
7    happened late last year and litigate the matter before me.
8            So with that, I kind of want to understand what's
9    really going on and, you know, are you really interested and
10   can you really get this settled?  Can I send you to the
11   Magistrate Judge and actually try to get a settlement that
12   both sides agree with where there's a meeting of minds and
13   all the terms listed?  I'm not going to rule today on this
14   motion.  I'm going to write something up but I can pretty
15   much tell where I'm going with this.
16           So let me hear from defendant first.  You brought
17   the motion.
18           MR. WATSTEIN:  Sure.  Thank you, your Honor.  And
19   for some reason, I can't see anyone but I take it you can see
20   me.  Yes?
21           THE COURT:  Yes.
22           MR. WATSTEIN:  Okay.  And I can hear you fine.
23           So let me just -- let me just address the exact
24   points that you raised about the acceptance and the letter.
25   So there was, as your Honor knows -- and I'm not sure if

1   you've had a chance to read our reply brief which we filed
2   last night.
3               THE COURT:  I read everything.
4               MR. WATSTEIN:  Okay.
5               THE COURT:  I read it all.
6               MR. WATSTEIN:  Okay.  So there was this
7   conversation in November between the CEO of our client
8   Mr. Katz and the plaintiff before his counsel made an
9   appearance.  Plaintiff agrees -- plaintiff's counsel agrees
10  in his briefing that there was an offer extended by the
11  plaintiff during that call of several thousand dollars.  We
12  said five, but it's three, four, $5,000, at least; it doesn't
13  have to be the full 9,800.  It's also undisputed that
14  confidentiality was a term and that in exchange, plaintiff's
15  TCPA claims would be released.  So those are the material
16  terms:  A payment, confidentiality, and a release.
17              The letter that was sent by NRS accepting the
18  settlement mirrors those exact terms.  And, yes, it says
19  there will be a written agreement.  But respectfully, your
20  Honor, the written agreement is only memorializing those
21  terms because, again, this discussion was oral so there has
22  to be something -- whether it's an email or a long-form
23  agreement or whatever it is -- where the plaintiff agrees
24  that, yes, those are the terms that we agreed to.  And if the
25  plaintiff had said I dispute what occurred during that

1  November call, then we would have -- we would have said,
2  okay, well, we're moving to enforce those terms:
3  Confidentiality, the payment, and a release.
4              THE COURT:  Can I ask you why --
5              MR. WATSTEIN:  Sure.
6              THE COURT:  -- this is coming up now six months
7  later?
8              MR. WATSTEIN:  Absolutely.  Absolutely, your Honor.
9  That is a fair question and the answer is simple.
10             As -- we knew, my firm knew as soon as we got
11 involved and we started speaking to Mr. Glapion, he was -- he
12 wants a class settlement that's going to net a substantial
13 amount of attorneys' fees.  He was never going to concede
14 that a settlement had occurred even though our client -- even
15 though plaintiff is the one who approached our client about
16 settlement and our client agreed to pay.
17             So what did we do?  We immediately, as soon as the
18 discovery period opened, we noticed the plaintiff's
19 deposition because we needed that in order to file a motion
20 to enforce the settlement agreement.  As soon as we got the
21 transcript, we drafted it.  As soon as it was done, two weeks
22 later we filed the motion.  That's what any advocate would
23 have done.  We couldn't have done it any faster.  And we
24 raised in our answer that we -- that we believed there was a
25 settlement.

1            So as we noted in the reply, it would have been
2    terrible advocacy on my behalf to shout from the rooftops,
3    hey, let me preview for you before the plaintiff's
4    deposition --
5            THE COURT:  Okay.  Thank you.  I don't have -- I
6    don't have, you know, very much time to, you know, hear this
7    out.  I have everything you wanted in the papers.  I just
8    have a few questions.
9            MR. WATSTEIN:  Sure.
10           THE COURT:  Okay.  That's kind of how I do my
11   arguments.
12           Plaintiff, you know, the issue is going to be
13   whether or not this letter encompasses the material terms of
14   the settlement and whether your client made an offer with
15   those material terms I assume orally based on what I'm
16   hearing.  Can you talk to me about that for a second?
17           MR. GLAPION:  Yes, your Honor; and thank you.  I
18   think your Honor hit -- sort of hit the nail on the head at
19   the beginning.  This was not a letter saying, you know, we
20   accept what was talked about on the call.  It was a letter
21   saying we're going to pay you some amount more than what the
22   apparent demand was -- which I've been doing this awhile now,
23   it would be the first time I've ever seen that -- and in
24   exchange we need you to agree to these terms.  It was
25   contingent upon it by their own language.  It was expressly

1  contingent upon these additional terms.  It was not we'll pay
2  you this subject to what we talked about on the call.  It was
3  not referring to the November 13th conversation.  There was
4  no meeting of the minds on those terms, nor did it mirror.
5          Even if we were to say -- you know, because I don't
6  think we -- I don't want to get into an evidentiary hearing
7  because I don't think it's needed because even on what was
8  submitted, there is no settlement here.  So even if we say
9  that, you know, plaintiff said, yeah, sure, if we agree to
10 something, I'll keep it confidential, the reality is there
11 were still additional terms that they insisted on.  They made
12 it contingent upon a written agreement; not saying we will
13 memorialize this in a written agreement.  They made it
14 contingent upon confidentiality provisions which the scope of
15 which varies wildly in these cases.  They made it contingent
16 upon other terms.  They put the word "customary" in there but
17 you ask ten attorneys what customary terms are, you're going
18 to get ten different answers.  So there was no meeting of the
19 minds on this.
20         And in Illinois in particular, it's incredibly
21 strict in terms of what the mirror image rule means to the
22 point of where, if you put the wrong date on a settlement and
23 unilaterally correct it, it's been found to be
24 acknowledged --
25         THE COURT:  Can I ask you, with respect to this

