IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| RASHAD WALSTON, on behalf of himself and all others similarly situated, | Case No. 1:24-cv-00083 |
| Plaintiff, | |
| v. | |
| NATIONAL RETAIL SOLUTIONS, INC. D/B/A NRS PAY, | |
| Defendant. | |

**DEFENDANT NATIONAL RETAIL SOLUTIONS, INC.'S
RESPONSE IN OPPOSITION TO PLAINTIFF RASHAD WALSTON'S
MOTION TO MODIFY SCHEDULING ORDER**

Defendant National Retail Solutions, Inc. ("NRS") files its response to Plaintiff Rashad Walston's ("Plaintiff") Motion to Modify Scheduling Order (Reset Pleading Deadline) (the "Motion"), along with his recently filed Supplemental Memorandum in Support[1]:

## I.  INTRODUCTION

This case has been pending since January 3, 2024.  From the start, Plaintiff knew that discovery may reveal information relevant to his pleadings.  Nevertheless, Plaintiff proposed a June 12, 2024 deadline to amend pleadings, which the Court adopted.  He then waited until two months after that deadline passed to file this Motion.  In it, Plaintiff is not simply asking to amend his complaint.  Instead, he wants the Court to reset the deadline to amend pleadings from June 12, 2024 until September 30, 2024 (based on NRS's anticipated completion of its

---

[1] Plaintiff filed the Supplemental Memorandum one day before the deadline for NRS's Response to the Motion.  NRS reserves the right to object to the Supplemental Memorandum.

discovery production). Such a significant modification requires a comparable showing of good cause—that Plaintiff diligently sought to amend the pleading deadline as soon as he believed additional amendments would be necessary. But Plaintiff concedes that he knew additional amendments were a "foregone conclusion." That concession is fatal and the Court must deny the Motion.

Rather than focus on when he knew additional amendments would be necessary, Plaintiff points to a series of events that he claims may have altered how he approached the pleading deadline, including the timing of NRS disclosing numbers uploaded to the VoiceLogic platform and campaign reports, which Plaintiff now claims are responsive to his First Set of Requests for Production (the "VoiceLogic Data"), A. Paul Heeringa representing NRS uncovered evidence of Plaintiff's consent, and NRS denying as stated that it utilized VoiceLogic's ringless voicemails in its Answer to the Amended Complaint. None of these developments change the fact that, based on his statements on the record, Plaintiff already anticipated making additional amendments by June 12.

Both parties knew that discovery was in its infancy as of June 12. Plaintiff served a deficiency on June 10 demanding (in response to his Second and Third Sets of Requests for Production) records showing "who you told voicelogic to call and for what purpose you told voicelogic to call them[.]" That NRS later provided an estimate as to when it would complete its production is the normal course of discovery and does not justify amending the scheduling order.

NRS isn't saying that the complaint is set in stone and Plaintiff should never be allowed to amend. If Plaintiff has a specific amendment, he can seek leave under Rules 15 and 16. The Federal Rules of Civil Procedure afford defendants that protection (*i.e.*, limiting

amendments to those supported by good cause) once the deadline to amend pleadings runs. That Plaintiff believes this approach is inefficient doesn't mean NRS must surrender that protection so Plaintiff may freely amend where it suits him.

## II. BACKGROUND

Plaintiff initiated this action on January 3, 2024, wrongly alleging NRS violated the TCPA by sending prerecorded voice messages. ECF No. 1. On March 18, 2024, the parties proposed a schedule for this case, including a June 12, 2024 deadline to amend pleadings—a date Plaintiff proposed. ECF No. 12; Declaration of Patrick Fitzgerald ¶ 4, attached hereto as Exhibit 1 ("Fitzgerald Decl."). The Court adopted that deadline on March 19. ECF No. 13.

Between March 18 and June 12, Plaintiff served 96 written discovery requests, including four sets of requests for production (54 requests), three sets of requests for admission (23 requests), and three sets of interrogatories (seven requests). Fitzgerald Decl. ¶ 5. Notably, the requests for communications in Plaintiff's First Set of Requests for Production ("First RFPs") were limited to communications to Plaintiff or 773-###-4088 (the "Subject Number"). *Id.* ¶ 6. On April 19, in response to the First RFPs, NRS disclosed, among other things, records of attempted communications to the Subject Number and VoiceLogic's terms of use. *Id.* ¶ 8.

The parties met and conferred regarding NRS's response to Plaintiff's First Set of Discovery on April 19, 2024. Fitzgerald Decl. ¶ 9. At the time, Plaintiff was threatening to postpone Mr. Walston's deposition unless NRS confirmed that it produced all documents responsive to the First Set of RFPs that counsel needed to prepare for that deposition (scheduled for April 26, 2024). *Id.* ¶ 7; *id.*, Ex. B. NRS confirmed that its April 19 production

3

was the complete set of documents Defendant intended to rely on for the deposition, assuaging Plaintiff's concern about deposition by surprise. *Id.* ¶ 9.

