IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| RASHAD WALSTON, on behalf of himself and all others similarly situated, | Case No. 1:24-cv-00083 |
| Plaintiff, | |
| v. | |
| NATIONAL RETAIL SOLUTIONS, INC. D/B/A NRS PAY, | |
| Defendant. | |

**DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL**

I.         INTRODUCTION AND BACKGROUND

Before a class is certified, the federal rules of civil procedure provide that discovery should be limited to the information needed to decide certification on an informed basis. *Amgen Inc. v. Conn. Retirement Plans*, 568 U.S. 455, 466 (2013) ("Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage."); *Duffy v. Illinois Tool Works Inc.*, 2018 WL 1335357, at *6 (E.D.N.Y. Mar. 15, 2018) ("[P]re-certification production of class members' names is not compatible with Federal Rule 26's 'relevancy' standard."). That does not include every shred of information about each putative class member, including each individual's contact information, because those details don't bear on certification.

Here, Defendant National Retail Solutions, Inc. ("NRS") has already produced (and will continue to produce) the information the Court needs to decide class certification on an informed basis. Plaintiff Rashad Walston ("Plaintiff") seeks to certify a class of individuals who received ringless voicemails. In response to Plaintiff's discovery requests seeking the numbers to which NRS intended to send ringless voicemails, NRS produced a list of telephone numbers uploaded to the VoiceLogic platform (the "VoiceLogic List"), the ringless voicemail provider NRS used. *See* Declaration of Patrick Fitzgerald, attached as Exhibit 1. The VoiceLogic List that NRS produced contains, among other things, approximately 17,000 telephone numbers associated with the NRS campaigns that were meant to employ a message containing one of the phrases Plaintiff identified in his First Amended Complaint: "check out nrspay.com[,]" "if you process over[,]" "to learn more[,]" and/or "free credit card reader" (the "NRSPay" and "Cash Discount" or "Fee Busters" campaigns). ECF No. 35 ¶ 64.

To balance the Court's need to make an informed certification decision, while avoiding the risk of improper solicitation, NRS partly redacted the numbers on the VoiceLogic List. Fitzgerald Decl. ¶ 4. And when Plaintiff complained that he needed the full phone numbers to identify which numbers were cell phones, NRS offered to stipulate to that for purposes of certification. *Id.* ¶ 5. Although that stipulation would obviate the need for full numbers, particularly before a class is certified, Plaintiff rejected NRS's compromise and filed this Motion instead. The Motion is meritless and should be denied for several reasons.

Plaintiff cannot meet his burden to establish that unredacted phone numbers from the VoiceLogic list are relevant and proportional discovery for his certification motion. NRS has offered to stipulate to the cell phones on the VoiceLogic List and would do the same for any forthcoming ringless voicemail log, addressing Plaintiff's concerns about numerosity and his ability to identify putative class members. Nor does Plaintiff need the phone numbers to investigate any potential consent defense. To the extent NRS intends to rely on specific records of consent in opposition to certification, NRS will produce that evidence and identify those persons. And the full scope of statutory damages available to each putative class member, assuming their claims are successful, is irrelevant to certification and does not justify compelling the unredacted VoiceLogic List.

Finally, the full numbers on the VoiceLogic List should not be compelled because Plaintiff's counsel may improperly use them as a "tool to identify potential new clients" in the event Mr. Walston settles individually. *Swelnis v. Universal Fid.*, 2014 WL 1571323, at *2 (N.D. Ind. Apr. 17, 2014) (citation omitted). That is especially true here because Plaintiff hasn't identified a legitimate need for the full phone numbers of nearly twenty-thousand people before the Court has even decided certification, which NRS contends will be denied.

3

On top of that, Plaintiff's counsel has exerted improper control over this case to prevent the parties from resolving Plaintiff's claims on an individual basis (as NRS will explain more fully in a motion it intends to file within the next weeks). For example, Plaintiff's counsel required his client to sign a retainer agreement that limited his duty to convey settlement offers and handcuffed his client from settling claims individually by forcing Plaintiff to pay his hourly rate if he chose to do so. Fitzgerald Decl., Ex. A (RWW001245). Plaintiff's counsel *revised the retainer agreement to remove the penalty provision* after NRS threatened to compel production of the agreement, but that was long after Plaintiff's counsel rejected NRS's settlement overtures out of hand. *Id.* ¶ 7. And Plaintiff's counsel has since effectively conceded that the point of the penalty term was (obviously) to prevent his own client from freely exercising his right to settle his case. *Id.* ¶ 8.

Particularly in light of these issues, which amplify the potential that the vast personally identifying information Plaintiff seeks will be used for an improper purpose (*i.e.*, for his lawyer's financial gain), Plaintiff's motion to compel should be denied.

