**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| **RASHAD WALSTON,** on behalf of himself and all others similarly situated,<br><br>**Plaintiff,**<br><br>v.<br><br>**NATIONAL RETAIL SOLUTIONS, INC. D/B/A NRS PAY,**<br><br>**Defendant.** | Civil Case No.: 24-cv-83<br><br>District Judge: Hon. Sunil R. Harjani<br>Magistrate Judge: Jeffrey T. Gilbert |

### PLAINTIFF'S REPLY IN SUPPORT OF MOTION TO COMPEL PRODUCTION OF UNREDACTED DOCUMENTS

> [Defendant's] argument that [plaintiff] should not be permitted to obtain information relevant to his class claims at this time is without merit. Merit and class fact discovery are not bifurcated in this case and thus, there is only one fact stage of discovery….

Judge Harjani, *Hossfeld v. Allstate Ins. Co.*, 2021 U.S. Dist. LEXIS 199023, *8 (N.D. Ill. Oct. 15, 2021).

For this reason alone, the Court may disregard most of Defendant's opposition. Nearly *every* point it raised depends on a fictional "before" and "after" class certification discovery distinction that simply does not exist in this case. This case is not bifurcated and has never been. Defendant may wish that the case were bifurcated—as evidenced by its repeated objections to Plaintiff's discovery requests on bifurcation grounds and in its opposition to the Motion here—but there is one discovery period. This discovery period covers *everything* from now through trial. If it is relevant to class certification, Plaintiff

1

may discover it now. If it is relevant to the merits, Plaintiff may discover it now. If it is relevant to standing, damages, or quite literally *anything* through trial, Plaintiff may discover it now. Defendant refutes none of this.

If Defendant wanted to bifurcate this case, it could have requested as much via a Motion. More than *two months ago*, in a status report, Defendant wrote that it "reserves the right to respond appropriately [to the amended complaint] … by moving to … bifurcate." [Dkt. 36, p. 4.] It did not.

The full phone numbers are indisputably relevant to both class certification and the merits in the multitude of ways Plaintiff explained in his Motion, some of which Defendant did not try to refute. As best Plaintiff can tell, Defendant appears either to be hoping the Court *sua sponte* bifurcates discovery (i.e., its opposition is a backdoor bifurcation Motion) or that the Court "splits the baby" and unjustifiably restricts Plaintiff's use of the telephone numbers. Respectfully, the Court should do neither.

On this latter concern, Defendant's lone non-bifurcation-adjacent argument against the production of the unredacted telephone numbers is its *non-sequitur* attack on Plaintiff's counsel's "control" over this case as a reason to limit counsel's access to the phone numbers. This is both false and irrelevant.

**I. There is no "before a class is certified" – this case is not bifurcated**

Every mention in Defendant's brief of what Plaintiff "needs for class certification", what Defendant should not have to do "before class certification", or what Defendant will do "if a class is certified" can be summarily rejected. This case is not bifurcated, and Defendant's arguments make little sense in a non-bifurcated case.

2

For example, Defendant writes that the lack of bifurcation "does not broaden the scope of pre-certification discovery." [Def.'s Brief, p. 5.] But there is no "scope of pre-certification discovery". There is only "scope of discovery". S*ee Hossfeld*, 2021 U.S. Dist. LEXIS at *8 (Harjani, J.) And "[u]nless otherwise limited by court order"—e.g. bifurcation—"the scope of discovery" is "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]" Fed. R. Civ. P. 26(b)(1).

Defendant's cited authority is facially distinguishable. In *Williams-Sonoma*, the Ninth Circuit found clear error in authorizing discovery of putative class member information exclusively to allow counsel to find a new plaintiff after the named plaintiff's class action was defeated. 947 F.3d 535, 539 (9th Cir. 2020). That is not so here. In *Swelnis*, plaintiff sought putative class information only for numerosity despite already having an estimate. *Swelnis v. Universal Fid. L.P.*, 2014 U.S. Dist. LEXIS, *7-8 (N.D. Ind. Apr. 17, 2014). Plaintiff here does not have an estimate and seeks this information for reasons beyond just numerosity. In *Bilek*, Plaintiff did "not argue that putative class members' names and addresses are critical or even relevant to her ability to support class certification in this case under" Rule 23. *Bilek v. Nat'l Cong. of Employers, Inc.*, 2022 U.S. Dist. LEXIS 30611, *4 (N.D. Ill. Feb. 22, 2022) (Gilbert, J.) More importantly, the *Bilek* plaintiff's only argument for the information was that defendant had previously waived objections to producing it, which Your Honor found it did not. *Id.* at *6 n.1. As best Plaintiff

can tell, neither of the parties there even addressed bifurcation in the related motion practice.[1]

As Defendant notes, Plaintiff will likely ( and hopefully, jointly) request an extension of discovery at some point, but this should primarily be based on the timing of the letter rogatory process. This hypothetical extension, however, has nothing to do with bifurcation. Plaintiff may not even be able to file his Motion for Class Certification until after the rogatory process.[2] Further, the Court has not yet ordered a deadline for any Motion (including class certification) but instead set an in-person status conference for January 8, 2025, presumably to do just that. [Dkt. 20.]

