UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **RASHAD WALSTON,** on behalf of himself and all others similarly situated,<br><br>**Plaintiff,**<br>v.<br><br>**NATIONAL RETAIL SOLUTIONS, INC. D/B/A NRS PAY,**<br><br>**Defendant.** | Civil Case No.: 24-cv-83<br><br>District Judge: Hon. Sunil R. Harjani<br><br>Magistrate Judge: Jeffrey T. Gilbert<br><br>**Declaration of Jeremy M. Glapion in further Support of Plaintiff's Motion to Compel** |

I, Jeremy M. Glapion, declare as follows:

1. I am attorney for Plaintiff and the putative class in this matter.

2. I make this declaration based on my own personal knowledge in further support of Plaintiff's Motion to Compel.

3. If called upon to testify, I could and would testify competently to the truth of the matters stated herein.

4. During the August 19 deposition of Diana Stern, she testified that at the outset of the lawsuit, she reviewed "campaign reports" from VoiceLogic's portal to compare the list of calls in Plaintiff's complaint to their campaigns.

5. For example, she testified that "when the lawsuit was brought to NRS, I was the point person to check the reports and verify that the message in the lawsuit were – were from VoiceLogic", and that she, with the assistance of one of her team members,

"confirm[ed] that the information in the lawsuit is accurate in the lawsuit is accurate, that ringless messages as detailed in the lawsuit were sent out by us, and that the recipient's phone number matched the data from the lawsuit, matched the data of the back end of VoiceLogic in the reports that we were able to access."

6. According to VoiceLogic's terms and conditions, these records can be accessed for six months.

7. This means that at the time of the lawsuit, Defendant could access records taking back to June 2023.

8. Furthermore, at the time Defendant became aware of the possibility litigation, it could access records dating back to May 2023.

9. Defendant has not produced these reviewed records (or any other campaign reports).

10. During the August 27 Rule 37 conference on this issue, Defendant indicated that it did not save the reviewed records and did not ask VoiceLogic to preserve records until March 2024.

11. On July 23, Defendant re-raised a request for Plaintiff's representation agreement.

12. On July 31, by agreement, Plaintiff produced a version with everything redacted but parts related to reimbursement, settlement, and authority to settle.

13. On August 13, Defendant raised concerns about a term in Plaintiff's representation agreement that would obligate Plaintiff to Plaintiff counsel's fees if he

1

accepted a settlement against written advice of the firm that did not pay Plaintiff counsel's fees.

14. I responded noting that the term was removed, Plaintiff does not want to settle individually, and that Plaintiff had re-rejected his previous settlement offers *after* amendment.

15. On the meet and confer call, I offered to produce the unredacted representation agreements if Defendant agreed to identify other terms it found problematic.

16. Defendant declined.

17. Contrary to Defendant's claim, Plaintiff did *not* say that the term was to prevent client from taking a quick payout.

18. Instead, this term was added to stymy predatory defendants from being able to bleed plaintiffs attorneys of time and money before, at the last second, trying to buy their way out of pre-certification class actions they know they are going to lose.

19. At Diana Stern's August 19 deposition, she testified that Defendant purchased some of the numbers it used for its ringless voicemail campaign from third parties such as Amerilist.

Executed on this 9th day of September, 2024, at Manasquan, New Jersey.

                                              */s/ Jeremy M. Glapion*_____
                                              Jeremy M. Glapion