# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| RASHAD WALSTON, on behalf of himself and all others similarly situated, | Case No. 1:24-cv-00083 |
| Plaintiff, | |
| v. | |
| NATIONAL RETAIL SOLUTIONS, INC. D/B/A NRS PAY, | |
| Defendant. | |

**DEFENDANT'S SURREPLY IN SUPPORT OF
OPPOSITION TO EMERGENCY PROTECTIVE ORDER**

Plaintiff Rashad Walston moved the Court to seal Defendant NRS's entire forthcoming motion to deny class certification based solely on his speculation that it would be an attack on his counsel, Jeremy Glapion's ("Counsel") "character" and nothing more. Aside from the fact that isn't a basis to seal anything here, in a class action where Plaintiff must affirmatively prove adequacy, Plaintiff's Counsel knew that his speculation was baseless. The fact that he amended his engagement agreements multiple times before producing them confirms as much.[1] The Court now also knows Plaintiff's speculation about an improper "character attack" was wrong because NRS has provided its motion—as well as the supporting opinion from both of Illinois's preeminent ethics experts—to the Court. As the

---

[1] To this point, Plaintiff also suggests that NRS violated the "spirit" of the Court's Order (ECF No. 65) by referencing the bases for NRS's forthcoming motion to deny certification. That point is demonstrably frivolous too, as NRS said no more about the motion it intends to file than is already part of the public record, in a filing that Plaintiff hasn't attempted to seal. *See* generally ECF No. 56 (describing the terms of the engagement letter "that limited his duty to convey settlement offers and handcuffed his client from settling claims individually by forcing Plaintiff to pay his hourly rate if he chose to do so.").

Court can now see for itself, that motion doesn't launch a frivolous character attack; it meticulously details why Plaintiff and his counsel could never carry their burden to establish adequacy under Seventh Circuit authority.

Ironically, the only character assault is Plaintiff's own Reply. It directly "attack[s]" Defendant's counsel's "character," disparaging one of NRS's several lawyers (Mr. Watstein) by name more than eight times. And none of Plaintiff's allegations have any relation to his motion, compounding the hypocrisy further. Plaintiff's Counsel doesn't attack Defense Counsel for making improper statements about opposing counsel that should have been sealed, for example. Nor could he. Nothing like that exists in the 400+ class actions Mr. Watstein has defended.

Rather, to distract from the issues, Plaintiff's Counsel misrepresents irrelevant orders from other cases in a way that is itself sanctionable. Counsel cites *Johnson v. Medigap Life, LLC*, for example, to support his vague argument that Mr. Watstein routinely engages in improper litigation tactics. *See* 2023 WL 5619305, at *7 (S.D. Fla. Aug. 31, 2023). But *Johnson* was about the misconduct of the *opposing counsel*, not Mr. Watstein's, after he dismissed his own case with prejudice to avoid sanctions:

> The Court is concerned that *Plaintiff's counsel's* actions in this case (including his failure to fully, properly and timely confer with opposing counsel) … are questionable, frustrating, and not up to the high standards this district expects from counsel . . . . *The actions of Plaintiff's counsel* in relation to . . . his unwillingness to engage in proper, good faith conferral, and likely resulted in additional fees incurred by Defendant. For this reason, this Court has closely considered imposing sanctions on *Plaintiff's counsel,* for his failure to fully and properly confer as required by S.D. Fla. L.R. 7.1(a)(3).") (emphasis added).

*Johnson, 2023 WL 5619305, at *6.* The only reason the Court declined to sanction Plaintiff's counsel is because it found Defendant's motion untimely. *Id.* at *7.

