# EXHIBIT 1

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

RASHAD WALSTON, on behalf of himself :    Case No. 1:23-cv-00083
and all others similarly situated, :
             :
       Plaintiff, :
             :
v. :
             :
NATIONAL RETAIL SOLUTIONS, INC. :
D/B/A NRS PAY, :
             :
       Defendant. :

_____/

## DECLARATION OF PATRICK FITZGERALD

I, Patrick Fitzgerald, in accordance with 28 U.S.C. § 1746, hereby declare under penalty of perjury that the following is true and correct.

1.      My name Patrick Fitzgerald. I am over the age of 18 and am competent to make this declaration. The facts set forth in this declaration are of my personal knowledge, and if sworn I could and would competently testify hereto.

2.      I am an associate at Watstein Terepka, LLP. I am an attorney of record for Defendant National Retail Solutions, Inc. ("NRS"), in the above-referenced matter.

3.      This declaration is prepared in support of NRS's Motion to Deny Class Certification and describes evidence and circumstances related to that motion.

4.      Consistent with the Court's directive that opposing counsel check with his client about individual settlement, NRS offered to settle Plaintiff Rashad Walston's claims on June 12, 2024, starting at $35,000. Hardly an hour later, counsel rejected the offer, stating that, based on a conversation he had the day before, his client had "zero interest in an individual settlement." Attached as **Exhibit A** is a true and correct copy of that

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

correspondence.

5.      On June 14, Plaintiff's counsel informed the Court that he spoke with his client on June 11 and that he wasn't interested in an individual settlement.  Attached as **Exhibit B** is a true and correct copy of that correspondence.

6.      NRS suspects that Plaintiff did not convey the June 12 offer to his client until months after he rejected it.  Plaintiff's counsel did not say his client rejected the offer in his correspondence to NRS and did not mention the offer in his correspondence to the Court. Exs. A & B.  Plaintiff's counsel first told NRS that his client rejected the June 12 offer months later, when NRS raised its concerns about the impact the engagement letter had on Plaintiff's authority to settle his claims.

7.      NRS sought Plaintiff's engagement letter in its First Set of Requests for Production, which it served on March 13, 2024.  Plaintiff objected to that request, maintaining that NRS needed to make a heightened showing of relevance and need to obtain the engagement letter.  A true and correct copy of Plaintiff's Response to Defendant's First Set of Requests for Production is attached as **Exhibit C**.

8.      Using testimony from Plaintiff's deposition, NRS demanded that Counsel produce the engagement letter.  A true and correct copy of that correspondence is attached as **Exhibit D**.

9.      Counsel ultimately proposed producing redacted copies of the engagement letters and NRS agreed, reserving its right to demand full production.  On July 31, Counsel disclosed three heavily redacted engagement letters: One dated November 21, 2023, one dated December 19, 2023, and one dated July 30, 2024.  Counsel further advised that he amended the engagement letter, appearing to remove the Springing Fee, the day before.  Attached as

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

**Exhibits E and F** are true and correct copies of, respectively, Counsel's July 31 correspondence and the redacted November 21, December 30, and July 31 engagement letters.

10. After reviewing the redacted engagement letters, NRS demanded an unredacted engagement letter on August 13, 2024. Ex. D at 4. Attached as **Exhibit G** is a true and correct copy NRS's August 13 deficiency letter.

11. Counsel initially opposed producing unredacted engagement letters, dismissing NRS's concerns as "a weird hill to fight on," stating the duty to relay settlement offers doesn't apply where it has been rejected in advanced (presumably referring to his failure to promptly communicate the June Offer), and claiming any issue related to adequacy can be cured by amending the engagement letter. Ex. D at 3. The parties met and conferred on August 16, 2024. During that meeting, Counsel said the Springing Fee was designed to prevent clients from taking a quick payout at counsel's expense.

12. NRS insisted that counsel produce the unredacted engagement letter and on August 21, Counsel relented, producing the unredacted July 30 engagement letter. Ex. D. Attached as **Exhibit H** is a true and correct copy of the largely unredacted July 30 engagement letter.[1]

13. After NRS referenced the engagement letters and their impact on adequacy in response to Plaintiff's Motion to Compel, Counsel asked NRS to identify the remaining problematic terms so he could consider whether to amend the engagement letter to purportedly cure the issues NRS intended to raise in its forthcoming Motion. On September

---

[1] On October 2 and October 4, Plaintiff agreed that NRS could file the engagement letters without seeking leave to file under seal, provided NRS redacted certain information.

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

18, 2024, NRS identified additional terms in the engagement letter that it maintained impacted adequacy, the statutory damages cap and the limit on conveying only "reasonable" settlement offers. Attached as **Exhibits I and J** are true and correct copies of those correspondences.

14. On September 25, 2024, Counsel sent NRS a third revised engagement letter, dated September 25, 2024, which removed the terms NRS identified in its September 18 correspondence. Ex. I. Attached as **Exhibit K** is a true and correct copy of the September 25 engagement letter. Additionally, at NRS's request, Counsel also produced unredacted copies of the November 21 and July 30 engagement letters. True and correct copies of those agreements are attached as **Exhibit L**.

15. Given the ethical issues revealed in the engagement letters, NRS retained Robinson, Stewart, Montgomery & Doppke, LLC to provide their expert opinion as to whether the engagement letters violate the rules of professional conduct. Attached as **Exhibit M** is a true and correct copy of the RSMD Expert Report.

16. On October 9, 2024, Counsel made a classwide settlement demand to NRS. Attached as **Exhibit N** is a true and correct copy of that demand.

I declare under penalty of perjury under the laws of the State of Georgia and the United States of America that the foregoing is true and correct.

Executed on October 15, 2024, in Atlanta, Georgia.

Patrick J. Fitzgerald

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

# EXHIBIT A

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

**From:** Jeremy Glapion <jmg@glapionlaw.com>
**Date:** Wednesday, June 12, 2024 at 12:08 PM
**To:** Ryan Watstein <Ryan@wtlaw.com>
**Subject:** Re: Walston v. NRS

[Warning – external]

Ryan:

Thank you for your email. Please see my responses.

> Thus, and in line with the Court's stated desire for the parties to resolve this case on an individual basis, please convey that NRS offers $35,000 to confidentially settle his claims, with $25k to him and $10k to counsel —unless Mr. Walston decides to split the amount differently. This offer will remain open until EOD next Wednesday.

There was no stated desire for the Parties to resolve this case individually. Just as the Court asked me if my client would resolve individually, it asked your client if it would resolve on a class-wide basis. Yesterday I conferred with my client as requested by the Court and confirmed there is zero interest in an individual settlement at this point. I intend to notify the court accordingly.

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

~~settlement at this point. I intend to notify the court accordingly.~~

It is hard to see why Mr. Walston wouldn't prefer this outcome, given his initial $9,800 demand.

Because not everyone is selfishly only out for themselves. I believe Mr. Walston made this clear when you pressed him on this point at the deposition.

Based on our preliminary research, it will take at least a year to go through that process and cost at least tens of thousands of dollars, which will reduce his potential individual recovery accordingly.

Based on my research it will take several months. This is not ideal, but I imagine this is in part why your client chose to use a foreign entity to do its bidding. I further imagine, however, your client has enough relevant documents for class certification, though it has continued its refusal to produce anything.

First, no one else has complained about NRS's calls, which NRS doesn't conduct anymore out of an abundance of caution.

So, give us the class data that we have repeatedly requested. Assuming spotless internal record keeping, few complaints suggest a small class. I have been consistent with both you and previous counsel that my goal here isn't to make you face a class action just for the sake of facing a class action. If the class is tiny or there is exculpatory evidence (e.g. consent), let me know.

Second, while we sympathize with Plaintiff's annoyance at the calls he erroneously received, NRS is not a bad actor. In fact, its owners donate most of their proceeds to charitable causes.

If we are trying to be candid, let's be candid. These calls were not "erroneously received". Your client gave my client's number—which it obtained from some third party database—to Voicelogic to do exactly what it did. Also, your client's "owner" is IDT—which paid for and owend the telephone number your client used on the calls. I do not believe IDT donates its proceeds to charitable causes.

Third, as the judge noted, Plaintiff has a "long way to go" in this case. There are substantial barriers to any recovery on the merits and at class certification. Very few of these cases are certified, and we've never had one certified in 400+ TCPA class actions.

I do not believe the Judge is privy to just how straightforward this case is.

As for your track record, you're an excellent attorney. But my track record is ~~similarly strong. I have never had class cert denied, and several of my TCPA class~~

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

similarly strong. I have never had class cert denied, and several of my TCPA class cases are among the largest per-class member recovery in the history of the statute. So, something will have to give here.

> I think it would be helpful to have a settlement conference with a Magistrate Judge.  If your client still wants to pursue class claims after that, fine.  But I think all parties would benefit from taking this in front of a neutral.

My client still wants to pursue class claims *now*. Nothing has changed, and your client's approach to settlement has been in bad faith. Not only does my client not want to settle individually, he does not trust even engaging in individual settlement conversations with your client, because the expectation is that you would just use that against him in class cert if those conversations failed.

You took your shot at him at your deposition right from the outset and sought to drive a wedge between client and counsel. You missed. I anticipate your Motion to Enforce will be denied, and I imagine the Magistrate will call us in front of him anyway to understand why your client has produced 0 documents since April 17.

If you want to cut through the nonsense and get to the bottom of this, let's do that then. If you give us the class data—the lists of numbers (or at least count of numbers) you gave to VoiceLogic for the purpose of making prerecords; the prerecord transcripts or files themselves; and whatever campaign metrics showing connect/etc VoiceLogic provides—I will strongly encourage my client to agree to a settlement conference. Note: nothing in this is intended to abrogate requests served or limit those requests in any way.

Just as your client doesn't want to settle as a class, my client does not want to settle individually. So, I'd be potentially open to a settlement conference where we are both bringing positions on settlement the other side does not want to do, but I cannot do that without class data.

Best,
Jeremy

--



**Jeremy M. Glapion**

Partner

Glapion Law Firm
1704 Maxwell Drive
Wall, New Jersey 07719

Tel.: 732-455-9737

On Wed, Jun 12, 2024 at 11:00 AM, Ryan Watstein <Ryan@wtlaw.com> wrote:

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

On Wed, Jan 12, 2024 at 11:00 AM, Ryan Watstein <Ryan@wtlaw.com> wrote:

Hi Jeremy,

I wanted to follow up on yesterday's hearing.  Obviously, the parties disagree about whether there was a settlement.  But as we made clear in our motion to enforce, NRS wants to avoid the time and expense of additional litigation, including the expense associated with a possible evidentiary hearing, which the Court indicated might be necessary to resolve the settlement question.  Thus, and in line with the Court's stated desire for the parties to resolve this case on an individual basis, please convey that NRS offers $35,000 to confidentially settle his claims, with $25k to him and $10k to counsel—unless Mr. Walston decides to split the amount differently.  This offer will remain open until EOD next Wednesday.

As you know, this is significantly more than Mr. Walston could recover on his best day in court, and is almost three times what he would get if the Court agrees with us that there was a settlement.  It is hard to see why Mr. Walston wouldn't prefer this outcome, given his initial $9,800 demand.  That's even more true in this case given the contemplated letters rogatory.  Based on our preliminary research, it will take at least a year to go through that process and cost at least tens of thousands of dollars, which will reduce his potential individual recovery accordingly.

Given your statements yesterday about Plaintiff not being interested in individual settlement because he wants to represent the class, I wanted to make a couple additional points.  First, no one else has complained about NRS's calls, which NRS doesn't conduct anymore out of an abundance of caution.  Second, while we sympathize with Plaintiff's annoyance at the calls he erroneously received, NRS is not a bad actor.  In fact, its owners donate most of their proceeds to charitable causes.  Third, as the judge noted, Plaintiff has a "long way to go" in this case.  There are substantial barriers to any recovery on the merits and at class certification.  Very few of these cases are certified, and we've never had one certified in 400+ TCPA class actions.  Statistically speaking, the most likely outcome is that Mr. Walston spends years litigating this case and ultimately ends taking an individual settlement less than we are offering now.

I think it would be helpful to have a settlement conference with a Magistrate Judge.  If your client still wants to pursue class claims after that, fine.  But I think all parties would benefit from taking this in front of a neutral.

Please provide this communication to your client and let us know his response to having a settlement conference by Friday so that we can report back to the Court.

Thanks,
-Ryan

**Ryan D. Watstein (bio)**

WATSTEIN TEREPKA LLP

P: 404-782-0695

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

ryan@wtlaw.com
www.wtlaw.com

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

# EXHIBIT B

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6



Gmail

Jeremy Glapion <jmg@glapionlaw.com>

## Walston v. NRS - 24-cv-83 - Plaintiff's Settlement Position

1 message

**Jeremy Glapion** <jmg@glapionlaw.com>
To: lynette_santiago@ilnd.uscourts.gov

Fri, Jun 14, 2024 at 9:34 AM

Hi Lynette:

Thank you again for your work to date on this case.

I represent Plaintiff in the above-captioned matter.

Pursuant to docket entry 28, I am writing to confirm that Plaintiff does not have any interest in an individual settlement or a settlement conference to that end. I confirmed this through discussing directly and at length with Plaintiff on June 11.

We are always interested in discussing a class-wide resolution.

I am happy to further clarify Plaintiff's position and reasoning here, if the Court requests.

Thank you,
Jeremy

--

**Jeremy M. Glapion**
Partner

Glapion Law Firm
1704 Maxwell Drive
Wall, New Jersey 07719
Tel.: 732-455-9737

RWW001286

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

# EXHIBIT C

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| **RASHAD WALSTON,** | Civil Case No.: 24-cv-83 |
| Plaintiff, | **Plaintiff's Responses to Defendant's First Set of Requests for Production** |
| v. | |
| **NATIONAL RETAIL SOLUTIONS, INC.** | |
| Defendant. | |

### **GENERAL**

Plaintiff hereby submits these written responses to Defendant's First Set of Requests for Production. These responses are accurate as of the date of submission, and any omissions, updates, or changes will be made promptly as required by any applicable rule or statute. In addition, documents responsive to many of these requests are in the exclusive possession of Defendant and/or other third-parties. Nothing herein is intended to suggest otherwise, and the responses below are limited only to those items in Plaintiff's control, possession, or knowledge. Further, to the extent a document produced by Defendant is relevant to these requests, Plaintiff will not re-produce said document to Defendant. This has no bearing on Plaintiff's belief as to the relevance of said document.

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

## REQUESTS FOR PRODUCTION

### REQUEST NO. 1

All DOCUMENTS EVIDENCING COMMUNICATIONS YOU have had with any PERSON regarding any of the facts and allegations set forth in, or underlying, the COMPLAINT and the defenses set forth in the ANSWER, including, without limitation, all non-privileged COMMUNICATIONS YOU sent to or received from any PERSON.

### RESPONSE:

Objection on the following ground(s): the request is overly broad in that it purports to ask for "all non-privileged COMMUNICATIONS", related to this case or not. The request also purports to call for attorney-client privileged information, as it requests all communications "including" (but not limited to) non-privileged communications. Limiting this request to the facts of this case and to non-privileged communications, please see documents produced as: RWW0001-0017, which encompass the voicemail recordings of the calls from Defendant to Plaintiff, screenshots of those calls, and the demand letter sent to Defendant. Additional material that may be responsive to this request was, on April 19, produced to Plaintiff's counsel through a subpoena to Cricket/AT&T. Plaintiff's counsel, due to a technical error on Cricket/AT&T's end, is currently unable to access these documents. To the extent any such documents are responsive, they will be produced immediately after resolution of these technical issues and review.

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

**REQUEST NO. 2**

All DOCUMENTS (including, without limitation, recordings) containing statements, observations, summaries or reports of any kind made by any PERSON having any knowledge of any allegation or claim alleged in the COMPLAINT or that document or relate in any manner to YOUR claims, allegations, or alleged damages in this litigation.

**RESPONSE**:

Objection on the following ground(s): the request is overly broad in that it purports to ask for attorney-client communications and attorney work product. Limiting this request to non-privileged material, please see documents produced as: RWW0001-0017, which encompass the voicemail recordings of the calls from Defendant to Plaintiff, screenshots of those calls, and the demand letter sent to Defendant. Additional material that may be responsive to this request was, on April 19, produced to Plaintiff's counsel through a subpoena to Cricket/AT&T. Plaintiff's counsel, due to a technical error on Cricket/AT&T's end, is currently unable to access these documents. To the extent any such documents are responsive, they will be produced immediately after resolution of these technical issues and review.

**REQUEST NO. 3**

All DOCUMENTS YOU or any other PERSON involved in preparing responses to DEFENDANT'S First Set of Interrogatories relied upon in, or reviewed in connection with,

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

preparing YOUR responses to DEFENDANT'S First Set of Interrogatories, served contemporaneously herewith.

**RESPONSE**:

No additional responsive documents in Plaintiff's possession. All documents currently in Plaintiff's possession have been produced as RWW0001-1234.

**REQUEST NO. 4**

All DOCUMENTS (including but not limited to voicemail recordings) YOU identified, reviewed, or relied upon in preparing YOUR Initial Disclosures pursuant to Rule 26 of the Federal Rules of Civil Procedure.

**RESPONSE**:

No additional responsive documents in Plaintiff's possession. All documents currently in Plaintiff's possession have been produced as RWW0001-1234.

**REQUEST NO. 5**

All DOCUMENTS that EVIDENCE, REFER OR RELATE TO, or CONCERN all lawsuits, court proceedings, administrative proceedings, arbitrations, or other legal proceedings to which YOU have been a party or witness, or in which YOU provided oral or written testimony, including, without limitation, any and all civil actions, criminal actions,

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

arbitrations, mediations, administrative actions, or any other similar proceedings or actions.

**RESPONSE**:

For responsive material, please see Plaintiff's response to Interrogatory No. 6 for docket numbers for each legal proceeding in which Plaintiff has been involved and which he recalls. To the extent Defendant seeks non-filed material (such as discovery material or settlement material), Plaintiff objects to the relevance and proportionality of such a request, and will not produce such material.

**REQUEST NO. 6**

DOCUMENTS sufficient to EVIDENCE, CONCERN, or REFER OR RELATE TO the SUBJECT TELEPHONE NUMBER, including, without limitation, documents sufficient to evidence YOUR phone plan, the persons on such plan, all billing statements, and all records of incoming calls to, or outgoing calls from, that number, including any and all calls that resulted in voice messages or voicemails, including the calls identified in the COMPLAINT.

**RESPONSE**:

Please see RWW0001-0017, which encompass the voicemail recordings of the calls from Defendant to Plaintiff, screenshots of those calls, and the demand letter sent to Defendant. Additional material that may be responsive to this request was, on April 19, produced to Plaintiff's counsel through a subpoena to Cricket/AT&T. Plaintiff's counsel,

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

due to a technical error on Cricket/AT&T's end, is currently unable to access these documents. To the extent any such documents are responsive, they will be produced immediately after resolution of these technical issues and review.

**REQUEST NO. 7**

All DOCUMENTS that constitute, EVIDENCE, CONCERN, or REFER OR RELATE TO any notes, recordings, or other memorialization YOU or any other PERSON made that document any of the allegations in the COMPLAINT or any other fact at issue in this action.

**RESPONSE**:

Please see RWW0001-0017, which encompass the voicemail recordings of the calls from Defendant to Plaintiff, screenshots of those calls, and the demand letter sent to Defendant. Additional material that may be responsive to this request was, on April 19, produced to Plaintiff's counsel through a subpoena to Cricket/AT&T. Plaintiff's counsel, due to a technical error on Cricket/AT&T's end, is currently unable to access these documents. To the extent any such documents are responsive, they will be produced immediately after resolution of these technical issues and review.

**REQUEST NO. 8**

All DOCUMENTS that EVIDENCE, CONCERN, or REFER OR RELATE TO the calls identified in the COMPLAINT.

**RESPONSE**:

6

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Please see RWW0001-0017, which encompass the voicemail recordings of the calls from Defendant to Plaintiff, screenshots of those calls, and the demand letter sent to Defendant. Additional material that may be responsive to this request was, on April 19, produced to Plaintiff's counsel through a subpoena to Cricket/AT&T. Plaintiff's counsel, due to a technical error on Cricket/AT&T's end, is currently unable to access these documents. To the extent any such documents are responsive, they will be produced immediately after resolution of these technical issues and review.

**REQUEST NO. 9**

All DOCUMENTS, including, but not limited to contracts, between YOU and the carrier(s) or provider(s) of telephone service for the SUBJECT TELEPHONE NUMBER, including terms of service applicable to YOUR use of that number.

**RESPONSE**:

Material that may be responsive to this request was, on April 19, produced to Plaintiff's counsel through a subpoena to Cricket/AT&T. Plaintiff's counsel, due to a technical error on Cricket/AT&T's end, is currently unable to access these documents. To the extent any such documents are responsive, they will be produced immediately after resolution of these technical issues and review.

**REQUEST NO. 10**

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

All DOCUMENTS that EVIDENCE, CONCERN, or REFER OR RELATE TO any telephone number from which YOU allege that DEFENDANT called YOU at the SUBJECT TELEPHONE NUMBER.

**RESPONSE**:

Please see RWW0001-0017, which encompass the voicemail recordings of the calls from Defendant to Plaintiff, screenshots of those calls, and the demand letter sent to Defendant. Additional material that may be responsive to this request was, on April 19, produced to Plaintiff's counsel through a subpoena to Cricket/AT&T. Plaintiff's counsel, due to a technical error on Cricket/AT&T's end, is currently unable to access these documents. To the extent any such documents are responsive, they will be produced immediately after resolution of these technical issues and review.

**REQUEST NO. 11**

All DOCUMENTS that EVIDENCE, CONCERN, or REFER OR RELATE TO any LEAD FORM YOU have completed, listing the SUBJECT TELEPHONE NUMBER, from January 5, 2020 to present.

**RESPONSE**:

Objection, as there is no relevance to any lead form other than Defendant's lead form (if such a form exists). Notwithstanding this objection, and without withholding any documents based thereupon, no such documents in Plaintiff's possession.

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

**REQUEST NO. 12**

All DOCUMENTS that EVIDENCE, CONCERN, or REFER OR RELATE TO any COMMUNICATIONS between YOU and any third party (other than YOUR counsel) that REFER OR RELATE TO the allegations set forth in, or underlying, YOUR COMPLAINT and the defenses set forth in the ANSWER, including, without limitation, all recordings, voicemail messages, letters, or other correspondence and all DOCUMENTS YOU sent to or received from such third party.

**RESPONSE**:

Please see RWW0001-1234. Additional material that may be responsive to this request was, on April 19, produced to Plaintiff's counsel through a subpoena to Cricket/AT&T. Plaintiff's counsel, due to a technical error on Cricket/AT&T's end, is currently unable to access these documents. To the extent any such documents are responsive, they will be produced immediately after resolution of these technical issues and review.

**REQUEST NO. 13**

All DOCUMENTS that EVIDENCE, CONCERN, or REFER OR RELATE TO YOUR COMMUNICATIONS with any PERSON (other than YOUR counsel) wherein YOU discussed DEFENDANT'S alleged violations of the TCPA.

**RESPONSE**:

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Please see RWW0001-1234. Additional material that may be responsive to this request was, on April 19, produced to Plaintiff's counsel through a subpoena to Cricket/AT&T. Plaintiff's counsel, due to a technical error on Cricket/AT&T's end, is currently unable to access these documents. To the extent any such documents are responsive, they will be produced immediately after resolution of these technical issues and review.

**REQUEST NO. 14**

All DOCUMENTS that EVIDENCE, SUPPORT OR REFUTE, CONCERN, or REFER OR RELATE TO YOUR allegation in the COMPLAINT that DEFENDANT used an artificial or prerecorded voice to contact YOU.

**RESPONSE**:

Objection as this calls for documents protected by attorney-client privilege or attorney work product. Please see RWW0001-0017, which encompass the voicemail recordings of the calls from Defendant to Plaintiff, screenshots of those calls, and the demand letter sent to Defendant. Additional material that may be responsive to this request was, on April 19, produced to Plaintiff's counsel through a subpoena to Cricket/AT&T. Plaintiff's counsel, due to a technical error on Cricket/AT&T's end, is currently unable to access these documents. To the extent any such documents are responsive, they will be produced immediately after resolution of these technical issues and review.

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

**REQUEST NO. 15**

All DOCUMENTS that EVIDENCE, SUPPORT OR REFUTE, CONCERN, or REFER OR RELATE TO YOUR allegation that DEFENDANT acted willfully or knowingly.

**RESPONSE**:

Please see RWW0001-0017, which encompass the voicemail recordings of the calls from Defendant to Plaintiff, screenshots of those calls, and the demand letter sent to Defendant. Additional material that may be responsive to this request was, on April 19, produced to Plaintiff's counsel through a subpoena to Cricket/AT&T. Plaintiff's counsel, due to a technical error on Cricket/AT&T's end, is currently unable to access these documents. To the extent any such documents are responsive, they will be produced immediately after resolution of these technical issues and review.

**REQUEST NO. 16**

All DOCUMENTS that EVIDENCE, SUPPORT OR REFUTE, CONCERN, or REFER OR RELATE TO YOUR allegations in Paragraph 13 of the COMPLAINT that "Plaintiff's telephone number is and was a cellular telephone number."

**RESPONSE**:

Please see RWW0001-0017, which encompass the voicemail recordings of the calls from Defendant to Plaintiff, screenshots of those calls, and the demand letter sent to Defendant. Additional material that may be responsive to this request was, on April 19, produced to Plaintiff's counsel through a subpoena to Cricket/AT&T. Plaintiff's counsel,

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

due to a technical error on Cricket/AT&T's end, is currently unable to access these documents. To the extent any such documents are responsive, they will be produced immediately after resolution of these technical issues and review.

**REQUEST NO. 17**

All DOCUMENTS that EVIDENCE, SUPPORT OR REFUTE, CONCERN, or REFER OR RELATE TO YOUR allegations in Paragraph 14 of the COMPLAINT that "Plaintiff is the regular user of this telephone number."

**RESPONSE**:

Please see RWW0001-0017, which encompass the voicemail recordings of the calls from Defendant to Plaintiff, screenshots of those calls, and the demand letter sent to Defendant. Additional material that may be responsive to this request was, on April 19, produced to Plaintiff's counsel through a subpoena to Cricket/AT&T. Plaintiff's counsel, due to a technical error on Cricket/AT&T's end, is currently unable to access these documents. To the extent any such documents are responsive, they will be produced immediately after resolution of these technical issues and review.

**REQUEST NO. 18**

All DOCUMENTS that EVIDENCE, SUPPORT OR REFUTE, CONCERN, or REFER OR RELATE TO YOUR allegations in Paragraph 15 of the COMPLAINT referencing the alleged calls occurring on or about March 7, 2022, May 19, 2022, August 8, 2022, March 20, 2023, May 4, 2023, and July 31, 2023.

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

**RESPONSE**:

Please see RWW0001-0017, which encompass the voicemail recordings of the calls from Defendant to Plaintiff, screenshots of those calls, and the demand letter sent to Defendant. Additional material that may be responsive to this request was, on April 19, produced to Plaintiff's counsel through a subpoena to Cricket/AT&T. Plaintiff's counsel, due to a technical error on Cricket/AT&T's end, is currently unable to access these documents. To the extent any such documents are responsive, they will be produced immediately after resolution of these technical issues and review.

**REQUEST NO. 19**

All DOCUMENTS that EVIDENCE, SUPPORT OR REFUTE, CONCERN, or REFER OR RELATE TO YOUR allegations in Paragraph 16 of the COMPLAINT that the calls "were prerecorded rather than a live person leaving a voicemail."

**RESPONSE**:

Please see RWW0001-0017, which encompass the voicemail recordings of the calls from Defendant to Plaintiff, screenshots of those calls, and the demand letter sent to Defendant. Additional material that may be responsive to this request was, on April 19, produced to Plaintiff's counsel through a subpoena to Cricket/AT&T. Plaintiff's counsel, due to a technical error on Cricket/AT&T's end, is currently unable to access these documents. To the extent any such documents are responsive, they will be produced immediately after resolution of these technical issues and review.

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

**REQUEST NO. 20**

All DOCUMENTS that EVIDENCE, SUPPORT OR REFUTE, CONCERN, or REFER OR RELATE TO YOUR allegations in Paragraph 17 of the COMPLAINT that "Plaintiff knows that these calls were prerecorded due to his familiarity with normal human mannerisms, speaking, and intonations, as well as through comparison of the messages."

**RESPONSE**:

Please see RWW0001-0017, which encompass the voicemail recordings of the calls from Defendant to Plaintiff, screenshots of those calls, and the demand letter sent to Defendant. Additional material that may be responsive to this request was, on April 19, produced to Plaintiff's counsel through a subpoena to Cricket/AT&T. Plaintiff's counsel, due to a technical error on Cricket/AT&T's end, is currently unable to access these documents. To the extent any such documents are responsive, they will be produced immediately after resolution of these technical issues and review.

**REQUEST NO. 21**

All DOCUMENTS that EVIDENCE, SUPPORT OR REFUTE, CONCERN, or REFER OR RELATE TO YOUR allegations in Paragraph 21 of the COMPLAINT that "What's more, the waveforms (*i.e.,* the visual representation that shows how loud or quiet the sound is at different moments in the file) of both audio files is identical."

**RESPONSE**:

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Please see RWW0001-0017, which encompass the voicemail recordings of the calls from Defendant to Plaintiff, screenshots of those calls, and the demand letter sent to Defendant. Additional material that may be responsive to this request was, on April 19, produced to Plaintiff's counsel through a subpoena to Cricket/AT&T. Plaintiff's counsel, due to a technical error on Cricket/AT&T's end, is currently unable to access these documents. To the extent any such documents are responsive, they will be produced immediately after resolution of these technical issues and review.

**REQUEST NO. 22**

All DOCUMENTS that EVIDENCE, SUPPORT OR REFUTE, CONCERN, or REFER OR RELATE TO YOUR allegations in Paragraph 22 of the COMPLAINT that "[u]pon information and belief, it would be nearly impossible for two audio files to have identical length, content, and waveforms without the audio used to create the files actually being identical—that is, prerecorded."

**RESPONSE**:

No additional documents in Plaintiff's possession.

**REQUEST NO. 23**

All DOCUMENTS that EVIDENCE, SUPPORT OR REFUTE, CONCERN, or REFER OR RELATE TO YOUR allegations in Paragraph 30 of the COMPLAINT that "Plaintiff provided no consent whatsoever here, and certainly not the kind that would rise to the level of prior express written consent."

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

**RESPONSE**:

No such documents.

**REQUEST NO. 24**

All DOCUMENTS that EVIDENCE, SUPPORT OR REFUTE, CONCERN, or REFER OR RELATE TO YOUR allegations in Paragraph 32 of the COMPLAINT that "it appears that Defendant scraped his telephone number from a database such as taxrpo.com[.]"

**RESPONSE**:

No such documents in Plaintiff's possession, but please see Plaintiff's response to Interrogatory No. 18.

**REQUEST NO. 25**

All DOCUMENTS that EVIDENCE, SUPPORT OR REFUTE, CONCERN, or REFER OR RELATE TO YOUR allegations in Paragraph 35 of the COMPLAINT that "even if Plaintiff had provided his telephone number to Defendant—which he did not—the form through which Defendant solicits such telephone numbers, as shown below, lacks the required disclosures (e.g. that calls might be made using a prerecorded voice)," including where the included screenshot came from, the specific URL, and the date retrieved.

**RESPONSE**:

16

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Objection, as this request appears to request a narrative response in addition to documents. Without waiving this objection, this particular screenshot came from nrsplus.com, and was retrieved at some point on or before January 3, 2024.

**REQUEST NO. 26**

ALL DOCUMENTS that EVIDENCE, SUPPORT OR REFUTE, CONCERN, or REFER OR RELATE TO YOUR allegation in Paragraph 42 of the COMPLAINT that "[t]he exact number and identities of the persons who fit within the Classes are ascertainable in that Defendant maintain[s] written and electronically stored data showing: a. The dates and times Defendant placed its calls; b. The telephone numbers to which Defendant placed its calls; c. The purpose and content of its calls."

**RESPONSE**:

Plaintiff will demonstrate this and produce any documents that may be necessary to demonstrate this as required at the appropriate time for moving for class certification. Currently, any such documents are in Defendant's or its agent's exclusive possession.

**REQUEST NO. 27**

ALL DOCUMENTS that EVIDENCE, SUPPORT OR REFUTE, CONCERN, or REFER OR RELATE TO YOUR allegation in Paragraph 45 the COMPLAINT that "[t]here are common questions of law and fact affecting the rights of members of the Class."

**RESPONSE**:

17

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Plaintiff will demonstrate this as required at the appropriate time for moving for class certification, and supplement these responses as necessary or required by law, rule, or order.

**REQUEST NO. 28**

ALL DOCUMENTS that EVIDENCE, SUPPORT OR REFUTE, CONCERN, or REFER OR RELATE TO YOUR allegation in Paragraph 46 the COMPLAINT that "Plaintiff's claims are typical of the claims of the Class in that they arise from Defendant's uniform conduct and are based on the same legal theories."

**RESPONSE**:

Plaintiff will demonstrate this as required at the appropriate time for moving for class certification, and supplement these responses as necessary or required by law, rule, or order.

**REQUEST NO. 29**

ALL DOCUMENTS that EVIDENCE, SUPPORT OR REFUTE, CONCERN, or REFER OR RELATE TO YOUR allegation in Paragraph 49 the COMPLAINT that "Plaintiff will thoroughly and adequately protect the interests of the Class, as Plaintiff and his retained counsel do not have any conflicts of interest with the proposed Class; Plaintiff's counsel is experienced in class actions of this type and can adequately represent the interests of the class; and Plaintiff and his counsel have adequate financial resources to assure that the interests of the class will not be harmed."

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

**RESPONSE**:

Plaintiff will demonstrate this as required at the appropriate time for moving for class certification, and supplement these responses as necessary or required by law, rule, or order.

**REQUEST NO. 30**

ALL DOCUMENTS that EVIDENCE, SUPPORT OR REFUTE, CONCERN, or REFER OR RELATE TO YOUR allegation in Paragraph 50 of the COMPLAINT that "Defendant has acted and refused to act on grounds generally applicable to the Class, thereby making injunctive and declaratory relief appropriate for the Class."

**RESPONSE**:

Plaintiff will demonstrate this as required at the appropriate time for moving for class certification, and supplement these responses as necessary or required by law, rule, or order.

**REQUEST NO. 31**

ALL DOCUMENTS that EVIDENCE, SUPPORT OR REFUTE, CONCERN, or REFER OR RELATE TO YOUR allegation in Paragraph 51 of the COMPLAINT that "[t]he prosecution of separate actions by individual Class Members would create a risk of inconsistent or varying adjudications."

**RESPONSE**:

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Plaintiff will demonstrate this as required at the appropriate time for moving for class certification, and supplement these responses as necessary or required by law, rule, or order.

**REQUEST NO. 32**

ALL DOCUMENTS that EVIDENCE, SUPPORT OR REFUTE, CONCERN, or REFER OR RELATE TO YOUR allegation in Paragraph 54 the COMPLAINT that "[t]he prosecution of separate actions would risk confronting Defendant with incompatible standards of conduct."

**RESPONSE**:

Plaintiff will demonstrate this as required at the appropriate time for moving for class certification, and supplement these responses as necessary or required by law, rule, or order.

**REQUEST NO. 33**

ALL DOCUMENTS that EVIDENCE, SUPPORT OR REFUTE, CONCERN, or REFER OR RELATE TO YOUR allegation in Paragraph 57 of the COMPLAINT that "[t]he expense of individual litigation and the limited recovery in individual litigation justify a class action."

**RESPONSE**:

Plaintiff will demonstrate this as required at the appropriate time for moving for class certification, and supplement these responses as necessary or required by law, rule, or order.

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

**REQUEST NO. 34**

All DOCUMENTS that EVIDENCE, SUPPORT OR REFUTE, CONCERN, or REFER OR RELATE TO YOUR allegations in Paragraph 70 of the COMPLAINT that "[e]ach member of the putative Class has Article III standing as unwanted prerecorded calls invaded their privacy and intruded upon their seclusion, which is the exact harm the TCPA was designed to prevent."

**RESPONSE**:

Plaintiff will demonstrate this as required at the appropriate time for moving for class certification, and supplement these responses as necessary or required by law, rule, or order.

**REQUEST NO. 35**

ALL DOCUMENTS that EVIDENCE, SUPPORT OR REFUTE, CONCERN, or REFER OR RELATE TO whether the members of the putative classes are ascertainable.

**RESPONSE**:

Plaintiff will demonstrate this as required at the appropriate time for moving for class certification, and supplement these responses as necessary or required by law, rule, or order.

**REQUEST NO. 36**

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

For each expert witness YOU expect to call at trial, all DOCUMENTS, data or other materials provided to, shown to, or considered by the expert in arriving at his or her opinion.

**RESPONSE**:

Plaintiff will produce such documents in accordance with the expert disclosure deadline set by the Court pursuant to docket entry 15 (subject to any modifications subsequently made to that schedule).

**REQUEST NO. 37**

The resume for each expert witness YOU expect to call at trial.

**RESPONSE**:

Plaintiff will produce such documents in accordance with the expert disclosure deadline set by the Court pursuant to docket entry 15 (subject to any modifications subsequently made to that schedule).

**REQUEST NO. 38**

All DOCUMENTS that YOU intend to present at any trial, deposition, hearing or other proceeding in this matter.

**RESPONSE**:

Plaintiff will produce such documents in accordance with the deadlines set by the Court pursuant to docket entry 15 (subject to any modifications subsequently made to that

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

schedule). Plaintiff will, as required, timely supplement responses to Defendant's discovery requests, as necessary.

**REQUEST NO. 39**

All DOCUMENTS that EVIDENCE, SUPPORT OR REFUTE, CONCERN, or REFER OR RELATE TO every carrier, the name of every plan, and the dates during which YOU had such plans, for each cellular phone number YOU have had since January 5, 2020, to the present.

**RESPONSE**:

Objection on the following ground(s): the request is overly broad in that it purports to ask for information regarding telephones and telephone numbers irrelevant to this litigation. Limiting this request to the subject telephone number, material that may be responsive to this request was, on April 19, produced to Plaintiff's counsel through a subpoena to Cricket/AT&T. Plaintiff's counsel, due to a technical error on Cricket/AT&T's end, is currently unable to access these documents. To the extent any such documents are responsive, they will be produced immediately after resolution of these technical issues and review.

**REQUEST NO. 40**

All DOCUMENTS that REFER or RELATE to any complaints by YOU to any PERSON about unwanted telephone calls YOU claim to have received.

**RESPONSE**:

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Objection on the following ground(s): the request is overly broad in that it purports to ask for about complaints unrelated to this litigation or the calls from Defendant to Plaintiff. Subject to this litigation, but without withholding any documents, please see documents produced as: RWW0001-0017, which encompass the voicemail recordings of the calls from Defendant to Plaintiff, screenshots of those calls, and the demand letter sent to Defendant. Additional material that may be responsive to this request was, on April 19, produced to Plaintiff's counsel through a subpoena to Cricket/AT&T. Plaintiff's counsel, due to a technical error on Cricket/AT&T's end, is currently unable to access these documents. To the extent any such documents are responsive, they will be produced immediately after resolution of these technical issues and review.

**REQUEST NO. 41**

ALL retention, retainer, or other agreements between YOU and any attorney that RELATE TO or EVIDENCE YOUR representation in this lawsuit.

**RESPONSE**:

Objection, as such agreements are not discoverable in the Seventh Circuit without the requesting party showing relevance or necessity. *See, e.g. Blaise v. Transworld Sys.*, 2022 U.S. Dist. LEXIS 136053, *3-7 (N.D. Ill. Aug. 1, 2022). Such documents will not be produced.

**REQUEST NO. 42**

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

All DOCUMENTS that EVIDENCE, SUPPORT OR REFUTE, CONCERN, or REFER OR RELATE TO YOUR use of a call blocking service, software, or application from January 5, 2020 to the present.

**RESPONSE**:

No such documents in Plaintiff's possession, but please see Plaintiff's response to Interrogatory No. 14.

**REQUEST NO. 43**

To the extent not produced in response to any of the foregoing Requests, all DOCUMENTS that EVIDENCE, CONCERN, SUPPORT OR REFUTE, or REFER OR RELATE TO the allegations set forth in YOUR COMPLAINT or the defenses set forth in the ANSWER.

**RESPONSE**:

No additional documents in Plaintiff's possession. Additional material that may be responsive to this request was, on April 19, produced to Plaintiff's counsel through a subpoena to Cricket/AT&T. Plaintiff's counsel, due to a technical error on Cricket/AT&T's end, is currently unable to access these documents. To the extent any such documents are responsive, they will be produced immediately after resolution of these technical issues and review.

**REQUEST NO. 44**

To the extent not produced in response to any of the foregoing Requests, all

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

DOCUMENTS that REFER or RELATE TO the SUBJECT TELEPHONE NUMBER, including without limitation all call logs of calls, contracts, call recordings, call transcripts, and voicemails.

**RESPONSE**:

No additional documents in Plaintiff's possession. Additional material that may be responsive to this request was, on April 19, produced to Plaintiff's counsel through a subpoena to Cricket/AT&T. Plaintiff's counsel, due to a technical error on Cricket/AT&T's end, is currently unable to access these documents. To the extent any such documents are responsive, they will be produced immediately after resolution of these technical issues and review.

**REQUEST NO. 45**

All DOCUMENTS that constitute, EVIDENCE, or REFER OR RELATE TO any social media COMMUNICATIONS YOU (or YOUR attorneys, agents or anyone acting on YOUR behalf) have made or contributed to regarding the facts and circumstances giving rise to this litigation and/or your COMPLAINT.

**RESPONSE**:

No such documents in Plaintiff's possession.

**REQUEST NO. 46**

All DOCUMENTS that EVIDENCE, CONCERN, SUPPORT OR REFUTE any attempts, efforts, advertisements, and/or COMMUNICATIONS by YOU (or YOUR attorneys, agents

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

or anyone acting on YOUR behalf), to solicit, recruit, or persuade other individuals to participate in this action. This Request seeks production of, among other things, any written advertisements or solicitations related to this litigation, as well as any "electronic" advertisements or solicitations, including firm websites, blog, and social media messages, social media publications, or other similar electronic COMMUNICATIONS.

**RESPONSE**:

No such documents in Plaintiff's possession.

**REQUEST NO. 47**

All DOCUMENTS EVIDENCING, CONCERNING, or RELATING TO COMMUNICATIONS YOU sent to or received from members of the putative Class or individuals you contend may be members of the putative Class.

**RESPONSE**:

No such documents in Plaintiff's possession.

DATED:     April 19, 2024     s/ Jeremy M. Glapion_____
                                       Jeremy M. Glapion
                                       **The Glapion Law Firm, LLC**
                                       1704 Maxwell Drive
                                       Wall, New Jersey 07719
                                       Tel: 732.455.9737
                                       Fax: 732.965.8006
                                       jmg@glapionlaw.com

                                       Attorney for Plaintiff

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

# EXHIBIT D

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

**From:** Jeremy Glapion <jmg@glapionlaw.com>
**Date:** Wednesday, August 21, 2024 at 1:57 PM
**To:** Patrick Fitzgerald <pfitzgerald@wtlaw.com>
**Cc:** Ryan Watstein <Ryan@wtlaw.com>, Jeffrey Brown <jeff@jgbrownlaw.com>
**Subject:** Re: Walston - Rule 37 Deficiency to Plaintiff

[Warning – external]

Hi Pat:

Attached, please find the unredacted representation agreement, as well as Plaintiff's Fourth Set of Interrogatories (8 & 9). I will calendar these as due on September 20, 2024.

--



**Jeremy M. Glapion**

Partner

Glapion Law Firm
1704 Maxwell Drive
Wall, New Jersey 07719

Tel.: 732-455-9737

On Tue, Aug 20, 2024 at 8:15 AM, Patrick Fitzgerald <pfitzgerald@wtlaw.com> wrote:

> Regarding the engagement letter: We cannot agree to your proposal limiting our using the engagement letter to identify terms that give rise to a conflict within a certain amount of time. Defendant is entitled to the unredacted agreement, and we cannot predict the relevance of the terms sight-unseen. Please let us know by Wednesday if Defendant will produce the unredacted letter.
>
> **Patrick J. Fitzgerald (bio)**

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

**Patrick J. Fitzgerald (bio)**

WATSTEIN TEREPKA LLP

P: (404) 400-3382

pfitzgerald@wtlaw.com

www.wtlaw.com

---

**From:** Jeremy Glapion <jmg@glapionlaw.com>
**Date:** Thursday, August 15, 2024 at 8:51 PM
**To:** Patrick Fitzgerald <pfitzgerald@wtlaw.com>
**Cc:** Ryan Watstein <Ryan@wtlaw.com>, Jeffrey Brown <jeff@jgbrownlaw.com>
**Subject:** Re: Walston - Rule 37 Deficiency to Plaintiff

[Warning – external]

That works for me

--

 **Jeremy M. Glapion**

Partner

Glapion Law Firm
1704 Maxwell Drive
Wall, New Jersey 07719

Tel.: 732-455-9737

On Thu, Aug 15, 2024 at 8:47 PM, Patrick Fitzgerald <pfitzgerald@wtlaw.com> wrote:

> Jeremy,
> Our position is that we've made a sufficient showing to obtain the engagement letter. I'm available to jump on a call tomorrow at 230, let me know if that works.
>
> **Patrick J. Fitzgerald (bio)**
>
> WATSTEIN TEREPKA LLP
>
> P: (404) 400-3382
>
> pfitzgerald@wtlaw.com
>
> www.wtlaw.com
>
> ---
>
> **From:** Jeremy Glapion <jmg@glapionlaw.com>
> **Date:** Tuesday, August 13, 2024 at 9:04 PM
> **To:** Patrick Fitzgerald <pfitzgerald@wtlaw.com>
> **Cc:** Ryan Watstein <Ryan@wtlaw.com>, Jeffrey Brown

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

**Cc:** Ryan Walstein <Ryan@wtlaw.com>, Jeffrey Brown <jeff@jgbrownlaw.com>
**Subject:** Re: Walston - Rule 37 Deficiency to Plaintiff

[Warning – external]

Hi Pat and Ryan:

I am happy to work with you on this, but it's a bit of a weird hill to fight on.

- We again disagree with your characterization of Mr. Walston's testimony. He never said anything close to "counsel controls settlement".
- *Lowrey*, the case you cited, notes that the duty to relay settlement offers does not apply if it has been rejected in advance.
- I am truly not sure how many ways I can tell you this, but the client *has no interest in an individual settlement*. This is truly a "no means no" situation. This is not a negotiating tactic. Your settlement offers have been rejected because my client is doing his job as class rep. He told you this at his depo, and was quite clear on his reasoning (and it had nothing to do with fear of fees). 163:10-164:7.
- Again, without getting into privileged communications, I will also confirm that rejection of your previous settlement offers was re-confirmed subsequent to the amendment.
- It is unclear to what "additional evidence" you refer at the beginning of page 2 suggesting there are additional terms relevant to adequacy. If there are other terms about which you are concerned, I will look at the agreement for them and disclose them, as I did with the settlement terms.
- The suggestion that I took the time to amend the agreement and re-produce it, but really just kept the "offending" provision in, is silly. If I were that unethical, wouldn't I have just redacted this provision in the December 19 agreement?
- More broadly, all of the cases you cited make clear that issues with the retainer agreement can be cured by amendment. That's what we did in an abundance of caution. I'm not sure what more you want.

I am available to discuss, if needed, tomorrow (8/14) between 1-3 pm eastern and Friday between 11 am and 3 pm.

--



**Jeremy M. Glapion**

Partner

Glapion Law Firm
1704 Maxwell Drive
Wall, New Jersey 07719

Tel.: 732-455-9737

On Tue, Aug 13, 2024 at 8:01 PM, Patrick Fitzgerald <pfitzgerald@wtlaw.com> wrote:

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Jeremy,
Please see the attached regarding the engagement letters.
Pat

**Patrick J. Fitzgerald ([bio](#))**

WATSTEIN TEREPKA <sup>LLP</sup>

P: (404) 400-3382

[pfitzgerald@wtlaw.com](mailto:pfitzgerald@wtlaw.com)

[www.wtlaw.com](http://www.wtlaw.com)

---

**From:** Jeremy Glapion <[jmg@glapionlaw.com](mailto:jmg@glapionlaw.com)>
**Date:** Monday, July 29, 2024 at 10:02 PM
**To:** Patrick Fitzgerald <[pfitzgerald@wtlaw.com](mailto:pfitzgerald@wtlaw.com)>
**Cc:** Ryan Watstein <[Ryan@wtlaw.com](mailto:Ryan@wtlaw.com)>, Jeffrey Brown
<[jeff@jgbrownlaw.com](mailto:jeff@jgbrownlaw.com)>
**Subject:** Re: Walston - Rule 37 Deficiency to Plaintiff

[Warning – external]
OK great. I will work to get this to you this week.

--

 **Jeremy M. Glapion**

Partner

Glapion Law Firm
1704 Maxwell Drive
Wall, New Jersey 07719

Tel.: 732-455-9737

On Mon, Jul 29, 2024 at 8:01 PM, Patrick Fitzgerald
<[pfitzgerald@wtlaw.com](mailto:pfitzgerald@wtlaw.com)> wrote:

Hi Jeremy,
Reserving our right to demand full production, your proposal works.
Pat

**Patrick J. Fitzgerald ([bio](#))**

WATSTEIN TEREPKA <sup>LLP</sup>

P: (404) 400-3382

[pfitzgerald@wtlaw.com](mailto:pfitzgerald@wtlaw.com)

[www.wtlaw.com](http://www.wtlaw.com)

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

**From:** Jeremy Glapion <jmg@glapionlaw.com>
**Date:** Wednesday, July 24, 2024 at 12:07 PM
**To:** Patrick Fitzgerald <pfitzgerald@wtlaw.com>
**Cc:** Ryan Watstein <Ryan@wtlaw.com>, Jeffrey Brown <jeff@jgbrownlaw.com>
**Subject:** Re: Walston - Rule 37 Deficiency to Plaintiff

[Warning – external]
Hi Pat:

Without waiving our disagreement with your position, we would be willing to produce a redacted version of the operative representation agreement and its attached "Duties of a Class Representative" document, that leaves unredacted:

1. The opening paragraph showing the Parties to the agreement
2. The section headers
3. Parts necessary for definitions of terms used in other unredacted sections
4. Parts related to any situations dealing with potential reimbursement or lack thereof from Plaintiff to Counsel
5. Parts related to settlement and authority to settle

Note: the agreement I am offering to produce is dated December 19, 2023. It replaced a previous version of the agreement, dated November 21, 2023. The two agreements are identical in all relevant respects.

Let me know if this is acceptable or we need to discuss further.

--



**Jeremy M. Glapion**

Partner

Glapion Law Firm
1704 Maxwell Drive
Wall, New Jersey 07719

Tel.: 732-455-9737

On Tue, Jul 23, 2024 at 10:05 PM, Patrick Fitzgerald <pfitzgerald@wtlaw.com> wrote:

> Hi Jeremy,
>
> We're following up regarding Plaintiff's refusal to produce his engagement agreement in response to Request for Production No. 41. As explained below, Mr. Walston's deposition testimony establishes that the agreement is relevant to Mr. Walston and your adequacy to represent the proposed class and that such information cannot be obtained by other means. Accordingly, we request that Plaintiff produce the

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

agreement in its entirety.

As to relevancy, during Mr. Walston's deposition, he testified that the engagement agreement gave counsel authority to approve or reject settlements. Walston Dep. 166:23-168:14. The agreement is therefore relevant to Mr. Walston's adequacy as class representative. *See In re Ocean Bank*, 2007 WL 1063042, at 7 (N.D. Ill. Apr. 9, 2007) (noting that if class counsel can veto any settlement or insist on settling when the named representative wants to go to trial, then the named representative is arguably inadequate because he cannot make critical decisions about the litigation).

Counsel's control over settlement also raises a class loyalty concern, which independently establishes relevance. Specifically, an engagement letter that denies a plaintiff authority to settle violates Ill. Sup. Ct. R. 1.2(a). That would create a serious question as to whether class counsel can represent the class loyally. *Creative Montessori Learning Centers v. Ashford Gear LLC*, 662 F.3d 913, 918 (7th Cir. 2011) ("Misconduct by class counsel that creates a serious doubt that counsel will represent the class loyally requires denial of class certification.").

Mr. Walston was also unable to confidently testify about other contents of the engagement letter, establishing that its production is necessary. For example, Mr. Walston testified that he was "not 100 percent sure" whether he could settle individually without incurring a monetary penalty. Walston Dep. 166:23-167:4.

As Defendant has established both relevance and necessity, your reliance on *Blaise v. Transworld Sys. Inc.*, is misplaced. 2022 WL 3026946, at *2 (N.D. Ill. Aug. 1, 2022).

Given this context, we request the prompt production of the engagement letter. If Plaintiff refuses, please provide your availability to meet and confer regarding Request No. 41.

Sincerely,

**Patrick J. Fitzgerald (bio)**

WATSTEIN TEREPKA LLP
P: (404) 400-3382
pfitzgerald@wtlaw.com
www.wtlaw.com

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

RWW1264-1270      Plaintiff's Fourth
– July…ent.pdf      Rogs (8-9).pdf
833 KB             96 KB

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

# EXHIBIT E

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

**From:** Jeremy Glapion <jmg@glapionlaw.com>
**Date:** Wednesday, July 31, 2024 at 1:48 PM
**To:** Ryan Watstein <Ryan@wtlaw.com>, Patrick Fitzgerald
<pfitzgerald@wtlaw.com>
**Cc:** Jeffrey Brown <jeff@jgbrownlaw.com>
**Subject:** Discovery items

[Warning – external]

Hi Ryan and Pat:

Nice speaking with you today. Despite the contentious reports, I do think we may
have landed in a good spot and hopefully things can proceed more smoothly from
here.

A few items:

1. Attached, please find redacted representation agreements dated November
   21, 2023; December 19, 2023; and July 30, 2024. The recent amendment is
   made out of an abundance of caution based on a review of your provided
   case law and the guidance provided therein. *See, e.g. In re Ocean Bank*. To
   give you the complete picture of what has changed, I have produced redacted
   versions of all 3 representation agreements. The agreement in place
   from November 21 through December 18, and the agreement in place July
   30 to the present, are fully redacted but for those sections/parts that differ in
   substance from the December 19 agreement, which has been produced as
   previously offered.

2. I think it would be helpful to clarify your forthcoming discovery. You mentioned
   that all that was really left is to run the search terms from RFP 52. While these
   search terms may capture *some* of the documents responsive to other
   requests, they likely won't capture all (e.g. I'm not sure that they would capture
   the lists of numbers your client uploaded to VoiceLogic). I'd like to understand
   whether this means you will *not* have lists/files/reports provided to/from
   VoiceLogic (unless turned up by the search terms), or that you may, but you're

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

currently combing through documents yet to be produced apart from the search term documents.

3. Regarding Diana Stern's documents/depo, I think the most reasonable approach is to take the deposition on August 19 based on what you produce regarding Diana Stern's deposition, but hold any remaining time open pending the results of subsequent production. If additional questioning is needed based on such subsequent production, I would agree to conduct those remotely, or to ask such questions at the 30(b)(6) deposition on their own separate clock (rather than counting against 30(b)(6) time), if Mrs. Stern is indeed a designee. Flexible here, if you have a different proposal.

Let me know if we need to hop on a call to discuss this (or anything else).

Best,
Jeremy

--



**Jeremy M. Glapion**

Partner

Glapion Law Firm
1704 Maxwell Drive
Wall, New Jersey 07719

Tel.: 732-455-9737

RWW1250-56 -
Redact…ep.pdf
684 KB

RWW1257-63
Redact…ent.pdf

RWW1242-49 -
Redact…ep.pdf
838 KB

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

# EXHIBIT F

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6



**NOTIWTHSTANDING ANYTHING ELSE IN THIS AGREEMENT, THIS AGREEMENT DOES NOT OBLIGATE EITHER PARTY TO PROCEED WITH A LAWSUIT. PRIOR TO THE INITIATION OF ANY LAWSUIT, THE PARTIES WILL NEED TO ENTER INTO A NEW AGREEMENT WITH THIS LANGUAGE REMOVED.**

RWW001250

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6



RWW001251

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

RWW001252

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6



RWW001253

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6



RWW001254

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6



AGREED: _Rashad Walston_        Dated: 21/11/2023
Rashad Walston (Nov 21, 2023 13:21 CST)

RASHAD WALSTON


THE GLAPION LAW FIRM LLC


AGREED: _[signature]_        Dated: 21/11/2023
(Nov 21, 2023 14:23 EST)

Jeremy M. Glapion
THE GLAPION LAW FIRM

RWW001255

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6



Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

## STANDARD TERMS OF ENGAGEMENT

**I, RASHAD WALSTON,** ("you, your") retain **THE GLAPION LAW FIRM, LLC,** located at 1704 Maxwell Drive, Wall, NJ, ("we, us, our, firm, attorneys"), to represent your interests in a matter against National Retail Solutions, Inc., and any of their affiliates, subsidiaries, related entities, agents and employees thereof for claims based on violations of the Telephone Consumer Protection Act ("TCPA") and other potential claims related to the nuisance telephone calls (such as invasion of privacy) (collectively, "Claims").

Your current mailing address (no PO box) is:



Your telephone number (if an unwanted calls case, the number that received or is receiving the unwanted calls):

4088

The wireless carrier for the listed number:



Your best contact number if it differs from the above:

### Attorney Client Relationship



### Responsibilities

RWW001242

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6



**Electronic Communications**

**Association With Outside Counsel**

RWW001243



**Representing Adverse Interest**

**Legal Fees**

You will not have to pay for the firm's services.

We may ask the other party to pay attorneys' fees and costs. You agree that we are entitled to any such money awarded or specified in any settlement agreement as costs and attorneys' fees for our work on this case. ████████████ 1) the firm's hourly rate (currently $650/hour) times hours worked (**"base lodestar amount"**).

It is expressly understood that in the event that the attorneys are unsuccessful in recovering money in this action, **you will not be responsible to reimburse the attorneys for any out of pocket costs or legal fees**.

RWW001244

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6



Should the matter be certified as a class or collective action (including certification for the purposes of settlement only), the Court will be required to approve any settlement. In such a circumstance, the firm shall be entitled only to those fees approved by the Court, in the form prescribed by the Court (e.g. to be paid separately or out of the settlement fund).

If a matter brought as a class action at any point ceases to be a class action (such as through denial of class certification), the firm may elect to withdraw from representing you for your individual claim. You owe the firm nothing in such a circumstance. Should the firm not elect to withdraw, the provisions of this agreement remain in force as applicable to individual claims.



## Settlement

We will not settle any matter without your approval. We will notify you immediately of the terms of any reasonable settlement offers we receive. You have the absolute right to accept or reject any settlement offer. If you do not respond to three attempted communications (regarding a settlement offer) from this office – including the sending of a certified letter – then we can accept and sign the agreement and release on behalf of the client.

While you retain the right to accept any settlement offer from defendant, you further agree that if you accept a settlement offer against the written advice of the firm, and the settlement offer does not provide for a payment of attorney's fees equaling or exceeding the base lodestar amount, **y**ou will be responsible for payment of our base lodestar amount.

## Tax Treatment



## Terminating the Representation



RWW001245

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

███████████████████████████████████████
████████████████████████████

We may withdraw from your representation at any time prior to the filing of any formal legal proceeding before a court or other judicial or quasi-judicial body, with no costs due from you to us. ███████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
██████

We may mutually agree to terminate the attorney-client relationship, in which case such an agreement needs to be made in a writing signed by both you and the firm. Should we mutually agree to terminate the relationship, you will owe us nothing.

## **Retention of Closed Files**

████████████████████████████████████████
███████████████████████████

## **No Guarantees**

████████████████████████████████

## **Entire Agreement**

████████████████████████████████████████
████████████████████████

## **No Oral Modifications**

Any modifications to this agreement must be in writing and sign by both of parties. Oral modifications will not be valid.

## **Severability**

████████████████████████████████████████
████.

## **Applicable Law**

█████████████████████████████████████

## **Child Support Judgment Search**

████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████

RWW001246

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

████████████████████████████████████
████████████████████████████████████
████████████████████████████████████
████████████████████████████████████
████████████████████████████████████
████████████████████████████████████

**Effective Date**

This agreement will take effect upon the signing by both of us.

AGREED: _Rashad Walston_                        Dated: 19/12/2023
Rashad Walston (Dec 19, 2023 19:18 CST)
RASHAD WALSTON

THE GLAPION LAW FIRM LLC

AGREED: _____                        Dated: 19/12/2023
(Dec 19, 2023 13:42 EST)
Jeremy M. Glapion
THE GLAPION LAW FIRM

RWW001247

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

<u>Duties of a Class Representative</u>

█ ████████████████████████████████████████████████████████
████████████████████

█ ████████████████████████████████████████████████████████
███████████████████████████████████████

█ ████████████████████████████████████████████████████
███████████████████████

█ ████████████████████████████████████████████████████
██████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
███████████████████████████████

█ ███████████████████████████████████████████████████████
████████████████████████████████████████████████████████
█████████████████████████████████████████████████████████████

█ ████████████████████████████████████████████████████████
███████████████████████████████████████████████████

█ ████████████████████████████████████████████████████████
████████████████████████████████████████

8.  A class representative accepts the possibility that, in the event the case is lost, the court may assess certain of defendants' costs of litigation against the class representatives. To the extent permitted by law and the applicable Rules of Professional Responsibility, however, Attorneys will pay these costs.

█ ████████████████████████████████████████████████████████
██████████████████████████████████████████████████████████
██████████████████████████████████████████████████
█████████████████████████████

█ ██████████████████████████████████████████████████
██████████████████████████████████████████████
██████████████████████████████████████████████████████
██████████████████████████████████████████████████████
████████████████████████████████████████████
██████████████████████████████████████████████

Dated: ___19/12/2023___

Signed: _*Rashad Walston*_____
         Rashad Walston (Dec 19, 2023 19:18 CST)

Printed Name: __Rashad Walston_____

RWW001248

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6



Adobe Acrobat Sign

RWW001249

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

RWW001257

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

RWW001258

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6



Should we associate with outside counsel, we will notify you in writing via email, unless you indicate another method is preferred. Your response to that email agreeing to our association with outside counsel constitutes a modification of this paragraph to include in the table below the outside counsel with whom we, as if written directly therein.

| Attorney(s) | Reason | Percentage of Total Fee |
|---|---|---|
| Jeffrey Grant Brown | Local Counsel | |
| Sam Gebrael | Assistance Obtaining Canadian Documents | |



RWW001259

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6



### Settlement

We will not settle any matter without your approval. We will notify you immediately of the terms of any reasonable settlement offers we receive. You have the absolute right to accept or reject any settlement offer. If you do not respond to three attempted communications (regarding a settlement offer) from this office – including the sending of a certified letter – then we can accept and sign the agreement and release on behalf of the client.

### Tax Treatment



RWW001260

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6



RWW001261

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6



AGREED: _Rashad Walston_          Dated: 30/07/24
Rashad Walston (Jul 30, 2024 13:13 CDT)
RASHAD WALSTON


THE GLAPION LAW FIRM LLC

AGREED: _____          Dated: 30/07/24
(Jul 30, 2024 14:54 EDT)
Jeremy M. Glapion
THE GLAPION LAW FIRM

RWW001262

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6



Adobe Acrobat Sign

RWW001263

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

# EXHIBIT G

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

# WATSTEIN | TEREPKA LLP

Ryan Watstein
Ryan@wtlaw.com
404-782-0695

August 13, 2024

**VIA E-MAIL:**

Jeremy M. Glapion
THE GLAPION LAW FIRM, LLC
1704 Maxwell Drive
Wall, NJ 07719
jmg@glapionlaw.com

Re:     *Walston v. National Retail Solutions, Inc.*;
          United States District Court Northern District of Illinois;
          Case No. 1:24-cv-00083

Dear Jeremy,

We're writing about the engagement letters you produced. As described below, the letters establish that you improperly limited Rashad Walston's ("Mr. Walston") authority to settle this action and possibly violated your obligation to communicate settlement offers to your client. To examine the impact of those violations, we ask that you immediately produce unredacted copies of the engagement letters.

The December 19, 2023 engagement letter (the "December 19 Letter") improperly limited Mr. Walston's authority to settle this matter and thereby violated Ill. Sup. Ct. R. 1.2. Specifically, the December 19 Letter states "[w]hile you retain the right to accept any settlement offer from defendant, you further agree that if you accept a settlement offer against the written advice of the firm, and the settlement offer does not provide for a payment of attorney's fees *equaling or exceeding the base lodestar amount, you will be responsible for payment of our base lodestar amount*." RWW001245 (emphasis added). This term "impermissibly burdens the client's exclusive right to settle a case." *Compton v. Kittleson*, 171 P.3d 172, 180 (Alaska 2007) (rejecting that the interest of encouraging attorneys to take on consumer protection complaints justifies a similar fee-shifting provision). The December 19 Letter also improperly limits your obligation to communicate "reasonable" settlement offers to Mr. Walston, which potentially violates Ill. Sup. Ct. R. 1.4. *First National Bank v. Lowery*, 872 N.E.2d 447, 465 (1st Dist. 2007) ("[A]n attorney has an 'absolute duty' to convey any settlement offer to the client[.]").

---

 **Atlanta**
1055 Howell Mill Road, 8th Floor
Floor
Atlanta, GA 30318

 **Los Angeles**
515 S. Flower Street, 19th Floor

Los Angeles, CA 90071

 **Miami**
218 NW 24th Street, 3rd

Miami, FL 33127

🌐 www.wtlaw.com          ✉ Ryan@wtlaw.com          📞 404-782-0695

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

August 12, 2024
Page 2 of 2

In light of these violations, National Retail Solutions, Inc. ("NRS") is entitled to unredacted copies of the engagement letters for the following reasons.

First, the December 19 Letter confirms Mr. Walston's testimony about your control over settlement, which is relevant to adequacy. Though Mr. Walston testified that he was not interested in an individual settlement, and you represented the same to Judge Harjani, Mr. Walston never had a choice. If he accepted NRS's settlement offer against your advice, he would left with "*less than* nothing" after paying your hourly rate. *Compton,* 171 P.3d at 179. Based on the additional evidence that the engagement letters contain terms relevant to your adequacy to serve as class counsel, the engagement letters are discoverable in their entirety.

Further, you maintain that you amended the December 19 Letter and removed the penalty provision (but not the limitation on communicating "reasonable" settlement offers) in the July 30, 2024 engagement letter, which was almost entirely redacted. RWW001257-63. Without addressing whether an amendment cures the conflict between you and Mr. Walston, NRS cannot confirm that you removed the offending provision or moved it under a different heading. Accordingly, NRS demands that you produce unredacted copies of the engagement letters.

Please confirm by EOD Tuesday, August 13th that you will produce the unredacted engagement letters. If you refuse, please provide your availability this week to meet and confer on this issue.

Sincerely,

*/s/ Ryan D. Watstein*

Ryan D. Watstein

*Counsel for National Retail Solutions, Inc.*

cc:    Patrick J. Fitzgerald (pfitzgerald@wtlaw.com)

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

# EXHIBIT H

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

## STANDARD TERMS OF ENGAGEMENT

**I, RASHAD WALSTON,** ("you, your") retain **THE GLAPION LAW FIRM, LLC,** located at 1704 Maxwell Drive, Wall, NJ, ("we, us, our, firm, attorneys"), to represent your interests in a matter against National Retail Solutions, Inc., and any of their affiliates, subsidiaries, related entities, agents and employees thereof for claims based on violations of the Telephone Consumer Protection Act ("TCPA") and other potential claims related to the nuisance telephone calls (such as invasion of privacy) (collectively, "Claims").

Your current mailing address (no PO box) is:

█████████████ – Chicago, IL 60643

Your telephone number (if an unwanted calls case, the number that received or is receiving the unwanted calls):

██████4088

The wireless carrier for the listed number:

Cricket

Your best contact number if it differs from the above:

### Attorney Client Relationship

Your communications with us are protected by our ethical obligation of confidentiality and by the evidentiary rule of attorney-client privilege. You should be open and forthright with us so that we have all information relevant to your representation. Please note that when we represent a legal entity (corporation, limited liability company, or partnership); our attorney-client relationship is with the entity alone and, unless otherwise stated, is not with its officers, directors, shareholders, partners, members, or affiliates.

### Responsibilities

As your attorneys, we have a duty of independent professional judgment, confidentiality, loyalty, and diligence. As our client, you have a duty of cooperation, honesty, and candor.

RWW001264

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

As your attorneys, we will conduct a full and thorough investigation of your case and proceed, or decline to proceed, accordingly. If, after an investigation, we choose not to pursue this case, we may terminate this agreement. You will owe us nothing.

As your attorneys, we are under no obligation to initiate or defend post-trial motions or post-trial appeals regarding the Claims unless specifically agreed to in writing.

As your attorneys, we retain final decision making authority with respect to matters of strategy, including, but not limited to, whether and how to oppose certain motions; whether and how to raise particular arguments; and whether and how to plead or dismiss particular claims. This list is not exhaustive.

As our client, you have a duty to preserve all documents that are or may become relevant to the litigation. You also have a duty to be reasonably available to answer questions or provide information as necessary.

As our client, you confirm that you have not assigned or transferred, and will not assign or transfer, all or part of your Claims to any person and that you have not signed, and will not sign, any other contingency fee agreement with any other lawyer or law firm with respect to the Claims, while this agreement remains in force.

As our client, you understand and agree that we may ask one or more other law firms to assist us in our representation of you with respect to the Claims, but that we will not do so without obtaining prior written consent from you.

As our client, you confirm that you have provided us with honest information regarding the facts and merits of your case, and have not withheld any information that, in your best judgment, would be relevant to our decision to take this case or our strategy in pursuing this case. _RW_

As our client, you confirm that you took no steps to intentionally manufacture any claim against you, such as by voluntarily subjecting yourself to the behavior about which you now complain (e.g. intentionally soliciting calls you now claim to be unwanted or unsolicited). _RW_

## Electronic Communications

For speed and efficiency, we will commonly use e-mail, cellular telephones and facsimile to communicate with you. However, it is possible that these types of communications could be intercepted or misrouted. By signing this agreement, you consent to these communications.

## Association With Outside Counsel

From time to time, we may choose to associate ourselves with attorneys and law firms other than those included in the definition of "we, us, our, firm, attorneys" above. This may include, but is not limited to, local counsel (an attorney licensed in the court in which we intend

RWW001265

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6
CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

to file, and a requirement in many courts for us to litigate if we are not licensed in that state or court) or by entering into a joint prosecution agreement ("JPA") with other firms with similar cases (already on file or otherwise).

Ordinarily, this will not affect your arrangement with us. We will still be your lawyers. We will still be litigating this case. We may just have assistance. Ordinarily, this also does not impact any fees you may owe us, as we agree with any outside counsel what percentage of the overall fee they will receive, depending on the circumstances.

Should we associate with outside counsel, we will notify you in writing via email, unless you indicate another method is preferred. Your response to that email agreeing to our association with outside counsel constitutes a modification of this paragraph to include in the table below the outside counsel with whom we are, as if written directly therein.

| Attorney(s) | Reason | Percentage of Total Fee |
|---|---|---|
| Jeffrey Grant Brown | Local Counsel | 10% |
| Sam Gebrael | Assistance Obtaining Canadian Documents | 0% |

### Representing Adverse Interest

As long as we represent you, we will not provide services for another person whose interests are adverse to yours within the same subject matter of our relationship or in any claim involving you, without your written consent.

### Legal Fees

You will not have to pay for the firm's services.

We may ask the other party to pay attorneys' fees and costs. You agree that we are entitled to any such money awarded or specified in any settlement agreement as costs and attorneys' fees for our work on this case. You agree that this amount shall be negotiated by us. In so negotiating, we will seek an amount equal to the greater of 1) the firm's hourly rate (currently $650/hour) times hours worked (**"base lodestar amount"**), 2) our actual costs plus one-third (1/3) of the full amount of any settlement or judgment, or 3) in case in which your damages are primarily or exclusively statutory in nature, the difference between the total settlement amount and your maximum permitted statutory damages.

Should any award be provided in a "lump sum" payment without separating out attorneys' fees and costs, it is assumed that our fees are the greater of 1) the firm's hourly rate (currently $650/hour) times hours worked (**"base lodestar amount"**), 2) our actual costs plus one-third (1/3) of the full amount of any settlement or judgment, or 3) in a case in which your damages are primarily or exclusively statutory in nature, the difference between the total settlement amount and your maximum permitted statutory damages.

RWW001266

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

It is expressly understood that in the event that the attorneys are unsuccessful in recovering money in this action, **you will not be responsible to reimburse the attorneys for any out of pocket costs or legal fees**.

You understand that the firm may be making a fee application to the Court to recover attorneys' fees and costs associated with this matter. You agree to fully cooperate with the firm with respect to all fee applications.

Should the matter be certified as a class or collective action (including certification for the purposes of settlement only), the Court will be required to approve any settlement. In such a circumstance, the firm shall be entitled only to those fees approved by the Court, in the form prescribed by the Court (e.g. to be paid separately or out of the settlement fund).

If a matter brought as a class action at any point ceases to be a class action (such as through denial of class certification), the firm may elect to withdraw from representing you for your individual claim. You owe the firm nothing in such a circumstance. Should the firm not elect to withdraw, the provisions of this agreement remain in force as applicable to individual claims.

We record and calculate the time spent for all services rendered in increments of on tenth of an hour (1/10). This includes telephone calls (minimum charge of .2 hours), preparing and reviewing letters, documents or other correspondence (minimum charge of .3 hours), travel time to and from meetings and the Court, legal research, preparation of pleadings and other related documents, negotiations and any other services relating to this matter.

## Settlement

We will not settle any matter without your approval. We will notify you immediately of the terms of any reasonable settlement offers we receive. You have the absolute right to accept or reject any settlement offer. If you do not respond to three attempted communications (regarding a settlement offer) from this office – including the sending of a certified letter – then we can accept and sign the agreement and release on behalf of the client.

## Tax Treatment

**You understand that this firm is not a tax advisor and has not and will not give tax advice as to the tax consequences of any recovery in this matter. The firm recommends that you seek advice of an accountant or other tax professional for this purpose. This is especially so in light of the 2017 Tax Bill. In some situations, attorneys' fees may not be deductible. Please check with your accountant.** _RW_

## Terminating the Representation

You have the right to discharge us at any time by putting your decision in writing and mailing it to our offices. In that event, you agree to pay for services rendered up to the date of discharge. If we are your attorneys of record in any proceeding, you will sign and return a substitution-of-attorney form as soon as you receive it from us.

RWW001267

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

We may withdraw from your representation at any time prior to the filing of any formal legal proceeding before a court or other judicial or quasi-judicial body, with no costs due from you to us. However, should there be a deadline of which we are aware, we will endeavor to assist you in identifying new counsel, or take whatever steps necessary to preserve, or assist you in preserving, those deadlines, prior to withdrawal. This paragraph does not limit our ability to withdraw subsequent to initiating a formal legal proceeding on grounds supported in law or in equity.

We may mutually agree to terminate the attorney-client relationship, in which case such an agreement needs to be made in a writing signed by both you and the firm. Should we mutually agree to terminate the relationship, you will owe us nothing.

### Retention of Closed Files

If you request, when our representation ends, we will promptly return to you all of your papers and property, whether you have paid for them or not.

### No Guarantees

We do not guarantee any particular result. Any opinion we offer is not a guarantee.

### Entire Agreement

This document contains our entire agreement. There are no other promises, statements, or agreements about the services we will perform.

### No Oral Modifications

Any modifications to this agreement must be in writing and sign by both of parties. Oral modifications will not be valid.

### Severability

If any part of this agreement is held to be invalid, the rest of the agreement remains in effect.

### Applicable Law

The laws of the State of New Jersey will govern the interpretation of this agreement.

### Child Support Judgment Search

**Pursuant to New Jersey law (N.J.S.A. 2A:17-56.23b) law firms are required to perform a Child Support Judgment Search prior to releasing any funds received on behalf of a client via settlement or judgment. If the search reveals that, a child support judgment exist then that judgment must be satisfied out of the "Net Proceeds" before any funds can be released to the client. The statute defines "Net Proceeds" as any amount of money, in**

RWW001268

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

excess of $2,000, payable to the prevailing party or beneficiary after attorney fees, witness fees, court fees, fees for health care providers, etc. The statute also provides that the cost of the Judgment Search (approximately $10.00 per person) is chargeable against the net proceeds as a cost of settlement. This firm will comply with the requirements of this statute.

## **Effective Date**

This agreement will take effect upon the signing by both of us.

AGREED: _Rashad Walston_                     Dated: 30/07/24
Rashad Walston (Jul 30, 2024 13:13 CDT)
RASHAD WALSTON

THE GLAPION LAW FIRM LLC

AGREED: _____                     Dated: 30/07/24
Jul 30, 2024 14:54 EDT
Jeremy M. Glapion
THE GLAPION LAW FIRM

RWW001269

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

# STANDARD TERMS OF ENGAGEMENT

Final Audit Report                                      2024-07-30

Adobe Acrobat Sign

RWW001270

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

# EXHIBIT I

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

**From:** Jeremy Glapion  jmg@glapionlaw.com
**Subject:** Re: Plaintiff's representation agreement concerns
**Date:** September 19, 2024 at 8:25 AM
**To:** Ryan Watstein  Ryan@wtlaw.com
**Cc:** Patrick Fitzgerald  pfitzgerald@wtlaw.com,  Jeffrey Brown  jeff@jgbrownlaw.com

JG

[Warning – external]

I appreciate the conversation on this. I'm confident that amongst the four on this chain, I am not the reason people don't like lawyers.

--



**Jeremy M. Glapion**
Partner

Glapion Law Firm
1704 Maxwell Drive
Wall, New Jersey 07719

Tel.: 732-455-9737

On Thu, Sep 19 2024 at 8:21 AM, Ryan Watstein <Ryan@wtlaw.com> wrote:

> You keep reiterating the problem: "He is completely unrestricted in his ability to settle <u>the class</u>." In any event, this is a very serious issue and we'll be litigating it, including at the COA7 if needed. This is exactly why people don't like lawyers and feel like all they care about is their own financial interest.

**From:** Jeremy Glapion <jmg@glapionlaw.com>
**Date:** Thursday, September 19, 2024 at 7:42 AM
**To:** Ryan Watstein <Ryan@wtlaw.com>
**Cc:** Patrick Fitzgerald <pfitzgerald@wtlaw.com>, Jeffrey Brown <jeff@jgbrownlaw.com>
**Subject:** Re: Plaintiff's representation agreement concerns

[Warning – external]

Though I don't necessarily agree that there's an issue with the provisions, even if you're correct that they do handicap his ability to settle individually, that doesn't seem to be a class cert issue. He is completely unrestricted in his ability to settle the class. I guess he can report me to the bar?

But with months left in discovery and before class cert, isn't this plainly curable? Just re-make your offer again after I amend the agreement. This is such a silly fight to me, especially at this point. Every problem you pointed out with the agreement I'm willing to amend out (subject to confirmation from the client) because none of them are the reason this case won't settle individually.

--



**Jeremy M. Glapion**
Partner

Glapion Law Firm
1704 Maxwell Drive
Wall, New Jersey 07719

Tel.: 732-455-9737

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

On Thu, Sep 19 2024 at 7:17 AM, Ryan Watstein <Ryan@wtlaw.com> wrote:

> You state: "I'm not really sure how [the $10k recovery cap] bears on his ability to accept a class-wide settlement." I'm struggling to see how someone of your caliber (that's a compliment) doesn't get this. You cannot use provisions to handcuff or disincentivize your client from settling an uncertified, putative class action individually. By contractually limiting your own client's recovery, you are placing an enormous disincentive on him settling his own case.
>
> If you had your client's best interests at heart, you would have negotiated a better settlement than the $9800 he wanted at the outset. That would have made a meaningful difference in his life. Instead, you handcuffed him with a variety of unethical provisions to enrich yourself at his expense.
>
> It's very simple and we are confident that you understand the issues. But if you think it's strategically beneficial to play coy, then feel free to continue to do so.

---

**From:** Jeremy Glapion <jmg@glapionlaw.com>
**Date:** Wednesday, September 18, 2024 at 8:53 PM
**To:** Patrick Fitzgerald <pfitzgerald@wtlaw.com>
**Cc:** Ryan Watstein <Ryan@wtlaw.com>, Jeffrey Brown <jeff@jgbrownlaw.com>
**Subject:** Re: Plaintiff's representation agreement concerns

[Warning – external]

Thanks, Pat. Courts near unanimously disagree that amendment does not cure adequacy, but we can brief that if we must.

To be clear, and not that I expect you to change your mind on the propriety of the damages cap, this is mainly for FDCPA matters, where statutory damages are capped at $1,000 but settlements often exceed $10,000 (due to fee-shifting). Perhaps there is a better way to handle that in future agreements, but I'm not really sure how this bears on his ability to accept a class-wide settlement.

In any event, are there any other terms on which you intend to base your Motion? I would like to make sure my discussion with my client regarding amendment is comprehensive.

Best,

Jeremy

[]

--

**Jeremy M. Glapion**

Partner

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Glapion Law Firm
1704 Maxwell Drive
Wall, New Jersey 07719

Tel.: 732-455-9737

On Wed, Sep 18, 2024 at 8:41 PM, Patrick Fitzgerald <pfitzgerald@wtlaw.com> wrote:

Jeremy,

We appreciate the offer, but revising the agreement doesn't cure the adequacy issue. You knew your original engagement agreement was improper, and you kept those terms in the agreement until just before you had to produce it. That you cannot see the problems with the other terms that serve the same end as the springing hourly fee provision—improper client control—is just not credible.

We nevertheless identify the terms per your request, without conceding the scope of the motion or the opinions of our experts: The language below places an impermissible cap on Plaintiff's recovery and constitutes a patently unreasonable fee arrangement. Regardless of how much NRS offers, Plaintiff cannot recover more than his statutory damages, impermissibly burdening his right to settle this case. That is particularly problematic in this case, where your client previously made an individual demand and could materially benefit from a larger payment. That you would deprive him of that opportunity with these terms is unethical.

And, as we previously identified, the agreement limiting your obligation to convey settlement offers to those you deem "reasonable" is likewise problematic. It's especially improper considering the statutory damages cap. Given that the most Walston could ever recover from an individual settlement is his statutory damages, it's no wonder why you have communicated his alleged refusal to consider any individual settlement.

Again, you cannot cure these defects by amendment. It was only by chance that Plaintiff's testimony about the retainer agreement alluded to a potential conflict, supporting our July 23 deficiency letter that ultimately led to the July 30 amendment. Allowing an amendment to cure this deficiency would condone and promote similar misconduct and render prohibitions on these kinds of terms meaningless.

At bottom, the decision to settle a putative class action must remain with the named plaintiff. Counsel can make recommendations, but they cannot employ terms that effectively make the decision for the plaintiff, as you have done here.

===

## Legal Fees

You will not have to pay for the firm's services.

We may ask the other party to pay attorneys' fees and costs. You agree that we are entitled to any such money awarded or specified in any settlement agreement as costs and attorneys' fees for our work on this case. You agree that this amount shall be negotiated by us. In so negotiating, we will seek an amount *equal to the greater of* 1) the firm's hourly rate (currently $650/hour) times hours worked ("base lodestar amount"), 2) our actual costs plus one-third (1/3) of the full amount of any settlement or judgment, or 3) in case in which your damages are primarily or exclusively statutory in nature, the *difference between the total settlement amount and your maximum permitted statutory damages*.

Should any award be provided in a "lump sum" payment without separating out attorneys' fees and costs, it is assumed that *our fees are the greater of* 1) the firm's hourly rate (currently $650/hour) times hours worked ("base lodestar amount"), 2) our actual costs plus one-third (1/3) of the full amount of any settlement or judgment, or 3) in a case in which your damages are primarily or exclusively statutory in nature, the *difference between the total settlement amount and your maximum permitted*

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

*statutory damages*.


**Patrick J. Fitzgerald (bio)**

WATSTEIN TEREPKA <sup>LLP</sup>

P: (404) 400-3382

pfitzgerald@wtlaw.com

www.wtlaw.com

---

**From:** Jeremy Glapion <jmg@glapionlaw.com>
**Date:** Tuesday, September 17, 2024 at 8:20 PM
**To:** Patrick Fitzgerald <pfitzgerald@wtlaw.com>, Ryan Watstein <Ryan@wtlaw.com>
**Cc:** Jeffrey Brown <jeff@jgbrownlaw.com>
**Subject:** Plaintiff's representation agreement concerns

[Warning – external]

Counsel:


I saw your reply today and its reference to an ethics expert. As I have offered twice previously, to the extent your client is concerned about terms in Plaintiff's representation agreement—for any reason—I am willing to work with you, and even your expert, to amend the agreement to address these concerns.


Any plausible ethical concerns in the agreement are unintentional, and you would be doing me a service to let me "clean up" the agreement moving forward.


Let me know!


Best,

Jeremy

▯


--



**Jeremy M. Glapion**

Partner

Glapion Law Firm
1704 Maxwell Drive
Wall, New Jersey 07719

Tel.: 732-455-9737

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

# EXHIBIT J

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

**From:** Jeremy Glapion <jmg@glapionlaw.com>
**Date:** Wednesday, September 18, 2024 at 3:16 PM
**To:** Patrick Fitzgerald <pfitzgerald@wtlaw.com>
**Subject:** Re: In re Amerilist Subpoena

[Warning – external]

Detailing our call:

- I agreed to ask Amerilist to hold off on the actual list of phone numbers until the court rules on the motion to compel (though I disagreed on the relevance).
- You suggested amending the protective order to allow third parties like the Amerlist to designate information as confidential.
- I disagreed with that, but offered to treat the email production (Request 1) as confidential under the agreement for two weeks to give you time to make confidentiality designations, and that I would not fight Amerilist if it asked for certain material to be held confidential.
- I reiterated my willingness to accommodate Elie's health for his individual deposition, and proposed such as spacing it out over multiple sessions or doing written questions (if there is a way to assure that such written questions will not turn into a series of mini-interrogatories).

  - Note: on further thought, I am highly disinclined to agree to written questions, but again, I'm not closing the door.

- I reiterated my offer to amend the representation agreement if you identify any problematic terms.
- I indicated I need dates for Rui and Elie soon as I would like to take those depositions within the next month or so.
- I clarified again that the client has no interest in individual settlements and that any such settlement offers are presumptively unacceptable.

--

| Jeremy M. Glapion

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6



**Jeremy M. Glapion**
Partner

Glapion Law Firm
1704 Maxwell Drive
Wall, New Jersey 07719

Tel.: 732-455-9737

On Wed, Sep 18, 2024 at 1:03 PM, Jeremy Glapion <jmg@glapionlaw.com> wrote:

Sorry, missed this. 1:30 is fine.

--



**Jeremy M. Glapion**
Partner

Glapion Law Firm
1704 Maxwell Drive
Wall, New Jersey 07719

Tel.: 732-455-9737

On Wed, Sep 18, 2024 at 12:54 PM, Patrick Fitzgerald <pfitzgerald@wtlaw.com> wrote:

Following up on pushing this meeting back 30 minutes.  If that's a conflict, I can also discuss tomorrow (other than 230-330).

**Patrick J. Fitzgerald (bio)**

WATSTEIN TEREPKA LLP
P: (404) 400-3382
pfitzgerald@wtlaw.com
www.wtlaw.com

---

**From:** Patrick Fitzgerald <pfitzgerald@wtlaw.com>
**Date:** Wednesday, September 18, 2024 at 12:32 PM
**To:** Jeremy Glapion <jmg@glapionlaw.com>
**Cc:** jeff@jgbrownlaw.com <jeff@jgbrownlaw.com>, Ryan Watstein <Ryan@wtlaw.com>
**Subject:** Re: In re Amerilist Subpoena

Jeremy,
Can we push this back 30 minutes?

**Patrick J. Fitzgerald (bio)**

WATSTEIN TEREPKA LLP

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

P: (404) 400-3382
pfitzgerald@wtlaw.com
www.wtlaw.com

---

**From:** pfitzgerald@wtlaw.com
**When:** 1:00 PM - 1:30 PM September 18, 2024
**Subject:** In re Amerilist Subpoena
**Location:** https://zoom.us/j/95630223482?
pwd=sl1O10jaaTZXqQshthCyQCIMyRQma7.1&from=addon

Patrick Fitzgerald is inviting you to a scheduled Zoom meeting.

Join Zoom Meeting
https://zoom.us/j/95630223482?
pwd=sl1O10jaaTZXqQshthCyQCIMyRQma7.1&from=addon

Meeting ID: 956 3022 3482
Passcode: 227369

---

One tap mobile
+16465588656,,95630223482#,,,,*227369# US (New York)
+16469313860,,95630223482#,,,,*227369# US

---

Dial by your location
• +1 646 558 8656 US (New York)
• +1 646 931 3860 US
• +1 301 715 8592 US (Washington DC)
• +1 305 224 1968 US
• +1 309 205 3325 US
• +1 312 626 6799 US (Chicago)
• +1 689 278 1000 US
• +1 719 359 4580 US
• +1 253 205 0468 US
• +1 253 215 8782 US (Tacoma)
• +1 346 248 7799 US (Houston)
• +1 360 209 5623 US
• +1 386 347 5053 US
• +1 507 473 4847 US

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

- +1 564 217 2000 US
- +1 669 444 9171 US
- +1 669 900 9128 US (San Jose)

Meeting ID: 956 3022 3482
Passcode: 227369

Find your local number: https://zoom.us/u/ab4k9b5Ek

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

# EXHIBIT K

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

<p style="text-align:center; color:red;">CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER</p>

## AMENDED TERMS OF ENGAGEMENT

**I, RASHAD WALSTON,** ("you, your") retain **THE GLAPION LAW FIRM, LLC**, located at 1704 Maxwell Drive, Wall, NJ, ("we, us, our, firm, attorneys"), to represent your interests in a matter against National Retail Solutions, Inc., and any of their affiliates, subsidiaries, related entities, agents and employees thereof for claims based on violations of the Telephone Consumer Protection Act ("TCPA") and other potential claims related to the nuisance telephone calls (such as invasion of privacy) (collectively, "Claims").

Your current mailing address (no PO box) is:

███████████████ Chicago, IL 60655

Your telephone number (if an unwanted calls case, the number that received or is receiving the unwanted calls):

██████4088

The wireless carrier for the listed number:

Cricket (at the time of calls); Xfinity (current)

Your best contact number if it differs from the above:

### Attorney Client Relationship

Your communications with us are protected by our ethical obligation of confidentiality and by the evidentiary rule of attorney-client privilege. You should be open and forthright with us so that we have all information relevant to your representation. Please note that when we represent a legal entity (corporation, limited liability company, or partnership); our attorney-client relationship is with the entity alone and, unless otherwise stated, is not with its officers, directors, shareholders, partners, members, or affiliates.

### Responsibilities

As your attorneys, we have a duty of independent professional judgment, confidentiality, loyalty, and diligence. As our client, you have a duty of cooperation, honesty, and candor.

<p style="text-align:right; color:red;">RWW001287</p>

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6
CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER

As your attorneys, we will conduct a full and thorough investigation of your case and proceed, or decline to proceed, accordingly. If, after an investigation, we choose not to pursue this case, we may terminate this agreement. You will owe us nothing.

As your attorneys, we are under no obligation to initiate or defend post-trial motions or post-trial appeals regarding the Claims unless specifically agreed to in writing.

As our client, you have a duty to preserve all documents that are or may become relevant to the litigation. You also have a duty to be reasonably available to answer questions or provide information as necessary.

As our client, you confirm that you have not assigned or transferred, and will not assign or transfer, all or part of your Claims to any person and that you have not signed, and will not sign, any other contingency fee agreement with any other lawyer or law firm with respect to the Claims, while this agreement remains in force.

As our client, you understand and agree that we may ask one or more other law firms to assist us in our representation of you with respect to the Claims, but that we will not do so without obtaining prior written consent from you.

As our client, you confirm that you have provided us with honest information regarding the facts and merits of your case, and have not withheld any information that, in your best judgment, would be relevant to our decision to take this case or our strategy in pursuing this case. *RW* (initial)

As our client, you confirm that you took no steps to intentionally manufacture any claim against you, such as by voluntarily subjecting yourself to the behavior about which you now complain (e.g. intentionally soliciting calls you now claim to be unwanted or unsolicited). *RW* (initial)

## Electronic Communications

For speed and efficiency, we will commonly use e-mail, cellular telephones and facsimile to communicate with you. However, it is possible that these types of communications could be intercepted or misrouted. By signing this agreement, you consent to these communications.

## Association With Outside Counsel

From time to time, we may choose to associate ourselves with attorneys and law firms other than those included in the definition of "we, us, our, firm, attorneys" above. This may include, but is not limited to, local counsel (an attorney licensed in the court in which we intend to file, and a requirement in many courts for us to litigate if we are not licensed in that state or court) or by entering into a joint prosecution agreement ("JPA") with other firms with similar cases (already on file or otherwise).

Ordinarily, this will not affect your arrangement with us. We will still be your lawyers. We will still be litigating this case. We may just have assistance. Ordinarily, this also does not impact

RWW001288

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

**CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER**

any fees you may owe us, as we agree with any outside counsel what percentage of the overall fee they will receive, depending on the circumstances.

Should we associate with outside counsel, we will notify you in writing via email, unless you indicate another method is preferred. Your response to that email agreeing to our association with outside counsel constitutes a modification of this paragraph to include in the table below the outside counsel with whom we, as if written directly therein.

| Attorney(s) | Reason | Percentage of Total Fee |
|---|---|---|
| Jeffrey Grant Brown | Local Counsel | 10% |
| Sam Gebrael | Assistance Obtaining Canadian Documents | 0% |

## **Representing Adverse Interest**

As long as we represent you, we will not provide services for another person whose interests are adverse to yours within the same subject matter of our relationship or in any claim involving you, without your written consent.

## **Legal Fees**

You will not have to pay for the firm's services.

We may ask the other party to pay attorneys' fees and costs. You agree that we are entitled to any such money awarded or specified in any settlement agreement as costs and attorneys' fees for our work on this case. You agree that this amount shall be negotiated in the first instance by us. In so negotiating, we will seek an amount equal to the greater of 1) the firm's hourly rate (currently $650/hour) times hours worked (**"base lodestar amount"**) or 2) our actual costs plus one-third (1/3) of the full amount of any settlement or judgment. Regardless of what we negotiate, however, you retain final say over the final allocation and may choose a different allocation by putting it in writing to us (including via email). In certain circumstances, our "base lodestar amount" will potentially exceed your own award. In rare circumstances, our "base lodestar amount" will exceed your total settlement. You will *not* be responsible for payment of the difference.

Should any award or settlement be provided in a "lump sum" payment without separating out attorneys' fees and costs, it is assumed that our fees are the greater of 1) the firm's hourly rate (currently $650/hour) times hours worked (**"base lodestar amount"**), or 2) our actual costs plus one-third (1/3) of the full amount of any settlement or judgment. You retain final say over the final allocation, however, and may choose a different allocation than either of the previous assumptions by putting it in writing to us (including via email). In certain circumstances, our "base lodestar amount" will potentially exceed your own award. In rare circumstances, our "base lodestar amount" will exceed your total settlement. You will *not* be responsible for payment of the difference.

RWW001289

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER

It is expressly understood that in the event that the attorneys are unsuccessful in recovering money in this action, **you will not be responsible to reimburse the attorneys for any out of pocket costs or legal fees**.

You understand that the firm may be making a fee application to the Court to recover attorneys' fees and costs associated with this matter. You agree to fully cooperate with the firm with respect to all fee applications.

Should the matter be certified as a class or collective action (including certification for the purposes of settlement only), the Court will be required to approve any settlement. In such a circumstance, the firm shall be entitled to those fees approved by the Court, in the form prescribed by the Court (e.g. to be paid separately or out of the settlement fund).

If a matter brought as a class action at any point ceases to be a class action (such as through denial of class certification), the firm may elect to withdraw from representing you for your individual claim. You owe the firm nothing in such a circumstance. Should the firm not elect to withdraw, the provisions of this agreement remain in force as applicable to individual claims.

We record and calculate the time spent for all services rendered in increments of on tenth of an hour (1/10). This includes telephone calls (minimum charge of .2 hours), preparing and reviewing letters, documents or other correspondence (minimum charge of .3 hours), travel time to and from meetings and the Court, legal research, preparation of pleadings and other related documents, negotiations and any other services relating to this matter.

## Settlement

We will not settle any matter (individual or class) without your approval. We will notify you of any settlement offer about which we are obligated to notify you under any applicable law(s) or rules (such as applicable Court rules, orders, Local Rules, Federal Rules, and/or Rules of Professional Conduct) or about which you ask us to notify you. You have the absolute right to accept or reject any settlement offer. If you do not respond to three attempted communications (regarding a settlement offer) from this office – including the sending of a certified letter – then we can accept and sign the agreement and release on your behalf.

## Tax Treatment

**You understand that this firm is not a tax advisor and has not and will not give tax advice as to the tax consequences of any recovery in this matter. The firm recommends that you seek advice of an accountant or other tax professional for this purpose. This is especially so in light of the 2017 Tax Bill. In some situations, attorneys' fees may not be deductible. Please check with your accountant. _RW_ (initial)**

## Terminating the Representation

You have the right to discharge us at any time by putting your decision in writing and mailing it to our offices. In that event, you agree to pay for services rendered up to the date of discharge. If we are your attorneys of record in any proceeding, you will sign and return a substitution-of-attorney form as soon as you receive it from us.

RWW001290

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6
CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER

We may withdraw from your representation at any time prior to the filing of any formal legal proceeding before a court or other judicial or quasi-judicial body, with no costs due from you to us. However, should there be a deadline of which we are aware, we will endeavor to assist you in identifying new counsel, or take whatever steps necessary to preserve, or assist you in preserving, those deadlines, prior to withdrawal. This paragraph does not limit our ability to withdraw subsequent to initiating a formal legal proceeding on grounds supported in law or in equity.

We may mutually agree to terminate the attorney-client relationship, in which case such an agreement needs to be made in a writing signed by both you and the firm. Should we mutually agree to terminate the relationship, you will owe us nothing.

### Retention of Closed Files

If you request, when our representation ends, we will promptly return to you all of your papers and property, whether you have paid for them or not.

### No Guarantees

We do not guarantee any particular result. Any opinion we offer is not a guarantee.

### Entire Agreement

This document contains our entire agreement. There are no other promises, statements, or agreements about the services we will perform.

### No Oral Modifications

Any modifications to this agreement must be in writing and sign by both of parties. Oral modifications will not be valid.

### Severability

If any part of this agreement is held to be invalid, the rest of the agreement remains in effect.

If any part or provision of this agreement is found to be preclusive of class certification, for any reason, that part or provision is null and void upon said finding, or upon certification of the class, whichever comes first.

### Applicable Law

The laws of the State of New Jersey will govern the interpretation of this agreement. Nothing in this provision is intended to determine which state's or forum's Rules of Professional Conduct apply to any litigation filed pursuant to this Agreement.

### Child Support Judgment Search

RWW001291

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

## CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER

**Pursuant to New Jersey law (N.J.S.A. 2A:17-56.23b) law firms are required to perform a Child Support Judgment Search prior to releasing any funds received on behalf of a client via settlement or judgment. If the search reveals that, a child support judgment exist then that judgment must be satisfied out of the "Net Proceeds" before any funds can be released to the client. The statute defines "Net Proceeds" as any amount of money, in excess of $2,000, payable to the prevailing party or beneficiary after attorney fees, witness fees, court fees, fees for health care providers, etc. The statute also provides that the cost of the Judgment Search (approximately $10.00 per person) is chargeable against the net proceeds as a cost of settlement. This firm will comply with the requirements of this statute.**

### Effective Date

This agreement will take effect upon the signing by both of us.

AGREED: _Rashad Walston_
Rashad Walston (Sep 20, 2024 22:04 CDT)
RASHAD WALSTON

Dated: 20/09/24


THE GLAPION LAW FIRM LLC

AGREED: _Jeremy Glapion_
Jeremy Glapion (Sep 25, 2024 00:00 EDT)
Jeremy M. Glapion
THE GLAPION LAW FIRM

Dated: 25/09/24

RWW001292

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

# EXHIBIT L

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6
CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

## STANDARD TERMS OF ENGAGEMENT

**I, RASHAD WALSTON,** ("you, your") retain **THE GLAPION LAW FIRM, LLC,** located at 1704 Maxwell Drive, Wall, NJ, ("we, us, our, firm, attorneys"), to represent your interests in a matter against National Retail Solutions, Inc., and any of their affiliates, subsidiaries, related entities, agents and employees thereof for claims based on violations of the Telephone Consumer Protection Act ("TCPA") and other potential claims related to the nuisance telephone calls (such as invasion of privacy) (collectively, "Claims").

Your current mailing address (no PO box) is:

- Chicago, IL 60643

Your telephone number (if an unwanted calls case, the number that received or is receiving the unwanted calls):

4088

The wireless carrier for the listed number:

Cricket

Your best contact number if it differs from the above:

### Attorney Client Relationship

Your communications with us are protected by our ethical obligation of confidentiality and by the evidentiary rule of attorney-client privilege. You should be open and forthright with us so that we have all information relevant to your representation. Please note that when we represent a legal entity (corporation, limited liability company, or partnership); our attorney-client relationship is with the entity alone and, unless otherwise stated, is not with its officers, directors, shareholders, partners, members, or affiliates.

**NOTIWTHSTANDING ANYTHING ELSE IN THIS AGREEMENT, THIS AGREEMENT DOES NOT OBLIGATE EITHER PARTY TO PROCEED WITH A LAWSUIT. PRIOR TO THE INITIATION OF ANY LAWSUIT, THE PARTIES WILL NEED TO ENTER INTO A NEW AGREEMENT WITH THIS LANGUAGE REMOVED.**

RWW001271

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

## Responsibilities

As your attorneys, we have a duty of independent professional judgment, confidentiality, loyalty, and diligence. As our client, you have a duty of cooperation, honesty, and candor.

As your attorneys, we will conduct a full and thorough investigation of your case and proceed, or decline to proceed, accordingly. If, after an investigation, we choose not to pursue this case, we may terminate this agreement. You will owe us nothing.

As your attorneys, we are under no obligation to initiate or defend post-trial motions or post-trial appeals regarding the Claims unless specifically agreed to in writing.

As your attorneys, we retain final decision making authority with respect to matters of strategy, including, but not limited to, whether and how to oppose certain motions; whether and how to raise particular arguments; and whether and how to plead or dismiss particular claims. This list is not exhaustive.

As our client, you have a duty to preserve all documents that are or may become relevant to the litigation. You also have a duty to be reasonably available to answer questions or provide information as necessary.

As our client, you confirm that you have not assigned or transferred, and will not assign or transfer, all or part of your Claims to any person and that you have not signed, and will not sign, any other contingency fee agreement with any other lawyer or law firm with respect to the Claims, while this agreement remains in force.

As our client, you understand and agree that we may ask one or more other law firms to assist us in our representation of you with respect to the Claims, but that we will not do so without obtaining prior written consent from you.

As our client, you confirm that you have provided us with honest information regarding the facts and merits of your case, and have not withheld any information that, in your best judgment, would be relevant to our decision to take this case or our strategy in pursuing this case. *RW*

As our client, you confirm that you took no steps to intentionally manufacture any claim against you, such as by voluntarily subjecting yourself to the behavior about which you now complain (e.g. intentionally soliciting calls you now claim to be unwanted or unsolicited). *RW*

## Electronic Communications

For speed and efficiency, we will commonly use e-mail, cellular telephones and facsimile to communicate with you. However, it is possible that these types of communications could be intercepted or misrouted. By signing this agreement, you consent to these communications.

RWW001272

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

### Association With Outside Counsel

From time to time, we may choose to associate ourselves with attorneys and law firms other than those included in the definition of "we, us, our, firm, attorneys" above. This may include, but is not limited to, local counsel (an attorney licensed in the court in which we intend to file, and a requirement in many courts for us to litigate if we are not licensed in that state or court) or by entering into a joint prosecution agreement ("JPA") with other firms with similar cases (already on file or otherwise).

Ordinarily, this will not affect your arrangement with us. We will still be your lawyers. We will still be litigating this case. We may just have assistance. Ordinarily, this also does not impact any fees you may owe us, as we agree with any outside counsel what percentage of the overall fee they will receive, depending on the circumstances.

Should we associate with outside counsel, we will notify you in writing via email, unless you indicate another method is preferred. Your response to that email agreeing to our association with outside counsel constitutes a modification of this paragraph to include in the table below the outside counsel with whom we, as if written directly therein.

| Attorney(s) | Reason | Percentage of Total Fee |
|---|---|---|

### Representing Adverse Interest

As long as we represent you, we will not provide services for another person whose interests are adverse to yours within the same subject matter of our relationship or in any claim involving you, without your written consent.

### Legal Fees

You will not have to pay for the firm's services.

We may ask the other party to pay attorneys' fees and costs. You agree that we are entitled to any such money awarded or specified in any settlement agreement as costs and attorneys' fees for our work on this case. You agree that this amount shall be negotiated by us. In so negotiating, we will seek an amount equal to the greater of 1) the firm's hourly rate (currently $650/hour) times hours worked **("base lodestar amount")**, 2) our actual costs plus one-third (1/3) of the full amount of any settlement or judgment, or 3) in case in which your damages are primarily or exclusively statutory in nature, the difference between the total settlement amount and your maximum permitted statutory damages.

Should any award be provided in a "lump sum" payment without separating out attorneys' fees and costs, it is assumed that our fees are the greater of 1) the firm's hourly rate (currently $650/hour) times hours worked **("base lodestar amount")**, 2) our actual costs plus one-third (1/3) of the full amount of any settlement or judgment, or 3) in a case in which your damages are primarily or exclusively statutory in nature, the difference between the total settlement amount and your maximum permitted statutory damages.

RWW001273

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

It is expressly understood that in the event that the attorneys are unsuccessful in recovering money in this action, **you will not be responsible to reimburse the attorneys for any out of pocket costs or legal fees**.

You understand that the firm may be making a fee application to the Court to recover attorneys' fees and costs associated with this matter. You agree to fully cooperate with the firm with respect to all fee applications.

Should the matter be certified as a class or collective action (including certification for the purposes of settlement only), the Court will be required to approve any settlement. In such a circumstance, the firm shall be entitled only to those fees approved by the Court, in the form prescribed by the Court (e.g. to be paid separately or out of the settlement fund).

If a matter brought as a class action at any point ceases to be a class action (such as through denial of class certification), the firm may elect to withdraw from representing you for your individual claim. You owe the firm nothing in such a circumstance. Should the firm not elect to withdraw, the provisions of this agreement remain in force as applicable to individual claims.

We record and calculate the time spent for all services rendered in increments of on tenth of an hour (1/10). This includes telephone calls (minimum charge of .2 hours), preparing and reviewing letters, documents or other correspondence (minimum charge of .3 hours), travel time to and from meetings and the Court, legal research, preparation of pleadings and other related documents, negotiations and any other services relating to this matter.

### Settlement

We will not settle any matter without your approval. We will notify you immediately of the terms of any reasonable settlement offers we receive. You have the absolute right to accept or reject any settlement offer. If you do not respond to three attempted communications (regarding a settlement offer) from this office – including the sending of a certified letter – then we can accept and sign the agreement and release on behalf of the client.

While you retain the right to accept any settlement offer from defendant, you further agree that if you accept a settlement offer against the written advice of the firm, and the settlement offer does not provide for a payment of attorney's fees equaling or exceeding the base lodestar amount, you will be responsible for payment of our base lodestar amount.

### Tax Treatment

**You understand that this firm is not a tax advisor and has not and will not give tax advice as to the tax consequences of any recovery in this matter. The firm recommends that you seek advice of an accountant or other tax professional for this purpose. This is especially so in light of the 2017 Tax Bill. In some situations, attorneys' fees may not be deductible. Please check with your accountant.** _____

RWW001274

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

### Terminating the Representation

You have the right to discharge us at any time by putting your decision in writing and mailing it to our offices. In that event, you agree to pay for services rendered up to the date of discharge. If we are your attorneys of record in any proceeding, you will sign and return a substitution-of-attorney form as soon as you receive it from us.

We may withdraw from your representation at any time prior to the filing of any formal legal proceeding before a court or other judicial or quasi-judicial body, with no costs due from you to us. However, should there be a deadline of which we are aware, we will endeavor to assist you in identifying new counsel, or take whatever steps necessary to preserve, or assist you in preserving, those deadlines, prior to withdrawal. This paragraph does not limit our ability to withdraw subsequent to initiating a formal legal proceeding on grounds supported in law or in equity.

We may mutually agree to terminate the attorney-client relationship, in which case such an agreement needs to be made in a writing signed by both you and the firm. Should we mutually agree to terminate the relationship, you will owe us nothing.

### Retention of Closed Files

If you request, when our representation ends, we will promptly return to you all of your papers and property, whether you have paid for them or not.

### No Guarantees

We do not guarantee any particular result. Any opinion we offer is not a guarantee.

### Entire Agreement

This document contains our entire agreement. There are no other promises, statements, or agreements about the services we will perform.

### No Oral Modifications

Any modifications to this agreement must be in writing and sign by both of parties. Oral modifications will not be valid.

### Severability

If any part of this agreement is held to be invalid, the rest of the agreement remains in effect.

### Applicable Law

The laws of the State of New Jersey will govern the interpretation of this agreement.

RWW001275

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

<p style="text-align:center;color:red;">CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER</p>

### Child Support Judgment Search

Pursuant to New Jersey law (N.J.S.A. 2A:17-56.23b) law firms are required to perform a Child Support Judgment Search prior to releasing any funds received on behalf of a client via settlement or judgment. If the search reveals that, a child support judgment exist then that judgment must be satisfied out of the "Net Proceeds" before any funds can be released to the client. The statute defines "Net Proceeds" as any amount of money, in excess of $2,000, payable to the prevailing party or beneficiary after attorney fees, witness fees, court fees, fees for health care providers, etc. The statute also provides that the cost of the Judgment Search (approximately $10.00 per person) is chargeable against the net proceeds as a cost of settlement. This firm will comply with the requirements of this statute.

### Effective Date

This agreement will take effect upon the signing by both of us.

AGREED: _Rashad Walston_       Dated: 21/11/2023
Rashad Walston (Nov 21, 2023 13:21 CST)
RASHAD WALSTON

THE GLAPION LAW FIRM LLC

AGREED: _[signature]_       Dated: 21/11/2023
Jeremy M. Glapion
THE GLAPION LAW FIRM

RWW001276

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

# Walston (NRS) Rep Agreement

**Final Audit Report** 2023-11-21



RWW001277

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

## STANDARD TERMS OF ENGAGEMENT

**I, Rashad Walston,** ("you, your") retain **THE GLAPION LAW FIRM, LLC**, located at 1704 Maxwell Drive, Wall, NJ, ("we, us, our, firm, attorneys"), to represent your interests in a matter against National Retail Solutions, Inc., and any of their affiliates, subsidiaries, related entities, agents and employees thereof for claims based on violations of the Telephone Consumer Protection Act ("TCPA") and other potential claims related to the nuisance telephone calls (such as invasion of privacy) (collectively, "Claims").

Your current mailing address (no PO box) is:

 - Chicago, IL 60643

Your telephone number (if an unwanted calls case, the number that received or is receiving the unwanted calls):

4088

The wireless carrier for the listed number:

Cricket

Your best contact number if it differs from the above:

### Attorney Client Relationship

Your communications with us are protected by our ethical obligation of confidentiality and by the evidentiary rule of attorney-client privilege. You should be open and forthright with us so that we have all information relevant to your representation. Please note that when we represent a legal entity (corporation, limited liability company, or partnership); our attorney-client relationship is with the entity alone and, unless otherwise stated, is not with its officers, directors, shareholders, partners, members, or affiliates.

### Responsibilities

As your attorneys, we have a duty of independent professional judgment, confidentiality, loyalty, and diligence. As our client, you have a duty of cooperation, honesty, and candor.

RWW001278

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

As your attorneys, we will conduct a full and thorough investigation of your case and proceed, or decline to proceed, accordingly. If, after an investigation, we choose not to pursue this case, we may terminate this agreement. You will owe us nothing.

As your attorneys, we are under no obligation to initiate or defend post-trial motions or post-trial appeals regarding the Claims unless specifically agreed to in writing.

As your attorneys, we retain final decision making authority with respect to matters of strategy, including, but not limited to, whether and how to oppose certain motions; whether and how to raise particular arguments; and whether and how to plead or dismiss particular claims. This list is not exhaustive.

As our client, you have a duty to preserve all documents that are or may become relevant to the litigation. You also have a duty to be reasonably available to answer questions or provide information as necessary.

As our client, you confirm that you have not assigned or transferred, and will not assign or transfer, all or part of your Claims to any person and that you have not signed, and will not sign, any other contingency fee agreement with any other lawyer or law firm with respect to the Claims, while this agreement remains in force.

As our client, you understand and agree that we may ask one or more other law firms to assist us in our representation of you with respect to the Claims, but that we will not do so without obtaining prior written consent from you.

As our client, you confirm that you have provided us with honest information regarding the facts and merits of your case, and have not withheld any information that, in your best judgment, would be relevant to our decision to take this case or our strategy in pursuing this case. _RW_

As our client, you confirm that you took no steps to intentionally manufacture any claim against you, such as by voluntarily subjecting yourself to the behavior about which you now complain (e.g. intentionally soliciting calls you now claim to be unwanted or unsolicited). _RW_

## Electronic Communications

For speed and efficiency, we will commonly use e-mail, cellular telephones and facsimile to communicate with you. However, it is possible that these types of communications could be intercepted or misrouted. By signing this agreement, you consent to these communications.

## Association With Outside Counsel

From time to time, we may choose to associate ourselves with attorneys and law firms other than those included in the definition of "we, us, our, firm, attorneys" above. This may include, but is not limited to, local counsel (an attorney licensed in the court in which we intend

RWW001279

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

to file, and a requirement in many courts for us to litigate if we are not licensed in that state or court) or by entering into a joint prosecution agreement ("JPA") with other firms with similar cases (already on file or otherwise).

Ordinarily, this will not affect your arrangement with us. We will still be your lawyers. We will still be litigating this case. We may just have assistance. Ordinarily, this also does not impact any fees you may owe us, as we agree with any outside counsel what percentage of the overall fee they will receive, depending on the circumstances.

Should we associate with outside counsel, we will notify you in writing via email, unless you indicate another method is preferred. Your response to that email agreeing to our association with outside counsel constitutes a modification of this paragraph to include in the table below the outside counsel with whom we, as if written directly therein.

| Attorney(s) | Reason | Percentage of Total Fee |
|---|---|---|

### Representing Adverse Interest

As long as we represent you, we will not provide services for another person whose interests are adverse to yours within the same subject matter of our relationship or in any claim involving you, without your written consent.

### Legal Fees

You will not have to pay for the firm's services.

We may ask the other party to pay attorneys' fees and costs. You agree that we are entitled to any such money awarded or specified in any settlement agreement as costs and attorneys' fees for our work on this case. You agree that this amount shall be negotiated by us. In so negotiating, we will seek an amount equal to the greater of 1) the firm's hourly rate (currently $650/hour) times hours worked (**"base lodestar amount"**), 2) our actual costs plus one-third (1/3) of the full amount of any settlement or judgment, or 3) in case in which your damages are primarily or exclusively statutory in nature, the difference between the total settlement amount and your maximum permitted statutory damages.

Should any award be provided in a "lump sum" payment without separating out attorneys' fees and costs, it is assumed that our fees are the greater of 1) the firm's hourly rate (currently $650/hour) times hours worked (**"base lodestar amount"**), 2) our actual costs plus one-third (1/3) of the full amount of any settlement or judgment, or 3) in a case in which your damages are primarily or exclusively statutory in nature, the difference between the total settlement amount and your maximum permitted statutory damages.

It is expressly understood that in the event that the attorneys are unsuccessful in recovering money in this action, **you will not be responsible to reimburse the attorneys for any out of pocket costs or legal fees**.

RWW001280

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

You understand that the firm may be making a fee application to the Court to recover attorneys' fees and costs associated with this matter. You agree to fully cooperate with the firm with respect to all fee applications.

Should the matter be certified as a class or collective action (including certification for the purposes of settlement only), the Court will be required to approve any settlement. In such a circumstance, the firm shall be entitled only to those fees approved by the Court, in the form prescribed by the Court (e.g. to be paid separately or out of the settlement fund).

If a matter brought as a class action at any point ceases to be a class action (such as through denial of class certification), the firm may elect to withdraw from representing you for your individual claim. You owe the firm nothing in such a circumstance. Should the firm not elect to withdraw, the provisions of this agreement remain in force as applicable to individual claims.

We record and calculate the time spent for all services rendered in increments of on tenth of an hour (1/10). This includes telephone calls (minimum charge of .2 hours), preparing and reviewing letters, documents or other correspondence (minimum charge of .3 hours), travel time to and from meetings and the Court, legal research, preparation of pleadings and other related documents, negotiations and any other services relating to this matter.

### Settlement

We will not settle any matter without your approval. We will notify you immediately of the terms of any reasonable settlement offers we receive. You have the absolute right to accept or reject any settlement offer. If you do not respond to three attempted communications (regarding a settlement offer) from this office – including the sending of a certified letter – then we can accept and sign the agreement and release on behalf of the client.

While you retain the right to accept any settlement offer from defendant, you further agree that if you accept a settlement offer against the written advice of the firm, and the settlement offer does not provide for a payment of attorney's fees equaling or exceeding the base lodestar amount, **y**ou will be responsible for payment of our base lodestar amount.

### Tax Treatment

**You understand that this firm is not a tax advisor and has not and will not give tax advice as to the tax consequences of any recovery in this matter. The firm recommends that you seek advice of an accountant or other tax professional for this purpose. This is especially so in light of the 2017 Tax Bill. In some situations, attorneys' fees may not be deductible. Please check with your accountant.** _RW_

### Terminating the Representation

You have the right to discharge us at any time by putting your decision in writing and mailing it to our offices. In that event, you agree to pay for services rendered up to the date of

RWW001281

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

discharge. If we are your attorneys of record in any proceeding, you will sign and return a substitution-of-attorney form as soon as you receive it from us.

We may withdraw from your representation at any time prior to the filing of any formal legal proceeding before a court or other judicial or quasi-judicial body, with no costs due from you to us. However, should there be a deadline of which we are aware, we will endeavor to assist you in identifying new counsel, or take whatever steps necessary to preserve, or assist you in preserving, those deadlines, prior to withdrawal. This paragraph does not limit our ability to withdraw subsequent to initiating a formal legal proceeding on grounds supported in law or in equity.

We may mutually agree to terminate the attorney-client relationship, in which case such an agreement needs to be made in a writing signed by both you and the firm. Should we mutually agree to terminate the relationship, you will owe us nothing.

### Retention of Closed Files

If you request, when our representation ends, we will promptly return to you all of your papers and property, whether you have paid for them or not.

### No Guarantees

We do not guarantee any particular result. Any opinion we offer is not a guarantee.

### Entire Agreement

This document contains our entire agreement. There are no other promises, statements, or agreements about the services we will perform.

### No Oral Modifications

Any modifications to this agreement must be in writing and sign by both of parties. Oral modifications will not be valid.

### Severability

If any part of this agreement is held to be invalid, the rest of the agreement remains in effect.

### Applicable Law

The laws of the State of New Jersey will govern the interpretation of this agreement.

### Child Support Judgment Search

**Pursuant to New Jersey law (N.J.S.A. 2A:17-56.23b) law firms are required to perform a Child Support Judgment Search prior to releasing any funds received on behalf of a client via settlement or judgment. If the search reveals that, a child support judgment**

RWW001282

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

exist then that judgment must be satisfied out of the "Net Proceeds" before any funds can be released to the client. The statute defines "Net Proceeds" as any amount of money, in excess of $2,000, payable to the prevailing party or beneficiary after attorney fees, witness fees, court fees, fees for health care providers, etc. The statute also provides that the cost of the Judgment Search (approximately $10.00 per person) is chargeable against the net proceeds as a cost of settlement. This firm will comply with the requirements of this statute.

## Effective Date

This agreement will take effect upon the signing by both of us.

AGREED: _Rashad Walston_
Rashad Walston (Dec 19, 2023 19:18 CST)                Dated: 19/12/2023
RASHAD WALSTON


THE GLAPION LAW FIRM LLC


AGREED: _____
(Dec 19, 2023 13:42 EST)                Dated: 19/12/2023
Jeremy M. Glapion
THE GLAPION LAW FIRM

RWW001283

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

### Duties of a Class Representative

1. A class representative represents the interests of all members of the class in litigation to recover money damages for the class.

2. A class representative must have claims that are typical of those of the class, and thus involve common issues of law or of fact shared with all other class members.

3. A class representative always considers the interests of the class just as the class representative would consider his or her own interests.

4. A class representative <u>preserves all documents (including e-mail) and physical evidence that currently exists or may come to exist during the pendency of the litigation</u> that are or may become relevant to the litigation and understands that the failure to so preserve (e.g., by sending to counsel for preservation) may result in legal sanctions against the class representative, up to and including monetary penalties or the dismissal of the class representative's claim(s).

5. A class representative refrains from discussing the case in any public forum, including on social media such as Facebook or Twitter, recognizing that there is a high likelihood that any such public comments will end up before the Court and may jeopardize the class representative's ability to represent the class.

6. A class representative participates actively in the lawsuit, such as by testifying at deposition and trial, answering written interrogatories, and by keeping aware of the status and progress of the lawsuit.

7. A class representative recognizes and accepts that any resolution of the lawsuit, such as by settlement or dismissal, is subject to court approval, and must be in the best interests of the class as a whole.

8. A class representative accepts the possibility that, in the event the case is lost, the court may assess certain of defendants' costs of litigation against the class representatives. To the extent permitted by law and the applicable Rules of Professional Responsibility, however, Attorneys will pay these costs.

9. A class representative is not required to be particularly sophisticated or knowledgeable with respect to the subject of the lawsuit. However, the class representative should be interested, on a continuous basis, in the progress of the lawsuit, and must provide class counsel and the court with all relevant facts of which the class representative is aware.

10. A class representative volunteers to represent many other people with similar claims and damages, because the class representative believes that it is important that all benefit from the lawsuit equally because a class lawsuit will save time, money, and effort, and thus will benefit all parties and the court, as well as because the class action is an important tool to assure compliance with the law, applicable standards and duties of care, and to ensure just compensation to all those similarly situated.

I have reviewed and acknowledge my duties as a class representative in these proceedings.

Dated: 19/12/2023 _____

Signed: *Rashad Walston* _____
Rashad Walston (Dec 19, 2023 19:18 CST)

Printed Name: Rashad Walston _____

RWW001284

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

# Updated Rep Agreement & Class Duties Form

Final Audit Report                                      2023-12-20

"Updated Rep Agreement & Class Duties Form" History

Adobe Acrobat Sign

RWW001285

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

# EXHIBIT M

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| RASHAD WALSTON, on behalf of himself and all others similarly situated, | : | Case No. 1:24-cv-00083 |
| | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| NATIONAL RETAIL SOLUTIONS, INC. D/B/A NRS PAY, | : | |
| | : | |
| | : | |
| Defendant. | : | |

_____/

**JOINT DECLARATION OF MARY ROBINSON AND SARI MONTGOMERY**

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

## **Table of Contents**

I.  Professional Background: Mary Robinson ................................................................. 1

II.  Professional Background: Sari Montgomery ........................................................... 2

III.  Issue ................................................................................................................ 4

IV.  Factual Background Considered .......................................................................... 5

V.  Counsel Violated Numerous Ethical Obligations ................................................... 9

    A.  Counsel Violated His Obligation to Defer to Client on
        Settlement and Convey Settlement Offers ....................................................... 9

    B.  Counsel Violated Rule 1.5's Unreasonable Fee Prohibition ............................ 14

    C.  Counsel Employed an Agreement Giving Him an
        Improper Proprietary Interest in the Lawsuit ................................................ 16

    D.  Counsel Created a Conflict of Interest ......................................................... 17

    E.  Removing Contested Terms Does Not Resolve Ethical
        Concerns Nor Does it Mitigate Counsel's Violation of
        Duty of Candor to Tribunal ....................................................................... 19

VI.  Conclusion ...................................................................................................... 21

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

### I.     Professional Background: Mary Robinson

I have been licensed to practice law in Illinois and California since 1975. I am the founding member of Robinson, Stewart, Montgomery & Doppke, LLC, a firm dedicated to advising and representing professionals – primarily lawyers – in ethical issues and controversies. I defend lawyers and judges in disciplinary investigations and prosecutions, advise judges, lawyers and law firms on ethical issues and obligations, and provide expert consultation and testimony. Since 2007, I have been retained and identified as an expert witness on legal ethics and professional responsibility issues in over 50 cases.

From 1992 to 2007, I served as the Administrator of the Illinois Attorney Registration and Disciplinary Commission ("ARDC"). While with the ARDC, I was responsible for developing and implementing policies for enforcement of the Illinois Rules of Professional Conduct.  During the 15 years I served as Administrator, I directed the investigations of over 6000 grievances each year, as well as the prosecution of formal disciplinary actions in an average of 120 cases a year, and personally prosecuted several hearings and appeals.

Related bar association activities in which I have engaged include service on the following committees:  ABA Standing Committee on Ethics and Professional Responsibility (2007–2010); ABA Standing Committee on Professional Discipline (1995–1997); ABA National Conference on Professional Responsibility, Planning Committee (2007–2011, Chair 2008–2010); Illinois Judicial Ethics Committee (2015–present); Chicago Bar Association/ Chicago Bar Foundation Task Force on the Sustainable Practice of Law and Innovation, Regulating Technology-Based Products and Services Committee Chair (2019–present); Illinois State Bar Association Task Force on the Future of Legal Services (2015–2017); Illinois Supreme Court Special Committee on Professionalism (2001–2004); and Illinois Supreme

1

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

Court Commission on Professionalism (2004–2007). I taught the Professional Responsibility course at both Northwestern University Law School and Northern Illinois University College of Law, and I have presented as a lecturer and panelist on professional responsibility issues in several hundred programs.

CV attached as **Appendix A**.

## II.     Professional Background: Sari Montgomery

I have been licensed to practice law in Illinois since 1994 and am a partner in the firm of Robinson, Stewart, Montgomery & Doppke LLC in Chicago, Illinois. Since 2010, my private practice has focused on matters involving legal ethics and professional responsibility, including defending lawyers in disciplinary investigations and prosecutions at trial and on appeal before the ARDC and the Illinois Supreme Court, representing judges in disciplinary actions before the Illinois Judicial Inquiry Board, advising lawyers, law firms, government agencies, and law-related businesses on ethical issues and obligations, representing bar applicants in Character and Fitness proceedings, and providing expert testimony.

Previously, I served as Litigation Counsel and Senior Litigation Counsel at the ARDC from 1994 to 2004. During my tenure at the ARDC, I investigated hundreds of complaints filed against lawyers and prosecuted dozens of formal disciplinary cases before the Hearing Board of the ARDC and the Illinois Supreme Court.

In addition to serving as ARDC counsel and engaging in private practice, I am an Adjunct Professor of Legal Ethics at Northwestern University Pritzker School of Law and have lectured extensively on all manner of ethics and professional responsibility issues at local, state and national levels including, but not limited to: ABA Lawyers Professional Liability National Conference on Legal Malpractice; Association of Professional

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

Responsibility Lawyers (APRL); National Organization of Bar Counsel (NOBC); National Association of Retail Collection Attorneys; National Employment Lawyers Association— Illinois Chapter; Illinois State Bar Association (ISBA); Illinois Institute of Continuing Legal Education (IICLE), Practicing Law Institute (PLI); New York State Bar Association; California State Bar Committee on Professional Responsibility and Conduct (COPRAC); National Academy of Continuing Legal Education (NACLE); Chicago Bar Association; Lake County Bar Association; and the Illinois Public Defender Association.

I have also authored and co-authored book chapters and articles on professional responsibility topics including ethics of using social media in jury selection (ABA GP/Solo Magazine); systemic regulatory reform (Bloomberg); ethics in jury selection (IICLE); the disciplinary process in Illinois (IICLE); in-house counsel admission (ISBA); and uniform standards for imposing lawyer sanctions (ABA). Since 2022, I have published a quarterly ethics column in Business of Law Digest. In 2022, I was also appointed to the Editorial Board for Law360 Legal Ethics.

I am the current Chair of the ABA Standing Committee on Professional Regulation, and have served on that Committee since 2018. One of the services that Committee provides is to confidentially consult with the highest court of a requesting jurisdiction on how to improve the system of lawyer regulation in that jurisdiction. I have twice been selected to participate as part of a four-person team to perform such consultations.

I currently serve as the Secretary and elected member of the Board of Directors of the Association of Professional Responsibility Lawyers (APRL) and previously served that organization as a member of the Programming Committee and as the liaison to the ABA Committee on Professional Regulation. Since 2008, I have been appointed to serve as a

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

member and past Chair of the ISBA Standing Committee on Professional Conduct, which is charged with drafting ethics opinions for the benefit of the Association's 30,000 members. I was recently appointed to serve on the ISBA's newly created Standing Committee on Artificial Intelligence and the Practice of Law, and have also served on several other ethics-related special committees and task forces by appointment of the ISBA President. Additionally, I am a member of the Board of Managers of the Chicago Bar Association and also serve on its Committees on Professional Responsibility, and the Unauthorized Practice of Law and Multijurisdictional Practice. I am also a member of the Chicago Council of Lawyers Access to Justice Committee, the Lake County Bar Association, and the Association of Women Attorneys of Lake County.

Since 2018, I have been designated as a "Subject Matter Expert" for the Multistate Professional Responsibility Exam (MPRE) by the National Conference of Bar Examiners (NCBE). In that role, I have drafted and edited questions for the MPRE on behalf of the NCBE related to the law of lawyering, legal malpractice, and all aspects of the Rules of Professional Conduct. In 2023, I was appointed to the Drafting Committee for the MPRE, which is charged with reviewing and editing all potential test items and selecting items which will appear on the MPRE.

A copy of my Curriculum Vitae is attached as **Appendix B**.

**III.    Issue**

We have been asked to address whether any of the provisions of Plaintiff Rashad Walston's ("Plaintiff" or "Mr. Walston") current or former engagement agreements with Plaintiff's counsel, Jeremy Glapion ("Counsel") transgress the Rules of Professional Conduct

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

in ways that would reflect on Counsel's adequacy to represent a class in this case, and, if so, how?

## IV. Factual Background Considered

Plaintiff first raised his claims against Defendant National Retail Systems ("NRS") in an October 19, 2023 demand letter. Using an online template, Plaintiff alleged that NRS violated the TCPA by sending him seven prerecorded voice messages. Deposition of Rashad Walston, attached as Exhibit A, at 75:15-:20. Mr. Walston demanded $9,800 to resolve his claims, though in a mid-November 2023 conversation with NRS's CEO, Elie Katz, he suggested $5000 or $6000. ECF No. 22-1 at 6; Walston Dep. at 126:3-:12.

Shortly thereafter, Mr. Walston retained The Glapion Law Firm, LLC, and, according to his lawyer, he then lost interest in settling his claims, despite his earlier demand and his financial circumstances. Walston Dep. at 91:16-92:7. Regarding his personal circumstances: Plaintiff has been self-employed since 2013, operating multiple unsuccessful businesses, he has been named as a defendant in multiple collections actions, and declared bankruptcy in 2004. Walston Dep. at 43:6-44:23, 55:22-56:11, 63:4-:24, 77:7-:23, 81:2-82:7, 88:17-:24. In deposition, Plaintiff asserted that he wasn't interested in an individual settlement and wanted "justice for other people[.]" Walston Dep. at 155:21-:23. When asked why, Plaintiff explained that he was upset about a conversation he had with NRS CEO, Elie Katz (despite acknowledging that he still would have settled his claims at the end of that call for $5-6k), and after "speaking with legal counsel, Mr. Glapion" an individual settlement would be "something I have to discuss with my legal team, Mr. Glapion[.]" *Id.* at 161:6-163:23, 167:23-168:9.

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

The Court inquired about Plaintiff's interest in an individual settlement. At the conclusion of the hearing on NRS's motion to enforce settlement, the Court inquired:

> [P]laintiff's counsel, it wasn't that long ago that your client was interested in an individual basis settlement . . . a mere maybe six, seven months ago. Why not try to actually start that up? I don't know what the number is going to be and, you know, you'd work out what that number is. It doesn't have to necessarily be the number here but is your client at all interested in that?

ECF No. 51 at 11:5-:7, attached as Exhibit B. Counsel answered:

> I think the client's head is in that representing others in this situation. Obviously I am always happy to confirm, clarify, double, triple check with the client but we've had these conversations repeatedly and he's -- he's in that mode of not interested at the moment.

*Id.* at 10:11-11:4. The Court took Counsel up on his offer, ordering:

> [W]hy don't you check with your client and say, you know, the Judge has asked about settlement, you were interested a mere, you know, six, seven months ago, why not try to do that now. You know, your case still has quite a ways to go. I can help you get a mediator Magistrate Judge to negotiate that.
>
> If your client is willing, send me an email by Friday to my Courtroom Deputy and say, you know, we are interested in a settlement on an individual basis. If you're not, send me the same email saying no. But at least confirm for me that you have conveyed my message.
>
> Anytime people are fighting over whether there's a settlement in place or not based on settlement discussions ahead of time, my reaction is why don't you just try to settle it for real, if you will, rather than fighting over what -- who said what to who. So just think about that and let me know by Friday. In the meantime, I'll review your papers more carefully and issue a written ruling.

*Id.* at 11:5-:22. While indicating that his client seemed committed to a representative capacity, Counsel agreed that he would confer with Walston but did not disclose that his engagement agreement effectively prohibited Plaintiff from settling without his lawyer's permission and imposed fee obligations that would discourage an individual settlement.

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

The following day, Defendant transmitted an offer of $35,000 for an individual settlement.  June 12, 2024 Correspondence, attached as Exhibit C.  Within the hour, with no indication that he conveyed the offer to his client, Counsel rejected the offer and stated that his client had zero interest in an individual settlement.  *Id.*  Counsel then emailed the Court and advised that based on a conversation he had with his client on July 11, 2024 (before NRS's settlement offer), Plaintiff "does not have any interest in an individual settlement." June 14, 2024 Correspondence, attached as Exhibit D.

NRS spent months trying to obtain Plaintiff's engagement letter.  Plaintiff initially objected to Defendant's request for production, maintaining NRS needed to make a heightened showing of need and relevance.  Plaintiff's Response to Defendant's First Set of Requests for Production, attached as Exhibit E.  NRS then pointed to Mr. Walston's deposition testimony as establishing that the engagement letter was relevant and necessary to issues of adequacy.  For example, though Mr. Walston claimed he was not "100 percent sure" about the terms, he testified that the letter "probably does" require Counsel to approve any settlement.  Walston Dep. at 166:23-168:13.

On July 31, Plaintiff delivered redacted copies of three engagement agreements dated November 21, 2023, December 19, 2023, and July 30, 2023.  Engagement Letters, attached as Exhibit F.  The November 21 and December 19 engagement letters both contained the following term:

> While you retain the right to accept any settlement offer from defendant, you further agree that if you accept a settlement offer against the written advice of the firm, and the settlement offer does not provide for a payment of attorney's fees equaling or exceeding the base lodestar amount, *you will be responsible for payment of our base lodestar amount* [$650 an hour]. (Emphasis added.)

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

(Hereafter, this paragraph referred to as the "Springing Fee" term.) All three agreements likewise provided:

**Legal Fees**

> We may ask the other party to pay attorneys' fees and costs. You agree that we are entitled to any such money awarded or specified in any settlement agreement as costs and attorneys' fees for our work on this case. You agree that this amount shall be negotiated by us. In so negotiating, we will seek an amount equal to the greater of 1) the firm's hourly rate (currently $650/hour) times hours worked ("base lodestar amount"), 2) our actual costs plus one-third (1/3 of any settlement or judgment, or 3) *in case in which your damages are primarily or exclusively statutory in nature, the difference between the total settlement amount and your maximum permitted statutory damages*. (Emphasis added.)

> Should any award be provided in a "lump sum" payment without separating out attorneys' fees and costs, it is assumed that our fees are the greater of 1) the firm's hourly rate (currently $650/hour) times hours worked ("base lodestar *amount*"), 2) our actual costs plus one-third (1/3) of the full amount of any settlement or judgment, *or 3) in a case in which your damages are primarily or exclusively statutory in nature, the difference between the total settlement amount and your maximum permitted statutory damages*. (Emphasis added.)

**Settlement**

> We will not settle any matter without your approval. We will notify you immediately of the terms of any *reasonable* settlement offers we receive. You have the absolute right to accept or reject any settlement offer. If you do not respond to three attempted communications (regarding a settlement offer) from this office – including the sending of a certified letter – then we can accept and sign the agreement and release on behalf of the client. (Emphasis added.)

When Counsel produced the three agreements, he advised that he had modified the engagement letter to remove the Springing Fee (though he kept the Statutory Cap and the limit on conveying only what he deemed to be "reasonable" settlement offers). After NRS raised its concerns about the remaining terms, Counsel amended the engagement letter a third time, removing those provisions and purporting to "cure" any ethical issues raised by employing those terms. September 24, 2024 Engagement Letter, attached as Exhibit G. Having eventually responded to NRS pressing the issues by removing the terms that

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

undermined Mr. Walston's ability to pursue an individual settlement from the engagement agreement, Counsel insists that his client is still not interested in an individual settlement.

## V. Counsel Violated Numerous Ethical Obligations.

Multiple provisions in the different versions of the engagement agreement violated Rules of Professional Conduct designed to assure that settlement authority and fee provisions are structured to avoid a conflict of interest between client and lawyer. What's more, Counsel violated his duty of candor when he implied that his client had authority to enter into an individual settlement, notwithstanding the presence of the contested terms.

### A. Counsel Violated His Obligation to Defer to Client on Settlement and Convey Settlement Offers

One of the most fundamental attributes of the attorney-client relationship is the allocation of authority for purposes of settlement. Rule 1.2(a) of the ABA Model Rules of Professional Conduct clarifies that it is the client who decides whether and on what terms to settle a matter, reciting as follows:

> (a)     .   .   . a lawyer shall abide by a client's decisions concerning the objectives of representation and, as required by Rule 1.4, shall consult with the client as to the means by which they are to be pursued. A lawyer may take such action on behalf of the client as is impliedly authorized to carry out the representation. A lawyer shall abide by a client's decision whether to settle a matter.

In furtherance of the client's authority over settlement, Rule 1.4(a)(1), which requires that a lawyer promptly inform the client of any decision requiring the client's consent, requires a lawyer to promptly transmit any offer of settlement received from opposing counsel in a civil case. Rule 1.4, Cmt. [2].

For purposes of the duties imposed by Rules 1.2 and 1.4, the Glapion Law Firm's client was Mr. Walston. While it is apparent that a class action was contemplated, prior to

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

certification of a class, there is no class and no class counsel.  *Lukis v. Whitepages Inc.*, 549 F. Supp. 3d 798, 808 (N.D. Ill. 2021).  Because no class had been certified in this matter, The Glapion Law Firm's duties ran to Mr. Walston individually and the firm had no duties to any other potential class member. The firm was required to accord full settlement authority to Mr. Walston, without regard to the interests of anyone other than him, and without regard to the firm's interest in pursuing a class action with him as a named plaintiff.

There is virtually universal agreement that a retainer agreement may not include terms that limit the client's settlement authority or the lawyer's responsibility to transmit settlement offers. Prohibited terms include those which explicitly give the attorney authority to determine settlement, *In re Lansky,* 678 N.E.2d 1114 (Indiana, 1997); *In re Coleman,* 295 S.W.2d 857 (Mo. 2009); Ariz. Ethics Op. 06-07 (2006), as well as terms that increase costs because of a client's decision about settlement.  *See e.g.*, Washington Ethics Op. 191 (1994) (rejecting fee agreement as improper where it provided that if a client rejects a settlement offer which the lawyer believed to be reasonable, the contingent fee will be based on the larger of that offer or the amount recovered at trial); Conn. Informal Ethics Op. 99-18 (1999) (contingent fee agreement may not include clause requiring client to pay lawyer an hourly rate if client rejects settlement offer recommended by lawyer and defendant prevails); Nevada Ethics Op. 95-1 (1995) (an attorney may not ethically include in a fee agreement a clause providing that if the client settles the case without the attorney's approval, the attorney would be entitled to the greater of the agreed upon contingent fee or an hourly fee); *Compton v. Kittleson,* 171 P.2d 172 (Alaska, 2007) (fee agreement guaranteeing lawyer the greater of an hourly fee or a percentage of the recovery violated Rule 1.2(a) because of its potential to restrict the client's exclusive right to accept or reject a settlement offer.)

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E0-A01E-4ECC-A86C-356E2C3C2EB7

The Springing Fee provision of the engagement agreement at issue here violated Rule 1.2(a) by purporting to require Plaintiff to pay lodestar fees at $650/hour if Plaintiff were to accept a settlement offer against the written advice of the firm, and if the settlement offer did not provide for a payment of attorney's fees equaling or exceeding the lodestar amount. Although Mr. Walston was the firm's only client in this case, the Springing Fee provision effectively negated his authority to accept any individual settlement offer, while incentivizing the law firm to expend billable time toward developing a class action, regardless of whether Mr. Walston (or even the non-existent class) would benefit.[1] The Springing Fee provision was in effect on June 11, 2024, when Counsel told the Court that he would discuss individual settlement with his client and on June 12, 2024, when Defendant made a $35,000 offer. That provision gave the law firm a veto over Mr. Walston's settlement authority. If Mr. Walston accepted the offer, he would be required to pay lodestar fees likely exceeding $35,000. That is particularly problematic if the work done by the firm was dedicated to developing Mr. Walston's individual claims into a class action, which offered no direct benefit to Mr. Walston.

---

[1] Counsel's explanation that the provision was meant to stop defendants from "buy[ing] their way out of pre-certification class actions," provides no justification and instead confirms the improper purpose of the provision. ECF No. 57-1 ¶ 18. The provision restricts only Counsel's client, not any defendant, and Counsel's client had every right to benefit from a defendant's interest in avoiding a class action. The client could agree to reject all offers of individual settlement if that was the client's wish, but his attorney was not free to weight the scale by imposing a steep cost on a contrary choice. Additionally, there are many circumstances where a class representative might decide it is in a putative class's interests to settle the case individually—such as where the case is careening toward a ruling that would be bad for the class in front of a hostile arbiter, etc. The engagement agreement at issue here takes that choice away from the class representative, even though the whole point of having a class representative is to make sure such decisions are made by an objective party not blinded by the prospect of millions in fees.

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

The alternative fee obligation, which capped Mr. Walston's recovery to the maximum statutory damages while Counsel recovered the remainder, also burdened Walston's authority to control the objectives of the representation in violation of Rule 1.2(a). The engagement agreement purported to define the scope of the engagement as "represent[ing] your [Walston's] interests in a matter against National Retail Solutions, Inc., and any of their affiliates, subsidiaries, related entities, agents and employees thereof for claims based on violations of the Telephone Consumer Protection Act ('TCPA') and other potential claims related to the nuisance telephone calls (such as invasion of privacy) (collectively, 'Claims')." Despite Counsel's representation of "Walston's interests," the statutory damage cap limited Mr. Walston to recovering, at most, his "statutory damages." That provision eliminated any incentive or ability for Walston to pursue an individual settlement although pursuit of his individual interests was a purported and obvious basis of his engagement of counsel.

An additional concern arises if, as it appears, Counsel did not transmit the $35,000 offer to his client in reliance on the client's alleged commitment to rejecting individual settlement offers. It is true that a lawyer is not required to transmit a settlement offer that the client has previously directed the lawyer to reject. Model Rule 1.4, Cmt. [2]. That proposition assumes, however, that the lawyer fully explained the risks of and legal alternatives to the client committing to the particular settlement position. Rule 1.4(a)(1). For most purposes, a discussion of settlement options can focus exclusively on the client's objectives and will not be influenced by the lawyer's personal interests. Here, because of Counsel's interest in pursuing a class action which would have the potential of greatly magnifying the fees that could be obtained without providing any significant enhanced value to Mr. Walston, there is a serious question as to whether Counsel's personal financial interests materially limited his

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

ability to effectively advise Mr. Walston on whether he should entertain an individual settlement offer. (See Rule 1.7 discussion below.)

Also of concern is whether Mr. Walston's decision to decline any individual settlement offer could be fully informed without Mr. Walston knowing the amount of an offer. Mr. Walston retained the right to benefit financially from this lawsuit, and unless and until a class was certified, Counsel owed him a duty to maximize his personal financial benefit, a duty that could not be fulfilled by encouraging him to reject any individual settlement, regardless of the amount offered.

As a result of the above factors, it is our opinion that Counsel's duties under Rule 1.2(a) and 1.4(a)(1), and his fiduciary duty to put the interests of his client ahead of his own interests, required that he transmit the $35,000 offer to Mr. Walston. His apparent failure to do so is emblematic of his willingness to promote his personal interests over the interests of his client. *See Deadwyler v. Volkswagen of America, Inc.,* 134 F.R.D. 128, 140 (W.D.N.C. 1991) ("No type of misbehavior by an attorney is more universally and categorically condemned, and is therefore more inherently in 'bad faith,' than the failure to communicate offers of settlement.").

The provision in the engagement agreement that purported to limit counsel's obligations to transmit settlement offers to only "reasonable" offers did not and could not modify Counsel's obligations under Rules 1.2(a) and 1.4(a)(1). The client's authority to settle necessarily includes the *client's* right to determine whether an offer is reasonable. A lawyer is not free to circumvent duties under the Rules of Professional Conduct by asserting that the client authorized or directed him to do so. *In re Himmel,* 125 Ill.2d 531, 538-539 (1988).

13

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

Moreover, because of all the provisions identified above, for purposes of assessing what offers would be reasonable, Counsel's personal interests were clearly adverse to the interests of Mr. Walston. Counsel's ability to maximize fees that could be earned through the Springing Fee provision and the statutory damage cap operated in direct opposition to Mr. Walston's ability to realize the benefit of an individual settlement.

An additional term of the engagement agreement at issue here that violates Rule 1.2(a) is the provision that purports to authorize the lawyers to accept a settlement and execute releases on behalf of the client if the client does not respond to three attempts to contact the client about the offer. The Illinois Supreme Court has condemned the practice of attorneys procuring general authority to settle, including because a client does not respond to contacts, particularly where the attorney has been retained on a contingent fee basis. *In re Walner* 119 511, 523 (1988). While not employed to settle this case, including the term in the fee agreement further reflects the law firm's willingness to transgress ethical obligations in order to assure its own financial interests.

**B.      Counsel Violated Rule 1.5's Unreasonable Fee Prohibition**.

As the most basic of all principles governing attorney's fees, Rule 1.5(a) provides that a lawyer "shall not make an agreement for or collect an unreasonable fee." The engagement agreement at issue here secured fees assuring counsel the greater of lodestar at $650/hour, one-third of the recovery, or in the case in which the client's damages were primarily or exclusively statutory in nature, the difference between the total settlement amount and the client's maximum permitted statutory damages. The most striking feature of that combination of options is the disconnect between the magnitude of counsel's fees and value of the client's recovery. Despite the proclamations at the *beginning* of the agreement that the client will "not

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

have to pay for the firm's services[,]" the Springing Fee included *later* in the agreement could require the client pay the lodestar amount if the settlement didn't exceed the lawyer's hourly rate. More dramatically, in a representation undertaken to enforce Mr. Walston's rights to statutory damages under the TCPA "and other potential claims related to the nuisance telephone calls (such as invasion of privacy)," the agreement would limit the client's recovery to statutory damages where the client's damages were "primarily or exclusively statutory in nature," while awarding counsel the remainder of any amount recovered. The agreement does not purport to define how it will be determined whether damages are "primarily" statutory in nature, though it appears likely that Mr. Walston's claims would qualify as primarily statutory.

The damage cap provision essentially gives Counsel an interest in the client's cause of action, entitling Counsel to collect as fees a portion of a damage award where the amount Counsel can claim has no relationship to any benefit obtained for the client. The provision allows Counsel to manage the litigation so as to increase his entitlement to fees by purporting to fight for a larger settlement for the client while having secured the client's agreement to cap his own recovery at the statutory amount. (See Discussion of Rule 1.8(i), below). Under the agreement, Counsel's contingent fee of any settlement offer over $21,000 would amount to more than fifty percent of Walston's recovery unless, of course, Counsel were to assert a higher lodestar amount which could include hours expended solely to benefit the firm rather than the client.

Fees that benefit the attorney without regard to the client's interests are necessarily unreasonable. By capping any benefit to the client at the statutory damage limit, while entitling the lawyers to be paid hourly for pursuing recovery in excess of statutory damages

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

(in which the client could not participate), the Glapion Law Firm made an agreement for an unreasonable fee. The only impact of the cap on the client was negative. It removed any opportunity for him to benefit from an individual settlement (regardless of amount) while purporting to entitle Counsel to fees for pursuing an option that did not directly benefit his client.

Also inherently unreasonable was the Springing Fee provision. Its only purpose was to restrict the client's ability to accept an individual settlement, notwithstanding the fact that the engagement was purportedly for purposes of pursuing the client's claims. Moreover, the provision did not limit the client's responsibility to pay lodestar fees to fees incurred to promote the client's personal claims as opposed to work undertaken in support of a class action. It is unreasonable for a lawyer to charge a client fees for work done by the lawyer for the benefit of others.

### C. Counsel Employed an Agreement Giving Him an Improper Proprietary Interest in the Lawsuit.

The terms of Counsel's fee agreement with Mr. Walston violated his duty as a fiduciary to his client by acquiring a proprietary interest in the cause of action or subject matter of litigation which he agreed to conduct for Mr. Walston in violation of Model Rule 1.8(i). The Rule has its basis in common law champerty and maintenance and is designed to avoid giving lawyers too great an interest in a representation so as to risk the lawyer conducting the representation to advance the lawyer's personal stake in the case, potentially to the detriment of the client's interests. Rule 1.8, Cmt. [16]. In addition, it is recognized that when the lawyer acquires an ownership interest in the subject of the representation, it will be more difficult for a client to discharge the lawyer if the client so desires. Rule 1.8, Cmt. [16]. The only exceptions to the prohibition of Rule 1.8(i) are for traditional contingent fees and statutory

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

attorney's liens against a recovery. Contingent fees and statutory attorney's liens allow a lawyer to collect a fee against a recovery, so long as they do not give the lawyer control of a cause of action. Although contingent fees permit lawyers to obtain a substantial economic share of a claim in return for their services, the Rule prohibits a lawyer from acquiring too large a share of a claim and from acquiring rights and powers of ownership through an otherwise proper contingent fee. Restatement (Third) of The Law Governing Lawyers §36 (Am. L. Inst. 2000), p. 266. The rationale for the Rule is that a lawyer's ownership, unlike a contingent fee, *which is limited in most cases to well less than half the recovery*, "gives the lawyer an economic basis for claiming to control the prosecution and settlement of the claim and provides an incentive to the lawyer to relegate the client to a subordinate position." *Id.*

In this case, it is our opinion that Counsel's fee agreement with Walston went beyond a "reasonable" contingent fee agreement permitted by Rule 1.8(i)(2) and caused Counsel to acquire an impermissible proprietary interest in Walston's litigation such that, for all intents and purposes, Counsel, and not Mr. Walston, controlled the prosecution and settlement of Walston's claim to Walston's detriment. Indeed, since Mr. Walston's recovery was capped by Counsel, there is effectively no limit to the percentage Counsel could recover of any settlement amount (e.g., a $250k individual settlement would net Counsel more than 95% of the recovery). As such, Counsel's fee agreement relegated Mr. Walston's interests to a subordinate position in violation of Rule 1.8(i).

**D.    Counsel Created a Conflict of Interest.**

Taking a proprietary interest in a client's cause of action also creates a conflict of interest under Rule 1.7(a)(2) in that when a lawyer owns a piece of the client's case, there is a substantial risk that the lawyer's representation of the client will be materially limited by the

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

lawyer's personal interests. Rule 1.7(a)(2). By acquiring the right to control the prosecution and settlement of Walston's claim, as well as an unreasonably large contingent fee, Counsel puts himself in a position to advance his own interests to Mr. Walston's detriment. Ethics opinions addressing the propriety of an attorney asking a client to assign a claim for statutory attorney's fees or to agree in advance to reject any settlement that would include a waiver of statutory attorney's fees uniformly agree that such a provision creates a conflict of interest under Rule 1.7(a).

In this case, the Springing Fee provision was tantamount to requiring Mr. Walston to agree in advance to reject any settlement offer that doesn't provide for attorney's fees because requiring Mr. Walston to pay the equivalent of the lodestar calculation as attorney's fees at $650 per hour, for all practical purposes prohibited Mr. Walston from accepting any reasonable settlement offer. Therefore, the Springing Fee provision created a conflict of interest under Rule 1.7(a)(2).

These types of personal interest conflicts may only be waived under certain conditions. Rule 1.7(b) provides that, in order to continue the conflicted representation, the lawyer must reasonably believe that the lawyer will be able to provide competent and diligent representation to the client despite the conflict, the representation is not prohibited by law, the representation does not involve the assertion of a claim by one client against another client represented by the lawyer in the same litigation, and each affected client gives informed consent. Model Rule of Professional Conduct 1.7(b)(1)-(4). In this case, it is not objectively reasonable to conclude that Counsel could provide competent and diligent representation to Walston despite his personal interest in maximizing his fees, when that interest comes at the expense of Walston's interest in maximizing his recovery. The combination of the Springing

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

Fee provision and the provision providing that any settlement amounts exceeding Mr. Walston's statutory damages are to be paid to Counsel, make clear that Counsel's personal interests would, in all instances, take precedence over his client's such that he could not provide competent and diligent representation to Mr. Walston.

Even if it were objectively reasonable for Counsel to believe that he could provide competent and diligent representation despite his clear personal interest, which we do not concede, he did not obtain Mr. Walston's informed consent to the conflict, nor is it likely that an informed consumer of legal services would consent to such a conflict. Counsel's representation under the terms of Counsel's fee agreement therefore violated Rule 1.7(a) and was impermissible.

Notwithstanding that Counsel's conflict under Rule 1.7(a) could be, in theory, waivable, his conflict under Rule 1.8(i) as discussed above, is not. Rule 1.8(i) essentially declares the conflict unwaivable by its unqualified prohibition against lawyers acquiring proprietary interests in a client's cause of action.

### E. Removing Contested Terms Does Not Resolve Ethical Concerns Nor Does it Mitigate Counsel's Violation of Duty of Candor to Tribunal.

The fact that Counsel removed offending provisions as NRS continued to press for disclosure and to assert impropriety cannot undo the Rule violations discussed above. Rule 1.5(a) prohibits a lawyer from "making an agreement for" an unreasonable fee. There is no escape provision for later releasing such an agreement, particularly when it is done only because the lawyer gets "caught." The same is true with Rule 1.8(i)'s prohibition on "acquir[ing] a proprietary interest in the [client's] cause of action."

Moreover, before being removed from the agreement, the provisions already accomplished the improper purpose of impairing the client's ability to consider an individual

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E0-A01E-4ECC-A86C-356E2C3C2EB7

settlement for nearly ten months. All of the improper provisions remained in place as of the June 12, 2024 individual settlement offer, and even after the Springing Fee provision was deleted as of July 30, 2024, the remaining fee provisions virtually eliminated the client's ability to benefit from an individual settlement.

Indeed, all of the offending provisions were in place on June 11, 2024, when Counsel assured the Court that he would confer with his client about pursuing an individual settlement. Thus, at the time he gave that assurance, Counsel knew that his client's ability to consider an individual settlement was essentially non-existent under the terms of the engagement agreement. Yet, his response to the Court would reasonably have been understood as confirming that he could have an unfettered discussion of the individual settlement option. He suggested that the client's personal commitment to pursuing relief for a class might be an obstacle without disclosing the extent to which his engagement agreement actually left the client no choice.

A lawyer's duties as officer of the Court require that all statements made by the lawyer to a Court be truthful. Model Rule 3.3(a). Comment [3] to that Rule reminds lawyers: "There are circumstances where failure to make a disclosure is the equivalent of an affirmative misrepresentation." It seems apparent from Counsel's subsequent resistance to defense attempts to discover terms of the engagement agreement relevant to the client's ability to control settlement that Counsel recognized that disclosure of those terms was potentially detrimental to his personal interests. Counsel's response to the Court on June 11, 2024, and his email to the Court asserting that his client "does not have any interest in an individual settlement" were misleading without disclosing that the client's position was dictated by the terms of the engagement agreement.

20

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

We note that while any of the violations identified in this Declaration could be referred to disciplinary authorities, those of us who have practiced in the discipline context have a healthy respect for the option of court action as an important component of lawyer regulation. Discipline authorities address issues after the fact, and discipline impacts only the future. Courts have the authority and responsibility to address lawyer misconduct in real time, with the ability to manage its impact in ongoing proceedings. Thus we agree with opinions that recognize that referral to discipline is not necessarily an adequate or complete response to instances of lawyer misconduct. See e.g., *Creative Montessori Learning Ctrs. v. Ashford Gear LLC*, 662 F.3d 913, 917 (7th Cir. 2011). In our experience, there are instances of misconduct where the only or most effective deterrent is Court action, with or without a disciplinary referral. As to the misconduct at issue in this matter, discipline cannot cure or otherwise address any harm that may ensue as a result of Counsel's efforts to control his client's ability to opt for and to benefit from an individual settlement.

**VI.  Conclusion**

By limiting Mr. Walston's authority to accept an individual settlement through the contested provisions, the engagement agreements employed in this case violated Model Rules 1.2(a), 1.5(a), 1.8(i) and 1.7(a)(2). Indeed, as a purported agreement for representation of an individual, the fee provisions are contrary to effective representation because they would cause Walston to reject any realistic individual settlement, while entitling the firm to be compensated for work necessary to pursue a class action. While significantly restricting Walston's options, the engagement agreement did not relieve Counsel of his obligation to transmit settlement offers and his failure to do so violated Rule 1.4(a)(1).

21

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

The terms of the engagement agreement and Counsel's failure to inform Mr. Walston of NRS's settlement offer placed the interests of the firm in pursuing a class action with Mr. Walston as class representative over the individual interests of Mr. Walston himself, reflecting adversely on the reliability of Counsel "to prosecute the case in the interest of the class … rather than just in their interest as lawyers who, if successful will obtain a share of any judgment or settlement as compensation for their efforts." *Creative Montessori* , 662 F.3d at 917.

*[Remainder of Page Intentionally Blank – Signatures on Following Pages]*

22

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

Executed this 15th day of October 2024, in Chicago, Illinois.

Signed by:

*Mary Robinson*

Mary Robinson

23

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

Executed this 15th day of October 2024, in Chicago, Illinois.

DocuSigned by:

*Sari Montgomery*

720582AFEC81439

Sari Montgomery

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

# APPENDIX A

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7



Mary Robinson Partner
Direct 312.676.9874

Stephanie Stewart Partner
Direct 312.782.5102

Sari W. Montgomery Partner
Direct 312.676.9872

James A. Doppke, Jr. Partner
Direct 312.676.9878

**Curriculum Vitae**

**MARY ROBINSON**

## Current Position

***Robinson, Stewart, Montgomery & Doppke, LLC***

> Representation, consultation, and expert witness services in matters involving lawyer and judicial ethics and discipline, law office management, sanctions and lawyer malpractice. Began as solo in 2007; current firm founded in 2019.

## Professional Experience

***Cook County Shakman Compliance Administrator*** (March 2009 – October 2018)

> By appointment of Federal District Court, in the case of *Michael Shakman, et al. v. The Democratice Organization of Cook County, et al,* U.S.Dist.Ct., N.D.Ill. No. 69 C 2145, responsible for overseeing compliance with decree prohibiting unlawful patronage employment practices in the Office of the President of the Cook County Board, the Cook County Health and Hospital System, and the Cook County Public Defender.

***Administrator, Attorney Registration and Disciplinary Commission of the Supreme Court of Illinois,*** *Chicago, Illinois* ( March 1992 – March 2007)

> Served as principal executive officer of the agency which operates under the authority of the Illinois Supreme Court and is responsible for the investigation and prosecution of disciplinary complaints against Illinois lawyers. Responsibilities included developing and implementing policies for the investigation of grievances against Illinois lawyers and for determination of when formal disciplinary charges should be pursued and what sanctions should be recommended in disciplinary cases; implementation of the Illinois Client Protection Program (which reimburses clients for losses caused by their attorneys' dishonesty) and the Ethics Inquiry Program (provides assistance to Illinois lawyers in solving ethical dilemmas); overseeing the annual registration of Illinois attorneys and maintenance and publication of registration data; presentations to Illinois and national audiences on

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

professional responsibility topics; and, from time to time, personally handling the hearing or appeal in particular matters.

***Robinson & Skelnik,*** *Elgin, Illinois* (1982 – 1992)

Practice, initially as solo, expanding to partnership in 1985, with concentration in civil and criminal appellate representation civil and criminal, with appearances before the Illinois Supreme Court, the Illinois Appellate Court for the First, Second, Third and Fifth Districts, and the United States Court of Appeals for the Seventh Circuit. Practice also included trial work in criminal and family law cases.

***Office of the State Appellate Defender***
*Ottawa, Illinois* (1974 – 1977)
*Elgin, Illinois* (1977 – 1982)

Began as law clerk and then assistant defender in agency's Third Appellate District office in Ottawa, Illinois, representing criminal defendants on appeal to the Illinois Appellate Court and Illinois Supreme Court from any of the twenty-one counties in the Third Appellate District. Appointed Deputy of Second Appellate District Office in Elgin, Illinois, in 1977, becoming responsible for supervising briefing and argument in over 800 appeals from the thirteen counties in the Second District to the Illinois Appellate Court and the Illinois Supreme Court, primarily from felony convictions, including some capital cases, as well as two cases heard by the United States Supreme Court.

## Professional Service

***American Bar Association***

ABA/BNA Lawyer's Manual on Professional Conduct Editorial Board, 2012 to 2015

ABA Standing Committee on Ethics and Professional Responsibility, Member 2007 – 2010

ABA National Conference on Professional Responsibility, Planning Committee, Member 2007 - 2011, Chair 2008 - 2010

ABA Standing Committee on Professional Discipline, Member 1995 – 1997

***Other Bar Association***

Chicago Bar Association Board of Governors (2017-2019)

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

Chicago Bar Association/Chicago Bar Foundation Task Force on the Sustainable Practice of Law and Innovation, Regulating Technology-Based Products and Services Committee Chair (2019 - present)

Illinois Judicial Ethics Committee (2015 - present)

Illinois State Bar Association Task Force on the Future of Legal Services (2015 - 2017)

Illinois State Bar Association Standing Committee on Future of Legal Services (2017 - 2018)

Illinois Supreme Court Special Committee on Professionalism (2001 – 2004)

Illinois Supreme Court Commission on Professionalism, ex officio member (2004 – 2007)

Commissioner, Attorney Registration and Disciplinary Commission of the Illinois Supreme Court (1989 – 1992)

Illinois Supreme Court Committee on Pattern Jury Instructions in Criminal Cases, Member 1988–1991

Illinois State Bar Association: Special Committee on Ancillary Businesses, Task Force on Multi-Disciplinary Practice, Coordinating Committee for Conclave on Legal Education, Criminal Justice Section Council, Committee on Mental Health

Lecturer and panelist for IICLE and bar association courses on criminal law, search and seizure, and appellate practice; coordinator of appellate practice seminar cosponsored by Illinois Appellate Lawyers Association and John Marshall Law School; lecturer for Illinois Appellate Defender training conferences. (1980 – 1991)

***Presentations*** 1992 – present

Lecturer and panelist on professional responsibility issues for, *inter alia*: ABA National Conference on Professional Responsibility; ABA Conference on the Role of the Court in Improving Lawyer Conduct and Professionalism; ABA Symposium on Teaching Professional Responsibility; CoLAP National Conference for Lawyers Assistance Programs; National Organization of Bar Counsel; Federal Bar Association; Association of Professional Responsibility Lawyers; International Association of Defense Counsel; National Association of Consumer Bankruptcy Attorneys; American Bankruptcy Instutute; Illinois Appellate Defender, Illinois

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

Attorney General and City of Chicago Law Department in-house training programs; Illinois State Bar Association, Chicago Bar Association, Illinois Trial Lawyers Association, IICLE, PLI, ALI-ABA, Chicago Law Bulletin and various Inns of Court and county bar associations.

### *Law School Teaching*

Northern Illinois University School of Law, Professional Responsibility Course, Spring Semester 1999 – 2004

Northwestern University Law School, Professional Responsibility Course, Spring Semester, 2005

## Education and Licensing

J.D., University of Southern California – 1974

Admitted to practice: Illinois (April 1975), California (January 1975)
Admitted to the bars of the: United States District Court, Northern and Central Districts, United States Court of Appeals for the Seventh Circuit, United States Supreme Court

## Awards

Oct 2006       Illinois Lawyers Assistance Program Carl H. Rolewick Award

June 2007     John Marshall Law School Corporate Law Association Francis D. Morrissey Lifetime Achievement Award

## Publications

Attorneys Legal Liability – 2022 Edition, Chapter 13, *"Disciplinary Liability,"* Illinois Institute of Continuing Legal Education

"*Mandating Civility: Wisdom or Folly?*" ABA The Professional Lawyer, Vol. 22, No. 2 (April 2014)

"*Discipline and Disability: When is Disease a Defense,*" ABA GP SOLO, p. 31 (October/November 2009)

*The Professional Cost of Untreated Addiction and Mental Illness in Practicing Attorneys*, The Professional Lawyer, 2009 Symposium Issue, p. 101 (ABA Center for Professional Responsibility 2009)

4

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

"*In The End, It's All About The Children: Chicago Attorneys Travel to Africa*," CBA Record, p. 40 (September 2008).

"*Colleagues in Crisis. Collateral Damage: Careers and Families*," The Judges' Journal, American Bar Association, p. 37 (Spring 2008).

"*A Lawyer's Duty To Report Another Lawyer's Misconduct: The Illinois Experience*," The Professional Lawyer, 2007 Symposium Issue, p. 47 (ABA Center for Professional Responsibility 2007).

"*Abusive Tax Shelters: Ethical Pitfalls for Lawyers*," The Professional Lawyer, 2007 Symposium Issue, p. 99 (ABA Center for Professional Responsibility 2007).

"*Avoiding ARDC Anxiety: A Disciplinary Primer*," 84 Ill Bar J 452 (September 1996).

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

# APPENDIX B

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

# Sari W. Montgomery  |  Curriculum Vitae

33 N. Dearborn St., Ste. 1420, Chicago, IL 60604 | (847) 217-3524 | smontgomery@rsmdlaw.com

## Current Position

**Partner**                                                        *2019 – Present*
**Of Counsel**                                                     *2010-2018*

*Robinson, Stewart, Montgomery & Doppke LLC* (Formerly Robinson Law Group, LLC), Chicago, Illinois

- Represent attorneys in disciplinary investigations, hearings and appeals before the Attorney Registration and Disciplinary Commission of the Supreme Court of Illinois and the Illinois Supreme Court;
- Represent judges in investigations pending before the Illinois Judicial Inquiry Board;
- Represent bar applicants in admissions proceedings before the Illinois Board of Admissions to the Bar, the Committee on Character and Fitness, and the Illinois Supreme Court;
- Provide consulting services and opinion letters to law firms, attorneys, government agencies, and law related business in diverse practice areas regarding legal ethics and professional responsibility issues;
- Provide opinions as an expert witness regarding legal ethics and fee issues; and
- Manage day-to-day operations of law firm including human resources, benefits, payroll, and financial reporting.

**Adjunct Professor**                                              *2023 - Present*
*Northwestern University Pritzker School of Law*, Chicago, Illinois
- Teach required course on legal ethics and professional responsibility.

## Prior Professional Experience

**Adjunct Professor**                                              *2006 - 2011*
*Loyola University Chicago of Law*, Chicago, Illinois
- Taught a full-year course on legal writing and research to first-year law students.

**Litigation and Senior Litigation Counsel**                       *1994 - 2004*
*Attorney Registration and Disciplinary Commission of the Supreme Court of Illinois (ARDC)*
- Conducted hundreds of investigations and prosecuted more than fifty disciplinary cases before the Hearing Board of the Attorney Registration and Disciplinary Commission.
- Extensive motion practice before the Hearing Board of the Attorney Registration and Disciplinary Commission and the Illinois Supreme Court.
- Supervised and trained designated counsel and support staff.

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

- Assisted Administrator in developing and implementing agency-wide strategy for prosecuting the first cases in Illinois involving the unauthorized practice of law in numerous practice settings.

**Contract Attorney**                                                                                                              *2005*
*Lake County Public Defender, Lake County, Illinois*
- Represented juveniles in misdemeanor and felony delinquency proceedings.
- Represented parents in DCFS proceedings.

## Education, Licenses, and Professional Memberships

**University of Chicago**, Chicago, Illinois, *BA in Public Policy Studies*                           *1991*

**Loyola University Chicago School of Law**, Chicago, Illinois, *Juris Doctor*                        *1994*

**Loyola University School of Law Program in International Law,** *Rome, Italy*                      *1992*

**Illinois Supreme Court**, *Admitted*                                                                                *1994*

**United States District Court for the Northern District of Illinois,** *Admitted, General Bar*      *1994*

**American Bar Association Center for Professional Responsibility**, *Member*       *2012 - Present*

*Chair, Standing Committee on Professional Regulation*                                    *2024-2027*
*Special Advisor to Standing Committee on Professional Regulation*               *2022 -2024*
*Member, Standing Committee on Professional Regulation*                             *2019 - 2022*
- Selected to participate in consultations conducting 360° evaluations of state lawyer regulatory systems at the request of applicable state Supreme Courts.
- Member, Sub-Committee on Proactive Management Based Regulation (PMBR)
- Member, Joint Sub-Committee on Revisions to ABA Model Rule 1.2(d)

**Association of Professional Responsibility Lawyers (APRL)**, *Member*             *2012 - Present*

- Secretary                                                                                                          *2024-2025*
- Treasurer                                                                                                          *2023-2024*
- Elected to Board of Directors                                                                      *2020 - Present*
- Conference Planning Committee                                                                 *2019 – 2020*
                                                                                                                          *2023-2024*
- Appointed as APRL Liaison to ABA Committee on Professional Regulation       *2018 - 2019*

**Illinois State Bar Association (ISBA)**, *Member*                                                    *1994 - Present*
*Appointed to Committee on Professional Conduct*                                          *2008 - Present*

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

- Past Chair, Committee on Professional Conduct                                    *2014 - 2015*
- Participate in drafting new ethics opinions for benefit of 30,000 member association. Comment on legislation and rule proposals impacting professional conduct issues. Reviewed all pre-2010 ISBA ethics opinions for consistency with 2010 Illinois Rules of Professional Conduct.
- Member of Ethics 20/20 Sub-Committee which reviews all proposals from ABA Ethics 20/20 Committee and makes recommendations for adoption in Illinois.

*Appointed to Standing Committee on Artificial Intelligence and the Practice of Law*

*Appointed to President's Special Committee on Alternative Business Structures*

*Appointed to lead-generation working group to assess ethical implications of various lead-generation business models.*

*Appointed to President's Special Committee on the ARDC Matching Services Study*
- Review ARDC Matching Services Study and formulate recommendations to ISBA Board of Governors to be presented to ARDC and Illinois Supreme Court.

*Appointed to President's Special Committee on Collaborative Law*
- Draft proposed legislation and changes to Supreme Court Rules to facilitate the collaborative law process in a manner consistent with the Rules of Professional Conduct.

**Chicago Bar Association**, *Member*                                    *1994 - Present*
- Board of Managers                                                             *2024-Present*
- Member, Committee on Professional Responsibility
- Member, Committee on Unauthorized Practice and Multidisciplinary Practice

**Chicago Council of Lawyers,** *Member*                              *2020 - Present*
- Member, Committee on Access to Justice

**Lake County Bar Association,** *Member*                            *2022-Present*
- Member, Outreach and Diversity Committee

**Association of Women Attorneys of Lake County,** *Member*        *2022-Present*
- Member, Ethics Seminar Planning Committee

## Publications

Sari W. Montgomery, Legal Ethics: Ethical Challenges of Representing Clients with Diminished Capacity, Business of Law Digest (BridgeTower Media, August 27, 2024—ongoing ethics columnist).

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

Sari W. Montgomery, Legal Ethics: ABA Model Rule Banning Discrimination, Sexual Harassment Remains Controversial, Business of Law Digest (BridgeTower Media, June 25, 2024—ongoing ethics columnist).

Sari W. Montgomery, Legal Ethics: To Respond or Not Respond to Negative Online Reviews, Business of Law Digest (BridgeTower Media, March 26, 2024—ongoing ethics columnist).

Sari W. Montgomery, Legal Ethics: Unauthorized Practice or a Glimpse Into the Future, Business of Law Digest (BridgeTower Media, December 19, 2023—ongoing ethics columnist).

Sari W. Montgomery, Know When to 'Just Say No,' Business of Law Digest (BridgeTower Media, Sept. 26, 2023—ongoing ethics columnist).

Sari W. Montgomery, The Promise and Pitfalls of ChatGPT, Business of Law Digest (BridgeTower Media, July 5, 2023—ongoing ethics columnist).

Sari W. Montgomery, Legal Ethics: You Have Inadvertently Received Privileged Information from Opposing Counsel, Now What?, Business of Law Digest (BridgeTower Media, March 28, 2023—ongoing ethics columnist).

Lucian T. Pera, Mark Armitage, Lydia Lawless, Ronald Minkoff, Sari W. Montgomery, Wendy Muchman, Lynda Shely, Time to Renew America's Lawyer Discipline System, Bloomberg Lawyers' Manual on Professional Conduct (Bloomberg Law, Feb. 2023).

Sari W. Montgomery, The Dos and Don'ts of Using Social Media in Jury Selection, GP Solo, Volume 40, No. 1 (American Bar Association, Solo, Small Firm, General Practice Division, Jan./Feb. 2023).

Sari W. Montgomery, James A. Doppke, Jr., Stephanie Stewart, Ch. 7, Ethical Considerations in Jury Trials, Inside & Outside the Jury Box (IICLE®, 2023).

Sari W. Montgomery, Legal Ethics: How to Avoid Discipline When You've Made a Mistake, Business of Law Insider (BridgeTower Media, December 20, 2022—ongoing ethics columnist).

Mary Robinson, Sari W. Montgomery, James A. Doppke, Jr., Stephanie Stewart, Ch. 13, Disciplinary Liability, ATTORNEY'S LEGAL LIABILITY (IICLE®, 2021).

Sari Montgomery, Scott Kozlov, Nancy Vincent, A Cautionary Tale for In-house Counsel, Illinois Bar Journal, Volume 107, Number 7. (ISBA, 2019).

Contributing Author, Annotated Standards for Imposing Lawyer Sanctions, 2d Ed. (American Bar Association Center for Professional Responsibility, 2019).

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

Mary Robinson, Sari W. Montgomery, James A. Doppke, Jr., Ch. 9, Ethical Considerations in Jury Trials, Inside & Outside the Jury Box (IICLE®, 2019).

Mary Robinson, Sari W. Montgomery, James A. Doppke, Jr., Ch. 13, Disciplinary Liability, ATTORNEY'S LEGAL LIABILITY (IICLE®, 2018).

## Additional Professional Activities and Awards

Subject Matter Expert/Drafting Committee Member (2024-present), Multistate Professional Responsibility Examination (MPRE), National Conference of Bar Examiners, 2018-Present
- Draft, edit and review questions for the Multistate Professional Responsibility Examination

Editorial Advisory Board Member, Law360 Legal Ethics, 2022-2023.

Fellow, American Bar Foundation, 2021-Present.

Outstanding Pro Bono Attorney Award (Individual and Firm), Cook County Public Guardian, 2024.

Pro Bono Service Award, Illinois Lawyers' Trust Fund of Illinois, 2019.

Provide informal ethics opinions as membership benefit to Illinois Creditors' Bar Association.

Trained Intervenor, Illinois Lawyers Assistance Program, 2003.

## Volunteer and Community Activities

**Deerfield Public Schools District 109 Board of Education**          *Elected 2013 - 2025*
Deerfield Public Schools is a Pre-K-8 District located in North Suburban Chicago with approximately 2,800 students, over 400 employees, $70 million annual budget, and seven facilities.

*President, Board of Education*          *2021 - Present*

*Secretary, Board of Education*          *2015 - 2021*

*Chair,* Executive Development and Negotiations Committees; Past Chair, Finance Committee; Past Member, Policy Committee; Past Board Member Representative, COVID-19 Task Force.

**Township District 113 Caucus**          *2018 - 2022*
*Member,* Non-Partisan organization that vets candidates for local public high school district.

**Deerfield Public Schools District 109 Caucus**          *2010 - 2012*
*Member*, Non-Partisan organization that vets candidates for local Pre-K-8 public school district.

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

| | |
|---|---|
| **Community Family Center, Highland Park, Illinois**<br>*Secretary, Board of Directors* | *2009 - 2019* |
| *Member, Board of Directors* | *2006 - 2019* |
| **Highland Park Community Early Childhood Center, Highland Park, Illinois**<br>*Member, Treasurer, Vice-President, President, Board of Directors* | *2002 - 2010*<br>*2002 - 2010* |
| *Secretary Board of Directors* | *2013 – 2017* |

## Presentations and Speaking Engagements

Panelist, Hot Topics in Ethics, NELA-IL Annual Seventh Circuit Conference, National Employment Lawyers Association-Illinois Chapter, September 2024.

Panelist, Practical Advice for Using AI Ethically, The Practice of Law in an AI World Conference, Loyola University Chicago School of Law and Northwestern Pritzker School of Law, September 2024.

Panelist, Surviving the Fireswamp: Ethical Pitfalls When Lawyers Wear Multiple Hats, International Cannabis Bar Association, Cannabis Law Institute, July 2024.

Speaker, Case Study: AI, Human Judgment, and Empathy, Paralegal AI Super User Certificate Course, NBI, July 2024.

Speaker, Ethics of the Virtual Office and Generative AI, Academy of Adoption and Assisted Reproduction Attorneys (AAAA) Annual Meeting, Milwaukee, WI, May 2024.

Speaker, Ethical Issues in Generative AI, Lake County Bar Association, April 2024.

Panelist, Generative AI in the Legal Profession, State Bar of California Committee on Professional Responsibility and Conduct (COPRAC) Annual Symposium, April 2024.

Speaker, Ethical Issues in Advanced Licensing Including Generative AI, Practising Law Institute, April 2024.

Moderator/Panelist, Lawyer as Therapist—Dealing with Clients in Crisis, Association of Professional Responsibility Lawyers Mid-Year Meeting, Louisville, KY, February 2024.

Moderator/Panelist, Legal Ethics and AI, LawDroid First Annual AI Conference, January 2024.

Panelist, Representing Clients with Diminished Capacity: Ethical Obligations and Best Practices, American Bar Association Standing Committee on Legal Aid and Indigent Defense and ABA Center for Professional Responsibility, January 2024

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

Co-Presenter, Ethics for New Attorneys, Illinois State Bar Association, January 2024.

Panelist, Hot Topics in Ethical Issues Including the Use of AI and the New Illinois Judicial Ethics Code, Chicago Bar Association Business Divorce and Complex Ownership Disputes Committee, December 2023.

Panelist, Special Industry Roundtable: Changing Rules for the Unauthorized Practice of Law and the Effect on the LPL Insurance Industry, American Bar Association National Legal Malpractice Conference, September 2023.

Facilitator, DePaul University School of Law Professionalism Orientation, Illinois Supreme Court Commission on Professionalism, September 2023.

Panelist, Generative AI and the Legal Profession: "Ask the Experts," Lemme Law firm Best Practices Forum, September 2023.

Panelist, Exploring the Next Frontier: Generative AI and the Challenges of New Technologies, Association of Professional Responsibility Lawyers Annual Meeting, August 2023, Denver, CO.

Panelist, Ethics Issues of Bots Practicing Law, Practising Law Institute, June 2023.

Panelist, Changing 5.5—In Our Lifetimes?, Chicago Bar Association Legal Ethics One-and-Done Professional Responsibility Overview, June 2023.

Speaker, Tips on What to Expect and How to Respond to an ARDC Inquiry, Lake County Bar Association, May 2023.

Panelist, Lawyer Mobility: Risks and Rewards, Joint Meeting of the Association of Professional Responsibility Lawyers and the Law Society of England and Wales, April 2023, Washington, D.C.

Speaker, Ethical Issues in Advanced Licensing, Practising Law Institute, April 2023.

Panelist, UPL: Anachronism or Necessary Regulation, American Bar Association National Legal Malpractice Conference, April 2023, San Juan, Puerto Rico.

Moderator, Bots Practicing Law: Where is the Line?, Association of Professional Responsibility Lawyers Mid-Year Meeting, February 2023, New Orleans, LA.

Moderator, Bots Practicing Law: Where is the Line?, American Bar Association UPL School, October 2022.

Facilitator, DePaul University School of Law Professionalism Orientation, Illinois Supreme Court Commission on Professionalism, August 2022.

Panelist, Changing 5.5—In Our Lifetimes? (Part 2 of 2), Association of Professional Responsibility Lawyers Annual Meeting, August 2022.

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

Panelist, First Amendment—Choose Your Own Adventure, National Organization of Bar Counsel Annual Meeting, August 2022.

Panelist, Ethics of Lawyer Transitions, Chicago Bar Association, June 2022.

Panelist, Regulating Lawyers: Will We See 5.5 Changes in this Decade? (Part 1 of 2), Association of Professional Responsibility Lawyers Mid-Year Meeting, February 2022.

Panelist, The Exhilarating World of Material Adversity and Other Adrenaline-Charged Conflict of Interest Discussions, National Organization of Bar Counsel Mid-Year Meeting, February 2022.

Facilitator, DePaul University School of Law Professionalism Orientation, Illinois Supreme Court Commission on Professionalism, August 2021.

Co-Presenter, Basic Skills Course, Illinois State Bar Association, June 2021.

Speaker, Advanced Licensing: IP Ethics Issues, Practising Law Institute, May 2021, April 2022.

Panelist, Technology and Ethics: What Every Lawyer Should Know, New York State Bar Association, April 2021.

Speaker, Landscape of Regulatory Innovation and Reform Efforts, ABA Bar Leadership Institute, March 2021.

Panelist, Guess What! Your Online Mediation is Not Confidential, ABA Section of Litigation, December 2020.

Panelist, 2020 Tech Summit: Pajamas & Professionalism: Standards and Ethics for New Surroundings, New Tech and New Social Media Users, New York State Bar Association Tech Summit, November 2020.

Panelist, Be Prepared: Practical Advice and Ethical Considerations for Succession Planning, Mergers and Acquisitions, Closures and Retirement, National Collectors Bar Association, September 2020.

Facilitator, UIC School of Law Professionalism Orientation, Illinois Supreme Court Commission on Professionalism, August 2020.

Co-Presenter, Ethical Issues Update; Defending/Avoiding Ethics Investigation; Ethics and Technology Use in Legal Practice, Practising Law Institute Ethics Marathon, July 2020.

Moderator, Social Media Issues: Addressing Negative Online Reviews, Geo-Fencing and More, Including What is Permitted vs. Practical, and the Malpractice Carrier's Perspective, Association of Professional Responsibility Lawyers Mid-Year Meeting, Austin, Texas, February 2020.

Co–Presenter, When Practice Collides with the Rules: Ethical Issues in the Collections Practice, Illinois Collections Bar Association, February 2020.

Panelist, Unauthorized Practice – Crossing Borders, Chicago Bar Association, November 2019.

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

Moderator, Why Do People Lie and Why Should We Care? The Movie, The Director, and Legal Ethics, Association of Professional Responsibility Lawyers Annual Meeting, San Francisco, CA, 2019.

Facilitator, DePaul University School of Law Professionalism Orientation, Illinois Supreme Court Commission on Professionalism, August 2019.

Panelist, Professional Responsibility Implications of Evolving Technology and Other Emerging Trends, ABA Lawyers' Professional Liability Young Professionals Event, 2019.

Speaker, Legal Ethics 101: Avoiding Common Mistakes and Conducting Your Practice with Honesty and Integrity, National Academy of Continuing Legal Education, 2019.

Panelist, Basic Skills for New Lawyers Series, Ethical Dilemmas for New Attorneys, Illinois State Bar Association, 2018.

Panelist, NOBC Ethics Roundtable (presented on Cryptocurrency, Email Tracking Software, and Of Counsel Relationships), National Organization of Bar Counsel Annual Meeting, Chicago, Illinois, 2018.

Speaker, Multijurisdictional Practice: How to Cross Borders Without Crossing Ethical Lines, Practising Law Institute Ethics Marathon, 2018.

Panelist, Secret of the Citation Act and Tips for Enforcing Judgments: Professional Rules v. Collection Practice: Know and Avoid the Conflicts, Illinois State Bar Association, 2018.

Panelist, Basic Enforcement of Judgments: Ethical Issues in Collection Practice, Illinois Institute of Continuing Legal Education, 2018.

Panelist, the Adjudicator's Perspective – A Peek Behind the Curtain, National Organization of Bar Counsel Mid-Year Meeting, Vancouver, British Columbia, 2018.

Speaker, The Ethical Defender: Conflict of Interest and Other "Hot Button" Ethical Issues in Public Defense, Illinois Public Defender Association Fall Meeting, 2017.

Panelist, Ethics of Limited Scope Representation, Chicago Bar Foundation Limited Scope Representation Seminar, 2017.

Panelist, Ethics and Technology, Illinois Legal Aid Advocates Conference, 2017.

Speaker, Limited Scope Representation: When Less is More, Illinois State Bar Association, 2016.

Panelist, Ethical Pitfalls for Attorneys Managing Multi-State Practices, National Association of Retail Collection Attorneys Annual Meeting, 2016.

Speaker, Tips on What to Expect and How to Respond to an ARDC Inquiry, North Suburban Bar Association, 2015.

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

Speaker, Legal Ethics 2013: Hot Topics in Technology and Communication, Lorman Education Services, 2013.

Speaker, Ethical Issues in Collection Practice, Illinois Creditors' Bar Association, 2011.

Panelist, Ethical Issues in Collection Practice: Where Professional Rules Conflict with the Realities of the Collection Process, National Association of Retail Collection Attorneys Annual Meeting, 2011.

Speaker, Illinois' New Rules of Professional Conduct: A Comprehensive Overview, Illinois State Bar Association Mid-Year Meeting, 2009.

Speaker, Illinois' New Rules of Professional Conduct: An Initial Overview, Illinois State Bar Association, 2009.

Panelist, Sex, Death and Money: A Discussion of Self-dealing Conflicts of Interest, National Organization of Bar Counsel Mid-Year Meeting, San Antonio, TX, 2004.

Panelist, Mentoring of Less Experienced or Newer Assistant Bar Counsel, National Organization of Bar Counsel Mid-Year Meeting, San Diego, CA, 2001.

Panelist, Defending a Case Before the ARDC: From the "Letter" to the Final Order, Chicago Bar Association, 1997.

## Expert Engagements

*Ansur America Insurance Co. v. Borland, et. al.,* Case No. 3:21-CV-0059, U.S. District Court, Southern District of Illinois (Plaintiff expert re: conflict of interest, competence, communication—Disclosures/Report submitted, deposed, matter pending).

*Confidential,* Disqualification matters re: former government lawyers—(Defense expert--Reports submitted, matters pending).

*Confidential*, Pre-litigation disqualification matter involving government investigation into industry. (Defense/target expert re: conflicts of interest—Report submitted, matter closed).

*Fredman v. Andrew David Bell, and Spain, Spain & Varnet, P.C.,* Case No. 2019L007867, Circuit Court of Cook County (Plaintiff expert re: conflicts of interest—Disclosures submitted, deposed, matter settled/dismissed).

*Guidish v. Guidish, et.al.,* Case No. 2018 CH 7270, Circuit Court of Cook County. (Plaintiff expert re: conflicts of interest—Report submitted, matter closed).

*John v. Wheaton College*, Case No. 2011L000995, Circuit Court of DuPage County. (Expert for Plaintiff/Counter-Defendant re: reasonableness of attorneys' fees claimed as discovery sanction—Report submitted, deposed, matter settled/dismissed).

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

*Basista, et.al. v. Alms,* Case No. 16 L 004795, Circuit Court of Cook County. (Plaintiff expert re: fiduciary duties owed by attorney for estate—Disclosures submitted, deposed, matter settled).

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB

# EXHIBIT C

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

**RASHAD WALSTON vs NATIONAL RETAIL SOLUTIONS, INC.**
**Rahad W. Walston on 04/26/2024**

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

**RASHAD WALSTON vs NATIONAL RETAIL SOLUTIONS, INC.**
**Rahad W. Walston on 04/26/2024**

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

**RASHAD WALSTON vs NATIONAL RETAIL SOLUTIONS, INC.**
**Rahad W. Walston on 04/26/2024**

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

**RASHAD WALSTON vs NATIONAL RETAIL SOLUTIONS, INC.**
**Rahad W. Walston on 04/26/2024**

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

**RASHAD WALSTON vs NATIONAL RETAIL SOLUTIONS, INC.**
**Rahad W. Walston on 04/26/2024**

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

**RASHAD WALSTON vs NATIONAL RETAIL SOLUTIONS, INC.**
**Rahad W. Walston on 04/26/2024**

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

**RASHAD WALSTON vs NATIONAL RETAIL SOLUTIONS, INC.**
**Rahad W. Walston on 04/26/2024**

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

**RASHAD WALSTON vs NATIONAL RETAIL SOLUTIONS, INC.**
**Rahad W. Walston on 04/26/2024**

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

**RASHAD WALSTON vs NATIONAL RETAIL SOLUTIONS, INC.**
**Rahad W. Walston on 04/26/2024**

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

**RASHAD WALSTON vs NATIONAL RETAIL SOLUTIONS, INC.**
**Rahad W. Walston on 04/26/2024**

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

**RASHAD WALSTON vs NATIONAL RETAIL SOLUTIONS, INC.**
**Rahad W. Walston on 04/26/2024**

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

**RASHAD WALSTON vs NATIONAL RETAIL SOLUTIONS, INC.**
**Rahad W. Walston on 04/26/2024**

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

**RASHAD WALSTON vs NATIONAL RETAIL SOLUTIONS, INC.**
**Rahad W. Walston on 04/26/2024**

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

**RASHAD WALSTON vs NATIONAL RETAIL SOLUTIONS, INC.**
**Rahad W. Walston on 04/26/2024**

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

**RASHAD WALSTON vs NATIONAL RETAIL SOLUTIONS, INC.**
**Rahad W. Walston on 04/26/2024**

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

**RASHAD WALSTON vs NATIONAL RETAIL SOLUTIONS, INC.**
**Rahad W. Walston on 04/26/2024**

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

**RASHAD WALSTON vs NATIONAL RETAIL SOLUTIONS, INC.**
**Rahad W. Walston on 04/26/2024**

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

**RASHAD WALSTON vs NATIONAL RETAIL SOLUTIONS, INC.**
**Rahad W. Walston on 04/26/2024**

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

**RASHAD WALSTON vs NATIONAL RETAIL SOLUTIONS, INC.**
**Rahad W. Walston on 04/26/2024**

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

**RASHAD WALSTON vs NATIONAL RETAIL SOLUTIONS, INC.**
**Rahad W. Walston on 04/26/2024**

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

RASHAD WALSTON vs NATIONAL RETAIL SOLUTIONS, INC.
Rahad W. Walston on 04/26/2024

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

**RASHAD WALSTON vs NATIONAL RETAIL SOLUTIONS, INC.**
**Rahad W. Walston on 04/26/2024**

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

**RASHAD WALSTON vs NATIONAL RETAIL SOLUTIONS, INC.**
**Rahad W. Walston on 04/26/2024**

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

**RASHAD WALSTON vs NATIONAL RETAIL SOLUTIONS, INC.**
**Rahad W. Walston on 04/26/2024**

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

**RASHAD WALSTON vs NATIONAL RETAIL SOLUTIONS, INC.**
**Rahad W. Walston on 04/26/2024**

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

**RASHAD WALSTON vs NATIONAL RETAIL SOLUTIONS, INC.**
**Rahad W. Walston on 04/26/2024**

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

**RASHAD WALSTON vs NATIONAL RETAIL SOLUTIONS, INC.**
**Rahad W. Walston on 04/26/2024**

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

**RASHAD WALSTON vs NATIONAL RETAIL SOLUTIONS, INC.**
**Rahad W. Walston on 04/26/2024**

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

**RASHAD WALSTON vs NATIONAL RETAIL SOLUTIONS, INC.**
**Rahad W. Walston on 04/26/2024**

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

**RASHAD WALSTON vs NATIONAL RETAIL SOLUTIONS, INC.**
**Rahad W. Walston on 04/26/2024**

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

**RASHAD WALSTON vs NATIONAL RETAIL SOLUTIONS, INC.**
**Rahad W. Walston on 04/26/2024**

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

**RASHAD WALSTON vs NATIONAL RETAIL SOLUTIONS, INC.**
**Rahad W. Walston on 04/26/2024**

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

**RASHAD WALSTON vs NATIONAL RETAIL SOLUTIONS, INC.**
**Rahad W. Walston on 04/26/2024**

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

**RASHAD WALSTON vs NATIONAL RETAIL SOLUTIONS, INC.**
**Rahad W. Walston on 04/26/2024**

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

**RASHAD WALSTON vs NATIONAL RETAIL SOLUTIONS, INC.**
**Rahad W. Walston on 04/26/2024**

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

**RASHAD WALSTON vs NATIONAL RETAIL SOLUTIONS, INC.**
**Rahad W. Walston on 04/26/2024**

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

**RASHAD WALSTON vs NATIONAL RETAIL SOLUTIONS, INC.**
**Rahad W. Walston on 04/26/2024**

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

**RASHAD WALSTON vs NATIONAL RETAIL SOLUTIONS, INC.**
**Rahad W. Walston on 04/26/2024**

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

**RASHAD WALSTON vs NATIONAL RETAIL SOLUTIONS, INC.**
**Rahad W. Walston on 04/26/2024**

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

**RASHAD WALSTON vs NATIONAL RETAIL SOLUTIONS, INC.**
**Rahad W. Walston on 04/26/2024**

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

**RASHAD WALSTON vs NATIONAL RETAIL SOLUTIONS, INC.**
**Rahad W. Walston on 04/26/2024**

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

**RASHAD WALSTON vs NATIONAL RETAIL SOLUTIONS, INC.**
**Rahad W. Walston on 04/26/2024**

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

**RASHAD WALSTON vs NATIONAL RETAIL SOLUTIONS, INC.**
**Rahad W. Walston on 04/26/2024**

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

**RASHAD WALSTON vs NATIONAL RETAIL SOLUTIONS, INC.**
**Rahad W. Walston on 04/26/2024**

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

**RASHAD WALSTON vs NATIONAL RETAIL SOLUTIONS, INC.**
**Rahad W. Walston on 04/26/2024**

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

**RASHAD WALSTON vs NATIONAL RETAIL SOLUTIONS, INC.**
**Rahad W. Walston on 04/26/2024**

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

**RASHAD WALSTON vs NATIONAL RETAIL SOLUTIONS, INC.**
**Rahad W. Walston on 04/26/2024**

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

**RASHAD WALSTON vs NATIONAL RETAIL SOLUTIONS, INC.**
**Rahad W. Walston on 04/26/2024**

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

**RASHAD WALSTON vs NATIONAL RETAIL SOLUTIONS, INC.**
**Rahad W. Walston on 04/26/2024**

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

**RASHAD WALSTON vs NATIONAL RETAIL SOLUTIONS, INC.**
**Rahad W. Walston on 04/26/2024**

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

RASHAD WALSTON vs NATIONAL RETAIL SOLUTIONS, INC.
Rahad W. Walston on 04/26/2024

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

**RASHAD WALSTON vs NATIONAL RETAIL SOLUTIONS, INC.**
Rahad W. Walston on 04/26/2024                Index: $1,000.00..20

**$**

**$1,000.00**
91:20
92:1,7

**$1,500.00**
121:2,3
145:6
146:7,13,
16

**$10**   155:4

**$10,000.00**
80:9,11
121:13
158:2

**$10,500.00**
120:10
121:6

**$100.00**
154:21
155:12
156:3,19

**$11,000.00**
80:11

**$15**   188:3,7

**$2,500.00**
158:1,2

**$247**   69:10,
14

**$3,000.00**
124:5

**$4**   159:11,
19

**$4,000.00**
124:5,14
125:13

**$5**   155:5,11
159:20
188:6

**$5,000.00**
124:6,15
125:14

**$500.00**
145:5
146:7,12,
16

**$55.00**
159:11

**$600,000.00**
157:23

**$800.00**
124:1,3,11
125:3,11,
22  126:2,4

**$9,800.00**
120:18
121:9,11
123:17,22
124:7
126:10
173:23
174:23
175:4
176:13,21
177:4
189:3

**$97**   69:11

**0**

**04**   78:20

**08**   55:23

**09**   55:24

**1**

**1**   43:2,8
119:3
128:9,18,
20  131:7,
24  186:21

**10**   136:12

**100**   17:6
79:24
80:24
81:15  91:8
103:3
110:17
111:1,2
112:11,19
115:10,11
116:14
140:10
147:11
150:1
167:3,14,
22  168:12
176:11

**10:01**   141:6

**10:18**   56:22

**10:20**   57:5

**10:53**   89:21

**111**   4:7

**11:09**   90:2

**12:08**   141:1

**12th**   84:1

**14**   69:8
70:7

**15**   64:7
66:9  69:9
154:15,17

**17**   155:1

**17th**   54:11

**18**   111:11,
14,16
112:5
115:15
144:9

**19**   95:14

**1997**   14:21

**1998**   15:12

**19th**   119:9

**1:24-CV-00083**
4:15

**1:37**   172:18

**1:59**   172:23

**2**

**2**   52:12
105:24
106:1

**20**   54:4
95:14

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

**RASHAD WALSTON vs NATIONAL RETAIL SOLUTIONS, INC.**
**Rahad W. Walston on 04/26/2024**        Index: 200010's..8

**200010's**
  22:4

**2000s**  77:17

**2003**  13:21
  15:13
  54:3,10

**2004**  53:10
  54:2,3,9,
  11 77:10,
  22

**2005**  54:17

**2008**  56:5

**2009**  13:14
  21:18 22:3
  37:9 56:5

**2010**  84:2

**2011**  78:20

**2013**  22:7,
  14,17,23
  23:6,17
  24:8,12
  37:9 38:9

**2017**  187:9,
  11

**2018**  84:1,
  8,17 90:9

**2021**  90:9
  111:11

**2022**  110:20
  119:5,21

**2023**  28:19
  119:6,9,16
  173:14

  184:20

**2024**  4:4
  176:8

**20th**  106:16
  107:6
  108:13,24
  109:8
  196:7

**21st**  83:24

**22**  107:19

**25**  29:21
  107:20

**254**  140:17

**257**  139:13

**26**  4:4

**28**  155:4

**2:22**  197:23

───────
        **3**
───────

**3**  58:6,10,
  16 59:4
  60:20,22
  95:13
  105:24
  106:1,9,13
  108:9
  194:16,21

**3/31/2004**
  54:16

**30**  36:17

**30th**  54:10
  56:4

**32**  102:19

**35**  104:2,5

**357**  45:23
  46:1,15
  50:11,19
  52:20 53:2

**36**  155:3

**3rd**  54:16
  176:8

───────
        **4**
───────

**4**  43:19
  63:4 92:15
  101:17
  126:16
  135:2

**4,900**  139:11

**4/14/79**
  14:14

**4088**
  133:20,24
  134:24

**45**  14:17
  36:17

**4th**  106:16
  107:6
  108:13,24
  109:8
  196:7

───────
        **5**
───────

**5**  45:4 64:7
  105:19

  107:15
  131:23

**50**  151:7

───────
        **6**
───────

**6**  117:3,12
  126:15
  127:5
  128:18,20
  179:13

**6th**  187:9,
  11

───────
        **7**
───────

**7**  43:19
  45:4 104:2
  106:13
  128:10
  129:3
  131:7
  152:14
  154:5
  186:22
  188:1
  196:3

**7th**  56:5

───────
        **8**
───────

**8**  66:9
  157:6
  159:9

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

**RASHAD WALSTON vs NATIONAL RETAIL SOLUTIONS, INC.**
Rahad W. Walston on 04/26/2024                    Index: 9..agree

**9**

9  168:16,22
 173:19
 188:21

90  23:10,13

90s  77:17

97  15:13

9:09  4:5

9:42  35:6

9:52  35:11

**A**

A.M.  4:5
 35:6,11
 56:22 57:5
 89:21 90:2

AAA  21:15

abilities
 193:3

ability
 167:6

absolutely
 56:11
 165:8
 179:8

accept  189:3

acceptable
 87:22

access  63:6
 67:18
 185:11,16

accident
 144:2,5,9,
 15

account
 118:23

accounting
 47:15,17,
 18 92:11

accounts
 135:23,24

accumulated
 84:19

accumulates
 169:11

accumulation
 140:4

accurate  7:6
 71:6
 108:19
 140:10

accurately
 48:19
 124:10

Act  78:6,7
 181:16

action  79:22
 82:6 92:23
 146:8
 147:13,14,
 15,21
 148:4
 149:4,5,14
 150:5
 188:13,17

actions
 81:18,23
 82:5,24
 85:3
 148:13
 150:20
 153:16

active  136:6
 139:23

actual  48:23
 61:3 67:24
 74:7
 140:18

Ad  27:14,15

added  96:23,
 24

additional
 73:7 115:7
 169:7

address  6:9
 30:17
 104:9
 118:23
 163:19
 165:16,19,
 21

administered
 5:5

administrative
 154:22

advertising
 27:17

advocate
 142:18,21

affected
 143:13,14,
 16 191:22

affiliate
 26:17,21,
 23 28:3
 42:14
 48:10
 49:9,17,18
 51:20,21

affiliated
 66:17
 67:8,12
 159:3,4

afflicted
 147:18
 191:16

afford
 120:16
 124:21
 125:21

afforded
 146:4

affords
 146:18

agencies
 65:1 66:3
 86:9

agency
 17:15,17,
 24 38:10
 44:8

agree  34:4
 109:12,13
 167:21

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

**RASHAD WALSTON vs NATIONAL RETAIL SOLUTIONS, INC.**
Rahad W. Walston on 04/26/2024          Index: agreed..areas

```
 168:10          Amazon  23:20   animosity          23
                  24:3,4,9         34:18
agreed  5:18      40:20 51:4                        apology
 6:5 33:20                        annoyance           122:11,15
 173:22          America           100:1,2
 174:23           151:21                            app  127:22
                                  annoyed
agreeing         American          33:11            apparel
 45:1,2           73:4 74:16       99:19              138:18
                  78:13           100:20
agreement         88:15                             apparent
 159:24           151:22,23       annoying            34:12
 160:16           180:3            98:15,16
 162:2                             101:7            appeared
                 amount  89:7      110:4,9           15:16 16:4
ahead  93:5       118:20                             21:14
 111:20           120:17          answering
 112:10           121:3            10:5             appears  84:7
 141:14           123:11           136:18            102:19
 149:22           145:1,20         137:9,20          103:13
 161:2            146:9                              108:10
 175:21           149:19          answers  8:7
                  150:21,22        38:11            approached
alert  183:6      156:20           184:3             44:8,20
                  159:18
Alex  99:16,      167:20          Anthony  4:1      approval
 18 100:22                                           125:2
 101:12          amounts          anticipating
 109:24           124:4            53:24            approve
                  154:20                             167:6,12
Allard                            apiece
 154:11          analyses          145:24          approximately
 186:23           102:8                             16:12
 187:15,17                        apologize          17:19 23:5
                 analysis          122:20            90:11,21
allegations       101:18           146:20            160:5
 132:3            111:10           179:18
                                   197:16          April  4:4
allegedly        analyze                             55:23 56:5
 75:8             111:14          apologized
                  112:17           122:7           area  33:1
alottment                          197:5            35:22
 91:19           angry  197:12                       36:1,2
                                  apologizing        71:14
alter  118:10                      122:17,19,
                                                   areas  118:21
```

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

**RASHAD WALSTON vs NATIONAL RETAIL SOLUTIONS, INC.**
Rahad W. Walston on 04/26/2024        Index: argue..background

**argue** 165:1
166:19

**arm** 48:21

**arrested**
77:4

**articles**
72:17

**asks** 131:24

**assume** 10:19

**assuming**
101:12
102:9
105:12

**assumption**
168:11,13
171:2,6

**asterisk**
104:11,14

**ate** 100:12

**attached**
48:13
128:3
133:3

**attachments**
126:15

**attempt**
166:7

**attempted**
96:1
163:20
189:3

**attempts**
51:22

165:16
181:21

**attend**
148:3,5

**attorney**
27:21
61:18
70:21
71:3,11
73:23
74:22
92:24
102:1
113:17,19
116:8
143:19
151:11
155:11,15
156:9,16
159:16
160:17
188:6

**attorney's**
154:10
157:7

**attorney/
client**
161:22
162:11

**attorneys**
75:24
85:23 92:8
162:4

**audible**
9:10,15

**audio** 113:10

**authority**
125:17,18,
22,24
126:1,4

**authorize**
190:17

**authorized**
191:10

**average** 66:5
74:16
78:13
88:15,16
180:3

**avoid** 120:14

**award**
186:10,14,
17

**awarded**
146:12
188:9

**awards** 145:7
152:19,20
153:24
154:11
157:14
186:3,4,8

**aware** 12:15
29:6
136:21
137:13,23
150:4
153:12
173:21
174:6,8,14

186:7
189:2,6

───────────

**B**
───────────

**back** 7:12
18:4,6,7,
13 24:4
35:10
36:3,23
38:18,24
42:13
45:10 56:9
57:4 77:16
78:17,18
79:9 88:24
90:1
95:19,21
98:20 99:8
107:12
108:8
111:11
119:17
122:14
124:12,16,
23 125:5,
7,8,9,19
131:22
141:5
148:21
162:3,6
164:12
172:22
197:3

**background**
14:23
69:17 77:1

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

**RASHAD WALSTON vs NATIONAL RETAIL SOLUTIONS, INC.**
Rahad W. Walston on 04/26/2024          Index: bad..break

**bad** 84:11
  180:2

**ballpark**
  23:10

**bankruptcy**
  77:7,14,23
  78:3,19

**Barclays**
  82:6,23

**based** 20:10
  75:15
  118:7
  120:7
  161:18

**basic** 27:8

**basically**
  24:21
  46:20
  53:18 59:5
  64:20
  67:21
  123:16
  124:9,11
  125:11
  130:4
  149:18

**basics** 9:1

**basis** 5:23
  6:1
  148:20,21
  150:11
  181:24

**BCH** 53:5,11

**bear** 8:9

14:24

**beep** 182:15
  193:19
  194:10
  195:23

**beeps**
  182:15,22
  189:21
  193:9
  195:10

**began** 110:13
  166:1
  193:9
  194:9

**begin** 189:20
  195:10

**beginning**
  101:2,6
  182:16
  196:21

**begins** 72:24

**begs** 76:11

**behalf** 4:11
  68:7 160:7

**believes**
  106:14
  107:4
  108:11
  196:5

**belittle**
  163:20

**bell** 81:21

**benefit**
  38:13

**big** 66:7
  136:9

**birthdate**
  14:13

**birthday**
  14:15

**Bistro** 45:5,
  8

**bit** 14:23
  30:11
  34:11,22
  36:11,12
  43:14
  45:11
  55:16
  69:16
  78:24
  145:8
  146:8
  179:18

**Blitt** 85:11,
  13 86:13

**block** 96:24
  97:1,10,
  14,15

**blocked**
  97:3,7,18,
  23 98:3,5,
  10,12
  114:16,21,
  23,24
  126:21
  127:15,16,
  17 128:20
  129:2,12,
  17,20

130:3,8,9,
  14,22

**blocking**
  127:22
  128:1

**blue** 187:7

**book** 61:3

**booth** 139:8

**boss** 37:19

**bottom** 64:5
  104:15
  120:7
  127:14

**bought** 50:16
  73:10

**Boulevard**
  4:8

**box** 170:18
  171:4

**break** 10:2,
  10 15:19,
  21,22 16:1
  17:11,12,
  23 30:10
  35:7
  36:10,17
  69:18 77:2
  83:15
  89:17
  140:23
  172:15
  177:11,15
  192:15
  197:1

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

**RASHAD WALSTON vs NATIONAL RETAIL SOLUTIONS, INC.**
Rahad W. Walston on 04/26/2024          Index: breaks..calls

breaks   192:9

briefly
 55:14
 77:11
 89:12
 188:10

bring   179:7
 190:20,23
 191:3

bringing
 80:19

brought
 150:9

BSH   157:8

bucks   151:7

bullet   64:2
 65:7,21

bullied
 191:2

Bureau   18:8,
 10,12
 61:17 65:5

business
 28:14 29:3
 30:2,5,9,
 13,23
 45:12,15,
 17,22
 46:1,6,10
 47:7,11,
 16,17,18,
 24 48:9,
 12,18
 51:14,24

52:2
54:22,23
55:2 56:6
99:6
117:21
133:23
134:9
135:6
136:8

businesses
 28:24 30:8
 45:13,21
 46:4 47:4
 48:2,14,
 22,23 49:7
 52:6,16
 55:6,7
 134:9

bustle   36:4

buy   63:13

―――――――

――― C ―――

California
 13:10

call   39:6
 86:4 93:24
 94:12
 95:19,21
 98:4 99:4,
 18 100:10
 101:4
 102:15
 105:8
 106:4,6
 121:20,22
 124:23

125:5,7,8,
9,19
127:13,22
129:23
130:24
136:19
137:3,10
163:17
164:11,12,
15,18
165:3
166:3,14
170:17

call-blocking
 172:9

called   5:8
 39:3 47:8
 48:5 52:2
 53:5 54:14
 67:14
 68:17
 85:11
 96:6,10
 98:20
 100:13
 101:18
 111:11
 115:14
 119:19
 123:1
 130:1
 164:10
 165:9
 190:3,6

calling   50:5
 98:22 99:8
 100:5,6

130:21
165:22
173:3
174:3

calls   70:19
 71:13
 72:8,9,10
 74:10,18
 75:16
 76:7,15,
 18,22
 78:11
 86:6,16
 88:5 93:17
 97:3,9,11,
 12,23 98:5
 102:15
 106:15,16
 107:4,6
 108:12,13,
 24 109:8
 110:8,14,
 18,21,24
 111:3,14,
 17 112:18
 115:1
 116:16
 119:17,22
 120:2
 127:16,17
 128:18
 129:17
 130:3,5,8
 133:12
 136:14,18,
 19 137:10,
 12,21
 142:12

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

**RASHAD WALSTON vs NATIONAL RETAIL SOLUTIONS, INC.**
Rahad W. Walston on 04/26/2024          Index: camera..Christian

143:10,24
146:10
156:4
174:10
181:23
185:2,3
189:12
196:6,7,10

**camera** 4:3

**campus** 18:21

**campuses**
77:19

**capacity**
99:4
170:10

**Capital**
81:19
82:5,22
85:15

**caption** 44:7

**captioned**
4:13

**Carbondale**
13:18

**card** 77:18
83:5

**carries**
82:13

**carry** 197:13

**case** 4:13,
15 11:20
13:4 43:19
69:19
72:10

85:11
90:17,19
91:5 92:2,
7,11 93:20
102:24
120:22
133:19
144:20
146:23
147:2
148:2,6,8
149:12,14
154:12
155:9
156:3,21,
23 157:9,
15,18,21
158:18,22
159:6
160:23
161:8
162:19
163:12
166:24
178:20
186:11,14,
18,24
187:3,5
190:14,15,
16 191:5

**cases** 90:8
91:17 92:5
153:1,4
154:1
159:20

**cash** 65:22
71:13,16

74:10
75:16
111:10

**category**
49:8

**caught** 77:21

**caused** 77:13
95:4,7
96:19
114:11
130:7
137:2,24

**cell** 102:12
134:11

**cellular**
173:5

**Census** 18:8,
9,12

**center** 39:4

**CEO** 122:3
164:12
165:4

**chance** 43:6
111:4
168:20

**change** 8:3
186:17

**changed**
38:1,3,5
57:20
197:4

**chapters**
140:7

**characterizati
on** 33:22

**characterize**
48:19 76:7

**charge**
159:17

**charged**
69:14 77:5
102:14

**check** 98:4
125:23

**checking**
183:17

**Chicago** 4:8
14:12
21:23
22:1,8,15
25:7
29:17,20
32:17
33:4,9
36:4 37:4
51:15 79:3

**chief**
117:15,24

**children**
21:6 70:2

**choose** 39:7

**chose** 117:23

**chosen**
142:21

**Christian**
37:15

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

**RASHAD WALSTON vs NATIONAL RETAIL SOLUTIONS, INC.**
Rahad W. Walston on 04/26/2024      Index: Christy..commission

**Christy**
157:14

**circle**
128:14

**circumstances**
77:12

**citizen** 66:6
73:4 78:14
87:1 88:15
151:23
156:9
180:3

**citizens**
74:17
87:14

**city** 29:16
32:22 33:8

**civil** 4:11
34:10 81:8
120:15

**claim** 106:5
120:21
181:19
182:4

**claimant**
154:21
155:12

**claims** 132:4
133:7

**clarification**
5:21

**clarify**
46:12 81:1
118:16

**class** 145:7
146:7
147:2,14,
15,17,21
149:5,13,
15,18
150:5,6,
10,20
151:6
152:8,18,
20 153:14,
15,16
154:20
155:2,8,10
158:6,8
159:10
160:19
179:10
186:3
188:13,17,
19 190:15,
16,18,21,
24 191:3,
5,9,10,13

**classroom**
39:17

**clean** 9:22
169:15

**clear** 45:24
59:1,2
67:1 69:13
93:23
94:10
98:14
101:8
111:15
115:2

126:8
127:21
143:2
169:4

**cleared**
170:9

**clerk** 39:15

**click** 59:12,
15,19,22

**client**
33:23,24
67:14,16,
23 68:7
93:14
113:14
115:14
148:19
153:2

**client's**
142:8

**close** 29:16
169:21,22
172:15
183:3,10

**cluster**
85:19,20

**clustered**
84:8

**codes** 112:14

**cold** 50:15
65:22

**collaborated**
109:14

**collaborative**
168:9

**colleague**
4:19 6:15
56:20

**collect**
64:23
87:12,21

**collection**
66:2 78:7
82:24
85:17,23
86:9 88:1

**Collections**
81:23

**college**
15:7,23
16:16,17,
19,20,24
17:11,24
18:4,13,17
19:3,9,11,
16 40:13
77:19

**combination**
60:17 62:1

**combined**
46:8

**comfortable**
36:22

**comments**
196:22

**commission**
49:13

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

**RASHAD WALSTON vs NATIONAL RETAIL SOLUTIONS, INC.**
Rahad W. Walston on 04/26/2024   Index: communication..contact

communication
  97:6,19
  119:12
  166:4
communications
  95:1,4
  96:3,14,15
  98:15
  100:3
  102:11
  105:1
  109:17
  110:14
  111:9
  112:6
  114:14,15
  115:20
  117:9
  119:4
  120:8,23
  128:6
  130:9
  137:2,24
  146:2
  170:11,23
  172:2
  174:11
community
  54:14,18
  139:24
commuting
  25:6
companies
  26:5 27:4
  49:10
  56:11
  64:23,24

65:3 66:7
73:3 74:19
75:7 76:8,
14 77:18
81:13 83:5
company  16:8
  26:5,24
  44:2,3
  48:5 56:2
  65:14
  66:17,21
  67:8,11
  76:3 81:5
  100:9
  119:19
  122:24
  124:21
  125:1,20
  130:20
  134:15,18
  142:8
  144:8
  163:15
  164:13
  190:2,6
compatible
  24:20
compensated
  144:20,24
  160:16
compensating
  155:18
compensation
  149:15
  159:5
competent

70:21 71:3
competing
  11:12
complained
  142:11
Complaint
  11:22,23
  12:1,12
  81:6 92:22
  132:4
  133:8
completely
  9:18
Compton's
  71:20
computer
  51:19
computers
  51:22
con  133:14
concerns
  132:2
concrete
  141:24
conduct  87:8
  88:2
conducted
  168:2
conference
  138:23
confirm
  95:24
  99:12

121:20
confirmed
  165:12
connection
  50:9
  158:21
consent
  99:17
  100:4,22
  101:12
considered
  37:6 82:1
  83:8,10
consistent
  192:23
consists
  26:23
  73:13
consulting
  158:24
  162:4
  167:18
consumer
  65:1
consumers
  28:5 64:22
  66:4
contact
  61:17,18
  104:16
  105:5,7
  129:14
  130:6
  131:2

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

RASHAD WALSTON vs NATIONAL RETAIL SOLUTIONS, INC.
Rahad W. Walston on 04/26/2024          Index: contacted..court

164:17,22
179:4

contacted
144:8

contacting
130:13
144:2,4

contained
106:5

contemporaneou
sly  115:21
116:3

contend
99:12
128:6

content
174:10,14
192:11

contents
176:2

context
102:4

Contextmedia
157:15

continue
116:19
181:10,11

continuing
130:24

contracts
51:24

conversation
122:7

163:24
168:3
173:12
177:2
184:17
186:5

conversations
161:18

coordinator
22:10 79:4

copies  63:16

copy  148:16

cordial
178:5,6

corner  45:4,
7 126:22
128:19,23

Corporation
54:15,18

correct  13:5
14:18
15:6,11
16:21
18:5,14
19:14
21:20 22:6
25:20
27:19
29:12
30:19 33:5
37:21
38:19
43:21
44:19,23
45:1 46:3

49:4 59:8
60:4 62:4
64:12,18
66:12,16
67:3,7
68:15
69:3,7,22
70:1 74:3
75:14 76:5
81:11,24
89:5
93:10,18
94:14
95:12,17
98:6,8,13,
18 99:14
100:1
102:10,16
105:2
110:11
111:16
112:8
114:18
115:5,9,18
116:4,5,9,
10 117:9,
10,17
118:9
121:23
122:1,5
123:13,19
126:23
128:8,12
140:18
160:21
162:13
164:14
168:12

170:21
171:9
172:4
173:7,11,
15,16
175:13
176:4
178:1,3,9
180:8,22,
23 182:2,
13 188:22
189:1

cost  71:22

costs  151:13
154:11,22
155:19

counsel  4:16
133:8
152:21
153:15,19,
21 154:1
155:3
157:22
161:15
179:14

couple  23:20
24:16
73:16
81:18
138:17,19
141:9
196:22

court  4:23
5:2 8:15,
19 9:11
11:10,21

RASHAD WALSTON vs NATIONAL RETAIL SOLUTIONS, INC.
Rahad W. Walston on 04/26/2024          Index: courteous..decision

34:2 39:2
40:16 43:4
52:14 58:8
80:19,20,
21 81:3
84:22
90:13
92:17
105:21
113:6
117:5
144:22
149:1
152:16
157:4
162:9
168:18
177:24
188:8

courteous
7:18

courtesy
11:9

Courts 142:3
145:2

cover 61:1

covered 53:1

create 60:9
62:6
101:22

created 51:2
60:15
62:2,8,10,
16 102:8

creates

188:2

credit
57:10,13,
16,17,19,
20,22,23
58:3,11,16
59:5,10,11
60:1,7,22,
24 61:9,
15,17,21,
24 62:5,17
64:19 65:5
66:14,17,
23 67:24
77:18 78:6
81:13 83:4
91:7
181:16

creditors
66:2 83:5
85:24
86:3,8,14
87:9 89:3

Cricket
115:17

crime 77:5

CROA
181:13,15,
19

cross 11:6

cross-
examining
192:24

current
30:5,13

72:1

customers
50:18
51:18

customers'
51:6

_____

D
_____

d/b/a 48:12,
15 49:19
57:12,17

damages
155:13

dare 89:6

data 170:5

database
102:21

date 76:2
106:4
108:2,3
118:19
174:20
175:3
176:17

dated 119:8
175:16

dates 23:4
83:22
106:21
107:9
136:13

day 29:21
39:9,18
118:2

124:22
125:7
175:15
176:9,10

day-to-day
118:2

days 12:10
17:20

dead 101:3

deal 36:9
79:4 104:8
151:18

debt 64:17,
18 77:16
78:7

debts 81:12
84:12,20
85:16,21

dec 138:16

December
187:9,11

decide 31:20
161:8

decided
31:16,24
73:11
135:10,15,
16 160:7,
22 161:6
196:14

decides
188:13,18

decision
163:7

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

**RASHAD WALSTON vs NATIONAL RETAIL SOLUTIONS, INC.**
Rahad W. Walston on 04/26/2024          Index: decorating..difficult

```
167:18              157:6              133:3              depositions
168:6               168:15,22          164:14               148:3
                    173:18             166:2
decorating          186:22             179:12             describe
   138:18                                                    77:12
                    defendants       demeanor               93:1,2
deem  88:3            137:12            34:5,14
                                       36:7                description
deep  4:9           defenses            196:22               7:8 59:23
                      132:5             197:4,12
defend  72:7                                               deserve
   87:15            define           denying                 155:19
                      179:23            135:18
defendant                                                  design  41:24
   4:12,19          definition       depends                 45:18
   5:8 6:16           155:23            142:3                 46:1,23
   80:15,22                             149:24
   81:3,9           degree  13:8,       169:8,12           Designs
   82:1 91:5          16 20:21                               45:23
   102:19                            deposed  8:12           46:2,15
   106:4            delete             9:20                  50:11,19
   136:14,20          116:12,21                             52:20 53:3
   189:2,13,          169:9          deposited
   16,23              170:6            96:17               desire  20:12
   191:16             183:12                                146:15
                                     deposition
defendant's         deleted            11:6,14,18         detailed
   43:1,8             111:22,24         12:4,14,             120:8
   52:12             114:8             17,20
   56:17             116:14,18         13:1,4             details  5:21
   58:6,10,15        127:15            33:16 35:8            70:13
   59:4 60:21                          41:12
   92:15            deleting            49:17 57:2         deviated
   105:19             130:18            70:15                164:22
   107:15                              89:23
   117:3,12         delivery           141:3              dial  144:13
   126:15             23:23            172:20
   131:22                              177:24             dialed
   136:18           demand  75:1,      184:1,4              144:10
   137:10             12,15            192:9,16
   152:13             76:3,13          193:13,17          differences
   154:5              79:18,19         196:21               149:3
                      83:11
                      128:4                               difficult
                                                            40:1 86:2
                                                            142:2
```

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

RASHAD WALSTON vs NATIONAL RETAIL SOLUTIONS, INC.
Rahad W. Walston on 04/26/2024          Index: digital..download

**digital**
26:17,20
44:8 48:10

**direct** 58:18
154:12
164:18
186:23

**directing**
34:18

**directly**
13:23
15:7,10
19:12

**disagree** 8:2

**discharged**
77:24

**disclose**
134:22
135:5,13,
20

**discount**
121:16

**discourse**
34:10

**discover**
130:5

**discovery**
113:13

**discuss**
147:7
162:20

**discussed**
51:11
70:9,13,18

102:4,5
173:24
175:23
176:3
181:19
182:7
189:21

**discussing**
176:24

**discussion**
57:1 89:22
126:6
141:2
172:19
174:16

**discussions**
11:12
107:11
168:1

**disk**
183:17,18

**dismissal**
91:12

**disparity**
139:20

**display**
98:3,10

**displayed**
131:17
172:7

**dispute**
61:13
62:11,13,
17 64:3,
10,13,15,

16,17 65:9
67:13,14,
16 68:2
88:17

**dissolved**
53:10,20
54:9,10,16
55:23 56:5

**distribute**
60:19

**District**
149:1

**Doc** 71:20

**docket** 11:20

**dockets**
83:16

**document**
43:3,10
52:13 58:7
59:3 60:21
63:5
92:16,20
105:20
107:14,22
114:12
117:4
119:4
132:1,13
152:15
154:4
156:7
157:3
159:8
160:3,9,
10,11

168:17,21
187:7

**documentation**
94:6
110:22
130:2
148:14

**documented**
76:21,22
110:19
111:12
114:5
138:4

**documents**
11:17 26:1
61:1,8
132:9,11,
17,19
141:9
152:12
153:4,18,
24 156:8,
13 157:14
184:11

**dollars** 80:8
151:5

**Dominguez**
13:10

**Domino's**
100:12,13

**doo** 101:3
195:7

**door** 161:24

**download**
74:24 75:3

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

**RASHAD WALSTON vs NATIONAL RETAIL SOLUTIONS, INC.**
Rahad W. Walston on 04/26/2024                 Index: Dozer..entire

| | | | |
|---|---|---|---|
| **Dozer** 37:24 | **ease** 34:21 | **Elizabeth** 37:24 | **ended** 130:18 |
| **drill** 89:10 | **easier** 8:19 34:11 | **email** 27:11 50:6,8,14, 15 63:15 104:8,12, 16 105:8 118:23 164:16,17, 22 166:4 176:13,15, 19 | **energy** 99:7 |
| **driver** 18:21 23:23 | **easiest** 25:24 | | **enforce** 78:15 142:16 |
| **driving** 18:20 21:15 23:23 | **Eastern** 50:23 | | **engage** 27:4 |
| **drove** 20:15 | **eat** 10:8 | | **engaged** 28:23 87:10,11 |
| **due** 78:9 | **Ebay** 51:4 | | **engagement** 160:1 166:23 167:24 |
| **duly** 5:4,9 | **edit** 118:11,17, 21 | **emailed** 133:6,9 | |
| **dunning** 86:4,16 | **edited** 118:22,24 | **employed** 26:9 | **engaging** 160:11 |
| **duties** 191:6 | **education** 13:7 20:10 | **employee** 45:15 | **engine** 28:1 49:24 |
| **———— E ————** | **effect** 123:5 | **employees** 28:21 41:19,20 | **engineer** 21:12 |
| **earlier** 49:16 108:4 148:10 163:17 181:22 182:7,11, 14,24 183:19 184:10 186:1 193:13,24 196:11 | **effectively** 123:15 127:11 | **employer** 79:2 | **entail** 22:11 46:18 145:13 |
| | **effort** 99:7 155:17 | **employment** 19:2 21:1, 22 22:14 24:13 25:10 | **enter** 82:9 104:7 167:7,13 |
| | **Electronics** 43:22 44:1,7,14, 20 | **encourage** 7:2 | **entered** 82:14 |
| | **elementary** 19:22 | **end** 92:11 95:18 133:19 156:24 | **entering** 83:20 |
| **early** 22:4 77:17 121:21 148:11 173:13 | **Eli** 117:15 | | **entire** 37:12 51:12 149:15,18 173:22 |
| | **Elie** 122:3, 7 123:3 163:17 164:19 | | |

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

**RASHAD WALSTON vs NATIONAL RETAIL SOLUTIONS, INC.**
Rahad W. Walston on 04/26/2024          Index: entirety..eyes

**entirety**
  62:8

**entities**
  26:8,11
  29:8 30:20
  35:20 50:8
  51:9 56:12
  57:8

**entitled**
  34:6
  120:10
  121:2

**entity** 46:8
  51:17
  53:5,24
  54:14
  57:14
  159:2,3

**equally**
  110:3

**equipment**
  79:5

**error** 64:18
  65:4

**errors**
  61:14,20

**escapes** 36:3

**established**
  178:8

**et al** 4:15

**Etsy** 51:4

**evaluate**
  112:15

**eventually**
  173:22

**everyday**
  34:13

**evidences**
  132:2

**exact** 23:4
  71:17
  108:2
  171:13
  174:20
  175:2

**EXAMINATION**
  5:11
  177:19

**examined**
  5:10

**examples**
  64:21
  88:10

**exceeding**
  154:20

**exceptional**
  154:19

**exchange**
  184:13
  186:2,21

**exchanged**
  9:23

**excuse** 186:2
  188:10

**exhaustive**
  52:18

**exhibit**
  43:2,8
  52:12
  58:6,10,15
  59:4 60:21
  75:10
  92:15
  105:19
  107:15
  117:3,12
  126:15
  131:23
  152:14
  154:5
  157:2,6
  159:9
  168:16,22
  173:19
  179:13
  186:22
  188:1,21
  194:13

**Exhibits**
  186:21

**existence**
  186:8,16

**expect** 105:4

**expectation**
  186:13

**expected**
  104:24

**expecting**
  158:14

**expense**
  120:15

**expenses**
  157:8

**experience**
  42:17,20

**experienced**
  171:8

**Expert** 43:22
  44:1,7,13,
  19

**expired**
  185:20

**explain** 33:6
  66:1
  126:24
  142:22
  167:23

**explanation**
  139:20

**expo**
  138:16,18,
  22

**extent** 32:3
  82:12
  102:3
  174:3,9

**extra** 84:19
  112:18

**extremely**
  98:16
  101:6
  170:4
  192:1

**eyes** 147:4

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

RASHAD WALSTON vs NATIONAL RETAIL SOLUTIONS, INC.
Rahad W. Walston on 04/26/2024                    Index: face..find

**F**

**face** 47:2

**Facebook**
136:2
139:12
140:2

**facilities**
16:18 19:6

**facility**
16:17

**fact** 100:4,
18 103:12,
22 174:22

**fair** 10:16,
20 78:6,7
146:1
151:15
155:10,21,
23 156:20
174:15
178:12
180:5,10,
17 188:5,
14

**falling** 55:4

**falls** 49:8
81:15

**familiar**
33:1 43:10
48:17
50:22
72:14

**FCRA** 78:6

85:19
90:8,18
91:17
180:22

**FDCPA** 78:6
85:19
90:8,18
91:17
180:21

**feature**
128:1

**February**
54:11
83:24

**fed** 119:16
131:1

**Federal** 4:11
90:13 93:8

**fee** 157:13
158:24
159:5

**feel** 142:4
145:23
163:21

**feeling**
36:11

**Feemie** 38:1,
2

**fees**
154:10,22
155:11
157:7
159:12,14
160:17

**fell** 53:16

**felt** 15:22
87:22
166:6

**female**
109:24
195:9

**Fenger**
37:15,23

**field** 42:17,
20

**figure** 20:17
31:24
32:24
34:20
35:19
87:24
100:17
121:11,12
131:21
132:23

**file** 60:24
77:13,23
83:21
93:12
135:16
155:17

**filed** 8:7
11:20
75:11 77:7
79:13
81:5,6,19
82:5,6,22,
23 83:15,
24 84:1
85:10 89:1

90:6,9,13,
16,18,24
91:18
92:22
101:9
105:15
110:16
148:10,24
152:20
175:7,15
180:9,21
185:18
187:3,5

**files** 61:2

**filing** 189:7
190:17
191:10,13

**fill** 104:21
107:23

**filled** 19:21
104:23
105:12
195:14

**final** 168:5

**Financial**
68:18

**find** 55:16
70:20
71:17
74:22
87:17
120:1
145:2
174:21
176:12

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

**RASHAD WALSTON vs NATIONAL RETAIL SOLUTIONS, INC.**
Rahad W. Walston on 04/26/2024          Index: findings..found

183:13
192:1

**findings**
109:13

**fine** 8:22
10:11,17
82:17
89:18
143:6
163:7
177:12,16

**finer** 93:19
96:11
112:2

**finish** 10:5
11:2,3,9
89:14
150:17

**Fitzgerald**
4:20 6:15

**five-year**
39:19

**fix** 51:22
57:19 58:3

**flat** 126:2

**flex** 36:10

**flip** 53:4
54:12
55:15 66:8

**flipping**
55:10

**focused**
45:22 46:6

**folks** 41:4
42:2
157:24

**follow**
165:14

**follow-up**
171:22

**followers**
139:12,14
140:9,17,
19

**followup**
86:20

**forget** 186:4

**forgot** 53:13
110:1

**form** 5:19
6:2,3 7:4,
19 14:3
23:11
27:6,18
28:6 31:9
32:2
33:19,21
49:1 50:10
61:11
65:2,16
67:5 70:11
71:13,16
72:19,23
75:1,15,17
87:3 88:4,
20 89:4
93:4 94:3,
15 95:6

96:4,21
97:21
98:23
99:20
101:13
102:2
103:2
104:15,21,
24 105:3,
13,16
106:24
108:15
109:2,19
110:10
111:19
112:9
115:22
118:6,7
119:13
120:24
121:24
122:9,21
123:6,18
127:3
129:4
130:11
133:13
135:8
137:4
138:2
139:6
141:13
142:13
144:3
145:17
146:3,19
147:5
149:6,21

150:15,23
151:8,16,
19 152:5,9
155:14
156:5,22
158:12
161:1,21
164:19
165:7
166:7,21
169:24
170:14
171:10,16
172:11
173:8
175:1,20
176:5
182:17
193:5,20
194:11
195:5,16
197:6

**forms** 75:6

**forum** 71:10,
12,13,21,
23 72:2,5,
16 73:9,
12,15,17
74:4,11
75:1,3
185:14,17,
22

**forward**
38:21 53:4

**found** 71:2
81:18
98:14

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

**RASHAD WALSTON vs NATIONAL RETAIL SOLUTIONS, INC.**
Rahad W. Walston on 04/26/2024    Index: Foundation..Glapion

171:15
176:18

Foundation
53:6,11

fraternal
45:18,22
50:20

free  50:23
58:2 63:5,
8

Freedom
68:18

frequency
76:18

Fresh  77:15

friend  53:14
54:5
129:13
130:6
133:10,11
140:2,5

friends
139:22
140:4,14,
18

front  88:12

fruition
53:19
54:20 56:4

frustration
100:17
123:5

full  5:14
84:24

169:6,20,
22 170:12,
19,24
171:4
183:14

full-time
24:12

fully  148:5

fund  188:3,
7

funding
48:12,16,
22 49:7,19

funds  87:12,
21

funnels
59:19

future
185:10

———————
G
———————

Gaines  85:13
86:13

Gains  85:12

gather  72:6

gathered
103:8

gave
192:22,24
194:8
195:3

general
47:12

72:11
73:21
145:4
148:20,21
153:20
183:16

generally
46:24 72:9
74:7
124:18
150:8
152:23
169:8
188:19

generic
64:16

gentleman
178:14

geographic
31:6

get along
34:22

give  7:2
8:7 24:21
34:23
57:21
88:10
100:22
113:3
124:7
125:7,8,9
150:14
189:23
190:8,12
194:19

giveaway
101:4

giving  12:20
58:2

glad  159:15

Glapion  4:21
5:16,24
6:6 7:4,
19,22
14:3,6
23:11
27:6,18
28:6 31:9
32:2 33:19
34:15 35:2
38:11,15,
22 49:1
50:10
55:18
61:11
65:2,16
67:5
70:11,24
71:4,8
72:19,22
74:2 82:8,
12,16
83:20 87:3
88:4,20
89:4,11,15
91:10,15
93:4 94:3,
15 95:6
96:4,21
97:21
98:23
99:20

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

**RASHAD WALSTON vs NATIONAL RETAIL SOLUTIONS, INC.**
Rahad W. Walston on 04/26/2024          Index: Gloria..guys

| | | | |
|---|---|---|---|
| 101:13 | 155:14 | 70:21 | **Greenway** |
| 102:2 | 156:5,22 | 124:3,13, | 48:16 |
| 103:2 | 158:12 | 22 125:4, | 49:19 |
| 105:3,16 | 160:6,15 | 12 140:22 | |
| 106:9,24 | 161:1,15, | 151:18 | **Griffith** |
| 108:15 | 21 162:1, | 156:2 | 157:15 |
| 109:2,19 | 10,21 | 161:7 | **ground** 8:18 |
| 110:10 | 165:7 | 177:14 | **guess** 31:14 |
| 111:19 | 166:16,21 | 180:2 | 34:6,19 |
| 112:9 | 169:24 | **Google** | 43:14 |
| 113:3,7,20 | 170:14 | 27:14,15 | 68:13 |
| 115:22 | 171:10,16 | **grab** 10:8 | 72:13 |
| 118:12,16 | 172:11,16 | **grad** 21:11 | 76:11 |
| 119:13 | 173:8 | **graduate** | 78:20 |
| 120:24 | 174:1,9,13 | 13:12,19 | 82:21 |
| 121:24 | 175:1,20 | 14:19 | 86:20 |
| 122:9,21 | 176:5,22 | 20:7,24 | 87:19 |
| 123:6,18 | 177:10,14, | **graduated** | 93:11 |
| 127:3 | 17,20 | 15:3 19:16 | 99:24 |
| 129:4 | 180:17,19 | 21:18 | 100:16 |
| 130:11 | 181:2,6,12 | 77:22 | 101:17 |
| 133:13 | 182:20 | **granting** | 102:17 |
| 135:8 | 192:4,10 | 157:7 | 103:18 |
| 137:4,17 | 193:5,20 | **graphic** | 109:15 |
| 138:2 | 194:11,16, | 41:24 | 110:6 |
| 139:6,16 | 20 195:5, | 104:4 | 121:10 |
| 141:13 | 16 196:12 | **Grasshopper** | 132:16 |
| 142:13 | 197:6,21 | 134:15,16, | 135:4 |
| 144:3 | **Gloria** 4:24 | 19 | 145:12,22 |
| 145:17 | **goal** 44:9, | **great** 10:22 | 166:11 |
| 146:3,19 | 21 180:10 | 35:18 | 171:22 |
| 147:5 | **good** 5:13 | 39:22 | **Guide** 68:17 |
| 149:6,21 | 6:12 8:21 | **Greenwave** | **guides** 62:17 |
| 150:14,23 | 10:10 | 48:6,7,8 | **gun** 71:4 |
| 151:8,16, | 29:21 | | **guys** |
| 19 152:5, | 36:13 | | 107:19,20 |
| 9,22 | 39:22 | | 115:13 |
| 153:7,10 | | | |

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

RASHAD WALSTON vs NATIONAL RETAIL SOLUTIONS, INC.
Rahad W. Walston on 04/26/2024          Index: half..hope

126:5
159:17

------

**H**

**half** 127:14

**halfway**
55:17

**Hammond**
29:5,15,
16,19,23
30:4,13,
18,22 33:8
35:16

**hand** 5:3
6:22
178:18

**handbook**
62:22

**handle**
159:20

**handled**
157:22

**handles** 74:6

**Handling**
22:12

**hands** 7:11

**handshake**
7:3

**handwriting**
128:15

**Hang** 106:8

**happen**

170:11

**happened**
114:3
148:7
172:6

**happening**
185:9

**Happy** 14:15

**harass** 66:4

**harassed**
74:18 75:7
93:13,15
142:24
166:8

**harassing**
78:11
88:5,6

**harassment**
143:11

**hard** 34:23
46:21,24
65:22
141:23

**harm** 120:21

**harmed** 86:23
87:18
142:7
163:15

**harmful** 88:3

**hassle** 47:24

**head** 9:13,
14 39:15
41:11

92:13 96:8
141:23
164:1
183:15

**hear** 36:13
39:19,20
159:22

**heard** 59:18
71:18
181:13
190:2,6

**heavy** 79:5,6

**held** 16:7
21:10 57:1
89:22
141:2
172:19

**helped** 66:10
67:2,9

**helpful**
171:15

**helping**
26:24
53:16 54:1
57:19 66:5
120:14

**hesitate**
10:3

**hesitated**
7:1

**hey** 122:24
144:12
169:13,15

**high** 14:9,

10,20 15:3
16:9,10
37:15,16,
17,18,23
54:5

**higher** 50:1
124:14

**highest** 13:6

**highly-skilled**
71:11

**Highmark**
157:18

**Hills** 13:11

**hire** 79:11

**history** 16:7
25:23
45:12
127:13

**hit** 58:20
127:16

**hold** 19:1

**holiday-**
**related**
23:24

**home** 33:17
157:9
173:2

**Honestly**
42:7 79:24
88:11 97:8
196:17

**honor** 147:23

**hope** 8:2

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

**RASHAD WALSTON vs NATIONAL RETAIL SOLUTIONS, INC.**
Rahad W. Walston on 04/26/2024      Index: hoping..information

| | | | |
|---|---|---|---|
| hoping | 90:7,8 | implying | 35:16,20, |
| 141:11 | identify | 33:23 | 21 36:2 |
| 142:17,20 | 4:16 106:3 | important | individual |
| hostile | 132:1 | 10:23 | 147:13 |
| 33:12,18, | 136:13 | 191:21 | 149:4,12, |
| 24 36:8 | 184:11 | 192:1 | 13,19,24 |
| hostility | IDT 190:3, | imposition | 161:17,20 |
| 8:9 34:13 | 6,8,12 | 120:15 | 190:14 |
| hours 24:20, | illegal | impossible | individually |
| 21 25:1 | 66:3,4 | 11:11 | 150:10 |
| housed 59:20 | 78:10 | inappropriate | 160:23 |
| 60:8 | 85:18,24 | 140:13 | 161:9 |
| houses 58:22 | 86:6,7,16, | include | 162:5,19 |
| 67:21 68:1 | 18,22 | 64:3,10 | 163:12 |
| huge 150:22 | 87:2,21 | 145:15 | 167:1 |
| 159:18 | 88:3 93:22 | inconvenience | individuals |
| hundreds | 181:22,23 | 122:8 | 47:19 |
| 142:6 | illegally | incorporated | induced |
| 143:12,15, | 75:8 87:12 | 54:15 | 190:23 |
| 20,21 | Illinois 4:8 | 55:22 56:4 | inflicted |
| hung 94:21 | 13:17 | incorrect | 147:19 |
| hurt 88:7, | 14:12 15:9 | 44:12 | info 104:7 |
| 14 | 18:4 32:7 | 123:21 | information |
| hurtful | 33:9 | 165:19 | 14:23 |
| 163:23 | 148:24 | increasing | 33:17 |
| Huseby 4:2, | 149:1 | 44:9,21 | 35:24 |
| 24 | 175:8 | India 97:13 | 44:17 51:6 |
| hustle 36:4 | images 60:10 | Indiana | 58:2 60:16 |
| | Immediately | 29:5,10, | 62:1,5,13, |
| ———— I ———— | 7:15 | 15,19 | 14,23 |
| | implication | 30:13,18 | 67:22 |
| idea 55:4 | 33:21 | 31:22 | 68:1,9 |
| identified | implies | 32:7,9,15, | 69:17 72:6 |
| | 96:16 | 19,20 33:8 | 73:8,11 |
| | | | 74:15 75:5 |

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

106:20
107:2,7
108:5,10
118:18
120:1
134:23
148:19
156:12
180:1,6
185:1

**initial** 81:8
179:15
195:22

**initially**
57:18 73:6
74:14
96:22
116:19,20
129:17
163:18
174:24

**initiate**
92:23

**injury** 36:6
78:21 79:1

**ink** 46:23

**inquire**
70:20

**insisted**
164:21

**Instagram**
136:2

**instances**
88:18

**instructor**
21:15

**intent** 36:8

**intention**
145:9,10

**intentionally**
116:11

**interact**
49:23

**interaction**
72:16

**interest**
120:14

**interested**
20:18
28:16
53:15
161:12,16,
19 163:3,
4,11
184:24

**interesting**
86:21
166:20

**interpret**
166:12

**interrogation**
148:11,18,
23

**Interrogatorie
s** 107:16
108:6
131:24
183:20,23

184:1,4,7

**Interrogatory**
105:24
106:3,9,13
107:18
108:9
131:24
135:1
136:12
193:24
194:1,16,
21 195:4,
15

**interrupt**
197:10

**interrupted**
15:14

**interruption**
15:15,17,
18

**intimidate**
88:8
163:20

**intimidated**
166:8

**intimidating**
165:12

**intimidation**
164:20

**introduce**
7:12 75:10
178:16

**introduced**
7:10,16

**invested**
148:5

**investigate**
160:7

**involve**
24:13 28:4
65:11

**involved**
29:9 45:14
47:5 48:4,
10 51:10
56:13 57:9
70:14 78:4
153:2
186:24
191:18

**involvement**
186:11,18

**IO** 58:21

**iphone** 97:23
127:5,23,
24

**issue** 72:10
86:24 87:9
88:1
105:14
125:2
133:18

**issues** 36:23
57:23,24
61:14
85:17

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

**RASHAD WALSTON vs NATIONAL RETAIL SOLUTIONS, INC.**
Rahad W. Walston on 04/26/2024          Index: Jackson..lawsuit

**J**

Jackson 4:8

January 54:16 176:8

Jeremy 4:21 83:14

Jersey 73:24 117:21

job 8:5,10 16:7,14 17:5 18:5, 7,16 24:12 34:8 40:14 152:7 155:9

jobs 21:10 22:19,22 23:16 24:7 40:8,10 42:6

Joe 88:16

join 73:9, 12

joined 71:9

Judge 142:4 155:22 188:15

judgment 143:5 147:3

July 84:1

jump 5:16 164:19 177:10 179:17

jumped 71:4

June 54:10

justice 141:15 142:5 145:11,13 151:4,7, 10,22,24 155:22 163:14 164:6 191:17 192:2

**K**

Katz 163:18 164:10,19 173:13

Kelly 187:19,22

kids 53:16 54:2,7

kind 7:1,2 8:3 31:18 34:18 45:12 46:7 48:21 69:18 74:19 141:22

Kindergarten 39:20

kit 58:11, 16 59:10, 11 60:2,7, 12,23,24 61:10,24 62:6 63:13,14, 17 67:7 73:1,5,10 75:4,18, 19,21,22

knew 76:22 110:17,20, 23,24 130:12,20 185:6

knowledge 60:17 83:9 153:3 167:9,10

knowledgeable 185:8

Korn 117:15,19

**L**

label 145:4

labeled 128:19 129:3 131:7

lack 186:17

laid 36:3

Lakefront 26:7,15,21 27:3 28:10,18, 20,24 29:2,4 30:14 42:13,15 44:3,20 57:10,11, 13,16,17 58:11,16

Lakefrontcredit.com 58:13, 19 59:6

Lakefrontcredit.com. 58:12

land 134:11

language 63:10 86:5 194:23

late 77:17

law 65:21 80:1 144:23 146:5,6,18 151:12

lawn 16:8

laws 89:8

lawsuit 8:7 70:9,14,19 75:11 77:3 79:13,15 81:5 90:16

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

**RASHAD WALSTON vs NATIONAL RETAIL SOLUTIONS, INC.**
Rahad W. Walston on 04/26/2024                    Index: lawsuits..life

```
93:2,12              159:24          leaving          76:3,13
101:9                161:19           105:9           117:8,11,
105:14,15            167:6,11        left  22:15       14,18
110:16               177:2           51:15 86:7        118:6
133:11               192:8,14,       95:8,16           119:3,8
141:12               19,22           99:16             120:6
146:8                193:8           101:11            121:19
147:15               194:8           115:8             124:8
148:10,24            195:3           116:3             128:4
149:14               197:1           126:5             133:3,4
150:10               lawyer's        left-hand         160:1
160:12               163:7           126:22            164:11,15
175:6,12,            lawyers         128:23            165:5
14 179:7             150:22          legal  79:22      166:3,23
180:10               157:22          86:5 87:2         167:24
185:17               159:11          102:9             168:24
189:7                layer  73:7     106:22            169:2
190:5,11,            lead            107:9,11          173:18,20
14 191:18            147:23,24       109:3,13          175:15,19,
lawsuits             148:1           113:12            22 176:2
78:3,5               180:15          135:10            179:13,15
80:15                leading         147:7             188:23
81:18                77:12           159:14            letters
82:22                180:12,24       161:15            62:11,13
83:16,22             181:5,8         162:21,22         64:4,11,22
85:10,20             learn  34:24    168:4             66:3 68:3
89:1 90:6,           65:21 66:6      174:17            75:23
12,24                learned         175:23            78:10
155:17               161:7           176:3             86:5,6,16
180:21               learning        196:14            88:7,12
181:18               42:21          legally            level  13:7
182:1,3              176:21          91:23             165:5
lawyer  8:23         177:3           letter  11:19     license  47:1
12:3,12              leave  24:19    64:14,15,         lieu  83:20
70:8,18                              16 65:9,14        life  33:14
79:11                                75:1,12,15        51:12
151:5
```

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

**RASHAD WALSTON vs NATIONAL RETAIL SOLUTIONS, INC.**
Rahad W. Walston on 04/26/2024          Index: Life-changing..man

**Life-changing**
68:17

**lifetime**
63:6,9

**limited**
170:5

**Linda**
187:15,17

**lines** 32:22
134:11

**link** 58:18
59:12

**Linkedin**
136:2

**list** 30:1
50:16
52:18
96:24
97:1,7

**listed** 92:10
103:5
112:20
117:20,22
129:21
194:13

**literally**
181:9

**litigation**
81:8 83:19
120:15
159:12,13

**live** 29:17,
20 32:10
163:19

165:18

**lived** 29:23
32:12

**living**
155:20

**LLC** 26:7
31:1 44:4
46:11 47:9
48:6

**loan** 48:23
93:6

**locate** 132:8
184:11

**located** 4:7
29:14

**locations**
40:8

**lodges** 140:7

**long** 15:1
16:11,23
17:3,16,18
18:9,22
20:1 21:24
28:17
108:1
119:11,15
130:21
159:13,15

**looked**
119:17
176:19
193:23

**lot** 25:9
55:11

57:22
61:2,6,7
62:14
76:17
77:16,17
79:5,6
85:18
97:11
139:14
140:3
142:18,19
155:16
159:14
165:2

**lunch** 192:18

─────────

**M**

─────────

**M-O-R-S-E**
40:18

**made** 63:1,3
73:20
76:15
126:1,8
129:17
179:3
196:9,21

**mailbox**
170:24

**mailing**
30:17

**main** 39:13
52:21
59:15,22

**maintenance**
16:22

40:15

**major** 74:18

**majority**
37:11
87:13
134:18

**make** 9:6,
15,21,22,
24 10:24
11:1 14:17
25:3,18
27:1 34:6
53:1 58:24
59:2 63:20
123:4
124:22
129:23
143:22
155:20
156:10
163:21
164:16
167:17
168:5
197:11,16

**makes** 8:19
144:7

**male** 109:23
195:8

**malicious**
145:4

**maliciously**
121:4

**man** 56:7
122:24

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

**RASHAD WALSTON vs NATIONAL RETAIL SOLUTIONS, INC.**
Rahad W. Walston on 04/26/2024     Index: Manager..messages

```
   124:19

Manager
   67:14,17

managing
   26:12

manner
   165:9,11

manual
   62:12,18

March  106:16
   107:5
   108:13,24
   109:8
   119:5
   196:7

marked  43:3,
   7 52:13
   58:7 59:3
   92:16
   105:20
   107:15
   117:4
   152:15
   154:4
   157:3
   159:8
   168:17,21
   173:18

market
   44:10,22

marketing
   26:7,15,
   17,21,22,
   23 27:4,9,
   12 28:4,
```

```
11,12,18,
21,24 29:2
30:14
42:14,15,
16 44:4,8,
20 48:6,11
49:9,17,
18,20
50:6,9,15,
16 57:11

Marketing's
   29:4

marketing-type
   51:20

Maroon
   54:14,18
   55:14,24

married
   38:4,6
   69:21,23

masks  47:2

Masonic
   139:24

Masons  50:23

massive  79:7

Master's
   13:8,24
   19:12,17
   20:9,16
   21:19

masters  13:9

Masters's
   13:13
```

```
materials
   62:21

math  19:23

matter  6:16
   65:8
   120:17
   186:23

max  170:10
   183:10

maximum
   170:2

meanings
   26:19

means  26:18
   27:24
   65:13 66:1
   191:15

meant  6:1

meat  69:19

media  49:23
   135:22,24

meet  12:3
   178:14

meeting  6:17

meetings
   125:7

member  71:23
   72:1,3
   139:24
   151:6
   159:10
   184:19

members
```

```
150:20
153:16
154:20

membership
   185:19

Memorandum
   154:10

mention  11:7
   52:8,9
   163:16,22

mentioned
   6:13 9:2
   35:22
   45:21
   86:15
   88:14

mentioning
   158:5

merits  91:12

message
   100:14
   101:1,2
   170:18
   195:14

messages
   72:18
   73:17,18
   86:18 88:6
   93:18,21,
   22 94:14
   95:9 99:13
   100:9
   101:5,10
   105:6,10,
   14 110:3
```

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

**RASHAD WALSTON vs NATIONAL RETAIL SOLUTIONS, INC.**
Rahad W. Walston on 04/26/2024          Index: met..navigate

111:16,22
115:4,8
116:15,17
127:15,18
129:15
130:22
132:12
146:11
169:7
170:2,4
171:13
182:6,8,
10,12,15
185:2,4
193:19
194:9

**met** 6:20
7:9,18 8:4
177:24
178:3,8

**middle** 19:22
39:23

**million**
151:5
155:4,5,11
159:11,19,
20 188:3,
6,7

**mind** 38:23
146:1
151:4

**mindset**
118:4

**mine** 53:14
54:5 55:19
129:13

**minimum**
106:15
107:5
108:13,23
109:7
196:6,9

**minute** 6:17
7:9 35:3
57:7

**minutes**
29:21
36:17 99:8
102:12

**missed** 98:4

**missing** 83:4

**Misstates**
182:18

**mistaken**
160:13

**model** 48:18

**mom** 39:20

**moment**
191:11

**monetary**
167:2

**money** 48:14
56:9,10
64:24
65:4,14,18
71:22
88:18,21
123:11
124:22
143:3,8

145:14,16
149:13,15
150:21,22

**month** 24:18
169:14

**months** 17:4,
19,21,22
18:11,23
20:3 24:17

**morning** 5:13

**Morse** 40:15

**motion** 154:9
157:7

**move** 33:16
34:11 55:5
69:18
180:17

**moved** 129:24

**mugs** 47:1

**multiple**
24:2,6
40:24
164:6
185:7
191:15
192:2

**multiplied**
121:5

_____

**N**
_____

**named** 44:19
99:16
100:21
101:11

122:3
149:5
157:23
158:6

**names** 37:22
38:12 41:3
42:4 74:7

**narrative**
34:3

**nation** 66:11
67:3,9
68:14

**National**
4:14
171:19

**Nationwide**
91:7

**nature** 42:1
46:14 47:3
50:24
51:5,8
52:1 60:11
62:16
66:20
67:15
78:12
112:15
114:9
129:15
140:8
146:12
148:15
155:18
183:18

**navigate**

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

**RASHAD WALSTON vs NATIONAL RETAIL SOLUTIONS, INC.**
Rahad W. Walston on 04/26/2024          Index: navigated..objected

127:1,8

**navigated**
127:11

**necessarily**
97:20
105:5
119:15
137:23
140:12
142:15
166:11
169:16

**needed** 15:22
25:1 34:3
126:10
153:8

**negotiations**
148:9

**network**
21:12
173:5

**nod** 9:14

**Nomorobo**
172:9

**non-legal**
156:15

**non-profit**
53:15 54:1

**non-reversionary**
188:3,7

**normal** 9:19

**Northern**
149:1

**northwest**
32:9,15

**not-for-profit**
53:8

**Notary** 5:6

**noticed**
139:11

**November**
121:21
173:14

**nowadays**
136:10

**NRS** 75:12,
24 76:2,8,
13,19
92:23
93:15
94:1,13
95:4,16
99:17
103:15
104:16
110:15
111:10
113:13
114:17,22
115:4,9
116:7,12
117:8,16
119:22
121:22
123:4
125:1
128:7
129:8
130:5,10

132:13
133:12
142:12
170:12,22
171:20
172:2
173:15,21
174:22,23
185:7
193:9

**number** 4:15
64:6
95:19,21
96:23,24
97:6,17
98:2,10,20
99:8
102:18,20
103:5,13,
15,22
104:2
106:1,22
114:17,22,
23 118:19
120:7,20
128:7,14,
20 129:3,
6,8,19,24
130:3
133:18,21
134:1,4
139:2,3,5,
10 144:11,
13,14
189:24
190:9,12

**numbered**

128:9

**numbering**
128:13

**numbers**
92:12
97:15
128:18
129:12,21
131:14,17,
19 133:17,
23 134:7,
13,17,23,
24 135:6,
7,14,20
194:21

———————

**O**

———————

**oath** 5:4
8:15

**object**
106:24
111:19
118:12
133:13
150:15
152:24
158:12
173:8
176:5
180:12,24
181:11
182:17
192:10
195:5

**objected**
27:21

**RASHAD WALSTON vs NATIONAL RETAIL SOLUTIONS, INC.**
Rahad W. Walston on 04/26/2024     Index: objection..operation

152:23

objection
6:2 7:4,19
14:3 23:11
27:6,18
28:6 31:9
32:2
33:19,20
34:15 49:1
50:10
61:11
65:2,16
67:5 70:11
72:19,22
87:3 88:4,
20 89:4
93:4 94:3,
15 95:6
96:4,21
97:21
98:23
99:20
101:13
102:2
103:2
105:3,16
108:15
109:2,19
110:10
112:9
115:22
119:13
120:24
121:24
122:9,21
123:6,18
127:3
129:4

130:11
135:8
137:4,17
138:2
139:6,16
141:13
142:13
144:3
145:17
146:3,19
147:5
149:6,21
150:15,23
151:8,16,
19 152:5,9
155:14
156:5,22
161:1,21
162:11
165:7
166:16,21
169:24
170:14
171:10,16
172:11
174:2,9
175:1,20
176:22
193:5,20
194:11
195:16
197:6

objections
5:18,19,20
6:3 153:6

obligations
191:7

obtain   59:11
80:4

obtained
75:16 80:2
103:15,21
118:7,8
155:12

occasion
169:17

occasionally
27:13
46:16

occasions
160:6
169:18

occur   170:22

occurred
172:6

occurring
115:21
116:4

October
119:5,9,15
184:20

offense   9:21

offensive
197:15,17

offer   178:18

offered
123:11,24
124:11
125:11
174:22
175:4

obtain   office   24:14
29:5,10
30:3,12,
15,16,22
31:2,3,4,7
32:8 35:15
39:14 80:1

officer
117:16,22
118:1

officers
117:20

offices
29:14
35:15,21

official
41:20
79:15

Officially
28:19

on-site
118:2

online   27:8
29:3
42:22,23
44:9,21
49:22 51:4

open   10:5,7

opened   54:9
161:23

Operating
117:15
181:16

operation

RASHAD WALSTON vs NATIONAL RETAIL SOLUTIONS, INC.
Rahad W. Walston on 04/26/2024       Index: operator..penalty

117:24

operator  4:3

opinion  48:1
 109:7,10
 163:15
 181:23

opportunity
 120:16
 147:22

opposed  32:7
 76:14
 86:21

opted  171:14

optimization
 28:2 50:1

order  50:23
 108:6
 157:6

ordered
 100:11

ordinary
 86:24

organic
 27:16,23

organization
 140:7

original
 189:3

originally
 73:10

originating
 49:7

originator
 48:24

outreach
 28:4

outsourced
 41:21,23

overcome
 57:24

overview
 149:7

owe  88:21

owed  88:18

owes  65:13,
 18

owner  45:15

―――――

P

P.M.  141:1,
 6 172:18,
 23 197:23

package
 45:20

packet  61:10
 64:21
 66:15

pages  54:13
 69:5 131:6

paid  84:22,
 24 85:7,8
 88:24
 158:17

pain  36:9

papers
 152:19
 153:14

paragraph
 102:18
 104:1,5
 120:6
 188:1

Paragraphs
 95:14

parameters
 81:16

part  39:6
 44:16
 46:21
 57:11 68:5
 77:20
 97:16
 143:4
 148:14
 162:24

part-time
 22:19,22
 23:16
 24:7,11
 84:17

participation
 159:6

past  25:10
 76:10,17
 138:13

Pat  4:19
 6:15

pay  49:13
 58:23 60:5

63:8 67:18
 76:19
 84:12,20
 93:15
 99:17
 103:15
 111:10
 117:8
 119:22
 123:22
 125:1
 128:7
 129:8
 130:5,10
 132:13
 142:12
 171:20
 173:22
 185:7,24

payment
 85:3,5
 89:6 91:4
 138:22
 156:19
 158:21

payments
 90:23
 138:21

pays  159:19

Pdf  61:5

Pdfs  61:6,7

penalties
 120:9

penalty
 167:2

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

RASHAD WALSTON vs NATIONAL RETAIL SOLUTIONS, INC.
Rahad W. Walston on 04/26/2024          Index: people..pick

**people** 26:20
49:12,22,
24 50:5
57:19 58:1
61:10
66:10
67:3,9
68:13
74:6,15
87:16
109:21,23
129:23
131:2
139:13
140:6,11
141:19
142:7,15,
18,19,22
143:13,16,
24 145:14
146:17
147:17
158:4
163:13
164:3,4,6
165:2
171:18
191:15,22
192:2

**people's**
51:22
67:21

**percent** 17:6
23:9,10,
13,14
79:24
80:24

81:15
90:15 91:8
103:3
110:17
111:1,2
112:12,19
115:10,11
116:14
140:10
147:11
150:1
155:3,4
167:3,14,
22 168:12
176:11

**percentage**
23:6 27:1
160:20

**period** 15:14
24:15,16
41:8 51:15
72:4 73:12
84:11
90:10
94:20
97:14
134:8

**periods** 23:3
40:20

**permanent**
19:21
20:12

**permits**
166:24

**person** 41:2
81:4 99:15

100:21
131:19
147:24
156:3
159:2,4
165:13
179:21,24

**person's**
74:8

**personal**
133:21
134:1,3
136:8
139:5,10

**personally**
136:9
177:5

**perspective**
87:1
156:15

**phone** 50:5
70:19
78:11
93:24
94:12,17,
21,24
95:4,7
96:1,7,17,
20,23 97:1
98:3
102:12
104:9,12
105:8
111:5
112:6,13,
15 114:3,

4,10,12,
20,21
115:8,20
126:19
127:2,5,6,
8 131:7,19
133:17,18
134:13,20
137:2,3,24
142:12
148:16
156:4
163:17
164:11,12,
18 166:13
169:16
170:12
172:7
173:3
176:14
183:9

**phones**
134:12

**phonetically**
38:17

**phrase** 100:3

**physical**
30:3,12
31:2,4
61:3

**physically**
81:3

**pick** 32:7
138:5
166:13

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

RASHAD WALSTON vs NATIONAL RETAIL SOLUTIONS, INC.
Rahad W. Walston on 04/26/2024          Index: picked..presented

picked  79:8
 94:1,20
 96:1

picking  96:7

picks  144:12

picture
 60:22

pizza  100:12

place  30:2
 48:23 99:2
 100:10
 104:8
 130:14

places
 60:16,18

plaintiff
 4:22
 80:20,22
 106:14
 107:3
 108:11
 134:22
 136:17,20
 137:8,13
 148:1
 149:4,5
 196:5

Plaintiff's
 154:9

plaintiffs
 157:23
 158:6

plan  82:9
 102:12

plans  56:8
 85:4,5

plates  47:1

platform
 58:21
 59:17,20
 62:24

platforms
 136:1

plead  4:16

pocket  65:23

point  10:7
 18:3 74:21
 86:10
 93:20 94:5
 96:11 97:9
 111:24
 112:2,23
 113:24
 114:4,16,
 24 116:16
 117:7
 119:23
 121:18
 125:5
 129:9
 138:6
 164:5
 175:3
 187:13

pointing
 34:12

police  152:8

position
 36:22

87:14
 126:9
 192:21
 193:16,18

positions
 17:23
 19:2,8
 21:1
 25:10,12

possibility
 20:14
 186:16

possibly
 51:23

post  24:14
 73:15,21,
 22 140:11

posting
 72:17

posture
 197:14

potential
 190:21,24
 191:3

potentially
 103:10
 121:15
 126:6
 191:17

Practice
 78:7

practices
 87:11

pray  39:17

pre-recorded
 99:13
 106:5,6,
 15,17
 107:5,6
 108:12,14,
 23 109:1,
 9,17 110:8
 182:8,10,
 12 189:18
 194:3,4
 196:6,8,10

pre-suit
 79:18

predatory
 77:18

prefer  6:8
 178:12

preference
 31:10,15

preparation
 11:18
 12:1,4,14
 47:12

prepare
 11:14

preparing
 47:13

present  9:10
 22:18 23:7
 38:9
 196:15

presented
 148:12

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

**RASHAD WALSTON vs NATIONAL RETAIL SOLUTIONS, INC.**
Rahad W. Walston on 04/26/2024    Index: preserve..purchases

preserve
  5:20 6:3

president
  118:3

press 46:24

pressured
  191:2

pretty 53:10
  169:21,22

prevent
  120:2
  185:9

previous
  46:5 48:5
  50:18
  108:3
  110:21
  114:7
  118:13
  138:5

previously
  139:23
  145:11
  180:20
  181:19
  189:21
  191:24

prey 77:19

price 69:10

primarily
  22:19
  50:20
  74:13

principal

29:4,10,14
30:1 37:6,
20,23,24

print 46:23

printer
  46:22 79:8

printers
  79:7

printing
  45:17
  46:1,6,7,
  10,11,13,
  14,19,20,
  21 52:8,9

printout
  52:16 59:5

prior 148:9
  153:1
  184:1,4,20
  189:6
  190:5,11

private
  73:18
  179:20,24

privilege
  161:22
  162:12
  192:10

privileged
  174:2,4,10
  176:22

problem
  179:19

procedurally

146:24

Procedure
  4:11

proceeding
  8:15

process
  81:13
  132:22
  162:24

processing
  138:22

produced
  113:9,11,
  12,13
  115:17

product
  45:19,23
  69:14

production
  184:9

products
  50:20,21
  51:3,7

Program
  13:24
  19:17

promise
  179:6,9

promised
  158:20
  159:4
  186:10
  190:20

promotional
  45:18,23
  50:19

promotions
  104:17

proposed
  147:14,15

provide
  99:17
  174:23
  184:3,6

provided
  113:16,18
  116:8
  139:1

public 21:23
  22:1,9,15
  37:5,9
  51:16 79:3
  91:13
  180:2,7

pull 127:7
  194:19

punitive
  179:10

purchase
  58:23
  59:10,13,
  24 60:3
  61:10 73:5

purchased
  60:15
  62:3,23

purchases

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

**RASHAD WALSTON vs NATIONAL RETAIL SOLUTIONS, INC.**
Rahad W. Walston on 04/26/2024          Index: purchasing..recall

60:17

**purchasing**
73:1

**purport**
95:15

**purpose**
47:11

**purposes**
134:10
136:8

**pursuant**
4:10

**pursuing**
150:5

**push**  164:20

**pushed**  166:9

**put**  33:22
65:22
93:19
96:11
97:6,10,14
100:19
103:4
109:4
112:2
118:18
128:13
130:13
180:9

─────────

**Q**

─────────

**question**
7:21 10:5,
15,19

11:2,4
14:5 25:11
31:14,19
32:4,6
33:2 37:1
38:24
44:18
76:12
82:21 85:2
87:6,20
89:14
93:11
94:11
99:22
108:9
109:15
113:4
118:13
131:20
132:15,16
137:6
139:19
145:18
150:4
157:17
158:9
162:15
171:6,22
182:18
195:18

**questions**
8:6 9:3,5,
10 10:6
33:15 35:1
49:16 77:2
107:17,18,
20 148:11,
18,23

163:1
177:8
180:15
186:20
189:9,11
197:20

**quick**  172:15

**quickly**
24:19
36:21

─────────

**R**

─────────

**Raby**  37:16
38:1

**RAHAD**  5:7

**Raise**  5:2

**ramifications**
170:16

**ran**  41:1

**random**
131:18

**rang**  96:23

**range**  124:6

**ranked**  50:1

**Rashad**  4:9,
13 5:15
6:10
165:15,20
177:21

**rationale**
135:19

**RE-EXAMINATION**

192:6

**reached**
144:16
179:3,5

**read**  39:1
59:23
62:15
83:21
113:5
162:3,6,8
196:2

**reading**
38:23
42:22
72:17

**real**  69:1

**realm**  127:19

**reason**  15:20
34:12
54:24
103:11,14,
20 135:12
139:21
153:2

**recall**  17:18
18:1 23:4
24:10
41:2,3,11
42:3,8
94:4,12,
19,22,24
96:5,6
122:23
127:10
133:4

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

**RASHAD WALSTON vs NATIONAL RETAIL SOLUTIONS, INC.**
Rahad W. Walston on 04/26/2024          Index: receipt..registered

| | | | |
|---|---|---|---|
| 136:18 | 156:4 | 35:2,5,11, | 156:2 |
| 137:9 | 182:8,11 | 13 39:1 | |
| 138:20,24 | 183:6 | 45:24 | **red** 183:10 |
| 175:2 | | 56:18,21 | **redacted** |
| 183:20 | **receiving** | 57:2,5 | 131:10,14, |
| 184:13 | 110:14 | 58:24 67:1 | 16 |
| 185:13 | 185:7 | 83:21,22 | |
| 186:5 | 186:13 | 89:11,19, | **redirect** |
| | | 20,23 | 177:9 |
| **receipt** | **recently** | 90:2,5 | 192:23 |
| 100:2 | 36:6 | 113:5 | |
| | | 140:22,24 | **refer** 93:14 |
| **receive** | **recognize** | 141:3,6 | **referred** |
| 90:23 91:3 | 43:15 | 153:10 | 71:8 74:1, |
| 111:16 | 92:19 | 154:8 | 5 |
| 151:5,6 | 168:24 | 162:8 | |
| 156:11 | | 172:17,20, | **referring** |
| 160:17 | **recollection** | 23 197:22 | 68:13 |
| 169:7 | 11:19 | | 81:11 |
| 170:3 | 16:13 | **recorded** | 132:20 |
| 171:13,24 | 17:4,8 | 195:14 | 134:23 |
| 189:12,15 | 18:11,24 | | |
| 191:17 | 21:17 | **recording** | **refers** 132:2 |
| | 23:19 | 101:10 | **reflect** |
| **received** | 25:13 39:8 | | 34:2,5 |
| 76:6 78:21 | 52:5 56:15 | **records** 83:9 | 154:8 |
| 89:2 91:16 | 73:20 | 111:5 | |
| 93:24 | 96:19 | 112:7,13, | **reflected** |
| 94:12,13 | 111:8 | 16,21 | 112:6 |
| 96:2 97:5, | 116:23 | 115:17 | 117:11 |
| 19 100:20 | 137:1 | 130:18 | |
| 101:5 | 144:18 | 131:7 | **refresh** |
| 105:2,13 | 154:6 | 144:9 | 96:18 |
| 110:23 | 176:17 | 148:16 | 111:8 |
| 111:13 | | | 136:24 |
| 114:7 | **recommended** | **recover** | 176:16 |
| 119:5 | 71:10 | 145:24 | |
| 132:22 | | 150:7 | **refutes** |
| 143:24 | **record** 4:4, | | 132:3 |
| 146:9 | 17 5:14,17 | **recovery** | |
| | 6:4 9:22 | 149:3 | **registered** |
| | 33:23 34:7 | | 35:20 |
| | | | 53:18 |

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

**RASHAD WALSTON vs NATIONAL RETAIL SOLUTIONS, INC.**
Rahad W. Walston on 04/26/2024          Index: registering..request

registering
  55:4

regular
  69:10
  98:11
  156:9

regularly
  169:5

reimbursement
  157:8

reiterated
  123:15
  124:24

reject
  167:12

related
  138:22
  153:4

relates
  89:15
  132:2

relationship
  67:16
  179:4

relevance
  152:23
  153:1

relevant
  104:17
  132:23
  180:6

relief
  154:19
  185:1,5

reluctance
  135:5

remained
  195:22

remaining
  62:23 69:5
  155:4

remember
  6:17,23
  7:3 23:3
  25:15
  35:16 37:2
  40:3,12
  41:9,13
  53:20
  54:19,21
  55:1 57:8
  62:24
  74:4,8
  75:13 80:7
  82:7 85:14
  86:2 91:4
  97:8
  122:10,14,
  15,17,18
  123:1,3
  124:20
  137:20
  138:8
  184:16
  193:10,23
  194:5
  196:20

remind   9:17
  11:8

removed

130:3

renew   162:10

repackage
  63:2

repair   51:19
  57:19
  58:11,16
  59:5,10,11
  60:2,7,12,
  23,24
  61:10,24
  62:6,12,18
  66:14,18,
  23 67:7,24
  181:16

repeat   137:5

repeated
  100:21

rephrase
  10:15
  185:12

report   38:10
  39:11
  61:15,21
  64:19

reported
  40:21 41:4
  64:24

reporter
  4:23 5:2
  8:20 9:11
  11:10 34:2
  39:2 40:17
  43:4 52:14
  58:8 92:17

105:21
  113:6
  117:5
  152:16
  157:4
  162:9
  168:18
  177:24

reporting
  4:2 5:1
  65:1 78:6

represent
  6:16
  154:14
  160:11

representative
  145:7
  147:24
  152:8
  155:8
  179:10
  186:3
  188:20
  191:8

representative
s   153:17
  158:7

represented
  179:14

representing
  4:2

request
  132:10
  140:5
  155:11

**RASHAD WALSTON vs NATIONAL RETAIL SOLUTIONS, INC.**
Rahad W. Walston on 04/26/2024          Index: requested..Ryan

requested
 154:21
 171:14
 185:23

requesting
 172:1

requests
 140:6
 148:18
 155:3
 184:9,12

resale  60:18
 63:1

research
 28:15

researching
 42:21

resell  63:2

resolution
 144:22
 146:23
 147:1

resolve
 123:17
 156:20

resolved
 83:19
 84:21

respect
 166:15
 195:4

response
 31:19
 106:12

135:1,18
 176:20
 177:3
 195:4

responses
 9:10,15
 184:7
 193:24
 194:1
 195:15

responsive
 132:9,18
 184:12

rest  62:21

restroom
 10:9

result  95:1
 120:23

resulted
 79:22 85:3
 112:7
 136:21
 137:14

resumed  35:8
 57:3 89:24
 141:4
 172:21

Retail  4:14
 171:19

retired  40:2

returned
 18:17

review
 11:17,21,

24 68:17,
 20 69:1
 111:4
 156:7,13
 168:21
 183:23,24

reviewed
 109:10

reviewing
 12:12
 111:7

reviews  69:5

right-hand
 128:19

righted
 141:19

rights  60:18
 63:2 66:7
 73:3 78:15
 142:16,23

ring  81:21
 95:5,8
 96:16,20
 97:1 137:3
 138:1

ringing
 94:24

ringless
 96:15

risk  151:13
 155:16

robo  71:13,
 16 74:10
 75:16

100:14
 101:4
 120:2
 170:17
 185:2,3

robocalls.cash
 71:19
 184:19
 185:12,14,
 17,22

robocalls.
 cash.  118:14
 184:16

robocallsforca
 sh  118:8,14

robotic
 93:22
 100:8,19
 105:5,9

role  26:13
 147:20

room  6:18
 12:9

rule  10:23

rules  4:11
 8:18

run  27:15
 183:1

running
 183:3

Ryan  4:18
 6:14

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

RASHAD WALSTON vs NATIONAL RETAIL SOLUTIONS, INC.
Rahad W. Walston on 04/26/2024          Index: S-H-O-R-C-O..settle

---

**S**

---

S-H-O-R-C-O
  52:4

sales  27:1,
  2,5 44:10,
  22 45:19,
  23 48:21

Samantha
  12:23

sample  64:3,
  10,13,15
  68:2

save  38:17

saving  114:1

scammers
  97:12

school  14:9,
  10,20 15:3
  16:9,10
  19:22,23
  20:7,24
  21:6,11
  22:12
  37:9,14,
  15,16,17,
  23 39:7,9,
  16,23,24
  54:5

schools
  21:23
  22:1,9,15
  37:5,13,19
  39:5 51:16
  79:3

SCI  154:12
  186:23

Scott  40:15

scraped
  102:20

screen  4:6

screenshot
  126:18

screenshots
  43:13
  128:3,5
  132:12
  133:2

scroll
  127:13
  128:2

search  27:23
  28:1 29:3
  49:24

search-type
  27:17

secret
  139:17

Secretary
  52:21

section
  97:23
  127:14
  154:18

seeking
  64:23

selected
  147:23

selection
  39:4

self-employed
  22:16,17,
  23 26:2,6
  41:19

self-
employment
  25:23

selling
  50:19 51:3

send  51:7
  64:22 66:3
  73:17 75:6
  99:3
  117:18,23
  119:11
  131:18
  170:23

sending
  72:17
  83:10
  86:16
  118:5
  129:15
  140:5
  170:17

sense  9:7,24
  142:1

sentence
  64:3 107:3
  108:11
  154:18
  155:2
  196:3

SEO  28:1
  49:24

separate
  45:21
  131:6

separately
  163:4

September
  55:23 56:4

series  9:3
  182:15,21
  189:21

served  8:14
  181:24

service  16:8
  154:11
  186:3,8,
  10,14,17

services
  47:19
  53:15 69:2
  80:2 99:5
  158:18,22

set  89:7
  131:6
  132:4,5

setting
  90:17

settings
  183:16

settle
  120:17
  121:8
  149:12,14

---

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

**RASHAD WALSTON vs NATIONAL RETAIL SOLUTIONS, INC.**
Rahad W. Walston on 04/26/2024          Index: settlement..sort

| | | | |
|---|---|---|---|
| 160:23 | shake 6:22 | shown 153:13 | site 103:5, |
| 161:9 | 9:13 | shows 29:4 | 9,13,23 |
| 162:5,19 | 178:18 | 127:16 | situation |
| 166:24 | Shang 38:7 | 138:11,13, | 51:20 58:4 |
| settlement | share 44:10, | 14 165:4 | 65:8 74:23 |
| 78:22 | 22 | Shriner | 79:8 80:21 |
| 79:17,23 | sheet 92:11 | 139:24 | 172:3 |
| 80:4,6 | shift 85:9 | sick 119:24 | situations |
| 90:23 91:4 | Shiners | 129:21 | 61:20 |
| 143:4 | 50:24 | sign 49:12 | slight |
| 144:21 | shoes 157:24 | 160:3,4,9 | 121:16 |
| 147:2 | shook 7:11 | 184:23 | small 124:21 |
| 149:3 | Shorco 52:3 | signed 74:14 | 125:1,20 |
| 150:6 | Shoreway | 99:2 | 150:21 |
| 152:19,20 | 31:1 | 184:21 | social 49:23 |
| 153:14 | 46:11,13 | significant | 135:22,24 |
| 154:19 | 47:9 | 84:12 | soft 47:2 |
| 156:24 | short 21:14 | signing | software |
| 160:18,19 | 51:15 72:3 | 26:24 | 67:13,17, |
| 161:17,20 | Shortly | similar | 18,20 |
| 167:7,12, | 197:2 | 46:15 | 68:1,5,6 |
| 20 168:1 | shoulder | 49:15 | 172:9 |
| 179:15 | 36:6,11 | 123:7 | sold 63:16 |
| 188:2,13, | show 139:2 | 147:18 | 66:14 |
| 16,17 | 141:8 | 183:7 | solicitation |
| 189:4 | 152:12 | simple 31:21 | 171:19 |
| settlements | 153:14 | simply 76:19 | Solution |
| 89:2 | showed | single 193:8 | 4:14 |
| settles | 173:17,20 | 194:9 | 171:19 |
| 168:6 | showing | Siolidis | solutions |
| settling | 153:24 | 4:24 | 87:17 |
| 163:11 | 166:15 | sit 36:22 | sort 74:24 |
| setups 39:5 | | 62:7 | 79:21 85:3 |
| seventh | | | 127:22 |
| 128:22 | | | |

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

**RASHAD WALSTON vs NATIONAL RETAIL SOLUTIONS, INC.**
Rahad W. Walston on 04/26/2024          Index: sound..Strike

144:21
159:23
167:6,12

sound  8:21
 10:10,16
 82:19 83:1
 84:4 90:10

sounds  6:12
 83:2
 194:18

South  25:7

Southern
 13:17 15:9
 18:4

space  183:1,
 4,7,17

spans  105:24

speak  12:24
 96:1
 166:14
 170:10,22
 171:1,7,
 12,23
 172:5
 187:15

speaking
 153:6
 161:15
 165:13

Spearman
 38:2

special
 46:22,23

specific

37:8 71:15
108:17
116:22
118:18
145:19
148:22

specifically
 86:10,13
 88:2 107:8
 118:5
 124:20
 142:9
 153:19
 164:21

speculating
 103:7

speculation
 143:17,18

spell  38:18
 40:16

spelling
 38:15

spells  38:14

spend  165:6

spent  56:10

spoke  12:5,
 7,8 173:14

spoken  179:1
 187:13,19,
 21

square  194:7
 195:2

standard
 89:6 91:19

92:6
127:23,24
145:1

Star  50:24

start  13:22
 110:20
 113:24

started
 42:15
 45:14 47:5
 56:13
 101:2
 111:3,9
 177:23
 178:20
 193:19
 195:7

starting
 111:11

state  5:13
 13:10 31:8
 32:19,22,
 23 52:21

statement
 7:6 44:24
 67:1
 108:19

stating
 33:23

Statute  93:9

statutory
 120:9

stay  165:21

stem  100:17

stemming
 78:12

stems  85:15
 100:2

stenographical
ly  9:12
 11:1

stepping
 87:1

stint  24:5

stints  24:6

stop  47:22
 66:6
 98:17,22
 143:10,11
 144:17
 153:6

stopped  20:5

storage
 170:4
 183:9,18

stories
 74:20

story  33:14
 34:24

straight
 97:2 150:4

straightforwar
dly  9:5

Strictly
 134:9

Strike
 162:14

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

**RASHAD WALSTON vs NATIONAL RETAIL SOLUTIONS, INC.**
Rahad W. Walston on 04/26/2024                    Index: Strocky..talk

**Strocky**
187:20,22

**students**
21:8 77:20

**studies**
20:22
43:20
77:15

**stuff** 51:19
55:1 59:19
68:21,22,
23 79:7
86:15
97:14
140:11
170:6
183:12
185:9

**subcontractors**
41:21

**subject**
189:10

**sublimation**
46:6,10,
13,20

**Submit**
104:15

**submitted**
107:23
109:11

**substantially**
150:8

**substantive**
82:13

**substitute**
19:18
20:2,5
23:1,7,18
24:8 38:8
84:18

**suburb**
32:18,23

**suburbs** 25:7

**successful**
144:22
146:23
147:1,3
150:6

**sue** 81:14
83:11,13

**sued** 80:16
83:5

**suffered**
120:22

**sufficient**
5:19
123:15
153:8

**suggestions**
184:6

**suggests**
137:19,22

**suing** 80:23
83:8,10
93:9

**suits** 78:12

**sum** 87:19

**summarize**
124:10

**summers**
16:12

**supervisor**
37:5,7,19
39:12
40:5,21,23
41:9

**supervisors**
40:10,13,
24 42:4,5

**supply**
106:19,21
107:2,7
108:5,10

**Supporting**
154:10

**supports**
132:3

**supposed**
99:3 152:3

**surfaces**
46:22,24

**surprise**
142:10,14
157:20
158:3
159:9

**surprised**
158:15
159:18

**surprises**
158:10

**suspect**
89:16

**swear** 5:1

**sweep** 134:20

**switch** 173:3

**sworn** 5:9

**system** 58:20
59:21
151:14,22,
24 155:22

—————————

**T**

**tab** 59:6,15

**tactics** 27:3
49:20
62:15 66:4
80:1 85:17

**Tait** 157:8
159:8

**takes** 155:16

**taking** 9:12
15:20
38:16
151:12
155:15
165:5
177:11

**talk** 12:16
22:21
25:8,22
39:14,16
40:1 49:22
55:14 75:9
80:14

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

RASHAD WALSTON vs NATIONAL RETAIL SOLUTIONS, INC.
Rahad W. Walston on 04/26/2024          Index: talked..text

192:8

**talked**  6:18
25:9 42:3
48:3 53:2
55:11
56:14
78:19
98:21
133:10
173:13
188:10
192:14
196:24

**talking**
12:11 64:9
81:2,4
90:5 96:7
166:1
194:23

**talks**  61:12

**tax**  30:23
31:1 47:7,
9,12,19

**taxes**  47:13

**taxrpo.com.**
102:21

**TCPA**  76:3
90:17 93:6
146:6
182:4

**teacher**
19:18,21
20:2,6,12
23:1,18
24:9 38:8

39:21,23

**teaching**
19:19 23:7
84:18

**team**  102:9
106:22
107:9,11
109:4,13
113:12
135:10
147:7
151:12
162:21,22
168:4
174:17
175:23
176:3
196:14

**technically**
102:17

**techniques**
80:1

**Technologies**
52:3 55:14
56:1

**technology**
20:10
22:10,12
51:14
79:4,6

**tee**  37:3

**telemarketing**
50:3

**telephone**
28:8,11

93:17
102:20
103:5
106:22
118:19
131:14,17,
19 133:21,
23 134:23
139:3,10
144:11
189:24
190:8,12

**telephonic**
28:4

**telling**
163:6,9

**tells**  73:1

**temp**  17:15,
16,24

**template**
44:15,16
68:21,22

**temporary**
16:5 17:9,
13

**ten**  23:9,14
134:4,6

**tenure**  8:3
16:24

**termed**  25:12

**terminated**
25:19,21

**terminology**
186:4

**terms**  5:18
49:19
94:10
162:11
188:16
191:6

**testified**
5:10 95:24
180:20
181:6
186:1

**testify**
91:10
166:18
181:22
182:7,11,
14,24
186:7

**testimonies**
66:19

**testimony**
7:17 95:3
104:20
112:3
153:23
177:22
181:3,9
182:18
183:19,21
185:13
188:24
192:22,23
193:12
194:8
195:3

**text**  196:3

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

**RASHAD WALSTON vs NATIONAL RETAIL SOLUTIONS, INC.**
Rahad W. Walston on 04/26/2024          Index: texted..ton

| | | | |
|---|---|---|---|
| **texted** | 54:6 56:2 | 31:17 | 187:2,3 |
| 133:6,9 | 57:18 | 34:23 | |
| | | 37:11,12 | **timeframe** |
| **texts** 60:10 | **thought** 34:9 | 38:2,17 | 37:10 |
| **thereof** | 83:12 | 39:14 | **times** 11:5 |
| 186:17 | 109:4 | 40:13,20 | 23:20 24:2 |
| | 117:24 | 41:5,8,14, | 73:16 77:9 |
| **thereto** | 121:14 | 18 50:7 | 96:6,11 |
| 153:4 | 132:23 | 51:15 | 111:11 |
| **thing** 10:4 | 147:9,10 | 52:8,10 | 115:15 |
| 31:6 | 164:1 | 62:19 | 119:18,22 |
| 126:13 | 194:2 | 63:13 72:4 | 121:5 |
| 143:10 | 196:11 | 77:10 | 138:19 |
| 163:16 | **thousands** | 84:13,15, | 144:9,10 |
| 169:14 | 80:8 | 21 85:21 | **tired** 76:20, |
| **things** 34:11 | 126:11 | 86:17 | 24 93:13, |
| 41:24 | 142:6 | 88:11 90:9 | 15 114:14, |
| 46:14 47:2 | 143:12,15, | 94:19 99:7 | 15 116:16 |
| 50:24 | 20,21 | 102:10 | 129:22 |
| 51:2,5,7, | **threat** 83:12 | 106:4 | 142:19 |
| 24 60:5,11 | **threatened** | 107:21 | **titled** 58:11 |
| 61:15 | 79:21 | 111:2 | **today** 4:24 |
| 62:15 63:5 | | 129:22 | 6:9 12:1, |
| 64:20 | **threatening** | 130:1,21 | 4,9,14,20 |
| 66:20 68:4 | 83:11 | 131:1 | 56:14 |
| 73:2 78:11 | **thrown** 124:4 | 134:8 | 69:10 |
| 86:8,19 | **Tiktok** 136:3 | 136:19 | 70:10,15 |
| 88:7,14 | **time** 4:4 | 137:10 | 124:22 |
| 112:14 | 6:20 7:18 | 140:22 | 173:21 |
| 114:8 | 8:4 9:17, | 155:16 | 193:14,17 |
| 129:15 | 18 10:3,6, | 159:13,15 | **today's** |
| 140:8 | 7 12:7,8 | 161:14 | 11:14,18 |
| 142:19 | 18:2,20 | 165:6 | **told** 40:24 |
| 146:11 | 20:13,19 | 166:13 | 159:15 |
| 148:15,23 | 21:17 | 170:1 | 193:7,13 |
| 155:17 | 23:6,18 | 174:20 | **ton** 61:8 |
| 169:23 | 26:14 29:1 | 179:12 | |
| **thinking** | | 184:21 | |

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

**RASHAD WALSTON vs NATIONAL RETAIL SOLUTIONS, INC.**
Rahad W. Walston on 04/26/2024        Index: tons..Understood

| | | | |
|---|---|---|---|
| **tons** 66:10 | **transit** | 55:7 79:19 | 32:21 |
| 67:2 | 18:21 19:7 | 100:8 | 33:2,10,14 |
| **top** 41:10 | **traveled** | 105:4 | 36:1 48:20 |
| 69:9 92:12 | 14:7 | 124:21 | 61:23 |
| 96:8 | **trial** 148:4 | 156:10 | 65:12 |
| 128:10 | 188:15 | 158:21,24 | 72:14 |
| 154:17 | **trip** 25:3 | 159:5 | 87:4,6 |
| 155:2 | **True** 71:4 | 160:18 | 99:22 |
| 183:15 | **truthfully** | 161:16,20 | 122:6,13 |
| 187:6,8 | 9:6 | 172:8 | 123:10 |
| **topics** | **turn** 43:18 | 187:7 | 125:10 |
| 184:15 | 45:3 95:13 | **types** 153:24 | 129:1 |
| **total** 82:24 | 101:16 | **typical** | 132:15,21 |
| 91:17 | 104:1 | 149:2 | 133:19 |
| 111:13 | 105:23 | **typing** 11:10 | 135:4,17 |
| 120:10 | 106:12 | | 144:14,19 |
| 155:5 | 120:5 | ———— | 145:13 |
| **totally** | 126:14 | **U** | 147:12,13 |
| 53:13 | 131:4 | | 149:2 |
| 160:11 | 148:1 | **ultimately** | 150:11,12, |
| **touched** | 154:15 | 188:12 | 13,18,19 |
| 188:21 | 155:1 | **un-follow** | 151:2,3 |
| **tough** 39:24 | **tutor** 21:4,5 | 140:13,15 | 152:7 |
| **trade** | **twisted** 79:9 | **unblocked** | 158:9 |
| 138:11,12, | **Twitter** | 129:8 | 164:8,9 |
| 14 139:2 | 136:3 | **undergrad** | 166:10 |
| **traditional** | **type** 16:3 | 40:4 | 170:16 |
| 137:3 | 19:19 | **undergraduate** | **understanding** |
| **traffic** | 26:20 | 13:16,23 | 91:24 92:3 |
| 29:21 | 41:23 | 15:4 20:21 | 96:13 |
| **transactions** | 46:19 | 77:15 | 149:10,17 |
| 55:2,7 | 49:18 | **understand** | 195:17,19 |
| **transcriptions** | 51:19 | 9:14 | **Understood** |
| 95:15 | 53:17,23 | 10:12,14, | 78:16 82:3 |
| | | 19 31:5,7, | 93:8 99:10 |
| | | 13,20 | 120:4 |
| | | | 171:21 |

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

**RASHAD WALSTON vs NATIONAL RETAIL SOLUTIONS, INC.**
Rahad W. Walston on 04/26/2024          Index: unhappy..Walker

**unhappy**
  34:17

**University**
  13:10,17
  20:22 21:7
  40:5,7

**unknowing**
  116:19

**unlimited**
  102:11

**unlock**  104:7

**unlocked**
  129:5

**unsure**  81:16
  113:15

**unwanted**
  72:8,9,10
  74:18 76:7
  142:12
  146:10
  169:10

**unwilling**
  135:13

**up-front**
  151:13

**update**  63:14

**updates**
  63:9,23

**upper**  126:22
  128:19,23

**USPS**  24:14
  41:7

————————————
           **V**
————————————

**variety**  68:3
  86:7,19

**verify**  90:14

**versed**
  156:11

**versus**  4:14
  83:10
  154:12
  157:15,18
  186:23

**vice**  118:3

**video**  4:5,9,
  17 34:4

**videos**  42:22

**view**  123:14
  156:2
  166:6
  180:2,7

**violate**  73:3
  89:8

**violated**
  89:8

**violating**
  66:7

**violation**
  121:2
  146:13

**violations**
  65:22

**virtual**
  30:15,16

31:3 35:15
  134:13,19

**visit**  138:11

**visual**  62:14
  183:9

**voice**  94:13
  106:6

**voicemail**
  86:18 88:6
  93:18,21,
  22 94:18
  95:8 96:18
  97:2 98:9,
  11,12,20
  99:16
  100:9,14,
  24 105:6,
  10 106:6
  111:16,22
  112:18
  115:4,7
  116:3,15,
  17 127:18
  128:22
  129:3
  130:22
  132:12
  146:11
  169:4,6,19
  170:2,3,5,
  9,13,17,18
  171:3,4
  182:12
  183:1,4,8,
  14 185:2,3
  193:8
  195:6,9

**voicemails**
  86:7 94:2
  95:16
  96:15 98:7
  100:18,21
  112:7,24
  113:10
  114:1,2,5,
  7,13,20
  115:1
  116:7,12
  130:5,23
  136:21
  137:14,21
  169:10
  189:15,18
  195:13,20

**voices**
  109:21
  195:21

————————————
           **W**
————————————

**wait**  94:7
  119:11,21

**waited**
  119:15,20

**Walid**  5:15

**walk**  16:6
  45:11
  52:24
  72:15

**walked**  6:14
  7:10

**Walker**
  157:18

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

**RASHAD WALSTON vs NATIONAL RETAIL SOLUTIONS, INC.**
Rahad W. Walston on 04/26/2024          Index: Walston..website

| | | | |
|---|---|---|---|
| **Walston** | **Watstein** | 103:6 | 156:1,17 |
| 4:10,14 | 4:18 5:12, | 105:11,18, | 157:2,5 |
| 5:7,15 | 22 6:5,7, | 22 106:11 | 158:16 |
| 6:10 12:23 | 14 7:5,20 | 107:1 | 161:5,23 |
| 26:1 35:14 | 8:1 14:4,8 | 108:18 | 162:6,14, |
| 85:11 90:4 | 23:15 | 109:5 | 17 165:10 |
| 92:19 | 27:10,20 | 110:2,12 | 166:17,22 |
| 117:7 | 28:9 31:12 | 112:1,22 | 168:15,19 |
| 141:8 | 32:5 34:4, | 113:8,23 | 170:7,20 |
| 150:7 | 16 35:4,12 | 116:1 | 171:11 |
| 153:12 | 38:14,20, | 117:2,6 | 172:14 |
| 157:9 | 23 39:10 | 118:15 | 173:1,9 |
| 165:15,23 | 43:1,5 | 119:2 | 174:5,18 |
| 168:22 | 49:5 50:13 | 120:3 | 175:5 |
| 169:1 | 52:11,15 | 122:2,12 | 176:1,6,23 |
| 173:2 | 55:20,21 | 123:2,9,20 | 177:7,13 |
| **wanted** 5:17 | 56:16 57:6 | 127:9,20 | 178:9 |
| 35:23 54:1 | 58:5,9 | 129:7 | 180:12,24 |
| 59:9,11 | 61:22 | 130:15 | 181:4 |
| 72:6 | 65:6,19 | 133:16 | 182:17 |
| 74:14,19 | 67:10 | 135:11 | 192:7,13 |
| 98:17 | 70:16 | 137:7,18 | 193:6,22 |
| 123:4 | 71:2,7 | 138:7 | 194:14,18, |
| 160:22 | 72:20 | 139:7,18 | 22 195:11 |
| 161:8 | 73:14 | 140:21 | 196:1,19 |
| 185:8 | 82:11,15, | 141:7,16 | 197:8,19 |
| 197:16 | 18 83:23 | 143:1 | |
| **wanting** | 84:3 87:7 | 144:6 | **waveform** |
| 135:20 | 88:9,22 | 145:21 | 101:18 |
| **warehouse** | 89:9,13,18 | 146:14,21 | 102:8 |
| 23:21,22 | 90:3 91:14 | 147:8 | **ways** 61:13, |
| **warning** | 92:14,18 | 149:9 | 16,18 |
| 183:7 | 93:7 94:9, | 150:2,16 | 118:11 |
| | 23 95:10 | 151:1,9,17 | **website** |
| **waste** 99:7 | 96:9 97:4 | 152:1,6, | 43:11,12, |
| **wasted** 56:10 | 98:1 99:9, | 11,13,17 | 13,16 |
| | 23 101:15 | 153:5,9,11 | 44:16 51:4 |
| | 102:6 | 154:8,13 | 58:13,17 |

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

**RASHAD WALSTON vs NATIONAL RETAIL SOLUTIONS, INC.**
Rahad W. Walston on 04/26/2024          Index: websites..Young

59:7,15,22
60:8 63:21
67:2 69:1
71:9,21
74:11
117:21
184:15

**websites**
42:23

**weekly**
169:14

**weeks** 100:13

**welcomed**
172:2

**west** 4:7
25:7

**Whitney**
14:10

**wife** 12:21
70:13,17

**wifi** 173:3,
6

**willfully**
121:4

**Wireless**
115:17

**wise** 20:4

**witness's**
34:5

**wondering**
20:15

**Word** 61:8

**words** 9:23
27:14,15
44:24 49:6
60:1 68:24
108:17
167:24

**work** 16:3,
5,6,11,22
17:9,13,16
18:9 19:16
20:4 21:24
23:24
24:3,20,22
41:22,23
44:4,13
45:7
46:12,15
49:9 50:17
53:17,23
56:3 67:24
79:3
84:14,17
152:4
153:3

**worked** 14:7
16:2 17:15
18:8 19:6,
18 21:4,
12,23
23:1,19
24:14
40:4,19
41:20
63:21
178:23

**working**
16:8,16,19

21:14
23:22 24:9
48:11,13
66:22

**workplace**
78:21

**works** 38:22
151:22
152:3

**worried**
113:22

**worth** 48:1

**wracked**
159:14

**wrap** 141:23

**written**
159:23

**wrong** 79:9
100:1
141:20
144:11,13

**wrongful**
86:1,12

———————————

**Y**

———————————

**year** 13:19
28:19
67:19
108:4
148:10,11

**yearly** 47:19

**years** 15:4
17:19 22:2

29:11
35:15 39:6
46:7 47:6
54:4
116:20
134:5,6
138:17
159:12
169:19

**yesterday**
12:10

**York** 19:10

**Young** 14:10

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6
Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

# EXHIBIT B

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

1

```
1              IN THE UNITED STATES DISTRICT COURT
                  NORTHERN DISTRICT OF ILLINOIS
2                       EASTERN DIVISION

3
      RASHAD WALSTON, on behalf    )    Docket No. 24 CV 83
4     of himself and all others    )
      similarly situated,          )
5                                  )
                      Plaintiff,   )
6                                  )    Chicago, Illinois
               -vs-                )    June 11, 2024
7                                  )    9:45 o'clock a.m.
      NATIONAL RETAIL SOLUTIONS,   )
8     INC., d/b/a NRS PAY,         )
                                   )
9                     Defendant.   )


10              TRANSCRIPT OF VIDEO PROCEEDINGS - Motion
11             BEFORE THE HONORABLE SUNIL R. HARJANI

12

13    APPEARANCES:

14    For the Plaintiff:      GLAPION LAW FIRM LLC
                              BY:  MR. JEREMY M. GLAPION
15                            1704 Maxwell Drive
                              Wall, New Jersey 07719
16
      For the Defendant:      WATSTEIN TEREPKA LLP
17                            BY:  MR. RYAN D. WATSTEIN
                                   MR. PATRICK J. FITZGERALD
18                            1055 Howell Mill Road NW
                              8th Floor
19                            Atlanta, Georgia 30318

20

21

22              Laura LaCien, CSR, RMR, F/CRR
                     Official Court Reporter
23                  219 South Dearborn Street
                          Suite 1728
24                  Chicago, Illinois 60604
                        312.408.5032
25
```

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

2

1     (Proceedings heard in open court:)

2          COURTROOM DEPUTY:  24 C 83, Walston v. National

3     Retail.  Would the parties please state your name for the

4     record starting with plaintiff's counsel?

5          MR. GLAPION:  Good morning, everyone.  Good

6     morning, your Honor.  Jeremy Glapion on behalf of plaintiff

7     Walston.

8          MR. WATSTEIN:  Good morning, your Honor.  Ryan

9     Watstein and Patrick Fitzgerald on behalf of the defendant.

10         THE COURT:  Okay.  Good morning.  This is Judge

11    Harjani here.

12         So I am holding this hearing on the motion to

13    enforce the settlement and I'm a little puzzled by this.  You

14    know, this allegedly happened -- this settlement -- alleged

15    settlement happened in January.  It is now in June.  You've

16    gone through a lot of discovery since then.  Out of the blue,

17    you're telling me that there's a settlement with the

18    plaintiff.  I look at the letter that purportedly accepted a

19    settlement and it says "the settlement payment is contingent

20    upon plaintiffs executing a written agreement containing full

21    releases of his claims, confidentiality provisions, and other

22    customer terms."  So, I mean, by its own terms, your

23    acceptance is contingent.  Plaintiff says in response to this

24    "there's no settlement, we don't accept."  That generally

25    ended matter.

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

3

1          You know, you had a contingent acceptance and the

2    contingency was not accepted by or agreed to by the plaintiff

3    so this seems pretty straightforward to me.  I'm not sure

4    what we're doing here arguing about this alleged settlement

5    and what I don't understand is why don't you actually try to

6    settle this case versus trying to jam something down that

7    happened late last year and litigate the matter before me.

8          So with that, I kind of want to understand what's

9    really going on and, you know, are you really interested and

10   can you really get this settled?  Can I send you to the

11   Magistrate Judge and actually try to get a settlement that

12   both sides agree with where there's a meeting of minds and

13   all the terms listed?  I'm not going to rule today on this

14   motion.  I'm going to write something up but I can pretty

15   much tell where I'm going with this.

16         So let me hear from defendant first.  You brought

17   the motion.

18         MR. WATSTEIN:  Sure.  Thank you, your Honor.  And

19   for some reason, I can't see anyone but I take it you can see

20   me.  Yes?

21         THE COURT:  Yes.

22         MR. WATSTEIN:  Okay.  And I can hear you fine.

23         So let me just -- let me just address the exact

24   points that you raised about the acceptance and the letter.

25   So there was, as your Honor knows -- and I'm not sure if

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

4

1  you've had a chance to read our reply brief which we filed
2  last night.
3          THE COURT:  I read everything.
4          MR. WATSTEIN:  Okay.
5          THE COURT:  I read it all.
6          MR. WATSTEIN:  Okay.  So there was this
7  conversation in November between the CEO of our client
8  Mr. Katz and the plaintiff before his counsel made an
9  appearance.  Plaintiff agrees -- plaintiff's counsel agrees
10  in his briefing that there was an offer extended by the
11  plaintiff during that call of several thousand dollars.  We
12  said five, but it's three, four, $5,000, at least; it doesn't
13  have to be the full 9,800.  It's also undisputed that
14  confidentiality was a term and that in exchange, plaintiff's
15  TCPA claims would be released.  So those are the material
16  terms:  A payment, confidentiality, and a release.
17          The letter that was sent by NRS accepting the
18  settlement mirrors those exact terms.  And, yes, it says
19  there will be a written agreement.  But respectfully, your
20  Honor, the written agreement is only memorializing those
21  terms because, again, this discussion was oral so there has
22  to be something -- whether it's an email or a long-form
23  agreement or whatever it is -- where the plaintiff agrees
24  that, yes, those are the terms that we agreed to.  And if the
25  plaintiff had said I dispute what occurred during that

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

5

| | |
|---|---|
| 1 | November call, then we would have -- we would have said, |
| 2 | okay, well, we're moving to enforce those terms: |
| 3 | Confidentiality, the payment, and a release. |
| 4 | THE COURT:  Can I ask you why -- |
| 5 | MR. WATSTEIN:  Sure. |
| 6 | THE COURT:  -- this is coming up now six months |
| 7 | later? |
| 8 | MR. WATSTEIN:  Absolutely.  Absolutely, your Honor. |
| 9 | That is a fair question and the answer is simple. |
| 10 | As -- we knew, my firm knew as soon as we got |
| 11 | involved and we started speaking to Mr. Glapion, he was -- he |
| 12 | wants a class settlement that's going to net a substantial |
| 13 | amount of attorneys' fees.  He was never going to concede |
| 14 | that a settlement had occurred even though our client -- even |
| 15 | though plaintiff is the one who approached our client about |
| 16 | settlement and our client agreed to pay. |
| 17 | So what did we do?  We immediately, as soon as the |
| 18 | discovery period opened, we noticed the plaintiff's |
| 19 | deposition because we needed that in order to file a motion |
| 20 | to enforce the settlement agreement.  As soon as we got the |
| 21 | transcript, we drafted it.  As soon as it was done, two weeks |
| 22 | later we filed the motion.  That's what any advocate would |
| 23 | have done.  We couldn't have done it any faster.  And we |
| 24 | raised in our answer that we -- that we believed there was a |
| 25 | settlement. |

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

6

1          So as we noted in the reply, it would have been

2     terrible advocacy on my behalf to shout from the rooftops,

3     hey, let me preview for you before the plaintiff's

4     deposition --

5          THE COURT:  Okay.  Thank you.  I don't have -- I

6     don't have, you know, very much time to, you know, hear this

7     out.  I have everything you wanted in the papers.  I just

8     have a few questions.

9          MR. WATSTEIN:  Sure.

10          THE COURT:  Okay.  That's kind of how I do my

11     arguments.

12          Plaintiff, you know, the issue is going to be

13     whether or not this letter encompasses the material terms of

14     the settlement and whether your client made an offer with

15     those material terms I assume orally based on what I'm

16     hearing.  Can you talk to me about that for a second?

17          MR. GLAPION:  Yes, your Honor; and thank you.  I

18     think your Honor hit -- sort of hit the nail on the head at

19     the beginning.  This was not a letter saying, you know, we

20     accept what was talked about on the call.  It was a letter

21     saying we're going to pay you some amount more than what the

22     apparent demand was -- which I've been doing this awhile now,

23     it would be the first time I've ever seen that -- and in

24     exchange we need you to agree to these terms.  It was

25     contingent upon it by their own language.  It was expressly

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

7

1    contingent upon these additional terms.  It was not we'll pay

2    you this subject to what we talked about on the call.  It was

3    not referring to the November 13th conversation.  There was

4    no meeting of the minds on those terms, nor did it mirror.

5           Even if we were to say -- you know, because I don't

6    think we -- I don't want to get into an evidentiary hearing

7    because I don't think it's needed because even on what was

8    submitted, there is no settlement here.  So even if we say

9    that, you know, plaintiff said, yeah, sure, if we agree to

10   something, I'll keep it confidential, the reality is there

11   were still additional terms that they insisted on.  They made

12   it contingent upon a written agreement; not saying we will

13   memorialize this in a written agreement.  They made it

14   contingent upon confidentiality provisions which the scope of

15   which varies wildly in these cases.  They made it contingent

16   upon other terms.  They put the word "customary" in there but

17   you ask ten attorneys what customary terms are, you're going

18   to get ten different answers.  So there was no meeting of the

19   minds on this.

20          And in Illinois in particular, it's incredibly

21   strict in terms of what the mirror image rule means to the

22   point of where, if you put the wrong date on a settlement and

23   unilaterally correct it, it's been found to be

24   acknowledged --

25          THE COURT:  Can I ask you, with respect to this

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

8

1    particular situation -- I understand it was, you know, some

2    things happened in October and I appreciate that that had an

3    expiration date associated with it.  But with respect to

4    this -- this particular situation that resulted in the

5    January 3rd letter, are those just oral conversations?

6            MR. GLAPION:  My belief is that the January 3rd

7    letter intended to respond to the October 19th demand and

8    this sort of -- that -- this reference to the November 13th

9    conversation is a fiction based on the fact that that October

10   19th demand was quite clearly expired or rejected by that

11   point.  So I think there was a -- we're sort of retconning

12   the reality of the situation.

13           I mean, the letter clearly references we have

14   authority to accept your $9,800 settlement demand contingent

15   on these terms.  The only 9,800 settlement demand was the

16   October --

17           THE COURT REPORTER:  Oh, I'm sorry.  Excuse me.

18   Judge -- I'm sorry, Judge.  This is the court reporter.

19           Mr. Glapion, can you just back up a little bit and

20   slow down?

21           MR. GLAPION:  I'm sorry.  I apologize.

22           THE COURT REPORTER:  I have "the letter clearly

23   references we have authority to accept."  Go ahead.  Thank

24   you.

25           MR. GLAPION:  I apologize.  I'll slow down.  The

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

9

1    letter clearly references a 9,800 demand.  The only time a

2    $9,800 settlement demand was made was that October 19th

3    letter.  So to say we're responding to -- to now say we're

4    responding to a $5,000 oral demand and referred to that as

5    your $9,800 demand doesn't track.  So I think -- well,

6    obviously the representation now is that it was October 13th.

7               THE COURT:  Okay.  I understand.  I understand your

8    argument.

9               Okay.  I have this briefed.  If I need to have an

10   evidentiary hearing, I might, which will require calling in

11   your various people to testify in court so I can make some

12   credibility determinations if I need to.  I will review the

13   papers more carefully particularly since the reply brief was

14   just filed.  I did read it but I want to spend a little more

15   time on it.

16              My bigger question is before we just fight over

17   this, we're fighting over whether or not there's a

18   settlement.  How about we actually try to get a settlement

19   done?  So, plaintiff, I guess my question is are you

20   interested in a settlement on an individual basis and not a

21   class basis?

22              MR. GLAPION:  Not on an individual basis at this

23   point, your Honor.

24              THE COURT:  Okay.  And, defendant, are you

25   interested in a settlement on a class basis?

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

1     MR. WATSTEIN:  No, your Honor, but we would be

2  interested in a settlement on an individual basis obviously

3  which is what the plaintiff proposed to us at the outset.

4     THE COURT:  Yeah.  I mean, plaintiff's counsel, it

5  wasn't that long ago that your client was interested in an

6  individual basis settlement, I mean, a mere maybe six, seven

7  months ago.  Why not try to actually start that up?  I don't

8  know what the number is going to be and, you know, you'd work

9  out what that number is.  It doesn't have to necessarily be

10  the number here but is your client at all interested in that?

11     MR. GLAPION:  I -- my understanding is no and I

12  think part of that is the -- when my client had initiated the

13  individual conversations, it was a pro se situation.  And

14  when we got into retaining counsel and looking into, you

15  know, do you even have any evidence of consent, do you have

16  any evidence of that you didn't make these calls, anything

17  along those lines, it started to become obvious that this was

18  a fairly egregious and widespread circumstance.

19     And then I think -- although, you know, it's not

20  attached or anything; but in the deposition transcript, they

21  ask, say, ten ways from Sunday, you know, why do you want to

22  do this as a class and my client was pretty firm that, you

23  know, this seems to have happened to a lot of people and I

24  want to get justice for those people.

25     Now I think the client's head is in that

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

11

1    representing others in this situation.  Obviously I am always

2    happy to confirm, clarify, double, triple check with the

3    client but we've had these conversations repeatedly and

4    he's -- he's in that mode of not interested at the moment.

5             THE COURT:  Okay.  So I'll tell you what, why don't

6    you check with your client and say, you know, the Judge has

7    asked about settlement, you were interested a mere, you know,

8    six, seven months ago, why not try to do that now.  You know,

9    your case still has quite a ways to go.  I can help you get a

10   mediator Magistrate Judge to negotiate that.

11            If your client is willing, send me an email by

12   Friday to my Courtroom Deputy and say, you know, we are

13   interested in a settlement on an individual basis.  If you're

14   not, send me the same email saying no.  But at least confirm

15   for me that you have conveyed my message.

16            Anytime people are fighting over whether there's a

17   settlement in place or not based on settlement discussions

18   ahead of time, my reaction is why don't you just try to

19   settle it for real, if you will, rather than fighting over

20   what -- who said what to who.  So just think about that and

21   let me know by Friday.  In the meantime, I'll review your

22   papers more carefully and issue a written ruling.

23            Okay.  I got to take the next case but I appreciate

24   your time.

25            MR. GLAPION:  Thank you, your Honor.

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

12

1          MR. WATSTEIN:  Thank you, your Honor.

2          (Proceedings concluded at 10:16 a.m.)

3

4                    C E R T I F I C A T E

5          I hereby certify that the foregoing is a complete, true,

6     and accurate transcript of the proceedings had in the

7     above-entitled matter before the Honorable Sunil R. Harjani

8     at Chicago, Illinois, on June 11, 2024.

9

10    /s/*Laura LaCien*                    August 14, 2024
      Official Court Reporter              DATE

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

# EXHIBIT A

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

**From:** Jeremy Glapion <jmg@glapionlaw.com>
**Date:** Wednesday, June 12, 2024 at 12:08 PM
**To:** Ryan Watstein <Ryan@wtlaw.com>
**Subject:** Re: Walston v. NRS

[Warning – external]

Ryan:

Thank you for your email. Please see my responses.

> Thus, and in line with the Court's stated desire for the parties to resolve this case on an individual basis, please convey that NRS offers $35,000 to confidentially settle his claims, with $25k to him and $10k to counsel —unless Mr. Walston decides to split the amount differently. This offer will remain open until EOD next Wednesday.

There was no stated desire for the Parties to resolve this case individually. Just as the Court asked me if my client would resolve individually, it asked your client if it would resolve on a class-wide basis. Yesterday I conferred with my client as requested by the Court and confirmed there is zero interest in an individual settlement at this point. I intend to notify the court accordingly.

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

settlement at this point. I intend to notify the court accordingly.

It is hard to see why Mr. Walston wouldn't prefer this outcome, given his initial $9,800 demand.

Because not everyone is selfishly only out for themselves. I believe Mr. Walston made this clear when you pressed him on this point at the deposition.

Based on our preliminary research, it will take at least a year to go through that process and cost at least tens of thousands of dollars, which will reduce his potential individual recovery accordingly.

Based on my research it will take several months. This is not ideal, but I imagine this is in part why your client chose to use a foreign entity to do its bidding. I further imagine, however, your client has enough relevant documents for class certification, though it has continued its refusal to produce anything.

First, no one else has complained about NRS's calls, which NRS doesn't conduct anymore out of an abundance of caution.

So, give us the class data that we have repeatedly requested. Assuming spotless internal record keeping, few complaints suggest a small class. I have been consistent with both you and previous counsel that my goal here isn't to make you face a class action just for the sake of facing a class action. If the class is tiny or there is exculpatory evidence (e.g. consent), let me know.

Second, while we sympathize with Plaintiff's annoyance at the calls he erroneously received, NRS is not a bad actor. In fact, its owners donate most of their proceeds to charitable causes.

If we are trying to be candid, let's be candid. These calls were not "erroneously received". Your client gave my client's number—which it obtained from some third party database—to Voicelogic to do exactly what it did. Also, your client's "owner" is IDT—which paid for and owend the telephone number your client used on the calls. I do not believe IDT donates its proceeds to charitable causes.

Third, as the judge noted, Plaintiff has a "long way to go" in this case. There are substantial barriers to any recovery on the merits and at class certification. Very few of these cases are certified, and we've never had one certified in 400+ TCPA class actions.

I do not believe the Judge is privy to just how straightforward this case is.

As for your track record, you're an excellent attorney. But my track record is similarly strong. I have never had class cert denied, and several of my TCPA class

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

similarly strong. I have never had class cert denied, and several of my TCPA class cases are among the largest per-class member recovery in the history of the statute. So, something will have to give here.

> I think it would be helpful to have a settlement conference with a Magistrate Judge. If your client still wants to pursue class claims after that, fine. But I think all parties would benefit from taking this in front of a neutral.

My client still wants to pursue class claims *now*. Nothing has changed, and your client's approach to settlement has been in bad faith. Not only does my client not want to settle individually, he does not trust even engaging in individual settlement conversations with your client, because the expectation is that you would just use that against him in class cert if those conversations failed.

You took your shot at him at your deposition right from the outset and sought to drive a wedge between client and counsel. You missed. I anticipate your Motion to Enforce will be denied, and I imagine the Magistrate will call us in front of him anyway to understand why your client has produced 0 documents since April 17.

If you want to cut through the nonsense and get to the bottom of this, let's do that then. If you give us the class data—the lists of numbers (or at least count of numbers) you gave to VoiceLogic for the purpose of making prerecords; the prerecord transcripts or files themselves; and whatever campaign metrics showing connect/etc VoiceLogic provides—I will strongly encourage my client to agree to a settlement conference. Note: nothing in this is intended to abrogate requests served or limit those requests in any way.

Just as your client doesn't want to settle as a class, my client does not want to settle individually. So, I'd be potentially open to a settlement conference where we are both bringing positions on settlement the other side does not want to do, but I cannot do that without class data.

Best,
Jeremy

--

 **Jeremy M. Glapion**
Partner

Glapion Law Firm
1704 Maxwell Drive
Wall, New Jersey 07719

Tel.: 732-455-9737

On Wed, Jun 12, 2024 at 11:00 AM, Ryan Watstein <Ryan@wtlaw.com> wrote:

Docusign Envelope ID: 4A10FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

On Wed, Jun 12, 2024 at 11:00 AM, Ryan Watstein <Ryan@wtlaw.com> wrote:

Hi Jeremy,

I wanted to follow up on yesterday's hearing. Obviously, the parties disagree about whether there was a settlement. But as we made clear in our motion to enforce, NRS wants to avoid the time and expense of additional litigation, including the expense associated with a possible evidentiary hearing, which the Court indicated might be necessary to resolve the settlement question. Thus, and in line with the Court's stated desire for the parties to resolve this case on an individual basis, please convey that NRS offers $35,000 to confidentially settle his claims, with $25k to him and $10k to counsel—unless Mr. Walston decides to split the amount differently. This offer will remain open until EOD next Wednesday.

As you know, this is significantly more than Mr. Walston could recover on his best day in court, and is almost three times what he would get if the Court agrees with us that there was a settlement. It is hard to see why Mr. Walston wouldn't prefer this outcome, given his initial $9,800 demand. That's even more true in this case given the contemplated letters rogatory. Based on our preliminary research, it will take at least a year to go through that process and cost at least tens of thousands of dollars, which will reduce his potential individual recovery accordingly.

Given your statements yesterday about Plaintiff not being interested in individual settlement because he wants to represent the class, I wanted to make a couple additional points. First, no one else has complained about NRS's calls, which NRS doesn't conduct anymore out of an abundance of caution. Second, while we sympathize with Plaintiff's annoyance at the calls he erroneously received, NRS is not a bad actor. In fact, its owners donate most of their proceeds to charitable causes. Third, as the judge noted, Plaintiff has a "long way to go" in this case. There are substantial barriers to any recovery on the merits and at class certification. Very few of these cases are certified, and we've never had one certified in 400+ TCPA class actions. Statistically speaking, the most likely outcome is that Mr. Walston spends years litigating this case and ultimately ends taking an individual settlement less than we are offering now.

I think it would be helpful to have a settlement conference with a Magistrate Judge. If your client still wants to pursue class claims after that, fine. But I think all parties would benefit from taking this in front of a neutral.

Please provide this communication to your client and let us know his response to having a settlement conference by Friday so that we can report back to the Court.

Thanks,
-Ryan


**Ryan D. Watstein (bio)**

WATSTEIN TEREPKA LLP
P: 404-782-0695

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

ryan@wtlaw.com
www.wtlaw.com

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

# EXHIBIT D

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7
Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6




Gmail

Jeremy Glapion <jmg@glapionlaw.com>

## Walston v. NRS - 24-cv-83 - Plaintiff's Settlement Position

1 message

**Jeremy Glapion** <jmg@glapionlaw.com>
To: lynette_santiago@ilnd.uscourts.gov

Fri, Jun 14, 2024 at 9:34 AM

Hi Lynette:

Thank you again for your work to date on this case.

I represent Plaintiff in the above-captioned matter.

Pursuant to docket entry 28, I am writing to confirm that Plaintiff does not have any interest in an individual settlement or a settlement conference to that end. I confirmed this through discussing directly and at length with Plaintiff on June 11.

We are always interested in discussing a class-wide resolution.

I am happy to further clarify Plaintiff's position and reasoning here, if the Court requests.

Thank you,
Jeremy



--

**Jeremy M. Glapion**
Partner
Glapion Law Firm
1704 Maxwell Drive
Wall, New Jersey 07719
Tel.: 732-455-9737

RWW001286

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

# EXHIBIT E

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS

**RASHAD WALSTON,**

                              Plaintiff,

v.

**NATIONAL RETAIL SOLUTIONS, INC.**

                    Defendant.

Civil Case No.: 24-cv-83

**Plaintiff's Responses to Defendant's
First Set of Requests for Production**

### GENERAL

Plaintiff hereby submits these written responses to Defendant's First Set of Requests for Production. These responses are accurate as of the date of submission, and any omissions, updates, or changes will be made promptly as required by any applicable rule or statute. In addition, documents responsive to many of these requests are in the exclusive possession of Defendant and/or other third-parties. Nothing herein is intended to suggest otherwise, and the responses below are limited only to those items in Plaintiff's control, possession, or knowledge. Further, to the extent a document produced by Defendant is relevant to these requests, Plaintiff will not re-produce said document to Defendant. This has no bearing on Plaintiff's belief as to the relevance of said document.

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

## **REQUESTS FOR PRODUCTION**

### **REQUEST NO. 1**

All DOCUMENTS EVIDENCING COMMUNICATIONS YOU have had with any PERSON regarding any of the facts and allegations set forth in, or underlying, the COMPLAINT and the defenses set forth in the ANSWER, including, without limitation, all non-privileged COMMUNICATIONS YOU sent to or received from any PERSON.

### **RESPONSE**:

Objection on the following ground(s): the request is overly broad in that it purports to ask for "all non-privileged COMMUNICATIONS", related to this case or not. The request also purports to call for attorney-client privileged information, as it requests all communications "including" (but not limited to) non-privileged communications. Limiting this request to the facts of this case and to non-privileged communications, please see documents produced as: RWW0001-0017, which encompass the voicemail recordings of the calls from Defendant to Plaintiff, screenshots of those calls, and the demand letter sent to Defendant. Additional material that may be responsive to this request was, on April 19, produced to Plaintiff's counsel through a subpoena to Cricket/AT&T. Plaintiff's counsel, due to a technical error on Cricket/AT&T's end, is currently unable to access these documents. To the extent any such documents are responsive, they will be produced immediately after resolution of these technical issues and review.

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

**REQUEST NO. 2**

All DOCUMENTS (including, without limitation, recordings) containing statements, observations, summaries or reports of any kind made by any PERSON having any knowledge of any allegation or claim alleged in the COMPLAINT or that document or relate in any manner to YOUR claims, allegations, or alleged damages in this litigation.

**RESPONSE**:

Objection on the following ground(s): the request is overly broad in that it purports to ask for attorney-client communications and attorney work product. Limiting this request to non-privileged material, please see documents produced as: RWW0001-0017, which encompass the voicemail recordings of the calls from Defendant to Plaintiff, screenshots of those calls, and the demand letter sent to Defendant. Additional material that may be responsive to this request was, on April 19, produced to Plaintiff's counsel through a subpoena to Cricket/AT&T. Plaintiff's counsel, due to a technical error on Cricket/AT&T's end, is currently unable to access these documents. To the extent any such documents are responsive, they will be produced immediately after resolution of these technical issues and review.

**REQUEST NO. 3**

All DOCUMENTS YOU or any other PERSON involved in preparing responses to DEFENDANT'S First Set of Interrogatories relied upon in, or reviewed in connection with,

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

preparing YOUR responses to DEFENDANT'S First Set of Interrogatories, served contemporaneously herewith.

**RESPONSE**:

No additional responsive documents in Plaintiff's possession. All documents currently in Plaintiff's possession have been produced as RWW0001-1234.

**REQUEST NO. 4**

All DOCUMENTS (including but not limited to voicemail recordings) YOU identified, reviewed, or relied upon in preparing YOUR Initial Disclosures pursuant to Rule 26 of the Federal Rules of Civil Procedure.

**RESPONSE**:

No additional responsive documents in Plaintiff's possession. All documents currently in Plaintiff's possession have been produced as RWW0001-1234.

**REQUEST NO. 5**

All DOCUMENTS that EVIDENCE, REFER OR RELATE TO, or CONCERN all lawsuits, court proceedings, administrative proceedings, arbitrations, or other legal proceedings to which YOU have been a party or witness, or in which YOU provided oral or written testimony, including, without limitation, any and all civil actions, criminal actions,

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

arbitrations, mediations, administrative actions, or any other similar proceedings or actions.

**RESPONSE**:

For responsive material, please see Plaintiff's response to Interrogatory No. 6 for docket numbers for each legal proceeding in which Plaintiff has been involved and which he recalls. To the extent Defendant seeks non-filed material (such as discovery material or settlement material), Plaintiff objects to the relevance and proportionality of such a request, and will not produce such material.

**REQUEST NO. 6**

DOCUMENTS sufficient to EVIDENCE, CONCERN, or REFER OR RELATE TO the SUBJECT TELEPHONE NUMBER, including, without limitation, documents sufficient to evidence YOUR phone plan, the persons on such plan, all billing statements, and all records of incoming calls to, or outgoing calls from, that number, including any and all calls that resulted in voice messages or voicemails, including the calls identified in the COMPLAINT.

**RESPONSE**:

Please see RWW0001-0017, which encompass the voicemail recordings of the calls from Defendant to Plaintiff, screenshots of those calls, and the demand letter sent to Defendant. Additional material that may be responsive to this request was, on April 19, produced to Plaintiff's counsel through a subpoena to Cricket/AT&T. Plaintiff's counsel,

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

due to a technical error on Cricket/AT&T's end, is currently unable to access these documents. To the extent any such documents are responsive, they will be produced immediately after resolution of these technical issues and review.

**REQUEST NO. 7**

All DOCUMENTS that constitute, EVIDENCE, CONCERN, or REFER OR RELATE TO any notes, recordings, or other memorialization YOU or any other PERSON made that document any of the allegations in the COMPLAINT or any other fact at issue in this action.

**RESPONSE**:

Please see RWW0001-0017, which encompass the voicemail recordings of the calls from Defendant to Plaintiff, screenshots of those calls, and the demand letter sent to Defendant. Additional material that may be responsive to this request was, on April 19, produced to Plaintiff's counsel through a subpoena to Cricket/AT&T. Plaintiff's counsel, due to a technical error on Cricket/AT&T's end, is currently unable to access these documents. To the extent any such documents are responsive, they will be produced immediately after resolution of these technical issues and review.

**REQUEST NO. 8**

All DOCUMENTS that EVIDENCE, CONCERN, or REFER OR RELATE TO the calls identified in the COMPLAINT.

**RESPONSE**:

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E0-A01E-4ECC-A86C-356E2C3C2EB7

Please see RWW0001-0017, which encompass the voicemail recordings of the calls from Defendant to Plaintiff, screenshots of those calls, and the demand letter sent to Defendant. Additional material that may be responsive to this request was, on April 19, produced to Plaintiff's counsel through a subpoena to Cricket/AT&T. Plaintiff's counsel, due to a technical error on Cricket/AT&T's end, is currently unable to access these documents. To the extent any such documents are responsive, they will be produced immediately after resolution of these technical issues and review.

**REQUEST NO. 9**

All DOCUMENTS, including, but not limited to contracts, between YOU and the carrier(s) or provider(s) of telephone service for the SUBJECT TELEPHONE NUMBER, including terms of service applicable to YOUR use of that number.

**RESPONSE**:

Material that may be responsive to this request was, on April 19, produced to Plaintiff's counsel through a subpoena to Cricket/AT&T. Plaintiff's counsel, due to a technical error on Cricket/AT&T's end, is currently unable to access these documents. To the extent any such documents are responsive, they will be produced immediately after resolution of these technical issues and review.

**REQUEST NO. 10**

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

All DOCUMENTS that EVIDENCE, CONCERN, or REFER OR RELATE TO any telephone number from which YOU allege that DEFENDANT called YOU at the SUBJECT TELEPHONE NUMBER.

**RESPONSE**:

Please see RWW0001-0017, which encompass the voicemail recordings of the calls from Defendant to Plaintiff, screenshots of those calls, and the demand letter sent to Defendant. Additional material that may be responsive to this request was, on April 19, produced to Plaintiff's counsel through a subpoena to Cricket/AT&T. Plaintiff's counsel, due to a technical error on Cricket/AT&T's end, is currently unable to access these documents. To the extent any such documents are responsive, they will be produced immediately after resolution of these technical issues and review.

**REQUEST NO. 11**

All DOCUMENTS that EVIDENCE, CONCERN, or REFER OR RELATE TO any LEAD FORM YOU have completed, listing the SUBJECT TELEPHONE NUMBER, from January 5, 2020 to present.

**RESPONSE**:

Objection, as there is no relevance to any lead form other than Defendant's lead form (if such a form exists). Notwithstanding this objection, and without withholding any documents based thereupon, no such documents in Plaintiff's possession.

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

**REQUEST NO. 12**

All DOCUMENTS that EVIDENCE, CONCERN, or REFER OR RELATE TO any COMMUNICATIONS between YOU and any third party (other than YOUR counsel) that REFER OR RELATE TO the allegations set forth in, or underlying, YOUR COMPLAINT and the defenses set forth in the ANSWER, including, without limitation, all recordings, voicemail messages, letters, or other correspondence and all DOCUMENTS YOU sent to or received from such third party.

**RESPONSE**:

Please see RWW0001-1234. Additional material that may be responsive to this request was, on April 19, produced to Plaintiff's counsel through a subpoena to Cricket/AT&T. Plaintiff's counsel, due to a technical error on Cricket/AT&T's end, is currently unable to access these documents. To the extent any such documents are responsive, they will be produced immediately after resolution of these technical issues and review.

**REQUEST NO. 13**

All DOCUMENTS that EVIDENCE, CONCERN, or REFER OR RELATE TO YOUR COMMUNICATIONS with any PERSON (other than YOUR counsel) wherein YOU discussed DEFENDANT'S alleged violations of the TCPA.

**RESPONSE**:

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E0E-A01E-4ECC-A86C-356E2C3C2EB7

Please see RWW0001-1234. Additional material that may be responsive to this request was, on April 19, produced to Plaintiff's counsel through a subpoena to Cricket/AT&T. Plaintiff's counsel, due to a technical error on Cricket/AT&T's end, is currently unable to access these documents. To the extent any such documents are responsive, they will be produced immediately after resolution of these technical issues and review.

**REQUEST NO. 14**

All DOCUMENTS that EVIDENCE, SUPPORT OR REFUTE, CONCERN, or REFER OR RELATE TO YOUR allegation in the COMPLAINT that DEFENDANT used an artificial or prerecorded voice to contact YOU.

**RESPONSE**:

Objection as this calls for documents protected by attorney-client privilege or attorney work product. Please see RWW0001-0017, which encompass the voicemail recordings of the calls from Defendant to Plaintiff, screenshots of those calls, and the demand letter sent to Defendant. Additional material that may be responsive to this request was, on April 19, produced to Plaintiff's counsel through a subpoena to Cricket/AT&T. Plaintiff's counsel, due to a technical error on Cricket/AT&T's end, is currently unable to access these documents. To the extent any such documents are responsive, they will be produced immediately after resolution of these technical issues and review.

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

**REQUEST NO. 15**

All DOCUMENTS that EVIDENCE, SUPPORT OR REFUTE, CONCERN, or REFER OR RELATE TO YOUR allegation that DEFENDANT acted willfully or knowingly.

**RESPONSE**:

Please see RWW0001-0017, which encompass the voicemail recordings of the calls from Defendant to Plaintiff, screenshots of those calls, and the demand letter sent to Defendant. Additional material that may be responsive to this request was, on April 19, produced to Plaintiff's counsel through a subpoena to Cricket/AT&T. Plaintiff's counsel, due to a technical error on Cricket/AT&T's end, is currently unable to access these documents. To the extent any such documents are responsive, they will be produced immediately after resolution of these technical issues and review.

**REQUEST NO. 16**

All DOCUMENTS that EVIDENCE, SUPPORT OR REFUTE, CONCERN, or REFER OR RELATE TO YOUR allegations in Paragraph 13 of the COMPLAINT that "Plaintiff's telephone number is and was a cellular telephone number."

**RESPONSE**:

Please see RWW0001-0017, which encompass the voicemail recordings of the calls from Defendant to Plaintiff, screenshots of those calls, and the demand letter sent to Defendant. Additional material that may be responsive to this request was, on April 19, produced to Plaintiff's counsel through a subpoena to Cricket/AT&T. Plaintiff's counsel,

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

due to a technical error on Cricket/AT&T's end, is currently unable to access these documents. To the extent any such documents are responsive, they will be produced immediately after resolution of these technical issues and review.

**REQUEST NO. 17**

All DOCUMENTS that EVIDENCE, SUPPORT OR REFUTE, CONCERN, or REFER OR RELATE TO YOUR allegations in Paragraph 14 of the COMPLAINT that "Plaintiff is the regular user of this telephone number."

**RESPONSE**:

Please see RWW0001-0017, which encompass the voicemail recordings of the calls from Defendant to Plaintiff, screenshots of those calls, and the demand letter sent to Defendant. Additional material that may be responsive to this request was, on April 19, produced to Plaintiff's counsel through a subpoena to Cricket/AT&T. Plaintiff's counsel, due to a technical error on Cricket/AT&T's end, is currently unable to access these documents. To the extent any such documents are responsive, they will be produced immediately after resolution of these technical issues and review.

**REQUEST NO. 18**

All DOCUMENTS that EVIDENCE, SUPPORT OR REFUTE, CONCERN, or REFER OR RELATE TO YOUR allegations in Paragraph 15 of the COMPLAINT referencing the alleged calls occurring on or about March 7, 2022, May 19, 2022, August 8, 2022, March 20, 2023, May 4, 2023, and July 31, 2023.

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

**RESPONSE**:

Please see RWW0001-0017, which encompass the voicemail recordings of the calls from Defendant to Plaintiff, screenshots of those calls, and the demand letter sent to Defendant. Additional material that may be responsive to this request was, on April 19, produced to Plaintiff's counsel through a subpoena to Cricket/AT&T. Plaintiff's counsel, due to a technical error on Cricket/AT&T's end, is currently unable to access these documents. To the extent any such documents are responsive, they will be produced immediately after resolution of these technical issues and review.

**REQUEST NO. 19**

All DOCUMENTS that EVIDENCE, SUPPORT OR REFUTE, CONCERN, or REFER OR RELATE TO YOUR allegations in Paragraph 16 of the COMPLAINT that the calls "were prerecorded rather than a live person leaving a voicemail."

**RESPONSE**:

Please see RWW0001-0017, which encompass the voicemail recordings of the calls from Defendant to Plaintiff, screenshots of those calls, and the demand letter sent to Defendant. Additional material that may be responsive to this request was, on April 19, produced to Plaintiff's counsel through a subpoena to Cricket/AT&T. Plaintiff's counsel, due to a technical error on Cricket/AT&T's end, is currently unable to access these documents. To the extent any such documents are responsive, they will be produced immediately after resolution of these technical issues and review.

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

**REQUEST NO. 20**

All DOCUMENTS that EVIDENCE, SUPPORT OR REFUTE, CONCERN, or REFER OR RELATE TO YOUR allegations in Paragraph 17 of the COMPLAINT that "Plaintiff knows that these calls were prerecorded due to his familiarity with normal human mannerisms, speaking, and intonations, as well as through comparison of the messages."

**RESPONSE**:

Please see RWW0001-0017, which encompass the voicemail recordings of the calls from Defendant to Plaintiff, screenshots of those calls, and the demand letter sent to Defendant. Additional material that may be responsive to this request was, on April 19, produced to Plaintiff's counsel through a subpoena to Cricket/AT&T. Plaintiff's counsel, due to a technical error on Cricket/AT&T's end, is currently unable to access these documents. To the extent any such documents are responsive, they will be produced immediately after resolution of these technical issues and review.

**REQUEST NO. 21**

All DOCUMENTS that EVIDENCE, SUPPORT OR REFUTE, CONCERN, or REFER OR RELATE TO YOUR allegations in Paragraph 21 of the COMPLAINT that "What's more, the waveforms (*i.e.,* the visual representation that shows how loud or quiet the sound is at different moments in the file) of both audio files is identical."

**RESPONSE**:

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

Please see RWW0001-0017, which encompass the voicemail recordings of the calls from Defendant to Plaintiff, screenshots of those calls, and the demand letter sent to Defendant. Additional material that may be responsive to this request was, on April 19, produced to Plaintiff's counsel through a subpoena to Cricket/AT&T. Plaintiff's counsel, due to a technical error on Cricket/AT&T's end, is currently unable to access these documents. To the extent any such documents are responsive, they will be produced immediately after resolution of these technical issues and review.

**REQUEST NO. 22**

All DOCUMENTS that EVIDENCE, SUPPORT OR REFUTE, CONCERN, or REFER OR RELATE TO YOUR allegations in Paragraph 22 of the COMPLAINT that "[u]pon information and belief, it would be nearly impossible for two audio files to have identical length, content, and waveforms without the audio used to create the files actually being identical—that is, prerecorded."

**RESPONSE**:

No additional documents in Plaintiff's possession.

**REQUEST NO. 23**

All DOCUMENTS that EVIDENCE, SUPPORT OR REFUTE, CONCERN, or REFER OR RELATE TO YOUR allegations in Paragraph 30 of the COMPLAINT that "Plaintiff provided no consent whatsoever here, and certainly not the kind that would rise to the level of prior express written consent."

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

**RESPONSE**:

No such documents.

**REQUEST NO. 24**

All DOCUMENTS that EVIDENCE, SUPPORT OR REFUTE, CONCERN, or REFER OR RELATE TO YOUR allegations in Paragraph 32 of the COMPLAINT that "it appears that Defendant scraped his telephone number from a database such as taxrpo.com[.]"

**RESPONSE**:

No such documents in Plaintiff's possession, but please see Plaintiff's response to Interrogatory No. 18.

**REQUEST NO. 25**

All DOCUMENTS that EVIDENCE, SUPPORT OR REFUTE, CONCERN, or REFER OR RELATE TO YOUR allegations in Paragraph 35 of the COMPLAINT that "even if Plaintiff had provided his telephone number to Defendant—which he did not—the form through which Defendant solicits such telephone numbers, as shown below, lacks the required disclosures (e.g. that calls might be made using a prerecorded voice)," including where the included screenshot came from, the specific URL, and the date retrieved.

**RESPONSE**:

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

Objection, as this request appears to request a narrative response in addition to documents. Without waiving this objection, this particular screenshot came from nrsplus.com, and was retrieved at some point on or before January 3, 2024.

**REQUEST NO. 26**

ALL DOCUMENTS that EVIDENCE, SUPPORT OR REFUTE, CONCERN, or REFER OR RELATE TO YOUR allegation in Paragraph 42 of the COMPLAINT that "[t]he exact number and identities of the persons who fit within the Classes are ascertainable in that Defendant maintain[s] written and electronically stored data showing: a. The dates and times Defendant placed its calls; b. The telephone numbers to which Defendant placed its calls; c. The purpose and content of its calls."

**RESPONSE**:

Plaintiff will demonstrate this and produce any documents that may be necessary to demonstrate this as required at the appropriate time for moving for class certification. Currently, any such documents are in Defendant's or its agent's exclusive possession.

**REQUEST NO. 27**

ALL DOCUMENTS that EVIDENCE, SUPPORT OR REFUTE, CONCERN, or REFER OR RELATE TO YOUR allegation in Paragraph 45 the COMPLAINT that "[t]here are common questions of law and fact affecting the rights of members of the Class."

**RESPONSE**:

17

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E0E8-A01E-4ECC-A86C-356E2C3C2EB7

Plaintiff will demonstrate this as required at the appropriate time for moving for class certification, and supplement these responses as necessary or required by law, rule, or order.

**REQUEST NO. 28**

ALL DOCUMENTS that EVIDENCE, SUPPORT OR REFUTE, CONCERN, or REFER OR RELATE TO YOUR allegation in Paragraph 46 the COMPLAINT that "Plaintiff's claims are typical of the claims of the Class in that they arise from Defendant's uniform conduct and are based on the same legal theories."

**RESPONSE**:

Plaintiff will demonstrate this as required at the appropriate time for moving for class certification, and supplement these responses as necessary or required by law, rule, or order.

**REQUEST NO. 29**

ALL DOCUMENTS that EVIDENCE, SUPPORT OR REFUTE, CONCERN, or REFER OR RELATE TO YOUR allegation in Paragraph 49 the COMPLAINT that "Plaintiff will thoroughly and adequately protect the interests of the Class, as Plaintiff and his retained counsel do not have any conflicts of interest with the proposed Class; Plaintiff's counsel is experienced in class actions of this type and can adequately represent the interests of the class; and Plaintiff and his counsel have adequate financial resources to assure that the interests of the class will not be harmed."

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

**RESPONSE**:

Plaintiff will demonstrate this as required at the appropriate time for moving for class certification, and supplement these responses as necessary or required by law, rule, or order.

**REQUEST NO. 30**

ALL DOCUMENTS that EVIDENCE, SUPPORT OR REFUTE, CONCERN, or REFER OR RELATE TO YOUR allegation in Paragraph 50 of the COMPLAINT that "Defendant has acted and refused to act on grounds generally applicable to the Class, thereby making injunctive and declaratory relief appropriate for the Class."

**RESPONSE**:

Plaintiff will demonstrate this as required at the appropriate time for moving for class certification, and supplement these responses as necessary or required by law, rule, or order.

**REQUEST NO. 31**

ALL DOCUMENTS that EVIDENCE, SUPPORT OR REFUTE, CONCERN, or REFER OR RELATE TO YOUR allegation in Paragraph 51 of the COMPLAINT that "[t]he prosecution of separate actions by individual Class Members would create a risk of inconsistent or varying adjudications."

**RESPONSE**:

19

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

Plaintiff will demonstrate this as required at the appropriate time for moving for class certification, and supplement these responses as necessary or required by law, rule, or order.

**REQUEST NO. 32**

ALL DOCUMENTS that EVIDENCE, SUPPORT OR REFUTE, CONCERN, or REFER OR RELATE TO YOUR allegation in Paragraph 54 the COMPLAINT that "[t]he prosecution of separate actions would risk confronting Defendant with incompatible standards of conduct."

**RESPONSE**:

Plaintiff will demonstrate this as required at the appropriate time for moving for class certification, and supplement these responses as necessary or required by law, rule, or order.

**REQUEST NO. 33**

ALL DOCUMENTS that EVIDENCE, SUPPORT OR REFUTE, CONCERN, or REFER OR RELATE TO YOUR allegation in Paragraph 57 of the COMPLAINT that "[t]he expense of individual litigation and the limited recovery in individual litigation justify a class action."

**RESPONSE**:

Plaintiff will demonstrate this as required at the appropriate time for moving for class certification, and supplement these responses as necessary or required by law, rule, or order.

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

**REQUEST NO. 34**

All DOCUMENTS that EVIDENCE, SUPPORT OR REFUTE, CONCERN, or REFER OR RELATE TO YOUR allegations in Paragraph 70 of the COMPLAINT that "[e]ach member of the putative Class has Article III standing as unwanted prerecorded calls invaded their privacy and intruded upon their seclusion, which is the exact harm the TCPA was designed to prevent."

**RESPONSE**:

Plaintiff will demonstrate this as required at the appropriate time for moving for class certification, and supplement these responses as necessary or required by law, rule, or order.

**REQUEST NO. 35**

ALL DOCUMENTS that EVIDENCE, SUPPORT OR REFUTE, CONCERN, or REFER OR RELATE TO whether the members of the putative classes are ascertainable.

**RESPONSE**:

Plaintiff will demonstrate this as required at the appropriate time for moving for class certification, and supplement these responses as necessary or required by law, rule, or order.

**REQUEST NO. 36**

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

For each expert witness YOU expect to call at trial, all DOCUMENTS, data or other materials provided to, shown to, or considered by the expert in arriving at his or her opinion.

**RESPONSE**:

Plaintiff will produce such documents in accordance with the expert disclosure deadline set by the Court pursuant to docket entry 15 (subject to any modifications subsequently made to that schedule).

**REQUEST NO. 37**

The resume for each expert witness YOU expect to call at trial.

**RESPONSE**:

Plaintiff will produce such documents in accordance with the expert disclosure deadline set by the Court pursuant to docket entry 15 (subject to any modifications subsequently made to that schedule).

**REQUEST NO. 38**

All DOCUMENTS that YOU intend to present at any trial, deposition, hearing or other proceeding in this matter.

**RESPONSE**:

Plaintiff will produce such documents in accordance with the deadlines set by the Court pursuant to docket entry 15 (subject to any modifications subsequently made to that

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

schedule). Plaintiff will, as required, timely supplement responses to Defendant's discovery requests, as necessary.

**REQUEST NO. 39**

All DOCUMENTS that EVIDENCE, SUPPORT OR REFUTE, CONCERN, or REFER OR RELATE TO every carrier, the name of every plan, and the dates during which YOU had such plans, for each cellular phone number YOU have had since January 5, 2020, to the present.

**RESPONSE:**

Objection on the following ground(s): the request is overly broad in that it purports to ask for information regarding telephones and telephone numbers irrelevant to this litigation. Limiting this request to the subject telephone number, material that may be responsive to this request was, on April 19, produced to Plaintiff's counsel through a subpoena to Cricket/AT&T. Plaintiff's counsel, due to a technical error on Cricket/AT&T's end, is currently unable to access these documents. To the extent any such documents are responsive, they will be produced immediately after resolution of these technical issues and review.

**REQUEST NO. 40**

All DOCUMENTS that REFER or RELATE to any complaints by YOU to any PERSON about unwanted telephone calls YOU claim to have received.

**RESPONSE:**

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

Objection on the following ground(s): the request is overly broad in that it purports to ask for about complaints unrelated to this litigation or the calls from Defendant to Plaintiff. Subject to this litigation, but without withholding any documents, please see documents produced as: RWW0001-0017, which encompass the voicemail recordings of the calls from Defendant to Plaintiff, screenshots of those calls, and the demand letter sent to Defendant. Additional material that may be responsive to this request was, on April 19, produced to Plaintiff's counsel through a subpoena to Cricket/AT&T. Plaintiff's counsel, due to a technical error on Cricket/AT&T's end, is currently unable to access these documents. To the extent any such documents are responsive, they will be produced immediately after resolution of these technical issues and review.

## REQUEST NO. 41

ALL retention, retainer, or other agreements between YOU and any attorney that RELATE TO or EVIDENCE YOUR representation in this lawsuit.

## RESPONSE:

Objection, as such agreements are not discoverable in the Seventh Circuit without the requesting party showing relevance or necessity. S*ee, e.g. Blaise v. Transworld Sys.*, 2022 U.S. Dist. LEXIS 136053, *3-7 (N.D. Ill. Aug. 1, 2022). Such documents will not be produced.

## REQUEST NO. 42

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

All DOCUMENTS that EVIDENCE, SUPPORT OR REFUTE, CONCERN, or REFER OR RELATE TO YOUR use of a call blocking service, software, or application from January 5, 2020 to the present.

**RESPONSE**:

No such documents in Plaintiff's possession, but please see Plaintiff's response to Interrogatory No. 14.

**REQUEST NO. 43**

To the extent not produced in response to any of the foregoing Requests, all DOCUMENTS that EVIDENCE, CONCERN, SUPPORT OR REFUTE, or REFER OR RELATE TO the allegations set forth in YOUR COMPLAINT or the defenses set forth in the ANSWER.

**RESPONSE**:

No additional documents in Plaintiff's possession. Additional material that may be responsive to this request was, on April 19, produced to Plaintiff's counsel through a subpoena to Cricket/AT&T. Plaintiff's counsel, due to a technical error on Cricket/AT&T's end, is currently unable to access these documents. To the extent any such documents are responsive, they will be produced immediately after resolution of these technical issues and review.

**REQUEST NO. 44**

To the extent not produced in response to any of the foregoing Requests, all

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

DOCUMENTS that REFER or RELATE TO the SUBJECT TELEPHONE NUMBER, including without limitation all call logs of calls, contracts, call recordings, call transcripts, and voicemails.

**RESPONSE**:

No additional documents in Plaintiff's possession. Additional material that may be responsive to this request was, on April 19, produced to Plaintiff's counsel through a subpoena to Cricket/AT&T. Plaintiff's counsel, due to a technical error on Cricket/AT&T's end, is currently unable to access these documents. To the extent any such documents are responsive, they will be produced immediately after resolution of these technical issues and review.

**REQUEST NO. 45**

All DOCUMENTS that constitute, EVIDENCE, or REFER OR RELATE TO any social media COMMUNICATIONS YOU (or YOUR attorneys, agents or anyone acting on YOUR behalf) have made or contributed to regarding the facts and circumstances giving rise to this litigation and/or your COMPLAINT.

**RESPONSE**:

No such documents in Plaintiff's possession.

**REQUEST NO. 46**

All DOCUMENTS that EVIDENCE, CONCERN, SUPPORT OR REFUTE any attempts, efforts, advertisements, and/or COMMUNICATIONS by YOU (or YOUR attorneys, agents

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

or anyone acting on YOUR behalf), to solicit, recruit, or persuade other individuals to participate in this action. This Request seeks production of, among other things, any written advertisements or solicitations related to this litigation, as well as any "electronic" advertisements or solicitations, including firm websites, blog, and social media messages, social media publications, or other similar electronic COMMUNICATIONS.

**RESPONSE**:

No such documents in Plaintiff's possession.

**REQUEST NO. 47**

All DOCUMENTS EVIDENCING, CONCERNING, or RELATING TO COMMUNICATIONS YOU sent to or received from members of the putative Class or individuals you contend may be members of the putative Class.

**RESPONSE**:

No such documents in Plaintiff's possession.

DATED:     April 19, 2024     s/ Jeremy M. Glapion_____

Jeremy M. Glapion
**The Glapion Law Firm, LLC**
1704 Maxwell Drive
Wall, New Jersey 07719
Tel: 732.455.9737
Fax: 732.965.8006
jmg@glapionlaw.com

Attorney for Plaintiff

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6
Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

# EXHIBIT F

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

## STANDARD TERMS OF ENGAGEMENT

**I, RASHAD WALSTON,** ("you, your") retain **THE GLAPION LAW FIRM, LLC**, located at 1704 Maxwell Drive, Wall, NJ, ("we, us, our, firm, attorneys"), to represent your interests in a matter against National Retail Solutions, Inc., and any of their affiliates, subsidiaries, related entities, agents and employees thereof for claims based on violations of the Telephone Consumer Protection Act ("TCPA") and other potential claims related to the nuisance telephone calls (such as invasion of privacy) (collectively, "Claims").

Your current mailing address (no PO box) is:

████████████████ - Chicago, IL 60643

Your telephone number (if an unwanted calls case, the number that received or is receiving the unwanted calls):

████████4088

The wireless carrier for the listed number:

Cricket

Your best contact number if it differs from the above:

### Attorney Client Relationship

Your communications with us are protected by our ethical obligation of confidentiality and by the evidentiary rule of attorney-client privilege. You should be open and forthright with us so that we have all information relevant to your representation. Please note that when we represent a legal entity (corporation, limited liability company, or partnership); our attorney-client relationship is with the entity alone and, unless otherwise stated, is not with its officers, directors, shareholders, partners, members, or affiliates.

**NOTIWTHSTANDING ANYTHING ELSE IN THIS AGREEMENT, THIS AGREEMENT DOES NOT OBLIGATE EITHER PARTY TO PROCEED WITH A LAWSUIT. PRIOR TO THE INITIATION OF ANY LAWSUIT, THE PARTIES WILL NEED TO ENTER INTO A NEW AGREEMENT WITH THIS LANGUAGE REMOVED.**

RWW001271

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

<p style="text-align:center; color:red">CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER</p>

### Responsibilities

As your attorneys, we have a duty of independent professional judgment, confidentiality, loyalty, and diligence. As our client, you have a duty of cooperation, honesty, and candor.

As your attorneys, we will conduct a full and thorough investigation of your case and proceed, or decline to proceed, accordingly. If, after an investigation, we choose not to pursue this case, we may terminate this agreement. You will owe us nothing.

As your attorneys, we are under no obligation to initiate or defend post-trial motions or post-trial appeals regarding the Claims unless specifically agreed to in writing.

As your attorneys, we retain final decision making authority with respect to matters of strategy, including, but not limited to, whether and how to oppose certain motions; whether and how to raise particular arguments; and whether and how to plead or dismiss particular claims. This list is not exhaustive.

As our client, you have a duty to preserve all documents that are or may become relevant to the litigation. You also have a duty to be reasonably available to answer questions or provide information as necessary.

As our client, you confirm that you have not assigned or transferred, and will not assign or transfer, all or part of your Claims to any person and that you have not signed, and will not sign, any other contingency fee agreement with any other lawyer or law firm with respect to the Claims, while this agreement remains in force.

As our client, you understand and agree that we may ask one or more other law firms to assist us in our representation of you with respect to the Claims, but that we will not do so without obtaining prior written consent from you.

As our client, you confirm that you have provided us with honest information regarding the facts and merits of your case, and have not withheld any information that, in your best judgment, would be relevant to our decision to take this case or our strategy in pursuing this case. _RW_

As our client, you confirm that you took no steps to intentionally manufacture any claim against you, such as by voluntarily subjecting yourself to the behavior about which you now complain (e.g. intentionally soliciting calls you now claim to be unwanted or unsolicited). _RW_

### Electronic Communications

For speed and efficiency, we will commonly use e-mail, cellular telephones and facsimile to communicate with you. However, it is possible that these types of communications could be intercepted or misrouted. By signing this agreement, you consent to these communications.

RWW001272

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

<p style="text-align:center"><span style="color:red">CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER</span></p>

### Association With Outside Counsel

From time to time, we may choose to associate ourselves with attorneys and law firms other than those included in the definition of "we, us, our, firm, attorneys" above. This may include, but is not limited to, local counsel (an attorney licensed in the court in which we intend to file, and a requirement in many courts for us to litigate if we are not licensed in that state or court) or by entering into a joint prosecution agreement ("JPA") with other firms with similar cases (already on file or otherwise).

Ordinarily, this will not affect your arrangement with us. We will still be your lawyers. We will still be litigating this case. We may just have assistance. Ordinarily, this also does not impact any fees you may owe us, as we agree with any outside counsel what percentage of the overall fee they will receive, depending on the circumstances.

Should we associate with outside counsel, we will notify you in writing via email, unless you indicate another method is preferred. Your response to that email agreeing to our association with outside counsel constitutes a modification of this paragraph to include in the table below the outside counsel with whom we, as if written directly therein.

| Attorney(s) | Reason | Percentage of Total Fee |
|---|---|---|

### Representing Adverse Interest

As long as we represent you, we will not provide services for another person whose interests are adverse to yours within the same subject matter of our relationship or in any claim involving you, without your written consent.

### Legal Fees

You will not have to pay for the firm's services.

We may ask the other party to pay attorneys' fees and costs. You agree that we are entitled to any such money awarded or specified in any settlement agreement as costs and attorneys' fees for our work on this case. You agree that this amount shall be negotiated by us. In so negotiating, we will seek an amount equal to the greater of 1) the firm's hourly rate (currently $650/hour) times hours worked (**"base lodestar amount"**), 2) our actual costs plus one-third (1/3) of the full amount of any settlement or judgment, or 3) in case in which your damages are primarily or exclusively statutory in nature, the difference between the total settlement amount and your maximum permitted statutory damages.

Should any award be provided in a "lump sum" payment without separating out attorneys' fees and costs, it is assumed that our fees are the greater of 1) the firm's hourly rate (currently $650/hour) times hours worked (**"base lodestar amount"**), 2) our actual costs plus one-third (1/3) of the full amount of any settlement or judgment, or 3) in a case in which your damages are primarily or exclusively statutory in nature, the difference between the total settlement amount and your maximum permitted statutory damages.

RWW001273

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

It is expressly understood that in the event that the attorneys are unsuccessful in recovering money in this action, **you will not be responsible to reimburse the attorneys for any out of pocket costs or legal fees**.

You understand that the firm may be making a fee application to the Court to recover attorneys' fees and costs associated with this matter. You agree to fully cooperate with the firm with respect to all fee applications.

Should the matter be certified as a class or collective action (including certification for the purposes of settlement only), the Court will be required to approve any settlement. In such a circumstance, the firm shall be entitled only to those fees approved by the Court, in the form prescribed by the Court (e.g. to be paid separately or out of the settlement fund).

If a matter brought as a class action at any point ceases to be a class action (such as through denial of class certification), the firm may elect to withdraw from representing you for your individual claim. You owe the firm nothing in such a circumstance. Should the firm not elect to withdraw, the provisions of this agreement remain in force as applicable to individual claims.

We record and calculate the time spent for all services rendered in increments of on tenth of an hour (1/10). This includes telephone calls (minimum charge of .2 hours), preparing and reviewing letters, documents or other correspondence (minimum charge of .3 hours), travel time to and from meetings and the Court, legal research, preparation of pleadings and other related documents, negotiations and any other services relating to this matter.

### Settlement

We will not settle any matter without your approval. We will notify you immediately of the terms of any reasonable settlement offers we receive. You have the absolute right to accept or reject any settlement offer. If you do not respond to three attempted communications (regarding a settlement offer) from this office – including the sending of a certified letter – then we can accept and sign the agreement and release on behalf of the client.

While you retain the right to accept any settlement offer from defendant, you further agree that if you accept a settlement offer against the written advice of the firm, and the settlement offer does not provide for a payment of attorney's fees equaling or exceeding the base lodestar amount, you will be responsible for payment of our base lodestar amount.

### Tax Treatment

**You understand that this firm is not a tax advisor and has not and will not give tax advice as to the tax consequences of any recovery in this matter. The firm recommends that you seek advice of an accountant or other tax professional for this purpose. This is especially so in light of the 2017 Tax Bill. In some situations, attorneys' fees may not be deductible. Please check with your accountant.** _RW_

RWW001274

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

## Terminating the Representation

You have the right to discharge us at any time by putting your decision in writing and mailing it to our offices. In that event, you agree to pay for services rendered up to the date of discharge. If we are your attorneys of record in any proceeding, you will sign and return a substitution-of-attorney form as soon as you receive it from us.

We may withdraw from your representation at any time prior to the filing of any formal legal proceeding before a court or other judicial or quasi-judicial body, with no costs due from you to us. However, should there be a deadline of which we are aware, we will endeavor to assist you in identifying new counsel, or take whatever steps necessary to preserve, or assist you in preserving, those deadlines, prior to withdrawal. This paragraph does not limit our ability to withdraw subsequent to initiating a formal legal proceeding on grounds supported in law or in equity.

We may mutually agree to terminate the attorney-client relationship, in which case such an agreement needs to be made in a writing signed by both you and the firm. Should we mutually agree to terminate the relationship, you will owe us nothing.

## Retention of Closed Files

If you request, when our representation ends, we will promptly return to you all of your papers and property, whether you have paid for them or not.

## No Guarantees

We do not guarantee any particular result. Any opinion we offer is not a guarantee.

## Entire Agreement

This document contains our entire agreement. There are no other promises, statements, or agreements about the services we will perform.

## No Oral Modifications

Any modifications to this agreement must be in writing and sign by both of parties. Oral modifications will not be valid.

## Severability

If any part of this agreement is held to be invalid, the rest of the agreement remains in effect.

## Applicable Law

The laws of the State of New Jersey will govern the interpretation of this agreement.

RWW001275

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

<span style="color:red">CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER</span>

### Child Support Judgment Search

Pursuant to New Jersey law (N.J.S.A. 2A:17-56.23b) law firms are required to perform a Child Support Judgment Search prior to releasing any funds received on behalf of a client via settlement or judgment. If the search reveals that, a child support judgment exist then that judgment must be satisfied out of the "Net Proceeds" before any funds can be released to the client. The statute defines "Net Proceeds" as any amount of money, in excess of $2,000, payable to the prevailing party or beneficiary after attorney fees, witness fees, court fees, fees for health care providers, etc. The statute also provides that the cost of the Judgment Search (approximately $10.00 per person) is chargeable against the net proceeds as a cost of settlement. This firm will comply with the requirements of this statute.

### Effective Date

This agreement will take effect upon the signing by both of us.

AGREED: _Rashad Walston_          Dated: 21/11/2023
Rashad Walston (Nov 21, 2023 13:21 CST)
RASHAD WALSTON

THE GLAPION LAW FIRM LLC

AGREED: _[signature]_          Dated: 21/11/2023
(Nov 21, 2023 14:23 EST)
Jeremy M. Glapion
THE GLAPION LAW FIRM

RWW001276

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

# Walston (NRS) Rep Agreement

Final Audit Report                                    2023-11-21



Adobe Acrobat Sign

RWW001277

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

<p style="color:red; text-align:center;">CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER</p>

## STANDARD TERMS OF ENGAGEMENT

**I, RASHAD WALSTON,** ("you, your") retain **THE GLAPION LAW FIRM, LLC**, located at 1704 Maxwell Drive, Wall, NJ, ("we, us, our, firm, attorneys"), to represent your interests in a matter against National Retail Solutions, Inc., and any of their affiliates, subsidiaries, related entities, agents and employees thereof for claims based on violations of the Telephone Consumer Protection Act ("TCPA") and other potential claims related to the nuisance telephone calls (such as invasion of privacy) (collectively, "Claims").

Your current mailing address (no PO box) is:

 - Chicago, IL 60643

Your telephone number (if an unwanted calls case, the number that received or is receiving the unwanted calls):

4088

The wireless carrier for the listed number:

Cricket

Your best contact number if it differs from the above:

### Attorney Client Relationship

Your communications with us are protected by our ethical obligation of confidentiality and by the evidentiary rule of attorney-client privilege. You should be open and forthright with us so that we have all information relevant to your representation. Please note that when we represent a legal entity (corporation, limited liability company, or partnership); our attorney-client relationship is with the entity alone and, unless otherwise stated, is not with its officers, directors, shareholders, partners, members, or affiliates.

### Responsibilities

As your attorneys, we have a duty of independent professional judgment, confidentiality, loyalty, and diligence. As our client, you have a duty of cooperation, honesty, and candor.

RWW001278

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

As your attorneys, we will conduct a full and thorough investigation of your case and proceed, or decline to proceed, accordingly. If, after an investigation, we choose not to pursue this case, we may terminate this agreement. You will owe us nothing.

As your attorneys, we are under no obligation to initiate or defend post-trial motions or post-trial appeals regarding the Claims unless specifically agreed to in writing.

As your attorneys, we retain final decision making authority with respect to matters of strategy, including, but not limited to, whether and how to oppose certain motions; whether and how to raise particular arguments; and whether and how to plead or dismiss particular claims. This list is not exhaustive.

As our client, you have a duty to preserve all documents that are or may become relevant to the litigation. You also have a duty to be reasonably available to answer questions or provide information as necessary.

As our client, you confirm that you have not assigned or transferred, and will not assign or transfer, all or part of your Claims to any person and that you have not signed, and will not sign, any other contingency fee agreement with any other lawyer or law firm with respect to the Claims, while this agreement remains in force.

As our client, you understand and agree that we may ask one or more other law firms to assist us in our representation of you with respect to the Claims, but that we will not do so without obtaining prior written consent from you.

As our client, you confirm that you have provided us with honest information regarding the facts and merits of your case, and have not withheld any information that, in your best judgment, would be relevant to our decision to take this case or our strategy in pursuing this case. _RW_

As our client, you confirm that you took no steps to intentionally manufacture any claim against you, such as by voluntarily subjecting yourself to the behavior about which you now complain (e.g. intentionally soliciting calls you now claim to be unwanted or unsolicited). _RW_

### Electronic Communications

For speed and efficiency, we will commonly use e-mail, cellular telephones and facsimile to communicate with you. However, it is possible that these types of communications could be intercepted or misrouted. By signing this agreement, you consent to these communications.

### Association With Outside Counsel

From time to time, we may choose to associate ourselves with attorneys and law firms other than those included in the definition of "we, us, our, firm, attorneys" above. This may include, but is not limited to, local counsel (an attorney licensed in the court in which we intend

RWW001279

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

to file, and a requirement in many courts for us to litigate if we are not licensed in that state or court) or by entering into a joint prosecution agreement ("JPA") with other firms with similar cases (already on file or otherwise).

Ordinarily, this will not affect your arrangement with us. We will still be your lawyers. We will still be litigating this case. We may just have assistance. Ordinarily, this also does not impact any fees you may owe us, as we agree with any outside counsel what percentage of the overall fee they will receive, depending on the circumstances.

Should we associate with outside counsel, we will notify you in writing via email, unless you indicate another method is preferred. Your response to that email agreeing to our association with outside counsel constitutes a modification of this paragraph to include in the table below the outside counsel with whom we, as if written directly therein.

| Attorney(s) | Reason | Percentage of Total Fee |
|---|---|---|
|  |  |  |

### Representing Adverse Interest

As long as we represent you, we will not provide services for another person whose interests are adverse to yours within the same subject matter of our relationship or in any claim involving you, without your written consent.

### Legal Fees

You will not have to pay for the firm's services.

We may ask the other party to pay attorneys' fees and costs. You agree that we are entitled to any such money awarded or specified in any settlement agreement as costs and attorneys' fees for our work on this case. You agree that this amount shall be negotiated by us. In so negotiating, we will seek an amount equal to the greater of 1) the firm's hourly rate (currently $650/hour) times hours worked (**"base lodestar amount"**), 2) our actual costs plus one-third (1/3) of the full amount of any settlement or judgment, or 3) in case in which your damages are primarily or exclusively statutory in nature, the difference between the total settlement amount and your maximum permitted statutory damages.

Should any award be provided in a "lump sum" payment without separating out attorneys' fees and costs, it is assumed that our fees are the greater of 1) the firm's hourly rate (currently $650/hour) times hours worked (**"base lodestar amount"**), 2) our actual costs plus one-third (1/3) of the full amount of any settlement or judgment, or 3) in a case in which your damages are primarily or exclusively statutory in nature, the difference between the total settlement amount and your maximum permitted statutory damages.

It is expressly understood that in the event that the attorneys are unsuccessful in recovering money in this action, **you will not be responsible to reimburse the attorneys for any out of pocket costs or legal fees**.

RWW001280

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

You understand that the firm may be making a fee application to the Court to recover attorneys' fees and costs associated with this matter. You agree to fully cooperate with the firm with respect to all fee applications.

Should the matter be certified as a class or collective action (including certification for the purposes of settlement only), the Court will be required to approve any settlement. In such a circumstance, the firm shall be entitled only to those fees approved by the Court, in the form prescribed by the Court (e.g. to be paid separately or out of the settlement fund).

If a matter brought as a class action at any point ceases to be a class action (such as through denial of class certification), the firm may elect to withdraw from representing you for your individual claim. You owe the firm nothing in such a circumstance. Should the firm not elect to withdraw, the provisions of this agreement remain in force as applicable to individual claims.

We record and calculate the time spent for all services rendered in increments of on tenth of an hour (1/10). This includes telephone calls (minimum charge of .2 hours), preparing and reviewing letters, documents or other correspondence (minimum charge of .3 hours), travel time to and from meetings and the Court, legal research, preparation of pleadings and other related documents, negotiations and any other services relating to this matter.

## Settlement

We will not settle any matter without your approval. We will notify you immediately of the terms of any reasonable settlement offers we receive. You have the absolute right to accept or reject any settlement offer. If you do not respond to three attempted communications (regarding a settlement offer) from this office – including the sending of a certified letter – then we can accept and sign the agreement and release on behalf of the client.

While you retain the right to accept any settlement offer from defendant, you further agree that if you accept a settlement offer against the written advice of the firm, and the settlement offer does not provide for a payment of attorney's fees equaling or exceeding the base lodestar amount, you will be responsible for payment of our base lodestar amount.

## Tax Treatment

**You understand that this firm is not a tax advisor and has not and will not give tax advice as to the tax consequences of any recovery in this matter. The firm recommends that you seek advice of an accountant or other tax professional for this purpose. This is especially so in light of the 2017 Tax Bill. In some situations, attorneys' fees may not be deductible. Please check with your accountant.** _RW_

## Terminating the Representation

You have the right to discharge us at any time by putting your decision in writing and mailing it to our offices. In that event, you agree to pay for services rendered up to the date of

RWW001281

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

discharge. If we are your attorneys of record in any proceeding, you will sign and return a substitution-of-attorney form as soon as you receive it from us.

We may withdraw from your representation at any time prior to the filing of any formal legal proceeding before a court or other judicial or quasi-judicial body, with no costs due from you to us. However, should there be a deadline of which we are aware, we will endeavor to assist you in identifying new counsel, or take whatever steps necessary to preserve, or assist you in preserving, those deadlines, prior to withdrawal. This paragraph does not limit our ability to withdraw subsequent to initiating a formal legal proceeding on grounds supported in law or in equity.

We may mutually agree to terminate the attorney-client relationship, in which case such an agreement needs to be made in a writing signed by both you and the firm. Should we mutually agree to terminate the relationship, you will owe us nothing.

### Retention of Closed Files

If you request, when our representation ends, we will promptly return to you all of your papers and property, whether you have paid for them or not.

### No Guarantees

We do not guarantee any particular result. Any opinion we offer is not a guarantee.

### Entire Agreement

This document contains our entire agreement. There are no other promises, statements, or agreements about the services we will perform.

### No Oral Modifications

Any modifications to this agreement must be in writing and sign by both of parties. Oral modifications will not be valid.

### Severability

If any part of this agreement is held to be invalid, the rest of the agreement remains in effect.

### Applicable Law

The laws of the State of New Jersey will govern the interpretation of this agreement.

### Child Support Judgment Search

**Pursuant to New Jersey law (N.J.S.A. 2A:17-56.23b) law firms are required to perform a Child Support Judgment Search prior to releasing any funds received on behalf of a client via settlement or judgment. If the search reveals that, a child support judgment**

RWW001282

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

exist then that judgment must be satisfied out of the "Net Proceeds" before any funds can be released to the client. The statute defines "Net Proceeds" as any amount of money, in excess of $2,000, payable to the prevailing party or beneficiary after attorney fees, witness fees, court fees, fees for health care providers, etc. The statute also provides that the cost of the Judgment Search (approximately $10.00 per person) is chargeable against the net proceeds as a cost of settlement. This firm will comply with the requirements of this statute.

**<u>Effective Date</u>**

This agreement will take effect upon the signing by both of us.

AGREED: _Rashad Walston_____    Dated: 19/12/2023
Rashad Walston (Dec 19, 2023 19:18 CST)
       RASHAD WALSTON


THE GLAPION LAW FIRM LLC


AGREED: _____    Dated: 19/12/2023
(Dec 19, 2023 19:41 EST)
       Jeremy M. Glapion
       THE GLAPION LAW FIRM

RWW001283

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

**CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER**

Duties of a Class Representative

1. A class representative represents the interests of all members of the class in litigation to recover money damages for the class.

2. A class representative must have claims that are typical of those of the class, and thus involve common issues of law or of fact shared with all other class members.

3. A class representative always considers the interests of the class just as the class representative would consider his or her own interests.

4. A class representative preserves all documents (including e-mail) and physical evidence that currently exists or may come to exist during the pendency of the litigation that are or may become relevant to the litigation and understands that the failure to so preserve (e.g., by sending to counsel for preservation) may result in legal sanctions against the class representative, up to and including monetary penalties or the dismissal of the class representative's claim(s).

5. A class representative refrains from discussing the case in any public forum, including on social media such as Facebook or Twitter, recognizing that there is a high likelihood that any such public comments will end up before the Court and may jeopardize the class representative's ability to represent the class.

6. A class representative participates actively in the lawsuit, such as by testifying at deposition and trial, answering written interrogatories, and by keeping aware of the status and progress of the lawsuit.

7. A class representative recognizes and accepts that any resolution of the lawsuit, such as by settlement or dismissal, is subject to court approval, and must be in the best interests of the class as a whole.

8. A class representative accepts the possibility that, in the event the case is lost, the court may assess certain of defendants' costs of litigation against the class representatives. To the extent permitted by law and the applicable Rules of Professional Responsibility, however, Attorneys will pay these costs.

9. A class representative is not required to be particularly sophisticated or knowledgeable with respect to the subject of the lawsuit. However, the class representative should be interested, on a continuous basis, in the progress of the lawsuit, and must provide class counsel and the court with all relevant facts of which the class representative is aware.

10. A class representative volunteers to represent many other people with similar claims and damages, because the class representative believes that it is important that all benefit from the lawsuit equally because a class lawsuit will save time, money, and effort, and thus will benefit all parties and the court, as well as because the class action is an important tool to assure compliance with the law, applicable standards and duties of care, and to ensure just compensation to all those similarly situated.

I have reviewed and acknowledge my duties as a class representative in these proceedings.

Dated: 19/12/2023

Signed: _Rashad Walston_
Rashad Walston (Dec 19, 2023 19:16 CST)

Printed Name: Rashad Walston

RWW001284

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6
Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

**CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER**

# Updated Rep Agreement & Class Duties Form

Final Audit Report                                        2023-12-20



"Updated Rep Agreement & Class Duties Form" History

Adobe Acrobat Sign

RWW001285

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

## STANDARD TERMS OF ENGAGEMENT

**I, Rashad Walston,** ("you, your") retain **THE GLAPION LAW FIRM, LLC**, located at 1704 Maxwell Drive, Wall, NJ, ("we, us, our, firm, attorneys"), to represent your interests in a matter against National Retail Solutions, Inc., and any of their affiliates, subsidiaries, related entities, agents and employees thereof for claims based on violations of the Telephone Consumer Protection Act ("TCPA") and other potential claims related to the nuisance telephone calls (such as invasion of privacy) (collectively, "Claims").

Your current mailing address (no PO box) is:

████████████████ – Chicago, IL 60643

Your telephone number (if an unwanted calls case, the number that received or is receiving the unwanted calls):

████████4088

The wireless carrier for the listed number:

Cricket

Your best contact number if it differs from the above:

### Attorney Client Relationship

Your communications with us are protected by our ethical obligation of confidentiality and by the evidentiary rule of attorney-client privilege. You should be open and forthright with us so that we have all information relevant to your representation. Please note that when we represent a legal entity (corporation, limited liability company, or partnership); our attorney-client relationship is with the entity alone and, unless otherwise stated, is not with its officers, directors, shareholders, partners, members, or affiliates.

### Responsibilities

As your attorneys, we have a duty of independent professional judgment, confidentiality, loyalty, and diligence. As our client, you have a duty of cooperation, honesty, and candor.

RWW001264

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

As your attorneys, we will conduct a full and thorough investigation of your case and proceed, or decline to proceed, accordingly. If, after an investigation, we choose not to pursue this case, we may terminate this agreement. You will owe us nothing.

As your attorneys, we are under no obligation to initiate or defend post-trial motions or post-trial appeals regarding the Claims unless specifically agreed to in writing.

As your attorneys, we retain final decision making authority with respect to matters of strategy, including, but not limited to, whether and how to oppose certain motions; whether and how to raise particular arguments; and whether and how to plead or dismiss particular claims. This list is not exhaustive.

As our client, you have a duty to preserve all documents that are or may become relevant to the litigation. You also have a duty to be reasonably available to answer questions or provide information as necessary.

As our client, you confirm that you have not assigned or transferred, and will not assign or transfer, all or part of your Claims to any person and that you have not signed, and will not sign, any other contingency fee agreement with any other lawyer or law firm with respect to the Claims, while this agreement remains in force.

As our client, you understand and agree that we may ask one or more other law firms to assist us in our representation of you with respect to the Claims, but that we will not do so without obtaining prior written consent from you.

As our client, you confirm that you have provided us with honest information regarding the facts and merits of your case, and have not withheld any information that, in your best judgment, would be relevant to our decision to take this case or our strategy in pursuing this case. _RW_

As our client, you confirm that you took no steps to intentionally manufacture any claim against you, such as by voluntarily subjecting yourself to the behavior about which you now complain (e.g. intentionally soliciting calls you now claim to be unwanted or unsolicited). _RW_

## Electronic Communications

For speed and efficiency, we will commonly use e-mail, cellular telephones and facsimile to communicate with you. However, it is possible that these types of communications could be intercepted or misrouted. By signing this agreement, you consent to these communications.

## Association With Outside Counsel

From time to time, we may choose to associate ourselves with attorneys and law firms other than those included in the definition of "we, us, our, firm, attorneys" above. This may include, but is not limited to, local counsel (an attorney licensed in the court in which we intend

RWW001265

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

to file, and a requirement in many courts for us to litigate if we are not licensed in that state or court) or by entering into a joint prosecution agreement ("JPA") with other firms with similar cases (already on file or otherwise).

Ordinarily, this will not affect your arrangement with us. We will still be your lawyers. We will still be litigating this case. We may just have assistance. Ordinarily, this also does not impact any fees you may owe us, as we agree with any outside counsel what percentage of the overall fee they will receive, depending on the circumstances.

Should we associate with outside counsel, we will notify you in writing via email, unless you indicate another method is preferred. Your response to that email agreeing to our association with outside counsel constitutes a modification of this paragraph to include in the table below the outside counsel with whom we, as if written directly therein.

| Attorney(s) | Reason | Percentage of Total Fee |
|---|---|---|
| Jeffrey Grant Brown | Local Counsel | 10% |
| Sam Gebrael | Assistance Obtaining Canadian Documents | 0% |

## Representing Adverse Interest

As long as we represent you, we will not provide services for another person whose interests are adverse to yours within the same subject matter of our relationship or in any claim involving you, without your written consent.

## Legal Fees

You will not have to pay for the firm's services.

We may ask the other party to pay attorneys' fees and costs. You agree that we are entitled to any such money awarded or specified in any settlement agreement as costs and attorneys' fees for our work on this case. You agree that this amount shall be negotiated by us. In so negotiating, we will seek an amount equal to the greater of 1) the firm's hourly rate (currently $650/hour) times hours worked **("base lodestar amount")**, 2) our actual costs plus one-third (1/3) of the full amount of any settlement or judgment, or 3) in case in which your damages are primarily or exclusively statutory in nature, the difference between the total settlement amount and your maximum permitted statutory damages.

Should any award be provided in a "lump sum" payment without separating out attorneys' fees and costs, it is assumed that our fees are the greater of 1) the firm's hourly rate (currently $650/hour) times hours worked **("base lodestar amount")**, 2) our actual costs plus one-third (1/3) of the full amount of any settlement or judgment, or 3) in a case in which your damages are primarily or exclusively statutory in nature, the difference between the total settlement amount and your maximum permitted statutory damages.

RWW001266

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

It is expressly understood that in the event that the attorneys are unsuccessful in recovering money in this action, **you will not be responsible to reimburse the attorneys for any out of pocket costs or legal fees**.

You understand that the firm may be making a fee application to the Court to recover attorneys' fees and costs associated with this matter. You agree to fully cooperate with the firm with respect to all fee applications.

Should the matter be certified as a class or collective action (including certification for the purposes of settlement only), the Court will be required to approve any settlement. In such a circumstance, the firm shall be entitled only to those fees approved by the Court, in the form prescribed by the Court (e.g. to be paid separately or out of the settlement fund).

If a matter brought as a class action at any point ceases to be a class action (such as through denial of class certification), the firm may elect to withdraw from representing you for your individual claim. You owe the firm nothing in such a circumstance. Should the firm not elect to withdraw, the provisions of this agreement remain in force as applicable to individual claims.

We record and calculate the time spent for all services rendered in increments of on tenth of an hour (1/10). This includes telephone calls (minimum charge of .2 hours), preparing and reviewing letters, documents or other correspondence (minimum charge of .3 hours), travel time to and from meetings and the Court, legal research, preparation of pleadings and other related documents, negotiations and any other services relating to this matter.

### Settlement

We will not settle any matter without your approval. We will notify you immediately of the terms of any reasonable settlement offers we receive. You have the absolute right to accept or reject any settlement offer. If you do not respond to three attempted communications (regarding a settlement offer) from this office – including the sending of a certified letter – then we can accept and sign the agreement and release on behalf of the client.

### Tax Treatment

**You understand that this firm is not a tax advisor and has not and will not give tax advice as to the tax consequences of any recovery in this matter. The firm recommends that you seek advice of an accountant or other tax professional for this purpose. This is especially so in light of the 2017 Tax Bill. In some situations, attorneys' fees may not be deductible. Please check with your accountant.** _____

### Terminating the Representation

You have the right to discharge us at any time by putting your decision in writing and mailing it to our offices. In that event, you agree to pay for services rendered up to the date of discharge. If we are your attorneys of record in any proceeding, you will sign and return a substitution-of-attorney form as soon as you receive it from us.

RWW001267

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

We may withdraw from your representation at any time prior to the filing of any formal legal proceeding before a court or other judicial or quasi-judicial body, with no costs due from you to us. However, should there be a deadline of which we are aware, we will endeavor to assist you in identifying new counsel, or take whatever steps necessary to preserve, or assist you in preserving, those deadlines, prior to withdrawal. This paragraph does not limit our ability to withdraw subsequent to initiating a formal legal proceeding on grounds supported in law or in equity.

We may mutually agree to terminate the attorney-client relationship, in which case such an agreement needs to be made in a writing signed by both you and the firm. Should we mutually agree to terminate the relationship, you will owe us nothing.

### Retention of Closed Files

If you request, when our representation ends, we will promptly return to you all of your papers and property, whether you have paid for them or not.

### No Guarantees

We do not guarantee any particular result. Any opinion we offer is not a guarantee.

### Entire Agreement

This document contains our entire agreement. There are no other promises, statements, or agreements about the services we will perform.

### No Oral Modifications

Any modifications to this agreement must be in writing and sign by both of parties. Oral modifications will not be valid.

### Severability

If any part of this agreement is held to be invalid, the rest of the agreement remains in effect.

### Applicable Law

The laws of the State of New Jersey will govern the interpretation of this agreement.

### Child Support Judgment Search

**Pursuant to New Jersey law (N.J.S.A. 2A:17-56.23b) law firms are required to perform a Child Support Judgment Search prior to releasing any funds received on behalf of a client via settlement or judgment. If the search reveals that, a child support judgment exist then that judgment must be satisfied out of the "Net Proceeds" before any funds can be released to the client. The statute defines "Net Proceeds" as any amount of money, in**

RWW001268

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

<p style="text-align:center; color:red;">CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER</p>

**excess of $2,000, payable to the prevailing party or beneficiary after attorney fees, witness fees, court fees, fees for health care providers, etc. The statute also provides that the cost of the Judgment Search (approximately $10.00 per person) is chargeable against the net proceeds as a cost of settlement. This firm will comply with the requirements of this statute.**

<u>**Effective Date**</u>

This agreement will take effect upon the signing by both of us.

AGREED: _Rashad Walston_          Dated: 30/07/24
Rashad Walston (Jul 30, 2024 13:13 CDT)
R ASHAD  W ALSTON

THE GLAPION LAW FIRM LLC

AGREED: _____          Dated: 30/07/24
Jeremy M. Glapion
THE GLAPION LAW FIRM

RWW001269

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

# STANDARD TERMS OF ENGAGEMENT

Final Audit Report                                    2024-07-30



Adobe Acrobat Sign

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

# EXHIBIT G

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

<p style="text-align:center; color:red;">CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER</p>

<p style="text-align:center;"><b>AMENDED TERMS OF ENGAGEMENT</b></p>

**I, RASHAD WALSTON,** ("you, your") retain **THE GLAPION LAW FIRM, LLC**, located at 1704 Maxwell Drive, Wall, NJ, ("we, us, our, firm, attorneys"), to represent your interests in a matter against National Retail Solutions, Inc., and any of their affiliates, subsidiaries, related entities, agents and employees thereof for claims based on violations of the Telephone Consumer Protection Act ("TCPA") and other potential claims related to the nuisance telephone calls (such as invasion of privacy) (collectively, "Claims").

Your current mailing address (no PO box) is:

███████████████ Chicago, IL 60655

Your telephone number (if an unwanted calls case, the number that received or is receiving the unwanted calls):

████4088

The wireless carrier for the listed number:

Cricket (at the time of calls); Xfinity (current)

Your best contact number if it differs from the above:

<p style="text-align:center;"><b><u>Attorney Client Relationship</u></b></p>

Your communications with us are protected by our ethical obligation of confidentiality and by the evidentiary rule of attorney-client privilege. You should be open and forthright with us so that we have all information relevant to your representation. Please note that when we represent a legal entity (corporation, limited liability company, or partnership); our attorney-client relationship is with the entity alone and, unless otherwise stated, is not with its officers, directors, shareholders, partners, members, or affiliates.

<p style="text-align:center;"><b><u>Responsibilities</u></b></p>

As your attorneys, we have a duty of independent professional judgment, confidentiality, loyalty, and diligence. As our client, you have a duty of cooperation, honesty, and candor.

<p style="text-align:right; color:red;">RWW001287</p>

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER

As your attorneys, we will conduct a full and thorough investigation of your case and proceed, or decline to proceed, accordingly. If, after an investigation, we choose not to pursue this case, we may terminate this agreement. You will owe us nothing.

As your attorneys, we are under no obligation to initiate or defend post-trial motions or post-trial appeals regarding the Claims unless specifically agreed to in writing.

As our client, you have a duty to preserve all documents that are or may become relevant to the litigation. You also have a duty to be reasonably available to answer questions or provide information as necessary.

As our client, you confirm that you have not assigned or transferred, and will not assign or transfer, all or part of your Claims to any person and that you have not signed, and will not sign, any other contingency fee agreement with any other lawyer or law firm with respect to the Claims, while this agreement remains in force.

As our client, you understand and agree that we may ask one or more other law firms to assist us in our representation of you with respect to the Claims, but that we will not do so without obtaining prior written consent from you.

As our client, you confirm that you have provided us with honest information regarding the facts and merits of your case, and have not withheld any information that, in your best judgment, would be relevant to our decision to take this case or our strategy in pursuing this case. _____*RW*_____ (initial)

As our client, you confirm that you took no steps to intentionally manufacture any claim against you, such as by voluntarily subjecting yourself to the behavior about which you now complain (e.g. intentionally soliciting calls you now claim to be unwanted or unsolicited). _____*RW*_____ (initial)

## Electronic Communications

For speed and efficiency, we will commonly use e-mail, cellular telephones and facsimile to communicate with you. However, it is possible that these types of communications could be intercepted or misrouted. By signing this agreement, you consent to these communications.

## Association With Outside Counsel

From time to time, we may choose to associate ourselves with attorneys and law firms other than those included in the definition of "we, us, our, firm, attorneys" above. This may include, but is not limited to, local counsel (an attorney licensed in the court in which we intend to file, and a requirement in many courts for us to litigate if we are not licensed in that state or court) or by entering into a joint prosecution agreement ("JPA") with other firms with similar cases (already on file or otherwise).

Ordinarily, this will not affect your arrangement with us. We will still be your lawyers. We will still be litigating this case. We may just have assistance. Ordinarily, this also does not impact

RWW001288

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER

any fees you may owe us, as we agree with any outside counsel what percentage of the overall fee they will receive, depending on the circumstances.

Should we associate with outside counsel, we will notify you in writing via email, unless you indicate another method is preferred. Your response to that email agreeing to our association with outside counsel constitutes a modification of this paragraph to include in the table below the outside counsel with whom we, as if written directly therein.

| Attorney(s) | Reason | Percentage of Total Fee |
|---|---|---|
| Jeffrey Grant Brown | Local Counsel | 10% |
| Sam Gebrael | Assistance Obtaining Canadian Documents | 0% |

### Representing Adverse Interest

As long as we represent you, we will not provide services for another person whose interests are adverse to yours within the same subject matter of our relationship or in any claim involving you, without your written consent.

### Legal Fees

You will not have to pay for the firm's services.

We may ask the other party to pay attorneys' fees and costs. You agree that we are entitled to any such money awarded or specified in any settlement agreement as costs and attorneys' fees for our work on this case. You agree that this amount shall be negotiated in the first instance by us. In so negotiating, we will seek an amount equal to the greater of 1) the firm's hourly rate (currently $650/hour) times hours worked **("base lodestar amount")** or 2) our actual costs plus one-third (1/3) of the full amount of any settlement or judgment. Regardless of what we negotiate, however, you retain final say over the final allocation and may choose a different allocation by putting it in writing to us (including via email). In certain circumstances, our "base lodestar amount" will potentially exceed your own award. In rare circumstances, our "base lodestar amount" will exceed your total settlement. You will *not* be responsible for payment of the difference.

Should any award or settlement be provided in a "lump sum" payment without separating out attorneys' fees and costs, it is assumed that our fees are the greater of 1) the firm's hourly rate (currently $650/hour) times hours worked **("base lodestar amount")**, or 2) our actual costs plus one-third (1/3) of the full amount of any settlement or judgment. You retain final say over the final allocation, however, and may choose a different allocation than either of the previous assumptions by putting it in writing to us (including via email). In certain circumstances, our "base lodestar amount" will potentially exceed your own award. In rare circumstances, our "base lodestar amount" will exceed your total settlement. You will *not* be responsible for payment of the difference.

RWW001289

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER

It is expressly understood that in the event that the attorneys are unsuccessful in recovering money in this action, **you will not be responsible to reimburse the attorneys for any out of pocket costs or legal fees**.

You understand that the firm may be making a fee application to the Court to recover attorneys' fees and costs associated with this matter. You agree to fully cooperate with the firm with respect to all fee applications.

Should the matter be certified as a class or collective action (including certification for the purposes of settlement only), the Court will be required to approve any settlement. In such a circumstance, the firm shall be entitled to those fees approved by the Court, in the form prescribed by the Court (e.g. to be paid separately or out of the settlement fund).

If a matter brought as a class action at any point ceases to be a class action (such as through denial of class certification), the firm may elect to withdraw from representing you for your individual claim. You owe the firm nothing in such a circumstance. Should the firm not elect to withdraw, the provisions of this agreement remain in force as applicable to individual claims.

We record and calculate the time spent for all services rendered in increments of on tenth of an hour (1/10). This includes telephone calls (minimum charge of .2 hours), preparing and reviewing letters, documents or other correspondence (minimum charge of .3 hours), travel time to and from meetings and the Court, legal research, preparation of pleadings and other related documents, negotiations and any other services relating to this matter.

### Settlement

We will not settle any matter (individual or class) without your approval. We will notify you of any settlement offer about which we are obligated to notify you under any applicable law(s) or rules (such as applicable Court rules, orders, Local Rules, Federal Rules, and/or Rules of Professional Conduct) or about which you ask us to notify you. You have the absolute right to accept or reject any settlement offer. If you do not respond to three attempted communications (regarding a settlement offer) from this office – including the sending of a certified letter – then we can accept and sign the agreement and release on your behalf.

### Tax Treatment

**You understand that this firm is not a tax advisor and has not and will not give tax advice as to the tax consequences of any recovery in this matter. The firm recommends that you seek advice of an accountant or other tax professional for this purpose. This is especially so in light of the 2017 Tax Bill. In some situations, attorneys' fees may not be deductible. Please check with your accountant.** _RW_ **(initial)**

### Terminating the Representation

You have the right to discharge us at any time by putting your decision in writing and mailing it to our offices. In that event, you agree to pay for services rendered up to the date of discharge. If we are your attorneys of record in any proceeding, you will sign and return a substitution-of-attorney form as soon as you receive it from us.

RWW001290

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER

We may withdraw from your representation at any time prior to the filing of any formal legal proceeding before a court or other judicial or quasi-judicial body, with no costs due from you to us. However, should there be a deadline of which we are aware, we will endeavor to assist you in identifying new counsel, or take whatever steps necessary to preserve, or assist you in preserving, those deadlines, prior to withdrawal. This paragraph does not limit our ability to withdraw subsequent to initiating a formal legal proceeding on grounds supported in law or in equity.

We may mutually agree to terminate the attorney-client relationship, in which case such an agreement needs to be made in a writing signed by both you and the firm. Should we mutually agree to terminate the relationship, you will owe us nothing.

**Retention of Closed Files**

If you request, when our representation ends, we will promptly return to you all of your papers and property, whether you have paid for them or not.

**No Guarantees**

We do not guarantee any particular result. Any opinion we offer is not a guarantee.

**Entire Agreement**

This document contains our entire agreement. There are no other promises, statements, or agreements about the services we will perform.

**No Oral Modifications**

Any modifications to this agreement must be in writing and sign by both of parties. Oral modifications will not be valid.

**Severability**

If any part of this agreement is held to be invalid, the rest of the agreement remains in effect.

If any part or provision of this agreement is found to be preclusive of class certification, for any reason, that part or provision is null and void upon said finding, or upon certification of the class, whichever comes first.

**Applicable Law**

The laws of the State of New Jersey will govern the interpretation of this agreement. Nothing in this provision is intended to determine which state's or forum's Rules of Professional Conduct apply to any litigation filed pursuant to this Agreement.

**Child Support Judgment Search**

RWW001291

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER

Pursuant to New Jersey law (N.J.S.A. 2A:17-56.23b) law firms are required to perform a Child Support Judgment Search prior to releasing any funds received on behalf of a client via settlement or judgment. If the search reveals that, a child support judgment exist then that judgment must be satisfied out of the "Net Proceeds" before any funds can be released to the client. The statute defines "Net Proceeds" as any amount of money, in excess of $2,000, payable to the prevailing party or beneficiary after attorney fees, witness fees, court fees, fees for health care providers, etc. The statute also provides that the cost of the Judgment Search (approximately $10.00 per person) is chargeable against the net proceeds as a cost of settlement. This firm will comply with the requirements of this statute.

## Effective Date

This agreement will take effect upon the signing by both of us.

AGREED: _Rashad Walston_
Rashad Walston (Sep 20, 2024 22:04 CDT)
RASHAD WALSTON

Dated: 20/09/24

THE GLAPION LAW FIRM LLC

AGREED: _Jeremy Glapion (Sep 25, 2024 00:00 EDT)_
Jeremy M. Glapion
THE GLAPION LAW FIRM

Dated: 25/09/24

RWW001292

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

# EXHIBIT N

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6



JEREMY M. GLAPION                                                    GLAPION LAW FIRM
1704 MAXWELL DRIVE                                                   TEL. 732-455-9737
WALL, NEW JERSEY 07719                                              JMG@GLAPIONLAW.COM

October 9, 2024

**Via Email**

Re:     **Walston v. NRS – Rule 408 Settlement Demand**

Dear Counsel:

I hope this letter finds you doing well.

Our understanding is that your client's primary defenses in this case are to class certification rather than the merits.

We understand that you will put at least one of these arguments before the Court in your forthcoming Motion to Deny Class Certification.

Given how much of this case will hinge on Class Certification, any ruling on anything specific to class certification will materially change the posture of this case. For example, if your Motion to Deny is denied, at least one of your primary arguments will no longer exist. If it is granted, the class component of this case would be over. Both, of course, subject to possible interlocutory appeals.

As such, with this approaching inflection point, we wanted to make a class-wide Settlement Demand while both sides are at their full risk. Accordingly, we are willing to settle this matter on the following terms:

1. The class is defined for Settlement Purposes in the same way as it is in the Second Amended Complaint.

2. Each Class Member will receive $350 per call with a "voicemail" designation in the campaign reports.

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

    a.   Assuming (based on nothing more than your client's previously rejected offer to stipulate that most of the numbers are cell phones) all numbers in the campaign reports are cell phones, this totals $5,755,400 across the three campaign reports provided.

    b.   While we do not have an "all in" amount because we do not have every campaign report yet, this amounts to $1,918,466.67 average per campaign.

3.   The Settlement will be non-reversionary.

4.   In exchange, your client would receive a full release from class members.

Please let me know your client's position on or before October 15, 2024.

Sincerely,

Jeremy M. Glapion