Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

# EXHIBIT 3

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| RASHAD WALSTON, on behalf of himself and all others similarly situated, | : | Case No. 1:24-cv-00083 |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| NATIONAL RETAIL SOLUTIONS, INC. D/B/A NRS PAY, | : | |
| | : | |
| Defendant. | : | |

_____/

**JOINT DECLARATION OF MARY ROBINSON AND SARI MONTGOMERY**

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

## **Table of Contents**

I.      Professional Background: Mary Robinson ................................................................1

II.     Professional Background: Sari Montgomery .............................................................2

III.    Issue ..........................................................................................................................4

IV.     Factual Background Considered .................................................................................5

V.      Counsel Violated Numerous Ethical Obligations.......................................................9

    A.      Counsel Violated His Obligation to Defer to Client on
        Settlement and Convey Settlement Offers .......................................................9

    B.      Counsel Violated Rule 1.5's Unreasonable Fee Prohibition............................ 14

    C.      Counsel Employed an Agreement Giving Him an
        Improper Proprietary Interest in the Lawsuit. ................................................. 16

    D.      Counsel Created a Conflict of Interest. .......................................................... 17

    E.      Removing Contested Terms Does Not Resolve Ethical
        Concerns Nor Does it Mitigate Counsel's Violation of
        Duty of Candor to Tribunal. ......................................................................... 19

VI.     Conclusion .............................................................................................................. 21

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

## I.     Professional Background: Mary Robinson

I have been licensed to practice law in Illinois and California since 1975. I am the founding member of Robinson, Stewart, Montgomery & Doppke, LLC, a firm dedicated to advising and representing professionals – primarily lawyers – in ethical issues and controversies. I defend lawyers and judges in disciplinary investigations and prosecutions, advise judges, lawyers and law firms on ethical issues and obligations, and provide expert consultation and testimony. Since 2007, I have been retained and identified as an expert witness on legal ethics and professional responsibility issues in over 50 cases.

From 1992 to 2007, I served as the Administrator of the Illinois Attorney Registration and Disciplinary Commission ("ARDC"). While with the ARDC, I was responsible for developing and implementing policies for enforcement of the Illinois Rules of Professional Conduct.  During the 15 years I served as Administrator, I directed the investigations of over 6000 grievances each year, as well as the prosecution of formal disciplinary actions in an average of 120 cases a year, and personally prosecuted several hearings and appeals.

Related bar association activities in which I have engaged include service on the following committees:  ABA Standing Committee on Ethics and Professional Responsibility (2007–2010); ABA Standing Committee on Professional Discipline (1995–1997); ABA National Conference on Professional Responsibility, Planning Committee (2007–2011, Chair 2008–2010); Illinois Judicial Ethics Committee (2015–present); Chicago Bar Association/Chicago Bar Foundation Task Force on the Sustainable Practice of Law and Innovation, Regulating Technology-Based Products and Services Committee Chair (2019–present); Illinois State Bar Association Task Force on the Future of Legal Services (2015–2017); Illinois Supreme Court Special Committee on Professionalism (2001–2004); and Illinois Supreme

1

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

Court Commission on Professionalism (2004–2007). I taught the Professional Responsibility course at both Northwestern University Law School and Northern Illinois University College of Law, and I have presented as a lecturer and panelist on professional responsibility issues in several hundred programs.

CV attached as **Appendix A**.

## II. Professional Background: Sari Montgomery

I have been licensed to practice law in Illinois since 1994 and am a partner in the firm of Robinson, Stewart, Montgomery & Doppke LLC in Chicago, Illinois. Since 2010, my private practice has focused on matters involving legal ethics and professional responsibility, including defending lawyers in disciplinary investigations and prosecutions at trial and on appeal before the ARDC and the Illinois Supreme Court, representing judges in disciplinary actions before the Illinois Judicial Inquiry Board, advising lawyers, law firms, government agencies, and law-related businesses on ethical issues and obligations, representing bar applicants in Character and Fitness proceedings, and providing expert testimony.

Previously, I served as Litigation Counsel and Senior Litigation Counsel at the ARDC from 1994 to 2004. During my tenure at the ARDC, I investigated hundreds of complaints filed against lawyers and prosecuted dozens of formal disciplinary cases before the Hearing Board of the ARDC and the Illinois Supreme Court.

In addition to serving as ARDC counsel and engaging in private practice, I am an Adjunct Professor of Legal Ethics at Northwestern University Pritzker School of Law and have lectured extensively on all manner of ethics and professional responsibility issues at local, state and national levels including, but not limited to: ABA Lawyers Professional Liability National Conference on Legal Malpractice; Association of Professional

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

Responsibility Lawyers (APRL); National Organization of Bar Counsel (NOBC); National Association of Retail Collection Attorneys; National Employment Lawyers Association—Illinois Chapter; Illinois State Bar Association (ISBA); Illinois Institute of Continuing Legal Education (IICLE), Practicing Law Institute (PLI); New York State Bar Association; California State Bar Committee on Professional Responsibility and Conduct (COPRAC); National Academy of Continuing Legal Education (NACLE); Chicago Bar Association; Lake County Bar Association; and the Illinois Public Defender Association.

I have also authored and co-authored book chapters and articles on professional responsibility topics including ethics of using social media in jury selection (ABA GP/Solo Magazine); systemic regulatory reform (Bloomberg); ethics in jury selection (IICLE); the disciplinary process in Illinois (IICLE); in-house counsel admission (ISBA); and uniform standards for imposing lawyer sanctions (ABA). Since 2022, I have published a quarterly ethics column in Business of Law Digest. In 2022, I was also appointed to the Editorial Board for Law360 Legal Ethics.

I am the current Chair of the ABA Standing Committee on Professional Regulation, and have served on that Committee since 2018. One of the services that Committee provides is to confidentially consult with the highest court of a requesting jurisdiction on how to improve the system of lawyer regulation in that jurisdiction. I have twice been selected to participate as part of a four-person team to perform such consultations.

I currently serve as the Secretary and elected member of the Board of Directors of the Association of Professional Responsibility Lawyers (APRL) and previously served that organization as a member of the Programming Committee and as the liaison to the ABA Committee on Professional Regulation. Since 2008, I have been appointed to serve as a

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E0E8-A01E-4ECC-A86C-356E2C3C2EB7

member and past Chair of the ISBA Standing Committee on Professional Conduct, which is charged with drafting ethics opinions for the benefit of the Association's 30,000 members. I was recently appointed to serve on the ISBA's newly created Standing Committee on Artificial Intelligence and the Practice of Law, and have also served on several other ethics-related special committees and task forces by appointment of the ISBA President. Additionally, I am a member of the Board of Managers of the Chicago Bar Association and also serve on its Committees on Professional Responsibility, and the Unauthorized Practice of Law and Multijurisdictional Practice. I am also a member of the Chicago Council of Lawyers Access to Justice Committee, the Lake County Bar Association, and the Association of Women Attorneys of Lake County.

Since 2018, I have been designated as a "Subject Matter Expert" for the Multistate Professional Responsibility Exam (MPRE) by the National Conference of Bar Examiners (NCBE). In that role, I have drafted and edited questions for the MPRE on behalf of the NCBE related to the law of lawyering, legal malpractice, and all aspects of the Rules of Professional Conduct. In 2023, I was appointed to the Drafting Committee for the MPRE, which is charged with reviewing and editing all potential test items and selecting items which will appear on the MPRE.

A copy of my Curriculum Vitae is attached as **Appendix B**.

III.    **Issue**

We have been asked to address whether any of the provisions of Plaintiff Rashad Walston's ("Plaintiff" or "Mr. Walston") current or former engagement agreements with Plaintiff's counsel, Jeremy Glapion ("Counsel") transgress the Rules of Professional Conduct

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

in ways that would reflect on Counsel's adequacy to represent a class in this case, and, if so, how?

## IV. Factual Background Considered

Plaintiff first raised his claims against Defendant National Retail Systems ("NRS") in an October 19, 2023 demand letter. Using an online template, Plaintiff alleged that NRS violated the TCPA by sending him seven prerecorded voice messages. Deposition of Rashad Walston, attached as Exhibit A, at 75:15-:20. Mr. Walston demanded $9,800 to resolve his claims, though in a mid-November 2023 conversation with NRS's CEO, Elie Katz, he suggested $5000 or $6000. ECF No. 22-1 at 6; Walston Dep. at 126:3-:12.

Shortly thereafter, Mr. Walston retained The Glapion Law Firm, LLC, and, according to his lawyer, he then lost interest in settling his claims, despite his earlier demand and his financial circumstances. Walston Dep. at 91:16-92:7. Regarding his personal circumstances: Plaintiff has been self-employed since 2013, operating multiple unsuccessful businesses, he has been named as a defendant in multiple collections actions, and declared bankruptcy in 2004. Walston Dep. at 43:6-44:23, 55:22-56:11, 63:4-:24, 77:7-:23, 81:2-82:7, 88:17-:24. In deposition, Plaintiff asserted that he wasn't interested in an individual settlement and wanted "justice for other people[.]" Walston Dep. at 155:21-:23. When asked why, Plaintiff explained that he was upset about a conversation he had with NRS CEO, Elie Katz (despite acknowledging that he still would have settled his claims at the end of that call for $5-6k), and after "speaking with legal counsel, Mr. Glapion" an individual settlement would be "something I have to discuss with my legal team, Mr. Glapion[.]" *Id.* at 161:6-163:23, 167:23-168:9.

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

The Court inquired about Plaintiff's interest in an individual settlement. At the conclusion of the hearing on NRS's motion to enforce settlement, the Court inquired:

> [P]laintiff's counsel, it wasn't that long ago that your client was interested in an individual basis settlement . . . a mere maybe six, seven months ago. Why not try to actually start that up? I don't know what the number is going to be and, you know, you'd work out what that number is. It doesn't have to necessarily be the number here but is your client at all interested in that?

ECF No. 51 at 11:5-:7, attached as Exhibit B. Counsel answered:

> I think the client's head is in that representing others in this situation. Obviously I am always happy to confirm, clarify, double, triple check with the client but we've had these conversations repeatedly and he's -- he's in that mode of not interested at the moment.

*Id.* at 10:11-11:4. The Court took Counsel up on his offer, ordering:

> [W]hy don't you check with your client and say, you know, the Judge has asked about settlement, you were interested a mere, you know, six, seven months ago, why not try to do that now. You know, your case still has quite a ways to go. I can help you get a mediator Magistrate Judge to negotiate that.

> If your client is willing, send me an email by Friday to my Courtroom Deputy and say, you know, we are interested in a settlement on an individual basis. If you're not, send me the same email saying no. But at least confirm for me that you have conveyed my message.

> Anytime people are fighting over whether there's a settlement in place or not based on settlement discussions ahead of time, my reaction is why don't you just try to settle it for real, if you will, rather than fighting over what -- who said what to who. So just think about that and let me know by Friday. In the meantime, I'll review your papers more carefully and issue a written ruling.

*Id.* at 11:5-:22. While indicating that his client seemed committed to a representative capacity, Counsel agreed that he would confer with Walston but did not disclose that his engagement agreement effectively prohibited Plaintiff from settling without his lawyer's permission and imposed fee obligations that would discourage an individual settlement.

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

The following day, Defendant transmitted an offer of $35,000 for an individual settlement. June 12, 2024 Correspondence, attached as Exhibit C. Within the hour, with no indication that he conveyed the offer to his client, Counsel rejected the offer and stated that his client had zero interest in an individual settlement. *Id.* Counsel then emailed the Court and advised that based on a conversation he had with his client on July 11, 2024 (before NRS's settlement offer), Plaintiff "does not have any interest in an individual settlement." June 14, 2024 Correspondence, attached as Exhibit D.

NRS spent months trying to obtain Plaintiff's engagement letter. Plaintiff initially objected to Defendant's request for production, maintaining NRS needed to make a heightened showing of need and relevance. Plaintiff's Response to Defendant's First Set of Requests for Production, attached as Exhibit E. NRS then pointed to Mr. Walston's deposition testimony as establishing that the engagement letter was relevant and necessary to issues of adequacy. For example, though Mr. Walston claimed he was not "100 percent sure" about the terms, he testified that the letter "probably does" require Counsel to approve any settlement. Walston Dep. at 166:23-168:13.

On July 31, Plaintiff delivered redacted copies of three engagement agreements dated November 21, 2023, December 19, 2023, and July 30, 2023. Engagement Letters, attached as Exhibit F. The November 21 and December 19 engagement letters both contained the following term:

> While you retain the right to accept any settlement offer from defendant, you further agree that if you accept a settlement offer against the written advice of the firm, and the settlement offer does not provide for a payment of attorney's fees equaling or exceeding the base lodestar amount, *you will be responsible for payment of our base lodestar amount* [$650 an hour]. (Emphasis added.)

7

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

(Hereafter, this paragraph referred to as the "Springing Fee" term.) All three agreements likewise provided:

**Legal Fees**

> We may ask the other party to pay attorneys' fees and costs. You agree that we are entitled to any such money awarded or specified in any settlement agreement as costs and attorneys' fees for our work on this case. You agree that this amount shall be negotiated by us. In so negotiating, we will seek an amount equal to the greater of 1) the firm's hourly rate (currently $650/hour) times hours worked ("base lodestar amount"), 2) our actual costs plus one-third (1/3 of any settlement or judgment, or 3) *in case in which your damages are primarily or exclusively statutory in nature, the difference between the total settlement amount and your maximum permitted statutory damages.* (Emphasis added.)

> Should any award be provided in a "lump sum" payment without separating out attorneys' fees and costs, it is assumed that our fees are the greater of 1) the firm's hourly rate (currently $650/hour) times hours worked ("base lodestar *amount*"), 2) our actual costs plus one-third (1/3) of the full amount of any settlement or judgment, *or 3) in a case in which your damages are primarily or exclusively statutory in nature, the difference between the total settlement amount and your maximum permitted statutory damages.* (Emphasis added.)

**Settlement**

> We will not settle any matter without your approval. We will notify you immediately of the terms of any *reasonable* settlement offers we receive. You have the absolute right to accept or reject any settlement offer. If you do not respond to three attempted communications (regarding a settlement offer) from this office – including the sending of a certified letter – then we can accept and sign the agreement and release on behalf of the client. (Emphasis added.)

When Counsel produced the three agreements, he advised that he had modified the engagement letter to remove the Springing Fee (though he kept the Statutory Cap and the limit on conveying only what he deemed to be "reasonable" settlement offers). After NRS raised its concerns about the remaining terms, Counsel amended the engagement letter a third time, removing those provisions and purporting to "cure" any ethical issues raised by employing those terms. September 24, 2024 Engagement Letter, attached as Exhibit G. Having eventually responded to NRS pressing the issues by removing the terms that

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

undermined Mr. Walston's ability to pursue an individual settlement from the engagement agreement, Counsel insists that his client is still not interested in an individual settlement.

## V.    Counsel Violated Numerous Ethical Obligations.

Multiple provisions in the different versions of the engagement agreement violated Rules of Professional Conduct designed to assure that settlement authority and fee provisions are structured to avoid a conflict of interest between client and lawyer. What's more, Counsel violated his duty of candor when he implied that his client had authority to enter into an individual settlement, notwithstanding the presence of the contested terms.

### A.    Counsel Violated His Obligation to Defer to Client on Settlement and Convey Settlement Offers

One of the most fundamental attributes of the attorney-client relationship is the allocation of authority for purposes of settlement. Rule 1.2(a) of the ABA Model Rules of Professional Conduct clarifies that it is the client who decides whether and on what terms to settle a matter, reciting as follows:

> (a)     .    .    . a lawyer shall abide by a client's decisions concerning the objectives of representation and, as required by Rule 1.4, shall consult with the client as to the means by which they are to be pursued. A lawyer may take such action on behalf of the client as is impliedly authorized to carry out the representation. A lawyer shall abide by a client's decision whether to settle a matter.

In furtherance of the client's authority over settlement, Rule 1.4(a)(1), which requires that a lawyer promptly inform the client of any decision requiring the client's consent, requires a lawyer to promptly transmit any offer of settlement received from opposing counsel in a civil case. Rule 1.4, Cmt. [2].

For purposes of the duties imposed by Rules 1.2 and 1.4, the Glapion Law Firm's client was Mr. Walston. While it is apparent that a class action was contemplated, prior to

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

certification of a class, there is no class and no class counsel. *Lukis v. Whitepages Inc.*, 549 F. Supp. 3d 798, 808 (N.D. Ill. 2021). Because no class had been certified in this matter, The Glapion Law Firm's duties ran to Mr. Walston individually and the firm had no duties to any other potential class member. The firm was required to accord full settlement authority to Mr. Walston, without regard to the interests of anyone other than him, and without regard to the firm's interest in pursuing a class action with him as a named plaintiff.

There is virtually universal agreement that a retainer agreement may not include terms that limit the client's settlement authority or the lawyer's responsibility to transmit settlement offers. Prohibited terms include those which explicitly give the attorney authority to determine settlement, *In re Lansky,* 678 N.E.2d 1114 (Indiana, 1997); *In re Coleman,* 295 S.W.2d 857 (Mo. 2009); Ariz. Ethics Op. 06-07 (2006), as well as terms that increase costs because of a client's decision about settlement. *See e.g.*, Washington Ethics Op. 191 (1994) (rejecting fee agreement as improper where it provided that if a client rejects a settlement offer which the lawyer believed to be reasonable, the contingent fee will be based on the larger of that offer or the amount recovered at trial); Conn. Informal Ethics Op. 99-18 (1999) (contingent fee agreement may not include clause requiring client to pay lawyer an hourly rate if client rejects settlement offer recommended by lawyer and defendant prevails); Nevada Ethics Op. 95-1 (1995) (an attorney may not ethically include in a fee agreement a clause providing that if the client settles the case without the attorney's approval, the attorney would be entitled to the greater of the agreed upon contingent fee or an hourly fee); *Compton v. Kittleson,* 171 P.2d 172 (Alaska, 2007) (fee agreement guaranteeing lawyer the greater of an hourly fee or a percentage of the recovery violated Rule 1.2(a) because of its potential to restrict the client's exclusive right to accept or reject a settlement offer.)

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

The Springing Fee provision of the engagement agreement at issue here violated Rule 1.2(a) by purporting to require Plaintiff to pay lodestar fees at $650/hour if Plaintiff were to accept a settlement offer against the written advice of the firm, and if the settlement offer did not provide for a payment of attorney's fees equaling or exceeding the lodestar amount. Although Mr. Walston was the firm's only client in this case, the Springing Fee provision effectively negated his authority to accept any individual settlement offer, while incentivizing the law firm to expend billable time toward developing a class action, regardless of whether Mr. Walston (or even the non-existent class) would benefit.[1] The Springing Fee provision was in effect on June 11, 2024, when Counsel told the Court that he would discuss individual settlement with his client and on June 12, 2024, when Defendant made a $35,000 offer. That provision gave the law firm a veto over Mr. Walston's settlement authority. If Mr. Walston accepted the offer, he would be required to pay lodestar fees likely exceeding $35,000. That is particularly problematic if the work done by the firm was dedicated to developing Mr. Walston's individual claims into a class action, which offered no direct benefit to Mr. Walston.

---

[1] Counsel's explanation that the provision was meant to stop defendants from "buy[ing] their way out of pre-certification class actions," provides no justification and instead confirms the improper purpose of the provision. ECF No. 57-1 ¶ 18. The provision restricts only Counsel's client, not any defendant, and Counsel's client had every right to benefit from a defendant's interest in avoiding a class action. The client could agree to reject all offers of individual settlement if that was the client's wish, but his attorney was not free to weight the scale by imposing a steep cost on a contrary choice. Additionally, there are many circumstances where a class representative might decide it is in a putative class's interests to settle the case individually—such as where the case is careening toward a ruling that would be bad for the class in front of a hostile arbiter, etc. The engagement agreement at issue here takes that choice away from the class representative, even though the whole point of having a class representative is to make sure such decisions are made by an objective party not blinded by the prospect of millions in fees.

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

The alternative fee obligation, which capped Mr. Walston's recovery to the maximum statutory damages while Counsel recovered the remainder, also burdened Walston's authority to control the objectives of the representation in violation of Rule 1.2(a). The engagement agreement purported to define the scope of the engagement as "represent[ing] your [Walston's] interests in a matter against National Retail Solutions, Inc., and any of their affiliates, subsidiaries, related entities, agents and employees thereof for claims based on violations of the Telephone Consumer Protection Act ('TCPA') and other potential claims related to the nuisance telephone calls (such as invasion of privacy) (collectively, 'Claims')." Despite Counsel's representation of "Walston's interests," the statutory damage cap limited Mr. Walston to recovering, at most, his "statutory damages." That provision eliminated any incentive or ability for Walston to pursue an individual settlement although pursuit of his individual interests was a purported and obvious basis of his engagement of counsel.

An additional concern arises if, as it appears, Counsel did not transmit the $35,000 offer to his client in reliance on the client's alleged commitment to rejecting individual settlement offers. It is true that a lawyer is not required to transmit a settlement offer that the client has previously directed the lawyer to reject. Model Rule 1.4, Cmt. [2]. That proposition assumes, however, that the lawyer fully explained the risks of and legal alternatives to the client committing to the particular settlement position. Rule 1.4(a)(1). For most purposes, a discussion of settlement options can focus exclusively on the client's objectives and will not be influenced by the lawyer's personal interests. Here, because of Counsel's interest in pursuing a class action which would have the potential of greatly magnifying the fees that could be obtained without providing any significant enhanced value to Mr. Walston, there is a serious question as to whether Counsel's personal financial interests materially limited his

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

ability to effectively advise Mr. Walston on whether he should entertain an individual settlement offer. (See Rule 1.7 discussion below.)

Also of concern is whether Mr. Walston's decision to decline any individual settlement offer could be fully informed without Mr. Walston knowing the amount of an offer. Mr. Walston retained the right to benefit financially from this lawsuit, and unless and until a class was certified, Counsel owed him a duty to maximize his personal financial benefit, a duty that could not be fulfilled by encouraging him to reject any individual settlement, regardless of the amount offered.

As a result of the above factors, it is our opinion that Counsel's duties under Rule 1.2(a) and 1.4(a)(1), and his fiduciary duty to put the interests of his client ahead of his own interests, required that he transmit the $35,000 offer to Mr. Walston. His apparent failure to do so is emblematic of his willingness to promote his personal interests over the interests of his client. *See Deadwyler v. Volkswagen of America, Inc.,* 134 F.R.D. 128, 140 (W.D.N.C. 1991) ("No type of misbehavior by an attorney is more universally and categorically condemned, and is therefore more inherently in 'bad faith,' than the failure to communicate offers of settlement.").

The provision in the engagement agreement that purported to limit counsel's obligations to transmit settlement offers to only "reasonable" offers did not and could not modify Counsel's obligations under Rules 1.2(a) and 1.4(a)(1). The client's authority to settle necessarily includes the *client's* right to determine whether an offer is reasonable. A lawyer is not free to circumvent duties under the Rules of Professional Conduct by asserting that the client authorized or directed him to do so. *In re Himmel,* 125 Ill.2d 531, 538-539 (1988).

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

Moreover, because of all the provisions identified above, for purposes of assessing what offers would be reasonable, Counsel's personal interests were clearly adverse to the interests of Mr. Walston. Counsel's ability to maximize fees that could be earned through the Springing Fee provision and the statutory damage cap operated in direct opposition to Mr. Walston's ability to realize the benefit of an individual settlement.

An additional term of the engagement agreement at issue here that violates Rule 1.2(a) is the provision that purports to authorize the lawyers to accept a settlement and execute releases on behalf of the client if the client does not respond to three attempts to contact the client about the offer. The Illinois Supreme Court has condemned the practice of attorneys procuring general authority to settle, including because a client does not respond to contacts, particularly where the attorney has been retained on a contingent fee basis. *In re Walner* 119 511, 523 (1988). While not employed to settle this case, including the term in the fee agreement further reflects the law firm's willingness to transgress ethical obligations in order to assure its own financial interests.

### B. Counsel Violated Rule 1.5's Unreasonable Fee Prohibition.

As the most basic of all principles governing attorney's fees, Rule 1.5(a) provides that a lawyer "shall not make an agreement for or collect an unreasonable fee." The engagement agreement at issue here secured fees assuring counsel the greater of lodestar at $650/hour, one-third of the recovery, or in the case in which the client's damages were primarily or exclusively statutory in nature, the difference between the total settlement amount and the client's maximum permitted statutory damages. The most striking feature of that combination of options is the disconnect between the magnitude of counsel's fees and value of the client's recovery. Despite the proclamations at the *beginning* of the agreement that the client will "not

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

have to pay for the firm's services[,]" the Springing Fee included *later* in the agreement could require the client pay the lodestar amount if the settlement didn't exceed the lawyer's hourly rate. More dramatically, in a representation undertaken to enforce Mr. Walston's rights to statutory damages under the TCPA "and other potential claims related to the nuisance telephone calls (such as invasion of privacy)," the agreement would limit the client's recovery to statutory damages where the client's damages were "primarily or exclusively statutory in nature," while awarding counsel the remainder of any amount recovered. The agreement does not purport to define how it will be determined whether damages are "primarily" statutory in nature, though it appears likely that Mr. Walston's claims would qualify as primarily statutory.

The damage cap provision essentially gives Counsel an interest in the client's cause of action, entitling Counsel to collect as fees a portion of a damage award where the amount Counsel can claim has no relationship to any benefit obtained for the client. The provision allows Counsel to manage the litigation so as to increase his entitlement to fees by purporting to fight for a larger settlement for the client while having secured the client's agreement to cap his own recovery at the statutory amount. (See Discussion of Rule 1.8(i), below). Under the agreement, Counsel's contingent fee of any settlement offer over $21,000 would amount to more than fifty percent of Walston's recovery unless, of course, Counsel were to assert a higher lodestar amount which could include hours expended solely to benefit the firm rather than the client.

Fees that benefit the attorney without regard to the client's interests are necessarily unreasonable. By capping any benefit to the client at the statutory damage limit, while entitling the lawyers to be paid hourly for pursuing recovery in excess of statutory damages

15

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

(in which the client could not participate), the Glapion Law Firm made an agreement for an unreasonable fee. The only impact of the cap on the client was negative. It removed any opportunity for him to benefit from an individual settlement (regardless of amount) while purporting to entitle Counsel to fees for pursuing an option that did not directly benefit his client.

Also inherently unreasonable was the Springing Fee provision. Its only purpose was to restrict the client's ability to accept an individual settlement, notwithstanding the fact that the engagement was purportedly for purposes of pursuing the client's claims. Moreover, the provision did not limit the client's responsibility to pay lodestar fees to fees incurred to promote the client's personal claims as opposed to work undertaken in support of a class action. It is unreasonable for a lawyer to charge a client fees for work done by the lawyer for the benefit of others.

### C. Counsel Employed an Agreement Giving Him an Improper Proprietary Interest in the Lawsuit.

The terms of Counsel's fee agreement with Mr. Walston violated his duty as a fiduciary to his client by acquiring a proprietary interest in the cause of action or subject matter of litigation which he agreed to conduct for Mr. Walston in violation of Model Rule 1.8(i). The Rule has its basis in common law champerty and maintenance and is designed to avoid giving lawyers too great an interest in a representation so as to risk the lawyer conducting the representation to advance the lawyer's personal stake in the case, potentially to the detriment of the client's interests. Rule 1.8, Cmt. [16]. In addition, it is recognized that when the lawyer acquires an ownership interest in the subject of the representation, it will be more difficult for a client to discharge the lawyer if the client so desires. Rule 1.8, Cmt. [16]. The only exceptions to the prohibition of Rule 1.8(i) are for traditional contingent fees and statutory

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

attorney's liens against a recovery. Contingent fees and statutory attorney's liens allow a lawyer to collect a fee against a recovery, so long as they do not give the lawyer control of a cause of action. Although contingent fees permit lawyers to obtain a substantial economic share of a claim in return for their services, the Rule prohibits a lawyer from acquiring too large a share of a claim and from acquiring rights and powers of ownership through an otherwise proper contingent fee. Restatement (Third) of The Law Governing Lawyers §36 (Am. L. Inst. 2000), p. 266. The rationale for the Rule is that a lawyer's ownership, unlike a contingent fee, *which is limited in most cases to well less than half the recovery*, "gives the lawyer an economic basis for claiming to control the prosecution and settlement of the claim and provides an incentive to the lawyer to relegate the client to a subordinate position." *Id.*

In this case, it is our opinion that Counsel's fee agreement with Walston went beyond a "reasonable" contingent fee agreement permitted by Rule 1.8(i)(2) and caused Counsel to acquire an impermissible proprietary interest in Walston's litigation such that, for all intents and purposes, Counsel, and not Mr. Walston, controlled the prosecution and settlement of Walston's claim to Walston's detriment. Indeed, since Mr. Walston's recovery was capped by Counsel, there is effectively no limit to the percentage Counsel could recover of any settlement amount (e.g., a $250k individual settlement would net Counsel more than 95% of the recovery). As such, Counsel's fee agreement relegated Mr. Walston's interests to a subordinate position in violation of Rule 1.8(i).

### D. Counsel Created a Conflict of Interest.

Taking a proprietary interest in a client's cause of action also creates a conflict of interest under Rule 1.7(a)(2) in that when a lawyer owns a piece of the client's case, there is a substantial risk that the lawyer's representation of the client will be materially limited by the

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

lawyer's personal interests.  Rule 1.7(a)(2). By acquiring the right to control the prosecution and settlement of Walston's claim, as well as an unreasonably large contingent fee, Counsel puts himself in a position to advance his own interests to Mr. Walston's detriment.  Ethics opinions addressing the propriety of an attorney asking a client to assign a claim for statutory attorney's fees or to agree in advance to reject any settlement that would include a waiver of statutory attorney's fees uniformly agree that such a provision creates a conflict of interest under Rule 1.7(a).

In this case, the Springing Fee provision was tantamount to requiring Mr. Walston to agree in advance to reject any settlement offer that doesn't provide for attorney's fees because requiring Mr. Walston to pay the equivalent of the lodestar calculation as attorney's fees at $650 per hour, for all practical purposes prohibited Mr. Walston from accepting any reasonable settlement offer. Therefore, the Springing Fee provision created a conflict of interest under Rule 1.7(a)(2).

These types of personal interest conflicts may only be waived under certain conditions. Rule 1.7(b) provides that, in order to continue the conflicted representation, the lawyer must reasonably believe that the lawyer will be able to provide competent and diligent representation to the client despite the conflict, the representation is not prohibited by law, the representation does not involve the assertion of a claim by one client against another client represented by the lawyer in the same litigation, and each affected client gives informed consent. Model Rule of Professional Conduct 1.7(b)(1)-(4). In this case, it is not objectively reasonable to conclude that Counsel could provide competent and diligent representation to Walston despite his personal interest in maximizing his fees, when that interest comes at the expense of Walston's interest in maximizing his recovery. The combination of the Springing

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

Fee provision and the provision providing that any settlement amounts exceeding Mr. Walston's statutory damages are to be paid to Counsel, make clear that Counsel's personal interests would, in all instances, take precedence over his client's such that he could not provide competent and diligent representation to Mr. Walston.

Even if it were objectively reasonable for Counsel to believe that he could provide competent and diligent representation despite his clear personal interest, which we do not concede, he did not obtain Mr. Walston's informed consent to the conflict, nor is it likely that an informed consumer of legal services would consent to such a conflict. Counsel's representation under the terms of Counsel's fee agreement therefore violated Rule 1.7(a) and was impermissible.

Notwithstanding that Counsel's conflict under Rule 1.7(a) could be, in theory, waivable, his conflict under Rule 1.8(i) as discussed above, is not. Rule 1.8(i) essentially declares the conflict unwaivable by its unqualified prohibition against lawyers acquiring proprietary interests in a client's cause of action.

### E. Removing Contested Terms Does Not Resolve Ethical Concerns Nor Does it Mitigate Counsel's Violation of Duty of Candor to Tribunal.

The fact that Counsel removed offending provisions as NRS continued to press for disclosure and to assert impropriety cannot undo the Rule violations discussed above. Rule 1.5(a) prohibits a lawyer from "making an agreement for" an unreasonable fee. There is no escape provision for later releasing such an agreement, particularly when it is done only because the lawyer gets "caught." The same is true with Rule 1.8(i)'s prohibition on "acquir[ing] a proprietary interest in the [client's] cause of action."

Moreover, before being removed from the agreement, the provisions already accomplished the improper purpose of impairing the client's ability to consider an individual

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

settlement for nearly ten months. All of the improper provisions remained in place as of the June 12, 2024 individual settlement offer, and even after the Springing Fee provision was deleted as of July 30, 2024, the remaining fee provisions virtually eliminated the client's ability to benefit from an individual settlement.

Indeed, all of the offending provisions were in place on June 11, 2024, when Counsel assured the Court that he would confer with his client about pursuing an individual settlement. Thus, at the time he gave that assurance, Counsel knew that his client's ability to consider an individual settlement was essentially non-existent under the terms of the engagement agreement. Yet, his response to the Court would reasonably have been understood as confirming that he could have an unfettered discussion of the individual settlement option. He suggested that the client's personal commitment to pursuing relief for a class might be an obstacle without disclosing the extent to which his engagement agreement actually left the client no choice.

A lawyer's duties as officer of the Court require that all statements made by the lawyer to a Court be truthful. Model Rule 3.3(a). Comment [3] to that Rule reminds lawyers: "There are circumstances where failure to make a disclosure is the equivalent of an affirmative misrepresentation." It seems apparent from Counsel's subsequent resistance to defense attempts to discover terms of the engagement agreement relevant to the client's ability to control settlement that Counsel recognized that disclosure of those terms was potentially detrimental to his personal interests. Counsel's response to the Court on June 11, 2024, and his email to the Court asserting that his client "does not have any interest in an individual settlement" were misleading without disclosing that the client's position was dictated by the terms of the engagement agreement.

