UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **RASHAD WALSTON,** on behalf of himself and all others similarly situated,<br><br>                    **Plaintiff,**<br>      v.<br><br>**NATIONAL RETAIL SOLUTIONS, INC. D/B/A NRS PAY,**<br><br>                    **Defendant.** | Civil Case No.: 24-cv-83<br><br>District Judge: Hon. Sunil R. Harjani<br><br>Magistrate Judge: Jeffrey T. Gilbert |

**PLAINTIFF'S REPLY IN SUPPORT OF MOTION TO DEFER BRIEFING**

I. **Defendant's description of the August 16 meet-and-confer is made up.**

Defendant claims that at the Parties' August 16 meet-and-confer regarding the production of Plaintiff's unredacted engagement agreements, Plaintiff argued that Defendant would waive adequacy challenges if it did not raise those challenges promptly. [Dkt. 88, pp. 2, 8-9; Dkt. 88-1, ¶ 4.] Therefore, Defendant's argument goes, it was Plaintiff's fault that Defendant hurriedly filed its Motion, justifying its failure to disclose its expert report in advance. Thus, Plaintiff's request for expert discovery is gamesmanship.

This is fiction. It unequivocally did not happen. It is Defendant's invented post-hoc rationalization meant to justify why it ignored the joint schedule and concealed its expert report in support of its 23-page, out-of-turn Motion.[1] Plaintiff *never* suggested that Defendant would waive an adequacy argument if not raised before Plaintiff's Motion for Class Certification. This does not even make sense. In what world (or circuit) does a defendant waive a Rule 23(a)(4) argument by not making it before the plaintiff moves to certify a class? It defies logic to believe that Defendant's incredibly experienced counsel would give such an argument more than a passing thought, let alone alter their entire litigation strategy around it. This fabrication also does not comport with what Defendant's counsel told Judge Gilbert less than a month ago. In response to Judge Gilbert questioning the ripeness of Defendant's Motion to Deny, Defendant's counsel stated:

> Mr. Watstein: [E]very time I have raised a Rule 23 issue affirmatively, I always get the same reaction as I just got from your Honor. And the response that I always [give] is, we are always practical about how we tee up Rule 23 issues… This is a discrete issue that…will never be any riper than it is right now. And

---

[1] Defendant has done this repeatedly, including in the Motion to Deny upon which it rests so much of its case. The Court caught glimpses of this in Defendant's Motion to Enforce Settlement, in which Defendant fabricated the post-hoc rationalization that its $9,800 settlement offer was an attempt to accept Plaintiff's alleged settlement demand of "at least $5,000". The Court saw through it then, referring to the argument as nonsensical. [Dkt. 31.] Unfortunately, Defendant has approached this whole litigation with this same mentality.

> our client is incurring 75, 100 thousand dollars of expense every month. And so I would not be doing my job if I didn't raise that issue, which, again, it is not going to become more developed as discovery goes forward…. I would not be doing my job if I wasn't going to raise that now.

Declaration of Jeremy M. Glapion, Ex. A, 6:6-7:9. The omission of Plaintiff's supposed "threat" is telling.

To be clear, Plaintiff did ask for Defendant to identify additional terms with which it took issue, but this was *in an effort to work with Defendant*. Plaintiff proposed that Defendant identify other terms it believed to be problematic so that Plaintiff could decide whether those terms should be amended out in one comprehensive amendment rather than piecemeal. Plaintiff reiterated this same offer on a call a month later. *Id.*, Ex. B. After all, amendment is the unanimous remedy courts provide for dealing with ostensible adequacy issues arising from representation agreements. Defendant does not dispute this in its Motion to Deny.

Defendant also claims that Plaintiff knew since September 18 that its Motion would include the opinions of its experts. This, too, is false. Plaintiff knew since September 17 that Defendant was *consulting* with an expert, Dkt. 60, p. 2, but there is a difference between consulting experts and testifying experts. Consulting experts generally do not need to be disclosed. Fed. R. Civ. P. 26(a)(2). Plaintiff had no idea who Defendant's expert was or that Defendant's expert would be submitting a report (rather than just consulting) until October 16. In fact, given no sign of a report until October 16, Plaintiff's assumption prior to that point was that the expert *was* just consulting.

Finally, Defendant takes issue that "Plaintiff waited until November 6 before even proposing dates to depose NRS's experts[.]" [Dkt. 88, p. 4.] But Defendant disclosed its report on October 16, Plaintiff moved to defer briefing on October 24, and the Court vacated briefing on Plaintiff's Motion on October 28. Plaintiff's November 6 proposal came just over a week

2

later. This is hardly an offensive amount of time. More problematically, once again Defendant uses Plaintiff's good faith attempt at compromise to seek narrative advantage. Plaintiff's proposal was in response to Defendant's request to adjourn the hearing on this Motion until possibly early December. [Dkt. 88-1, p. 17.]

