UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **RASHAD WALSTON,** on behalf of himself and all others similarly situated,<br><br>**Plaintiff,**<br>v.<br><br>**NATIONAL RETAIL SOLUTIONS, INC. D/B/A NRS PAY,**<br><br>**Defendant.** | Civil Case No.: 24-cv-83<br><br>District Judge: Hon. Sunil R. Harjani<br><br>Magistrate Judge: Jeffrey T. Gilbert<br><br>**Declaration of Jeremy M. Glapion in Support of Plaintiff's Motion to Defer Briefing** |

I, Jeremy M. Glapion, declare as follows:

1. I am attorney for Plaintiff and the putative class in this matter.

2. I make this declaration based on my own personal knowledge in support of Plaintiff's Motion to Adjourn Briefing.

3. Attached hereto as Exhibit A are excerpts from the October 16 hearing before Judge Gilbert.

4. On August 16, the Parties met and conferred to discuss, among other things, production of Plaintiff's unredacted representation agreements.

5. On that call, I offered to produce the unredacted agreements in exchange for Defendant's agreement to identify any other terms it believed to be problematic, so Plaintiff and I could discuss if and whether to amend the agreement further in one comprehensive amendment (rather than piecemeal).

6. On August 20, Defendant declined this offer.

7. On August 21, I produced the unredacted engagement agreements anyway, alongside an interrogatory asking Defendant to identify other problematic terms.

8. A month later, I reiterated this offer via telephone call with Attorney Fitzgerald, and memorialized it in an email attached hereto as **Exhibit B.**

9. At no point did I make a "waiver" threat about Defendant's "adequacy" argument.

10. In addition, the only reason the representation agreement issue carried into August is because Defendant delayed providing the case law that I had previously requested justifying its previous production.

11. On March 13, Defendant served discovery requests, one of which asked for a copy of Plaintiff's representation agreements with me.

12. On April 19—the same day Plaintiff's responses were due—the Parties were scheduled for a Rule 37 call on Defendant's production.

13. On that call, I informed Defendant's counsel that Plaintiff's forthcoming responses and production would withhold Plaintiff's representation agreements.

14. Defendant's counsel indicated that this issue is something it would move to compel immediately.

15. I further indicated that the agreements were not being withheld due to a desire to hide anything, but the position was instead the default position in line with the opinions of numerous courts in the District.

16. I further indicated that if there were cases to the contrary, Plaintiff and I would be happy to change our minds and produce the agreements.

17. Defendant expressed a willingness to provide this case law.

1

18. I memorialized this offer in an email following this April 19 call. **Ex. C**.

19. On April 26, Defendant took Plaintiff's deposition in Chicago.

20. At the conclusion of that deposition, but after the Parties had gone off the record, I brought up the representation agreement issue again and noted that I was still waiting for Defendant to provide authority on its production.

21. Defendant did not provide the requested case law—or even mention the representation agreement issue again—until July 23.

22. On October 25, I met with Attorney Fitzgerald and proposed Defendant withdrawing its expert and proceeding with ordinary briefing.

23. Attorney Fitzgerald declined.

24. Regarding discovery, VoiceLogic, Defendant's third party vendor, appears ready to produce documents imminently, with only minor logistical challenges.

25. I am also in the process of taking and scheduling several additional depositions.

26. The deposition of third-party witness Michael Hellerman is scheduled for November 14 and will be taken remotely.

27. I also intend to take the depositions of Defendant's CEO Elie Katz and employee Rui Da Costa, and have sought those depositions since at least August 21, but they have not yet been scheduled.

28. I also intend to take (in person) Defendant's deposition, which has been noticed but not yet scheduled.

29. Finally, I intend to take the deposition of VoiceLogic.

30. I declare under penalty of perjury that, to the best of my knowledge and recollection, the foregoing is true and correct.

Executed on this 11th day of November 2024, at Manasquan, New Jersey.

/s/ *Jeremy M. Glapion*
Jeremy M. Glapion

# EXHIBIT A

```
 1   TRANSCRIBED FROM DIGITAL RECORDING

 2                IN THE UNITED STATES DISTRICT COURT
                     NORTHERN DISTRICT OF ILLINOIS
 3                         EASTERN DIVISION

 4   RASHAD WALSTON on behalf of himself and )
     all others similarly situated,          ) Case No. 24 C 83
 5                                           )
                 Plaintiff,                  )
 6                                           )
             vs.                             )
 7                                           )
     NATIONAL RETAIL SOLUTIONS, INC., doing  ) Chicago, Illinois
 8   business as NRS Pay,                    ) October 16, 2024
                                             ) 2:04 P.M.
 9               Defendant.                  )

10          TRANSCRIPT OF PROCEEDINGS - In-Person Motion Hearing
         BEFORE THE HONORABLE JEFFREY T. GILBERT, Magistrate Judge
11
     APPEARANCES:
12
     For the Plaintiff:        GLAPION LAW FIRM
13                             1704 Maxwell Drive
                               Wall, New Jersey  07719
14                             BY:  MR. JEREMY GLAPION

15                             JEFFREY GRANT BROWN, P.C.
                               65 West Jackson Boulevard
16                             Suite 107
                               Chicago, Illinois  60604
17                             BY:  MR. JEFFREY GRANT BROWN

18   For the Defendant:        WATSTEIN TEREPKA LLP
                               1055 Howell Mill Road
19                             8th Floor
                               Atlanta, Georgia  30318
20                             BY:  MR. RYAN D. WATSTEIN

21

22              PAMELA S. WARREN, CSR, RPR
              Official Court Reporter - Retired
23              23869 N. High Ridge Drive
              Lake Zurich, Illinois  60047
24                   312.823.0001

25
     NOTE:  Please notify of correct speaker identification.
```

