UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **RASHAD WALSTON,** on behalf of himself and all others similarly situated,<br><br>       **Plaintiff,**<br>v.<br><br>**NATIONAL RETAIL SOLUTIONS, INC. D/B/A NRS PAY,**<br><br>       **Defendant.** | Civil Case No.: 24-cv-83<br><br>District Judge: Hon. Sunil R. Harjani<br>Magistrate Judge: Jeffrey T. Gilbert |

**PLAINTIFF'S OBJECTIONS TO ORDER ON PLAINTIFF'S MOTION TO COMPEL**

On November 6, 2024, Magistrate Judge Gilbert entered an order granting in part and denying in part Plaintiff's Motion to Compel Unredacted Phone Numbers. [Dkt. 87.] Plaintiff hereby submits his objections to this order under Fed. R. Civ. P. 72.

**BACKGROUND**

On January 3, 2024, Plaintiff filed the instant litigation alleging that Defendant sent prerecorded ringless voicemails to Plaintiff and others similarly situated without consent, in violation of the TCPA. Plaintiff must show that 1) Defendant placed (or had placed on its behalf) a prerecorded telephone call, 2) constituting telemarketing 3) to a cellular telephone.

On August 9, 2024, Defendant produced a 529-page document containing, among other things, approximately 17,000 partially redacted telephone numbers Defendant used as part of at least some of its campaign ("Master List"). Plaintiff immediately sought a Rule 37 conference on the propriety of these redactions. On August 16, Defendant's counsel confirmed it would not produce the phone numbers in unredacted form.

1

On August 22, Plaintiff moved to compel production of the unredacted telephone numbers. [Dkt. 48.] On August 27, Defendant opposed. [Dkt. 52.] That same day, Plaintiff replied. [Dkt. 53.] On September 16, Defendant filed a Motion for Oral Argument on Plaintiff's Motion to Compel. [Dkt. 58.] That same day, Plaintiff opposed. [Dkt. 59.] The following day, Defendant replied. [Dkt. 60.]

On October 7, Magistrate Judge Gilbert ordered a conference to be conducted on October 16, 2024 to hear argument on, *inter alia*, the Motion to Compel. [Dkt. 67.]

While the Motions were pending, but before the hearing, Plaintiff amended his complaint to, in part, modify his class definition.[1] [Dkt. 61, ¶ 75.] In addition, Defendant produced three "Campaign Reports"—documents its third-party vendor had created that list ringless voicemail attempts made to specific phone numbers, dates of those attempts, dispositions of those attempts (e.g., whether the ringless voicemail was successfully left), and duration of those attempts. Defendant redacted the telephone numbers in these Campaign Reports to their last four digits, in line with its treatment of the Master List.

**I.  Arguments**

In Plaintiff's Motion to Compel and at the subsequent oral arguments, Plaintiff raised several primary arguments as to why Plaintiff is entitled to the unredacted telephone numbers.

a.  Class Certification

i.  *Numerosity*

The unredacted telephone numbers are relevant to numerosity. Plaintiff's class definition is limited to ringless voicemails placed to cellular telephones. Without the full

---

[1] The updated (and current) class definition: Between October 26, 2020 and January 3, 2024, all persons within the United States who received on their cellular telephone a ringless voicemail sent by Defendant using VoiceLogic's services or by VoiceLogic on Defendant's behalf.

2

telephone numbers, Plaintiff cannot independently determine or verify which of the telephone numbers are cellular. [Dkt. 48, pp. 6-7.] This is only half of the equation. The class is limited to those who "received" a ringless voicemail. As such, an undifferentiated count of cell phone numbers is insufficient. Plaintiff needs to link specific ringless voicemail attempts (and their dispositions) to specific phone numbers. Plaintiff must be able to say, "'x' number of telephone numbers on the list are cell phones, and 'y' of those received at least one ringless voicemail according to the dispositions in the Campaign Reports."

