1   **TRANSCRIBED FROM DIGITAL RECORDING**

 2                  IN THE UNITED STATES DISTRICT COURT
                       NORTHERN DISTRICT OF ILLINOIS
 3                          EASTERN DIVISION

 4   RASHAD WALSTON on behalf of himself and )
     all others similarly situated,          ) Case No. 24 C 83
 5                                            )
                     Plaintiff,               )
 6                                            )
                vs.                           )
 7                                            )
     NATIONAL RETAIL SOLUTIONS, INC., doing   ) Chicago, Illinois
 8   business as NRS Pay,                     ) November 6, 2024
                                              ) 11:58 A.M.
 9                   Defendant.               )

10          TRANSCRIPT OF PROCEEDINGS - Telephonic Status
       BEFORE THE HONORABLE JEFFREY T. GILBERT, Magistrate Judge

11   APPEARANCES:

12
     For the Plaintiff:        GLAPION LAW FIRM
13                             1704 Maxwell Drive
                               Wall, New Jersey  07719
14                             BY:  MR. JEREMY GLAPION

15   For the Defendant:        WATSTEIN TEREPKA LLP
                               1055 Howell Mill Road
16                             8th Floor
                               Atlanta, Georgia  30318
17                             BY:  MR. RYAN D. WATSTEIN
                                    MR. PATRICK J. FITZGERALD
18

19
                         PAMELA S. WARREN, CSR, RPR
20                    Official Court Reporter - Retired
                        23869 N. High Ridge Drive
21                     Lake Zurich, Illinois   60047
                             312.823.0001
22

23   NOTE:  Please notify of correct speaker identification.

24

25

1    (Proceedings held in open court:)

2    THE CLERK:  24 C 83, Walston versus National Retail

3  Solutions, Incorporated.

4    THE COURT:  Okay.  Let's get appearances of counsel.

5  First for plaintiffs.

6    MR. GLAPION:  Good afternoon, your Honor.  Jeremy

7  Glapion on behalf of plaintiff.

8    THE COURT:  Not quite afternoon.  It is 11:58 A.M.  I

9  know I scheduled you at 11:15 or something like that, so I'm

10  sorry.  So good morning, at least for two minutes.

11    MR. GLAPION:  Good morning, your Honor.

12    THE COURT:  Go ahead.

13    MR. WATSTEIN:  And good morning.  You have Ryan

14  Watstein and Patrick Fitzgerald on behalf of the defendant.

15    THE COURT:  Okay.  Great.  I have read every -- I have

16  read -- reread the motion papers and also read the proposed

17  stipulations that you have been batting about.

18    I have a question.  I looked everywhere for a

19  definition of VoIP number.  Is that a number that comes out of

20  the VoiceLogic call log?

21    MR. WATSTEIN:  I --

22    THE COURT:  You should identify yourselves for the

23  record as you speak, just in case a transcript is prepared.

24    MR. WATSTEIN:  I can answer it since we are the one

25  that raised the issue, I suppose.  This is Ryan Watstein.

1  V-o-I-P or VoIP is a voiceover IP number.  So it is kind of

2  like a number that's neither a landline nor a cell phone.

3        It is like, you know, our law firm has RingCentral

4  voiceover IP numbers.  And it allows us to, you know, connect

5  our office line to our internet connection over our phone.  So

6  it is basically a third type of line.

7        THE COURT:  But this -- okay.  This case -- how does

8  that fit in?  The case is about defendant sending voicemail

9  messages directly to cell phones, right?

10       MR. WATSTEIN:  Right.  That's right.  So the way it

11 fits in is that we need to -- you know, we want to give

12 Mr. Glapion a list of cell phone numbers, as we talked about at

13 the last hearing, but we have to make sure that we can remove

14 the voiceover IP numbers.  And I think we can.

15       We ran a test the other day and were able to do that.

16 But we just -- before we can actually stipulate that every

17 single number we're giving him are cell phone numbers, we have

18 to actually do it and make sure that we can remove the VoIP

19 numbers.  Which should be a very small portion of the numbers

20 at issue but -- just because most people have either cell

21 numbers or landlines.  But we just don't want to --

22       THE COURT:  Why do you need to --

23       MR. WATSTEIN:  -- stipulate --

24       THE COURT:  Why do you need to remove the VoIP numbers

25 to give Mr. Glapion information he wants?

1    MR. WATSTEIN:  Because he wants a list of only cell

2  numbers.  And so in order to give him a list of only cell

3  numbers, we need to remove the VoIP numbers.