1  particular situation -- I understand it was, you know, some
2  things happened in October and I appreciate that that had an
3  expiration date associated with it.  But with respect to
4  this -- this particular situation that resulted in the
5  January 3rd letter, are those just oral conversations?
6              MR. GLAPION:  My belief is that the January 3rd
7  letter intended to respond to the October 19th demand and
8  this sort of -- that -- this reference to the November 13th
9  conversation is a fiction based on the fact that that October
10 19th demand was quite clearly expired or rejected by that
11 point.  So I think there was a -- we're sort of retconning
12 the reality of the situation.
13             I mean, the letter clearly references we have
14 authority to accept your $9,800 settlement demand contingent
15 on these terms.  The only 9,800 settlement demand was the
16 October --
17             THE COURT REPORTER:  Oh, I'm sorry.  Excuse me.
18 Judge -- I'm sorry, Judge.  This is the court reporter.
19             Mr. Glapion, can you just back up a little bit and
20 slow down?
21             MR. GLAPION:  I'm sorry.  I apologize.
22             THE COURT REPORTER:  I have "the letter clearly
23 references we have authority to accept."  Go ahead.  Thank
24 you.
25             MR. GLAPION:  I apologize.  I'll slow down.  The

1  letter clearly references a 9,800 demand.  The only time a
2  $9,800 settlement demand was made was that October 19th
3  letter.  So to say we're responding to -- to now say we're
4  responding to a $5,000 oral demand and referred to that as
5  your $9,800 demand doesn't track.  So I think -- well,
6  obviously the representation now is that it was October 13th.
7      THE COURT:  Okay.  I understand.  I understand your
8  argument.
9      Okay.  I have this briefed.  If I need to have an
10 evidentiary hearing, I might, which will require calling in
11 your various people to testify in court so I can make some
12 credibility determinations if I need to.  I will review the
13 papers more carefully particularly since the reply brief was
14 just filed.  I did read it but I want to spend a little more
15 time on it.
16     My bigger question is before we just fight over
17 this, we're fighting over whether or not there's a
18 settlement.  How about we actually try to get a settlement
19 done?  So, plaintiff, I guess my question is are you
20 interested in a settlement on an individual basis and not a
21 class basis?
22     MR. GLAPION:  Not on an individual basis at this
23 point, your Honor.
24     THE COURT:  Okay.  And, defendant, are you
25 interested in a settlement on a class basis?

1        MR. WATSTEIN:  No, your Honor, but we would be
2    interested in a settlement on an individual basis obviously
3    which is what the plaintiff proposed to us at the outset.
4        THE COURT:  Yeah.  I mean, plaintiff's counsel, it
5    wasn't that long ago that your client was interested in an
6    individual basis settlement, I mean, a mere maybe six, seven
7    months ago.  Why not try to actually start that up?  I don't
8    know what the number is going to be and, you know, you'd work
9    out what that number is.  It doesn't have to necessarily be
10   the number here but is your client at all interested in that?
11       MR. GLAPION:  I -- my understanding is no and I
12   think part of that is the -- when my client had initiated the
13   individual conversations, it was a pro se situation.  And
14   when we got into retaining counsel and looking into, you
15   know, do you even have any evidence of consent, do you have
16   any evidence of that you didn't make these calls, anything
17   along those lines, it started to become obvious that this was
18   a fairly egregious and widespread circumstance.
19       And then I think -- although, you know, it's not
20   attached or anything; but in the deposition transcript, they
21   ask, say, ten ways from Sunday, you know, why do you want to
22   do this as a class and my client was pretty firm that, you
23   know, this seems to have happened to a lot of people and I
24   want to get justice for those people.
25       Now I think the client's head is in that

1    representing others in this situation.  Obviously I am always
2    happy to confirm, clarify, double, triple check with the
3    client but we've had these conversations repeatedly and
4    he's -- he's in that mode of not interested at the moment.
5             THE COURT:  Okay.  So I'll tell you what, why don't
6    you check with your client and say, you know, the Judge has
7    asked about settlement, you were interested a mere, you know,
8    six, seven months ago, why not try to do that now.  You know,
9    your case still has quite a ways to go.  I can help you get a
10   mediator Magistrate Judge to negotiate that.
11            If your client is willing, send me an email by
12   Friday to my Courtroom Deputy and say, you know, we are
13   interested in a settlement on an individual basis.  If you're
14   not, send me the same email saying no.  But at least confirm
15   for me that you have conveyed my message.
16            Anytime people are fighting over whether there's a
17   settlement in place or not based on settlement discussions
18   ahead of time, my reaction is why don't you just try to
19   settle it for real, if you will, rather than fighting over
20   what -- who said what to who.  So just think about that and
21   let me know by Friday.  In the meantime, I'll review your
22   papers more carefully and issue a written ruling.
23            Okay.  I got to take the next case but I appreciate
24   your time.
25            MR. GLAPION:  Thank you, your Honor.

1  MR. WATSTEIN:  Thank you, your Honor.
2  (Proceedings concluded at 10:16 a.m.)

     C E R T I F I C A T E

I hereby certify that the foregoing is a complete, true, and accurate transcript of the proceedings had in the above-entitled matter before the Honorable Sunil R. Harjani at Chicago, Illinois, on June 11, 2024.

/s/*Laura LaCien*                    August 14, 2024
Official Court Reporter              DATE