However, NRS did not represent that the production contained the entire universe of documents containing the Subject Number. *Id.* ¶ 10. NRS specifically told Plaintiff that it was still investigating where NRS obtained the Subject Number. *Id.* And NRS certainly never represented that the production included class discovery, like the VoiceLogic Data. *Id.* Plaintiff didn't demand class discovery pursuant to his First RFPs until August 21, 2024. *Id.* ¶ 10.

Plaintiff served his Second and Third Sets of Requests for Production on April 18 and 19, and, unlike his First Set of RFPs, those requests did include class discovery, like "[a]ll DOCUMENTS reflecting each telephone number to which YOU placed DIALED CALLS using the third-party platforms[.]" Fitzgerald Decl., Ex. C (Request for Production Nos. 28-30). NRS served its responses on June 10 and Plaintiff served a deficiency letter that same day, demanding, among other things, records showing "who you told voicelogic to call and for what purpose you told voicelogic to call them[.]" *Id.* ¶ 13; *id.*, Ex. E.

Accordingly, as of the June 12 deadline, both parties knew that NRS's production was not complete, including records of ringless voicemails through the VoiceLogic platform. *See also* Fitzgerald Decl. ¶¶ 12, 13. Plaintiff told the Court in his May 20, 2024 status report that he anticipated "additional written discovery being necessary from Defendant, but cannot predict the nature or volume *until Defendant's responses to the first four sets are reviewed*." ECF No. 21.

4

Despite knowing that discovery was ongoing, Plaintiff did not seek leave to extend the deadline to amend pleadings. Instead, on June 12, 2024, Plaintiff simply moved to amend his Complaint. ECF No. 29. And despite clearly being aware that this was the last day to amend his pleadings, Plaintiff contemplated future amendments in his motion to amend, even referring to his proposed class as a "*tentative* class definition[.]" ECF No. 29 ¶ 9. NRS, on the other hand, trusted that this would be Plaintiff's last amendment (absent good cause), so it did not oppose Plaintiff's motion to amend. ECF No. 33.

In his Amended Complaint, Plaintiff limited his class to persons who received a prerecorded message "containing the phrase(s) 'check out nrspay.com' and/or 'if you process over' and/or 'to learn more' and/or 'free credit card reader'" (the "Class Phrases"). ECF No. 29-1 ¶ 64.

NRS maintained that discovery was limited to communications that contained one of those Class Phrases. First, in the June 26, 2024 status report to Judge Gilbert. ECF No. 36 at 5 (explaining that Plaintiff "modifying the scope of his class definition" "alters the scope of discovery."). Additionally, in NRS's July 12, 2024 response to Plaintiff's Fifth Set of Discovery, NRS asserted objections to requests seeking communications "unlike the ones described in Plaintiff's class (*as defined by the Amended Complaint*)[.]" Fitzgerald Decl., Ex. F (emphasis added).

Consistent with that position, on August 9, 2024, NRS produced a list of telephone numbers uploaded to the VoiceLogic platform for the NRSPay and Fee Busters Cash Discount campaigns (the "VoiceLogic List"). Fitzgerald Decl. ¶ 16.

### III. STANDARD

"[A] scheduling order is not a frivolous piece of paper, idly entered, which can be cavalierly disregarded by counsel without peril." *Alight Sols. v. Thomson*, 2021 WL 5119111, at *2 (N.D. Ill. Nov. 3, 2021). Rather, a scheduling order "may be modified only for good cause shown and with the judge's consent." Federal Rule of Civil Procedure 16(b)(4); *Trustmark Ins. Co. v. Cologne Life Re of America*, 424 F.3d 542, 553 (7th Cir. 2005). "'[G]ood cause' imposes a more difficult standard than 'excusable neglect' because the former implies justification rather than excuse (negligence can be excused but not justified)." *Bowman v. Korte*, 962 F.3d 995, 998 (7th Cir. 2020). Good cause "primarily considers the diligence of the party seeking amendment." *Trustmark*, 424 F.3d at 553. "In other words, to establish 'good cause,' the party seeking the extension must show that despite its due diligence, it could not reasonably have met the scheduled deadline." *In re NorthShore Univ. Health Sys. Antitrust Litig.*, 2016 WL 11430714, at *1 (N.D. Ill. Mar. 29, 2016). Notably, "prejudice or lack thereof" "simply does not enter into the analysis." *Thomson*, 2021 WL 5119111, at *2.