## II. ARGUMENT

### A. Pre-Certification Discovery is Limited to Information Needed to Decide Certification on an Informed Basis.

A foundational principle of class actions is that before certification, putative class discovery is limited to information relevant and proportional to certification. *Oppenheimer Fund v. Sanders*, 437 U.S. 340, 353-54 (1978) (names and addresses not relevant under Rule 26 and must be sought under Rule 23); *Robbins v. NCO Fin. Sys., Inc.*, 2006 WL 3833352, at *5 (N.D. Ind. Dec. 12, 2006) ("The relevancy of information regarding putative class members generally is limited during the pre-certification stage by the plaintiff's need to fulfill the class certification requirements of Rule 23."). That is, in part, because "until certification

4

there is no class action but merely the prospect of one[.]" *Morlan v. Universal Guar. Life Ins. Co.*, 298 F.3d 609, 616 (7th Cir. 2002).

That discovery has not been bifurcated does broaden the scope of pre-certification discovery. In fact, this Court previously refused to compel production of information identifying putative class members after denying a motion to bifurcate. *Bilek v. Nat'l Cong. of Emps.*, 2022 WL 523108, at *2 (N.D. Ill. Feb. 22, 2022) (Gilbert, M.J.); *Bilek,* No. 18-cv-03083, ECF No. 275 (denying motion to bifurcate). Courts have likewise refused to require a defendant to "hand over" such information, even where it is potentially relevant to certification. *Swelnis*, 2014 WL 1571323, at **2–3 ("[T]hough class size is relevant under Rule 23, . . . the Court finds no merit in Plaintiff's request for the exact size of the putative class."); *see also In re Williams-Sonoma*, 947 F.3d 535, 540 (9th Cir. 2020) (granting mandamus and holding it was clear error to authorize discovery identifying putative class members, notwithstanding alleged relevance to commonality, typicality and ascertainability) (citing *Oppenheimer*, 437 U.S. at 353). The Federal Civil Rules Advisory Committee likewise cautions that before a class is certified, courts should "control[] discovery into the merits" and limit discovery "to those aspects relevant to making the certification determination." Fed. R. Civ. P. 23(c)(1)(A), adv. comm. note (2003).

Nor does the pre-certification discovery deadline entitle Plaintiff to overbroad discovery beyond the needs of the issues relevant to certification. If a class is certified, the Court can allow additional discovery "directed at individual class members[,]" as courts do in virtually every certified class action. *See, e.g.*, *Rogers v. Baxter Int'l Inc.*, 2007 WL 2908829, at *1 (N.D. Ill. Oct. 4, 2007) (describing the scope of post-certification discovery); *see also R & D Bus. Sys. v. Xerox Corp.*, 150 F.R.D. 87, 90 (E.D. Tex. 1993) (extending discovery deadline

5

after class certification). Alternatively, if Plaintiff needs more time to complete discovery relevant to certification, he may move to extend the December deadline for fact discovery. He already indicated that he intends to do that. ECF No. 43 at 14. But refusing to compromise and filing a motion to compel does not hasten discovery efforts.

Plaintiff attempts to distinguish *Bilek*, claiming that he seeks a narrower set of information (phone numbers rather than names and addresses) that he claims is relevant to his anticipated motion to certify a class action. But, as NRS explains below, the information that NRS is willing to produce (the quantity of cell phones on the VoiceLogic List and any forthcoming ringless voicemail log) provides "sufficient information . . . for class certification purposes." *Hossfeld v. Allstate*, 2021 WL 4819498, at **3–5 (N.D. Ill. Oct. 15, 2021) (Harjani, J.); *Swelnis*, 2014 WL 1571323, at **2–3 (denying a motion to compel where plaintiff had sufficient information to determine "the estimated size of the putative class."). And Plaintiff can easily use the phone numbers to find the names and addresses of the putative class members (*e.g.*, by calling them). So while the information is superficially "narrower," it poses the same danger of turning discovery into a "tool to identify potential new clients." *Swelnis*, 2014 WL 1571323, at **2–3 (citation omitted).

*Hossfeld*, where Judge Harjani compelled an internal do-not-call list, does not apply here. 2021 WL 4819498 at **2-4. There, Hossfeld sought Allstate's internal do-not-call list ("DNC list"), which Allstate was statutorily required to maintain. *Id.* Hossfeld said that he needed the DNC list to establish numerosity, standing, and that Allstate failed to employ a reasonable telemarketing policy. *Id.* at *3. As for numerosity, Allstate was unwilling to provide Hossfeld with sufficient information to "estimate the number of putative class

6

members[.]" *Id.* at \*4. In contrast, NRS offered to stipulate to the number of cell phones on the VoiceLogic List (and will do the same with any forthcoming log) but Plaintiff refused.