> II. **Defendant is not the arbiter of what "Plaintiff needs" in support of class certification.**

In its opposition, Defendant offers to provide "what is needed" for Class Certification, writing, for example, that it "does not intend to withhold any information that Plaintiff needs to argue in support of certification." [Def.'s Brief, p. 8.] Again, discovery is not bifurcated. Moreover, Defendant has no authority to dictate what Plaintiff "needs" for

---

[1] Another distinction: the information Your Honor allowed to be redacted in *Bilek* was of defendant's customers. *Bilek*, 18-cv-3083, Dkt. 402, p. 56:2-25. Here, we are dealing with telemarketing lists containing telephone numbers—many of which Defendant purchased from a third party data broker—of persons Defendant spammed in hopes of making them customers.

[2] Notably, the importance of the letter rogatory process has been elevated because Defendant spoliated between two and four months worth of call records from VoiceLogic, depending on when its preservation obligation arose. Defendant has been aware of the possibility of litigation since at least November 2023. Further, Defendant's Vice President of Marketing, Diana Stern, testified that, when Defendant was served with the lawsuit, she reviewed records in its account portal with VoiceLogic to (successfully) confirm the calls listed in the complaint were made through one of its campaigns. Defendant has not produced these records and did not save these records. Glapion Decl., ¶¶ 4-10. Further, it did not ask VoiceLogic to preserve these (or any) records until at least March. *Id.* The only reason this has not been the subject of a Motion for Sanctions is in hopes that VoiceLogic has those same records, which would cure any prejudice.

4

Class Certification. Plaintiff is not required to litigate his case on the bare minimum of evidence, nor is he required to litigate his case on what Defendant believes is enough, nor is he required to preview his class certification Motion for Defendant every time Defendant disagrees that Plaintiff "needs" the information. The unredacted telephone numbers are relevant to several issues in this case, even if Plaintiff ultimately does not end up using them for each of these issues.

    a. <u>Numerosity</u>

Defendant does not dispute that the unredacted telephone numbers are relevant to numerosity. It does not dispute its admission that it did not previously distinguish between landlines and cell phones. Instead, it argues that it can now even if it did not before. [Def.'s Brief, pp. 8-9.]

This is a remarkable proposal. It asks the Court to require Plaintiff to outsource his litigation to Defendant. Plaintiff has the burden of proving numerosity and should be permitted to rely on his own work product and expert (as necessary). To be clear, given Defendant's representations that it can determine the number of cell phone numbers on the list, Plaintiff may take Defendant up on that offer through the discovery process as *part* of meeting his burden, but Plaintiff should not be forced to rely exclusively on Defendant's unsupervised, self-interested review. The full phone numbers are indisputably relevant to determining numerosity.

    b. <u>Consent</u>

Defendant correctly does not contest the relevance of consent. Plaintiff is indisputably permitted to know which, if any, cell phone numbers Defendant believes it

5

had consent to call with prerecorded marketing messages. Plaintiff is indisputably permitted to obtain, on a cell phone-by-cell phone basis, evidence of that consent. Plaintiff is permitted to know the sources of telephone numbers for which Defendant claims to have consent.

Defendant suggests that this is a post-certification issue and that, for now, it is willing to produce consent records it intends to use to defend certification. [Def.'s Brief, p. 7.] Defendant is wrong.

Besides the bifurcation issue discussed *ad nauseum*, its arbitrary willingness to produce only those records it intends to use to defend class certification shows the danger of allowing Defendant to be the arbiter of what Plaintiff "needs" for class certification. Defendant hopes to withhold consent evidence until class certification and spring that on Plaintiff in its opposition, wrapped up in the argument for denial that "some members consented."

This approach is not new, and in anticipation, Plaintiff intends to use Defendant's full universe of consent records (if any exist) to inform the class definition *before* certification. For example, if Defendant identifies a certain subset of cellular telephone numbers to which it made the required disclosures before placing its prerecorded telemarketing calls, Plaintiff can exclude those numbers from the class definition by including language such as "other than cell phone numbers obtained from [those sources]."

Plaintiff cannot do that without the list of numbers because he cannot tailor his discovery to cell phone numbers. Plaintiff could, in theory, request consent for *all*

6

telephone numbers on Defendant's list, regardless of whether they are cell phones, but Defendant has repeatedly objected to such broad requests. Further, if Defendant were to comply with such a request, Plaintiff would be forced to review irrelevant records of consent (e.g. if only 10,000 of the 17,000 are cell phones), wasting time and resources. A better approach would be to allow Plaintiff to tailor such requests to cell phones. To do so, he needs the unredacted numbers to identify cell phones in the first place.

c. Damages

Defendant argues that the full telephone numbers are not relevant to damages because "[Plaintiff's] professed [need for the numbers] to narrow his discovery requests … may become moot" by a hypothetical change to the class definition in a hypothetical amended complaint. [Def.'s Brief, 10.] This is not a valid argument. The case is the case, and the fact that the case *might* change is not a basis to withhold production due now.