Similarly, in *Fox v. Ritz-Carlton*, the only finding of improper conduct by the court was when it dismissed the case and denied class certification, finding that *Plaintiff's counsel*—not Mr. Watstein—was inadequate for reasons that are less serious than those detailed in NRS's motion to deny class certification here. *See Fox v. Ritz-Carlton Hotel Co.*, 345 F.R.D. 358, 367 (S.D. Fla. 2024); *see also Fox v. Ritz-Carlton Hotel Company, LLC*, 2023 WL 2866249, *2 (S.D. Fla. Mar. 8, 2023) (specifically declining to find any intent to cause recusal of magistrate judge, who previously granted *defendant's* summary judgment on most issues). The Reply even attempts to attack Mr. Watstein (at 3) for a statement that an *opposing lawyer* made at a hearing Mr. Watstein didn't attend on a motion in which Mr. Watstein wasn't involved. *Williams v. Fleetcor Tech.*, No. 1:24-cv-00083, ECF No. 20 (N.D. Ga. Feb. 23, 2024) (Mr. Watstein not at hearing).[2]

The impropriety of Counsel's irrelevant personal attacks against on Defense counsel are further compounded by the fact that he intentionally saved them (along with all his legal citations) for Reply. That further prejudiced Defendant by forcing it to brief yet another frivolous issue that asks the Court to fashion flatly paradoxical relief: "Plaintiff may make whatever personal attacks he likes, no matter how irrelevant, but Defendant must file

---

[2] Plaintiff's Counsel also tries to use (at 4–5) another of his own ethical transgressions to further criticize Defense counsel on Reply, chastising Defense counsel for their unremarkable agreement to represent one of Defendant's former employees. In attacking this commonplace arrangement, Counsel fails to disclose that Plaintiff's counsel *misled him into speaking with him about the case*, despite being represented by counsel: "Because of the way Mr. Glapion presented himself, I mistakenly believed that Mr. Glapion represented NRS and assumed he was NRS's counsel . . . . Had I realized Mr. Glapion represented a party adverse to NRS, and potentially adverse to me, I would have told him that I was represented by counsel and declined to speak with him." Declaration of Michael Hellerman, attached as Exhibit 1. Of course, none of this has anything to do with Plaintiff's motion to seal, so Plaintiff never should have raised it in his Reply.

3

anything Plaintiff's Counsel may not like under seal, even if it relates to something Plaintiff placed at issue and bears the burden to prove."

Plaintiff's Reply thus exposes his motion as subterfuge, dooming his false emergency request for many reasons. First, it confirms that Plaintiff's motion doesn't satisfy the Seventh Circuit's standard for sealing, which does not turn on findings of fact as Plaintiff falsely states (at 6).[3] His own cases make clear that the analysis is far more straightforward: There's a "strong presumption that records should be public" absent "a compelling interest," like "trade secrets . . . and the privacy of children." *See, e.g.*, *Shore v. Johnson & Bell, Ltd*, 2016 WL 7197421, at *1 (N.D. Ill. Dec. 8, 2016) (cited by Plaintiff at 5). Yet Plaintiff doesn't identify any interests that come close to that level. He only identifies a fear that he may not like what Defendant says. But according to Plaintiff's own cases, "[b]road allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not support a good cause showing" to override the public's First Amendment right of access—particularly where, as here, the moving party "inserted the relevan[ce]" of the documents into the case. *Brown v. Smith*, 2023 WL 120458, at *11 (D.N.J. Jan. 5, 2023) (cleaned up and cited by Plaintiff at 5).

Second, and relatedly, Plaintiff's Reply confirms that the cases he improperly cited for the first time on Reply support *Defendant's* position. They address sealing items designated as confidential under a protective order.[4] None are therefore relevant because NRS's motion

---

[3] If sealing did require such a factual finding, courts would be forced to seal all filings based on a movant's mere assertion that information was embarrassing or protected. The First Amendment doesn't work that way. Defendants' forthcoming motion concerns immutable facts, in any event: the plain language and four corners of Plaintiff's engagement letters. Plaintiff can argue that there's nothing wrong with them. But he cannot force that issue to be litigated in the dark.

[4] *Shore*, 2016 WL 7197421, *1 (unsealing cyber vulnerabilities designated under a protective order); *Brown*, 2023 WL 120458 (refusing to seal certain inmate medical records designed by

4

does not (and will not) publicly disclose any material designated as confidential under a protective order. But more importantly, all those cases ordered that the materials be filed publicly, apart from third-party medical records and similar documents. *See, e.g.*, *Loflin,* 2020 WL 3845020, *1 (sealing only designated third-party medical records); *see also supra* n. 4 (*supra*). And none of them conditioned that public finding on a finding that the party moving to seal did anything improper. *Supra* n.4.