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

We note that while any of the violations identified in this Declaration could be referred to disciplinary authorities, those of us who have practiced in the discipline context have a healthy respect for the option of court action as an important component of lawyer regulation. Discipline authorities address issues after the fact, and discipline impacts only the future. Courts have the authority and responsibility to address lawyer misconduct in real time, with the ability to manage its impact in ongoing proceedings. Thus we agree with opinions that recognize that referral to discipline is not necessarily an adequate or complete response to instances of lawyer misconduct. See e.g., *Creative Montessori Learning Ctrs. v. Ashford Gear LLC*, 662 F.3d 913, 917 (7th Cir. 2011). In our experience, there are instances of misconduct where the only or most effective deterrent is Court action, with or without a disciplinary referral. As to the misconduct at issue in this matter, discipline cannot cure or otherwise address any harm that may ensue as a result of Counsel's efforts to control his client's ability to opt for and to benefit from an individual settlement.

## VI.     Conclusion

By limiting Mr. Walston's authority to accept an individual settlement through the contested provisions, the engagement agreements employed in this case violated Model Rules 1.2(a), 1.5(a), 1.8(i) and 1.7(a)(2). Indeed, as a purported agreement for representation of an individual, the fee provisions are contrary to effective representation because they would cause Walston to reject any realistic individual settlement, while entitling the firm to be compensated for work necessary to pursue a class action. While significantly restricting Walston's options, the engagement agreement did not relieve Counsel of his obligation to transmit settlement offers and his failure to do so violated Rule 1.4(a)(1).

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

The terms of the engagement agreement and Counsel's failure to inform Mr. Walston of NRS's settlement offer placed the interests of the firm in pursuing a class action with Mr. Walston as class representative over the individual interests of Mr. Walston himself, reflecting adversely on the reliability of Counsel "to prosecute the case in the interest of the class … rather than just in their interest as lawyers who, if successful will obtain a share of any judgment or settlement as compensation for their efforts." *Creative Montessori*, 662 F.3d at 917.

*[Remainder of Page Intentionally Blank – Signatures on Following Pages]*

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

Executed this 15th day of October 2024, in Chicago, Illinois.

Signed by:

Mary Robinson

Mary Robinson

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

Executed this 15th day of October 2024, in Chicago, Illinois.

DocuSigned by:

*Sari Montgomery*

720582AEEC81439

Sari Montgomery

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

# APPENDIX A

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7



ROBINSON STEWART MONTGOMERY & DOPPKE LLC

Mary Robinson *Partner*
Direct 312.676.9874

Stephanie Stewart *Partner*
Direct 312.782.5102

Sari W. Montgomery *Partner*
Direct 312.676.9872

James A. Doppke, Jr. *Partner*
Direct 312.676.9878

**Curriculum Vitae**

**MARY ROBINSON**

## Current Position

### Robinson, Stewart, Montgomery & Doppke, LLC

Representation, consultation, and expert witness services in matters involving lawyer and judicial ethics and discipline, law office management, sanctions and lawyer malpractice. Began as solo in 2007; current firm founded in 2019.

## Professional Experience

### Cook County Shakman Compliance Administrator (March 2009 – October 2018)

By appointment of Federal District Court, in the case of *Michael Shakman, et al. v. The Democratice Organization of Cook County, et al,* U.S.Dist.Ct., N.D.Ill. No. 69 C 2145, responsible for overseeing compliance with decree prohibiting unlawful patronage employment practices in the Office of the President of the Cook County Board, the Cook County Health and Hospital System, and the Cook County Public Defender.

### Administrator, Attorney Registration and Disciplinary Commission of the Supreme Court of Illinois, *Chicago, Illinois* ( March 1992 – March 2007)

Served as principal executive officer of the agency which operates under the authority of the Illinois Supreme Court and is responsible for the investigation and prosecution of disciplinary complaints against Illinois lawyers. Responsibilities included developing and implementing policies for the investigation of grievances against Illinois lawyers and for determination of when formal disciplinary charges should be pursued and what sanctions should be recommended in disciplinary cases; implementation of the Illinois Client Protection Program (which reimburses clients for losses caused by their attorneys' dishonesty) and the Ethics Inquiry Program (provides assistance to Illinois lawyers in solving ethical dilemmas); overseeing the annual registration of Illinois attorneys and maintenance and publication of registration data; presentations to Illinois and national audiences on

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

professional responsibility topics; and, from time to time, personally handling the hearing or appeal in particular matters.

**Robinson & Skelnik,** *Elgin, Illinois* (1982 – 1992)

Practice, initially as solo, expanding to partnership in 1985, with concentration in civil and criminal appellate representation civil and criminal, with appearances before the Illinois Supreme Court, the Illinois Appellate Court for the First, Second, Third and Fifth Districts, and the United States Court of Appeals for the Seventh Circuit. Practice also included trial work in criminal and family law cases.

**Office of the State Appellate Defender**
*Ottawa, Illinois* (1974 – 1977)
*Elgin, Illinois* (1977 – 1982)

Began as law clerk and then assistant defender in agency's Third Appellate District office in Ottawa, Illinois, representing criminal defendants on appeal to the Illinois Appellate Court and Illinois Supreme Court from any of the twenty-one counties in the Third Appellate District. Appointed Deputy of Second Appellate District Office in Elgin, Illinois, in 1977, becoming responsible for supervising briefing and argument in over 800 appeals from the thirteen counties in the Second District to the Illinois Appellate Court and the Illinois Supreme Court, primarily from felony convictions, including some capital cases, as well as two cases heard by the United States Supreme Court.

## Professional Service

**American Bar Association**

ABA/BNA Lawyer's Manual on Professional Conduct Editorial Board, 2012 to 2015

ABA Standing Committee on Ethics and Professional Responsibility, Member 2007 – 2010

ABA National Conference on Professional Responsibility, Planning Committee, Member 2007 - 2011, Chair 2008 - 2010

ABA Standing Committee on Professional Discipline, Member 1995 – 1997

**Other Bar Association**

Chicago Bar Association Board of Governors (2017-2019)

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

Chicago Bar Association/Chicago Bar Foundation Task Force on the Sustainable Practice of Law and Innovation, Regulating Technology-Based Products and Services Committee Chair (2019 - present)

Illinois Judicial Ethics Committee (2015 - present)

Illinois State Bar Association Task Force on the Future of Legal Services (2015 - 2017)

Illinois State Bar Association Standing Committee on Future of Legal Services (2017 - 2018)

Illinois Supreme Court Special Committee on Professionalism (2001 – 2004)

Illinois Supreme Court Commission on Professionalism, ex officio member (2004 – 2007)

Commissioner, Attorney Registration and Disciplinary Commission of the Illinois Supreme Court (1989 – 1992)

Illinois Supreme Court Committee on Pattern Jury Instructions in Criminal Cases, Member 1988–1991

Illinois State Bar Association: Special Committee on Ancillary Businesses, Task Force on Multi-Disciplinary Practice, Coordinating Committee for Conclave on Legal Education, Criminal Justice Section Council, Committee on Mental Health

Lecturer and panelist for IICLE and bar association courses on criminal law, search and seizure, and appellate practice; coordinator of appellate practice seminar cosponsored by Illinois Appellate Lawyers Association and John Marshall Law School; lecturer for Illinois Appellate Defender training conferences. (1980 – 1991)

***Presentations*** 1992 – present

Lecturer and panelist on professional responsibility issues for, *inter alia*: ABA National Conference on Professional Responsibility; ABA Conference on the Role of the Court in Improving Lawyer Conduct and Professionalism; ABA Symposium on Teaching Professional Responsibility; CoLAP National Conference for Lawyers Assistance Programs; National Organization of Bar Counsel; Federal Bar Association; Association of Professional Responsibility Lawyers; International Association of Defense Counsel; National Association of Consumer Bankruptcy Attorneys; American Bankruptcy Instutute; Illinois Appellate Defender, Illinois

3

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

Attorney General and City of Chicago Law Department in-house training programs; Illinois State Bar Association, Chicago Bar Association, Illinois Trial Lawyers Association, IICLE, PLI, ALI-ABA, Chicago Law Bulletin and various Inns of Court and county bar associations.

### *Law School Teaching*

Northern Illinois University School of Law, Professional Responsibility Course, Spring Semester 1999 – 2004

Northwestern University Law School, Professional Responsibility Course, Spring Semester, 2005

## Education and Licensing

J.D., University of Southern California – 1974

Admitted to practice: Illinois (April 1975), California (January 1975)
Admitted to the bars of the: United States District Court, Northern and Central Districts, United States Court of Appeals for the Seventh Circuit, United States Supreme Court

## Awards

Oct 2006      Illinois Lawyers Assistance Program Carl H. Rolewick Award

June 2007      John Marshall Law School Corporate Law Association Francis D. Morrissey Lifetime Achievement Award

## Publications

Attorneys Legal Liability – 2022 Edition, Chapter 13, *"Disciplinary Liability,"* Illinois Institute of Continuing Legal Education

"*Mandating Civility: Wisdom or Folly?*" ABA The Professional Lawyer, Vol. 22, No. 2 (April 2014)

"*Discipline and Disability: When is Disease a Defense,*" ABA GP SOLO, p. 31 (October/November 2009)

*The Professional Cost of Untreated Addiction and Mental Illness in Practicing Attorneys*, The Professional Lawyer, 2009 Symposium Issue, p. 101 (ABA Center for Professional Responsibility 2009)

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

"*In The End, It's All About The Children: Chicago Attorneys Travel to Africa*," CBA Record, p. 40 (September 2008).

"*Colleagues in Crisis. Collateral Damage: Careers and Families*," The Judges' Journal, American Bar Association, p. 37 (Spring 2008).

"*A Lawyer's Duty To Report Another Lawyer's Misconduct: The Illinois Experience*," The Professional Lawyer, 2007 Symposium Issue, p. 47 (ABA Center for Professional Responsibility 2007).

"*Abusive Tax Shelters: Ethical Pitfalls for Lawyers*," The Professional Lawyer, 2007 Symposium Issue, p. 99 (ABA Center for Professional Responsibility 2007).

"*Avoiding ARDC Anxiety: A Disciplinary Primer*," 84 Ill Bar J 452 (September 1996).

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

# APPENDIX B

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

# Sari W. Montgomery  |  Curriculum Vitae

33 N. Dearborn St., Ste. 1420, Chicago, IL 60604 | (847) 217-3524 | smontgomery@rsmdlaw.com

## Current Position

**Partner**                                                                                           *2019 – Present*
**Of Counsel**                                                                                       *2010-2018*

*Robinson, Stewart, Montgomery & Doppke LLC* (Formerly Robinson Law Group, LLC), Chicago, Illinois

- Represent attorneys in disciplinary investigations, hearings and appeals before the Attorney Registration and Disciplinary Commission of the Supreme Court of Illinois and the Illinois Supreme Court;
- Represent judges in investigations pending before the Illinois Judicial Inquiry Board;
- Represent bar applicants in admissions proceedings before the Illinois Board of Admissions to the Bar, the Committee on Character and Fitness, and the Illinois Supreme Court;
- Provide consulting services and opinion letters to law firms, attorneys, government agencies, and law related business in diverse practice areas regarding legal ethics and professional responsibility issues;
- Provide opinions as an expert witness regarding legal ethics and fee issues; and
- Manage day-to-day operations of law firm including human resources, benefits, payroll, and financial reporting.

**Adjunct Professor**                                                                            **2023 - Present**
*Northwestern University Pritzker School of Law*, Chicago, Illinois
- Teach required course on legal ethics and professional responsibility.

## Prior Professional Experience

**Adjunct Professor**                                                                           *2006 - 2011*
*Loyola University Chicago of Law*, Chicago, Illinois
- Taught a full-year course on legal writing and research to first-year law students.

**Litigation and Senior Litigation Counsel**                                     *1994 - 2004*
*Attorney Registration and Disciplinary Commission of the Supreme Court of Illinois (ARDC)*
- Conducted hundreds of investigations and prosecuted more than fifty disciplinary cases before the Hearing Board of the Attorney Registration and Disciplinary Commission.
- Extensive motion practice before the Hearing Board of the Attorney Registration and Disciplinary Commission and the Illinois Supreme Court.
- Supervised and trained designated counsel and support staff.

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

- Assisted Administrator in developing and implementing agency-wide strategy for prosecuting the first cases in Illinois involving the unauthorized practice of law in numerous practice settings.

**Contract Attorney**                                                                                       *2005*
*Lake County Public Defender, Lake County, Illinois*
- Represented juveniles in misdemeanor and felony delinquency proceedings.
- Represented parents in DCFS proceedings.

## Education, Licenses, and Professional Memberships

**University of Chicago**, Chicago, Illinois, *BA in Public Policy Studies*                     *1991*

**Loyola University Chicago School of Law**, Chicago, Illinois, *Juris Doctor*                 *1994*

**Loyola University School of Law Program in International Law,** *Rome, Italy*             *1992*

**Illinois Supreme Court**, *Admitted*                                                                           *1994*

**United States District Court for the Northern District of Illinois,** *Admitted, General Bar*    *1994*

**American Bar Association Center for Professional Responsibility**, *Member*      *2012 - Present*

*Chair, Standing Committee on Professional Regulation*                              *2024-2027*
*Special Advisor to Standing Committee on Professional Regulation*          *2022 -2024*
*Member, Standing Committee on Professional Regulation*                         *2019 - 2022*
- Selected to participate in consultations conducting 360° evaluations of state lawyer regulatory systems at the request of applicable state Supreme Courts.
- Member, Sub-Committee on Proactive Management Based Regulation (PMBR)
- Member, Joint Sub-Committee on Revisions to ABA Model Rule 1.2(d)

**Association of Professional Responsibility Lawyers (APRL)**, *Member*           *2012 - Present*

- Secretary                                                                                             *2024-2025*
- Treasurer                                                                                             *2023-2024*
- Elected to Board of Directors                                                              *2020 - Present*
- Conference Planning Committee                                                        *2019 – 2020*
                                                                                                             *2023-2024*
- Appointed as APRL Liaison to ABA Committee on Professional Regulation    *2018 - 2019*

**Illinois State Bar Association (ISBA)**, *Member*                                           *1994 - Present*
*Appointed to Committee on Professional Conduct*                                 *2008 - Present*

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

- Past Chair, Committee on Professional Conduct                      ***2014 - 2015***
- Participate in drafting new ethics opinions for benefit of 30,000 member association. Comment on legislation and rule proposals impacting professional conduct issues. Reviewed all pre-2010 ISBA ethics opinions for consistency with 2010 Illinois Rules of Professional Conduct.
- Member of Ethics 20/20 Sub-Committee which reviews all proposals from ABA Ethics 20/20 Committee and makes recommendations for adoption in Illinois.

*Appointed to Standing Committee on Artificial Intelligence and the Practice of Law*

*Appointed to President's Special Committee on Alternative Business Structures*

*Appointed to lead-generation working group to assess ethical implications of various lead-generation business models.*

*Appointed to President's Special Committee on the ARDC Matching Services Study*
- Review ARDC Matching Services Study and formulate recommendations to ISBA Board of Governors to be presented to ARDC and Illinois Supreme Court.

*Appointed to President's Special Committee on Collaborative Law*
- Draft proposed legislation and changes to Supreme Court Rules to facilitate the collaborative law process in a manner consistent with the Rules of Professional Conduct.

**Chicago Bar Association**, *Member*                      ***1994 - Present***
- Board of Managers                      ***2024-Present***
- Member, Committee on Professional Responsibility
- Member, Committee on Unauthorized Practice and Multidisciplinary Practice

**Chicago Council of Lawyers,** *Member*                      ***2020 - Present***
- Member, Committee on Access to Justice

**Lake County Bar Association,** *Member*                      ***2022-Present***
- Member, Outreach and Diversity Committee

**Association of Women Attorneys of Lake County,** *Member*                      ***2022-Present***
- Member, Ethics Seminar Planning Committee

## Publications

Sari W. Montgomery, Legal Ethics: Ethical Challenges of Representing Clients with Diminished Capacity, Business of Law Digest (BridgeTower Media, August 27, 2024—ongoing ethics columnist).

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

Sari W. Montgomery, Legal Ethics: ABA Model Rule Banning Discrimination, Sexual Harassment Remains Controversial, Business of Law Digest (BridgeTower Media, June 25, 2024—ongoing ethics columnist).

Sari W. Montgomery, Legal Ethics: To Respond or Not Respond to Negative Online Reviews, Business of Law Digest (BridgeTower Media, March 26, 2024—ongoing ethics columnist).

Sari W. Montgomery, Legal Ethics: Unauthorized Practice or a Glimpse Into the Future, Business of Law Digest (BridgeTower Media, December 19, 2023—ongoing ethics columnist).

Sari W. Montgomery, Know When to 'Just Say No,' Business of Law Digest (BridgeTower Media, Sept. 26, 2023—ongoing ethics columnist).

Sari W. Montgomery, The Promise and Pitfalls of ChatGPT, Business of Law Digest (BridgeTower Media, July 5, 2023—ongoing ethics columnist).

Sari W. Montgomery, Legal Ethics: You Have Inadvertently Received Privileged Information from Opposing Counsel, Now What?, Business of Law Digest (BridgeTower Media, March 28, 2023—ongoing ethics columnist).

Lucian T. Pera, Mark Armitage, Lydia Lawless, Ronald Minkoff, Sari W. Montgomery, Wendy Muchman, Lynda Shely, Time to Renew America's Lawyer Discipline System, Bloomberg Lawyers' Manual on Professional Conduct (Bloomberg Law, Feb. 2023).

Sari W. Montgomery, The Dos and Don'ts of Using Social Media in Jury Selection, GP Solo, Volume 40, No. 1 (American Bar Association, Solo, Small Firm, General Practice Division, Jan./Feb. 2023).

Sari W. Montgomery, James A. Doppke, Jr., Stephanie Stewart, Ch. 7, Ethical Considerations in Jury Trials, Inside & Outside the Jury Box (IICLE®, 2023).

Sari W. Montgomery, Legal Ethics: How to Avoid Discipline When You've Made a Mistake, Business of Law Insider (BridgeTower Media, December 20, 2022—ongoing ethics columnist).

Mary Robinson, Sari W. Montgomery, James A. Doppke, Jr., Stephanie Stewart, Ch. 13, Disciplinary Liability, ATTORNEY'S LEGAL LIABILITY (IICLE®, 2021).

Sari Montgomery, Scott Kozlov, Nancy Vincent, A Cautionary Tale for In-house Counsel, Illinois Bar Journal, Volume 107, Number 7. (ISBA, 2019).

Contributing Author, Annotated Standards for Imposing Lawyer Sanctions, 2d Ed. (American Bar Association Center for Professional Responsibility, 2019).

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

Mary Robinson, Sari W. Montgomery, James A. Doppke, Jr., Ch. 9, Ethical Considerations in Jury Trials, Inside & Outside the Jury Box (IICLE®, 2019).

Mary Robinson, Sari W. Montgomery, James A. Doppke, Jr., Ch. 13, Disciplinary Liability, ATTORNEY'S LEGAL LIABILITY (IICLE®, 2018).

## Additional Professional Activities and Awards

Subject Matter Expert/Drafting Committee Member (2024-present), Multistate Professional Responsibility Examination (MPRE), National Conference of Bar Examiners, 2018-Present
- Draft, edit and review questions for the Multistate Professional Responsibility Examination

Editorial Advisory Board Member, Law360 Legal Ethics, 2022-2023.

Fellow, American Bar Foundation, 2021-Present.

Outstanding Pro Bono Attorney Award (Individual and Firm), Cook County Public Guardian, 2024.

Pro Bono Service Award, Illinois Lawyers' Trust Fund of Illinois, 2019.

Provide informal ethics opinions as membership benefit to Illinois Creditors' Bar Association.

Trained Intervenor, Illinois Lawyers Assistance Program, 2003.

## Volunteer and Community Activities

**Deerfield Public Schools District 109 Board of Education**          *Elected 2013 - 2025*
Deerfield Public Schools is a Pre-K-8 District located in North Suburban Chicago with approximately 2,800 students, over 400 employees, $70 million annual budget, and seven facilities.

*President, Board of Education*                                        *2021 - Present*

*Secretary, Board of Education*                                       *2015 - 2021*

*Chair,* Executive Development and Negotiations Committees; Past Chair, Finance Committee; Past Member, Policy Committee; Past Board Member Representative, COVID-19 Task Force.

**Township District 113 Caucus**                                      *2018 - 2022*
*Member,* Non-Partisan organization that vets candidates for local public high school district.

**Deerfield Public Schools District 109 Caucus**                      *2010 - 2012*
 *Member*, Non-Partisan organization that vets candidates for local Pre-K-8 public school district.

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

**Community Family Center, Highland Park, Illinois**             *2009 - 2019*
*Secretary, Board of Directors*

*Member, Board of Directors*                                     *2006 - 2019*

**Highland Park Community Early Childhood Center, Highland Park, Illinois**  *2002 - 2010*
*Member, Treasurer, Vice-President, President, Board of Directors*  *2002 - 2010*

*Secretary Board of Directors*                                   *2013 – 2017*

## Presentations and Speaking Engagements

Panelist, Hot Topics in Ethics, NELA-IL Annual Seventh Circuit Conference, National Employment Lawyers Association-Illinois Chapter, September 2024.

Panelist, Practical Advice for Using AI Ethically, The Practice of Law in an AI World Conference, Loyola University Chicago School of Law and Northwestern Pritzker School of Law, September 2024.

Panelist, Surviving the Fireswamp: Ethical Pitfalls When Lawyers Wear Multiple Hats, International Cannabis Bar Association, Cannabis Law Institute, July 2024.

Speaker, Case Study: AI, Human Judgment, and Empathy, Paralegal AI Super User Certificate Course, NBI, July 2024.

Speaker, Ethics of the Virtual Office and Generative AI, Academy of Adoption and Assisted Reproduction Attorneys (AAAA) Annual Meeting, Milwaukee, WI, May 2024.

Speaker, Ethical Issues in Generative AI, Lake County Bar Association, April 2024.

Panelist, Generative AI in the Legal Profession, State Bar of California Committee on Professional Responsibility and Conduct (COPRAC) Annual Symposium, April 2024.

Speaker, Ethical Issues in Advanced Licensing Including Generative AI, Practising Law Institute, April 2024.

Moderator/Panelist, Lawyer as Therapist—Dealing with Clients in Crisis, Association of Professional Responsibility Lawyers Mid-Year Meeting, Louisville, KY, February 2024.

Moderator/Panelist, Legal Ethics and AI, LawDroid First Annual AI Conference, January 2024.

Panelist, Representing Clients with Diminished Capacity: Ethical Obligations and Best Practices, American Bar Association Standing Committee on Legal Aid and Indigent Defense and ABA Center for Professional Responsibility, January 2024

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

Co-Presenter, Ethics for New Attorneys, Illinois State Bar Association, January 2024.

Panelist, Hot Topics in Ethical Issues Including the Use of AI and the New Illinois Judicial Ethics Code, Chicago Bar Association Business Divorce and Complex Ownership Disputes Committee, December 2023.

Panelist, Special Industry Roundtable: Changing Rules for the Unauthorized Practice of Law and the Effect on the LPL Insurance Industry, American Bar Association National Legal Malpractice Conference, September 2023.

Facilitator, DePaul University School of Law Professionalism Orientation, Illinois Supreme Court Commission on Professionalism, September 2023.

Panelist, Generative AI and the Legal Profession: "Ask the Experts," Lemme Law firm Best Practices Forum, September 2023.

Panelist, Exploring the Next Frontier: Generative AI and the Challenges of New Technologies, Association of Professional Responsibility Lawyers Annual Meeting, August 2023, Denver, CO.

Panelist, Ethics Issues of Bots Practicing Law, Practising Law Institute, June 2023.

Panelist, Changing 5.5—In Our Lifetimes?, Chicago Bar Association Legal Ethics One-and-Done Professional Responsibility Overview, June 2023.

Speaker, Tips on What to Expect and How to Respond to an ARDC Inquiry, Lake County Bar Association, May 2023.

Panelist, Lawyer Mobility: Risks and Rewards, Joint Meeting of the Association of Professional Responsibility Lawyers and the Law Society of England and Wales, April 2023, Washington, D.C.

Speaker, Ethical Issues in Advanced Licensing, Practising Law Institute, April 2023.

Panelist, UPL: Anachronism or Necessary Regulation, American Bar Association National Legal Malpractice Conference, April 2023, San Juan, Puerto Rico.

Moderator, Bots Practicing Law: Where is the Line?, Association of Professional Responsibility Lawyers Mid-Year Meeting, February 2023, New Orleans, LA.

Moderator, Bots Practicing Law: Where is the Line?, American Bar Association UPL School, October 2022.

Facilitator, DePaul University School of Law Professionalism Orientation, Illinois Supreme Court Commission on Professionalism, August 2022.

Panelist, Changing 5.5—In Our Lifetimes? (Part 2 of 2), Association of Professional Responsibility Lawyers Annual Meeting, August 2022.

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

Panelist, First Amendment—Choose Your Own Adventure, National Organization of Bar Counsel Annual Meeting, August 2022.

Panelist, Ethics of Lawyer Transitions, Chicago Bar Association, June 2022.

Panelist, Regulating Lawyers: Will We See 5.5 Changes in this Decade? (Part 1 of 2), Association of Professional Responsibility Lawyers Mid-Year Meeting, February 2022.

Panelist, The Exhilarating World of Material Adversity and Other Adrenaline-Charged Conflict of Interest Discussions, National Organization of Bar Counsel Mid-Year Meeting, February 2022.

Facilitator, DePaul University School of Law Professionalism Orientation, Illinois Supreme Court Commission on Professionalism, August 2021.

Co-Presenter, Basic Skills Course, Illinois State Bar Association, June 2021.

Speaker, Advanced Licensing: IP Ethics Issues, Practising Law Institute, May 2021, April 2022.

Panelist, Technology and Ethics: What Every Lawyer Should Know, New York State Bar Association, April 2021.

Speaker, Landscape of Regulatory Innovation and Reform Efforts, ABA Bar Leadership Institute, March 2021.

Panelist, Guess What! Your Online Mediation is Not Confidential, ABA Section of Litigation, December 2020.

Panelist, 2020 Tech Summit: Pajamas & Professionalism: Standards and Ethics for New Surroundings, New Tech and New Social Media Users, New York State Bar Association Tech Summit, November 2020.

Panelist, Be Prepared: Practical Advice and Ethical Considerations for Succession Planning, Mergers and Acquisitions, Closures and Retirement, National Collectors Bar Association, September 2020.

Facilitator, UIC School of Law Professionalism Orientation, Illinois Supreme Court Commission on Professionalism, August 2020.

Co-Presenter, Ethical Issues Update; Defending/Avoiding Ethics Investigation; Ethics and Technology Use in Legal Practice, Practising Law Institute Ethics Marathon, July 2020.

Moderator, Social Media Issues: Addressing Negative Online Reviews, Geo-Fencing and More, Including What is Permitted vs. Practical, and the Malpractice Carrier's Perspective, Association of Professional Responsibility Lawyers Mid-Year Meeting, Austin, Texas, February 2020.

Co–Presenter, When Practice Collides with the Rules: Ethical Issues in the Collections Practice, Illinois Collections Bar Association, February 2020.

Panelist, Unauthorized Practice – Crossing Borders, Chicago Bar Association, November 2019.

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

Moderator, Why Do People Lie and Why Should We Care? The Movie, The Director, and Legal Ethics, Association of Professional Responsibility Lawyers Annual Meeting, San Francisco, CA, 2019.

Facilitator, DePaul University School of Law Professionalism Orientation, Illinois Supreme Court Commission on Professionalism, August 2019.

Panelist, Professional Responsibility Implications of Evolving Technology and Other Emerging Trends, ABA Lawyers' Professional Liability Young Professionals Event, 2019.

Speaker, Legal Ethics 101: Avoiding Common Mistakes and Conducting Your Practice with Honesty and Integrity, National Academy of Continuing Legal Education, 2019.

Panelist, Basic Skills for New Lawyers Series, Ethical Dilemmas for New Attorneys, Illinois State Bar Association, 2018.

Panelist, NOBC Ethics Roundtable (presented on Cryptocurrency, Email Tracking Software, and Of Counsel Relationships), National Organization of Bar Counsel Annual Meeting, Chicago, Illinois, 2018.

Speaker, Multijurisdictional Practice: How to Cross Borders Without Crossing Ethical Lines, Practising Law Institute Ethics Marathon, 2018.

Panelist, Secret of the Citation Act and Tips for Enforcing Judgments: Professional Rules v. Collection Practice: Know and Avoid the Conflicts, Illinois State Bar Association, 2018.

Panelist, Basic Enforcement of Judgments: Ethical Issues in Collection Practice, Illinois Institute of Continuing Legal Education, 2018.

Panelist, the Adjudicator's Perspective – A Peek Behind the Curtain, National Organization of Bar Counsel Mid-Year Meeting, Vancouver, British Columbia, 2018.

Speaker, The Ethical Defender: Conflict of Interest and Other "Hot Button" Ethical Issues in Public Defense, Illinois Public Defender Association Fall Meeting, 2017.

Panelist, Ethics of Limited Scope Representation, Chicago Bar Foundation Limited Scope Representation Seminar, 2017.

Panelist, Ethics and Technology, Illinois Legal Aid Advocates Conference, 2017.

Speaker, Limited Scope Representation: When Less is More, Illinois State Bar Association, 2016.

Panelist, Ethical Pitfalls for Attorneys Managing Multi-State Practices, National Association of Retail Collection Attorneys Annual Meeting, 2016.

Speaker, Tips on What to Expect and How to Respond to an ARDC Inquiry, North Suburban Bar Association, 2015.

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

Speaker, Legal Ethics 2013: Hot Topics in Technology and Communication, Lorman Education Services, 2013.

Speaker, Ethical Issues in Collection Practice, Illinois Creditors' Bar Association, 2011.

Panelist, Ethical Issues in Collection Practice: Where Professional Rules Conflict with the Realities of the Collection Process, National Association of Retail Collection Attorneys Annual Meeting, 2011.

Speaker, Illinois' New Rules of Professional Conduct: A Comprehensive Overview, Illinois State Bar Association Mid-Year Meeting, 2009.

Speaker, Illinois' New Rules of Professional Conduct: An Initial Overview, Illinois State Bar Association, 2009.

Panelist, Sex, Death and Money: A Discussion of Self-dealing Conflicts of Interest, National Organization of Bar Counsel Mid-Year Meeting, San Antonio, TX, 2004.

Panelist, Mentoring of Less Experienced or Newer Assistant Bar Counsel, National Organization of Bar Counsel Mid-Year Meeting, San Diego, CA, 2001.

Panelist, Defending a Case Before the ARDC: From the "Letter" to the Final Order, Chicago Bar Association, 1997.

## Expert Engagements

*Ansur America Insurance Co. v. Borland, et. al.,* Case No. 3:21-CV-0059, U.S. District Court, Southern District of Illinois (Plaintiff expert re: conflict of interest, competence, communication—Disclosures/Report submitted, deposed, matter pending).

*Confidential,* Disqualification matters re: former government lawyers—(Defense expert-- Reports submitted, matters pending).

*Confidential*, Pre-litigation disqualification matter involving government investigation into industry. (Defense/target expert re: conflicts of interest—Report submitted, matter closed).

*Fredman v. Andrew David Bell, and Spain, Spain & Varnet, P.C.,* Case No. 2019L007867, Circuit Court of Cook County (Plaintiff expert re: conflicts of interest—Disclosures submitted, deposed, matter settled/dismissed).

*Guidish v. Guidish, et.al.,* Case No. 2018 CH 7270, Circuit Court of Cook County. (Plaintiff expert re: conflicts of interest—Report submitted, matter closed).

*John v. Wheaton College*, Case No. 2011L000995, Circuit Court of DuPage County. (Expert for Plaintiff/Counter-Defendant re: reasonableness of attorneys' fees claimed as discovery sanction—Report submitted, deposed, matter settled/dismissed).

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

*Basista, et.al. v. Alms,* Case No. 16 L 004795, Circuit Court of Cook County. (Plaintiff expert re: fiduciary duties owed by attorney for estate—Disclosures submitted, deposed, matter settled).