> I have concerns about how receptive the Court would be to a request to reschedule. It raises the question of whether we would be better off coming up with a joint proposal re the expert, if possible.

[Dkt. 88-1, pp. 16-17.] In a subsequent reply addressing Defendant's "disappointment" with Plaintiff's reluctance, Plaintiff's counsel wrote:

> I'm not reluctant to agree [to adjourn] for any reason other than it seems logical to consider the value of alternative approaches if we're pushing the Motion back [in] November or [to] December. I'm already in the process of identifying my own expert, and I'd be happy to notice a deposition of your expert for some time in mid to late December or early January. I'm just unwilling to agree to a hard 45 days or a stay.

[Dkt. 88-1, p. 15.]

Defendant's misuse of statements made in good faith efforts to compromise or confer is a reoccurring theme. Defendant has done this with multiple Rule 37 conferences. It has done this with multiple emails. It has used *every* settlement discussion in this case to seek substantive advantage. If Defendant wants to know a large part of why Plaintiff has no interest in even discussing individual settlement—a refusal which serves as the entire basis of its Motion to Deny—some self-reflection might be in order. Defendant's continued efforts to seek strategic advantage in every conversation and interaction have not only cost both Parties a significant amount of time and money, but have completely eroded trust.

**II.** **The time crunch is one entirely of Defendant's making.**

Defendant first requested Plaintiff's engagement agreements in Requests for Production due April 19. Glapion Decl., ¶¶ 11-12. On a previously scheduled Rule 37

3

conference conducted that same day—but before Plaintiff produced his written responses—Plaintiff informed Defendant that he would not be producing the representation agreements. *Id.* at ¶ 13. Defendant indicated it would immediately move to compel. *Id.* at ¶ 14. Plaintiff offered to reconsider his position if Defendant would provide case law supporting their production. *Id.* at ¶¶ 15-16. This was memorialized in an email that same day. *Id.*, Ex. C. At the conclusion of Plaintiff's April 26 deposition, but off the record, Plaintiff's counsel reminded Defendant of this outstanding issue, and again asked for the case law. *Id.* at ¶ 20. Defendant said nothing further until July 23, when it provided the requested case law. *Id.* at ¶ 21. Had Defendant promptly provided the requested case law by the end of April, rather than inexplicably waiting three months, and the remaining timeline stayed the same, Defendant's Motion to Deny would have been filed in July.

In addition, Defendant also inexplicably delayed filing its Motion to Deny for an additional two weeks beyond the October 4 date it had provided. [Dkt. 58.] Though Defendant claims that this "filing was delayed by Plaintiff's unsuccessful attempt to seal NRS's adequacy motion", Dkt. 88, p.2, it has never offered an explanation as to how this is true. To the contrary, Judge Gilbert expressly permitted Defendant to file its Motion "under seal" pending a ruling on Plaintiff's Motion. [Dkt. 65.] It unilaterally chose not to do so.

In short, we are here in mid-November, dealing with this schedule crunch, entirely due to Defendant's own delays.

**III.** **Defendant's proposal that Plaintiff fight its Motion to Deny with limited or no expert discovery is absurd.**

Imagine for a moment that on October 18, Plaintiff filed his Motion for Class Certification. Imagine that Plaintiff waited until just two days before to disclose his expert reports. Imagine that, when Defendant cried foul and asked for the expert discovery to which

4

Plaintiff agreed, Plaintiff responded that technically, Defendant could still conduct expert discovery on that schedule—it would just be too late to oppose Plaintiff's Motion. Gotcha! Imagine the outrage with which Defendant would sprint to the Court. And rightfully so, because the proposition is absurd.

But this is *exactly* what Defendant argues here. [Dkt. 88, p. 3.] Defendant turned a single Rule 23 element into a trumped up and fantastical 23-page Motion to Deny Certification, all the while intentionally withholding its expert report until the last possible moment. Now, Defendant attempts to use its own mistakes and delays to force Plaintiff to choose between an abridged expert discovery period, surrendering the chance to contest Defendant's expert at all, or a stay. Plaintiff declines all three options.

Defendant chose to upend the usual order of class certification. Defendant chose to submit an expert report on issues it claims are simple and obvious. Defendant chose to hide the expert's identity *and* report until two days before it filed its Motion.[2] Defendant chose not to seek to modify the schedule ahead of time. Defendant chose not to work with Plaintiff ahead of time to handle expert discovery. Defendant's poor choices are not Plaintiff's burden to bear.