1   certification, which I don't think has been filed yet.
2           Right, Mr. Brown?
3           MR. BROWN:  Correct.
4           THE COURT:  You need to have the mic near you.
5           MR. BROWN:  Sorry, Judge.  Correct.
6           THE COURT:  So, you know, I don't know that Judge
7   Harjani is going to take this in the normal -- in the normal
8   course now, you know, and have it briefed with them having to
9   respond to you and say, no, class should be certified.  And
10  then they only get one brief on class certification.
11          MR. WATSTEIN:  Yes, your Honor.  If I may, every time
12  that I have raised an affirmative issue or --
13  affirmative -- every time I have raised a Rule 23 issue
14  affirmatively, I always get the same reaction as I just got
15  from your Honor.  And the response that I always get is, we are
16  always practical about how we tee up Rule 23 issues.  We would
17  never file a motion, for example, asking a Court to rule on a
18  predominance issue before sufficient discovery had played out
19  for the Court to rule on that issue.
20          So for something like that, it is usually correct that
21  the plaintiff files a motion for class certification.  The
22  defendant responds.  The plaintiff replies.  Then the Court
23  rules on it.
24          This is a discrete issue that is already -- it will
25  never be any riper than it is right now.  And our client is

1  incurring 75, 100 thousand dollars of expense every month.  And
2  so I would not be doing my job if I didn't raise that issue,
3  which, again, it is not going to become more developed as
4  discovery goes forward.  We -- all the discovery on that issue
5  has already occurred.
6       I would be, you know -- I would not be doing my job if
7  I wasn't going to raise that now.  So it is not -- it is not
8  your typical, you know, we expect them to raise all their
9  class -- we could have called this motion something else.
10      THE COURT:  Yeah.  Yeah, yeah.  I hear you.  Look,
11 let's be clear, I'm ruling only on the motion for protective
12 order, which was filed in front of Judge Harjani.  He viewed it
13 as a discovery matter.  He kicked it to me.  I have ruled on
14 it.
15      Whether or not he's going to allow you to file this
16 motion to deny class certification or not is very much in front
17 of him.  And I think he realizes that would be in front of him
18 because it is his motion.  Ultimately it is his decision as to
19 whether class should be certified or not.
20      So, you know, whatever you want to do with this is
21 fine, and he will -- and he will --
22      MR. WATSTEIN:  Sure.
23      THE COURT:  -- either accept briefs now on it or not.
24 But that's going to be in front of him.
25      MR. WATSTEIN:  Yeah.

1     MR. GLAPION: I pride myself on inbox zero, and this
2  case has made it challenging to do, I'll say that.
3     MR. WATSTEIN: Yeah. I have a ton of emails, but I
4  typically delete a lot of them and file a lot of them or assume
5  somebody else on the case is saving them.
6     But, I mean, we have spent hundreds of hours on
7  document review. Like I said, we're done with, as I understand
8  it, done with two of the three custodians. We're working on
9  the third.
10    Obviously we didn't meet the target, but that was
11 largely because of the million -- the million emails in
12 Mr. Katz's email inbox.
13    You know, we -- your Honor, we're now responding to
14 plaintiff's sixth set of RFPs, fifth set of interrogatories,
15 and fifth set of RFAs. We also had a lot of briefing that we
16 were just doing.
17    So, you know, we have been -- we have -- if you saw
18 the amount of hours that are being put into this case on a
19 monthly basis, they are substantial. One of the most
20 substantial of any cases that we're working on right now.
21    So it is not that we're not putting significant
22 resources into doing this. It is just that, you know, when we
23 have respond to a ton of additional written discovery, when we
24 have to respond to a ton of additional briefing about motions
25 to steal and stuff like that, it takes man hours away from