Defendant, however, refused to stipulate to the accuracy of these dispositions. Oct. 16 Hrg. Tr., 20:14-17. If this accuracy is meaningfully challenged, Plaintiff may need to supplement this accuracy. Plaintiff provided the following example of how this might be done:

> Mr. Glapion: ...Take a campaign where they had a voicemail file that was 90 seconds long. There is a designation on the records for telephone number 0001 that shows received but it shows a duration of only 30 seconds. With that comparison, I can say, wait a second, the voicemail was 90 seconds long, how is this call only 30 seconds? It was probably an error…. I cannot do that without being able to link a specific call to a specific phone number.

Oct. 16 Hrg. Tr., 36:11-25. Another method would be to issue subpoenas to the carriers for putative class member logs, which Plaintiff cannot do without the full phone numbers. Oct. 16 Hrg. Tr. 15:8-10; 22:18-22:24.

### ii. Superiority

Plaintiff also raised in briefing the relevance of the full phone numbers to superiority, which requires courts to address class member identification issues under the "likely difficulties of managing a class action" prong. [Dkt. 48, p.7.] Plaintiff will need to demonstrate to the Court his ability to identify class members successfully from their phone numbers, link those class members to specific types and quantities of calls, and show that this process is not too unmanageable. Without the telephone numbers, Plaintiff can offer a plan

3

but not employ it or test it, making it more vulnerable to attack by Defendant, which has full access to the phone numbers to *actually* perform whatever analysis it needs.[2]

### b. No bifurcation/non-class certification relevance.

Throughout the briefing, Plaintiff repeatedly pointed out that discovery in this case is not bifurcated, so the analysis should not be limited to class certification. [Dkt. 48, p.2; p.4; p.4 n.3; p.8]; [Dkt. 57, pp.1-4; p.6.] There are numerous ways, both predictable and unpredictable, that the full telephone numbers might become relevant to this case. Examples include damages (i.e., being able to count the number of calls received by a specific phone number); standing (i.e., being able to link a specific received call to a specific phone number); consent (i.e., obtaining evidence of consent for each cell phone number in Defendant's records); and willfulness (e.g., defendant's actions in connection with or adjacent to the calls).

### c. Right to contact putative class members.

Plaintiff also raised the right to contact putative class members and the potential relevance regardless of whether a class is certified. [Dkt. 48, pp. 10-11.] Plaintiff wrote:

> [T]he TCPA allows for treble damages for willful or knowing damages. 47 U.S.C. § 227(b)(3). The hypothetical testimony of third-party witnesses about the frequency and nuisance of Defendant's spam calls, futile attempts to stop the calls, and Defendant's conduct toward them, if any…would all bear on whether Defendant acted willfully.

[Dkt. 57, p. 9.] As discussed below, this right can only be curtailed on specific showings of threatened harm or abuse.

## II. Judge Gilbert's Decision

### a. Bases

At the conclusion of the October 16 hearing, Judge Gilbert expressed skepticism of

---

[2] Defendant's future opposition: "Plaintiff proposes a plan to identify putative class members. Defendant applied this methodology to the actual telephone numbers and found numerous problems."

4

Plaintiff's Motion, primarily because, in the Court's view:

> The only reason it came down to … that plaintiffs were asking to get numbers was we want to be able to call putative class members and … get information from them that will help us either get a class certified or litigate the case on the merits…. I don't know that it is proportional to the needs of the case for plaintiff to have all the cell phone numbers to be able to call all those people…. But even if all discovery is available now, you're not entitled to take all discovery, even of relevant information, unless it is proportional to the needs of the case and not unduly burdensome for any number of reasons. So I'm not convinced now that I should allow you carte blanche to be taking investigatory discovery of all class members to find out[.]

Oct. 16 Hrg. Tr., 23:18-24:25. The Court later stated that in light of its duty to protect absent class members, it was "pushing back" on "plaintiff's desire to get the individual cell phone numbers … to be able to call the people." Oct. 16 Hrg. Tr., 28:8-29:8. The Court also noted that while Plaintiff's bifurcation argument was "not a bad one", that could be changed with "a stroke of a pen." Oct. 16 Hrg. Tr. at 24:11-15.