4    THE COURT:  Couldn't he just -- I mean, maybe this is

5  ignorant, but couldn't he just ignore the VoIP numbers and look

6  at the cell numbers, or no?

7    MR. WATSTEIN:  Well, I think in order to

8  establish -- I won't speak for him.  But I think in order to

9  establish numerosity, he wants to be able to show that there is

10  at least a certain number of cell numbers.

11    Now it is going to be a non-issue because what we're

12  going to find is that, you know, the VoIP numbers are of a very

13  small proportion of the total numbers.  So there is not going

14  to be any numerosity issue.  But I -- but that is the concern.

15    Jeremy, I don't know if you have anything to add.

16    THE COURT:  Well, let me just say -- maybe it is a

17  non-issue.  You have said over the past couple days or whatever

18  you have tested.  You could produce information to him.  And

19  you can excise VoIP numbers, right?

20    MR. WATSTEIN:  Well, we can -- yes.  Yes, subject to

21  the caveat that until we actually do it, we're not sure that we

22  can do it en masse, but we think we can.

23    THE COURT:  Okay.  And so you're prepared -- so if I

24  understand what you are saying correctly, you're now saying --

25  I mean, I sympathize with plaintiff's counsel in saying he's

1   heard different things from the defense.

2        But are you saying that you can now identify in the

3   data you have which numbers are -- and it is -- you have got

4   data showing what numbers were called or, you know, what

5   numbers had the voice message transmitted.

6        Are you saying you can now identify in your data which

7   ones of those are cell numbers or are you still back at you need

8   a vendor or someone to do that?

9        MR. WATSTEIN:  Anybody needs a vendor, whether it is

10  us doing it or plaintiff's counsel doing it.  Because even in

11  cases where we have a client that purchased a list of

12  cell -- purchases a list of cell phone numbers, say the list is

13  100,000, there is going to be a few numbers on there that are

14  not actually cell phone numbers.  I mean, you're going on the

15  representation of what someone else is telling you.

16       So while it is true that the majority of numbers are

17  going to be cellular with some landlines and VoIP numbers

18  sprinkled in, there is no -- there is no way -- no company, or

19  at least most companies, unless they are in the telecom

20  industry, I suppose, have the ability.  They're just going off

21  of what somebody told them, like a person who gave them their

22  number.

23       Do you understand what I am getting at?  There

24  is -- so whether we do it or plaintiff's counsel does it, there

25  has to be a vendor that scrubs against the database of

1   cellular -- cellular carrier -- numbers assigned to cellular

2   carrier services to determine which are cellular.  And that's

3   why we said -- that's always been the case because -- I mean,

4   we have never represented otherwise.  We have never said that

5   we are omniscient such that we know with certainty which

6   numbers we have are cell numbers.  We just said we will figure

7   that out and agree to it.

8         And we'll do that with plaintiff's counsel's input.  I

9   mean, we're not saying we'll unilaterally choose the vendor.

10        THE COURT:  Well, plaintiff believes you have said

11  differently.  And I can see why he thinks it because you said a

12  number of times in writing that we could stipulate to the cell

13  phones on the VoiceLogic list and we're willing to do it and we

14  could provide specific numbers for cell phones.  And I think

15  that is true.

16        But there is a step missing is what you're telling us,

17  which is that you're willing to do that provided that a vendor

18  tells you which of the numbers of the 17,000 numbers you have

19  in fact are cell phones.  And then if you are -- once you know

20  which ones are cell phones, you'll stipulate that those cell

21  phones were contacted by defendant, right?

22        MR. WATSTEIN:  That's right.  And just to be clear,

23  you know, both Mr. Glapion and I have handled a number of these

24  cases.  Every -- in every single case, it is always a vendor.

25  It is never -- even if -- even if the numbers are coming from a

1    field in your system that says cell number, nobody knows that

2    until you scrub it against the cellular database.

3         So maybe I should have been more clear on that, but I

4    wasn't trying to be crafty.  I mean, that -- that -- what we

5    did is after we had that hearing, we went back and put pen to

6    paper and said, okay, we're actually going to make a

7    representation to the Court.  We have to be accurate about what

8    we're saying.  So we have to do the scrub, then we can do the

9    stipulation.

10        I mean, we could do a stipulation.  We could go do the

11   scrub, and then we can do a stipulation, but there is going to

12   be some degree of inaccuracy in it.  We don't want to do that.

13        THE COURT:  Yeah, I know.  And he doesn't want to take

14   a stipulation from you that's meaningless.  Okay.  I think I

15   understand that.