In assessing diligence, the question is when the moving party knew or should have known they needed to amend and their subsequent efforts to seek an amendment. *Downing v. Abbott Lab'ys*, 2017 WL 4535973, at *4 (N.D. Ill. Oct. 11, 2017). As explained below, Plaintiff cannot establish diligence in seeking to amend the pleading deadline and the Court must deny his motion to amend.

### IV. ARGUMENT

Plaintiff knew that additional amendments would be necessary before the June 12, 2024 pleading deadline. Nevertheless, Plaintiff waited until two months after that deadline passed before asking for an extension. That precludes finding that Plaintiff acted with

6

diligence, and the Court must deny the Motion. None of the post-deadline developments that Plaintiff identifies excuse his failure to seek an earlier amendment, much less establish good cause. And while Plaintiff frames the Motion as a matter of efficiency, resetting the pleading deadline and relieving Plaintiff from his burden to show good cause for future amendments would defeat the purpose of Rule 16, allowing Plaintiff to inject new issues into this case at will and thus decreasing efficiency.

### A. Plaintiff Knew He May Want to Make Additional Amendments Before the June 12 Deadline and Failed to Move to Extend the Pleading Deadline.

Plaintiff cannot show good cause because he knew additional amendments were, in his words, a "foregone conclusion" but waited until two months after the pleading deadline to ask for an extension. "Courts have ruled that good cause does not exist where the plaintiff knew or should have known of the facts underlying the proposed amendment, but waited until after the deadline to seek leave to amend." *Downing v. Abbott Lab'ys*, 2017 WL 4535973, at \*4 (N.D. Ill. Oct. 11, 2017); *Mintel Int'l Grp., Ltd. v. Neergheen*, 636 F. Supp. 2d 677, 689-90 (N.D. Ill. 2009) (no good cause existed where plaintiff knew of the facts underlying the amendment but waited 56 days after the deadline to seek leave to amend); *Nordstrom Consulting, Inc. v. Innova Sys., Inc.*, 2020 WL 6545038, at \*2 (N.D. Ill. Nov. 6, 2020) (denying motion to amend scheduling order where defendant suspected facts supporting its claim before the deadline).

In the Motion, Plaintiff wants to reset the pleading deadline, rather than filing a specific amended complaint, so he needs to establish that, despite his diligence, he only recently discovered (or should have discovered) that additional amendments would be necessary and then promptly sought leave to extend the deadline to amend pleadings. Plaintiff can't do that. In fact, Plaintiff concedes (at 12) that additional amendments were

7

"foregone conclusion." When Plaintiff moved to file his First Amended Complaint, he even described his proposed class as a "*tentative* class definition[,]" confirming that he contemplated filing additional amendments after the June 12 deadline. ECF No. 29 ¶ 9 (emphasis added).

Despite clearly contemplating additional amendments by June 12, Plaintiff did not ask for an extension until August 16, 2024. Plaintiff's failure to ask for a timely extension does not establish good cause. *Downing,* 2017 WL 4535973, at *4 (plaintiff failed to establish good cause based on his assumption that he would be "allowed to amend her complaint up until near the conclusion of discovery."). The Court must deny the Motion on this ground alone.

> B. **None of the Post-Deadline Developments Excuse Plaintiff's Failure to Amend.**

Furthermore, none of the post-amendment developments that Plaintiff identifies explain his failure to seek an earlier extension because he already knew additional amendments would be necessary before June 12.

Plaintiff complains that NRS failed to disclose the VoicLogic Data despite allegedly representing that its responses to the First RFPs were complete. As a preliminary matter, the undersigned did not tell Plaintiff that NRS produced the entire universe of documents containing the Subject Number. Fitzgerald Decl. ¶ 10. Rather, NRS confirmed that the production was the complete set of NRS documents responsive to the First RFPs that Defendant intended to rely on during Plaintiff's deposition. *Id.* ¶ 9. Moreover, Plaintiff only recently took the position that his First RFPs included class discovery, in his August 21, 2024 deficiency letter. *Pirzadah v. Erie LaSalle Venture LLC*, 2022 WL 17357770, at *1 (N.D. Ill. Dec. 1, 2022) (plaintiff failed to show good cause where he did not move to compel).

Moreover, Plaintiff already knew that the Subject Number was uploaded to the VoiceLogic platform based on NRS's response to Plaintiff's Third Request for Admission on May 17, 2024, almost a month before the pleading deadline. Fitzgerald Decl. ¶ 12 (admitting that ringless voice messages identified in the Complaint placed through the VoiceLogic platform). Accordingly, NRS's failure to produce the VoiceLogic Data before June 12, 2024, in no way denied Plaintiff a fair opportunity to determine whether he needed to move to amend the pleading deadline. *Nordstrom*, 2020 WL 6545038, at *2 (denying leave to amend where defendant knew at least some of the facts supporting that motion before the deadline).