Moreover, Hossfeld needed to review the individual numbers on Allstate's DNC list to establish that it failed to coordinate that list with one of its vendors (identifying persons who asked not to receive calls who should have been included on the vendor's list) and therefore failed to implement a reasonable telemarketing policy, preventing such calls (along with establishing that the injury was traceable to Allstate). *Hossfeld*, 2021 WL 4819498 at \*3. In other words, Hossfeld needed to review each number on Allstate and the vendors' respective DNC lists to establish that they were materially different. As explained below, Plaintiff has no such need in this case. NRS will produce any evidence it intends to use to defend certification, including any specific records related to consent and, to the extent relevant to certification (*i.e.*, standing), damages. *See infra*, Parts B & C.

The other cases Plaintiff cites (at 4) are similarly unpersuasive. None of those cases involved a defendant who was willing to stipulate to numerosity, as NRS has offered here, and involved an issue of commonality that Plaintiff hasn't raised. *See, e.g.*, *Gebka v. Allstate Corp.*, 2021 WL 825612, at \*7 (N.D. Ill. Mar. 4, 2021) (no indication that defendant was willing to stipulate to numerosity); *Fralish v. Digital Media Sols., Inc.*, 2021 WL 5370104, at \*8 (N.D. Ind. Nov. 17, 2021) (finding text message list was relevant to numerosity and commonality).[1]

---

[1] Should the Court order that NRS remove redactions from the VoiceLogic List, NRS asks that the Court issue an order prohibiting Plaintiff from "(1) contacting any person appearing in the [VoiceLogic List] unless and until a class is certified; (2) contacting putative class members without seeking leave of court in the event a class is certified; and (3) from using the information in the unredacted documents for any purpose in the event that a class is not certified." *Gebka*, 2021 WL 825612, at \*9.

To be clear, although NRS does not believe that a class is certifiable here, NRS does not intend to withhold any information that Plaintiff needs to argue in support of certification. NRS is willing to identify the number of cell phones, the messages intended to be relayed, and (to the extent it has the information) the date of those attempted ringless voice messages on any forthcoming ringless voicemail logs. But, as explained below, Plaintiff hasn't established that he needs the complete phone number of each member.

### B. Plaintiff Doesn't Need the Unredacted Phone Numbers for his Motion to Certify a Class Action.

None of Plaintiff's arguments related to certification warrant disclosing all of the phone numbers. NRS has offered a stipulation that would address Plaintiff's numerosity and superiority concerns and NRS never refused to produce evidence related to its consent defense.

*i. NRS's Stipulation Addresses Plaintiff's Numerosity and Superiority Concerns.*

Plaintiff hasn't shown that he needs the unredacted phone numbers for numerosity. Numerosity involves showing that the proposed class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "While there is no magic number that applies to every case, a forty–member class is often regarded as sufficient to meet the numerosity requirement." *Mulvania v. Sheriff of Rock Island Cnty.*, 850 F.3d 849, 859 (7th Cir. 2017).

Here, NRS offered to stipulate to the number of cell phones on the VoiceLogic List and is willing to stipulate to the number of cell phones on any forthcoming ringless voicemail log. Plaintiff speculates (at 7) that such a stipulation would be inaccurate because NRS previously admitted that it did not distinguish between cell phones and landlines when it

8

initially uploaded the numbers onto the VoiceLogic platform. That, of course, has no bearing on whether NRS can identify cell phone numbers in discovery in this matter.

Stipulating to the number of cell phones on any forthcoming ringless voicemail log would likewise address Plaintiff's concern (at 7) about superiority. With NRS's stipulation, Plaintiff can use any forthcoming log to identify the cell phones and the content of the messages that were supposed to be conveyed.

   *ii.*  *NRS Never Refused to Produce Evidence of Consent.*

Nor does Plaintiff need the unredacted numbers from the VoiceLogic List to investigate the merits of a consent defense. Plaintiff does not explain why he needs all the phone numbers from the VoiceLogic List to identify which subscribers consented to receive communications from NRS. Instead, Plaintiff simply speculates (at 8-9) that NRS *would* oppose a request to identify the numbers on that list based on its prior objections to requests seeking records related to communications (a) that do not contain one of the key phrases in the class definition in the First Amended Complaint, and (b) to landlines. Plaintiff doesn't even argue that he demanded this information and NRS refused to produce it. His argument to compel evidence of consent fails for this reason alone. *Bilek v. Fed. Ins. Co.*, 2022 WL 18912277, at *5 (N.D. Ill. Dec. 12, 2022) (denying a motion to compel where plaintiff "did not exhaust her meet-and-confer obligations[.]").