Defendant leaves *entirely* unaddressed Plaintiff's argument that he needs the full telephone numbers to prove a ringless voicemail was successfully transmitted, such as through subpoenas.[3] [Plaintiff's Brief, p. 10.] Defendant does not offer to produce *any* information sufficient for this determination, instead vaguely indicating a willingness to produce evidence of "damages" relevant to class certification and to "identify the number of cell phones, the messages intended to be relayed, and … the date of those attempted ringless voice messages[.]" [Def.'s Brief, pp. 77-8.] If Defendant wants to stipulate that all

---

[3] This is not the only tool to make this showing, but it is a powerful one. The others require specifically linking each call to each telephone number, which again require production of the full phone number.

of its ringless voicemail attempts were received, the Parties may be able to find a way forward.

### III. Defendant's drive-by attack on Plaintiff's counsel is irrelevant and false.

Defendant irrelevantly accuses counsel of exerting "improper control over this case" because of a provision in Plaintiff's previous representation agreement that would obligate Plaintiff to pay attorneys' fees if he accepted a settlement against his attorney's written advice and the settlement did not pay fees.[4] [Def.'s Brief, p. 11.] Defendant's accusation is false. First, it is not clear that such a provision is impermissible prior to a Motion for Class Certification. It would not be impermissible in an individual case. Second, the remedy for improper terms in representation agreements that impact class certification is to amend out the problematic portions of the agreement. *See In re Ocean Bank*, 2007 U.S. Dist. LEXIS 29443, *20 (N.D. Ill. Apr. 9, 2007) ("…Plaintiff can remedy the [adequacy] defect in her motion through simple amendment of the Retainer Agreement[.]"); *see also, e.g.*, *Lantieri v. Credit Protection Ass'n L.P.*, 2018 U.S. Dist. LEXIS 166345 (S.D. Ind. 2018). Out of an abundance of caution, Plaintiff and his counsel amended the agreement to remove it.

Defendant fails to note that Plaintiff has since provided Defendant with the full unredacted agreements and asked Defendant if it would identify any other terms it believed problematic to class certification. Curiously, Defendant declined. Glapion Decl.,

---

[4] Defendant also oddly takes issue with language in the agreement requiring counsel to convey all "reasonable" settlement offers. Notwithstanding that Plaintiff has rejected all of Defendant's offers, Plaintiff has been explicitly clear that he does not care to settle individually and any individual offer will be rejected.

¶¶ 15-16. Defendant also fails to note that Plaintiff re-rejected its previous settlement offers *after* the aforementioned amendment. *Id.* at ¶ 14. Plaintiff has no interest in an individual settlement and has repeatedly told Defendant this.

To the extent Defendant hopes to use this ostensible "issue" unrelated to communications and from an outdated representation agreement to prohibit communications with active witnesses to an ongoing litigation, it would be irreconcilable with the Supreme Court and Seventh Circuit's requirements that any such limitation on communication be "carefully drawn" on a "specific record" of threatened "coercive, misleading, or other abusive communication." *See Gulf Oil Co. v. Bernard*, 452 U.S. 89; *Williams v. Chartwell Fin. Servs., Ltd.*, 204 F.3d 748, 759 (7th Cir. 2000); *Reid v. Unilever U.S., Inc.*, 964 F. Supp. 2d 893, 926 (N.D. Ill. 2013).

This is especially important here, where absent class members may have relevant information on the merits even if a class is never certified. They are witnesses to Defendant's conduct, and the TCPA allows for treble damages for willful or knowing damages. 47 U.S.C. § 227(b)(3). The hypothetical testimony of third-party witnesses about the frequency and nuisance of Defendant's spam calls, futile attempts to stop the calls, and Defendant's conduct toward them, if any, when they complained would all bear on whether Defendant acted willfully. Barring Plaintiff or his counsel from contacting such witnesses, despite the complete absence of a record of threatened wrongdoing, deprives Plaintiff of a valuable source of evidence to which Defendant has had unfettered access for nearly a year.

One final point: Defendant's attempt to position itself as a champion of putative class member privacy and a shield against evil Plaintiff counsel's "inevitable" solicitation neglects that this case only exists because Defendant *already* invaded putative class member privacy for *actual* solicitation. The list Defendant is fighting so hard to protect does not consist of its customers or even people who wanted Defendant to have their information. Some, if not most, were bought from a third-party data broker for the sole purpose of Defendant's spam marketing campaign. Glapion Decl., ¶ 19. Why, then, should Defendant maintain exclusive access to this list? It is not Plaintiff's counsel from whom they need protection.

Dated: September 9, 2024        s/ Jeremy M. Glapion
                                Jeremy M. Glapion
                                The Glapion Law Firm, LLC
                                1704 Maxwell Drive
                                Wall, New Jersey 07719
                                Tel: 732-455-9737
                                Fax: 732-965-8006
                                jmg@glapionlaw.com

                                Counsel for Plaintiff and the Putative Class

**CERTIFICATION OF SERVICE**

I hereby certify that on September 9, 2024, I filed the foregoing document using the CM/ECF system which will send notice of electronic filing to all counsel of record.

s/ Jeremy M. Glapion

10