Third, Plaintiff doesn't even address Defendant's point that Plaintiff's Motion wasn't an emergency because he knew about it for weeks yet delayed moving to seal until the night before Defendant was to file its motion to deny certification. Plaintiff's failure thus concedes the point. *Bilek v. Nat'l Cong. of Emps., Inc.*, 2022 WL 523108, at *2 (N.D. Ill. Feb. 22, 2022) ("Failure to respond to a non-frivolous argument generally results in waiver.") (Gilbert, J.) (citing Seventh Circuity authority).

At bottom, the only thing that Plaintiff's reply confirms is the true purpose of his eleventh-hour request: To keep the elevation of his own financial interests over his client's from ever seeing the light of day. The Court shouldn't reward Plaintiff's counsel's gamesmanship. It should follow binding authority, deny the motion to seal because it doesn't concern any bona fide protected information, and let briefing on NRS's forthcoming motion proceed in the ordinary course. *See Foster*, 564 F.3d at 853 ("documents . . . that influence or underpin the judicial decision are open to public inspection unless they meet the definition of trade secrets or other categories of bona fide long-term confidentiality").

---

plaintiff); *EEOC v. Loflin Fabrication LLC,* 2020 WL 3845020, *1 (M.D.N.C. July 8, 2020) (sealing only designated third-party medical records); *Laughlin v. Stuart*, 2020 WL 4747665, *4 (D. Minn. Aug. 17, 2020) (other records designated as confidential by defendants, *see* ECF Nos. 137–38).

5

DATED: October 16, 2024.

                                                Respectfully submitted,

*/s/ Ryan D. Watstein*
Ryan D. Watstein (*admitted pro hac vice*)
ryan@wtlaw.com
Patrick J. Fitzgerald (*admitted pro hac vice*)
pfitzgerald@wtlaw.com
**WATSTEIN TEREPKA LLP**
1055 Howell Mill Road, 8th Floor
Atlanta, Georgia 30318
Tel: (404) 782-9821
Fax: (404) 537-1650

Justin M. Penn, ARDC 6283726
jpenn@hinshawlaw.com
**HINSHAW & CULBERTSON LLP**
151 North Franklin Street, Suite 2500
Chicago, Illinois 60606
Tel: (312) 704-3000

*Counsel for Defendant*

6

## **CERTIFICATE OF SERVICE**

I hereby certify that on October 16, 2024, I caused to be electronically filed a true and correct copy of the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record.

*/s/ Ryan D. Watstein*
Ryan D. Watstein

# **EXHIBIT 1**

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| RASHAD WALSTON, on behalf of himself and all others similarly situated, | : : : | Case No. 1:24-cv-00083 |
| Plaintiff, | : : | |
| v. | : : | |
| NATIONAL RETAIL SOLUTIONS, INC. D/B/A NRS PAY, | : : : | |
| Defendant. | : : | |

## **DECLARATION OF MICHAEL HELLERMAN**

1. My name is Michael Hellerman. I am over the age of 18 years and competent to give this declaration.

2. I was an employee of National Retail Solutions, Inc. from May 2018 until April 2020. In that role, I was briefly involved in NRS's efforts to retain VoiceLogic, including a brief phone call with a VoiceLogic representative.

3. I do not recall NRS initiating a ringless voicemail campaign during my tenure at the company.

4. On August 16, 2024, counsel for NRS, Patrick Fitzgerald of Watstein Terepka LLP, contacted me and advised that NRS would pay for the firm to represent me in connection with this matter. I agreed to that representation.

5. On October 7, 2024, counsel for Plaintiff Rashad Walston, Jeremy Glapion, contacted me about this matter. Because of the way Mr. Glapion presented himself, I mistakenly believed that Mr. Glapion represented NRS and assumed he was NRS's counsel.

I told Mr. Glapion that I did not recall NRS initiating a ringless voicemail campaign during my time at the company.

6. Had I realized Mr. Glapion represented a party adverse to NRS, and potentially adverse to me, I would have told him that I was represented by counsel and declined to speak with him.

7. I confirm that I want Watstein Terepka to continue representing me in this matter.

Executed on October 10, 2024 in New Jersey.

_____
Michael Hellerman