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB

# EXHIBIT A

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

**RASHAD WALSTON vs NATIONAL RETAIL SOLUTIONS, INC.**
**Rahad W. Walston on 04/26/2024**

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

**RASHAD WALSTON vs NATIONAL RETAIL SOLUTIONS, INC.**
**Rahad W. Walston on 04/26/2024**

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

**RASHAD WALSTON vs NATIONAL RETAIL SOLUTIONS, INC.**
**Rahad W. Walston on 04/26/2024**

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

**RASHAD WALSTON vs NATIONAL RETAIL SOLUTIONS, INC.**
**Rahad W. Walston on 04/26/2024**

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

**RASHAD WALSTON vs NATIONAL RETAIL SOLUTIONS, INC.**
**Rahad W. Walston on 04/26/2024**

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

**RASHAD WALSTON vs NATIONAL RETAIL SOLUTIONS, INC.**
**Rahad W. Walston on 04/26/2024**

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

**RASHAD WALSTON vs NATIONAL RETAIL SOLUTIONS, INC.**
**Rahad W. Walston on 04/26/2024**

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

**RASHAD WALSTON vs NATIONAL RETAIL SOLUTIONS, INC.**
**Rahad W. Walston on 04/26/2024**

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

**RASHAD WALSTON vs NATIONAL RETAIL SOLUTIONS, INC.**
**Rahad W. Walston on 04/26/2024**

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

**RASHAD WALSTON vs NATIONAL RETAIL SOLUTIONS, INC.**
**Rahad W. Walston on 04/26/2024**

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

**RASHAD WALSTON vs NATIONAL RETAIL SOLUTIONS, INC.**
**Rahad W. Walston on 04/26/2024**

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

**RASHAD WALSTON vs NATIONAL RETAIL SOLUTIONS, INC.**
**Rahad W. Walston on 04/26/2024**

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

**RASHAD WALSTON vs NATIONAL RETAIL SOLUTIONS, INC.**
**Rahad W. Walston on 04/26/2024**

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

**RASHAD WALSTON vs NATIONAL RETAIL SOLUTIONS, INC.**
**Rahad W. Walston on 04/26/2024**

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

**RASHAD WALSTON vs NATIONAL RETAIL SOLUTIONS, INC.**
**Rahad W. Walston on 04/26/2024**

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

**RASHAD WALSTON vs NATIONAL RETAIL SOLUTIONS, INC.**
**Rahad W. Walston on 04/26/2024**

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

**RASHAD WALSTON vs NATIONAL RETAIL SOLUTIONS, INC.**
**Rahad W. Walston on 04/26/2024**

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

**RASHAD WALSTON vs NATIONAL RETAIL SOLUTIONS, INC.**
**Rahad W. Walston on 04/26/2024**

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

**RASHAD WALSTON vs NATIONAL RETAIL SOLUTIONS, INC.**
**Rahad W. Walston on 04/26/2024**

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

**RASHAD WALSTON vs NATIONAL RETAIL SOLUTIONS, INC.**
**Rahad W. Walston on 04/26/2024**

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

**RASHAD WALSTON vs NATIONAL RETAIL SOLUTIONS, INC.**
**Rahad W. Walston on 04/26/2024**

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

**RASHAD WALSTON vs NATIONAL RETAIL SOLUTIONS, INC.**
**Rahad W. Walston on 04/26/2024**

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

**RASHAD WALSTON vs NATIONAL RETAIL SOLUTIONS, INC.**
**Rahad W. Walston on 04/26/2024**

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

**RASHAD WALSTON vs NATIONAL RETAIL SOLUTIONS, INC.**
**Rahad W. Walston on 04/26/2024**

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

**RASHAD WALSTON vs NATIONAL RETAIL SOLUTIONS, INC.**
**Rahad W. Walston on 04/26/2024**

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

**RASHAD WALSTON vs NATIONAL RETAIL SOLUTIONS, INC.**
**Rahad W. Walston on 04/26/2024**

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

**RASHAD WALSTON vs NATIONAL RETAIL SOLUTIONS, INC.**
**Rahad W. Walston on 04/26/2024**

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

**RASHAD WALSTON vs NATIONAL RETAIL SOLUTIONS, INC.**
**Rahad W. Walston on 04/26/2024**

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

**RASHAD WALSTON vs NATIONAL RETAIL SOLUTIONS, INC.**
**Rahad W. Walston on 04/26/2024**

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

**RASHAD WALSTON vs NATIONAL RETAIL SOLUTIONS, INC.**
**Rahad W. Walston on 04/26/2024**

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

**RASHAD WALSTON vs NATIONAL RETAIL SOLUTIONS, INC.**
**Rahad W. Walston on 04/26/2024**

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

**RASHAD WALSTON vs NATIONAL RETAIL SOLUTIONS, INC.**
**Rahad W. Walston on 04/26/2024**

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

**RASHAD WALSTON vs NATIONAL RETAIL SOLUTIONS, INC.**
**Rahad W. Walston on 04/26/2024**

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

**RASHAD WALSTON vs NATIONAL RETAIL SOLUTIONS, INC.**
**Rahad W. Walston on 04/26/2024**

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

**RASHAD WALSTON vs NATIONAL RETAIL SOLUTIONS, INC.**
**Rahad W. Walston on 04/26/2024**

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

**RASHAD WALSTON vs NATIONAL RETAIL SOLUTIONS, INC.**
**Rahad W. Walston on 04/26/2024**

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

**RASHAD WALSTON vs NATIONAL RETAIL SOLUTIONS, INC.**
**Rahad W. Walston on 04/26/2024**

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

**RASHAD WALSTON vs NATIONAL RETAIL SOLUTIONS, INC.**
**Rahad W. Walston on 04/26/2024**

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

**RASHAD WALSTON vs NATIONAL RETAIL SOLUTIONS, INC.**
**Rahad W. Walston on 04/26/2024**

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

**RASHAD WALSTON vs NATIONAL RETAIL SOLUTIONS, INC.**
**Rahad W. Walston on 04/26/2024**

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

**RASHAD WALSTON vs NATIONAL RETAIL SOLUTIONS, INC.**
**Rahad W. Walston on 04/26/2024**

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

**RASHAD WALSTON vs NATIONAL RETAIL SOLUTIONS, INC.**
**Rahad W. Walston on 04/26/2024**

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

**RASHAD WALSTON vs NATIONAL RETAIL SOLUTIONS, INC.**
**Rahad W. Walston on 04/26/2024**

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

**RASHAD WALSTON vs NATIONAL RETAIL SOLUTIONS, INC.**
**Rahad W. Walston on 04/26/2024**

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

**RASHAD WALSTON vs NATIONAL RETAIL SOLUTIONS, INC.**
**Rahad W. Walston on 04/26/2024**

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

**RASHAD WALSTON vs NATIONAL RETAIL SOLUTIONS, INC.**
**Rahad W. Walston on 04/26/2024**

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

**RASHAD WALSTON vs NATIONAL RETAIL SOLUTIONS, INC.**
**Rahad W. Walston on 04/26/2024**

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

**RASHAD WALSTON vs NATIONAL RETAIL SOLUTIONS, INC.**
**Rahad W. Walston on 04/26/2024**

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

**RASHAD WALSTON vs NATIONAL RETAIL SOLUTIONS, INC.**
**Rahad W. Walston on 04/26/2024**

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

**RASHAD WALSTON vs NATIONAL RETAIL SOLUTIONS, INC.**
**Rahad W. Walston on 04/26/2024**

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

**RASHAD WALSTON vs NATIONAL RETAIL SOLUTIONS, INC.**
**Rahad W. Walston on 04/26/2024**

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

**RASHAD WALSTON vs NATIONAL RETAIL SOLUTIONS, INC.**
Rahad W. Walston on 04/26/2024     Index: $1,000.00..20

**$**

**$1,000.00**
91:20
92:1,7

**$1,500.00**
121:2,3
145:6
146:7,13,
16

**$10** 155:4

**$10,000.00**
80:9,11
121:13
158:2

**$10,500.00**
120:10
121:6

**$100.00**
154:21
155:12
156:3,19

**$11,000.00**
80:11

**$15** 188:3,7

**$2,500.00**
158:1,2

**$247** 69:10,
14

**$3,000.00**
124:5

**$4** 159:11,
19

**$4,000.00**
124:5,14
125:13

**$5** 155:5,11
159:20
188:6

**$5,000.00**
124:6,15
125:14

**$500.00**
145:5
146:7,12,
16

**$55.00**
159:11

**$600,000.00**
157:23

**$800.00**
124:1,3,11
125:3,11,
22 126:2,4

**$9,800.00**
120:18
121:9,11
123:17,22
124:7
126:10
173:23
174:23
175:4
176:13,21
177:4
189:3

**$97** 69:11

**0**

**04** 78:20

**08** 55:23

**09** 55:24

**1**

**1** 43:2,8
119:3
128:9,18,
20 131:7,
24 186:21

**10** 136:12

**100** 17:6
79:24
80:24
81:15 91:8
103:3
110:17
111:1,2
112:11,19
115:10,11
116:14
140:10
147:11
150:1
167:3,14,
22 168:12
176:11

**10:01** 141:6

**10:18** 56:22

**10:20** 57:5

**10:53** 89:21

**111** 4:7

**11:09** 90:2

**12:08** 141:1

**12th** 84:1

**14** 69:8
70:7

**15** 64:7
66:9 69:9
154:15,17

**17** 155:1

**17th** 54:11

**18** 111:11,
14,16
112:5
115:15
144:9

**19** 95:14

**1997** 14:21

**1998** 15:12

**19th** 119:9

**1:24-CV-00083**
4:15

**1:37** 172:18

**1:59** 172:23

**2**

**2** 52:12
105:24
106:1

**20** 54:4
95:14

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

**RASHAD WALSTON vs NATIONAL RETAIL SOLUTIONS, INC.**
Rahad W. Walston on 04/26/2024                Index: 200010's..8

**200010's**
  22:4

**2000s**  77:17

**2003**  13:21
  15:13
  54:3,10

**2004**  53:10
  54:2,3,9,
  11 77:10,
  22

**2005**  54:17

**2008**  56:5

**2009**  13:14
  21:18 22:3
  37:9 56:5

**2010**  84:2

**2011**  78:20

**2013**  22:7,
  14,17,23
  23:6,17
  24:8,12
  37:9 38:9

**2017**  187:9,
  11

**2018**  84:1,
  8,17 90:9

**2021**  90:9
  111:11

**2022**  110:20
  119:5,21

**2023**  28:19
  119:6,9,16
  173:14

  184:20

**2024**  4:4
  176:8

**20th**  106:16
  107:6
  108:13,24
  109:8
  196:7

**21st**  83:24

**22**  107:19

**25**  29:21
  107:20

**254**  140:17

**257**  139:13

**26**  4:4

**28**  155:4

**2:22**  197:23

_____

**3**

**3**  58:6,10,
  16 59:4
  60:20,22
  95:13
  105:24
  106:1,9,13
  108:9
  194:16,21

**3/31/2004**
  54:16

**30**  36:17

**30th**  54:10
  56:4

**32**  102:19

**35**  104:2,5

**357**  45:23
  46:1,15
  50:11,19
  52:20 53:2

**36**  155:3

**3rd**  54:16
  176:8

_____

**4**

**4**  43:19
  63:4 92:15
  101:17
  126:16
  135:2

**4,900**  139:11

**4/14/79**
  14:14

**4088**
  133:20,24
  134:24

**45**  14:17
  36:17

**4th**  106:16
  107:6
  108:13,24
  109:8
  196:7

_____

**5**

**5**  45:4 64:7
  105:19

  107:15
  131:23

**50**  151:7

_____

**6**

**6**  117:3,12
  126:15
  127:5
  128:18,20
  179:13

**6th**  187:9,
  11

_____

**7**

**7**  43:19
  45:4 104:2
  106:13
  128:10
  129:3
  131:7
  152:14
  154:5
  186:22
  188:1
  196:3

**7th**  56:5

_____

**8**

**8**  66:9
  157:6
  159:9

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

**RASHAD WALSTON vs NATIONAL RETAIL SOLUTIONS, INC.**
Rahad W. Walston on 04/26/2024                    Index: 9..agree

**9**

**9**  168:16,22
  173:19
  188:21

**90**  23:10,13

**90s**  77:17

**97**  15:13

**9:09**  4:5

**9:42**  35:6

**9:52**  35:11

**A**

**A.M.**  4:5
  35:6,11
  56:22 57:5
  89:21 90:2

**AAA**  21:15

**abilities**
  193:3

**ability**
  167:6

**absolutely**
  56:11
  165:8
  179:8

**accept**  189:3

**acceptable**
  87:22

**access**  63:6
  67:18
  185:11,16

**accident**
  144:2,5,9,
  15

**account**
  118:23

**accounting**
  47:15,17,
  18 92:11

**accounts**
  135:23,24

**accumulated**
  84:19

**accumulates**
  169:11

**accumulation**
  140:4

**accurate**  7:6
  71:6
  108:19
  140:10

**accurately**
  48:19
  124:10

**Act**  78:6,7
  181:16

**action**  79:22
  82:6 92:23
  146:8
  147:13,14,
  15,21
  148:4
  149:4,5,14
  150:5
  188:13,17

**actions**
  81:18,23
  82:5,24
  85:3
  148:13
  150:20
  153:16

**active**  136:6
  139:23

**actual**  48:23
  61:3 67:24
  74:7
  140:18

**Ad**  27:14,15

**added**  96:23,
  24

**additional**
  73:7 115:7
  169:7

**address**  6:9
  30:17
  104:9
  118:23
  163:19
  165:16,19,
  21

**administered**
  5:5

**administrative**
  154:22

**advertising**
  27:17

**advocate**
  142:18,21

**affected**
  143:13,14,
  16 191:22

**affiliate**
  26:17,21,
  23 28:3
  42:14
  48:10
  49:9,17,18
  51:20,21

**affiliated**
  66:17
  67:8,12
  159:3,4

**afflicted**
  147:18
  191:16

**afford**
  120:16
  124:21
  125:21

**afforded**
  146:4

**affords**
  146:18

**agencies**
  65:1 66:3
  86:9

**agency**
  17:15,17,
  24 38:10
  44:8

**agree**  34:4
  109:12,13
  167:21

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

**RASHAD WALSTON vs NATIONAL RETAIL SOLUTIONS, INC.**
Rahad W. Walston on 04/26/2024          Index: agreed..areas

168:10

agreed  5:18
6:5 33:20
173:22
174:23

agreeing
45:1,2

agreement
159:24
160:16
162:2

ahead  93:5
111:20
112:10
141:14
149:22
161:2
175:21

alert  183:6

Alex  99:16,
18 100:22
101:12
109:24

Allard
154:11
186:23
187:15,17

allegations
132:3

allegedly
75:8

alottment
91:19

alter  118:10

Amazon  23:20
24:3,4,9
40:20 51:4

America
151:21

American
73:4 74:16
78:13
88:15
151:22,23
180:3

amount  89:7
118:20
120:17
121:3
123:11
145:1,20
146:9
149:19
150:21,22
156:20
159:18
167:20

amounts
124:4
154:20

analyses
102:8

analysis
101:18
111:10

analyze
111:14
112:17

angry  197:12

animosity
34:18

annoyance
100:1,2

annoyed
33:11
99:19
100:20

annoying
98:15,16
101:7
110:4,9

answering
10:5
136:18
137:9,20

answers  8:7
38:11
184:3

Anthony  4:1

anticipating
53:24

apiece
145:24

apologize
122:20
146:20
179:18
197:16

apologized
122:7
197:5

apologizing
122:17,19,

23

apology
122:11,15

app  127:22

apparel
138:18

apparent
34:12

appeared
15:16 16:4
21:14

appears  84:7
102:19
103:13
108:10

approached
44:8,20

approval
125:2

approve
167:6,12

approximately
16:12
17:19 23:5
90:11,21
160:5

April  4:4
55:23 56:5

area  33:1
35:22
36:1,2
71:14

areas  118:21

RASHAD WALSTON vs NATIONAL RETAIL SOLUTIONS, INC.
Rahad W. Walston on 04/26/2024          Index: argue..background

**argue** 165:1
166:19

**arm** 48:21

**arrested**
77:4

**articles**
72:17

**asks** 131:24

**assume** 10:19

**assuming**
101:12
102:9
105:12

**assumption**
168:11,13
171:2,6

**asterisk**
104:11,14

**ate** 100:12

**attached**
48:13
128:3
133:3

**attachments**
126:15

**attempt**
166:7

**attempted**
96:1
163:20
189:3

**attempts**
51:22

165:16
181:21

**attend**
148:3,5

**attorney**
27:21
61:18
70:21
71:3,11
73:23
74:22
92:24
102:1
113:17,19
116:8
143:19
151:11
155:11,15
156:9,16
159:16
160:17
188:6

**attorney's**
154:10
157:7

**attorney/
client**
161:22
162:11

**attorneys**
75:24
85:23 92:8
162:4

**audible**
9:10,15

**audio** 113:10

**authority**
125:17,18,
22,24
126:1,4

**authorize**
190:17

**authorized**
191:10

**average** 66:5
74:16
78:13
88:15,16
180:3

**avoid** 120:14

**award**
186:10,14,
17

**awarded**
146:12
188:9

**awards** 145:7
152:19,20
153:24
154:11
157:14
186:3,4,8

**aware** 12:15
29:6
136:21
137:13,23
150:4
153:12
173:21
174:6,8,14

186:7
189:2,6

———————

**B**

———————

**back** 7:12
18:4,6,7,
13 24:4
35:10
36:3,23
38:18,24
42:13
45:10 56:9
57:4 77:16
78:17,18
79:9 88:24
90:1
95:19,21
98:20 99:8
107:12
108:8
111:11
119:17
122:14
124:12,16,
23 125:5,
7,8,9,19
131:22
141:5
148:21
162:3,6
164:12
172:22
197:3

**background**
14:23
69:17 77:1

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

**RASHAD WALSTON vs NATIONAL RETAIL SOLUTIONS, INC.**
Rahad W. Walston on 04/26/2024          Index: bad..break

**bad** 84:11
  180:2

**ballpark**
  23:10

**bankruptcy**
  77:7,14,23
  78:3,19

**Barclays**
  82:6,23

**based** 20:10
  75:15
  118:7
  120:7
  161:18

**basic** 27:8

**basically**
  24:21
  46:20
  53:18 59:5
  64:20
  67:21
  123:16
  124:9,11
  125:11
  130:4
  149:18

**basics** 9:1

**basis** 5:23
  6:1
  148:20,21
  150:11
  181:24

**BCH** 53:5,11

**bear** 8:9

14:24

**beep** 182:15
  193:19
  194:10
  195:23

**beeps**
  182:15,22
  189:21
  193:9
  195:10

**began** 110:13
  166:1
  193:9
  194:9

**begin** 189:20
  195:10

**beginning**
  101:2,6
  182:16
  196:21

**begins** 72:24

**begs** 76:11

**behalf** 4:11
  68:7 160:7

**believes**
  106:14
  107:4
  108:11
  196:5

**belittle**
  163:20

**bell** 81:21

**benefit**
  38:13

**big** 66:7
  136:9

**birthdate**
  14:13

**birthday**
  14:15

**Bistro** 45:5,
  8

**bit** 14:23
  30:11
  34:11,22
  36:11,12
  43:14
  45:11
  55:16
  69:16
  78:24
  145:8
  146:8
  179:18

**Blitt** 85:11,
  13 86:13

**block** 96:24
  97:1,10,
  14,15

**blocked**
  97:3,7,18,
  23 98:3,5,
  10,12
  114:16,21,
  23,24
  126:21
  127:15,16,
  17 128:20
  129:2,12,
  17,20

**130:3,8,9,**
  14,22

**blocking**
  127:22
  128:1

**blue** 187:7

**book** 61:3

**booth** 139:8

**boss** 37:19

**bottom** 64:5
  104:15
  120:7
  127:14

**bought** 50:16
  73:10

**Boulevard**
  4:8

**box** 170:18
  171:4

**break** 10:2,
  10 15:19,
  21,22 16:1
  17:11,12,
  23 30:10
  35:7
  36:10,17
  69:18 77:2
  83:15
  89:17
  140:23
  172:15
  177:11,15
  192:15
  197:1

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

RASHAD WALSTON vs NATIONAL RETAIL SOLUTIONS, INC.
Rahad W. Walston on 04/26/2024          Index: breaks..calls

**breaks** 192:9

**briefly**
55:14
77:11
89:12
188:10

**bring** 179:7
190:20,23
191:3

**bringing**
80:19

**brought**
150:9

**BSH** 157:8

**bucks** 151:7

**bullet** 64:2
65:7,21

**bullied**
191:2

**Bureau** 18:8,
10,12
61:17 65:5

**business**
28:14 29:3
30:2,5,9,
13,23
45:12,15,
17,22
46:1,6,10
47:7,11,
16,17,18,
24 48:9,
12,18
51:14,24

52:2
54:22,23
55:2 56:6
99:6
117:21
133:23
134:9
135:6
136:8

**businesses**
28:24 30:8
45:13,21
46:4 47:4
48:2,14,
22,23 49:7
52:6,16
55:6,7
134:9

**bustle** 36:4

**buy** 63:13

_____

_____
**C**
_____

**California**
13:10

**call** 39:6
86:4 93:24
94:12
95:19,21
98:4 99:4,
18 100:10
101:4
102:15
105:8
106:4,6
121:20,22
124:23

125:5,7,8,
9,19
127:13,22
129:23
130:24
136:19
137:3,10
163:17
164:11,12,
15,18
165:3
166:3,14
170:17

**call-blocking**
172:9

**called** 5:8
39:3 47:8
48:5 52:2
53:5 54:14
67:14
68:17
85:11
96:6,10
98:20
100:13
101:18
111:11
115:14
119:19
123:1
130:1
164:10
165:9
190:3,6

**calling** 50:5
98:22 99:8
100:5,6

130:21
165:22
173:3
174:3

**calls** 70:19
71:13
72:8,9,10
74:10,18
75:16
76:7,15,
18,22
78:11
86:6,16
88:5 93:17
97:3,9,11,
12,23 98:5
102:15
106:15,16
107:4,6
108:12,13,
24 109:8
110:8,14,
18,21,24
111:3,14,
17 112:18
115:1
116:16
119:17,22
120:2
127:16,17
128:18
129:17
130:3,5,8
133:12
136:14,18,
19 137:10,
12,21
142:12

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

RASHAD WALSTON vs NATIONAL RETAIL SOLUTIONS, INC.

Rahad W. Walston on 04/26/2024          Index: camera..Christian

143:10,24
146:10
156:4
174:10
181:23
185:2,3
189:12
196:6,7,10

**camera**   4:3

**campus**   18:21

**campuses**
77:19

**capacity**
99:4
170:10

**Capital**
81:19
82:5,22
85:15

**caption**   44:7

**captioned**
4:13

**Carbondale**
13:18

**card**   77:18
83:5

**carries**
82:13

**carry**   197:13

**case**   4:13,
15  11:20
13:4 43:19
69:19
72:10

85:11
90:17,19
91:5 92:2,
7,11 93:20
102:24
120:22
133:19
144:20
146:23
147:2
148:2,6,8
149:12,14
154:12
155:9
156:3,21,
23 157:9,
15,18,21
158:18,22
159:6
160:23
161:8
162:19
163:12
166:24
178:20
186:11,14,
18,24
187:3,5
190:14,15,
16 191:5

**cases**   90:8
91:17 92:5
153:1,4
154:1
159:20

**cash**   65:22
71:13,16

74:10
75:16
111:10

**category**
49:8

**caught**   77:21

**caused**   77:13
95:4,7
96:19
114:11
130:7
137:2,24

**cell**   102:12
134:11

**cellular**
173:5

**Census**   18:8,
9,12

**center**   39:4

**CEO**   122:3
164:12
165:4

**chance**   43:6
111:4
168:20

**change**   8:3
186:17

**changed**
38:1,3,5
57:20
197:4

**chapters**
140:7

**characterizati
on**   33:22

**characterize**
48:19 76:7

**charge**
159:17

**charged**
69:14 77:5
102:14

**check**   98:4
125:23

**checking**
183:17

**Chicago**   4:8
14:12
21:23
22:1,8,15
25:7
29:17,20
32:17
33:4,9
36:4 37:4
51:15 79:3

**chief**
117:15,24

**children**
21:6 70:2

**choose**   39:7

**chose**   117:23

**chosen**
142:21

**Christian**
37:15

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

RASHAD WALSTON vs NATIONAL RETAIL SOLUTIONS, INC.
Rahad W. Walston on 04/26/2024        Index: Christy..commission

Christy
  157:14

circle
  128:14

circumstances
  77:12

citizen  66:6
  73:4  78:14
  87:1  88:15
  151:23
  156:9
  180:3

citizens
  74:17
  87:14

city  29:16
  32:22  33:8

civil  4:11
  34:10  81:8
  120:15

claim  106:5
  120:21
  181:19
  182:4

claimant
  154:21
  155:12

claims  132:4
  133:7

clarification
  5:21

clarify
  46:12  81:1
  118:16

class  145:7
  146:7
  147:2,14,
  15,17,21
  149:5,13,
  15,18
  150:5,6,
  10,20
  151:6
  152:8,18,
  20  153:14,
  15,16
  154:20
  155:2,8,10
  158:6,8
  159:10
  160:19
  179:10
  186:3
  188:13,17,
  19  190:15,
  16,18,21,
  24  191:3,
  5,9,10,13

classroom
  39:17

clean  9:22
  169:15

clear  45:24
  59:1,2
  67:1  69:13
  93:23
  94:10
  98:14
  101:8
  111:15
  115:2

126:8
127:21
143:2
169:4

cleared
  170:9

clerk  39:15

click  59:12,
  15,19,22

client
  33:23,24
  67:14,16,
  23  68:7
  93:14
  113:14
  115:14
  148:19
  153:2

client's
  142:8

close  29:16
  169:21,22
  172:15
  183:3,10

cluster
  85:19,20

clustered
  84:8

codes  112:14

cold  50:15
  65:22

collaborated
  109:14

collaborative
  168:9

colleague
  4:19  6:15
  56:20

collect
  64:23
  87:12,21

collection
  66:2  78:7
  82:24
  85:17,23
  86:9  88:1

Collections
  81:23

college
  15:7,23
  16:16,17,
  19,20,24
  17:11,24
  18:4,13,17
  19:3,9,11,
  16  40:13
  77:19

combination
  60:17  62:1

combined
  46:8

comfortable
  36:22

comments
  196:22

commission
  49:13

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

**RASHAD WALSTON vs NATIONAL RETAIL SOLUTIONS, INC.**
Rahad W. Walston on 04/26/2024   Index: communication..contact

communication
  97:6,19
  119:12
  166:4
communications
  95:1,4
  96:3,14,15
  98:15
  100:3
  102:11
  105:1
  109:17
  110:14
  111:9
  112:6
  114:14,15
  115:20
  117:9
  119:4
  120:8,23
  128:6
  130:9
  137:2,24
  146:2
  170:11,23
  172:2
  174:11
community
  54:14,18
  139:24
commuting
  25:6
companies
  26:5 27:4
  49:10
  56:11
  64:23,24

65:3 66:7
73:3 74:19
75:7 76:8,
14 77:18
81:13 83:5

company  16:8
  26:5,24
  44:2,3
  48:5 56:2
  65:14
  66:17,21
  67:8,11
  76:3 81:5
  100:9
  119:19
  122:24
  124:21
  125:1,20
  130:20
  134:15,18
  142:8
  144:8
  163:15
  164:13
  190:2,6

compatible
  24:20

compensated
  144:20,24
  160:16

compensating
  155:18

compensation
  149:15
  159:5

competent

70:21 71:3

competing
  11:12

complained
  142:11

Complaint
  11:22,23
  12:1,12
  81:6 92:22
  132:4
  133:8

completely
  9:18

Compton's
  71:20

computer
  51:19

computers
  51:22

con  133:14

concerns
  132:2

concrete
  141:24

conduct  87:8
  88:2

conducted
  168:2

conference
  138:23

confirm
  95:24
  99:12

121:20

confirmed
  165:12

connection
  50:9
  158:21

consent
  99:17
  100:4,22
  101:12

considered
  37:6 82:1
  83:8,10

consistent
  192:23

consists
  26:23
  73:13

consulting
  158:24
  162:4
  167:18

consumer
  65:1

consumers
  28:5 64:22
  66:4

contact
  61:17,18
  104:16
  105:5,7
  129:14
  130:6
  131:2

**RASHAD WALSTON vs NATIONAL RETAIL SOLUTIONS, INC.**

Rahad W. Walston on 04/26/2024          Index: contacted..court

164:17,22
179:4

contacted
144:8

contacting
130:13
144:2,4

contained
106:5

contemporaneou
sly   115:21
116:3

contend
99:12
128:6

content
174:10,14
192:11

contents
176:2

context
102:4

Contextmedia
157:15

continue
116:19
181:10,11

continuing
130:24

contracts
51:24

conversation
122:7

163:24
168:3
173:12
177:2
184:17
186:5

conversations
161:18

coordinator
22:10 79:4

copies   63:16

copy   148:16

cordial
178:5,6

corner   45:4,
7 126:22
128:19,23

Corporation
54:15,18

correct   13:5
14:18
15:6,11
16:21
18:5,14
19:14
21:20 22:6
25:20
27:19
29:12
30:19 33:5
37:21
38:19
43:21
44:19,23
45:1 46:3

49:4 59:8
60:4 62:4
64:12,18
66:12,16
67:3,7
68:15
69:3,7,22
70:1 74:3
75:14 76:5
81:11,24
89:5
93:10,18
94:14
95:12,17
98:6,8,13,
18 99:14
100:1
102:10,16
105:2
110:11
111:16
112:8
114:18
115:5,9,18
116:4,5,9,
10 117:9,
10,17
118:9
121:23
122:1,5
123:13,19
126:23
128:8,12
140:18
160:21
162:13
164:14
168:12

170:21
171:9
172:4
173:7,11,
15,16
175:13
176:4
178:1,3,9
180:8,22,
23 182:2,
13 188:22
189:1

cost   71:22

costs   151:13
154:11,22
155:19

counsel   4:16
133:8
152:21
153:15,19,
21 154:1
155:3
157:22
161:15
179:14

couple   23:20
24:16
73:16
81:18
138:17,19
141:9
196:22

court   4:23
5:2 8:15,
19 9:11
11:10,21

**RASHAD WALSTON vs NATIONAL RETAIL SOLUTIONS, INC.**
Rahad W. Walston on 04/26/2024     Index: courteous..decision

34:2 39:2
40:16 43:4
52:14 58:8
80:19,20,
21 81:3
84:22
90:13
92:17
105:21
113:6
117:5
144:22
149:1
152:16
157:4
162:9
168:18
177:24
188:8

**courteous**
7:18

**courtesy**
11:9

**Courts** 142:3
145:2

**cover** 61:1

**covered** 53:1

**create** 60:9
62:6
101:22

**created** 51:2
60:15
62:2,8,10,
16 102:8

**creates**

188:2

**credit**
57:10,13,
16,17,19,
20,22,23
58:3,11,16
59:5,10,11
60:1,7,22,
24 61:9,
15,17,21,
24 62:5,17
64:19 65:5
66:14,17,
23 67:24
77:18 78:6
81:13 83:4
91:7
181:16

**creditors**
66:2 83:5
85:24
86:3,8,14
87:9 89:3

**Cricket**
115:17

**crime** 77:5

**CROA**
181:13,15,
19

**cross** 11:6

**cross-
examining**
192:24

**current**
30:5,13

72:1

**customers**
50:18
51:18

**customers'**
51:6

_____

**D**
_____

**d/b/a** 48:12,
15 49:19
57:12,17

**damages**
155:13

**dare** 89:6

**data** 170:5

**database**
102:21

**date** 76:2
106:4
108:2,3
118:19
174:20
175:3
176:17

**dated** 119:8
175:16

**dates** 23:4
83:22
106:21
107:9
136:13

**day** 29:21
39:9,18
118:2

124:22
125:7
175:15
176:9,10

**day-to-day**
118:2

**days** 12:10
17:20

**dead** 101:3

**deal** 36:9
79:4 104:8
151:18

**debt** 64:17,
18 77:16
78:7

**debts** 81:12
84:12,20
85:16,21

**dec** 138:16

**December**
187:9,11

**decide** 31:20
161:8

**decided**
31:16,24
73:11
135:10,15,
16 160:7,
22 161:6
196:14

**decides**
188:13,18

**decision**
163:7

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

**RASHAD WALSTON vs NATIONAL RETAIL SOLUTIONS, INC.**
Rahad W. Walston on 04/26/2024        Index: decorating..difficult

167:18
168:6

**decorating**
138:18

**deem** 88:3

**deep** 4:9

**defend** 72:7
87:15

**defendant**
4:12,19
5:8 6:16
80:15,22
81:3,9
82:1 91:5
102:19
106:4
136:14,20
189:2,13,
16,23
191:16

**defendant's**
43:1,8
52:12
56:17
58:6,10,15
59:4 60:21
92:15
105:19
107:15
117:3,12
126:15
131:22
136:18
137:10
152:13
154:5

157:6
168:15,22
173:18
186:22

**defendants**
137:12

**defenses**
132:5

**define**
179:23

**definition**
155:23

**degree** 13:8,
16 20:21

**delete**
116:12,21
169:9
170:6
183:12

**deleted**
111:22,24
114:8
116:14,18
127:15

**deleting**
130:18

**delivery**
23:23

**demand** 75:1,
12,15
76:3,13
79:18,19
83:11
128:4

133:3
164:14
166:2
179:12

**demeanor**
34:5,14
36:7
196:22
197:4,12

**denying**
135:18

**depends**
142:3
149:24
169:8,12

**deposed** 8:12
9:20

**deposited**
96:17

**deposition**
11:6,14,18
12:4,14,
17,20
13:1,4
33:16 35:8
41:12
49:17 57:2
70:15
89:23
141:3
172:20
177:24
184:1,4
192:9,16
193:13,17
196:21

**depositions**
148:3

**describe**
77:12
93:1,2

**description**
7:8 59:23

**deserve**
155:19

**design** 41:24
45:18
46:1,23

**Designs**
45:23
46:2,15
50:11,19
52:20 53:3

**desire** 20:12
146:15

**detailed**
120:8

**details** 5:21
70:13

**deviated**
164:22

**dial** 144:13

**dialed**
144:10

**differences**
149:3

**difficult**
40:1 86:2
142:2

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

**RASHAD WALSTON vs NATIONAL RETAIL SOLUTIONS, INC.**
Rahad W. Walston on 04/26/2024        Index: digital..download

**digital**
  26:17,20
  44:8 48:10

**direct** 58:18
  154:12
  164:18
  186:23

**directing**
  34:18

**directly**
  13:23
  15:7,10
  19:12

**disagree** 8:2

**discharged**
  77:24

**disclose**
  134:22
  135:5,13,
  20

**discount**
  121:16

**discourse**
  34:10

**discover**
  130:5

**discovery**
  113:13

**discuss**
  147:7
  162:20

**discussed**
  51:11
  70:9,13,18

102:4,5
173:24
175:23
176:3
181:19
182:7
189:21

**discussing**
  176:24

**discussion**
  57:1 89:22
  126:6
  141:2
  172:19
  174:16

**discussions**
  11:12
  107:11
  168:1

**disk**
  183:17,18

**dismissal**
  91:12

**disparity**
  139:20

**display**
  98:3,10

**displayed**
  131:17
  172:7

**dispute**
  61:13
  62:11,13,
  17 64:3,
  10,13,15,

16,17 65:9
67:13,14,
16 68:2
88:17

**dissolved**
  53:10,20
  54:9,10,16
  55:23 56:5

**distribute**
  60:19

**District**
  149:1

**Doc** 71:20

**docket** 11:20

**dockets**
  83:16

**document**
  43:3,10
  52:13 58:7
  59:3 60:21
  63:5
  92:16,20
  105:20
  107:14,22
  114:12
  117:4
  119:4
  132:1,13
  152:15
  154:4
  156:7
  157:3
  159:8
  160:3,9,
  10,11