There are reasons that Motions to Deny Class Certification, the functional equivalent of a Motion to Strike Class Allegations, are disfavored in the Seventh Circuit. *Bentley v. United of Omaha*, 2018 WL 3357455, *1 (C.D. Cal. Jan. 4, 2018) ("A motion to deny class certification and a motion to strike class allegations are functionally equivalent.")(citing, e.g., *Microsoft Corp. v. Baker*, 137 S. Ct. 1702, 1711 n.7 (2017)); s*ee, e.g. Sharrit, et al. v. Henry*, 2024

---

[2] Notably, Defendant was prepared to file its Motion by October 4, and only claims it delayed until October 18 due to Plaintiff's Motion to Seal. [Dkt. 88, p. 2.] Its expert report, then, must have been complete or near complete on or before October 4—yet it still waited until October 16 to disclose it.

WL 4524501, *10 n.9 (N.D. Ill. Oct. 18, 2024) (Ellis, J.); *Thomas v. Sheahan*, 370 F. Supp. 2d 704, 714 (N.D. Ill. 2005). The upheaval to the schedule is just one of those.

Defendant also confusingly argues that Plaintiff does not need expert discovery because

> NRS's motion primarily involves questions of law (whether the engagement letter was unethical and makes Plaintiff and his counsel inadequate), and the limited facts on which NRS relies (the terms in Plaintiff's engagement agreements, his discovery responses, and his deposition testimony) are either (1) not disputed or (2) within Plaintiff's knowledge.

[Dkt. 88, p. 7.] First, this is not true. Defendant's Motion to Deny relies on numerous "facts" that Defendant invented and/or that Plaintiff disputes.[3]

But if it were true, why is Defendant's expert needed at all? Courts consistently exclude experts who testify on legal issues. *See, e.g. Panter v. Marshall Field & Co.*, 646 F.2d 271, 294 n.6 (7th Cir. 1981). And if the facts are simple and undisputed, the value of an expert is diminished. *See, e.g. Salem v. United States Lines Co.*, 370 U.S. 31, 35 (1962) ("[E]xpert testimony … is unnecessary … if all the primary facts can be accurately and intelligibly described to the [fact finder], and if [the fact finder]… [is] as capable of comprehending … as [the expert.]"). However, when Plaintiff proposed that Defendant withdraw its expert and the Parties proceed with the normal briefing schedule, Defendant declined. Glapion Decl., ¶¶ 21-22. If Defendant's expert is vital to its motion, expert discovery is *more*, not *less*, important. Defendant's "pay no attention to the expert behind the curtain" approach seeks to have it

---

[3]As just one of several examples, Defendant and its expert argue that, as of June 11, Plaintiff's counsel's fees would have exceeded Defendant's June settlement offer of $35,000. [E.g. Dkt. 76, p. 2; 76-3, p. 11.] This statement of fact, upon which an entire argument in Defendant's Motion to Deny depends, is not only demonstrably false, but neither Defendant nor its expert had any basis for making it. Such unsupported assumptions call into question the reliability of Defendant's expert and warrant further investigation.

6

both ways: the Motion is too simple for *Plaintiff* to need expert discovery, but complicated enough for Defendant to need its expert report. This approach should be rejected.

IV.       **Discovery is nearing its end, making a stay inappropriate.**

Defendant's alternative request to stay discovery should also be denied. First, had Plaintiff briefed the matter in the ordinary course, there would be no stay of the case pending the Court's decision on Defendant's Motion. There is no reason that a stay should be granted because Plaintiff refuses to oppose Defendant's Motion with one hand tied behind his back.

Second, fact discovery is likely nearing its end. On October 16, Defendant represented to the Court that it anticipated completing document review and production within a month. Glapion Decl., Ex. A, 63:3-9. In a subsequent status report, it indicated it would complete document review by November 29. [Dkt. 84, p. 4.] Currently outstanding Interrogatories and Requests for Admission are due on November 14. VoiceLogic, Defendant's third-party call vendor, has compiled all relevant documents and appears able produce them imminently. Glapion Decl., ¶ 23. While supplemental additional discovery requests will likely prove necessary—Plaintiff has been waiting for some of these responses since May—the bulk of what is left is depositions and expert discovery. There is little reason to pause. It already took a herculean effort to get to this point.

On the deposition front, five remain (excluding experts): a third-party witness (scheduled for November 14); two of Defendant's employees (which are not yet scheduled but which Plaintiff has sought for months)[4]; a 30(b)(6) deposition; and the deposition of third

---

[4] Defendant claims both have medical issues limiting their ability to sit for a deposition. One deponent, Defendant's CEO Elie Katz, apparently cannot sit for a deposition at all, and it is unclear if and how that deposition will proceed. Defendant promised to provide a list of accommodations for the other deponent, Rui Da Costa, by November 4, 2024, Dkt. 84-4, but it has not done so. Plaintiff has sought Mr. Katz and Mr. Da Costa's deposition since *at least* August 21. Glapion Decl., ¶ 27.