1  finishing the document review.  It just does.  We have a
2  limited number of people.
3          But at this point, just right now there is
4  nothing -- there is no other motions or anything like that in
5  this case that we're working on.  And, you know, assuming it
6  stays that way for the next couple of weeks, I would imagine
7  that the document -- I would imagine the document review and
8  production will be done in, you know, three weeks or so.  Three
9  weeks to a month.  But it shouldn't take longer than that.
10         THE COURT:  On deps, Mr. Glapion, how many do you
11 think you were going to want to take?
12         MR. GLAPION:  So per your Honor's order, I had sent
13 the draft 30(b)(6) notice over to defendant's counsel.
14 I -- similar to looking for supplementation, I -- since then I
15 have gone through -- at least looked at it once a month.  I
16 think it has only been one month since that, or maybe a little
17 more, to see if -- you know, amend the topics, change the
18 topics, update the topics.  I have amended it once.
19         I know defendant indicated that it would get responses
20 to the topic list to me shortly.  I don't remember the exact
21 timing, but -- so that is something we haven't scheduled yet.
22         I did, I think, tentatively ask for November, December
23 dates for the 30(b)(6).  But there are a lot of topics
24 admittedly.  And I'm going to go through based on defendant's
25 responses to see if any can be consolidated, pared down.  But

# EXHIBIT B



Jeremy Glapion &lt;jmg@glapionlaw.com&gt;

## Re: In re Amerilist Subpoena

**Jeremy Glapion** &lt;jmg@glapionlaw.com&gt;                                                 Wed, Sep 18, 2024 at 3:15 PM
To: Patrick Fitzgerald &lt;pfitzgerald@wtlaw.com&gt;

Detailing our call:

- I agreed to ask Amerilist to hold off on the actual list of phone numbers until the court rules on the motion to compel (though I disagreed on the relevance).
- You suggested amending the protective order to allow third parties like the Amerlist to designate information as confidential.
- I disagreed with that, but offered to treat the email production (Request 1) as confidential under the agreement for two weeks to give you time to make confidentiality designations, and that I would not fight Amerilist if it asked for certain material to be held confidential.
- I reiterated my willingness to accommodate Elie's health for his individual deposition, and proposed such as spacing it out over multiple sessions or doing written questions (if there is a way to assure that such written questions will not turn into a series of mini-interrogatories).
    - Note: on further thought, I am highly disinclined to agree to written questions, but again, I'm not closing the door.
- I reiterated my offer to amend the representation agreement if you identify any problematic terms.
- I indicated I need dates for Rui and Elie soon as I would like to take those depositions within the next month or so.
- I clarified again that the client has no interest in individual settlements and that any such settlement offers are presumptively unacceptable.

--



**Jeremy M. Glapion**
Partner

Glapion Law Firm
1704 Maxwell Drive
Wall, New Jersey 07719

Tel.: 732-455-9737

[Quoted text hidden]

# EXHIBIT C



Jeremy Glapion <jmg@glapionlaw.com>

---

## Re: (NRS) Rule 37 Call

---

**Patrick Fitzgerald** <pfitzgerald@wtlaw.com>  Sun, Apr 21, 2024 at 2:00 PM
To: Jeremy Glapion <jmg@glapionlaw.com>
Cc: "jeff@jgbrownlaw.com" <jeff@jgbrownlaw.com>, Ryan Watstein <Ryan@wtlaw.com>

Hi Jeremy,

Regarding RFP 7: We're going to ask our client, but they're observing Passover, so we won't have an answer before Thursday. Also, our client has made appropriate arrangements to preserve evidence.

Pat

**Patrick J. Fitzgerald (bio)**

WATSTEIN TEREPKA <sup>LLP</sup>

P: (404) 400-3382

pfitzgerald@wtlaw.com

www.wtlaw.com

---

**From:** Jeremy Glapion <jmg@glapionlaw.com>
**Date:** Friday, April 19, 2024 at 4:04 PM
**To:** Patrick Fitzgerald <pfitzgerald@wtlaw.com>
**Cc:** jeff@jgbrownlaw.com <jeff@jgbrownlaw.com>, Ryan Watstein <Ryan@wtlaw.com>
**Subject:** Re: (NRS) Rule 37 Call

[Warning – external]

Pat & Ryan:

Pleasure speaking with you. I am following up to memorialize a few points. Please let me know if you disagree or recall differently, or if I missed anything.

- Regarding RFP 7, asking for the identities of persons who made the calls to my client, I understand that your client does not have that data at this time. I suggested, however, providing information on the names of the persons who, at minimum, had access to the VoiceLogic account from which it seems some of the calls emanated. I believe this is fairly contemplated in the request, so please let me know if your client will produce this information.
- You agreed to amend the responses to clarify:
    - RFP 8 - the only responsive document is NRS 15-17
    - Nothing is being intentionally withheld on the basis of the objections
- I indicated, regarding my RFPs, that we would not be producing the representation agreement, and you indicated a willingness to provide case law supporting its production and we would discuss.

In addition, although not discussed on the call, I remain concern about the record keeping here. Though I hope this was already done on or before January 3, 2024, please take all necessary steps to preserve all call data covering the class

period, including the data kept with any third-party (such as VoiceLogic).

Thank you,

Jeremy



--

 | **Jeremy M. Glapion**
Partner

Glapion Law Firm
1704 Maxwell Drive
Wall, New Jersey 07719

[Quoted text hidden]