Judge Gilbert then took Plaintiff's Motion under advisement, ordering the Parties to file a joint status report on "a proposed stipulation relating to the numerosity issue addressed in the briefing or another proposal concerning how to address Plaintiff's request for information sufficient for him to support the numerosity element of a motion for class certification[.]" [Dkt. 74.] The Court did not rule on Plaintiff's Motion at this time.

On October 30, the Parties requested an additional hearing on the stipulation. [Dkt. 84.] The Parties submitted their positions on November 4. [Dkt. 86.] The Court conducted this hearing on November 6. [Dkt. 87.] The result of that hearing was to grant in part and deny in part Plaintiff's Motion to Compel, for reasons stated on the record:

> The Court: …I'm unwilling at this point to order that defendant produce to you all of the numbers that they have identified … in large part because your briefs say, I should get the numbers now, there is no bifurcation, so … I should get all the information I need now for both damages, class certification, and everything, and I should be able to contact people, if I want, by getting their

5

> cell phone numbers who are potential or putative class members and talk to them. And defendant has this information, why shouldn't I have it.
>
> I'm not buying that whole argument… I'm not saying that … you wouldn't be entitled to the full numbers eventually. But I think you need to crawl before you walk or walk before you run. And I think I want to get you cell phone numbers that you can then use for your class certification briefing to be able to argue that the class is too numerous and for various reasons this is the best way to handle it. And I would like to get you that information without giving you all of the cell phone numbers now so that you can, say you say in your brief you want to do, pick up the phone and call these people….You're not promising to do it, but you're not promising not to do it.[3]

Nov. 6 Hrg. Tr., 7:16-8:21. At other times in this hearing and the October hearing, Judge Gilbert emphasized this concern, linking it in part to Defendant's allegations in the Motion to Deny. *See e.g.,* Nov. 6 Hrg. Tr., 9:7-20; Oct. 16 Hrg. Tr., 28:22-29:8.

      b. <u>Stipulation process.</u>

Judge Gilbert encouraged and ultimately ordered the Parties to agree on a process where the Parties would jointly select a vendor to scrub the full telephone number data, resulting in a stipulation as to which numbers in the campaign reports were cell phones, and a production of the lists in redacted form with cell phone numbers identified. The goal is to provide "Plaintiffs with a list of redacted cell phone numbers to which the parties can stipulate and that Plaintiffs can use for purposes of their motion for class certification." [Dkt. 87.]

## **LEGAL STANDARD**

"The district court's review of any discovery-related decisions made by the magistrate judge is governed by Rule 72(a)[.]" *Weeks v. Samsung Heavy Industries Co., Ltd.*, 126 F.3d 926, 943 (7th Cir. 1997). Rule 72(a) provides that "the district judge … shall consider such objections and shall modify or set aside any portion of the magistrate judge's order found to

---

[3] Plaintiff's counsel offered not to contact class members: "I'm happy to have a two-way bar on communicating with class members … pending the resolution of this motion to deny … where … I won't call them. I won't contact them." Oct. 16 Hrg. Tr., 37:14-18.

6

be clearly erroneous or contrary to law." *Id.* (citing Fed. R. Civ. P. 72(a)). "The clear error standard means that the district court can overturn the magistrate judge's ruling only if the district court is left with the definite and firm conviction that a mistake has been made." *Id.* A decision is contrary to law if it "contradict[s] or ignore[s] applicable precepts of law, as found in the Constitution, statutes or case precedent", or fails to apply the same. *Adolph Coors Co v. Wallace*, 570 F. Supp. 202, 205 (N.D. Calif. 1983); *Tompkins v. R.J. Reynolds Tobacco Co.*, 92 F. Supp. 2d 70, 74 (N.D.N.Y. 2000).