16        Mr. Glapion, here, look, moving this forward, I'm -- I

17   want to order a process that will get you the information you

18   need for a portion of your class certification briefing to show

19   numerosity and that a class action is the superior way of

20   dealing with this, rather than individual cases.

21        I'm unwilling at this point to order that the

22   defendant produce to you all of the numbers that they have

23   identified, the 17,000 numbers or whatever.  I understand that

24   discovery has not been bifurcated formally in this case yet.

25   But in large part because your briefs say, I should get these

1   numbers now, there is no bifurcation, so I need all the -- I

2   should get all the information I need now for both damages,

3   class certification, and everything, and I should be able to

4   contact people, if I want, by getting their cell phone numbers

5   who are potential or putative class members and talk to them.

6   And defendant has this information, why shouldn't I have it.

7           I'm not buying that whole argument, okay.  I don't

8   have to formally bifurcate fact and class and other discovery.

9   But what I -- and I'm not saying that eventually wherever this

10  case goes, you wouldn't be entitled to the full numbers

11  eventually.  But I think you need to crawl before you walk or

12  walk before you run.  And I think I want to get you cell phone

13  numbers that you can then use for your class certification

14  briefing to be able to argue that the class is too numerous and

15  for various reasons this is the best way to handle it.  And I

16  would like to get you that information without giving you all

17  of the cell phone numbers now so that you can, as you say in

18  your brief you want to do, pick up the phone and call these

19  people.  If you want to.  Okay.  You're not promising to do it,

20  but you're not promising not to do it.  And it seems to me that

21  that's the best approach here until you have a class certified.

22          I -- if both sides seem to agree that a vendor needs

23  to look at this data and scrub it and get you the cell phone

24  numbers.  And you say why can't I get this information with my

25  own expert.  And I say that if you have done these cases before

1   and there is experts who do this stuff, then you

2   should -- defendant can suggest an expert to you or you can

3   mutually agree on an expert who will get this data and provide

4   to you the numbers.  And I'm fine with the five digits as

5   opposed to the four to eliminate duplication or wrong numbers

6   or something like that.

7          I suppose I could even be pushed -- though I don't

8   know that it is necessary, and I think it creates an

9   unnecessary issue -- to say they give -- they give those

10  numbers to your vendor.  The vendor discloses the numbers that

11  are cell phone numbers to you.  Only discloses the last five

12  digits.  And what that raises in a case where the lawyers

13  have -- particularly, you know, defense lawyers have questioned

14  your very integrity and your ability to just do any kind of

15  litigation in federal court, that opens you up and your vendor

16  up to, well, he disclosed the numbers to the plaintiff and

17  there was leak there and now we got a whole big issue.

18         And I don't think I want to create that issue.  I

19  don't think I need to create that issue.  I don't think you

20  need to create that issue.

21         So it seems to me that you ought to agree on a vendor.

22  And I'll say to Mr. Watstein, if you are unreasonable in

23  agreeing on a vendor with plaintiff, then maybe I revisit

24  whether, you know, I let his vendor get this information free

25  and clear and promise to only disclose certain portion of the

1    numbers to plaintiff.

2          But to me I think what should happen is you ought to

3    give -- the defendant ought to give this information to a

4    vendor that's approved -- that is agreeable to plaintiff and

5    that vendor scrub it and provide to plaintiff and to defendant

6    a list of the -- or the five digits, five digits of telephone

7    numbers that are confirmed to be cell numbers which then will

8    be very many, and plaintiff can use that for class cert.  And

9    hopefully that would also give plaintiff the information it

10   needs to deal with some of the other issues you put in the

11   stipulation filing.

12          THE COURT:  Mr. Glapion, what about that resolution?

13          You're muted.

14          MR. GLAPION:  I think -- I'm sorry, I was --

15          THE COURT:  No, I can hear you now.  Maybe you weren't

16   talking.  I can hear you now.

17          MR. GLAPION:  Yeah.  I think there is a few things.

18   If I could be heard for a moment on a couple of items, that

19   would be great.

20          THE COURT:  Yes.

21          MR. GLAPION:  First, without a stipulation that the

22   cell phone numbers or the actual numbers themselves, there is

23   unequivocally no way for me to establish numerosity -- that's

24   an unavoidable point.  If I don't get the numbers to do it

25   myself, regardless of concerns about, you know, contact and

1  whether I would or I wouldn't, if I don't have the numbers or

2  stipulations exclusively to cell phones on the list, and in a

3  list of the call log with only cell phones, I cannot establish

4  class certification.