Plaintiff further complains (at 10) that Aaron Paul Heeringa contacted him and represented that NRS found evidence that Plaintiff consented to the communications in question but never produced that information. Setting aside whether this conversation occurred in the manner Plaintiff describes, he does not explain what NRS having an additional defense has to do with the pleading deadline. That's because the two things have nothing to do with one another.

The same is true with respect to NRS's Answer to the Amended Complaint. As Plaintiff acknowledges, NRS admitted to using VoiceLogic's ringless voicemail services in response to a Request for Admission on May 17, 2024, so NRS's Answer did not deprive Plaintiff of any information.

Finally, that the timing of discovery has become clear is likewise no excuse for Plaintiff's failure to file a timely motion to modify the pleading deadline. Both parties knew that discovery was in its infancy on June 12, 2024. Plaintiff served a deficiency letter on NRS asking for the same VoiceLogic Data on June 10 (in response to his Second and Third Requests for Production) that he now claims NRS should have produced in response to the

9

First RFPs. Fitzgerald Decl. ¶ 13. To borrow a phrase from Plaintiff, that the timeline of NRS's production would become clearer as discovery progressed was a forgone conclusion. Plaintiff's failure to anticipate the normal progression of discovery does not establish good cause to reset the deadline to amend pleadings.

### C. Efficiency Does Not Warrant Disregarding the Court's Deadlines.

Finally, Plaintiff cannot establish good cause by alluding to the efficiency of a single reset as opposed to requiring piecemeal amendments. Efficiency is not a substitute for good cause and does not warrant an amendment. *See, e.g.*, *Thomson*, 2021 WL 5119111, at *2 (rejecting argument that amendment was warranted by lack of prejudice); *Downing*, 2017 WL 4535973, at *5 (rejecting that granting leave to amend would promote efficient discovery). On the contrary, as the Seventh Circuit has acknowledged, "[t]he flow of cases through a busy district court is aided, not hindered, by adherence to deadlines." *Spears v. City of Indianapolis*, 74 F.3d 153, 157 (7th Cir. 1996)

What's more, the piecemeal amendments that Plaintiff bemoans is precisely what Rule 16 contemplates. Rule 16 "is designed to ensure that at some point[,]" absent unusual circumstances (*i.e.*, good cause), "the pleadings will be fixed." *DR Distributors, LLC v. 21 Century Smoking, Inc.*, 2019 WL 556496, at *4 (N.D. Ill. Feb. 12, 2019). In other words, because the pleading deadline has run, NRS is entitled to limit future amendments to those where Plaintiff can establish good cause. While Plaintiff may find this process onerous, NRS has no obligation to relinquish that protection for his convenience.

Again, NRS doesn't maintain that Plaintiff may never amend his complaint. So long as he satisfies Rules 15 and 16, he can propose a specific amendment. But allowing Plaintiff file future amendments freely, without requiring that he first show good cause, would be a

10

license to inject new issues into this case and "conduct more expansive discovery that [is] not justified[.]" *Downing*, 2017 WL 4535973, at *5. That would only further delay resolving this case and require additional amendments, which Plaintiff (at 14) appears to acknowledge.

## V. CONCLUSION

As Plaintiff knew he would need to file additional amendments before the June 12, 2024 deadline, he cannot establish good cause to reset the pleading deadline. None of the events that Plaintiff identifies change the fact that Plaintiff explicitly contemplated additional amendments on June 12, but failed to ask the Court to reset the deadline at that time. Accordingly, the Court must deny the Motion.

DATED: August 27, 2024.

Respectfully submitted,

*/s/ Ryan D. Watstein*
Ryan D. Watstein (*admitted pro hac vice*)
ryan@wtlaw.com
Patrick J. Fitzgerald (*admitted pro hac vice*)
pfitzgerald@wtlaw.com
**WATSTEIN TEREPKA LLP**
1055 Howell Mill Road, 8th Floor
Atlanta, Georgia 30318
Tel: (404) 782-9821
Fax: (404) 537-1650

Justin M. Penn, ARDC 6283726
jpenn@hinshawlaw.com
**HINSHAW & CULBERTSON LLP**
151 North Franklin Street, Suite 2500
Chicago, Illinois 60606
Tel: (312) 704-3000

*Counsel for Defendant*

11

## **CERTIFICATE OF SERVICE**

I hereby certify that on August 27, 2024, I caused to be electronically filed a true and correct copy of the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record.

*/s/ Ryan D. Watstein*
Ryan D. Watstein