NRS isn't withholding evidence of consent anyway. NRS is still reviewing its records to identify the phone numbers on the VoiceLogic List associated with persons who may have consented to receive communications from NRS (or other evidence that supports a consent defense). If and when NRS identifies such records, NRS will produce them, and (if feasible) identify the relevant entries on the VoiceLogic List. Accordingly, Plaintiff's reliance on

9

*Gossett v. CMRE Fin. Servs.*, 142 F. Supp. 3d 1083 (S.D. Cal. 2015) (overruling objection to produce evidence of prior consent to be contacted due to HIPAA concerns) and *Martin v. Bureau of Collection Recovery*, 2011 WL 2311869, at *4 (N.D. Ill. June 13, 2011) is misplaced. In both of those cases, the defendant refused to produce evidence of consent.

### C. Statutory Damages Are Not Relevant to Certification.

Plaintiff is also not entitled to the unredacted numbers on the VoiceLogic List to aid his efforts in calculating the statutory damages for each class member. Plaintiff doesn't need to identify the full scope of damages each putative class member allegedly sustained before a class is certified. *Johnson v. Sky Chefs, Inc.,* 2013 WL 11081261, at *1 (N.D. Cal. May 28, 2013) (refusing to compel production of documents related to "potential damages, as opposed to class certification.").

What's more, Plaintiff's professed need to narrow his discovery requests (at 9-10) is premature and may become moot. Specifically, Plaintiff complains that NRS objected to producing documents related to communications containing key phrases he identified in his First Amended Complaint. However, Plaintiff intends to amend his complaint, ECF No. 55 (granting plaintiff's motion to modify scheduling order to seek leave to file amended complaint), and the class definition in his forthcoming second amended complaint may moot or modify NRS's campaign-specific objections. Ruling on this issue now would therefore be premature.

### D. Full Numbers Could Be Used As a Tool to Improperly Identify New Clients, Confirming that Plaintiff's Motion Should Be Denied.

Finally, the risk of improper solicitation further supports denying the Motion. Plaintiff's right to contact members of a putative class "does not 'address whether a defendant has an obligation to produce contact information to facilitate plaintiff's pre-certification

10

contact with putative class members.'" *In re Jimmy John's Overtime Litig.*, 2016 WL 8950085, at *2 (N.D. Ill. Apr. 12, 2016) (quoting *Swelnis*, 2014 WL 1571323, at *2)). And the inherent "potential for abuse created in class actions" justifies limiting discovery related to putative class members. *Id.* Thus, "[c]ourts often refuse to allow discovery of class members' identities at the pre-certification stage for exactly this reason"—concern that it will lead to soliciting new clients. *In re Pella Corp. Architect & Designer Series Windows Mktg., Sales Pracs. & Prod. Liab. Litig.*, 2014 WL 12622421, at *2 (D.S.C. Nov. 20, 2014).

Opposing counsel has already exerted improper control over this case. He forced his client to sign a retainer agreement that would penalize him if he settled against counsel's advice and improperly narrowed his obligation to convey only what counsel deemed to be "reasonable" settlement offers. Fitzgerald Decl., Ex. B (RWW001245). Those terms violated counsel's ethical obligations, including Ill. R. Prof. Cond. 1.2. *Compton v. Kittleson*, 171 P.3d 172, 179 (Alaska 2007) (finding a similar provision "impermissibly burdens the client's right to settle a case."). Counsel employed these terms to prevent Plaintiff from taking the money he asked for before counsel got involved. NRS will detail these issues in a forthcoming motion. For now, suffice it to say that NRS is justifiably concerned that counsel's desire to control this case for his own financial gain would lead to improper solicitation in the event Mr. Walston settles his claims.

What's more, despite NRS's offer to provide Plaintiff with the information he needs to argue certification and stipulate to the number of cell phone numbers at issue, Plaintiff continues to demand the individual phone numbers of nearly 20,000 people for no good reason. There is simply no need to open the door to Plaintiff's counsel misusing class

11

discovery as a "tool to identify potential new clients." *Swelnis*, 2014 WL 1571323, at **2–3 (citation omitted). The motion to compel should be denied.

## III. CONCLUSION

For the reasons stated above, Plaintiff's motion to compel the production of unredacted telephone numbers should be denied. As NRS is willing to provide Plaintiff with the information he needs to argue class certification, there is no need to compel the individual phone numbers of the putative class members. Accordingly, the Court should deny the Motion in its entirety.

Dated: September 6, 2024.

Respectfully submitted,

*/s/ Ryan D. Watstein*
Ryan Watstein (*pro hac vice*)
ryan@wtlaw.com
Patrick J. Fitzgerald (*pro hac vice*)
pfitzgerald@wtlaw.com
**WATSTEIN TEREPKA LLP**
1055 Howell Mill Road, 8th Floor
Atlanta, Georgia 30318
Tel: (404) 782-9821
Fax: (404) 537-1650

*Counsel for Defendant NRS, LLC*

12

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on September 6, 2024, I caused to be electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

*/s/ Ryan D. Watstein*
Ryan D. Watstein