168:17,21
187:7

**documentation**
  94:6
  110:22
  130:2
  148:14

**documented**
  76:21,22
  110:19
  111:12
  114:5
  138:4

**documents**
  11:17 26:1
  61:1,8
  132:9,11,
  17,19
  141:9
  152:12
  153:4,18,
  24 156:8,
  13 157:14
  184:11

**dollars** 80:8
  151:5

**Dominguez**
  13:10

**Domino's**
  100:12,13

**doo** 101:3
  195:7

**door** 161:24

**download**
  74:24 75:3

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

**RASHAD WALSTON vs NATIONAL RETAIL SOLUTIONS, INC.**
**Rahad W. Walston on 04/26/2024**          Index: Dozer..entire

Dozer 37:24

drill 89:10

driver 18:21
23:23

driving
18:20
21:15
23:23

drove 20:15

due 78:9

duly 5:4,9

dunning
86:4,16

duties 191:6

_____ E _____

earlier
49:16
108:4
148:10
163:17
181:22
182:7,11,
14,24
183:19
184:10
186:1
193:13,24
196:11

early 22:4
77:17
121:21
148:11
173:13

ease 34:21

easier 8:19
34:11

easiest
25:24

Eastern
50:23

eat 10:8

Ebay 51:4

edit
118:11,17,
21

edited
118:22,24

education
13:7 20:10

effect 123:5

effectively
123:15
127:11

effort 99:7
155:17

Electronics
43:22
44:1,7,14,
20

elementary
19:22

Eli 117:15

Elie 122:3,
7 123:3
163:17
164:19

Elizabeth
37:24

email 27:11
50:6,8,14,
15 63:15
104:8,12,
16 105:8
118:23
164:16,17,
22 166:4
176:13,15,
19

emailed
133:6,9

employed
26:9

employee
45:15

employees
28:21
41:19,20

employer
79:2

employment
19:2 21:1,
22 22:14
24:13
25:10

encourage
7:2

end 92:11
95:18
133:19
156:24

ended 130:18

energy 99:7

enforce
78:15
142:16

engage 27:4

engaged
28:23
87:10,11

engagement
160:1
166:23
167:24

engaging
160:11

engine 28:1
49:24

engineer
21:12

entail 22:11
46:18
145:13

enter 82:9
104:7
167:7,13

entered
82:14

entering
83:20

entire 37:12
51:12
149:15,18
173:22

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

**RASHAD WALSTON vs NATIONAL RETAIL SOLUTIONS, INC.**
Rahad W. Walston on 04/26/2024          Index: entirety..eyes

entirety
  62:8

entities
  26:8,11
  29:8 30:20
  35:20 50:8
  51:9 56:12
  57:8

entitled
  34:6
  120:10
  121:2

entity  46:8
  51:17
  53:5,24
  54:14
  57:14
  159:2,3

equally
  110:3

equipment
  79:5

error  64:18
  65:4

errors
  61:14,20

escapes  36:3

established
  178:8

et al  4:15

Etsy  51:4

evaluate
  112:15

eventually
  173:22

everyday
  34:13

evidences
  132:2

exact  23:4
  71:17
  108:2
  171:13
  174:20
  175:2

EXAMINATION
  5:11
  177:19

examined
  5:10

examples
  64:21
  88:10

exceeding
  154:20

exceptional
  154:19

exchange
  184:13
  186:2,21

exchanged
  9:23

excuse  186:2
  188:10

exhaustive
  52:18

exhibit
  43:2,8
  52:12
  58:6,10,15
  59:4 60:21
  75:10
  92:15
  105:19
  107:15
  117:3,12
  126:15
  131:23
  152:14
  154:5
  157:2,6
  159:9
  168:16,22
  173:19
  179:13
  186:22
  188:1,21
  194:13

Exhibits
  186:21

existence
  186:8,16

expect  105:4

expectation
  186:13

expected
  104:24

expecting
  158:14

expense
  120:15

expenses
  157:8

experience
  42:17,20

experienced
  171:8

Expert  43:22
  44:1,7,13,
  19

expired
  185:20

explain  33:6
  66:1
  126:24
  142:22
  167:23

explanation
  139:20

expo
  138:16,18,
  22

extent  32:3
  82:12
  102:3
  174:3,9

extra  84:19
  112:18

extremely
  98:16
  101:6
  170:4
  192:1

eyes  147:4

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

**RASHAD WALSTON vs NATIONAL RETAIL SOLUTIONS, INC.**
Rahad W. Walston on 04/26/2024                    Index: face..find

**F**

face 47:2

Facebook
 136:2
 139:12
 140:2

facilities
 16:18 19:6

facility
 16:17

fact 100:4,
 18 103:12,
 22 174:22

fair 10:16,
 20 78:6,7
 146:1
 151:15
 155:10,21,
 23 156:20
 174:15
 178:12
 180:5,10,
 17 188:5,
 14

falling 55:4

falls 49:8
 81:15

familiar
 33:1 43:10
 48:17
 50:22
 72:14

FCRA 78:6

85:19
90:8,18
91:17
180:22

FDCPA 78:6
 85:19
 90:8,18
 91:17
 180:21

feature
 128:1

February
 54:11
 83:24

fed 119:16
 131:1

Federal 4:11
 90:13 93:8

fee 157:13
 158:24
 159:5

feel 142:4
 145:23
 163:21

feeling
 36:11

Feemie 38:1,
 2

fees
 154:10,22
 155:11
 157:7
 159:12,14
 160:17

fell 53:16

felt 15:22
 87:22
 166:6

female
 109:24
 195:9

Fenger
 37:15,23

field 42:17,
 20

figure 20:17
 31:24
 32:24
 34:20
 35:19
 87:24
 100:17
 121:11,12
 131:21
 132:23

file 60:24
 77:13,23
 83:21
 93:12
 135:16
 155:17

filed 8:7
 11:20
 75:11 77:7
 79:13
 81:5,6,19
 82:5,6,22,
 23 83:15,
 24 84:1
 85:10 89:1

90:6,9,13,
 16,18,24
 91:18
 92:22
 101:9
 105:15
 110:16
 148:10,24
 152:20
 175:7,15
 180:9,21
 185:18
 187:3,5

files 61:2

filing 189:7
 190:17
 191:10,13

fill 104:21
 107:23

filled 19:21
 104:23
 105:12
 195:14

final 168:5

Financial
 68:18

find 55:16
 70:20
 71:17
 74:22
 87:17
 120:1
 145:2
 174:21
 176:12

183:13
192:1

**findings**
109:13

**fine** 8:22
10:11,17
82:17
89:18
143:6
163:7
177:12,16

**finer** 93:19
96:11
112:2

**finish** 10:5
11:2,3,9
89:14
150:17

**Fitzgerald**
4:20 6:15

**five-year**
39:19

**fix** 51:22
57:19 58:3

**flat** 126:2

**flex** 36:10

**flip** 53:4
54:12
55:15 66:8

**flipping**
55:10

**focused**
45:22 46:6

**folks** 41:4
42:2
157:24

**follow**
165:14

**follow-up**
171:22

**followers**
139:12,14
140:9,17,
19

**followup**
86:20

**forget** 186:4

**forgot** 53:13
110:1

**form** 5:19
6:2,3 7:4,
19 14:3
23:11
27:6,18
28:6 31:9
32:2
33:19,21
49:1 50:10
61:11
65:2,16
67:5 70:11
71:13,16
72:19,23
75:1,15,17
87:3 88:4,
20 89:4
93:4 94:3,
15 95:6

96:4,21
97:21
98:23
99:20
101:13
102:2
103:2
104:15,21,
24 105:3,
13,16
106:24
108:15
109:2,19
110:10
111:19
112:9
115:22
118:6,7
119:13
120:24
121:24
122:9,21
123:6,18
127:3
129:4
130:11
133:13
135:8
137:4
138:2
139:6
141:13
142:13
144:3
145:17
146:3,19
147:5
149:6,21

150:15,23
151:8,16,
19 152:5,9
155:14
156:5,22
158:12
161:1,21
164:19
165:7
166:7,21
169:24
170:14
171:10,16
172:11
173:8
175:1,20
176:5
182:17
193:5,20
194:11
195:5,16
197:6

**forms** 75:6

**forum** 71:10,
12,13,21,
23 72:2,5,
16 73:9,
12,15,17
74:4,11
75:1,3
185:14,17,
22

**forward**
38:21 53:4

**found** 71:2
81:18
98:14

**RASHAD WALSTON vs NATIONAL RETAIL SOLUTIONS, INC.**
Rahad W. Walston on 04/26/2024        Index: Foundation..Glapion

171:15
176:18

**Foundation**
53:6,11

**fraternal**
45:18,22
50:20

**free** 50:23
58:2 63:5,
8

**Freedom**
68:18

**frequency**
76:18

**Fresh** 77:15

**friend** 53:14
54:5
129:13
130:6
133:10,11
140:2,5

**friends**
139:22
140:4,14,
18

**front** 88:12

**fruition**
53:19
54:20 56:4

**frustration**
100:17
123:5

**full** 5:14
84:24

169:6,20,
22 170:12,
19,24
171:4
183:14

**full-time**
24:12

**fully** 148:5

**fund** 188:3,
7

**funding**
48:12,16,
22 49:7,19

**funds** 87:12,
21

**funnels**
59:19

**future**
185:10

———————
**G**
———————

**Gaines** 85:13
86:13

**Gains** 85:12

**gather** 72:6

**gathered**
103:8

**gave**
192:22,24
194:8
195:3

**general**
47:12

72:11
73:21
145:4
148:20,21
153:20
183:16

**generally**
46:24 72:9
74:7
124:18
150:8
152:23
169:8
188:19

**generic**
64:16

**gentleman**
178:14

**geographic**
31:6

**get along**
34:22

**give** 7:2
8:7 24:21
34:23
57:21
88:10
100:22
113:3
124:7
125:7,8,9
150:14
189:23
190:8,12
194:19

**giveaway**
101:4

**giving** 12:20
58:2

**glad** 159:15

**Glapion** 4:21
5:16,24
6:6 7:4,
19,22
14:3,6
23:11
27:6,18
28:6 31:9
32:2 33:19
34:15 35:2
38:11,15,
22 49:1
50:10
55:18
61:11
65:2,16
67:5
70:11,24
71:4,8
72:19,22
74:2 82:8,
12,16
83:20 87:3
88:4,20
89:4,11,15
91:10,15
93:4 94:3,
15 95:6
96:4,21
97:21
98:23
99:20

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

**RASHAD WALSTON vs NATIONAL RETAIL SOLUTIONS, INC.**
Rahad W. Walston on 04/26/2024              Index: Gloria..guys

| | | | |
|---|---|---|---|
| 101:13 | 155:14 | 70:21 | **Greenway** |
| 102:2 | 156:5,22 | 124:3,13, | 48:16 |
| 103:2 | 158:12 | 22 125:4, | 49:19 |
| 105:3,16 | 160:6,15 | 12 140:22 | |
| 106:9,24 | 161:1,15, | 151:18 | **Griffith** |
| 108:15 | 21 162:1, | 156:2 | 157:15 |
| 109:2,19 | 10,21 | 161:7 | **ground** 8:18 |
| 110:10 | 165:7 | 177:14 | **guess** 31:14 |
| 111:19 | 166:16,21 | 180:2 | 34:6,19 |
| 112:9 | 169:24 | **Google** | 43:14 |
| 113:3,7,20 | 170:14 | 27:14,15 | 68:13 |
| 115:22 | 171:10,16 | **grab** 10:8 | 72:13 |
| 118:12,16 | 172:11,16 | **grad** 21:11 | 76:11 |
| 119:13 | 173:8 | **graduate** | 78:20 |
| 120:24 | 174:1,9,13 | 13:12,19 | 82:21 |
| 121:24 | 175:1,20 | 14:19 | 86:20 |
| 122:9,21 | 176:5,22 | 20:7,24 | 87:19 |
| 123:6,18 | 177:10,14, | | 93:11 |
| 127:3 | 17,20 | **graduated** | 99:24 |
| 129:4 | 180:17,19 | 15:3 19:16 | 100:16 |
| 130:11 | 181:2,6,12 | 21:18 | 101:17 |
| 133:13 | 182:20 | 77:22 | 102:17 |
| 135:8 | 192:4,10 | **granting** | 103:18 |
| 137:4,17 | 193:5,20 | 157:7 | 109:15 |
| 138:2 | 194:11,16, | **graphic** | 110:6 |
| 139:6,16 | 20 195:5, | 41:24 | 121:10 |
| 141:13 | 16 196:12 | 104:4 | 132:16 |
| 142:13 | 197:6,21 | **Grasshopper** | 135:4 |
| 144:3 | **Gloria** 4:24 | 134:15,16, | 145:12,22 |
| 145:17 | **goal** 44:9, | 19 | 166:11 |
| 146:3,19 | 21 180:10 | **great** 10:22 | 171:22 |
| 147:5 | **good** 5:13 | 35:18 | **Guide** 68:17 |
| 149:6,21 | 6:12 8:21 | 39:22 | **guides** 62:17 |
| 150:14,23 | 10:10 | **Greenwave** | **gun** 71:4 |
| 151:8,16, | 29:21 | 48:6,7,8 | **guys** |
| 19 152:5, | 36:13 | | 107:19,20 |
| 9,22 | 39:22 | | 115:13 |
| 153:7,10 | | | |

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

**RASHAD WALSTON vs NATIONAL RETAIL SOLUTIONS, INC.**
Rahad W. Walston on 04/26/2024                Index: half..hope

126:5
159:17

_____

**H**
_____

**half** 127:14

**halfway**
55:17

**Hammond**
29:5,15,
16,19,23
30:4,13,
18,22 33:8
35:16

**hand** 5:3
6:22
178:18

**handbook**
62:22

**handle**
159:20

**handled**
157:22

**handles** 74:6

**Handling**
22:12

**hands** 7:11

**handshake**
7:3

**handwriting**
128:15

**Hang** 106:8

**happen**

170:11

**happened**
114:3
148:7
172:6

**happening**
185:9

**Happy** 14:15

**harass** 66:4

**harassed**
74:18 75:7
93:13,15
142:24
166:8

**harassing**
78:11
88:5,6

**harassment**
143:11

**hard** 34:23
46:21,24
65:22
141:23

**harm** 120:21

**harmed** 86:23
87:18
142:7
163:15

**harmful** 88:3

**hassle** 47:24

**head** 9:13,
14 39:15
41:11

92:13 96:8
141:23
164:1
183:15

**hear** 36:13
39:19,20
159:22

**heard** 59:18
71:18
181:13
190:2,6

**heavy** 79:5,6

**held** 16:7
21:10 57:1
89:22
141:2
172:19

**helped** 66:10
67:2,9

**helpful**
171:15

**helping**
26:24
53:16 54:1
57:19 66:5
120:14

**hesitate**
10:3

**hesitated**
7:1

**hey** 122:24
144:12
169:13,15

**high** 14:9,

10,20 15:3
16:9,10
37:15,16,
17,18,23
54:5

**higher** 50:1
124:14

**highest** 13:6

**highly-skilled**
71:11

**Highmark**
157:18

**Hills** 13:11

**hire** 79:11

**history** 16:7
25:23
45:12
127:13

**hit** 58:20
127:16

**hold** 19:1

**holiday-related**
23:24

**home** 33:17
157:9
173:2

**Honestly**
42:7 79:24
88:11 97:8
196:17

**honor** 147:23

**hope** 8:2

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

**RASHAD WALSTON vs NATIONAL RETAIL SOLUTIONS, INC.**
Rahad W. Walston on 04/26/2024        Index: hoping..information

hoping
141:11
142:17,20

hostile
33:12,18,
24 36:8

hostility
8:9 34:13

hours 24:20,
21 25:1

housed 59:20
60:8

houses 58:22
67:21 68:1

huge 150:22
159:18

hundreds
142:6
143:12,15,
20,21

hung 94:21

hurt 88:7,
14

hurtful
163:23

Huseby 4:2,
24

hustle 36:4

—————
I
—————

idea 55:4

identified

90:7,8

identify
4:16 106:3
132:1
136:13
184:11

IDT 190:3,
6,8,12

illegal
66:3,4
78:10
85:18,24
86:6,7,16,
18,22
87:2,21
88:3 93:22
181:22,23

illegally
75:8 87:12

Illinois 4:8
13:17
14:12 15:9
18:4 32:7
33:9
148:24
149:1
175:8

images 60:10

Immediately
7:15

implication
33:21

implies
96:16

implying
33:23

important
10:23
191:21
192:1

imposition
120:15

impossible
11:11

inappropriate
140:13

include
64:3,10
145:15

inconvenience
122:8

incorporated
54:15
55:22 56:4

incorrect
44:12
123:21
165:19

increasing
44:9,21

India 97:13

Indiana
29:5,10,
15,19
30:13,18
31:22
32:7,9,15,
19,20 33:8

implying
35:16,20,
21 36:2

individual
147:13
149:4,12,
13,19,24
161:17,20
190:14

individually
150:10
160:23
161:9
162:5,19
163:12
167:1

individuals
47:19

induced
190:23

inflicted
147:19

info 104:7

information
14:23
33:17
35:24
44:17 51:6
58:2 60:16
62:1,5,13,
14,23
67:22
68:1,9
69:17 72:6
73:8,11
74:15 75:5

RASHAD WALSTON vs NATIONAL RETAIL SOLUTIONS, INC.
Rahad W. Walston on 04/26/2024          Index: initial..issues

106:20
107:2,7
108:5,10
118:18
120:1
134:23
148:19
156:12
180:1,6
185:1
**initial** 81:8
179:15
195:22
**initially**
57:18 73:6
74:14
96:22
116:19,20
129:17
163:18
174:24
**initiate**
92:23
**injury** 36:6
78:21 79:1
**ink** 46:23
**inquire**
70:20
**insisted**
164:21
**Instagram**
136:2
**instances**
88:18

**instructor**
21:15
**intent** 36:8
**intention**
145:9,10
**intentionally**
116:11
**interact**
49:23
**interaction**
72:16
**interest**
120:14
**interested**
20:18
28:16
53:15
161:12,16,
19 163:3,
4,11
184:24
**interesting**
86:21
166:20
**interpret**
166:12
**interrogation**
148:11,18,
23
**Interrogatorie**
s 107:16
108:6
131:24
183:20,23

184:1,4,7
**Interrogatory**
105:24
106:3,9,13
107:18
108:9
131:24
135:1
136:12
193:24
194:1,16,
21 195:4,
15
**interrupt**
197:10
**interrupted**
15:14
**interruption**
15:15,17,
18
**intimidate**
88:8
163:20
**intimidated**
166:8
**intimidating**
165:12
**intimidation**
164:20
**introduce**
7:12 75:10
178:16
**introduced**
7:10,16

**invested**
148:5
**investigate**
160:7
**involve**
24:13 28:4
65:11
**involved**
29:9 45:14
47:5 48:4,
10 51:10
56:13 57:9
70:14 78:4
153:2
186:24
191:18
**involvement**
186:11,18
**IO** 58:21
**iphone** 97:23
127:5,23,
24
**issue** 72:10
86:24 87:9
88:1
105:14
125:2
133:18
**issues** 36:23
57:23,24
61:14
85:17

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

**RASHAD WALSTON vs NATIONAL RETAIL SOLUTIONS, INC.**
Rahad W. Walston on 04/26/2024          Index: Jackson..lawsuit

**J**

Jackson   4:8

January
  54:16
  176:8

Jeremy   4:21
  83:14

Jersey   73:24
  117:21

job   8:5,10
  16:7,14
  17:5 18:5,
  7,16 24:12
  34:8 40:14
  152:7
  155:9

jobs   21:10
  22:19,22
  23:16 24:7
  40:8,10
  42:6

Joe   88:16

join   73:9,
  12

joined   71:9

Judge   142:4
  155:22
  188:15

judgment
  143:5
  147:3

July   84:1

jump   5:16
  164:19
  177:10
  179:17

jumped   71:4

June   54:10

justice
  141:15
  142:5
  145:11,13
  151:4,7,
  10,22,24
  155:22
  163:14
  164:6
  191:17
  192:2

**K**

Katz   163:18
  164:10,19
  173:13

Kelly
  187:19,22

kids   53:16
  54:2,7

kind   7:1,2
  8:3 31:18
  34:18
  45:12 46:7
  48:21
  69:18
  74:19
  141:22

Kindergarten
  39:20

kit   58:11,
  16 59:10,
  11 60:2,7,
  12,23,24
  61:10,24
  62:6
  63:13,14,
  17 67:7
  73:1,5,10
  75:4,18,
  19,21,22

knew   76:22
  110:17,20,
  23,24
  130:12,20
  185:6

knowledge
  60:17 83:9
  153:3
  167:9,10

knowledgeable
  185:8

Korn
  117:15,19

**L**

label   145:4

labeled
  128:19
  129:3
  131:7

lack   186:17

laid   36:3

Lakefront
  26:7,15,21
  27:3
  28:10,18,
  20,24
  29:2,4
  30:14
  42:13,15
  44:3,20
  57:10,11,
  13,16,17
  58:11,16

Lakefrontcredi
  t.com   58:13,
  19 59:6

Lakefrontcredi
  t.com.   58:12

land   134:11

language
  63:10 86:5
  194:23

late   77:17

law   65:21
  80:1
  144:23
  146:5,6,18
  151:12

lawn   16:8

laws   89:8

lawsuit   8:7
  70:9,14,19
  75:11 77:3
  79:13,15
  81:5 90:16

Case: 1:24-cv-00083 Document #: 76-3 Filed: 10/18/24 Page 122 of 224 PageID #:1277
Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

**RASHAD WALSTON vs NATIONAL RETAIL SOLUTIONS, INC.**
Rahad W. Walston on 04/26/2024                    Index: lawsuits..life

93:2,12
101:9
105:14,15
110:16
133:11
141:12
146:8
147:15
148:10,24
149:14
150:10
160:12
175:6,12,
14 179:7
180:10
185:17
189:7
190:5,11,
14 191:18

**lawsuits**
78:3,5
80:15
81:18
82:22
83:16,22
85:10,20
89:1 90:6,
12,24
155:17
180:21
181:18
182:1,3

**lawyer**  8:23
12:3,12
70:8,18
79:11
151:5

159:24
161:19
167:6,11
177:2
192:8,14,
19,22
193:8
194:8
195:3
197:1

**lawyer's**
163:7

**lawyers**
150:22
157:22
159:11

**layer**  73:7

**lead**
147:23,24
148:1
180:15

**leading**
77:12
180:12,24
181:5,8

**learn**  34:24
65:21 66:6

**learned**
161:7

**learning**
42:21
176:21
177:3

**leave**  24:19

**leaving**
105:9

**left**  22:15
51:15 86:7
95:8,16
99:16
101:11
115:8
116:3
126:5

**left-hand**
126:22
128:23

**legal**  79:22
86:5 87:2
102:9
106:22
107:9,11
109:3,13
113:12
135:10
147:7
159:14
161:15
162:21,22
168:4
174:17
175:23
176:3
196:14

**legally**
91:23

**letter**  11:19
64:14,15,
16 65:9,14
75:1,12,15

76:3,13
117:8,11,
14,18
118:6
119:3,8
120:6
121:19
124:8
128:4
133:3,4
160:1
164:11,15
165:5
166:3,23
167:24
168:24
169:2
173:18,20
175:15,19,
22 176:2
179:13,15
188:23

**letters**
62:11,13
64:4,11,22
66:3 68:3
75:23
78:10
86:5,6,16
88:7,12

**level**  13:7
165:5

**license**  47:1

**lieu**  83:20

**life**  33:14
51:12

RASHAD WALSTON vs NATIONAL RETAIL SOLUTIONS, INC.
Rahad W. Walston on 04/26/2024          Index: Life-changing..man

**Life-changing**
   68:17

**lifetime**
   63:6,9

**limited**
   170:5

**Linda**
   187:15,17

**lines**  32:22
   134:11

**link**  58:18
   59:12

**Linkedin**
   136:2

**list**  30:1
   50:16
   52:18
   96:24
   97:1,7

**listed**  92:10
   103:5
   112:20
   117:20,22
   129:21
   194:13

**literally**
   181:9

**litigation**
   81:8 83:19
   120:15
   159:12,13

**live**  29:17,
   20 32:10
   163:19

   165:18

**lived**  29:23
   32:12

**living**
   155:20

**LLC**  26:7
   31:1 44:4
   46:11 47:9
   48:6

**loan**  48:23
   93:6

**locate**  132:8
   184:11

**located**  4:7
   29:14

**locations**
   40:8

**lodges**  140:7

**long**  15:1
   16:11,23
   17:3,16,18
   18:9,22
   20:1 21:24
   28:17
   108:1
   119:11,15
   130:21
   159:13,15

**looked**
   119:17
   176:19
   193:23

**lot**  25:9
   55:11

   57:22
   61:2,6,7
   62:14
   76:17
   77:16,17
   79:5,6
   85:18
   97:11
   139:14
   140:3
   142:18,19
   155:16
   159:14
   165:2

**lunch**  192:18

─────────

**M**

─────────

**M-O-R-S-E**
   40:18

**made**  63:1,3
   73:20
   76:15
   126:1,8
   129:17
   179:3
   196:9,21

**mailbox**
   170:24

**mailing**
   30:17

**main**  39:13
   52:21
   59:15,22

**maintenance**
   16:22

   40:15

**major**  74:18

**majority**
   37:11
   87:13
   134:18

**make**  9:6,
   15,21,22,
   24 10:24
   11:1 14:17
   25:3,18
   27:1 34:6
   53:1 58:24
   59:2 63:20
   123:4
   124:22
   129:23
   143:22
   155:20
   156:10
   163:21
   164:16
   167:17
   168:5
   197:11,16

**makes**  8:19
   144:7

**male**  109:23
   195:8

**malicious**
   145:4

**maliciously**
   121:4

**man**  56:7
   122:24

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

**RASHAD WALSTON vs NATIONAL RETAIL SOLUTIONS, INC.**
Rahad W. Walston on 04/26/2024          Index: Manager..messages

124:19

Manager
  67:14,17

managing
  26:12

manner
  165:9,11

manual
  62:12,18

March  106:16
  107:5
  108:13,24
  109:8
  119:5
  196:7

marked  43:3,
  7 52:13
  58:7 59:3
  92:16
  105:20
  107:15
  117:4
  152:15
  154:4
  157:3
  159:8
  168:17,21
  173:18

market
  44:10,22

marketing
  26:7,15,
  17,21,22,
  23 27:4,9,
  12 28:4,

11,12,18,
21,24 29:2
30:14
42:14,15,
16 44:4,8,
20 48:6,11
49:9,17,
18,20
50:6,9,15,
16 57:11

Marketing's
  29:4

marketing-type
  51:20

Maroon
  54:14,18
  55:14,24

married
  38:4,6
  69:21,23

masks  47:2

Masonic
  139:24

Masons  50:23

massive  79:7

Master's
  13:8,24
  19:12,17
  20:9,16
  21:19

masters  13:9

Masters's
  13:13

materials
  62:21

math  19:23

matter  6:16
  65:8
  120:17
  186:23

max  170:10
  183:10

maximum
  170:2

meanings
  26:19

means  26:18
  27:24
  65:13 66:1
  191:15

meant  6:1

meat  69:19

media  49:23
  135:22,24

meet  12:3
  178:14

meeting  6:17

meetings
  125:7

member  71:23
  72:1,3
  139:24
  151:6
  159:10
  184:19

members

150:20
153:16
154:20

membership
  185:19

Memorandum
  154:10

mention  11:7
  52:8,9
  163:16,22

mentioned
  6:13 9:2
  35:22
  45:21
  86:15
  88:14

mentioning
  158:5

merits  91:12

message
  100:14
  101:1,2
  170:18
  195:14

messages
  72:18
  73:17,18
  86:18 88:6
  93:18,21,
  22 94:14
  95:9 99:13
  100:9
  101:5,10
  105:6,10,
  14 110:3

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

**RASHAD WALSTON vs NATIONAL RETAIL SOLUTIONS, INC.**
Rahad W. Walston on 04/26/2024          Index: met..navigate

| | | | |
|---|---|---|---|
| 111:16,22 | minimum | 145:14,16 | 122:3 |
| 115:4,8 | 106:15 | 149:13,15 | 149:5 |
| 116:15,17 | 107:5 | 150:21,22 | 157:23 |
| 127:15,18 | 108:13,23 | | 158:6 |
| 129:15 | 109:7 | month 24:18 | |
| 130:22 | 196:6,9 | 169:14 | names 37:22 |
| 132:12 | | | 38:12 41:3 |
| 146:11 | minute 6:17 | months 17:4, | 42:4 74:7 |
| 169:7 | 7:9 35:3 | 19,21,22 | |
| 170:2,4 | 57:7 | 18:11,23 | narrative |
| 171:13 | | 20:3 24:17 | 34:3 |
| 182:6,8, | minutes | | |
| 10,12,15 | 29:21 | morning 5:13 | nation 66:11 |
| 185:2,4 | 36:17 99:8 | Morse 40:15 | 67:3,9 |
| 193:19 | 102:12 | | 68:14 |
| 194:9 | | motion 154:9 | |
| | missed 98:4 | 157:7 | National |
| met 6:20 | | | 4:14 |
| 7:9,18 8:4 | missing 83:4 | move 33:16 | 171:19 |
| 177:24 | Misstates | 34:11 55:5 | |
| 178:3,8 | 182:18 | 69:18 | Nationwide |
| | | 180:17 | 91:7 |
| middle 19:22 | mistaken | | |
| 39:23 | 160:13 | moved 129:24 | nature 42:1 |
| | | mugs 47:1 | 46:14 47:3 |
| million | model 48:18 | | 50:24 |
| 151:5 | | multiple | 51:5,8 |
| 155:4,5,11 | mom 39:20 | 24:2,6 | 52:1 60:11 |
| 159:11,19, | moment | 40:24 | 62:16 |
| 20 188:3, | 191:11 | 164:6 | 66:20 |
| 6,7 | | 185:7 | 67:15 |
| | monetary | 191:15 | 78:12 |
| mind 38:23 | 167:2 | 192:2 | 112:15 |
| 146:1 | | | 114:9 |
| 151:4 | money 48:14 | multiplied | 129:15 |
| | 56:9,10 | 121:5 | 140:8 |
| mindset | 64:24 | | 146:12 |
| 118:4 | 65:4,14,18 | ——————— | 148:15 |
| | 71:22 | N | 155:18 |
| mine 53:14 | 88:18,21 | ——————— | 183:18 |
| 54:5 55:19 | 123:11 | | |
| 129:13 | 124:22 | named 44:19 | navigate |
| | 143:3,8 | 99:16 | |
| | | 100:21 | |
| | | 101:11 | |

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

**RASHAD WALSTON vs NATIONAL RETAIL SOLUTIONS, INC.**
Rahad W. Walston on 04/26/2024        Index: navigated..objected

127:1,8

**navigated**
127:11

**necessarily**
97:20
105:5
119:15
137:23
140:12
142:15
166:11
169:16

**needed** 15:22
25:1 34:3
126:10
153:8

**negotiations**
148:9

**network**
21:12
173:5

**nod** 9:14

**Nomorobo**
172:9

**non-legal**
156:15

**non-profit**
53:15 54:1

**non-reversionary**
188:3,7

**normal** 9:19

**Northern**
149:1

**northwest**
32:9,15

**not-for-profit**
53:8

**Notary** 5:6

**noticed**
139:11

**November**
121:21
173:14

**nowadays**
136:10

**NRS** 75:12,
24 76:2,8,
13,19
92:23
93:15
94:1,13
95:4,16
99:17
103:15
104:16
110:15
111:10
113:13
114:17,22
115:4,9
116:7,12
117:8,16
119:22
121:22
123:4
125:1
128:7
129:8
130:5,10

132:13
133:12
142:12
170:12,22
171:20
172:2
173:15,21
174:22,23
185:7
193:9

**number** 4:15
64:6
95:19,21
96:23,24
97:6,17
98:2,10,20
99:8
102:18,20
103:5,13,
15,22
104:2
106:1,22
114:17,22,
23 118:19
120:7,20
128:7,14,
20 129:3,
6,8,19,24
130:3
133:18,21
134:1,4
139:2,3,5,
10 144:11,
13,14
189:24
190:9,12

**numbered**

128:9

**numbering**
128:13

**numbers**
92:12
97:15
128:18
129:12,21
131:14,17,
19 133:17,
23 134:7,
13,17,23,
24 135:6,
7,14,20
194:21

—————————
**O**
—————————

**oath** 5:4
8:15

**object**
106:24
111:19
118:12
133:13
150:15
152:24
158:12
173:8
176:5
180:12,24
181:11
182:17
192:10
195:5

**objected**
27:21

**RASHAD WALSTON vs NATIONAL RETAIL SOLUTIONS, INC.**
Rahad W. Walston on 04/26/2024     Index: objection..operation

152:23

**objection**
6:2 7:4,19
14:3 23:11
27:6,18
28:6 31:9
32:2
33:19,20
34:15 49:1
50:10
61:11
65:2,16
67:5 70:11
72:19,22
87:3 88:4,
20 89:4
93:4 94:3,
15 95:6
96:4,21
97:21
98:23
99:20
101:13
102:2
103:2
105:3,16
108:15
109:2,19
110:10
112:9
115:22
119:13
120:24
121:24
122:9,21
123:6,18
127:3
129:4

130:11
135:8
137:4,17
138:2
139:6,16
141:13
142:13
144:3
145:17
146:3,19
147:5
149:6,21
150:15,23
151:8,16,
19 152:5,9
155:14
156:5,22
161:1,21
162:11
165:7
166:16,21
169:24
170:14
171:10,16
172:11
174:2,9
175:1,20
176:22
193:5,20
194:11
195:16
197:6