7

party VoiceLogic. While costs associated with these depositions are not insignificant, the bulk of the expenses falls on Plaintiff as the noticing party, and three of the five will likely be taken remotely (minimizing Defendant's travel costs).

The additional expense of continued discovery is minimal in comparison to the expenses already incurred and not worth the disruption to a discovery process with several wheels in motion, but that is nearing its end.

**V.      Denial of Defendant's Motion (without prejudice) might be the best approach.**

Plaintiff and his counsel are (mentally) ready to be done with Defendant's Motion to Deny. It has already received far more attention and adjacent motion practice than its merits deserve. Nevertheless, the *best* approach here is to deny Defendant's Motion without prejudice and take it in the ordinary course of class certification briefing. Defendant's arguments in its Motion are neither unique nor special. Defendant has previously made (and lost) similar arguments elsewhere in opposition to class certification and spent five pages on the issue. *See Sliwa v. Bright House Networks, LLC*, Case No. 16-cv-235, 333 F.R.D. 255, 276, 278 (M.D. Fla. 2019) (rejecting defendant's adequacy arguments that "counsel are unethically controlling this litigation to protect their own financial interests to the detriment of Plaintiff and the class, rendering both counsel and Plaintiff inadequate and precluding certification."); *id.* at dkt. 161 (argument made from pages 30 to 34). Yet here, when all is said and done, the Court will have to contend with more than 60 pages of briefing on this single issue, in addition to separate expert discovery. More pages do not fix the inherent and fatal flaws in Defendant's arguments, so spending this much time and energy to address it in this fashion is inefficient.

This is especially so since any reasonable "separate" expert discovery schedule would run this case into the pre-existing expert discovery schedule. The current expert discovery

8

schedule covers 73 days. Here are how the deadlines look under various considerations (avoiding weekend deadlines), including an expedited two-week time for Plaintiff to file his opposition post expert discovery:

|  | Current | 73 days | Def.'s 45 days | 45 from Hearing |
|---|---|---|---|---|
| Disclosure | Jan. 17, 2025 | Oct. 16 | Oct. 16 | Oct. 16 |
| Rebuttal | March 15 | Dec. 26 |  |  |
| Depositions | March 31 | Jan. 10, 2025 | Nov. 30, 2024 | Dec. 27, 2024 |
| Opposition | n/a | Jan. 24, 2025 | Dec. 13, 2024 | Jan. 10, 2025 |

Three things stand out: first, the only scenario that does not conclude this process within a week of the start of the already-set expert discovery schedule is the one that cuts Plaintiff's expert discovery period by nearly 40 percent. Second, all three options assume that Defendant is waiving the right to rebut or depose any expert Plaintiff retains. If not, this would require additional time on the schedule.[5] Third, none of the three options consider the numerous upcoming holidays (whereas the currently set schedule intentionally avoids them). This takes on additional significance when the impact extends beyond the Parties themselves.

### VI. Timeliness of Plaintiff's Motion for Class Certification

Defendant makes a stray point about certain courts elsewhere requiring the filing of class certification within 90 days of filing suit. [Dkt. 88, p. 5.] If Defendant is seeking to tee up a timeliness argument directed at Plaintiff's own forthcoming Motion for Class Certification, it should be disregarded. Notwithstanding that Defendant agreed to an April 29, 2025 deadline for Class Certification Motions (one month after the close of expert

---

[5] For example, under Defendant's 45-day proposal, Plaintiff would somehow have to finalize retention of an expert and the expert report and produce it to Defendant, all with enough time for Defendant to depose the expert on or before November 30.

discovery), Dkt. 12, Defendant has not yet provided Plaintiff with the discovery necessary for class certification.

## CONCLUSION

Plaintiff wants Defendant's Motion to Deny done as much as Defendant. Defendant has deftly used its mere existence for a significant amount of mileage, and it has already received more attention than its actual merits deserve. The Motion is almost entirely speculative, intentionally deceitful, and is in no way a basis to find Plaintiff or his counsel inadequate. It will be opposed accordingly. But Defendant has put this Motion on a pedestal, claiming it could "effectively eliminate this litigation." [Dkt. 88, p. 3.] If so, there is no reason to handcuff Plaintiff's ability to fight back. Plaintiff should be permitted to rebut and depose Defendant's submitted expert on the schedule allotted (or at least with the same amount of time). In the alternative, Defendant's Motion should be denied without prejudice and taken in the ordinary course of class certification.

Dated: November 11, 2024

s/ Jeremy M. Glapion

Jeremy M. Glapion
The Glapion Law Firm, LLC
1704 Maxwell Drive
Wall, New Jersey 07719
Tel: 732-455-9737
Fax: 732-965-8006
jmg@glapionlaw.com

Counsel for Plaintiff and the Putative Class