## DISCUSSION

### I. It is clear error to allow Defendant to withhold the full telephone numbers.

#### a. The full phone numbers are indisputably relevant.

Defendant has previously cited Judge Gilbert's statement at the October 16th hearing that His Honor "did not understand from the briefing why plaintiffs needed the individual cell phone numbers to get a class certified" as evidence that Judge Gilbert disagreed that the numbers were relevant. Oct. 16 Hrg. Tr., 23:3-8. Judge Gilbert further stated, however, that he "might be convinced about that[.]" *Id.* at 24:24-25. Judge Gilbert did not appear to take a position on the relevance of the unredacted numbers beyond certification. *See id.* at 24:11-19; Nov. 6 Hrg. Tr., 8:9-11.

To the extent there is doubt, Plaintiff relies on the previous briefing and arguments described above. In addition, the Court ordered a joint vendor and stipulation process to get Plaintiff certain information necessary for class certification. This process requires disclosure of the unredacted phone numbers to the vendor. [Dkt. 87.] This fact alone demonstrates the relevance of the unredacted telephone numbers.

Most courts, including this one in *Hossfeld*, agree. *See Hossfeld v. Allstate Insurance Co.*, 2021 WL 4819498, *3 (N.D. Ill. Oct. 15, 2021) (Harjani, J.) (finding an internal do-not-call

7

list containing telephone numbers to be relevant to numerosity); *see also Frey v. Frontier Utils. Northeast LLC*, 2020 WL 12697468, *2 (E.D. Pa. Apr. 13, 2020) (outbound call list is relevant to determining which calls were made to cell phone numbers).

      b. <u>Courts routinely find outbound call lists discoverable in TCPA cases.</u>

"Courts in TCPA cases have repeatedly held that outbound call lists which contain the names and telephone numbers of plaintiffs and putative class members called by defendant or by others on defendant's behalf are relevant to numerosity, commonality, and typicality and are therefore discoverable." *Gebka v. Allstate Corp.*, 2021 WL 825612, *7 (N.D. Illinois Mar. 4, 2021) (collecting cases); s*ee also, e.g., Fralish v. Digital Media Solutions*, 2021 WL 5370104, *9 (N.D. Ind. Nov. 17, 2021); *Frey*, 2020 WL 12697468, *2 (E.D. Pa. Apr. 13, 2020); *Medina v. Enhanced Recovery Co., Ltd. Liab. Co.*, 2017 WL 5196093, *3 (S.D. Fla. Nov. 9, 2017) ("Outbound call lists are relevant in TCPA class actions to establish the numerosity and commonality requirements for class certification under Rule 23, as well as to prove the merits of Plaintiffs' claims.") (collecting cases).

In general, cases denying discovery of class member information appear to do so only when the information sought has no relevance to the issues of the case and is instead sought *solely* to contact putative class members (such as to provide notice). *See Oppenheimer Fund v. Sanders*, 437 U.S. 340, 353-54 (1978).

In 2021, Your Honor compelled the production of a company's internal "do not call" list (containing phone numbers) because the information was relevant to, among other things, class certification (including numerosity) and standing. *Hossfeld*, 2021 WL 4819498. Your Honor also specifically considered the argument that appeared to carry the day for Defendant here that "plaintiffs' attorneys may be seeking such [putative class members' contact]

8

information to identify potential new clients rather than to establish the appropriateness of certification." *Id.* at *6. Unlike Plaintiff here, the *Hossfeld* plaintiff did not directly respond to these arguments. *Id.* Nevertheless, Your Honor dealt with this issue by imposing specific limitations on Hossfeld's use of the information.

This is one of the only TCPA cases of which Plaintiff is aware that denied discovery of relevant class member phone numbers due to fears of class contact absent any showing of misconduct or burden.

   c. <u>Judge Gilbert's order results in a prejudicial and unilateral no contact order without the requisite showing.</u>

    i. *No contact orders require specific showings that were not made here.*

"[P]laintiffs have a right to contact members of the putative class." *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 101 (1981); *see also Williams v. Chartwell Financial Servs., Ltd.*, 204 F.3d 748, 759 (7th Cir. 2000).