5       THE COURT:  Okay.  Let me interrupt you.  I'm raising

6  my hand here hoping you see it.  I think Mr. Watstein

7  is -- after you scrub this list or after a vendor scrubs the

8  list and identifies which numbers are cell phones, I think

9  Mr. Watstein is saying he will agree to stipulate that these

10  numbers on this list are cell phone numbers.

11       Right, Mr. Watstein?

12       MR. WATSTEIN:  Yes.

13       THE COURT:  So what's -- why does not -- why does that

14  not get you the stipulation you need as to the cell phone

15  numbers?

16       MR. GLAPION:  It could.  And the reason I'm hedging on

17  that a bit is that this -- representations as to what defendant

18  can do or believe is possible have shifted repeatedly.  And the

19  problem with this is on this call this is the first time now

20  that defendant says, you know, we think we can actually do it.

21       In the stipulation that was submitted to the Court,

22  and in the draft one, they deleted a footnote.  They

23  essentially said, we have to submit it to a vendor, but we

24  don't know if it can actually be done.

25       Now if the concession now is that we will have a

1    vendor do it and we agree to essentially be bound by the

2    findings of the vendor, we're not going to challenge the

3    vendor's methodology, we're not going to dispute whether it can

4    be done or it is possible, that -- that would work.  But if

5    we're going to get into, well, the vendor said these are cell

6    phones, but we disagree that the vendor employed appropriate

7    methodology or looked into this, that, or the other, and there

8    is going to be essentially later challenging this expert, that

9    becomes an issue.  So we almost have to agree to be bound.

10          THE COURT:  No, you don't.  You just need to get it to

11   a vendor and see what happens and stop arguing about it.

12          I don't know what -- Mr. Watstein is proposing.  I

13   agree that there have been several iterations.  I don't think

14   he thinks there have been several iterations.  I think he would

15   say, and maybe I wouldn't even disagree, that he's been saying

16   the same thing all over again -- all over.  He's willing to

17   stipulate once he knows what he's stipulating to.

18          I think you ought to agree to a vendor.  And I'll give

19   you -- I would like to set dates.  I'd like to set a date for

20   the parties to agree to a vendor.  I would like to set a date

21   for you to get the information to the vendor.  And then I'd

22   like a date for a report afterwards as to whether -- where this

23   stands.  We're not going to know unless you do this.  Okay?

24          And I don't know how expensive it is, but it is

25   probably not prohibitively expensive.

1       MR. WATSTEIN:  It is not.

2       THE COURT:  You know, if a vendor -- and, you know,

3   Mr. Watstein keeps saying and you keep saying, we have done

4   these cases before.  So obviously you're not reinventing the

5   wheel here.

6       So I want you to identify a vendor.  I want the data

7   to go to the vendor.  The vendor is going to be the expert, not

8   you guys.  The vendor will be able to tell you what he or she

9   was or was not able to do with the data.

10      If the data -- if they can't do what you need,

11  Mr. Glapion, then we come back and you got to get something

12  else.  But if they can do what you want to do and you get the

13  information that you need, then I think that's good.  And

14  defendant is going to pay for the vendor.  He volunteers to pay

15  for the vendor.  Defendant is going to pay for the vendor.

16      So I think we ought to get -- start this road and not

17  argue about what the end result is going to be until we know

18  whether or not we have anything to argue about.

19      If we get to a point where the defendant is saying I

20  can't stipulate, fine.  Then maybe you get all the numbers, you

21  know, and then you -- then you do it.  And -- but up till now

22  I'm not -- I'm not hearing that vibe.

23      So I -- I'm going to -- my -- and you say you got a

24  bunch of things to say.  You said the first thing.  I don't

25  know you could -- I mean, my intention is to grant the motion,

1    in part, order that the parties agree on a third-party vendor

2    to review the -- or maybe the word is scrub the call data that

3    defendant will provide to the vendor, and that the parties give

4    me a status report on X date after you know what happened.

5            So you can react to that, Mr. Glapion.  And also I

6    think you said there were a bunch of -- you know, several

7    things.  So if there are other things we need to deal with,

8    then we can deal with them.

9            MR. GLAPION:  Thank you, your Honor.  I think my

10   concern with the vendor approach was not necessarily that the

11   vendor couldn't do it.  My concern was that we get into a

12   situation where the vendor produces the list that it claims to

13   be a list of cell phones.  I believe that it's valid.