**objections**
5:18,19,20
6:3 153:6

**obligations**
191:7

**obtain** 59:11
80:4

**obtained**
75:16 80:2
103:15,21
118:7,8
155:12

**occasion**
169:17

**occasionally**
27:13
46:16

**occasions**
160:6
169:18

**occur** 170:22

**occurred**
172:6

**occurring**
115:21
116:4

**October**
119:5,9,15
184:20

**offense** 9:21

**offensive**
197:15,17

**offer** 178:18

**offered**
123:11,24
124:11
125:11
174:22
175:4

**office** 24:14
29:5,10
30:3,12,
15,16,22
31:2,3,4,7
32:8 35:15
39:14 80:1

**officer**
117:16,22
118:1

**officers**
117:20

**offices**
29:14
35:15,21

**official**
41:20
79:15

**Officially**
28:19

**on-site**
118:2

**online** 27:8
29:3
42:22,23
44:9,21
49:22 51:4

**open** 10:5,7

**opened** 54:9
161:23

**Operating**
117:15
181:16

**operation**

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

RASHAD WALSTON vs NATIONAL RETAIL SOLUTIONS, INC.
Rahad W. Walston on 04/26/2024          Index: operator..penalty

117:24

operator  4:3

opinion  48:1
109:7,10
163:15
181:23

opportunity
120:16
147:22

opposed  32:7
76:14
86:21

opted  171:14

optimization
28:2 50:1

order  50:23
108:6
157:6

ordered
100:11

ordinary
86:24

organic
27:16,23

organization
140:7

original
189:3

originally
73:10

originating
49:7

originator
48:24

outreach
28:4

outsourced
41:21,23

overcome
57:24

overview
149:7

owe  88:21

owed  88:18

owes  65:13,
18

owner  45:15

———————

P

———————

P.M.  141:1,
6 172:18,
23 197:23

package
45:20

packet  61:10
64:21
66:15

pages  54:13
69:5 131:6

paid  84:22,
24 85:7,8
88:24
158:17

pain  36:9

papers
152:19
153:14

paragraph
102:18
104:1,5
120:6
188:1

Paragraphs
95:14

parameters
81:16

part  39:6
44:16
46:21
57:11 68:5
77:20
97:16
143:4
148:14
162:24

part-time
22:19,22
23:16
24:7,11
84:17

participation
159:6

past  25:10
76:10,17
138:13

Pat  4:19
6:15

pay  49:13
58:23 60:5

63:8 67:18
76:19
84:12,20
93:15
99:17
103:15
111:10
117:8
119:22
123:22
125:1
128:7
129:8
130:5,10
132:13
142:12
171:20
173:22
185:7,24

payment
85:3,5
89:6 91:4
138:22
156:19
158:21

payments
90:23
138:21

pays  159:19

Pdf  61:5

Pdfs  61:6,7

penalties
120:9

penalty
167:2

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

**RASHAD WALSTON vs NATIONAL RETAIL SOLUTIONS, INC.**
Rahad W. Walston on 04/26/2024      Index: people..pick

**people** 26:20
49:12,22,
24 50:5
57:19 58:1
61:10
66:10
67:3,9
68:13
74:6,15
87:16
109:21,23
129:23
131:2
139:13
140:6,11
141:19
142:7,15,
18,19,22
143:13,16,
24 145:14
146:17
147:17
158:4
163:13
164:3,4,6
165:2
171:18
191:15,22
192:2

**people's**
51:22
67:21

**percent** 17:6
23:9,10,
13,14
79:24
80:24

81:15
90:15 91:8
103:3
110:17
111:1,2
112:12,19
115:10,11
116:14
140:10
147:11
150:1
155:3,4
167:3,14,
22 168:12
176:11

**percentage**
23:6 27:1
160:20

**period** 15:14
24:15,16
41:8 51:15
72:4 73:12
84:11
90:10
94:20
97:14
134:8

**periods** 23:3
40:20

**permanent**
19:21
20:12

**permits**
166:24

**person** 41:2
81:4 99:15

100:21
131:19
147:24
156:3
159:2,4
165:13
179:21,24

**person's**
74:8

**personal**
133:21
134:1,3
136:8
139:5,10

**personally**
136:9
177:5

**perspective**
87:1
156:15

**phone** 50:5
70:19
78:11
93:24
94:12,17,
21,24
95:4,7
96:1,7,17,
20,23 97:1
98:3
102:12
104:9,12
105:8
111:5
112:6,13,
15 114:3,

4,10,12,
20,21
115:8,20
126:19
127:2,5,6,
8 131:7,19
133:17,18
134:13,20
137:2,3,24
142:12
148:16
156:4
163:17
164:11,12,
18 166:13
169:16
170:12
172:7
173:3
176:14
183:9

**phones**
134:12

**phonetically**
38:17

**phrase** 100:3

**physical**
30:3,12
31:2,4
61:3

**physically**
81:3

**pick** 32:7
138:5
166:13

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

**RASHAD WALSTON vs NATIONAL RETAIL SOLUTIONS, INC.**

| | | | |
|---|---|---|---|
| **picked**  79:8<br>94:1,20<br>96:1 | **plans**  56:8<br>85:4,5 | 87:14<br>126:9<br>192:21<br>193:16,18 | **pre-recorded**<br>99:13<br>106:5,6,<br>15,17 |
| **picking**  96:7 | **plates**  47:1 | | 107:5,6 |
| **picks**  144:12 | **platform**<br>58:21 | **positions**<br>17:23 | 108:12,14,<br>23 109:1, |
| **picture**<br>60:22 | 59:17,20<br>62:24 | 19:2,8<br>21:1 | 9,17 110:8<br>182:8,10, |
| **pizza**  100:12 | **platforms**<br>136:1 | 25:10,12 | 12 189:18<br>194:3,4 |
| **place**  30:2<br>48:23 99:2 | **plead**  4:16 | **possibility**<br>20:14 | 196:6,8,10 |
| 100:10<br>104:8<br>130:14 | **pocket**  65:23 | 186:16 | **pre-suit**<br>79:18 |
| **places**<br>60:16,18 | **point**  10:7<br>18:3 74:21<br>86:10 | **possibly**<br>51:23 | **predatory**<br>77:18 |
| **plaintiff**<br>4:22 | 93:20 94:5<br>96:11 97:9<br>111:24 | **post**  24:14<br>73:15,21,<br>22 140:11 | **prefer**  6:8<br>178:12 |
| 80:20,22<br>106:14<br>107:3 | 112:2,23<br>113:24<br>114:4,16, | **posting**<br>72:17 | **preference**<br>31:10,15 |
| 108:11<br>134:22<br>136:17,20 | 24 116:16<br>117:7<br>119:23 | **posture**<br>197:14 | **preparation**<br>11:18<br>12:1,4,14 |
| 137:8,13<br>148:1<br>149:4,5 | 121:18<br>125:5<br>129:9 | **potential**<br>190:21,24<br>191:3 | 47:12 |
| 196:5 | 138:6<br>164:5 | **potentially**<br>103:10 | **prepare**<br>11:14 |
| **Plaintiff's**<br>154:9 | 175:3<br>187:13 | 121:15<br>126:6<br>191:17 | **preparing**<br>47:13 |
| **plaintiffs**<br>157:23<br>158:6 | **pointing**<br>34:12 | **Practice**<br>78:7 | **present**  9:10<br>22:18 23:7<br>38:9 |
| **plan**  82:9 | **police**  152:8 | **practices**<br>87:11 | 196:15 |
| 102:12 | **position**<br>36:22 | **pray**  39:17 | **presented**<br>148:12 |

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

**RASHAD WALSTON vs NATIONAL RETAIL SOLUTIONS, INC.**
Rahad W. Walston on 04/26/2024          Index: preserve..purchases

| | | |
|---|---|---|
| **preserve** | 29:4,10,14 | 146:24 | **promotional** |
| 5:20  6:3 | 30:1 37:6, | | 45:18,23 |
| | 20,23,24 | **Procedure** | 50:19 |
| **president** | | 4:11 | |
| 118:3 | **print**  46:23 | | **promotions** |
| | | **proceeding** | 104:17 |
| **press**  46:24 | **printer** | 8:15 | |
| | 46:22 79:8 | | **proposed** |
| **pressured** | | **process** | 147:14,15 |
| 191:2 | **printers** | 81:13 | |
| | 79:7 | 132:22 | **provide** |
| **pretty**  53:10 | | 162:24 | 99:17 |
| 169:21,22 | **printing** | | 174:23 |
| | 45:17 | **processing** | 184:3,6 |
| **prevent** | 46:1,6,7, | 138:22 | |
| 120:2 | 10,11,13, | | **provided** |
| 185:9 | 14,19,20, | **produced** | 113:16,18 |
| | 21 52:8,9 | 113:9,11, | 116:8 |
| **previous** | | 12,13 | 139:1 |
| 46:5 48:5 | **printout** | 115:17 | |
| 50:18 | 52:16 59:5 | | **public**  21:23 |
| 108:3 | | **product** | 22:1,9,15 |
| 110:21 | **prior**  148:9 | 45:19,23 | 37:5,9 |
| 114:7 | 153:1 | 69:14 | 51:16 79:3 |
| 118:13 | 184:1,4,20 | | 91:13 |
| 138:5 | 189:6 | **production** | 180:2,7 |
| | 190:5,11 | 184:9 | |
| **previously** | | | **pull**  127:7 |
| 139:23 | **private** | **products** | 194:19 |
| 145:11 | 73:18 | 50:20,21 | |
| 180:20 | 179:20,24 | 51:3,7 | **punitive** |
| 181:19 | | | 179:10 |
| 189:21 | **privilege** | **Program** | |
| 191:24 | 161:22 | 13:24 | **purchase** |
| | 162:12 | 19:17 | 58:23 |
| **prey**  77:19 | 192:10 | | 59:10,13, |
| | | **promise** | 24 60:3 |
| **price**  69:10 | **privileged** | 179:6,9 | 61:10 73:5 |
| | 174:2,4,10 | | |
| **primarily** | 176:22 | **promised** | **purchased** |
| 22:19 | | 158:20 | 60:15 |
| 50:20 | **problem** | 159:4 | 62:3,23 |
| 74:13 | 179:19 | 186:10 | |
| | | 190:20 | **purchases** |
| **principal** | **procedurally** | | |

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

**RASHAD WALSTON vs NATIONAL RETAIL SOLUTIONS, INC.**
Rahad W. Walston on 04/26/2024          Index: purchasing..recall

60:17

**purchasing**
73:1

**purport**
95:15

**purpose**
47:11

**purposes**
134:10
136:8

**pursuant**
4:10

**pursuing**
150:5

**push** 164:20

**pushed** 166:9

**put** 33:22
65:22
93:19
96:11
97:6,10,14
100:19
103:4
109:4
112:2
118:18
128:13
130:13
180:9

_____
**Q**
_____

**question**
7:21 10:5,
15,19

11:2,4
14:5 25:11
31:14,19
32:4,6
33:2 37:1
38:24
44:18
76:12
82:21 85:2
87:6,20
89:14
93:11
94:11
99:22
108:9
109:15
113:4
118:13
131:20
132:15,16
137:6
139:19
145:18
150:4
157:17
158:9
162:15
171:6,22
182:18
195:18

**questions**
8:6 9:3,5,
10 10:6
33:15 35:1
49:16 77:2
107:17,18,
20 148:11,
18,23

163:1
177:8
180:15
186:20
189:9,11
197:20

**quick** 172:15

**quickly**
24:19
36:21

_____
**R**
_____

**Raby** 37:16
38:1

**RAHAD** 5:7

**Raise** 5:2

**ramifications**
170:16

**ran** 41:1

**random**
131:18

**rang** 96:23

**range** 124:6

**ranked** 50:1

**Rashad** 4:9,
13 5:15
6:10
165:15,20
177:21

**rationale**
135:19

**RE-EXAMINATION**

192:6

**reached**
144:16
179:3,5

**read** 39:1
59:23
62:15
83:21
113:5
162:3,6,8
196:2

**reading**
38:23
42:22
72:17

**real** 69:1

**realm** 127:19

**reason** 15:20
34:12
54:24
103:11,14,
20 135:12
139:21
153:2

**recall** 17:18
18:1 23:4
24:10
41:2,3,11
42:3,8
94:4,12,
19,22,24
96:5,6
122:23
127:10
133:4

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

RASHAD WALSTON vs NATIONAL RETAIL SOLUTIONS, INC.
Rahad W. Walston on 04/26/2024          Index: receipt..registered

136:18
137:9
138:20,24
175:2
183:20
184:13
185:13
186:5

receipt
100:2

receive
90:23 91:3
111:16
151:5,6
156:11
160:17
169:7
170:3
171:13,24
189:12,15
191:17

received
76:6 78:21
89:2 91:16
93:24
94:12,13
96:2 97:5,
19 100:20
101:5
105:2,13
110:23
111:13
114:7
119:5
132:22
143:24
146:9

156:4
182:8,11
183:6

receiving
110:14
185:7
186:13

recently
36:6

recognize
43:15
92:19
168:24

recollection
11:19
16:13
17:4,8
18:11,24
21:17
23:19
25:13 39:8
52:5 56:15
73:20
96:19
111:8
116:23
137:1
144:18
154:6
176:17

recommended
71:10

record  4:4,
17 5:14,17
6:4 9:22
33:23 34:7

35:2,5,11,
13 39:1
45:24
56:18,21
57:2,5
58:24 67:1
83:21,22
89:11,19,
20,23
90:2,5
113:5
140:22,24
141:3,6
153:10
154:8
162:8
172:17,20,
23 197:22

recorded
195:14

recording
101:10

records  83:9
111:5
112:7,13,
16,21
115:17
130:18
131:7
144:9
148:16

recover
145:24
150:7

recovery
149:3

156:2

red  183:10

redacted
131:10,14,
16

redirect
177:9
192:23

refer  93:14

referred
71:8 74:1,
5

referring
68:13
81:11
132:20
134:23

refers  132:2

reflect
34:2,5
154:8

reflected
112:6
117:11

refresh
96:18
111:8
136:24
176:16

refutes
132:3

registered
35:20
53:18

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

**RASHAD WALSTON vs NATIONAL RETAIL SOLUTIONS, INC.**
Rahad W. Walston on 04/26/2024      Index: registering..request

registering
  55:4

regular
  69:10
  98:11
  156:9

regularly
  169:5

reimbursement
  157:8

reiterated
  123:15
  124:24

reject
  167:12

related
  138:22
  153:4

relates
  89:15
  132:2

relationship
  67:16
  179:4

relevance
  152:23
  153:1

relevant
  104:17
  132:23
  180:6

relief
  154:19
  185:1,5

reluctance
  135:5

remained
  195:22

remaining
  62:23 69:5
  155:4

remember
  6:17,23
  7:3 23:3
  25:15
  35:16 37:2
  40:3,12
  41:9,13
  53:20
  54:19,21
  55:1 57:8
  62:24
  74:4,8
  75:13 80:7
  82:7 85:14
  86:2 91:4
  97:8
  122:10,14,
  15,17,18
  123:1,3
  124:20
  137:20
  138:8
  184:16
  193:10,23
  194:5
  196:20

remind   9:17
  11:8

removed

130:3

renew   162:10

repackage
  63:2

repair   51:19
  57:19
  58:11,16
  59:5,10,11
  60:2,7,12,
  23,24
  61:10,24
  62:6,12,18
  66:14,18,
  23 67:7,24
  181:16

repeat   137:5

repeated
  100:21

rephrase
  10:15
  185:12

report   38:10
  39:11
  61:15,21
  64:19

reported
  40:21 41:4
  64:24

reporter
  4:23 5:2
  8:20 9:11
  11:10 34:2
  39:2 40:17
  43:4 52:14
  58:8 92:17

105:21
  113:6
  117:5
  152:16
  157:4
  162:9
  168:18
  177:24

reporting
  4:2 5:1
  65:1 78:6

represent
  6:16
  154:14
  160:11

representative
  145:7
  147:24
  152:8
  155:8
  179:10
  186:3
  188:20
  191:8

representative
s   153:17
  158:7

represented
  179:14

representing
  4:2

request
  132:10
  140:5
  155:11

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

**RASHAD WALSTON vs NATIONAL RETAIL SOLUTIONS, INC.**
Rahad W. Walston on 04/26/2024          Index: requested..Ryan

requested
 154:21
 171:14
 185:23

requesting
 172:1

requests
 140:6
 148:18
 155:3
 184:9,12

resale   60:18
 63:1

research
 28:15

researching
 42:21

resell   63:2

resolution
 144:22
 146:23
 147:1

resolve
 123:17
 156:20

resolved
 83:19
 84:21

respect
 166:15
 195:4

response
 31:19
 106:12

135:1,18
 176:20
 177:3
 195:4

responses
 9:10,15
 184:7
 193:24
 194:1
 195:15

responsive
 132:9,18
 184:12

rest   62:21

restroom
 10:9

result   95:1
 120:23

resulted
 79:22 85:3
 112:7
 136:21
 137:14

resumed   35:8
 57:3 89:24
 141:4
 172:21

Retail   4:14
 171:19

retired   40:2

returned
 18:17

review
 11:17,21,

24 68:17,
 20 69:1
 111:4
 156:7,13
 168:21
 183:23,24

reviewed
 109:10

reviewing
 12:12
 111:7

reviews   69:5

right-hand
 128:19

righted
 141:19

rights   60:18
 63:2 66:7
 73:3 78:15
 142:16,23

ring   81:21
 95:5,8
 96:16,20
 97:1 137:3
 138:1

ringing
 94:24

ringless
 96:15

risk   151:13
 155:16

robo   71:13,
 16 74:10
 75:16

100:14
 101:4
 120:2
 170:17
 185:2,3

robocalls.cash
 71:19
 184:19
 185:12,14,
 17,22

robocalls.
 cash.   118:14
 184:16

robocallsforca
 sh   118:8,14

robotic
 93:22
 100:8,19
 105:5,9

role   26:13
 147:20

room   6:18
 12:9

rule   10:23

rules   4:11
 8:18

run   27:15
 183:1

running
 183:3

Ryan   4:18
 6:14

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

**RASHAD WALSTON vs NATIONAL RETAIL SOLUTIONS, INC.**
Rahad W. Walston on 04/26/2024          Index: S-H-O-R-C-O..settle

| | | | |
|---|---|---|---|
| **S** | | | |

**S-H-O-R-C-O**
   52:4

**sales**  27:1,
   2,5 44:10,
   22 45:19,
   23 48:21

**Samantha**
   12:23

**sample**  64:3,
   10,13,15
   68:2

**save**  38:17

**saving**  114:1

**scammers**
   97:12

**school**  14:9,
   10,20 15:3
   16:9,10
   19:22,23
   20:7,24
   21:6,11
   22:12
   37:9,14,
   15,16,17,
   23 39:7,9,
   16,23,24
   54:5

**schools**
   21:23
   22:1,9,15
   37:5,13,19
   39:5 51:16
   79:3

**SCI**  154:12
   186:23

**Scott**  40:15

**scraped**
   102:20

**screen**  4:6

**screenshot**
   126:18

**screenshots**
   43:13
   128:3,5
   132:12
   133:2

**scroll**
   127:13
   128:2

**search**  27:23
   28:1 29:3
   49:24

**search-type**
   27:17

**secret**
   139:17

**Secretary**
   52:21

**section**
   97:23
   127:14
   154:18

**seeking**
   64:23

**selected**
   147:23

**selection**
   39:4

**self-employed**
   22:16,17,
   23 26:2,6
   41:19

**self-**
**employment**
   25:23

**selling**
   50:19 51:3

**send**  51:7
   64:22 66:3
   73:17 75:6
   99:3
   117:18,23
   119:11
   131:18
   170:23

**sending**
   72:17
   83:10
   86:16
   118:5
   129:15
   140:5
   170:17

**sense**  9:7,24
   142:1

**sentence**
   64:3 107:3
   108:11
   154:18
   155:2
   196:3

**SEO**  28:1
   49:24

**separate**
   45:21
   131:6

**separately**
   163:4

**September**
   55:23 56:4

**series**  9:3
   182:15,21
   189:21

**served**  8:14
   181:24

**service**  16:8
   154:11
   186:3,8,
   10,14,17

**services**
   47:19
   53:15 69:2
   80:2 99:5
   158:18,22

**set**  89:7
   131:6
   132:4,5

**setting**
   90:17

**settings**
   183:16

**settle**
   120:17
   121:8
   149:12,14

RASHAD WALSTON vs NATIONAL RETAIL SOLUTIONS, INC.
Rahad W. Walston on 04/26/2024          Index: settlement..sort

160:23
161:9
162:5,19
166:24

settlement
78:22
79:17,23
80:4,6
90:23 91:4
143:4
144:21
147:2
149:3
150:6
152:19,20
153:14
154:19
156:24
160:18,19
161:17,20
167:7,12,
20 168:1
179:15
188:2,13,
16,17
189:4

settlements
89:2

settles
168:6

settling
163:11

setups   39:5

seventh
128:22

shake   6:22
9:13
178:18

Shang   38:7

share   44:10,
22

sheet   92:11

shift   85:9

Shiners
50:24

shoes   157:24

shook   7:11

Shorco   52:3

Shoreway
31:1
46:11,13
47:9

short   21:14
51:15 72:3

Shortly
197:2

shoulder
36:6,11

show   139:2
141:8
152:12
153:14

showed
173:17,20

showing
153:24
166:15

shown   153:13

shows   29:4
127:16
138:11,13,
14 165:4

Shriner
139:24

sick   119:24
129:21

sign   49:12
160:3,4,9
184:23

signed   74:14
99:2
184:21

significant
84:12

signing
26:24

similar
46:15
49:15
123:7
147:18
183:7

simple   31:21

simply   76:19

single   193:8
194:9

Siolidis
4:24

sit   36:22
62:7

shown (cont.) site   103:5,
9,13,23

situation
51:20 58:4
65:8 74:23
79:8 80:21
172:3

situations
61:20

slight
121:16

small   124:21
125:1,20
150:21

social   49:23
135:22,24

soft   47:2

software
67:13,17,
18,20
68:1,5,6
172:9

sold   63:16
66:14

solicitation
171:19

Solution
4:14
171:19

solutions
87:17

sort   74:24
79:21 85:3
127:22

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

**RASHAD WALSTON vs NATIONAL RETAIL SOLUTIONS, INC.**
Rahad W. Walston on 04/26/2024      Index: sound..Strike

144:21
159:23
167:6,12

sound 8:21
10:10,16
82:19 83:1
84:4 90:10

sounds 6:12
83:2
194:18

South 25:7

Southern
13:17 15:9
18:4

space 183:1,
4,7,17

spans 105:24

speak 12:24
96:1
166:14
170:10,22
171:1,7,
12,23
172:5
187:15

speaking
153:6
161:15
165:13

Spearman
38:2

special
46:22,23

specific

37:8 71:15
108:17
116:22
118:18
145:19
148:22

specifically
86:10,13
88:2 107:8
118:5
124:20
142:9
153:19
164:21

speculating
103:7

speculation
143:17,18

spell 38:18
40:16

spelling
38:15

spells 38:14

spend 165:6

spent 56:10

spoke 12:5,
7,8 173:14

spoken 179:1
187:13,19,
21

square 194:7
195:2

standard
89:6 91:19

92:6
127:23,24
145:1

Star 50:24

start 13:22
110:20
113:24

started
42:15
45:14 47:5
56:13
101:2
111:3,9
177:23
178:20
193:19
195:7

starting
111:11

state 5:13
13:10 31:8
32:19,22,
23 52:21

statement
7:6 44:24
67:1
108:19

stating
33:23

Statute 93:9

statutory
120:9

stay 165:21

stem 100:17

stemming
78:12

stems 85:15
100:2

stenographical
ly 9:12
11:1

stepping
87:1

stint 24:5

stints 24:6

stop 47:22
66:6
98:17,22
143:10,11
144:17
153:6

stopped 20:5

storage
170:4
183:9,18

stories
74:20

story 33:14
34:24

straight
97:2 150:4

straightforwar
dly 9:5

Strictly
134:9

Strike
162:14

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

**RASHAD WALSTON vs NATIONAL RETAIL SOLUTIONS, INC.**
Rahad W. Walston on 04/26/2024          Index: Strocky..talk

**Strocky**
  187:20,22

**students**
  21:8  77:20

**studies**
  20:22
  43:20
  77:15

**stuff**  51:19
  55:1  59:19
  68:21,22,
  23  79:7
  86:15
  97:14
  140:11
  170:6
  183:12
  185:9

**subcontractors**
  41:21

**subject**
  189:10

**sublimation**
  46:6,10,
  13,20

**Submit**
  104:15

**submitted**
  107:23
  109:11

**substantially**
  150:8

**substantive**
  82:13

**substitute**
  19:18
  20:2,5
  23:1,7,18
  24:8  38:8
  84:18

**suburb**
  32:18,23

**suburbs**  25:7

**successful**
  144:22
  146:23
  147:1,3
  150:6

**sue**  81:14
  83:11,13

**sued**  80:16
  83:5

**suffered**
  120:22

**sufficient**
  5:19
  123:15
  153:8

**suggestions**
  184:6

**suggests**
  137:19,22

**suing**  80:23
  83:8,10
  93:9

**suits**  78:12

**sum**  87:19

**summarize**
  124:10

**summers**
  16:12

**supervisor**
  37:5,7,19
  39:12
  40:5,21,23
  41:9

**supervisors**
  40:10,13,
  24  42:4,5

**supply**
  106:19,21
  107:2,7
  108:5,10

**Supporting**
  154:10

**supports**
  132:3

**supposed**
  99:3  152:3

**surfaces**
  46:22,24

**surprise**
  142:10,14
  157:20
  158:3
  159:9

**surprised**
  158:15
  159:18

**surprises**
  158:10

**suspect**
  89:16

**swear**  5:1

**sweep**  134:20

**switch**  173:3

**sworn**  5:9

**system**  58:20
  59:21
  151:14,22,
  24  155:22

———————

**T**

**tab**  59:6,15

**tactics**  27:3
  49:20
  62:15  66:4
  80:1  85:17

**Tait**  157:8
  159:8

**takes**  155:16

**taking**  9:12
  15:20
  38:16
  151:12
  155:15
  165:5
  177:11

**talk**  12:16
  22:21
  25:8,22
  39:14,16
  40:1  49:22
  55:14  75:9
  80:14

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

RASHAD WALSTON vs NATIONAL RETAIL SOLUTIONS, INC.
Rahad W. Walston on 04/26/2024                Index: talked..text

192:8

**talked** 6:18
25:9 42:3
48:3 53:2
55:11
56:14
78:19
98:21
133:10
173:13
188:10
192:14
196:24

**talking**
12:11 64:9
81:2,4
90:5 96:7
166:1
194:23

**talks** 61:12

**tax** 30:23
31:1 47:7,
9,12,19

**taxes** 47:13

**taxrpo.com.**
102:21

**TCPA** 76:3
90:17 93:6
146:6
182:4

**teacher**
19:18,21
20:2,6,12
23:1,18
24:9 38:8

39:21,23

**teaching**
19:19 23:7
84:18

**team** 102:9
106:22
107:9,11
109:4,13
113:12
135:10
147:7
151:12
162:21,22
168:4
174:17
175:23
176:3
196:14

**technically**
102:17

**techniques**
80:1

**Technologies**
52:3 55:14
56:1

**technology**
20:10
22:10,12
51:14
79:4,6

**tee** 37:3

**telemarketing**
50:3

**telephone**
28:8,11

93:17
102:20
103:5
106:22
118:19
131:14,17,
19 133:21,
23 134:23
139:3,10
144:11
189:24
190:8,12

**telephonic**
28:4

**telling**
163:6,9

**tells** 73:1

**temp** 17:15,
16,24

**template**
44:15,16
68:21,22

**temporary**
16:5 17:9,
13

**ten** 23:9,14
134:4,6

**tenure** 8:3
16:24

**termed** 25:12

**terminated**
25:19,21

**terminology**
186:4

**terms** 5:18
49:19
94:10
162:11
188:16
191:6

**testified**
5:10 95:24
180:20
181:6
186:1

**testify**
91:10
166:18
181:22
182:7,11,
14,24
186:7

**testimonies**
66:19

**testimony**
7:17 95:3
104:20
112:3
153:23
177:22
181:3,9
182:18
183:19,21
185:13
188:24
192:22,23
193:12
194:8
195:3

**text** 196:3

RASHAD WALSTON vs NATIONAL RETAIL SOLUTIONS, INC.
Rahad W. Walston on 04/26/2024          Index: texted..ton

texted
  133:6,9

texts   60:10

thereof
  186:17

thereto
  153:4

thing   10:4
  31:6
  126:13
  143:10
  163:16
  169:14

things   34:11
  41:24
  46:14 47:2
  50:24
  51:2,5,7,
  24 60:5,11
  61:15
  62:15 63:5
  64:20
  66:20 68:4
  73:2 78:11
  86:8,19
  88:7,14
  112:14
  114:8
  129:15
  140:8
  142:19
  146:11
  148:15,23
  155:17
  169:23

thinking

54:6 56:2
  57:18

thought   34:9
  83:12
  109:4
  117:24
  121:14
  132:23
  147:9,10
  164:1
  194:2
  196:11

thousands
  80:8
  126:11
  142:6
  143:12,15,
  20,21

threat   83:12

threatened
  79:21

threatening
  83:11

thrown   124:4

Tiktok   136:3

time   4:4
  6:20 7:18
  8:4 9:17,
  18 10:3,6,
  7 12:7,8
  18:2,20
  20:13,19
  21:17
  23:6,18
  26:14 29:1

31:17
  34:23
  37:11,12
  38:2,17
  39:14
  40:13,20
  41:5,8,14,
  18 50:7
  51:15
  52:8,10
  62:19
  63:13 72:4
  77:10
  84:13,15,
  21 85:21
  86:17
  88:11 90:9
  94:19 99:7
  102:10
  106:4
  107:21
  111:2
  129:22
  130:1,21
  131:1
  134:8
  136:19
  137:10
  140:22
  155:16
  159:13,15
  161:14
  165:6
  166:13
  170:1
  174:20
  179:12
  184:21

187:2,3

timeframe
  37:10

times   11:5
  23:20 24:2
  73:16 77:9
  96:6,11
  111:11
  115:15
  119:18,22
  121:5
  138:19
  144:9,10

tired   76:20,
  24 93:13,
  15 114:14,
  15 116:16
  129:22
  142:19

titled   58:11

today   4:24
  6:9 12:1,
  4,9,14,20
  56:14
  69:10
  70:10,15
  124:22
  173:21
  193:14,17

today's
  11:14,18

told   40:24
  159:15
  193:7,13

ton   61:8

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

**RASHAD WALSTON vs NATIONAL RETAIL SOLUTIONS, INC.**
Rahad W. Walston on 04/26/2024          Index: tons..Understood

**tons** 66:10
  67:2

**top** 41:10
  69:9 92:12
  96:8
  128:10
  154:17
  155:2
  183:15
  187:6,8

**topics**
  184:15

**total** 82:24
  91:17
  111:13
  120:10
  155:5

**totally**
  53:13
  160:11

**touched**
  188:21

**tough** 39:24

**trade**
  138:11,12,
  14 139:2

**traditional**
  137:3

**traffic**
  29:21

**transactions**
  55:2,7

**transcriptions**
  95:15

**transit**
  18:21 19:7

**traveled**
  14:7

**trial** 148:4
  188:15

**trip** 25:3

**True** 71:4

**truthfully**
  9:6

**turn** 43:18
  45:3 95:13
  101:16
  104:1
  105:23
  106:12
  120:5
  126:14
  131:4
  148:1
  154:15
  155:1

**tutor** 21:4,5

**twisted** 79:9

**Twitter**
  136:3

**type** 16:3
  19:19
  26:20
  41:23
  46:19
  49:18
  51:19
  53:17,23

55:7 79:19
  100:8
  105:4
  124:21
  156:10
  158:21,24
  159:5
  160:18
  161:16,20
  172:8
  187:7

**types** 153:24

**typical**
  149:2

**typing** 11:10

_____

**U**
_____

**ultimately**
  188:12

**un-follow**
  140:13,15

**unblocked**
  129:8

**undergrad**
  40:4

**undergraduate**
  13:16,23
  15:4 20:21
  77:15

**understand**
  9:14
  10:12,14,
  19 31:5,7,
  13,20

32:21
  33:2,10,14
  36:1 48:20
  61:23
  65:12
  72:14
  87:4,6
  99:22
  122:6,13
  123:10
  125:10
  129:1
  132:15,21
  133:19
  135:4,17
  144:14,19
  145:13
  147:12,13
  149:2
  150:11,12,
  13,18,19
  151:2,3
  152:7
  158:9
  164:8,9
  166:10
  170:16

**understanding**
  91:24 92:3
  96:13
  149:10,17
  195:17,19

**Understood**
  78:16 82:3
  93:8 99:10
  120:4
  171:21

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

**RASHAD WALSTON vs NATIONAL RETAIL SOLUTIONS, INC.**
Rahad W. Walston on 04/26/2024          Index: unhappy..Walker

**unhappy**
  34:17

**University**
  13:10,17
  20:22 21:7
  40:5,7

**unknowing**
  116:19

**unlimited**
  102:11

**unlock**  104:7

**unlocked**
  129:5

**unsure**  81:16
  113:15

**unwanted**
  72:8,9,10
  74:18 76:7
  142:12
  146:10
  169:10

**unwilling**
  135:13

**up-front**
  151:13

**update**  63:14

**updates**
  63:9,23

**upper**  126:22
  128:19,23

**USPS**  24:14
  41:7

**V**

**variety**  68:3
  86:7,19

**verify**  90:14

**versed**
  156:11

**versus**  4:14
  83:10
  154:12
  157:15,18
  186:23

**vice**  118:3

**video**  4:5,9,
  17 34:4

**videos**  42:22

**view**  123:14
  156:2
  166:6
  180:2,7

**violate**  73:3
  89:8

**violated**
  89:8

**violating**
  66:7

**violation**
  121:2
  146:13

**violations**
  65:22

**virtual**
  30:15,16

31:3 35:15
  134:13,19

**visit**  138:11

**visual**  62:14
  183:9

**voice**  94:13
  106:6

**voicemail**
  86:18 88:6
  93:18,21,
  22 94:18
  95:8 96:18
  97:2 98:9,
  11,12,20
  99:16
  100:9,14,
  24 105:6,
  10 106:6
  111:16,22
  112:18
  115:4,7
  116:3,15,
  17 127:18
  128:22
  129:3
  130:22
  132:12
  146:11
  169:4,6,19
  170:2,3,5,
  9,13,17,18
  171:3,4
  182:12
  183:1,4,8,
  14 185:2,3
  193:8
  195:6,9