While district courts have the authority to restrict communications between parties and prospective class members, this discretion is not unlimited. *Gulf Oil Co.*, 452 U.S. 89 at 101. "[A]n order limiting communications between parties and potential class members should be based on a clear record and specific findings that reflect a weighing of the need for a limitation and the potential interference with the rights of the parties." *Id.* at 102. "[S]uch a weighing … should result in a carefully drawn order that limits speech as little as possible[.]" *Id.* A district court "may not exercise the power" to restrict certain communications with class members "without a specific record showing by the moving party of the particular abuses by which it is threatened." *Id.* Put another way, a court may only restrict communications with a putative class where the potentially restricted party has engaged in or has threatened to engage in "coercive, misleading, or other abusive communications." *Reid v. Unilever U.S., Inc.*, 964 F.

9

Supp. 2d 893, 926 (N.D. Ill. 2013). This is because such restrictions involve "serious restraints on expression" which require "caution on the part of a district court in drafting such an order, and attention to whether the restraint is justified by a likelihood of serious abuses." *Id.* at 104.

*ii. Proportionality and burden*

Considering the above, Judge Gilbert was openly and rightfully sensitive to the concept of no-contact orders. In addressing *Hossfeld*, Judge Gilbert stated "I'm not a huge fan of a no contact orders because why create seeds of something for a dispute later on", and expressed concerns about prior restraint. Oct. 16 Hrg. Tr., 48:9-17. Nevertheless, Judge Gilbert's order, though referencing proportionality and burden, was rooted in concerns about the *risk* of contact with putative class members. In other words, Judge Gilbert found that the risk of Plaintiff's contact with putative class members created issues of proportionality and burden overriding any relevance.

Respectfully, this is effectively a no-contact order, even if not identified as such. If a party is prevented from accessing or using putative class member information out of concerns of improper contact, *Gulf Oil* and its progeny's rules regarding no-contact orders must apply. If anything, complete denial of relevant data out of concerns about putative class member contact is significantly broader than protective orders found to be invalid in other cases. *See Williams*, 204 F.3d at 759 (vacating a protective order prohibiting plaintiff from contacting putative class members consisting of defendant's customers[4]).

Concerns about putative class member contact cannot be a basis for denying discovery unless and until there is a clear record of threatened or actual "coercive, misleading, or other

---

[4] Defendant does not even have *this* argument. Defendant purchased most of its telephone numbers. They were not Defendant's customers at the time, and the data is not proprietary.

10

abusive communications." *Reid*, 964 F. Supp. 2d at 926. Defendant's mere allegations in its pending Motion to Deny—which have nothing to do with contacting absent class members and which Plaintiff will oppose from start to finish—cannot possibly serve as a sufficient record. Even if it could, the solution is a "carefully drawn order" limiting Plaintiff's speech as little as possible. *Gulf Oil*, 452 U.S. at 101. The fact remains that there is no evidence of any problematic contact between Plaintiff or Plaintiff's counsel and any absent class member. Not just here, but across Plaintiff's counsel's 12 years of practice.

Without the concerns rooted in this potential contact, it is difficult to identify any proportionality issues or burden to Defendant in production of the unredacted telephone numbers. Fed. R. Civ. P. 26(b)(1). The issues are important, with Defendant, a subsidiary of public company IDT, accused of running a telemarketing harassment campaign to increase revenue. The amount in controversy very likely exceeds $150 million. Plaintiff has *no* access to the same information. Defendant has significantly more resources than Plaintiff. And there is no burden or expense on Defendant of producing this information. If anything, the process of jointly hiring a vendor (which Defendant has agreed to pay for) and redacting telephone numbers across 81 campaign reports, among other snowballing concerns described below, is more burdensome than emailing the existing unredacted telephone numbers to Plaintiff.