14   Defendant's side says, you know, we think there were issues

15   with methodology.  And then I'm sort of left without that plan

16   B of saying, okay, here's other ways to do it.

17           I don't even have the full data that the vendor will

18   be getting because, you know, I'm not privileged to those

19   numbers.  I know the category, but I don't even see what

20   they're getting.

21           So I'm sort of going to be in some ways -- it is sort

22   of an expert process which would usually be my responsibility

23   as part of my case to hire this expert.  But we're now making

24   it mutual, which is valid, but I'm also sort of handcuffed in

25   what I can even see that the expert is getting.

1        So my concern is it gets into a Daubert-type fight or

2   a motion-to-strike-type fight or a challenge-of-

3   the-expert-finding-type fight.  I'm limited in my ability to do

4   it.

5        That's why I suggested that the stipulation would have

6   to carry with it that we're bound -- like we're agreeing to

7   this expert.  We're agreeing that the expert can do what we

8   want it to do, and we are going to be bound by the expert

9   findings and not have this fight later.

10       THE COURT:  Okay.

11       MR. GLAPION:  Rather than get into an expert fight.

12       THE COURT:  Yeah.  Mr. Watstein though -- I get from

13  Mr. Watstein that he's not prepared or doesn't think he can yet

14  agree that the expert can do what you want it to do until the

15  expert tells him he can do what you want to do.

16       So why doesn't he provide the data to the expert.  And

17  then the expert needs to first tell the parties whether it can

18  do what you want it to do, Mr. Glapion, and what defendant

19  wants it to do, and then you can stipulate that the results

20  are -- you know, will be you stipulated for use in this case.

21       Why don't you just get the data to the expert and then

22  the expert can tell you as an expert whether it can do what

23  want you to do or not.

24       Unless, Mr. Watstein, you're already talking to your

25  third-party expert and he or she is telling you they can't yet

1   tell you.

2         MR. WATSTEIN: No. No. And just to clarify, what

3   happened is between the drafting of the report or the beginning

4   of the drafting of the report, this most recent report, and

5   today, like I said earlier, is that we ran a test.

6         THE COURT: We be being the client -- we being the

7   client or the expert?

8         MR. WATSTEIN: No, no, no. We outsourced some of the

9   numbers to the expert to see whether they could remove VoIP

10   numbers. A small sample. And it seems to work. So that's

11   what changed between now and then. And that's why I'm more

12   confident today than I was three weeks ago that we can do this

13   with the sample.

14         We just -- I was going to propose what your Honor

15   proposed, which is why don't we do it, see what happens. We

16   have more confidence in it because of the tests we just did.

17   We'll do it, see what happens, and see what the expert says

18   about the overall data set. And then we'll go back to

19   Mr. Glapion and say, here's what we're willing to do.

20         We don't expect Mr. Glapion to take a stipulation that

21   says, well, here's the numbers, but we challenge the

22   reliability of everything we gave you. I mean, that's -- I

23   understand that would be illusory, and we're not asking for

24   that. We're just saying, before we actually sign a stipulation

25   that agrees to something concrete, we actually have to go

1  through the exercise first.

2  　　　　THE COURT:  If the expert --

3  　　　　MR. WATSTEIN:  So I agree with --

4  　　　　THE COURT:  If the expert can do the analysis, remove

5  the VoIP numbers, produce to you and plaintiffs a report that

6  lists telephone numbers -- the last five digits of telephone

7  numbers that come from your data set and those telephone

8  numbers will have been run against a universe of cell phone

9  numbers so you know those are cell phone numbers, at the end of

10 that process, will the defendant agree to stipulate that the

11 work product that came from the expert, the lists -- a list of

12 numbers redacted, except for the last five digits, are cell

13 phone numbers that were called by the defendant?

14 　　　　MR. WATSTEIN:  Well, cell -- yes, cell phone numbers

15 on the list -- on the call list.

16 　　　　THE COURT:  Yes.

17 　　　　MR. WATSTEIN:  Yeah, the latter part, I mean that's a

18 separate issue.  But, yes.

19 　　　　THE COURT:  Okay.  Why wouldn't that satisfy you,

20 Mr. Glapion?

21 　　　　MR. GLAPION:  If there were -- well, just to briefly

22 back up for a moment.  I don't -- and to clarify, I don't know

23 who this expert that defendant is working with is and typically

24 one that we have discussed or mutually agreed on.  So I just

25 wanted to make that particular aspect clear.