**voicemails**
  86:7 94:2
  95:16
  96:15 98:7
  100:18,21
  112:7,24
  113:10
  114:1,2,5,
  7,13,20
  115:1
  116:7,12
  130:5,23
  136:21
  137:14,21
  169:10
  189:15,18
  195:13,20

**voices**
  109:21
  195:21

**W**

**wait**  94:7
  119:11,21

**waited**
  119:15,20

**Walid**  5:15

**walk**  16:6
  45:11
  52:24
  72:15

**walked**  6:14
  7:10

**Walker**
  157:18

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

**RASHAD WALSTON vs NATIONAL RETAIL SOLUTIONS, INC.**
Rahad W. Walston on 04/26/2024          Index: Walston..website

| Walston | Watstein | 103:6 | 156:1,17 |
|---|---|---|---|
| 4:10,14 | 4:18 5:12, | 105:11,18, | 157:2,5 |
| 5:7,15 | 22 6:5,7, | 22 106:11 | 158:16 |
| 6:10 12:23 | 14 7:5,20 | 107:1 | 161:5,23 |
| 26:1 35:14 | 8:1 14:4,8 | 108:18 | 162:6,14, |
| 85:11 90:4 | 23:15 | 109:5 | 17 165:10 |
| 92:19 | 27:10,20 | 110:2,12 | 166:17,22 |
| 117:7 | 28:9 31:12 | 112:1,22 | 168:15,19 |
| 141:8 | 32:5 34:4, | 113:8,23 | 170:7,20 |
| 150:7 | 16 35:4,12 | 116:1 | 171:11 |
| 153:12 | 38:14,20, | 117:2,6 | 172:14 |
| 157:9 | 23 39:10 | 118:15 | 173:1,9 |
| 165:15,23 | 43:1,5 | 119:2 | 174:5,18 |
| 168:22 | 49:5 50:13 | 120:3 | 175:5 |
| 169:1 | 52:11,15 | 122:2,12 | 176:1,6,23 |
| 173:2 | 55:20,21 | 123:2,9,20 | 177:7,13 |
| **wanted** 5:17 | 56:16 57:6 | 127:9,20 | 178:9 |
| 35:23 54:1 | 58:5,9 | 129:7 | 180:12,24 |
| 59:9,11 | 61:22 | 130:15 | 181:4 |
| 72:6 | 65:6,19 | 133:16 | 182:17 |
| 74:14,19 | 67:10 | 135:11 | 192:7,13 |
| 98:17 | 70:16 | 137:7,18 | 193:6,22 |
| 123:4 | 71:2,7 | 138:7 | 194:14,18, |
| 160:22 | 72:20 | 139:7,18 | 22 195:11 |
| 161:8 | 73:14 | 140:21 | 196:1,19 |
| 185:8 | 82:11,15, | 141:7,16 | 197:8,19 |
| 197:16 | 18 83:23 | 143:1 | |
| **wanting** | 84:3 87:7 | 144:6 | **waveform** |
| 135:20 | 88:9,22 | 145:21 | 101:18 |
| **warehouse** | 89:9,13,18 | 146:14,21 | 102:8 |
| 23:21,22 | 90:3 91:14 | 147:8 | **ways** 61:13, |
| **warning** | 92:14,18 | 149:9 | 16,18 |
| 183:7 | 93:7 94:9, | 150:2,16 | 118:11 |
| **waste** 99:7 | 23 95:10 | 151:1,9,17 | **website** |
| **wasted** 56:10 | 96:9 97:4 | 152:1,6, | 43:11,12, |
| | 98:1 99:9, | 11,13,17 | 13,16 |
| | 23 101:15 | 153:5,9,11 | 44:16 51:4 |
| | 102:6 | 154:8,13 | 58:13,17 |

Case: 1:24-cv-00083 Document #: 76-3 Filed: 10/18/24 Page 145 of 224 PageID #:1300
Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

RASHAD WALSTON vs NATIONAL RETAIL SOLUTIONS, INC.
Rahad W. Walston on 04/26/2024        Index: websites..Young

59:7,15,22
60:8 63:21
67:2 69:1
71:9,21
74:11
117:21
184:15

**websites**
42:23

**weekly**
169:14

**weeks** 100:13

**welcomed**
172:2

**west** 4:7
25:7

**Whitney**
14:10

**wife** 12:21
70:13,17

**wifi** 173:3,
6

**willfully**
121:4

**Wireless**
115:17

**wise** 20:4

**witness's**
34:5

**wondering**
20:15

**Word** 61:8

**words** 9:23
27:14,15
44:24 49:6
60:1 68:24
108:17
167:24

**work** 16:3,
5,6,11,22
17:9,13,16
18:9 19:16
20:4 21:24
23:24
24:3,20,22
41:22,23
44:4,13
45:7
46:12,15
49:9 50:17
53:17,23
56:3 67:24
79:3
84:14,17
152:4
153:3

**worked** 14:7
16:2 17:15
18:8 19:6,
18 21:4,
12,23
23:1,19
24:14
40:4,19
41:20
63:21
178:23

**working**
16:8,16,19

21:14
23:22 24:9
48:11,13
66:22

**workplace**
78:21

**works** 38:22
151:22
152:3

**worried**
113:22

**worth** 48:1

**wracked**
159:14

**wrap** 141:23

**written**
159:23

**wrong** 79:9
100:1
141:20
144:11,13

**wrongful**
86:1,12

_____

**Y**

_____

**year** 13:19
28:19
67:19
108:4
148:10,11

**yearly** 47:19

**years** 15:4
17:19 22:2

29:11
35:15 39:6
46:7 47:6
54:4
116:20
134:5,6
138:17
159:12
169:19

**yesterday**
12:10

**York** 19:10

**Young** 14:10

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

# EXHIBIT B

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

1

```
 1              IN THE UNITED STATES DISTRICT COURT
                 NORTHERN DISTRICT OF ILLINOIS
 2                      EASTERN DIVISION

 3
     RASHAD WALSTON, on behalf    )    Docket No. 24 CV 83
 4   of himself and all others    )
     similarly situated,          )
 5                                 )
                      Plaintiff,   )
 6                                 )    Chicago, Illinois
                 -vs-              )    June 11, 2024
 7                                 )    9:45 o'clock a.m.
     NATIONAL RETAIL SOLUTIONS,   )
 8   INC., d/b/a NRS PAY,         )
                                   )
 9                   Defendant.    )

10
              TRANSCRIPT OF VIDEO PROCEEDINGS - Motion
11             BEFORE THE HONORABLE SUNIL R. HARJANI

12

13   APPEARANCES:

14   For the Plaintiff:      GLAPION LAW FIRM LLC
                             BY:  MR. JEREMY M. GLAPION
15                            1704 Maxwell Drive
                             Wall, New Jersey 07719
16
     For the Defendant:      WATSTEIN TEREPKA LLP
17                            BY:  MR. RYAN D. WATSTEIN
                                  MR. PATRICK J. FITZGERALD
18                            1055 Howell Mill Road NW
                             8th Floor
19                            Atlanta, Georgia 30318

20

21

22              Laura LaCien, CSR, RMR, F/CRR
                     Official Court Reporter
23                219 South Dearborn Street
                          Suite 1728
24                Chicago, Illinois 60604
                        312.408.5032

25
```

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

1    (Proceedings heard in open court:)

2        COURTROOM DEPUTY:  24 C 83, Walston v. National

3    Retail.  Would the parties please state your name for the

4    record starting with plaintiff's counsel?

5        MR. GLAPION:  Good morning, everyone.  Good

6    morning, your Honor.  Jeremy Glapion on behalf of plaintiff

7    Walston.

8        MR. WATSTEIN:  Good morning, your Honor.  Ryan

9    Watstein and Patrick Fitzgerald on behalf of the defendant.

10       THE COURT:  Okay.  Good morning.  This is Judge

11   Harjani here.

12       So I am holding this hearing on the motion to

13   enforce the settlement and I'm a little puzzled by this.  You

14   know, this allegedly happened -- this settlement -- alleged

15   settlement happened in January.  It is now in June.  You've

16   gone through a lot of discovery since then.  Out of the blue,

17   you're telling me that there's a settlement with the

18   plaintiff.  I look at the letter that purportedly accepted a

19   settlement and it says "the settlement payment is contingent

20   upon plaintiffs executing a written agreement containing full

21   releases of his claims, confidentiality provisions, and other

22   customer terms."  So, I mean, by its own terms, your

23   acceptance is contingent.  Plaintiff says in response to this

24   "there's no settlement, we don't accept."  That generally

25   ended matter.

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

3

1          You know, you had a contingent acceptance and the
2    contingency was not accepted by or agreed to by the plaintiff
3    so this seems pretty straightforward to me.  I'm not sure
4    what we're doing here arguing about this alleged settlement
5    and what I don't understand is why don't you actually try to
6    settle this case versus trying to jam something down that
7    happened late last year and litigate the matter before me.
8          So with that, I kind of want to understand what's
9    really going on and, you know, are you really interested and
10   can you really get this settled?  Can I send you to the
11   Magistrate Judge and actually try to get a settlement that
12   both sides agree with where there's a meeting of minds and
13   all the terms listed?  I'm not going to rule today on this
14   motion.  I'm going to write something up but I can pretty
15   much tell where I'm going with this.
16         So let me hear from defendant first.  You brought
17   the motion.
18         MR. WATSTEIN:  Sure.  Thank you, your Honor.  And
19   for some reason, I can't see anyone but I take it you can see
20   me.  Yes?
21         THE COURT:  Yes.
22         MR. WATSTEIN:  Okay.  And I can hear you fine.
23         So let me just -- let me just address the exact
24   points that you raised about the acceptance and the letter.
25   So there was, as your Honor knows -- and I'm not sure if

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

4

1    you've had a chance to read our reply brief which we filed
2    last night.
3             THE COURT:  I read everything.
4             MR. WATSTEIN:  Okay.
5             THE COURT:  I read it all.
6             MR. WATSTEIN:  Okay.  So there was this
7    conversation in November between the CEO of our client
8    Mr. Katz and the plaintiff before his counsel made an
9    appearance.  Plaintiff agrees -- plaintiff's counsel agrees
10   in his briefing that there was an offer extended by the
11   plaintiff during that call of several thousand dollars.  We
12   said five, but it's three, four, $5,000, at least; it doesn't
13   have to be the full 9,800.  It's also undisputed that
14   confidentiality was a term and that in exchange, plaintiff's
15   TCPA claims would be released.  So those are the material
16   terms:  A payment, confidentiality, and a release.
17            The letter that was sent by NRS accepting the
18   settlement mirrors those exact terms.  And, yes, it says
19   there will be a written agreement.  But respectfully, your
20   Honor, the written agreement is only memorializing those
21   terms because, again, this discussion was oral so there has
22   to be something -- whether it's an email or a long-form
23   agreement or whatever it is -- where the plaintiff agrees
24   that, yes, those are the terms that we agreed to.  And if the
25   plaintiff had said I dispute what occurred during that

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

1    November call, then we would have -- we would have said,

2    okay, well, we're moving to enforce those terms:

3    Confidentiality, the payment, and a release.

4             THE COURT:  Can I ask you why --

5             MR. WATSTEIN:  Sure.

6             THE COURT:  -- this is coming up now six months

7    later?

8             MR. WATSTEIN:  Absolutely.  Absolutely, your Honor.

9    That is a fair question and the answer is simple.

10            As -- we knew, my firm knew as soon as we got

11   involved and we started speaking to Mr. Glapion, he was -- he

12   wants a class settlement that's going to net a substantial

13   amount of attorneys' fees.  He was never going to concede

14   that a settlement had occurred even though our client -- even

15   though plaintiff is the one who approached our client about

16   settlement and our client agreed to pay.

17            So what did we do?  We immediately, as soon as the

18   discovery period opened, we noticed the plaintiff's

19   deposition because we needed that in order to file a motion

20   to enforce the settlement agreement.  As soon as we got the

21   transcript, we drafted it.  As soon as it was done, two weeks

22   later we filed the motion.  That's what any advocate would

23   have done.  We couldn't have done it any faster.  And we

24   raised in our answer that we -- that we believed there was a

25   settlement.

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

6

1          So as we noted in the reply, it would have been

2   terrible advocacy on my behalf to shout from the rooftops,

3   hey, let me preview for you before the plaintiff's

4   deposition --

5          THE COURT:  Okay.  Thank you.  I don't have -- I

6   don't have, you know, very much time to, you know, hear this

7   out.  I have everything you wanted in the papers.  I just

8   have a few questions.

9          MR. WATSTEIN:  Sure.

10          THE COURT:  Okay.  That's kind of how I do my

11   arguments.

12          Plaintiff, you know, the issue is going to be

13   whether or not this letter encompasses the material terms of

14   the settlement and whether your client made an offer with

15   those material terms I assume orally based on what I'm

16   hearing.  Can you talk to me about that for a second?

17          MR. GLAPION:  Yes, your Honor; and thank you.  I

18   think your Honor hit -- sort of hit the nail on the head at

19   the beginning.  This was not a letter saying, you know, we

20   accept what was talked about on the call.  It was a letter

21   saying we're going to pay you some amount more than what the

22   apparent demand was -- which I've been doing this awhile now,

23   it would be the first time I've ever seen that -- and in

24   exchange we need you to agree to these terms.  It was

25   contingent upon it by their own language.  It was expressly

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

7

1    contingent upon these additional terms.  It was not we'll pay

2    you this subject to what we talked about on the call.  It was

3    not referring to the November 13th conversation.  There was

4    no meeting of the minds on those terms, nor did it mirror.

5         Even if we were to say -- you know, because I don't

6    think we -- I don't want to get into an evidentiary hearing

7    because I don't think it's needed because even on what was

8    submitted, there is no settlement here.  So even if we say

9    that, you know, plaintiff said, yeah, sure, if we agree to

10   something, I'll keep it confidential, the reality is there

11   were still additional terms that they insisted on.  They made

12   it contingent upon a written agreement; not saying we will

13   memorialize this in a written agreement.  They made it

14   contingent upon confidentiality provisions which the scope of

15   which varies wildly in these cases.  They made it contingent

16   upon other terms.  They put the word "customary" in there but

17   you ask ten attorneys what customary terms are, you're going

18   to get ten different answers.  So there was no meeting of the

19   minds on this.

20        And in Illinois in particular, it's incredibly

21   strict in terms of what the mirror image rule means to the

22   point of where, if you put the wrong date on a settlement and

23   unilaterally correct it, it's been found to be

24   acknowledged --

25        THE COURT:  Can I ask you, with respect to this

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

1  particular situation -- I understand it was, you know, some

2  things happened in October and I appreciate that that had an

3  expiration date associated with it.  But with respect to

4  this -- this particular situation that resulted in the

5  January 3rd letter, are those just oral conversations?

6       MR. GLAPION:  My belief is that the January 3rd

7  letter intended to respond to the October 19th demand and

8  this sort of -- that -- this reference to the November 13th

9  conversation is a fiction based on the fact that that October

10  19th demand was quite clearly expired or rejected by that

11  point.  So I think there was a -- we're sort of retconning

12  the reality of the situation.

13       I mean, the letter clearly references we have

14  authority to accept your $9,800 settlement demand contingent

15  on these terms.  The only 9,800 settlement demand was the

16  October --

17       THE COURT REPORTER:  Oh, I'm sorry.  Excuse me.

18  Judge -- I'm sorry, Judge.  This is the court reporter.

19       Mr. Glapion, can you just back up a little bit and

20  slow down?

21       MR. GLAPION:  I'm sorry.  I apologize.

22       THE COURT REPORTER:  I have "the letter clearly

23  references we have authority to accept."  Go ahead.  Thank

24  you.

25       MR. GLAPION:  I apologize.  I'll slow down.  The

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

9

1   letter clearly references a 9,800 demand.  The only time a

2   $9,800 settlement demand was made was that October 19th

3   letter.  So to say we're responding to -- to now say we're

4   responding to a $5,000 oral demand and referred to that as

5   your $9,800 demand doesn't track.  So I think -- well,

6   obviously the representation now is that it was October 13th.

7           THE COURT:  Okay.  I understand.  I understand your

8   argument.

9           Okay.  I have this briefed.  If I need to have an

10  evidentiary hearing, I might, which will require calling in

11  your various people to testify in court so I can make some

12  credibility determinations if I need to.  I will review the

13  papers more carefully particularly since the reply brief was

14  just filed.  I did read it but I want to spend a little more

15  time on it.

16          My bigger question is before we just fight over

17  this, we're fighting over whether or not there's a

18  settlement.  How about we actually try to get a settlement

19  done?  So, plaintiff, I guess my question is are you

20  interested in a settlement on an individual basis and not a

21  class basis?

22          MR. GLAPION:  Not on an individual basis at this

23  point, your Honor.

24          THE COURT:  Okay.  And, defendant, are you

25  interested in a settlement on a class basis?

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

```
1              MR. WATSTEIN:  No, your Honor, but we would be
2    interested in a settlement on an individual basis obviously
3    which is what the plaintiff proposed to us at the outset.
4              THE COURT:  Yeah.  I mean, plaintiff's counsel, it
5    wasn't that long ago that your client was interested in an
6    individual basis settlement, I mean, a mere maybe six, seven
7    months ago.  Why not try to actually start that up?  I don't
8    know what the number is going to be and, you know, you'd work
9    out what that number is.  It doesn't have to necessarily be
10   the number here but is your client at all interested in that?
11             MR. GLAPION:  I -- my understanding is no and I
12   think part of that is the -- when my client had initiated the
13   individual conversations, it was a pro se situation.  And
14   when we got into retaining counsel and looking into, you
15   know, do you even have any evidence of consent, do you have
16   any evidence of that you didn't make these calls, anything
17   along those lines, it started to become obvious that this was
18   a fairly egregious and widespread circumstance.
19             And then I think -- although, you know, it's not
20   attached or anything; but in the deposition transcript, they
21   ask, say, ten ways from Sunday, you know, why do you want to
22   do this as a class and my client was pretty firm that, you
23   know, this seems to have happened to a lot of people and I
24   want to get justice for those people.
25             Now I think the client's head is in that
```

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

1   representing others in this situation.  Obviously I am always

2   happy to confirm, clarify, double, triple check with the

3   client but we've had these conversations repeatedly and

4   he's -- he's in that mode of not interested at the moment.

5           THE COURT:  Okay.  So I'll tell you what, why don't

6   you check with your client and say, you know, the Judge has

7   asked about settlement, you were interested a mere, you know,

8   six, seven months ago, why not try to do that now.  You know,

9   your case still has quite a ways to go.  I can help you get a

10  mediator Magistrate Judge to negotiate that.

11          If your client is willing, send me an email by

12  Friday to my Courtroom Deputy and say, you know, we are

13  interested in a settlement on an individual basis.  If you're

14  not, send me the same email saying no.  But at least confirm

15  for me that you have conveyed my message.

16          Anytime people are fighting over whether there's a

17  settlement in place or not based on settlement discussions

18  ahead of time, my reaction is why don't you just try to

19  settle it for real, if you will, rather than fighting over

20  what -- who said what to who.  So just think about that and

21  let me know by Friday.  In the meantime, I'll review your

22  papers more carefully and issue a written ruling.

23          Okay.  I got to take the next case but I appreciate

24  your time.

25          MR. GLAPION:  Thank you, your Honor.

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

12

1        MR. WATSTEIN:  Thank you, your Honor.

2     (Proceedings concluded at 10:16 a.m.)

3

4           C E R T I F I C A T E

5    I hereby certify that the foregoing is a complete, true,

6  and accurate transcript of the proceedings had in the

7  above-entitled matter before the Honorable Sunil R. Harjani

8  at Chicago, Illinois, on June 11, 2024.

9

10  /s/*Laura LaCien*           August 14, 2024
     Official Court Reporter        DATE

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB

# EXHIBIT C

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

**From:** Jeremy Glapion <jmg@glapionlaw.com>
**Date:** Wednesday, June 12, 2024 at 12:08 PM
**To:** Ryan Watstein <Ryan@wtlaw.com>
**Subject:** Re: Walston v. NRS

[Warning – external]

Ryan:

Thank you for your email. Please see my responses.

> Thus, and in line with the Court's stated desire for the parties to resolve this case on an individual basis, please convey that NRS offers $35,000 to confidentially settle his claims, with $25k to him and $10k to counsel —unless Mr. Walston decides to split the amount differently.  This offer will remain open until EOD next Wednesday.

There was no stated desire for the Parties to resolve this case individually. Just as the Court asked me if my client would resolve individually, it asked your client if it would resolve on a class-wide basis. Yesterday I conferred with my client as requested by the Court and confirmed there is zero interest in an individual settlement at this point. I intend to notify the court accordingly.

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

settlement at this point. I intend to notify the court accordingly.

> It is hard to see why Mr. Walston wouldn't prefer this outcome, given his initial $9,800 demand.

Because not everyone is selfishly only out for themselves. I believe Mr. Walston made this clear when you pressed him on this point at the deposition.

> Based on our preliminary research, it will take at least a year to go through that process and cost at least tens of thousands of dollars, which will reduce his potential individual recovery accordingly.

Based on my research it will take several months. This is not ideal, but I imagine this is in part why your client chose to use a foreign entity to do its bidding. I further imagine, however, your client has enough relevant documents for class certification, though it has continued its refusal to produce anything.

> First, no one else has complained about NRS's calls, which NRS doesn't conduct anymore out of an abundance of caution.

So, give us the class data that we have repeatedly requested. Assuming spotless internal record keeping, few complaints suggest a small class. I have been consistent with both you and previous counsel that my goal here isn't to make you face a class action just for the sake of facing a class action. If the class is tiny or there is exculpatory evidence (e.g. consent), let me know.

> Second, while we sympathize with Plaintiff's annoyance at the calls he erroneously received, NRS is not a bad actor. In fact, its owners donate most of their proceeds to charitable causes.

If we are trying to be candid, let's be candid. These calls were not "erroneously received". Your client gave my client's number—which it obtained from some third party database—to Voicelogic to do exactly what it did. Also, your client's "owner" is IDT—which paid for and owend the telephone number your client used on the calls. I do not believe IDT donates its proceeds to charitable causes.

> Third, as the judge noted, Plaintiff has a "long way to go" in this case. There are substantial barriers to any recovery on the merits and at class certification. Very few of these cases are certified, and we've never had one certified in 400+ TCPA class actions.

I do not believe the Judge is privy to just how straightforward this case is.

As for your track record, you're an excellent attorney. But my track record is similarly strong. I have never had class cert denied, and several of my TCPA class

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

similarly strong. I have never had class cert denied, and several of my TCPA class cases are among the largest per-class member recovery in the history of the statute. So, something will have to give here.

> I think it would be helpful to have a settlement conference with a Magistrate Judge.  If your client still wants to pursue class claims after that, fine.  But I think all parties would benefit from taking this in front of a neutral.

My client still wants to pursue class claims *now*. Nothing has changed, and your client's approach to settlement has been in bad faith. Not only does my client not want to settle individually, he does not trust even engaging in individual settlement conversations with your client, because the expectation is that you would just use that against him in class cert if those conversations failed.

You took your shot at him at your deposition right from the outset and sought to drive a wedge between client and counsel. You missed. I anticipate your Motion to Enforce will be denied, and I imagine the Magistrate will call us in front of him anyway to understand why your client has produced 0 documents since April 17.

If you want to cut through the nonsense and get to the bottom of this, let's do that then. If you give us the class data—the lists of numbers (or at least count of numbers) you gave to VoiceLogic for the purpose of making prerecords; the prerecord transcripts or files themselves; and whatever campaign metrics showing connect/etc VoiceLogic provides—I will strongly encourage my client to agree to a settlement conference. Note: nothing in this is intended to abrogate requests served or limit those requests in any way.

Just as your client doesn't want to settle as a class, my client does not want to settle individually. So, I'd be potentially open to a settlement conference where we are both bringing positions on settlement the other side does not want to do, but I cannot do that without class data.

Best,
Jeremy

--



**Jeremy M. Glapion**

Partner

Glapion Law Firm
1704 Maxwell Drive
Wall, New Jersey 07719

Tel.: 732-455-9737

On Wed, Jun 12, 2024 at 11:00 AM, Ryan Watstein <Ryan@wtlaw.com> wrote:

Docusign Envelope ID: 4A10FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

On Wed, Jun 12, 2024 at 11:00 AM, Ryan Watstein <Ryan@wtlaw.com> wrote:

Hi Jeremy,

I wanted to follow up on yesterday's hearing. Obviously, the parties disagree about whether there was a settlement. But as we made clear in our motion to enforce, NRS wants to avoid the time and expense of additional litigation, including the expense associated with a possible evidentiary hearing, which the Court indicated might be necessary to resolve the settlement question. Thus, and in line with the Court's stated desire for the parties to resolve this case on an individual basis, please convey that NRS offers $35,000 to confidentially settle his claims, with $25k to him and $10k to counsel—unless Mr. Walston decides to split the amount differently. This offer will remain open until EOD next Wednesday.

As you know, this is significantly more than Mr. Walston could recover on his best day in court, and is almost three times what he would get if the Court agrees with us that there was a settlement. It is hard to see why Mr. Walston wouldn't prefer this outcome, given his initial $9,800 demand. That's even more true in this case given the contemplated letters rogatory. Based on our preliminary research, it will take at least a year to go through that process and cost at least tens of thousands of dollars, which will reduce his potential individual recovery accordingly.

Given your statements yesterday about Plaintiff not being interested in individual settlement because he wants to represent the class, I wanted to make a couple additional points. First, no one else has complained about NRS's calls, which NRS doesn't conduct anymore out of an abundance of caution. Second, while we sympathize with Plaintiff's annoyance at the calls he erroneously received, NRS is not a bad actor. In fact, its owners donate most of their proceeds to charitable causes. Third, as the judge noted, Plaintiff has a "long way to go" in this case. There are substantial barriers to any recovery on the merits and at class certification. Very few of these cases are certified, and we've never had one certified in 400+ TCPA class actions. Statistically speaking, the most likely outcome is that Mr. Walston spends years litigating this case and ultimately ends taking an individual settlement less than we are offering now.

I think it would be helpful to have a settlement conference with a Magistrate Judge. If your client still wants to pursue class claims after that, fine. But I think all parties would benefit from taking this in front of a neutral.

Please provide this communication to your client and let us know his response to having a settlement conference by Friday so that we can report back to the Court.

Thanks,
-Ryan


**Ryan D. Watstein (bio)**

WATSTEIN TEREPKA LLP
P: 404-782-0695

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

ryan@wtlaw.com
www.wtlaw.com

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

# EXHIBIT D

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7



Gmail

Jeremy Glapion <jmg@glapionlaw.com>

## Walston v. NRS - 24-cv-83 - Plaintiff's Settlement Position

1 message

**Jeremy Glapion** <jmg@glapionlaw.com>
To: lynette_santiago@ilnd.uscourts.gov

Fri, Jun 14, 2024 at 9:34 AM

Hi Lynette:

Thank you again for your work to date on this case.

I represent Plaintiff in the above-captioned matter.

Pursuant to docket entry 28, I am writing to confirm that Plaintiff does not have any interest in an individual settlement or a settlement conference to that end. I confirmed this through discussing directly and at length with Plaintiff on June 11.

We are always interested in discussing a class-wide resolution.

I am happy to further clarify Plaintiff's position and reasoning here, if the Court requests.

Thank you,
Jeremy



**Jeremy M. Glapion**
Partner

Glapion Law Firm
1704 Maxwell Drive
Wall, New Jersey 07719
Tel.: 732-455-9737

RWW001286

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

# EXHIBIT E

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **RASHAD WALSTON,** | Civil Case No.: 24-cv-83 |
| Plaintiff, | **Plaintiff's Responses to Defendant's First Set of Requests for Production** |
| v. | |
| **NATIONAL RETAIL SOLUTIONS, INC.** | |
| Defendant. | |

### GENERAL

Plaintiff hereby submits these written responses to Defendant's First Set of Requests for Production. These responses are accurate as of the date of submission, and any omissions, updates, or changes will be made promptly as required by any applicable rule or statute. In addition, documents responsive to many of these requests are in the exclusive possession of Defendant and/or other third-parties. Nothing herein is intended to suggest otherwise, and the responses below are limited only to those items in Plaintiff's control, possession, or knowledge. Further, to the extent a document produced by Defendant is relevant to these requests, Plaintiff will not re-produce said document to Defendant. This has no bearing on Plaintiff's belief as to the relevance of said document.

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

## **REQUESTS FOR PRODUCTION**

### **REQUEST NO. 1**

All DOCUMENTS EVIDENCING COMMUNICATIONS YOU have had with any PERSON regarding any of the facts and allegations set forth in, or underlying, the COMPLAINT and the defenses set forth in the ANSWER, including, without limitation, all non-privileged COMMUNICATIONS YOU sent to or received from any PERSON.

### **RESPONSE**:

Objection on the following ground(s): the request is overly broad in that it purports to ask for "all non-privileged COMMUNICATIONS", related to this case or not. The request also purports to call for attorney-client privileged information, as it requests all communications "including" (but not limited to) non-privileged communications. Limiting this request to the facts of this case and to non-privileged communications, please see documents produced as: RWW0001-0017, which encompass the voicemail recordings of the calls from Defendant to Plaintiff, screenshots of those calls, and the demand letter sent to Defendant. Additional material that may be responsive to this request was, on April 19, produced to Plaintiff's counsel through a subpoena to Cricket/AT&T. Plaintiff's counsel, due to a technical error on Cricket/AT&T's end, is currently unable to access these documents. To the extent any such documents are responsive, they will be produced immediately after resolution of these technical issues and review.

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

**REQUEST NO. 2**

All DOCUMENTS (including, without limitation, recordings) containing statements, observations, summaries or reports of any kind made by any PERSON having any knowledge of any allegation or claim alleged in the COMPLAINT or that document or relate in any manner to YOUR claims, allegations, or alleged damages in this litigation.

**RESPONSE**:

Objection on the following ground(s): the request is overly broad in that it purports to ask for attorney-client communications and attorney work product. Limiting this request to non-privileged material, please see documents produced as: RWW0001-0017, which encompass the voicemail recordings of the calls from Defendant to Plaintiff, screenshots of those calls, and the demand letter sent to Defendant. Additional material that may be responsive to this request was, on April 19, produced to Plaintiff's counsel through a subpoena to Cricket/AT&T. Plaintiff's counsel, due to a technical error on Cricket/AT&T's end, is currently unable to access these documents. To the extent any such documents are responsive, they will be produced immediately after resolution of these technical issues and review.

**REQUEST NO. 3**

All DOCUMENTS YOU or any other PERSON involved in preparing responses to DEFENDANT'S First Set of Interrogatories relied upon in, or reviewed in connection with,

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

preparing YOUR responses to DEFENDANT'S First Set of Interrogatories, served contemporaneously herewith.

**RESPONSE**:

No additional responsive documents in Plaintiff's possession. All documents currently in Plaintiff's possession have been produced as RWW0001-1234.

**REQUEST NO. 4**

All DOCUMENTS (including but not limited to voicemail recordings) YOU identified, reviewed, or relied upon in preparing YOUR Initial Disclosures pursuant to Rule 26 of the Federal Rules of Civil Procedure.

**RESPONSE**:

No additional responsive documents in Plaintiff's possession. All documents currently in Plaintiff's possession have been produced as RWW0001-1234.

**REQUEST NO. 5**

All DOCUMENTS that EVIDENCE, REFER OR RELATE TO, or CONCERN all lawsuits, court proceedings, administrative proceedings, arbitrations, or other legal proceedings to which YOU have been a party or witness, or in which YOU provided oral or written testimony, including, without limitation, any and all civil actions, criminal actions,

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

arbitrations, mediations, administrative actions, or any other similar proceedings or actions.

**RESPONSE**:

For responsive material, please see Plaintiff's response to Interrogatory No. 6 for docket numbers for each legal proceeding in which Plaintiff has been involved and which he recalls. To the extent Defendant seeks non-filed material (such as discovery material or settlement material), Plaintiff objects to the relevance and proportionality of such a request, and will not produce such material.

**REQUEST NO. 6**

DOCUMENTS sufficient to EVIDENCE, CONCERN, or REFER OR RELATE TO the SUBJECT TELEPHONE NUMBER, including, without limitation, documents sufficient to evidence YOUR phone plan, the persons on such plan, all billing statements, and all records of incoming calls to, or outgoing calls from, that number, including any and all calls that resulted in voice messages or voicemails, including the calls identified in the COMPLAINT.

**RESPONSE**:

Please see RWW0001-0017, which encompass the voicemail recordings of the calls from Defendant to Plaintiff, screenshots of those calls, and the demand letter sent to Defendant. Additional material that may be responsive to this request was, on April 19, produced to Plaintiff's counsel through a subpoena to Cricket/AT&T. Plaintiff's counsel,

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

due to a technical error on Cricket/AT&T's end, is currently unable to access these documents. To the extent any such documents are responsive, they will be produced immediately after resolution of these technical issues and review.

**REQUEST NO. 7**

All DOCUMENTS that constitute, EVIDENCE, CONCERN, or REFER OR RELATE TO any notes, recordings, or other memorialization YOU or any other PERSON made that document any of the allegations in the COMPLAINT or any other fact at issue in this action.

**RESPONSE**:

Please see RWW0001-0017, which encompass the voicemail recordings of the calls from Defendant to Plaintiff, screenshots of those calls, and the demand letter sent to Defendant. Additional material that may be responsive to this request was, on April 19, produced to Plaintiff's counsel through a subpoena to Cricket/AT&T. Plaintiff's counsel, due to a technical error on Cricket/AT&T's end, is currently unable to access these documents. To the extent any such documents are responsive, they will be produced immediately after resolution of these technical issues and review.