As Judge Gilbert has recognized, the District Court has a duty to protect absent class members. Oct. 16 Hrg. Tr., 28:8-29:8; *see, e.g. Hoffman-La Roche Inc. v. Sperling*, 493 U.S. 165, 171 (1989) ("[A] district court has both the duty and the broad authority to exercise control over a class action and to enter appropriate orders governing the conduct of counsel and the parties.") But this duty cannot be deployed to prevent Plaintiff from contacting absent class members without a specific showing that such a restriction is necessary.

This duty also cannot be deployed in a one-sided fashion. Defendant, accused of sending more than 500,000 unsolicited ringless voicemails, exposing it to damages north of $150 million, has access to every putative class member's phone numbers and has actively *continued to contact them*.[5] Defendant has no duty to absent class members. It is demonstrably *adverse* to class members. Yet as it stands, Defendant is left with the unchecked ability to contact and re-victimize absent class members.

In the end, there is *always* the hypothetical risk of misuse of discovery in every case. Courts routinely compel discovery or deny protective orders over such hypothetical concerns, even in situations *not* involving speech. *See, e.g. Avocent Redmond Corp. v. Rose Electronics, Inc.*, 242 F.R.D. 574, 579 (W.D. Wash. 2007) ("The Court is unwilling to preclude lawyers from litigating here … on a vague and generalized threat of future inadvertent misuse of discovered materials."). But when speech is implicated, the standard is higher. Per the Supreme Court, specific showings must be made and weighed. *Gulf Oil*, 452 U.S. at 102. This was not done.

Accordingly, and respectfully, Judge Gilbert's decision to permit Defendant to withhold relevant data out of concerns about Plaintiff's potential contact with absent class members is clearly erroneous.

## II. The stipulation and joint vendor process is unfairly tilted toward Defendant and creates additional problems.

---

[5] Judge Gilbert indicated he was "not buying" the argument that because Defendant has access to putative class member contact information, so should Plaintiff. Nov. 6 Hrg. Tr., 7:25-8:7. At the time, this concern was hypothetical. Defendant did not admit to the contact until November 14. Ex. A. Minutes before this filing, Defendant's counsel indicated that it admitted this, in part, because some putative class members had become Defendant's customers. Ex. B. Plaintiff asked whether this admission would change if the RFA were restricted to non-customers, but the deadline did not allow Plaintiff to wait. *Id.* Nevertheless, the RFA response's reference to "efforts to investigate" and the email's reference to "work product" suggests not.

12

Per Judge Gilbert's order, Plaintiff continues to work with Defendant on a stipulation and joint vendor. The alternative—no data at all—is obviously worse. The proposal is not a bad one. If it goes smoothly—a big if—it will result in the production of the Campaign Reports with line type and carrier appended, with the list of telephone numbers redacted (to the last five digits).[6] There are several problems with this process, however.

<u>First</u>, this existence of the process itself demonstrates the relevance of the unredacted telephone numbers. They are the indisputably necessary input to receive the line type output the joint vendor process contemplates. That said, the existence of this process itself also shows the error. Plaintiff would be permitted to perform this analysis himself, without Defendant's involvement or any process, *but for* the concerns about absent class member contact.

<u>Second</u>, because discovery in this case is not bifurcated, limiting Plaintiff to a single stipulation to forever moot this issue forces Plaintiff and Plaintiff's counsel to be completely prescient about *every* reason the unredacted phone numbers might be or become relevant from now until the conclusion of this case. Judge Gilbert is correct that the lack of bifurcation could be changed with "a stroke of a pen." Oct. 16 Hrg. Tr. at 24:11-15. But it has not been. Absent that bifurcation, it is unclear how Plaintiff can obtain the full telephone numbers after the close of the unified discovery period, currently set for December 13. Should the need for the full telephone numbers arise after the close of discovery, how does Plaintiff get it? If Plaintiff needs it, will Plaintiff be subject not only to a heightened standard of re-opening discovery but also temporal arguments such as when or how Plaintiff should have known of this need and raised it? Plaintiff has already demonstrated the relevance of the full phone numbers to

---

[6] As of November 19, the Parties tentatively agreed to the language of a proposed stipulation and process, but this does not alleviate the concerns listed below.