1          But if there were -- you know, the work product along

2     the lines of the stipulation I propose, but with, you know,

3     after the expert's input, that, you know, all of these -- the

4     master list and the campaign reports are reproduced with the

5     expert scrubbing out the VoIP numbers and just with cell phones

6     and, you know, that they're stipulating that the work product

7     is binding or whatever the language would look like, that would

8     be sufficient.  Because, I mean, that just gets you to my

9     stipulation just with the additional step of having the expert

10    in there.

11         What I couldn't agree to was this sort of initial

12    proposal of, here's the cell phone and VoIP list, because that

13    would be useless to me in terms of identifying numerosity for

14    cell phones.

15         THE COURT:  Who is the expert that you propose to be

16    the person to do this, Mr. Watstein?

17         MR. WATSTEIN:  Sure.  I'm going to defer to my

18    colleague Pat, because he's the one who has been directly

19    working.  I mean, I know the name is -- this gentleman's name

20    is David Paylett (phonetic).  But I'm not sure what his company

21    is.  And I'm not sure if it is him who has been doing the

22    scrubbing or if it is someone else.

23         You're on mute, Pat.

24         MR. FITZGERALD:  Yes.  The company is I think BRG, but

25    I'm trying to find the name of the company they subcontracted

1   to.

2          THE COURT:  The name of the company is synch BRG or

3   just BRG?

4          MR. WATSTEIN:  BRG.

5          MR. FITZGERALD:  BRG.  Sorry, your Honor.

6          THE COURT:  What is it?

7          MR. FITZGERALD:  B as in bravo, R as in Romeo, G as in

8   gamma.

9          THE COURT:  Okay.  That's a consulting company?

10         MR. FITZGERALD:  Yes, your Honor.

11         THE COURT:  I think they are litigation consulting

12  company, right?  Expert consulting company?

13         MR. FITZGERALD:  Correct.

14         THE COURT:  Used to be Berkeley Research Group, right?

15         MR. WATSTEIN:  Yes, I think that's right.

16         MR. FITZGERALD:  Your Honor, the vendor was

17  PacificEast.

18         THE COURT:  Was what?

19         MR. FITZGERALD:  PacificEast.

20         THE COURT:  I'm sure you have heard of BRG,

21  Mr. Glapion.  Do you want to investigate these people first to

22  see whether or not you would be willing or do you know that

23  these are credible folks that you would be willing to work

24  with?

25         MR. GLAPION:  I have not -- I have heard of BRG, I

1    have not heard of PacificEast.  Usually when I have done this,

2    and this is not to say that any of them -- these vendors are

3    inadequate -- usually I go with a lot of the class action, you

4    know, management and administrators.  Administrative groups

5    have in-house people who do this, you know, as part of their

6    notice process.  And, you know, they have the expertise in

7    identifying cell phones and then reverse appending names,

8    addresses.

9            So that's usually my first stop, which is not to say

10   that any of these vendors are inadequate for this purpose.  And

11   ultimately if they can do it, you know, and there is that

12   stipulation that -- to the reliability of it, then I'm

13   fine -- I would presumably be fine with that pending, you know,

14   further investigation and discussion, but --

15           THE COURT:  So you're talking about people like

16   Heffler or used to -- I don't know if Heffler is still in

17   existence.  But companies like Heffler that used to do claims

18   administration and stuff, they also could do this kind of

19   thing?

20           MR. GLAPION:  Correct.  Like KCC is the one I often

21   use and to administer my cases.  I know they have vendors who

22   specialize in this kind of work.

23           I have worked with -- I think KCC is now Verita.  They

24   have changed their name.  That's one who I have worked with to

25   do similar work before.

1      But, you know, their capabilities are also broader

2  than necessarily data verification because a lot of times they

3  come in with like reverse appends type things.  Getting the

4  names associated with the phone numbers, historical data,

5  things like that.

6      But assuming this -- if it was strictly is this VoIP

7  or is this a cell phone and we're stipulating to the

8  reliability and that these were cell phones, you know, for

9  relevant purposes in this case, I don't see the -- necessarily

10  see the need to use one of my administrators, assuming the

11  experts can do it.

12      You know, if there is a dispute about that, we may

13  need to revisit.  But that's what I typically do just by way of

14  background on this process.

15      THE COURT:  Okay.  It seems to me that, I mean, this

16  is in front of me now just on the motion to compel production

17  of unredacted cell phone numbers for purposes of getting you

18  information you're going to use in the class cert process and

19  for other purposes in the litigation.

20      And I want to proceed the way I outlined.  As a

21  preliminary matter though, I would like the defense to provide

22  the contact information to the people who you have been talking

23  to at BRG and PacificEast so that Mr. Glapion can talk to those

24  people.