**REQUEST NO. 8**

All DOCUMENTS that EVIDENCE, CONCERN, or REFER OR RELATE TO the calls identified in the COMPLAINT.

**RESPONSE**:

6

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E0-A01E-4ECC-A86C-356E2C3C2EB7

Please see RWW0001-0017, which encompass the voicemail recordings of the calls from Defendant to Plaintiff, screenshots of those calls, and the demand letter sent to Defendant. Additional material that may be responsive to this request was, on April 19, produced to Plaintiff's counsel through a subpoena to Cricket/AT&T. Plaintiff's counsel, due to a technical error on Cricket/AT&T's end, is currently unable to access these documents. To the extent any such documents are responsive, they will be produced immediately after resolution of these technical issues and review.

**REQUEST NO. 9**

All DOCUMENTS, including, but not limited to contracts, between YOU and the carrier(s) or provider(s) of telephone service for the SUBJECT TELEPHONE NUMBER, including terms of service applicable to YOUR use of that number.

**RESPONSE**:

Material that may be responsive to this request was, on April 19, produced to Plaintiff's counsel through a subpoena to Cricket/AT&T. Plaintiff's counsel, due to a technical error on Cricket/AT&T's end, is currently unable to access these documents. To the extent any such documents are responsive, they will be produced immediately after resolution of these technical issues and review.

**REQUEST NO. 10**

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

All DOCUMENTS that EVIDENCE, CONCERN, or REFER OR RELATE TO any telephone number from which YOU allege that DEFENDANT called YOU at the SUBJECT TELEPHONE NUMBER.

**RESPONSE**:

Please see RWW0001-0017, which encompass the voicemail recordings of the calls from Defendant to Plaintiff, screenshots of those calls, and the demand letter sent to Defendant. Additional material that may be responsive to this request was, on April 19, produced to Plaintiff's counsel through a subpoena to Cricket/AT&T. Plaintiff's counsel, due to a technical error on Cricket/AT&T's end, is currently unable to access these documents. To the extent any such documents are responsive, they will be produced immediately after resolution of these technical issues and review.

**REQUEST NO. 11**

All DOCUMENTS that EVIDENCE, CONCERN, or REFER OR RELATE TO any LEAD FORM YOU have completed, listing the SUBJECT TELEPHONE NUMBER, from January 5, 2020 to present.

**RESPONSE**:

Objection, as there is no relevance to any lead form other than Defendant's lead form (if such a form exists). Notwithstanding this objection, and without withholding any documents based thereupon, no such documents in Plaintiff's possession.

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

**REQUEST NO. 12**

All DOCUMENTS that EVIDENCE, CONCERN, or REFER OR RELATE TO any COMMUNICATIONS between YOU and any third party (other than YOUR counsel) that REFER OR RELATE TO the allegations set forth in, or underlying, YOUR COMPLAINT and the defenses set forth in the ANSWER, including, without limitation, all recordings, voicemail messages, letters, or other correspondence and all DOCUMENTS YOU sent to or received from such third party.

**RESPONSE**:

Please see RWW0001-1234. Additional material that may be responsive to this request was, on April 19, produced to Plaintiff's counsel through a subpoena to Cricket/AT&T. Plaintiff's counsel, due to a technical error on Cricket/AT&T's end, is currently unable to access these documents. To the extent any such documents are responsive, they will be produced immediately after resolution of these technical issues and review.

**REQUEST NO. 13**

All DOCUMENTS that EVIDENCE, CONCERN, or REFER OR RELATE TO YOUR COMMUNICATIONS with any PERSON (other than YOUR counsel) wherein YOU discussed DEFENDANT'S alleged violations of the TCPA.

**RESPONSE**:

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

Please see RWW0001-1234. Additional material that may be responsive to this request was, on April 19, produced to Plaintiff's counsel through a subpoena to Cricket/AT&T. Plaintiff's counsel, due to a technical error on Cricket/AT&T's end, is currently unable to access these documents. To the extent any such documents are responsive, they will be produced immediately after resolution of these technical issues and review.

**REQUEST NO. 14**

All DOCUMENTS that EVIDENCE, SUPPORT OR REFUTE, CONCERN, or REFER OR RELATE TO YOUR allegation in the COMPLAINT that DEFENDANT used an artificial or prerecorded voice to contact YOU.

**RESPONSE**:

Objection as this calls for documents protected by attorney-client privilege or attorney work product. Please see RWW0001-0017, which encompass the voicemail recordings of the calls from Defendant to Plaintiff, screenshots of those calls, and the demand letter sent to Defendant. Additional material that may be responsive to this request was, on April 19, produced to Plaintiff's counsel through a subpoena to Cricket/AT&T. Plaintiff's counsel, due to a technical error on Cricket/AT&T's end, is currently unable to access these documents. To the extent any such documents are responsive, they will be produced immediately after resolution of these technical issues and review.

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

**REQUEST NO. 15**

All DOCUMENTS that EVIDENCE, SUPPORT OR REFUTE, CONCERN, or REFER OR RELATE TO YOUR allegation that DEFENDANT acted willfully or knowingly.

**RESPONSE**:

Please see RWW0001-0017, which encompass the voicemail recordings of the calls from Defendant to Plaintiff, screenshots of those calls, and the demand letter sent to Defendant. Additional material that may be responsive to this request was, on April 19, produced to Plaintiff's counsel through a subpoena to Cricket/AT&T. Plaintiff's counsel, due to a technical error on Cricket/AT&T's end, is currently unable to access these documents. To the extent any such documents are responsive, they will be produced immediately after resolution of these technical issues and review.

**REQUEST NO. 16**

All DOCUMENTS that EVIDENCE, SUPPORT OR REFUTE, CONCERN, or REFER OR RELATE TO YOUR allegations in Paragraph 13 of the COMPLAINT that "Plaintiff's telephone number is and was a cellular telephone number."

**RESPONSE**:

Please see RWW0001-0017, which encompass the voicemail recordings of the calls from Defendant to Plaintiff, screenshots of those calls, and the demand letter sent to Defendant. Additional material that may be responsive to this request was, on April 19, produced to Plaintiff's counsel through a subpoena to Cricket/AT&T. Plaintiff's counsel,

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

due to a technical error on Cricket/AT&T's end, is currently unable to access these documents. To the extent any such documents are responsive, they will be produced immediately after resolution of these technical issues and review.

**REQUEST NO. 17**

All DOCUMENTS that EVIDENCE, SUPPORT OR REFUTE, CONCERN, or REFER OR RELATE TO YOUR allegations in Paragraph 14 of the COMPLAINT that "Plaintiff is the regular user of this telephone number."

**RESPONSE**:

Please see RWW0001-0017, which encompass the voicemail recordings of the calls from Defendant to Plaintiff, screenshots of those calls, and the demand letter sent to Defendant. Additional material that may be responsive to this request was, on April 19, produced to Plaintiff's counsel through a subpoena to Cricket/AT&T. Plaintiff's counsel, due to a technical error on Cricket/AT&T's end, is currently unable to access these documents. To the extent any such documents are responsive, they will be produced immediately after resolution of these technical issues and review.

**REQUEST NO. 18**

All DOCUMENTS that EVIDENCE, SUPPORT OR REFUTE, CONCERN, or REFER OR RELATE TO YOUR allegations in Paragraph 15 of the COMPLAINT referencing the alleged calls occurring on or about March 7, 2022, May 19, 2022, August 8, 2022, March 20, 2023, May 4, 2023, and July 31, 2023.

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

**RESPONSE**:

Please see RWW0001-0017, which encompass the voicemail recordings of the calls from Defendant to Plaintiff, screenshots of those calls, and the demand letter sent to Defendant. Additional material that may be responsive to this request was, on April 19, produced to Plaintiff's counsel through a subpoena to Cricket/AT&T. Plaintiff's counsel, due to a technical error on Cricket/AT&T's end, is currently unable to access these documents. To the extent any such documents are responsive, they will be produced immediately after resolution of these technical issues and review.

**REQUEST NO. 19**

All DOCUMENTS that EVIDENCE, SUPPORT OR REFUTE, CONCERN, or REFER OR RELATE TO YOUR allegations in Paragraph 16 of the COMPLAINT that the calls "were prerecorded rather than a live person leaving a voicemail."

**RESPONSE**:

Please see RWW0001-0017, which encompass the voicemail recordings of the calls from Defendant to Plaintiff, screenshots of those calls, and the demand letter sent to Defendant. Additional material that may be responsive to this request was, on April 19, produced to Plaintiff's counsel through a subpoena to Cricket/AT&T. Plaintiff's counsel, due to a technical error on Cricket/AT&T's end, is currently unable to access these documents. To the extent any such documents are responsive, they will be produced immediately after resolution of these technical issues and review.

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E0-A01E-4ECC-A86C-356E2C3C2EB7

**REQUEST NO. 20**

All DOCUMENTS that EVIDENCE, SUPPORT OR REFUTE, CONCERN, or REFER OR RELATE TO YOUR allegations in Paragraph 17 of the COMPLAINT that "Plaintiff knows that these calls were prerecorded due to his familiarity with normal human mannerisms, speaking, and intonations, as well as through comparison of the messages."

**RESPONSE**:

Please see RWW0001-0017, which encompass the voicemail recordings of the calls from Defendant to Plaintiff, screenshots of those calls, and the demand letter sent to Defendant. Additional material that may be responsive to this request was, on April 19, produced to Plaintiff's counsel through a subpoena to Cricket/AT&T. Plaintiff's counsel, due to a technical error on Cricket/AT&T's end, is currently unable to access these documents. To the extent any such documents are responsive, they will be produced immediately after resolution of these technical issues and review.

**REQUEST NO. 21**

All DOCUMENTS that EVIDENCE, SUPPORT OR REFUTE, CONCERN, or REFER OR RELATE TO YOUR allegations in Paragraph 21 of the COMPLAINT that "What's more, the waveforms (*i.e.,* the visual representation that shows how loud or quiet the sound is at different moments in the file) of both audio files is identical."

**RESPONSE**:

14

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

Please see RWW0001-0017, which encompass the voicemail recordings of the calls from Defendant to Plaintiff, screenshots of those calls, and the demand letter sent to Defendant. Additional material that may be responsive to this request was, on April 19, produced to Plaintiff's counsel through a subpoena to Cricket/AT&T. Plaintiff's counsel, due to a technical error on Cricket/AT&T's end, is currently unable to access these documents. To the extent any such documents are responsive, they will be produced immediately after resolution of these technical issues and review.

**REQUEST NO. 22**

All DOCUMENTS that EVIDENCE, SUPPORT OR REFUTE, CONCERN, or REFER OR RELATE TO YOUR allegations in Paragraph 22 of the COMPLAINT that "[u]pon information and belief, it would be nearly impossible for two audio files to have identical length, content, and waveforms without the audio used to create the files actually being identical—that is, prerecorded."

**RESPONSE**:

No additional documents in Plaintiff's possession.

**REQUEST NO. 23**

All DOCUMENTS that EVIDENCE, SUPPORT OR REFUTE, CONCERN, or REFER OR RELATE TO YOUR allegations in Paragraph 30 of the COMPLAINT that "Plaintiff provided no consent whatsoever here, and certainly not the kind that would rise to the level of prior express written consent."

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E0-A01E-4ECC-A86C-356E2C3C2EB7

**RESPONSE**:

No such documents.

**REQUEST NO. 24**

All DOCUMENTS that EVIDENCE, SUPPORT OR REFUTE, CONCERN, or REFER OR RELATE TO YOUR allegations in Paragraph 32 of the COMPLAINT that "it appears that Defendant scraped his telephone number from a database such as taxrpo.com[.]"

**RESPONSE**:

No such documents in Plaintiff's possession, but please see Plaintiff's response to Interrogatory No. 18.

**REQUEST NO. 25**

All DOCUMENTS that EVIDENCE, SUPPORT OR REFUTE, CONCERN, or REFER OR RELATE TO YOUR allegations in Paragraph 35 of the COMPLAINT that "even if Plaintiff had provided his telephone number to Defendant—which he did not—the form through which Defendant solicits such telephone numbers, as shown below, lacks the required disclosures (e.g. that calls might be made using a prerecorded voice)," including where the included screenshot came from, the specific URL, and the date retrieved.

**RESPONSE**:

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

Objection, as this request appears to request a narrative response in addition to documents. Without waiving this objection, this particular screenshot came from nrsplus.com, and was retrieved at some point on or before January 3, 2024.

**REQUEST NO. 26**

ALL DOCUMENTS that EVIDENCE, SUPPORT OR REFUTE, CONCERN, or REFER OR RELATE TO YOUR allegation in Paragraph 42 of the COMPLAINT that "[t]he exact number and identities of the persons who fit within the Classes are ascertainable in that Defendant maintain[s] written and electronically stored data showing: a. The dates and times Defendant placed its calls; b. The telephone numbers to which Defendant placed its calls; c. The purpose and content of its calls."

**RESPONSE**:

Plaintiff will demonstrate this and produce any documents that may be necessary to demonstrate this as required at the appropriate time for moving for class certification. Currently, any such documents are in Defendant's or its agent's exclusive possession.

**REQUEST NO. 27**

ALL DOCUMENTS that EVIDENCE, SUPPORT OR REFUTE, CONCERN, or REFER OR RELATE TO YOUR allegation in Paragraph 45 the COMPLAINT that "[t]here are common questions of law and fact affecting the rights of members of the Class."

**RESPONSE**:

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

Plaintiff will demonstrate this as required at the appropriate time for moving for class certification, and supplement these responses as necessary or required by law, rule, or order.

**REQUEST NO. 28**

ALL DOCUMENTS that EVIDENCE, SUPPORT OR REFUTE, CONCERN, or REFER OR RELATE TO YOUR allegation in Paragraph 46 the COMPLAINT that "Plaintiff's claims are typical of the claims of the Class in that they arise from Defendant's uniform conduct and are based on the same legal theories."

**RESPONSE**:

Plaintiff will demonstrate this as required at the appropriate time for moving for class certification, and supplement these responses as necessary or required by law, rule, or order.

**REQUEST NO. 29**

ALL DOCUMENTS that EVIDENCE, SUPPORT OR REFUTE, CONCERN, or REFER OR RELATE TO YOUR allegation in Paragraph 49 the COMPLAINT that "Plaintiff will thoroughly and adequately protect the interests of the Class, as Plaintiff and his retained counsel do not have any conflicts of interest with the proposed Class; Plaintiff's counsel is experienced in class actions of this type and can adequately represent the interests of the class; and Plaintiff and his counsel have adequate financial resources to assure that the interests of the class will not be harmed."

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

**RESPONSE**:

Plaintiff will demonstrate this as required at the appropriate time for moving for class certification, and supplement these responses as necessary or required by law, rule, or order.

**REQUEST NO. 30**

ALL DOCUMENTS that EVIDENCE, SUPPORT OR REFUTE, CONCERN, or REFER OR RELATE TO YOUR allegation in Paragraph 50 of the COMPLAINT that "Defendant has acted and refused to act on grounds generally applicable to the Class, thereby making injunctive and declaratory relief appropriate for the Class."

**RESPONSE**:

Plaintiff will demonstrate this as required at the appropriate time for moving for class certification, and supplement these responses as necessary or required by law, rule, or order.

**REQUEST NO. 31**

ALL DOCUMENTS that EVIDENCE, SUPPORT OR REFUTE, CONCERN, or REFER OR RELATE TO YOUR allegation in Paragraph 51 of the COMPLAINT that "[t]he prosecution of separate actions by individual Class Members would create a risk of inconsistent or varying adjudications."

**RESPONSE**:

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

Plaintiff will demonstrate this as required at the appropriate time for moving for class certification, and supplement these responses as necessary or required by law, rule, or order.

**REQUEST NO. 32**

ALL DOCUMENTS that EVIDENCE, SUPPORT OR REFUTE, CONCERN, or REFER OR RELATE TO YOUR allegation in Paragraph 54 the COMPLAINT that "[t]he prosecution of separate actions would risk confronting Defendant with incompatible standards of conduct."

**RESPONSE**:

Plaintiff will demonstrate this as required at the appropriate time for moving for class certification, and supplement these responses as necessary or required by law, rule, or order.

**REQUEST NO. 33**

ALL DOCUMENTS that EVIDENCE, SUPPORT OR REFUTE, CONCERN, or REFER OR RELATE TO YOUR allegation in Paragraph 57 of the COMPLAINT that "[t]he expense of individual litigation and the limited recovery in individual litigation justify a class action."

**RESPONSE**:

Plaintiff will demonstrate this as required at the appropriate time for moving for class certification, and supplement these responses as necessary or required by law, rule, or order.

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

**REQUEST NO. 34**

All DOCUMENTS that EVIDENCE, SUPPORT OR REFUTE, CONCERN, or REFER OR RELATE TO YOUR allegations in Paragraph 70 of the COMPLAINT that "[e]ach member of the putative Class has Article III standing as unwanted prerecorded calls invaded their privacy and intruded upon their seclusion, which is the exact harm the TCPA was designed to prevent."

**RESPONSE**:

Plaintiff will demonstrate this as required at the appropriate time for moving for class certification, and supplement these responses as necessary or required by law, rule, or order.

**REQUEST NO. 35**

ALL DOCUMENTS that EVIDENCE, SUPPORT OR REFUTE, CONCERN, or REFER OR RELATE TO whether the members of the putative classes are ascertainable.

**RESPONSE**:

Plaintiff will demonstrate this as required at the appropriate time for moving for class certification, and supplement these responses as necessary or required by law, rule, or order.

**REQUEST NO. 36**

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

For each expert witness YOU expect to call at trial, all DOCUMENTS, data or other materials provided to, shown to, or considered by the expert in arriving at his or her opinion.

**RESPONSE**:

Plaintiff will produce such documents in accordance with the expert disclosure deadline set by the Court pursuant to docket entry 15 (subject to any modifications subsequently made to that schedule).

**REQUEST NO. 37**

The resume for each expert witness YOU expect to call at trial.

**RESPONSE**:

Plaintiff will produce such documents in accordance with the expert disclosure deadline set by the Court pursuant to docket entry 15 (subject to any modifications subsequently made to that schedule).

**REQUEST NO. 38**

All DOCUMENTS that YOU intend to present at any trial, deposition, hearing or other proceeding in this matter.

**RESPONSE**:

Plaintiff will produce such documents in accordance with the deadlines set by the Court pursuant to docket entry 15 (subject to any modifications subsequently made to that

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

schedule). Plaintiff will, as required, timely supplement responses to Defendant's discovery requests, as necessary.

**REQUEST NO. 39**

All DOCUMENTS that EVIDENCE, SUPPORT OR REFUTE, CONCERN, or REFER OR RELATE TO every carrier, the name of every plan, and the dates during which YOU had such plans, for each cellular phone number YOU have had since January 5, 2020, to the present.

**RESPONSE**:

Objection on the following ground(s): the request is overly broad in that it purports to ask for information regarding telephones and telephone numbers irrelevant to this litigation. Limiting this request to the subject telephone number, material that may be responsive to this request was, on April 19, produced to Plaintiff's counsel through a subpoena to Cricket/AT&T. Plaintiff's counsel, due to a technical error on Cricket/AT&T's end, is currently unable to access these documents. To the extent any such documents are responsive, they will be produced immediately after resolution of these technical issues and review.

**REQUEST NO. 40**

All DOCUMENTS that REFER or RELATE to any complaints by YOU to any PERSON about unwanted telephone calls YOU claim to have received.

**RESPONSE**:

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

Objection on the following ground(s): the request is overly broad in that it purports to ask for about complaints unrelated to this litigation or the calls from Defendant to Plaintiff. Subject to this litigation, but without withholding any documents, please see documents produced as: RWW0001-0017, which encompass the voicemail recordings of the calls from Defendant to Plaintiff, screenshots of those calls, and the demand letter sent to Defendant. Additional material that may be responsive to this request was, on April 19, produced to Plaintiff's counsel through a subpoena to Cricket/AT&T. Plaintiff's counsel, due to a technical error on Cricket/AT&T's end, is currently unable to access these documents. To the extent any such documents are responsive, they will be produced immediately after resolution of these technical issues and review.

**REQUEST NO. 41**

ALL retention, retainer, or other agreements between YOU and any attorney that RELATE TO or EVIDENCE YOUR representation in this lawsuit.

**RESPONSE**:

Objection, as such agreements are not discoverable in the Seventh Circuit without the requesting party showing relevance or necessity. S*ee, e.g. Blaise v. Transworld Sys.*, 2022 U.S. Dist. LEXIS 136053, *3-7 (N.D. Ill. Aug. 1, 2022). Such documents will not be produced.

**REQUEST NO. 42**

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

All DOCUMENTS that EVIDENCE, SUPPORT OR REFUTE, CONCERN, or REFER OR RELATE TO YOUR use of a call blocking service, software, or application from January 5, 2020 to the present.

**RESPONSE**:

No such documents in Plaintiff's possession, but please see Plaintiff's response to Interrogatory No. 14.

**REQUEST NO. 43**

To the extent not produced in response to any of the foregoing Requests, all DOCUMENTS that EVIDENCE, CONCERN, SUPPORT OR REFUTE, or REFER OR RELATE TO the allegations set forth in YOUR COMPLAINT or the defenses set forth in the ANSWER.

**RESPONSE**:

No additional documents in Plaintiff's possession. Additional material that may be responsive to this request was, on April 19, produced to Plaintiff's counsel through a subpoena to Cricket/AT&T. Plaintiff's counsel, due to a technical error on Cricket/AT&T's end, is currently unable to access these documents. To the extent any such documents are responsive, they will be produced immediately after resolution of these technical issues and review.

**REQUEST NO. 44**

To the extent not produced in response to any of the foregoing Requests, all

25

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

DOCUMENTS that REFER or RELATE TO the SUBJECT TELEPHONE NUMBER, including without limitation all call logs of calls, contracts, call recordings, call transcripts, and voicemails.

**RESPONSE**:

No additional documents in Plaintiff's possession. Additional material that may be responsive to this request was, on April 19, produced to Plaintiff's counsel through a subpoena to Cricket/AT&T. Plaintiff's counsel, due to a technical error on Cricket/AT&T's end, is currently unable to access these documents. To the extent any such documents are responsive, they will be produced immediately after resolution of these technical issues and review.

**REQUEST NO. 45**

All DOCUMENTS that constitute, EVIDENCE, or REFER OR RELATE TO any social media COMMUNICATIONS YOU (or YOUR attorneys, agents or anyone acting on YOUR behalf) have made or contributed to regarding the facts and circumstances giving rise to this litigation and/or your COMPLAINT.

**RESPONSE**:

No such documents in Plaintiff's possession.

**REQUEST NO. 46**

All DOCUMENTS that EVIDENCE, CONCERN, SUPPORT OR REFUTE any attempts, efforts, advertisements, and/or COMMUNICATIONS by YOU (or YOUR attorneys, agents

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

or anyone acting on YOUR behalf), to solicit, recruit, or persuade other individuals to participate in this action. This Request seeks production of, among other things, any written advertisements or solicitations related to this litigation, as well as any "electronic" advertisements or solicitations, including firm websites, blog, and social media messages, social media publications, or other similar electronic COMMUNICATIONS.

**RESPONSE**:

No such documents in Plaintiff's possession.

**REQUEST NO. 47**

All DOCUMENTS EVIDENCING, CONCERNING, or RELATING TO COMMUNICATIONS YOU sent to or received from members of the putative Class or individuals you contend may be members of the putative Class.

**RESPONSE**:

No such documents in Plaintiff's possession.

DATED:         April 19, 2024          s/ Jeremy M. Glapion_____
                                       Jeremy M. Glapion
                                       **The Glapion Law Firm, LLC**
                                       1704 Maxwell Drive
                                       Wall, New Jersey 07719
                                       Tel: 732.455.9737
                                       Fax: 732.965.8006
                                       jmg@glapionlaw.com

                                       Attorney for Plaintiff

27

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

# EXHIBIT F

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

<p style="color:red; text-align:center">CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER</p>

## STANDARD TERMS OF ENGAGEMENT

I, RASHAD WALSTON, ("you, your") retain **THE GLAPION LAW FIRM, LLC**, located at 1704 Maxwell Drive, Wall, NJ, ("we, us, our, firm, attorneys"), to represent your interests in a matter against National Retail Solutions, Inc., and any of their affiliates, subsidiaries, related entities, agents and employees thereof for claims based on violations of the Telephone Consumer Protection Act ("TCPA") and other potential claims related to the nuisance telephone calls (such as invasion of privacy) (collectively, "Claims").

Your current mailing address (no PO box) is:

███████████████ - Chicago, IL 60643

Your telephone number (if an unwanted calls case, the number that received or is receiving the unwanted calls):

████████4088

The wireless carrier for the listed number:

Cricket

Your best contact number if it differs from the above:

### Attorney Client Relationship

Your communications with us are protected by our ethical obligation of confidentiality and by the evidentiary rule of attorney-client privilege. You should be open and forthright with us so that we have all information relevant to your representation. Please note that when we represent a legal entity (corporation, limited liability company, or partnership); our attorney-client relationship is with the entity alone and, unless otherwise stated, is not with its officers, directors, shareholders, partners, members, or affiliates.

**NOTIWTHSTANDING ANYTHING ELSE IN THIS AGREEMENT, THIS AGREEMENT DOES NOT OBLIGATE EITHER PARTY TO PROCEED WITH A LAWSUIT. PRIOR TO THE INITIATION OF ANY LAWSUIT, THE PARTIES WILL NEED TO ENTER INTO A NEW AGREEMENT WITH THIS LANGUAGE REMOVED.**

RWW001271

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

### Responsibilities

As your attorneys, we have a duty of independent professional judgment, confidentiality, loyalty, and diligence. As our client, you have a duty of cooperation, honesty, and candor.

As your attorneys, we will conduct a full and thorough investigation of your case and proceed, or decline to proceed, accordingly. If, after an investigation, we choose not to pursue this case, we may terminate this agreement. You will owe us nothing.

As your attorneys, we are under no obligation to initiate or defend post-trial motions or post-trial appeals regarding the Claims unless specifically agreed to in writing.

As your attorneys, we retain final decision making authority with respect to matters of strategy, including, but not limited to, whether and how to oppose certain motions; whether and how to raise particular arguments; and whether and how to plead or dismiss particular claims. This list is not exhaustive.

As our client, you have a duty to preserve all documents that are or may become relevant to the litigation. You also have a duty to be reasonably available to answer questions or provide information as necessary.

As our client, you confirm that you have not assigned or transferred, and will not assign or transfer, all or part of your Claims to any person and that you have not signed, and will not sign, any other contingency fee agreement with any other lawyer or law firm with respect to the Claims, while this agreement remains in force.

As our client, you understand and agree that we may ask one or more other law firms to assist us in our representation of you with respect to the Claims, but that we will not do so without obtaining prior written consent from you.

As our client, you confirm that you have provided us with honest information regarding the facts and merits of your case, and have not withheld any information that, in your best judgment, would be relevant to our decision to take this case or our strategy in pursuing this case. _RW_

As our client, you confirm that you took no steps to intentionally manufacture any claim against you, such as by voluntarily subjecting yourself to the behavior about which you now complain (e.g. intentionally soliciting calls you now claim to be unwanted or unsolicited). _RW_

### Electronic Communications

For speed and efficiency, we will commonly use e-mail, cellular telephones and facsimile to communicate with you. However, it is possible that these types of communications could be intercepted or misrouted. By signing this agreement, you consent to these communications.

RWW001272

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

<div align="center" style="color:red">CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER</div>

### Association With Outside Counsel

From time to time, we may choose to associate ourselves with attorneys and law firms other than those included in the definition of "we, us, our, firm, attorneys" above. This may include, but is not limited to, local counsel (an attorney licensed in the court in which we intend to file, and a requirement in many courts for us to litigate if we are not licensed in that state or court) or by entering into a joint prosecution agreement ("JPA") with other firms with similar cases (already on file or otherwise).

Ordinarily, this will not affect your arrangement with us. We will still be your lawyers. We will still be litigating this case. We may just have assistance. Ordinarily, this also does not impact any fees you may owe us, as we agree with any outside counsel what percentage of the overall fee they will receive, depending on the circumstances.

Should we associate with outside counsel, we will notify you in writing via email, unless you indicate another method is preferred. Your response to that email agreeing to our association with outside counsel constitutes a modification of this paragraph to include in the table below the outside counsel with whom we, as if written directly therein.

| Attorney(s) | Reason | Percentage of Total Fee |
|---|---|---|

### Representing Adverse Interest

As long as we represent you, we will not provide services for another person whose interests are adverse to yours within the same subject matter of our relationship or in any claim involving you, without your written consent.

### Legal Fees

You will not have to pay for the firm's services.

We may ask the other party to pay attorneys' fees and costs. You agree that we are entitled to any such money awarded or specified in any settlement agreement as costs and attorneys' fees for our work on this case. You agree that this amount shall be negotiated by us. In so negotiating, we will seek an amount equal to the greater of 1) the firm's hourly rate (currently $650/hour) times hours worked **("base lodestar amount")**, 2) our actual costs plus one-third (1/3) of the full amount of any settlement or judgment, or 3) in case in which your damages are primarily or exclusively statutory in nature, the difference between the total settlement amount and your maximum permitted statutory damages.

Should any award be provided in a "lump sum" payment without separating out attorneys' fees and costs, it is assumed that our fees are the greater of 1) the firm's hourly rate (currently $650/hour) times hours worked **("base lodestar amount")**, 2) our actual costs plus one-third (1/3) of the full amount of any settlement or judgment, or 3) in a case in which your damages are primarily or exclusively statutory in nature, the difference between the total settlement amount and your maximum permitted statutory damages.

RWW001273

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

## CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

It is expressly understood that in the event that the attorneys are unsuccessful in recovering money in this action, **you will not be responsible to reimburse the attorneys for any out of pocket costs or legal fees**.

You understand that the firm may be making a fee application to the Court to recover attorneys' fees and costs associated with this matter. You agree to fully cooperate with the firm with respect to all fee applications.

Should the matter be certified as a class or collective action (including certification for the purposes of settlement only), the Court will be required to approve any settlement. In such a circumstance, the firm shall be entitled only to those fees approved by the Court, in the form prescribed by the Court (e.g. to be paid separately or out of the settlement fund).

If a matter brought as a class action at any point ceases to be a class action (such as through denial of class certification), the firm may elect to withdraw from representing you for your individual claim. You owe the firm nothing in such a circumstance. Should the firm not elect to withdraw, the provisions of this agreement remain in force as applicable to individual claims.

We record and calculate the time spent for all services rendered in increments of on tenth of an hour (1/10). This includes telephone calls (minimum charge of .2 hours), preparing and reviewing letters, documents or other correspondence (minimum charge of .3 hours), travel time to and from meetings and the Court, legal research, preparation of pleadings and other related documents, negotiations and any other services relating to this matter.

### Settlement

We will not settle any matter without your approval. We will notify you immediately of the terms of any reasonable settlement offers we receive. You have the absolute right to accept or reject any settlement offer. If you do not respond to three attempted communications (regarding a settlement offer) from this office – including the sending of a certified letter – then we can accept and sign the agreement and release on behalf of the client.

While you retain the right to accept any settlement offer from defendant, you further agree that if you accept a settlement offer against the written advice of the firm, and the settlement offer does not provide for a payment of attorney's fees equaling or exceeding the base lodestar amount, you will be responsible for payment of our base lodestar amount.

### Tax Treatment

**You understand that this firm is not a tax advisor and has not and will not give tax advice as to the tax consequences of any recovery in this matter. The firm recommends that you seek advice of an accountant or other tax professional for this purpose. This is especially so in light of the 2017 Tax Bill. In some situations, attorneys' fees may not be deductible. Please check with your accountant.** _RW_

RWW001274

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

### Terminating the Representation

You have the right to discharge us at any time by putting your decision in writing and mailing it to our offices. In that event, you agree to pay for services rendered up to the date of discharge. If we are your attorneys of record in any proceeding, you will sign and return a substitution-of-attorney form as soon as you receive it from us.

We may withdraw from your representation at any time prior to the filing of any formal legal proceeding before a court or other judicial or quasi-judicial body, with no costs due from you to us. However, should there be a deadline of which we are aware, we will endeavor to assist you in identifying new counsel, or take whatever steps necessary to preserve, or assist you in preserving, those deadlines, prior to withdrawal. This paragraph does not limit our ability to withdraw subsequent to initiating a formal legal proceeding on grounds supported in law or in equity.

We may mutually agree to terminate the attorney-client relationship, in which case such an agreement needs to be made in a writing signed by both you and the firm. Should we mutually agree to terminate the relationship, you will owe us nothing.

### Retention of Closed Files

If you request, when our representation ends, we will promptly return to you all of your papers and property, whether you have paid for them or not.

### No Guarantees

We do not guarantee any particular result. Any opinion we offer is not a guarantee.

### Entire Agreement

This document contains our entire agreement. There are no other promises, statements, or agreements about the services we will perform.

### No Oral Modifications

Any modifications to this agreement must be in writing and sign by both of parties. Oral modifications will not be valid.

### Severability

If any part of this agreement is held to be invalid, the rest of the agreement remains in effect.

### Applicable Law

The laws of the State of New Jersey will govern the interpretation of this agreement.

RWW001275

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

<span style="color:red">CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER</span>

### Child Support Judgment Search

Pursuant to New Jersey law (N.J.S.A. 2A:17-56.23b) law firms are required to perform a Child Support Judgment Search prior to releasing any funds received on behalf of a client via settlement or judgment. If the search reveals that, a child support judgment exist then that judgment must be satisfied out of the "Net Proceeds" before any funds can be released to the client. The statute defines "Net Proceeds" as any amount of money, in excess of $2,000, payable to the prevailing party or beneficiary after attorney fees, witness fees, court fees, fees for health care providers, etc. The statute also provides that the cost of the Judgment Search (approximately $10.00 per person) is chargeable against the net proceeds as a cost of settlement. This firm will comply with the requirements of this statute.