13

numerous aspects of this case, and the production of those unredacted phone numbers would alleviate issues of subsequently realized or arising relevance of this same dataset.

Third, the vendor/stipulation process effectively outsources part of Plaintiff's affirmative case (and representation of Plaintiff and the putative class) to Defendant, by requiring the Parties to agree on a joint expert rather than allowing Plaintiff to choose the expert he best believes can perform the necessary analyses. [Dkt. 87.] Plaintiff, on several concerns, raised concerns with giving Defendant any say into Plaintiff's expert on this issue. [Dkt. 57, p.5] ("[Defendant] asks the Court to require Plaintiff to outsource his litigation to Defendant. Plaintiff has the burden of proving numerosity and should be permitted to rely on his own work product and expert (as necessary)."); [Dkt. 86 p.3] ("It would be unprecedented to require Plaintiff to collaborate with Defendant on a mutually agreeable third-party vendor, when only Defendant would have access to the full data being given to that vendor, all to back-door a no-contact order.") Plaintiff stands by these concerns. This is litigation. Defendant faces tens or hundreds of millions of dollars in liability. Defendant should not get a say in who Plaintiff uses to prove the elements of his case outside of the standard expert processes.

Fourth, Plaintiff has no ability to cross-check the vendor's work, before or after the fact, because Plaintiff does not have access to the "input" data—i.e., the phone numbers. Defendant, on the other hand, has indicated that it intends to check the proposed expert's work against its own expert before agreeing to the expert. [Dkt. 96, n.1.]

Finally, though the stipulation and vendor process ostensibly solves some issues, it creates others and convolutes the posture of this case overall. Plaintiff is currently in the process of obtaining approximately 81 Campaign Reports from Defendant's third-party vendor, VoiceLogic (based in Canada). Because Plaintiff is not permitted to access the

unredacted phone numbers, VoiceLogic will produce these Campaign Reports directly to Defendant. If Plaintiff is deprived of access to the full telephone numbers, Plaintiff will be unable to authenticate the documents with VoiceLogic—as the documents would have been edited to redact the telephone numbers.[7] Plaintiff would need yet another stipulation.

Consider also the eventual need for class member information (such as for notice purposes) in the event the class is certified. Carriers do not keep this information forever. Ordinarily, Plaintiff's counsel would send a preservation request to the carriers asking it to preserve all information associated with the phone numbers belonging to that carrier during the class period. The proposed vendor has indicated that it can identify the carriers for each number, but because Plaintiff lacks the full telephone numbers, Plaintiff must ask and rely on Defendant to serve those preservations requests for him.

## **CONCLUSION**

Judge Gilbert's order, rooted in important concerns about class member privacy, ultimately amounts to a no-contact order without the requisite findings. The joint expert and stipulation process is creative but unnecessary *but for* the limitations imposed out of fear of Plaintiff's contact with putative class members. It also brings with it numerous problems, all prejudicial to Plaintiff. If there are appropriate concerns that Plaintiff will misuse the telephone numbers, there are narrower ways to address this. Accordingly, Plaintiff respectfully requests that the Court compel Defendant to produce the unredacted telephone numbers. Plaintiff is amenable to a two-way bar on communicating with absent class members while the Parties work with Judge Gilbert on the propriety and contours of a no-contact order.

---

[7] In a deposition elsewhere, VoiceLogic disputed the authenticity of a document in PDF because it produced the document in excel. Ex. C, VoiceLogic Depo. Tr., 57:8-22. This is just one example.

Dated: November 20, 2024     s/ Jeremy M. Glapion
                                                          Jeremy M. Glapion
                                                          The Glapion Law Firm, LLC
                                                          1704 Maxwell Drive
                                                          Wall, New Jersey 07719
                                                          Tel: 732-455-9737
                                                          Fax: 732-965-8006
                                                          jmg@glapionlaw.com
                                                          Counsel for Plaintiff and the Putative Class