25      You want to talk to them, Mr. Glapion, before you

1    proceed -- before you agree to this kind of a thing?

2              MR. GLAPION:  I would like to.

3              THE COURT:  Yeah.

4              MR. GLAPION:  You know, God forbid they say, oh, we

5    can't do this, then we might -- we'd have to --

6              THE COURT:  And I doubt that they are going to do it

7    because they have been talking to Mr. Fitzgerald.

8              But, I mean, I think what would have to happen -- what

9    should happen is that -- I mean, I'll say in my order, the

10   defendant has proposed an expert, a vendor and a subcontractor

11   to perform the analysis of call data to determine which of the

12   calls on the list of 17,000 numbers or which of the numbers on

13   the list of 17,000 numbers are cell phone numbers.

14             I'm correct with that up until now, right?

15   Defendant --

16             MR. GLAPION:  I'm sorry, can you --

17             THE COURT:  What?

18             MR. GLAPION:  I didn't mean to interrupt you.  I was

19   going to say, can you say that last part again.  I apologize.

20             THE COURT:  Brenda, can you read it back?

21             THE CLERK:  Sure.  I think I have it right.  Defendant

22   has proposed a vendor and subcontractor to perform analysis of

23   call data to determine which of the numbers on the list of

24   17,000 numbers are cell phone numbers.

25             THE COURT:  Did you hear that?

1  MR. GLAPION:  I did.  That's -- I wanted to clarify

2  that there is the master list and the campaign reports.  The

3  master list is sort of doesn't link any calls to.  The campaign

4  reports are the ones with the number, the attempted call time,

5  the disposition.  So the vendor would have to do the same with

6  the campaign reports as well so I can link specific calls to a

7  specific number.  But otherwise, yes, that is correct.

8  THE COURT:  Okay.  I'm not going to micromanage this

9  with the language.

10  Strike everything I just said, Brenda.

11  THE CLERK:  Okay.

12  THE COURT:  The parties shall -- the Court grants in

13  part and denies in part plaintiff's motion to compel -- I don't

14  know what the ECF number is -- production of under redacted

15  documents.

16  The defendant will produce to a third-party vendor the

17  data that was discussed during today's status -- during today's

18  hearing so that the vendor can scrub that data and prepare a

19  report that identifies cell phone numbers included within the

20  data provided to it.

21  The defendant has proposed a vendor and subcontractor

22  to do that work and to produce a report.  Defendant shall

23  provide the contact information for the vendor and the

24  subcontractor to plaintiff's counsel so plaintiff's counsel can

25  speak to that vendor and its subcontractor.

1    I'd like to set a date by which the parties will file

2  a short joint status report indicating whether they have agreed

3  on a vendor.  And if so, a proposed schedule for defendant to

4  provide the data to the vendor, and for the defendant -- the

5  vendor to produce a report.  The end result of this process is

6  intended to provide plaintiff with a list of cell phone numbers

7  that the parties can stipulate -- can stipulate to and that

8  plaintiff can use for purposes of its motion or their motion or

9  plaintiffs can use for the purposes of their motion for class

10 certification.

11    How long will it take you to get me this report?  To

12 talk to the vendor and agree on dates so that I can enter those

13 dates?

14    Mr. Glapion.

15    MR. GLAPION:  I can reach out to the vendor within a

16 day or two of -- if not sooner, of being given the contact

17 information for the vendor.  And the rest seems to be in the

18 hands of defendant's counsel.

19    THE COURT:  Yeah.  And we can -- we were originally

20 going to propose two weeks to get the data back, but it might

21 not take that long.  I'm just not sure.

22    Pat, can you comment on that further?

23    MR. FITZGERALD:  Yeah.  The turnaround time is pretty

24 quick.  I mean, our test it was a couple hours.  But that was a

25 smaller sample size, of course.

1    THE COURT:  So can I ask for this status report to be

2    filed -- this would be -- this would allow time for Mr. Glapion

3    to talk to the vendor or vendors, and for all of you to agree

4    to a timetable to get the data.  Can I have you file that by

5    next Thursday, the 14th, or sometime the following week?  I'm

6    just looking for a date so that you think you can get this done

7    so that you can -- I can then get an order entered.

8    MR. GLAPION:  The 14th works for plaintiff.

9    THE COURT:  Defense.

10   MR. WATSTEIN:  I would propose the following Monday or

11   Tuesday, so the 18th or 19th just because my week next week is

12   absolutely crazy and I don't want to get into a situation where

13   we haven't had a chance to discuss.  So I would say like -- I

14   would say, to be safe, the 19th.