### Effective Date

This agreement will take effect upon the signing by both of us.

AGREED: _Rashad Walston_                     Dated: 21/11/2023
Rashad Walston (Nov 21, 2023 13:21 CST)
RASHAD WALSTON

THE GLAPION LAW FIRM LLC

AGREED: _____          Dated: 21/11/2023
Jeremy M. Glapion
THE GLAPION LAW FIRM

RWW001276

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6
Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7
CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

# Walston (NRS) Rep Agreement

Final Audit Report        2023-11-21



Adobe Acrobat Sign

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

## STANDARD TERMS OF ENGAGEMENT

I, Rashad Walston, ("you, your") retain **THE GLAPION LAW FIRM, LLC**, located at 1704 Maxwell Drive, Wall, NJ, ("we, us, our, firm, attorneys"), to represent your interests in a matter against National Retail Solutions, Inc., and any of their affiliates, subsidiaries, related entities, agents and employees thereof for claims based on violations of the Telephone Consumer Protection Act ("TCPA") and other potential claims related to the nuisance telephone calls (such as invasion of privacy) (collectively, "Claims").

Your current mailing address (no PO box) is:

 - Chicago, IL 60643

Your telephone number (if an unwanted calls case, the number that received or is receiving the unwanted calls):

4088

The wireless carrier for the listed number:

Cricket

Your best contact number if it differs from the above:

### Attorney Client Relationship

Your communications with us are protected by our ethical obligation of confidentiality and by the evidentiary rule of attorney-client privilege. You should be open and forthright with us so that we have all information relevant to your representation. Please note that when we represent a legal entity (corporation, limited liability company, or partnership); our attorney-client relationship is with the entity alone and, unless otherwise stated, is not with its officers, directors, shareholders, partners, members, or affiliates.

### Responsibilities

As your attorneys, we have a duty of independent professional judgment, confidentiality, loyalty, and diligence. As our client, you have a duty of cooperation, honesty, and candor.

RWW001278

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

As your attorneys, we will conduct a full and thorough investigation of your case and proceed, or decline to proceed, accordingly. If, after an investigation, we choose not to pursue this case, we may terminate this agreement. You will owe us nothing.

As your attorneys, we are under no obligation to initiate or defend post-trial motions or post-trial appeals regarding the Claims unless specifically agreed to in writing.

As your attorneys, we retain final decision making authority with respect to matters of strategy, including, but not limited to, whether and how to oppose certain motions; whether and how to raise particular arguments; and whether and how to plead or dismiss particular claims. This list is not exhaustive.

As our client, you have a duty to preserve all documents that are or may become relevant to the litigation. You also have a duty to be reasonably available to answer questions or provide information as necessary.

As our client, you confirm that you have not assigned or transferred, and will not assign or transfer, all or part of your Claims to any person and that you have not signed, and will not sign, any other contingency fee agreement with any other lawyer or law firm with respect to the Claims, while this agreement remains in force.

As our client, you understand and agree that we may ask one or more other law firms to assist us in our representation of you with respect to the Claims, but that we will not do so without obtaining prior written consent from you.

As our client, you confirm that you have provided us with honest information regarding the facts and merits of your case, and have not withheld any information that, in your best judgment, would be relevant to our decision to take this case or our strategy in pursuing this case. _RW_

As our client, you confirm that you took no steps to intentionally manufacture any claim against you, such as by voluntarily subjecting yourself to the behavior about which you now complain (e.g. intentionally soliciting calls you now claim to be unwanted or unsolicited). _RW_

### Electronic Communications

For speed and efficiency, we will commonly use e-mail, cellular telephones and facsimile to communicate with you. However, it is possible that these types of communications could be intercepted or misrouted. By signing this agreement, you consent to these communications.

### Association With Outside Counsel

From time to time, we may choose to associate ourselves with attorneys and law firms other than those included in the definition of "we, us, our, firm, attorneys" above. This may include, but is not limited to, local counsel (an attorney licensed in the court in which we intend

RWW001279

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

to file, and a requirement in many courts for us to litigate if we are not licensed in that state or court) or by entering into a joint prosecution agreement ("JPA") with other firms with similar cases (already on file or otherwise).

Ordinarily, this will not affect your arrangement with us. We will still be your lawyers. We will still be litigating this case. We may just have assistance. Ordinarily, this also does not impact any fees you may owe us, as we agree with any outside counsel what percentage of the overall fee they will receive, depending on the circumstances.

Should we associate with outside counsel, we will notify you in writing via email, unless you indicate another method is preferred. Your response to that email agreeing to our association with outside counsel constitutes a modification of this paragraph to include in the table below the outside counsel with whom we, as if written directly therein.

| Attorney(s) | Reason | Percentage of Total Fee |
|---|---|---|
|  |  |  |

### Representing Adverse Interest

As long as we represent you, we will not provide services for another person whose interests are adverse to yours within the same subject matter of our relationship or in any claim involving you, without your written consent.

### Legal Fees

You will not have to pay for the firm's services.

We may ask the other party to pay attorneys' fees and costs. You agree that we are entitled to any such money awarded or specified in any settlement agreement as costs and attorneys' fees for our work on this case. You agree that this amount shall be negotiated by us. In so negotiating, we will seek an amount equal to the greater of 1) the firm's hourly rate (currently $650/hour) times hours worked (**"base lodestar amount"**), 2) our actual costs plus one-third (1/3) of the full amount of any settlement or judgment, or 3) in case in which your damages are primarily or exclusively statutory in nature, the difference between the total settlement amount and your maximum permitted statutory damages.

Should any award be provided in a "lump sum" payment without separating out attorneys' fees and costs, it is assumed that our fees are the greater of 1) the firm's hourly rate (currently $650/hour) times hours worked (**"base lodestar amount"**), 2) our actual costs plus one-third (1/3) of the full amount of any settlement or judgment, or 3) in a case in which your damages are primarily or exclusively statutory in nature, the difference between the total settlement amount and your maximum permitted statutory damages.

It is expressly understood that in the event that the attorneys are unsuccessful in recovering money in this action, **you will not be responsible to reimburse the attorneys for any out of pocket costs or legal fees**.

RWW001280

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

You understand that the firm may be making a fee application to the Court to recover attorneys' fees and costs associated with this matter. You agree to fully cooperate with the firm with respect to all fee applications.

Should the matter be certified as a class or collective action (including certification for the purposes of settlement only), the Court will be required to approve any settlement. In such a circumstance, the firm shall be entitled only to those fees approved by the Court, in the form prescribed by the Court (e.g. to be paid separately or out of the settlement fund).

If a matter brought as a class action at any point ceases to be a class action (such as through denial of class certification), the firm may elect to withdraw from representing you for your individual claim. You owe the firm nothing in such a circumstance. Should the firm not elect to withdraw, the provisions of this agreement remain in force as applicable to individual claims.

We record and calculate the time spent for all services rendered in increments of on tenth of an hour (1/10). This includes telephone calls (minimum charge of .2 hours), preparing and reviewing letters, documents or other correspondence (minimum charge of .3 hours), travel time to and from meetings and the Court, legal research, preparation of pleadings and other related documents, negotiations and any other services relating to this matter.

## Settlement

We will not settle any matter without your approval. We will notify you immediately of the terms of any reasonable settlement offers we receive. You have the absolute right to accept or reject any settlement offer. If you do not respond to three attempted communications (regarding a settlement offer) from this office – including the sending of a certified letter – then we can accept and sign the agreement and release on behalf of the client.

While you retain the right to accept any settlement offer from defendant, you further agree that if you accept a settlement offer against the written advice of the firm, and the settlement offer does not provide for a payment of attorney's fees equaling or exceeding the base lodestar amount, you will be responsible for payment of our base lodestar amount.

## Tax Treatment

**You understand that this firm is not a tax advisor and has not and will not give tax advice as to the tax consequences of any recovery in this matter. The firm recommends that you seek advice of an accountant or other tax professional for this purpose. This is especially so in light of the 2017 Tax Bill. In some situations, attorneys' fees may not be deductible. Please check with your accountant.** _RW_

## Terminating the Representation

You have the right to discharge us at any time by putting your decision in writing and mailing it to our offices. In that event, you agree to pay for services rendered up to the date of

RWW001281

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

discharge. If we are your attorneys of record in any proceeding, you will sign and return a substitution-of-attorney form as soon as you receive it from us.

We may withdraw from your representation at any time prior to the filing of any formal legal proceeding before a court or other judicial or quasi-judicial body, with no costs due from you to us. However, should there be a deadline of which we are aware, we will endeavor to assist you in identifying new counsel, or take whatever steps necessary to preserve, or assist you in preserving, those deadlines, prior to withdrawal. This paragraph does not limit our ability to withdraw subsequent to initiating a formal legal proceeding on grounds supported in law or in equity.

We may mutually agree to terminate the attorney-client relationship, in which case such an agreement needs to be made in a writing signed by both you and the firm. Should we mutually agree to terminate the relationship, you will owe us nothing.

### Retention of Closed Files

If you request, when our representation ends, we will promptly return to you all of your papers and property, whether you have paid for them or not.

### No Guarantees

We do not guarantee any particular result. Any opinion we offer is not a guarantee.

### Entire Agreement

This document contains our entire agreement. There are no other promises, statements, or agreements about the services we will perform.

### No Oral Modifications

Any modifications to this agreement must be in writing and sign by both of parties. Oral modifications will not be valid.

### Severability

If any part of this agreement is held to be invalid, the rest of the agreement remains in effect.

### Applicable Law

The laws of the State of New Jersey will govern the interpretation of this agreement.

### Child Support Judgment Search

**Pursuant to New Jersey law (N.J.S.A. 2A:17-56.23b) law firms are required to perform a Child Support Judgment Search prior to releasing any funds received on behalf of a client via settlement or judgment. If the search reveals that, a child support judgment**

RWW001282

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

exist then that judgment must be satisfied out of the "Net Proceeds" before any funds can be released to the client. The statute defines "Net Proceeds" as any amount of money, in excess of $2,000, payable to the prevailing party or beneficiary after attorney fees, witness fees, court fees, fees for health care providers, etc. The statute also provides that the cost of the Judgment Search (approximately $10.00 per person) is chargeable against the net proceeds as a cost of settlement. This firm will comply with the requirements of this statute.

### Effective Date

This agreement will take effect upon the signing by both of us.

AGREED: _Rashad Walston_____
         Rashad Walston (Dec 19, 2023 19:18 CST)
         RASHAD WALSTON

Dated: 19/12/2023

THE GLAPION LAW FIRM LLC

AGREED: _____
         Jeremy M. Glapion
         THE GLAPION LAW FIRM

Dated: 19/12/2023

Page 6 of 6

RWW001283

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

**CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER**

Duties of a Class Representative

1. A class representative represents the interests of all members of the class in litigation to recover money damages for the class.

2. A class representative must have claims that are typical of those of the class, and thus involve common issues of law or of fact shared with all other class members.

3. A class representative always considers the interests of the class just as the class representative would consider his or her own interests.

4. A class representative preserves all documents (including e-mail) and physical evidence that currently exists or may come to exist during the pendency of the litigation that are or may become relevant to the litigation and understands that the failure to so preserve (e.g., by sending to counsel for preservation) may result in legal sanctions against the class representative, up to and including monetary penalties or the dismissal of the class representative's claim(s).

5. A class representative refrains from discussing the case in any public forum, including on social media such as Facebook or Twitter, recognizing that there is a high likelihood that any such public comments will end up before the Court and may jeopardize the class representative's ability to represent the class.

6. A class representative participates actively in the lawsuit, such as by testifying at deposition and trial, answering written interrogatories, and by keeping aware of the status and progress of the lawsuit.

7. A class representative recognizes and accepts that any resolution of the lawsuit, such as by settlement or dismissal, is subject to court approval, and must be in the best interests of the class as a whole.

8. A class representative accepts the possibility that, in the event the case is lost, the court may assess certain of defendants' costs of litigation against the class representatives. To the extent permitted by law and the applicable Rules of Professional Responsibility, however, Attorneys will pay these costs.

9. A class representative is not required to be particularly sophisticated or knowledgeable with respect to the subject of the lawsuit. However, the class representative should be interested, on a continuous basis, in the progress of the lawsuit, and must provide class counsel and the court with all relevant facts of which the class representative is aware.

10. A class representative volunteers to represent many other people with similar claims and damages, because the class representative believes that it is important that all benefit from the lawsuit equally because a class lawsuit will save time, money, and effort, and thus will benefit all parties and the court, as well as because the class action is an important tool to assure compliance with the law, applicable standards and duties of care, and to ensure just compensation to all those similarly situated.

I have reviewed and acknowledge my duties as a class representative in these proceedings.

Dated: 19/12/2023

Signed: _Rashad Walston_
Rashad Walston (Dec 19, 2023 19:16 CST)

Printed Name: Rashad Walston

RWW001284

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

# Updated Rep Agreement & Class Duties Form

Final Audit Report      2023-12-20

"Updated Rep Agreement & Class Duties Form" History

Adobe Acrobat Sign

RWW001285

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

## STANDARD TERMS OF ENGAGEMENT

**I, RASHAD WALSTON,** ("you, your") retain **THE GLAPION LAW FIRM, LLC**, located at 1704 Maxwell Drive, Wall, NJ, ("we, us, our, firm, attorneys"), to represent your interests in a matter against National Retail Solutions, Inc., and any of their affiliates, subsidiaries, related entities, agents and employees thereof for claims based on violations of the Telephone Consumer Protection Act ("TCPA") and other potential claims related to the nuisance telephone calls (such as invasion of privacy) (collectively, "Claims").

Your current mailing address (no PO box) is:

█████████████████ – Chicago, IL 60643

Your telephone number (if an unwanted calls case, the number that received or is receiving the unwanted calls):

████████4088

The wireless carrier for the listed number:

Cricket

Your best contact number if it differs from the above:

### Attorney Client Relationship

Your communications with us are protected by our ethical obligation of confidentiality and by the evidentiary rule of attorney-client privilege. You should be open and forthright with us so that we have all information relevant to your representation. Please note that when we represent a legal entity (corporation, limited liability company, or partnership); our attorney-client relationship is with the entity alone and, unless otherwise stated, is not with its officers, directors, shareholders, partners, members, or affiliates.

### Responsibilities

As your attorneys, we have a duty of independent professional judgment, confidentiality, loyalty, and diligence. As our client, you have a duty of cooperation, honesty, and candor.

RWW001264

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

As your attorneys, we will conduct a full and thorough investigation of your case and proceed, or decline to proceed, accordingly. If, after an investigation, we choose not to pursue this case, we may terminate this agreement. You will owe us nothing.

As your attorneys, we are under no obligation to initiate or defend post-trial motions or post-trial appeals regarding the Claims unless specifically agreed to in writing.

As your attorneys, we retain final decision making authority with respect to matters of strategy, including, but not limited to, whether and how to oppose certain motions; whether and how to raise particular arguments; and whether and how to plead or dismiss particular claims. This list is not exhaustive.

As our client, you have a duty to preserve all documents that are or may become relevant to the litigation. You also have a duty to be reasonably available to answer questions or provide information as necessary.

As our client, you confirm that you have not assigned or transferred, and will not assign or transfer, all or part of your Claims to any person and that you have not signed, and will not sign, any other contingency fee agreement with any other lawyer or law firm with respect to the Claims, while this agreement remains in force.

As our client, you understand and agree that we may ask one or more other law firms to assist us in our representation of you with respect to the Claims, but that we will not do so without obtaining prior written consent from you.

As our client, you confirm that you have provided us with honest information regarding the facts and merits of your case, and have not withheld any information that, in your best judgment, would be relevant to our decision to take this case or our strategy in pursuing this case. _RW_

As our client, you confirm that you took no steps to intentionally manufacture any claim against you, such as by voluntarily subjecting yourself to the behavior about which you now complain (e.g. intentionally soliciting calls you now claim to be unwanted or unsolicited). _RW_

### Electronic Communications

For speed and efficiency, we will commonly use e-mail, cellular telephones and facsimile to communicate with you. However, it is possible that these types of communications could be intercepted or misrouted. By signing this agreement, you consent to these communications.

### Association With Outside Counsel

From time to time, we may choose to associate ourselves with attorneys and law firms other than those included in the definition of "we, us, our, firm, attorneys" above. This may include, but is not limited to, local counsel (an attorney licensed in the court in which we intend

RWW001265

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

to file, and a requirement in many courts for us to litigate if we are not licensed in that state or court) or by entering into a joint prosecution agreement ("JPA") with other firms with similar cases (already on file or otherwise).

Ordinarily, this will not affect your arrangement with us. We will still be your lawyers. We will still be litigating this case. We may just have assistance. Ordinarily, this also does not impact any fees you may owe us, as we agree with any outside counsel what percentage of the overall fee they will receive, depending on the circumstances.

Should we associate with outside counsel, we will notify you in writing via email, unless you indicate another method is preferred. Your response to that email agreeing to our association with outside counsel constitutes a modification of this paragraph to include in the table below the outside counsel with whom we, as if written directly therein.

| Attorney(s) | Reason | Percentage of Total Fee |
|---|---|---|
| Jeffrey Grant Brown | Local Counsel | 10% |
| Sam Gebrael | Assistance Obtaining Canadian Documents | 0% |

### Representing Adverse Interest

As long as we represent you, we will not provide services for another person whose interests are adverse to yours within the same subject matter of our relationship or in any claim involving you, without your written consent.

### Legal Fees

You will not have to pay for the firm's services.

We may ask the other party to pay attorneys' fees and costs. You agree that we are entitled to any such money awarded or specified in any settlement agreement as costs and attorneys' fees for our work on this case. You agree that this amount shall be negotiated by us. In so negotiating, we will seek an amount equal to the greater of 1) the firm's hourly rate (currently $650/hour) times hours worked (**"base lodestar amount"**), 2) our actual costs plus one-third (1/3) of the full amount of any settlement or judgment, or 3) in case in which your damages are primarily or exclusively statutory in nature, the difference between the total settlement amount and your maximum permitted statutory damages.

Should any award be provided in a "lump sum" payment without separating out attorneys' fees and costs, it is assumed that our fees are the greater of 1) the firm's hourly rate (currently $650/hour) times hours worked **"base lodestar amount"**), 2) our actual costs plus one-third (1/3) of the full amount of any settlement or judgment, or 3) in a case in which your damages are primarily or exclusively statutory in nature, the difference between the total settlement amount and your maximum permitted statutory damages.

RWW001266

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

It is expressly understood that in the event that the attorneys are unsuccessful in recovering money in this action, **you will not be responsible to reimburse the attorneys for any out of pocket costs or legal fees**.

You understand that the firm may be making a fee application to the Court to recover attorneys' fees and costs associated with this matter. You agree to fully cooperate with the firm with respect to all fee applications.

Should the matter be certified as a class or collective action (including certification for the purposes of settlement only), the Court will be required to approve any settlement. In such a circumstance, the firm shall be entitled only to those fees approved by the Court, in the form prescribed by the Court (e.g. to be paid separately or out of the settlement fund).

If a matter brought as a class action at any point ceases to be a class action (such as through denial of class certification), the firm may elect to withdraw from representing you for your individual claim. You owe the firm nothing in such a circumstance. Should the firm not elect to withdraw, the provisions of this agreement remain in force as applicable to individual claims.

We record and calculate the time spent for all services rendered in increments of on tenth of an hour (1/10). This includes telephone calls (minimum charge of .2 hours), preparing and reviewing letters, documents or other correspondence (minimum charge of .3 hours), travel time to and from meetings and the Court, legal research, preparation of pleadings and other related documents, negotiations and any other services relating to this matter.

## Settlement

We will not settle any matter without your approval. We will notify you immediately of the terms of any reasonable settlement offers we receive. You have the absolute right to accept or reject any settlement offer. If you do not respond to three attempted communications (regarding a settlement offer) from this office – including the sending of a certified letter – then we can accept and sign the agreement and release on behalf of the client.

## Tax Treatment

**You understand that this firm is not a tax advisor and has not and will not give tax advice as to the tax consequences of any recovery in this matter. The firm recommends that you seek advice of an accountant or other tax professional for this purpose. This is especially so in light of the 2017 Tax Bill. In some situations, attorneys' fees may not be deductible. Please check with your accountant.** _RW_

## Terminating the Representation

You have the right to discharge us at any time by putting your decision in writing and mailing it to our offices. In that event, you agree to pay for services rendered up to the date of discharge. If we are your attorneys of record in any proceeding, you will sign and return a substitution-of-attorney form as soon as you receive it from us.

RWW001267

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

We may withdraw from your representation at any time prior to the filing of any formal legal proceeding before a court or other judicial or quasi-judicial body, with no costs due from you to us. However, should there be a deadline of which we are aware, we will endeavor to assist you in identifying new counsel, or take whatever steps necessary to preserve, or assist you in preserving, those deadlines, prior to withdrawal. This paragraph does not limit our ability to withdraw subsequent to initiating a formal legal proceeding on grounds supported in law or in equity.

We may mutually agree to terminate the attorney-client relationship, in which case such an agreement needs to be made in a writing signed by both you and the firm. Should we mutually agree to terminate the relationship, you will owe us nothing.

## Retention of Closed Files

If you request, when our representation ends, we will promptly return to you all of your papers and property, whether you have paid for them or not.

## No Guarantees

We do not guarantee any particular result. Any opinion we offer is not a guarantee.

## Entire Agreement

This document contains our entire agreement. There are no other promises, statements, or agreements about the services we will perform.

## No Oral Modifications

Any modifications to this agreement must be in writing and sign by both of parties. Oral modifications will not be valid.

## Severability

If any part of this agreement is held to be invalid, the rest of the agreement remains in effect.

## Applicable Law

The laws of the State of New Jersey will govern the interpretation of this agreement.

## Child Support Judgment Search

**Pursuant to New Jersey law (N.J.S.A. 2A:17-56.23b) law firms are required to perform a Child Support Judgment Search prior to releasing any funds received on behalf of a client via settlement or judgment. If the search reveals that, a child support judgment exist then that judgment must be satisfied out of the "Net Proceeds" before any funds can be released to the client. The statute defines "Net Proceeds" as any amount of money, in**

RWW001268

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

<div align="center" style="color:red">CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER</div>

**excess of $2,000, payable to the prevailing party or beneficiary after attorney fees, witness fees, court fees, fees for health care providers, etc. The statute also provides that the cost of the Judgment Search (approximately $10.00 per person) is chargeable against the net proceeds as a cost of settlement. This firm will comply with the requirements of this statute.**

### Effective Date

This agreement will take effect upon the signing by both of us.

AGREED: _Rashad Walston_      Dated: 30/07/24
Rashad Walston (Jul 30, 2024 13:13 CDT)
RASHAD WALSTON

THE GLAPION LAW FIRM LLC

AGREED: _____      Dated: 30/07/24
Jeremy M. Glapion
THE GLAPION LAW FIRM

RWW001269

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

# STANDARD TERMS OF ENGAGEMENT

Final Audit Report 2024-07-30



Adobe Acrobat Sign

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

# EXHIBIT G

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

<p style="text-align:center; color:red;">CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER</p>

## AMENDED TERMS OF ENGAGEMENT

**I, RASHAD WALSTON,** ("you, your") retain **THE GLAPION LAW FIRM, LLC**, located at 1704 Maxwell Drive, Wall, NJ, ("we, us, our, firm, attorneys"), to represent your interests in a matter against National Retail Solutions, Inc., and any of their affiliates, subsidiaries, related entities, agents and employees thereof for claims based on violations of the Telephone Consumer Protection Act ("TCPA") and other potential claims related to the nuisance telephone calls (such as invasion of privacy) (collectively, "Claims").

Your current mailing address (no PO box) is:

███████████████████ Chicago, IL 60655

Your telephone number (if an unwanted calls case, the number that received or is receiving the unwanted calls):

██████4088

The wireless carrier for the listed number:

Cricket (at the time of calls); Xfinity (current)

Your best contact number if it differs from the above:

### Attorney Client Relationship

Your communications with us are protected by our ethical obligation of confidentiality and by the evidentiary rule of attorney-client privilege. You should be open and forthright with us so that we have all information relevant to your representation. Please note that when we represent a legal entity (corporation, limited liability company, or partnership); our attorney-client relationship is with the entity alone and, unless otherwise stated, is not with its officers, directors, shareholders, partners, members, or affiliates.

### Responsibilities

As your attorneys, we have a duty of independent professional judgment, confidentiality, loyalty, and diligence. As our client, you have a duty of cooperation, honesty, and candor.

<p style="text-align:right; color:red;">RWW001287</p>

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER

As your attorneys, we will conduct a full and thorough investigation of your case and proceed, or decline to proceed, accordingly. If, after an investigation, we choose not to pursue this case, we may terminate this agreement. You will owe us nothing.

As your attorneys, we are under no obligation to initiate or defend post-trial motions or post-trial appeals regarding the Claims unless specifically agreed to in writing.

As our client, you have a duty to preserve all documents that are or may become relevant to the litigation. You also have a duty to be reasonably available to answer questions or provide information as necessary.

As our client, you confirm that you have not assigned or transferred, and will not assign or transfer, all or part of your Claims to any person and that you have not signed, and will not sign, any other contingency fee agreement with any other lawyer or law firm with respect to the Claims, while this agreement remains in force.

As our client, you understand and agree that we may ask one or more other law firms to assist us in our representation of you with respect to the Claims, but that we will not do so without obtaining prior written consent from you.

As our client, you confirm that you have provided us with honest information regarding the facts and merits of your case, and have not withheld any information that, in your best judgment, would be relevant to our decision to take this case or our strategy in pursuing this case. _RW_ (initial)

As our client, you confirm that you took no steps to intentionally manufacture any claim against you, such as by voluntarily subjecting yourself to the behavior about which you now complain (e.g. intentionally soliciting calls you now claim to be unwanted or unsolicited). _RW_ (initial)

## Electronic Communications

For speed and efficiency, we will commonly use e-mail, cellular telephones and facsimile to communicate with you. However, it is possible that these types of communications could be intercepted or misrouted. By signing this agreement, you consent to these communications.

## Association With Outside Counsel

From time to time, we may choose to associate ourselves with attorneys and law firms other than those included in the definition of "we, us, our, firm, attorneys" above. This may include, but is not limited to, local counsel (an attorney licensed in the court in which we intend to file, and a requirement in many courts for us to litigate if we are not licensed in that state or court) or by entering into a joint prosecution agreement ("JPA") with other firms with similar cases (already on file or otherwise).

Ordinarily, this will not affect your arrangement with us. We will still be your lawyers. We will still be litigating this case. We may just have assistance. Ordinarily, this also does not impact

RWW001288

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER

any fees you may owe us, as we agree with any outside counsel what percentage of the overall fee they will receive, depending on the circumstances.

Should we associate with outside counsel, we will notify you in writing via email, unless you indicate another method is preferred. Your response to that email agreeing to our association with outside counsel constitutes a modification of this paragraph to include in the table below the outside counsel with whom we, as if written directly therein.

| Attorney(s) | Reason | Percentage of Total Fee |
|---|---|---|
| Jeffrey Grant Brown | Local Counsel | 10% |
| Sam Gebreal | Assistance Obtaining Canadian Documents | 0% |

### Representing Adverse Interest

As long as we represent you, we will not provide services for another person whose interests are adverse to yours within the same subject matter of our relationship or in any claim involving you, without your written consent.

### Legal Fees

You will not have to pay for the firm's services.

We may ask the other party to pay attorneys' fees and costs. You agree that we are entitled to any such money awarded or specified in any settlement agreement as costs and attorneys' fees for our work on this case. You agree that this amount shall be negotiated in the first instance by us. In so negotiating, we will seek an amount equal to the greater of 1) the firm's hourly rate (currently $650/hour) times hours worked (**"base lodestar amount"**) or 2) our actual costs plus one-third (1/3) of the full amount of any settlement or judgment. Regardless of what we negotiate, however, you retain final say over the final allocation and may choose a different allocation by putting it in writing to us (including via email). In certain circumstances, our "base lodestar amount" will potentially exceed your own award. In rare circumstances, our "base lodestar amount" will exceed your total settlement. You will *not* be responsible for payment of the difference.

Should any award or settlement be provided in a "lump sum" payment without separating out attorneys' fees and costs, it is assumed that our fees are the greater of 1) the firm's hourly rate (currently $650/hour) times hours worked (**"base lodestar amount"**), or 2) our actual costs plus one-third (1/3) of the full amount of any settlement or judgment. You retain final say over the final allocation, however, and may choose a different allocation than either of the previous assumptions by putting it in writing to us (including via email). In certain circumstances, our "base lodestar amount" will potentially exceed your own award. In rare circumstances, our "base lodestar amount" will exceed your total settlement. You will *not* be responsible for payment of the difference.

RWW001289

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

**CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER**

It is expressly understood that in the event that the attorneys are unsuccessful in recovering money in this action, **you will not be responsible to reimburse the attorneys for any out of pocket costs or legal fees**.

You understand that the firm may be making a fee application to the Court to recover attorneys' fees and costs associated with this matter. You agree to fully cooperate with the firm with respect to all fee applications.

Should the matter be certified as a class or collective action (including certification for the purposes of settlement only), the Court will be required to approve any settlement. In such a circumstance, the firm shall be entitled to those fees approved by the Court, in the form prescribed by the Court (e.g. to be paid separately or out of the settlement fund).

If a matter brought as a class action at any point ceases to be a class action (such as through denial of class certification), the firm may elect to withdraw from representing you for your individual claim. You owe the firm nothing in such a circumstance. Should the firm not elect to withdraw, the provisions of this agreement remain in force as applicable to individual claims.

We record and calculate the time spent for all services rendered in increments of on tenth of an hour (1/10). This includes telephone calls (minimum charge of .2 hours), preparing and reviewing letters, documents or other correspondence (minimum charge of .3 hours), travel time to and from meetings and the Court, legal research, preparation of pleadings and other related documents, negotiations and any other services relating to this matter.

### Settlement

We will not settle any matter (individual or class) without your approval. We will notify you of any settlement offer about which we are obligated to notify you under any applicable law(s) or rules (such as applicable Court rules, orders, Local Rules, Federal Rules, and/or Rules of Professional Conduct) or about which you ask us to notify you. You have the absolute right to accept or reject any settlement offer. If you do not respond to three attempted communications (regarding a settlement offer) from this office – including the sending of a certified letter – then we can accept and sign the agreement and release on your behalf.

### Tax Treatment

**You understand that this firm is not a tax advisor and has not and will not give tax advice as to the tax consequences of any recovery in this matter. The firm recommends that you seek advice of an accountant or other tax professional for this purpose. This is especially so in light of the 2017 Tax Bill. In some situations, attorneys' fees may not be deductible. Please check with your accountant.** _RW_ **(initial)**

### Terminating the Representation

You have the right to discharge us at any time by putting your decision in writing and mailing it to our offices. In that event, you agree to pay for services rendered up to the date of discharge. If we are your attorneys of record in any proceeding, you will sign and return a substitution-of-attorney form as soon as you receive it from us.

RWW001290

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

## CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER

We may withdraw from your representation at any time prior to the filing of any formal legal proceeding before a court or other judicial or quasi-judicial body, with no costs due from you to us. However, should there be a deadline of which we are aware, we will endeavor to assist you in identifying new counsel, or take whatever steps necessary to preserve, or assist you in preserving, those deadlines, prior to withdrawal. This paragraph does not limit our ability to withdraw subsequent to initiating a formal legal proceeding on grounds supported in law or in equity.

We may mutually agree to terminate the attorney-client relationship, in which case such an agreement needs to be made in a writing signed by both you and the firm. Should we mutually agree to terminate the relationship, you will owe us nothing.

### Retention of Closed Files

If you request, when our representation ends, we will promptly return to you all of your papers and property, whether you have paid for them or not.

### No Guarantees

We do not guarantee any particular result. Any opinion we offer is not a guarantee.

### Entire Agreement

This document contains our entire agreement. There are no other promises, statements, or agreements about the services we will perform.

### No Oral Modifications

Any modifications to this agreement must be in writing and sign by both of parties. Oral modifications will not be valid.

### Severability

If any part of this agreement is held to be invalid, the rest of the agreement remains in effect.

If any part or provision of this agreement is found to be preclusive of class certification, for any reason, that part or provision is null and void upon said finding, or upon certification of the class, whichever comes first.

### Applicable Law

The laws of the State of New Jersey will govern the interpretation of this agreement. Nothing in this provision is intended to determine which state's or forum's Rules of Professional Conduct apply to any litigation filed pursuant to this Agreement.

### Child Support Judgment Search

RWW001291

Docusign Envelope ID: 4A107FF1-A1E4-41CF-A5A9-6B68CA7D2FC6

Docusign Envelope ID: 7D71C0E8-A01E-4ECC-A86C-356E2C3C2EB7

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER

Pursuant to New Jersey law (N.J.S.A. 2A:17-56.23b) law firms are required to perform a Child Support Judgment Search prior to releasing any funds received on behalf of a client via settlement or judgment. If the search reveals that, a child support judgment exist then that judgment must be satisfied out of the "Net Proceeds" before any funds can be released to the client. The statute defines "Net Proceeds" as any amount of money, in excess of $2,000, payable to the prevailing party or beneficiary after attorney fees, witness fees, court fees, fees for health care providers, etc. The statute also provides that the cost of the Judgment Search (approximately $10.00 per person) is chargeable against the net proceeds as a cost of settlement. This firm will comply with the requirements of this statute.

### Effective Date

This agreement will take effect upon the signing by both of us.

AGREED: _Rashad Walston_
Rashad Walston (Sep 20, 2024 22:04 CDT)
RASHAD WALSTON

Dated: 20/09/24

THE GLAPION LAW FIRM LLC

AGREED: _Jeremy Glapion_
Jeremy Glapion (Sep 25, 2024 00:00 EDT)
Jeremy M. Glapion
THE GLAPION LAW FIRM

Dated: 25/09/24

RWW001292