15   THE COURT:  Okay.  So the 19th.  I want the report

16   with this information -- I want your status report with this

17   information on the 19th and a timetable.  And if you

18   could -- and you may not be able to get to the point.  I mean,

19   the end result of this whole process is that I want you to be

20   able to arrive at a stipulation then you agree to as part of

21   the class cert process that would be filed on the docket.

22   So -- but I don't think you need to agree to that

23   stipulation now, you need to agree to a vendor and a

24   subcontractor and what the vendor can do and when the vendor

25   can do it.  And then once we know that, I would get you back in

1    to deal with that.  So that's what I want to do.

2            Any more from plaintiff, at least at this point,

3    before we get to the next step?

4            MR. GLAPION:  No, your Honor.  Are you -- just a quick

5    question.  Are you planning to issue a written order on this

6    imminently or after the stipulation or --

7            THE COURT:  Well, I'm just planning on issuing an

8    order today that says the motion is granted in part and denied

9    in part in ordering you to do these things by this date.  I'm

10   not ordering the language for any stipulation or anything else.

11   I just want this process to move forward so you eventually

12   could get to a stipulation.

13           MR. GLAPION:  Thank you, your Honor.

14           THE COURT:  Is that responsive to your question?

15           MR. GLAPION:  It was.  I -- it was, thank you.

16           THE COURT:  Okay.  Anything more on defendant's end,

17   Mr. Watstein?

18           MR. WATSTEIN:  No, your Honor.

19           THE COURT:  Okay.  Let's move forward like this.  I'm

20   hoping that this will accomplish what plaintiff needs.  And

21   again, I mean, if you can't get this done, you know, I can come

22   up with other alternatives, including giving plaintiff all the

23   data.  I just don't think that's necessary at this point, so

24   that's why I'm going down this route.  But it is a continuum.

25           So I'll look for your -- what you file on the 19th.

 1  And if I need to enter anything after that or we need to come

 2  back, we can set it.

 3          I'm not going to -- the 19th is a bear of a week for

 4  me so I'm not going to set another date right now.  I'm going

 5  to be out of town after that.  So I'm hoping that this will

 6  work -- that you can agree to something and move forward.

 7          Maybe I should have another telephone conference.  I

 8  don't want to set this at a time where they have to wait for

 9  six hours.  We have too many things set on the same days -- at

10  the same time on the same day.

11          Can I set you for a telephone call -- it won't be

12  recorded -- at 10:00 A.M. on Friday the 22nd?  Just a status

13  call to make sure we're on -- we're going the right place and

14  after I have had read your stip.

15          MR. GLAPION:  That works for plaintiff, your Honor.

16          THE COURT:  Defense.

17          MR. WATSTEIN:  That works for defendant too.

18          THE COURT:  Okay.  Let's do that.  And if you have a

19  different proposal, you can give it to me on the 19th.

20          Brenda, flag these for me.  I know those dates -- I

21  have no time at that time but I'll make time to look at what

22  the heck they're filing.

23          THE CLERK:  On the 22nd you mean?

24          THE COURT:  Well, give me -- when they file something

25  on the 19th.

1           THE CLERK:  Oh, got it.

2           THE COURT:  Can you get it to me by noon on the 19th?

3           MR. GLAPION:  Sure.

4           MR. WATSTEIN:  Yes, your Honor.

5           THE COURT:  Okay.  And if you can get it on the 18th,

6 that would be preferable.

7           Okay.  We're done for now.  Anything more from

8 plaintiff for now?

9           MR. GLAPION:  Nothing on this issue, your Honor.

10 Thank you.

11           THE COURT:  Mr. Watstein?

12           MR. WATSTEIN:  Nothing for me either, your Honor.

13           THE COURT:  Okay.  All right.  Let's try and move

14 forward.  Bye.

15           MR. GLAPION:  Thank you.  Have a good one.

16           MR. FITZGERALD:  Thank you.

17           MR. WATSTEIN:  Thank you, your Honor.

18       (Which concluded the proceedings.)

19                    CERTIFICATE

20           I certify that the foregoing is a correct transcript
from the digital recording of proceedings in the above-entitled
21 matter to the best of my ability, given the limitation of using
a digital-recording system.

22

23 */s/Pamela S. Warren*         November 12, 2024
Official Court Reporter - Retired      Date
24 United States District Court
Northern District of Illinois
25 Eastern Division