# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| **RASHAD WALSTON,** on behalf of himself and all others similarly situated,<br><br>**Plaintiff,**<br><br>**v.**<br><br>**NATIONAL RETAIL SOLUTIONS, INC. D/B/A NRS PAY,**<br><br>**Defendant.** | Civil Case No.: 24-cv-83<br><br>District Judge: Hon. Sunil R. Harjani<br><br>Magistrate Judge: Jeffrey T. Gilbert<br><br>**Declaration of Jeremy M. Glapion in Support of Plaintiff's Motion for Relief Under Rule 23(d)** |

I, Jeremy M. Glapion, declare as follows:

1.      I am attorney for Plaintiff and the putative class in this matter.

2.      I make this declaration based on my own personal knowledge in support of Plaintiff's Motion for Relief Under Rule 23(d).

3.      All exhibits attached hereto are true and correct copies of those exhibits, unedited unless otherwise stated.

4.      On November 15, Defendant admitted it had continued to contact putative class members after this lawsuit was filed. **Ex. A.**

5.      On November 20, Defendant emailed Plaintiff's counsel to indicate that this belief was, at least in part, rooted in the fact that some putative class members had become customers, so it was inevitable NRS had conducted them (i.e. for business). **Ex. B.**

6.      Defendant declined to answer whether this response would change to a denial if restricted to non-customers. *Id.*

7.      On August 22, I emailed Michael Hellerman, a third party witness identified by one of Defendant's employees, Diana Stern, using a publicly available email address. **Ex. C.**

8.      I did not hear back, and followed up (via email) on August 26 and October 7. *Id.*

9.      Shortly after the October 7 follow-up, Mr. Hellerman called me on my work phone number.

10.     During that call, I asked if Mr. Hellerman was represented by counsel.

11.     Mr. Hellerman answered he was not.

12.     During that call, I also asked Mr. Hellerman if he had heard of Patrick Fitzgerald, Ryan Watstein, or Watstein Terepka.

13.     Mr. Hellerman answered that he had not.

14.     Shortly after this phone call, I contacted Defendant's counsel for their availability to attend a deposition of Mr. Hellerman. **Ex. D** (edits removing quoted text for readability and one redaction to a password).

15.     On October 10, Defendant sent me a "declaration" of Mr Hellerman. **Ex. E.**

16.     Excerpts from the transcript of Mr. Hellerman's November 14 deposition are attached hereto as **Exhibit F**, with highlights to the quoted language.

17.     I declare under penalty of perjury that, to the best of my knowledge and recollection, the foregoing is true and correct.

Executed on this 29th day of November, 2024, at Manasquan, New Jersey.

*/s/ Jeremy M. Glapion*
Jeremy M. Glapion

1

# EXHIBIT A

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| RASHAD WALSTON, on behalf of himself and all others similarly situated, | : | Case No. 1:23-cv-00083 |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| NATIONAL RETAIL SOLUTIONS, INC. D/B/A NRS PAY, | : | |
| | : | |
| Defendant. | : | |

**DEFENDANT'S OBJECTIONS AND RESPONSES TO**
**<u>PLAINTIFF'S AMENDED FIFTH SET OF REQUESTS FOR ADMISSION</u>**

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

████████████████

████████████████████████████

█   ███████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

██████████████████████

█   ███████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████



**REQUEST FOR ADMISSION NO. 54**

ADMIT that, on or after January 3, 2024, YOU have COMMUNICATED with more than one PUTATIVE CLASS MEMBER.

**RESPONSE:**

Defendant references and incorporates its objection to the term "YOU," set forth above. The term is particularly objectionable here because the Request includes conduct by persons other than Defendant. Defendant responds to this Request on behalf of NRS alone.

Defendant objects to this Request as seeking an admission that is not relevant to the parties' claims and defenses. For example, Defendant's efforts to investigate Plaintiff's putative class action allegations is irrelevant to its alleged liability. As the Court acknowledged, Plaintiff's complaint that "defendant has this information, why shouldn't I have it" does not make the information discoverable. Nov. 6, 2024 Transcript at 7:21–8:21 ("I'm not buying that whole argument, okay."). The Request is likewise objectionable as "PUTATIVE CLASS MEMBER" could include NRS's customers.

In light of the foregoing objections,, Defendant admits this Request.

DATED:       November 14, 2024.

Respectfully submitted,

*/s/ Ryan D. Watstein*
Ryan D. Watstein (pro hac vice)
ryan@wtlaw.com
Patrick J. Fitzgerald (pro hac vice)
pfitzgerald@wtlaw.com
**WATSTEIN TEREPKA LLP**
1055 Howell Mill Road, 8th Floor
Atlanta, Georgia 30318
Tel: (404) 782-9821
Fax: (404) 537-1650

Justin M. Penn, ARDC 6283726
jpenn@hinshawlaw.com
HINSHAW & CULBERTSON LLP
151 North Franklin Street, Suite 2500
Chicago, Illinois 60606
Tel:  (312) 704-3000
*Counsel for Defendant*

# EXHIBIT B



Jeremy Glapion <jmg@glapionlaw.com>

## Rule 72 objections
8 messages

**Jeremy Glapion** <jmg@glapionlaw.com>                                  Wed, Nov 20, 2024 at 1:24 PM
To: Patrick Fitzgerald <pfitzgerald@wtlaw.com>, Ryan Watstein <ryan@wtlaw.com>
Cc: Jeffrey Brown <jeff@jgbrownlaw.com>

I assume our status report satisfies the necessary meet and confer on whether the Rule 72 objection to Judge Gilbert's issue is opposed or not, but let me know if you disagree. I have to file today.

Best,
Jeremy

--



**Jeremy M. Glapion**
Partner

Glapion Law Firm
1704 Maxwell Drive
Wall, New Jersey 07719

Tel.: 732-455-9737

**Patrick Fitzgerald** <pfitzgerald@wtlaw.com>                          Wed, Nov 20, 2024 at 1:44 PM
To: Jeremy Glapion <jmg@glapionlaw.com>, Ryan Watstein <Ryan@wtlaw.com>
Cc: Jeffrey Brown <jeff@jgbrownlaw.com>

Understood.  We oppose.

**Patrick J. Fitzgerald (bio)**

WATSTEIN TEREPKA LLP

P: (404) 400-3382

pfitzgerald@wtlaw.com

www.wtlaw.com

**From:** Jeremy Glapion <jmg@glapionlaw.com>
**Date:** Wednesday, November 20, 2024 at 1:24 PM
**To:** Patrick Fitzgerald <pfitzgerald@wtlaw.com>, Ryan Watstein <Ryan@wtlaw.com>
**Cc:** Jeffrey Brown <jeff@jgbrownlaw.com>
**Subject:** Rule 72 objections

[Warning – external]

I assume our status report satisfies the necessary meet and confer on whether the Rule 72 objection to Judge Gilbert's issue is opposed or not, but let me know if you disagree. I have to file today.


Best,

Jeremy

 Image removed by sender.


--

Image removed by sender.

**Jeremy M. Glapion**

Partner

Glapion Law Firm
1704 Maxwell Drive
Wall, New Jersey 07719

Tel.: 732-455-9737

---

**Ryan Watstein** <Ryan@wtlaw.com>                    Wed, Nov 20, 2024 at 8:49 PM
To: Patrick Fitzgerald <pfitzgerald@wtlaw.com>, Jeremy Glapion <jmg@glapionlaw.com>
Cc: Jeffrey Brown <jeff@jgbrownlaw.com>


Yep, and also, just so we're clear on an issue we discussed the other day: we admitted that NRS has contacted class members in our responses to RFAs because some of these folks are NRS customers. So of course NRS has had contact with some of them. Not because we (WT) are contacting them. The latter point is work product. I wanted the record to be clear on that point. And, as discussed, we don't see how Plaintiff would have a need to contact putative class members anyway. If Plaintiff had such a need, that would just show why individualized issues preclude class certification.

[Quoted text hidden]

---

**Jeremy Glapion** <jmg@glapionlaw.com>                    Wed, Nov 20, 2024 at 8:54 PM
To: Ryan Watstein <Ryan@wtlaw.com>
Cc: Patrick Fitzgerald <pfitzgerald@wtlaw.com>, Jeffrey Brown <jeff@jgbrownlaw.com>

Thanks, Ryan. This isn't something we need to argue here. The need to contact putative class members, especially if NRS/WT has done so in connection with this litigation, would include, among other things, verifying and/or challenging the statements made in any obtained declarations and/or reviewing obtained evidence.

Would the admission change to a denial if the RFA was limited only to non-customers? I presume not. If it would, though, this is something we would both benefit from clarity on now.

--



**Jeremy M. Glapion**
Partner

Glapion Law Firm
1704 Maxwell Drive
Wall, New Jersey 07719

Tel.: 732-455-9737

On Wed, Nov 20, 2024 at 8:49 PM, Ryan Watstein <Ryan@wtlaw.com> wrote:

Yep, and also, just so we're clear on an issue we discussed the other day: we admitted that NRS has contacted class members in our responses to RFAs because some of these folks are NRS customers. So of course NRS has had contact with some of them. Not because we (WT) are contacting them. The latter point is work product. I wanted the record to be clear on that point. And, as discussed, we don't see how Plaintiff would have a need to contact putative class members anyway. If Plaintiff had such a need, that would just show why individualized issues preclude class certification.

---

**From:** Patrick Fitzgerald <pfitzgerald@wtlaw.com>
**Date:** Wednesday, November 20, 2024 at 1:44 PM
**To:** Jeremy Glapion <jmg@glapionlaw.com>, Ryan Watstein <Ryan@wtlaw.com>
**Cc:** Jeffrey Brown <jeff@jgbrownlaw.com>
**Subject:** Re: Rule 72 objections

Understood.  We oppose.


**Patrick J. Fitzgerald (bio)**

WATSTEIN TEREPKA LLP

P: (404) 400-3382

pfitzgerald@wtlaw.com

www.wtlaw.com

---

**From:** Jeremy Glapion <jmg@glapionlaw.com>
**Date:** Wednesday, November 20, 2024 at 1:24 PM
**To:** Patrick Fitzgerald <pfitzgerald@wtlaw.com>, Ryan Watstein <Ryan@wtlaw.com>
**Cc:** Jeffrey Brown <jeff@jgbrownlaw.com>
**Subject:** Rule 72 objections

[Warning – external]

I assume our status report satisfies the necessary meet and confer on whether the Rule 72 objection to Judge Gilbert's issue is opposed or not, but let me know if you disagree. I have to file today.


Best,

Jeremy


--

**Jeremy M. Glapion**

Partner

Glapion Law Firm
1704 Maxwell Drive
Wall, New Jersey 07719

Tel.: 732-455-9737

---

**Ryan Watstein** <Ryan@wtlaw.com>                                    Thu, Nov 21, 2024 at 8:39 PM
To: Jeremy Glapion <jmg@glapionlaw.com>
Cc: Patrick Fitzgerald <pfitzgerald@wtlaw.com>, Jeffrey Brown <jeff@jgbrownlaw.com>

Agreed, not something we need to argue about now. That wasn't my intent. Was just noting why we admitted that RFA. As to your question below, that is not the subject of a pending RFA.

---

**From:** Jeremy Glapion <jmg@glapionlaw.com>
**Date:** Wednesday, November 20, 2024 at 8:54 PM
**To:** Ryan Watstein <Ryan@wtlaw.com>
**Cc:** Patrick Fitzgerald <pfitzgerald@wtlaw.com>, Jeffrey Brown <jeff@jgbrownlaw.com>
**Subject:** Re: Rule 72 objections

[Warning – external]

Thanks, Ryan. This isn't something we need to argue here. The need to contact putative class members, especially if NRS/WT has done so in connection with this litigation, would include, among other things, verifying and/or challenging the statements made in any obtained declarations and/or reviewing obtained evidence.

Would the admission change to a denial if the RFA was limited only to non-customers? I presume not. If it would, though, this is something we would both benefit from clarity on now.

Image removed by sender.

--

Image removed by sender.      | **Jeremy M. Glapion**
                                                  | [Quoted text hidden]

[Quoted text hidden]

---

**Jeremy Glapion** <jmg@glapionlaw.com>                               Thu, Nov 21, 2024 at 8:52 PM
To: Ryan Watstein <Ryan@wtlaw.com>
Cc: Patrick Fitzgerald <pfitzgerald@wtlaw.com>, Jeffrey Brown <jeff@jgbrownlaw.com>

Understood, but I will note that RFP 76 asks for production of documents related to that communication, and your response notes that you are withholding documents on work-product and attorney-client privilege.

I don't necessarily concede that work-product is applicable here.

More importantly, in the event that all of your communications with putative class members are strictly in connection with their business with NRS, there'd be nothing to protect or withhold. In the event that you are withholding responsive documents on grounds of privilege, however, I am entitled to a privilege log. Unlike previous occasions, I am unwilling to waive that here.

This is not something we need to deal with over email, but, in the event you disagree, we can treat this as my Rule 37 request for a meet-and-confer on this issue. I'm free tomorrow (at our previously scheduled time with the Court) or generally on Monday-Wednesday next week.

I also want to discuss the forthcoming Motion related to these communications, especially the timing of its filing to best accommodate your side's schedule.

--



**Jeremy M. Glapion**
Partner

Glapion Law Firm
1704 Maxwell Drive
Wall, New Jersey 07719

Tel.: 732-455-9737

On Thu, Nov 21, 2024 at 8:39 PM, Ryan Watstein <Ryan@wtlaw.com> wrote:

> Agreed, not something we need to argue about now. That wasn't my intent. Was just noting why we admitted that RFA. As to your question below, that is not the subject of a pending RFA.
>
> ---
>
> **From:** Jeremy Glapion <jmg@glapionlaw.com>
> **Date:** Wednesday, November 20, 2024 at 8:54 PM
> **To:** Ryan Watstein <Ryan@wtlaw.com>
> **Cc:** Patrick Fitzgerald <pfitzgerald@wtlaw.com>, Jeffrey Brown <jeff@jgbrownlaw.com>
> **Subject:** Re: Rule 72 objections
>
> [Warning – external]
>
> Thanks, Ryan. This isn't something we need to argue here. The need to contact putative class members, especially if NRS/WT has done so in connection with this litigation, would include, among other things, verifying and/or challenging the statements made in any obtained declarations and/or reviewing obtained evidence.
>
> Would the admission change to a denial if the RFA was limited only to non-customers? I presume not. If it would, though, this is something we would both benefit from clarity on now.
>
> [Quoted text hidden]
> [Quoted text hidden]

---

**Ryan Watstein** <Ryan@wtlaw.com>                                    Thu, Nov 21, 2024 at 9:26 PM
To: Jeremy Glapion <jmg@glapionlaw.com>
Cc: Patrick Fitzgerald <pfitzgerald@wtlaw.com>, Jeffrey Brown <jeff@jgbrownlaw.com>

How is 4:30 tomorrow?

---

**From:** Jeremy Glapion <jmg@glapionlaw.com>
**Date:** Thursday, November 21, 2024 at 8:53 PM
**To:** Ryan Watstein <Ryan@wtlaw.com>

**Cc:** Patrick Fitzgerald <pfitzgerald@wtlaw.com>, Jeffrey Brown <jeff@jgbrownlaw.com>
**Subject:** Re: Rule 72 objections

[Warning – external]

Understood, but I will note that RFP 76 asks for production of documents related to that communication, and your response notes that you are withholding documents on work-product and attorney-client privilege.

I don't necessarily concede that work-product is applicable here.

More importantly, in the event that all of your communications with putative class members are strictly in connection with their business with NRS, there'd be nothing to protect or withhold. In the event that you are withholding responsive documents on grounds of privilege, however, I am entitled to a privilege log. Unlike previous occasions, I am unwilling to waive that here.

This is not something we need to deal with over email, but, in the event you disagree, we can treat this as my Rule 37 request for a meet-and-confer on this issue. I'm free tomorrow (at our previously scheduled time with the Court) or generally on Monday-Wednesday next week.

I also want to discuss the forthcoming Motion related to these communications, especially the timing of its filing to best accommodate your side's schedule.

Image removed by sender.

--

Image removed by sender. | **Jeremy M. Glapion**
[Quoted text hidden]

[Quoted text hidden]

---

**Jeremy Glapion** <jmg@glapionlaw.com>                          Thu, Nov 21, 2024 at 10:07 PM
To: Ryan Watstein <Ryan@wtlaw.com>
Cc: Patrick Fitzgerald <pfitzgerald@wtlaw.com>, Jeffrey Brown <jeff@jgbrownlaw.com>

Works for me. I'll circulate something shortly. Thanks for accommodating.

--

 | **Jeremy M. Glapion**
Partner

Glapion Law Firm
1704 Maxwell Drive
Wall, New Jersey 07719

Tel.: 732-455-9737

On Thu, Nov 21, 2024 at 9:26 PM, Ryan Watstein <Ryan@wtlaw.com> wrote:

How is 4:30 tomorrow?

**From:** Jeremy Glapion <jmg@glapionlaw.com>
**Date:** Thursday, November 21, 2024 at 8:53 PM
**To:** Ryan Watstein <Ryan@wtlaw.com>
**Cc:** Patrick Fitzgerald <pfitzgerald@wtlaw.com>, Jeffrey Brown <jeff@jgbrownlaw.com>
**Subject:** Re: Rule 72 objections

[Warning – external]

Understood, but I will note that RFP 76 asks for production of documents related to that communication, and your response notes that you are withholding documents on work-product and attorney-client privilege.

I don't necessarily concede that work-product is applicable here.

More importantly, in the event that all of your communications with putative class members are strictly in connection with their business with NRS, there'd be nothing to protect or withhold. In the event that you are withholding responsive documents on grounds of privilege, however, I am entitled to a privilege log. Unlike previous occasions, I am unwilling to waive that here.

This is not something we need to deal with over email, but, in the event you disagree, we can treat this as my Rule 37 request for a meet-and-confer on this issue. I'm free tomorrow (at our previously scheduled time with the Court) or generally on Monday-Wednesday next week.

I also want to discuss the forthcoming Motion related to these communications, especially the timing of its filing to best accommodate your side's schedule.

[Quoted text hidden]
[Quoted text hidden]

# EXHIBIT C

                                    Jeremy Glapion <jmg@glapionlaw.com>

## NRS Marketing
4 messages

**Jeremy Glapion** <jmg@glapionlaw.com>                    Thu, Aug 22, 2024 at 11:33 AM
To: michael@sellingsavvy.com

Hi Michael:

I hope this email finds you well. Sorry to reach back into your past life at NRS, but I am in an attorney in New Jersey with a pending lawsuit against NRS for unwanted telephone calls. Your name came up in a deposition as someone who used to oversee this particular program that resulted in the calls.

You're not a defendant (or potential defendant, as far as I know), but I did want to discuss a bit, if it made sense to do so.

Let me know!

Best,
Jeremy Glapion

--

   **Jeremy M. Glapion**
Partner

Glapion Law Firm
1704 Maxwell Drive
Wall, New Jersey 07719

Tel.: 732-455-9737

---

**Jeremy Glapion** <jmg@glapionlaw.com>                    Mon, Aug 26, 2024 at 10:07 AM
To: michael@sellingsavvy.com

Hi Michael:

Following up on this! Hope you had a good weekend.

--

   **Jeremy M. Glapion**
Partner

Glapion Law Firm
1704 Maxwell Drive
Wall, New Jersey 07719

Tel.: 732-455-9737

[Quoted text hidden]

---

**Jeremy Glapion** <jmg@glapionlaw.com>                    Mon, Oct 7, 2024 at 10:39 AM
To: michael@sellingsavvy.com

Hi Michael:

Following up one more time. Its important that I get to discuss this case with you and I hate surprising people with subpoenas. Let me know!

Best,
Jeremy

--



**Jeremy M. Glapion**
Partner

Glapion Law Firm
1704 Maxwell Drive
Wall, New Jersey 07719

Tel.: 732-455-9737

On Thu, Aug 22, 2024 at 11:33 AM, Jeremy Glapion <jmg@glapionlaw.com> wrote:
[Quoted text hidden]

---

**Jeremy Glapion** <jmg@glapionlaw.com>                                    Mon, Oct 7, 2024 at 3:57 PM
To: michael@sellingsavvy.com

Hi Michael:

Pleasure speaking with you earlier.

Just to confirm our conversation:

- I told you I was reaching out because your name had come up (as recently as July 2023) as associated with ringless voicemails VoiceLogic made for NRS
- You told me high level information of your own volition, but I insisted that we wait until we are on the record to explore those issues.
- At no point did I coach you, tell you what to say, or feed you any information or accuse you of any personal wrongdoing.
- You agreed to accept service of a subpoena for your deposition via email.

Can you confirm this is accurate?

I have also reached out to NRS' attorneys to see if they have any availability the week of 10/21. Can you confirm yours that week, if any?

Best,
Jeremy

--



**Jeremy M. Glapion**
Partner

Glapion Law Firm
1704 Maxwell Drive
Wall, New Jersey 07719

Tel.: 732-455-9737

[Quoted text hidden]

# EXHIBIT D

 Jeremy Glapion <jmg@glapionlaw.com>

---

## Walston v. NRS - Discovery Items (September 30)

**Jeremy Glapion** <jmg@glapionlaw.com>                                    Mon, Oct 7, 2024 at 3:29 PM
To: Patrick Fitzgerald <pfitzgerald@wtlaw.com>
Cc: Ryan Watstein <Ryan@wtlaw.com>, Jeffrey Brown <jeff@jgbrownlaw.com>

Counsel:

I wanted to check in on Rui and Elie's depositions, and tee up one other item:

I intend to take the deposition of Michael Hellerman. I have not yet issued the subpoena (which I will do via email, at Mr. Hellerman's request), but I will do so this week and provide you a copy before I do. I do not believe this will be a particularly lengthy deposition, but I wanted to get a sense of your availability the week of 10/21. I will conduct this deposition remotely.

Best,
Jeremy

--

 **Jeremy M. Glapion**
Partner

Glapion Law Firm
1704 Maxwell Drive
Wall, New Jersey 07719

Tel.: 732-455-9737

[Quoted text hidden]

 **Gmail**

**Jeremy Glapion <jmg@glapionlaw.com>**

---

## Walston v. NRS - Discovery Items (September 30)

---

**Patrick Fitzgerald** <pfitzgerald@wtlaw.com>
To: Jeremy Glapion <jmg@glapionlaw.com>
Cc: Ryan Watstein <Ryan@wtlaw.com>, Jeffrey Brown <jeff@jgbrownlaw.com>

Tue, Oct 8, 2024 at 8:35 PM

Hi Jeremy,

I'm going to be out of the office the first half of that week. We represent Michael and will ask him about his availability during the second half of that week.

As for Rui and Elie: We're still waiting on the former, but Elie's provider said he's unable to sit for a deposition in his current state. We've attached that letter here. Hopefully, Michael can speak to some of these issues or we can look into taking the deposition by written questions.

**Patrick J. Fitzgerald ([bio](#))**
WATSTEIN TEREPKA LLP
P: (404) 400-3382
pfitzgerald@wtlaw.com
www.wtlaw.com

 **Jeremy Glapion <jmg@glapionlaw.com>**

---

## Walston v. NRS - Discovery Items (September 30)

**Jeremy Glapion** <jmg@glapionlaw.com>                                      Tue, Oct 8, 2024 at 10:52 PM
To: Patrick Fitzgerald <pfitzgerald@wtlaw.com>
Cc: Ryan Watstein <Ryan@wtlaw.com>, Jeffrey Brown <jeff@jgbrownlaw.com>

Pat:

According to Michael as of yesterday, not only do you not represent him, he has never heard of you. I specifically asked, to ensure I was not communicating with a represented party, 1) if he was represented or 2) if he had heard of either of you, Ryan, or your firm by name. He also had no desire to retain counsel, and instead was eager to discuss this.

Michael also has not worked for NRS for four years.

Can you clarify how this came about? Can you please produce your representation agreement with Michael?

Best,
Jeremy

--



**Jeremy M. Glapion**
Partner

Glapion Law Firm
1704 Maxwell Drive
Wall, New Jersey 07719

Tel.: 732-455-9737

 Jeremy Glapion <jmg@glapionlaw.com>

---

## Walston v. NRS - Discovery Items (September 30)

---

**Jeremy Glapion** <jmg@glapionlaw.com>                                       Thu, Oct 10, 2024 at 3:38 PM
To: Patrick Fitzgerald <pfitzgerald@wtlaw.com>
Cc: Ryan Watstein <Ryan@wtlaw.com>, Jeffrey Brown <jeff@jgbrownlaw.com>

Pat:

I am following up on this again, not only because of the obvious optics, but because I need to issue my subpoena. Michael claimed you do not represent him. You claim you do. This is a first for me, and I'm not sure whose word controls here.

Can you please produce your representation agreement with Michael? I will happily treat this as confidential under our protective order.

--



**Jeremy M. Glapion**
Partner

Glapion Law Firm
1704 Maxwell Drive
Wall, New Jersey 07719

Tel.: 732-455-9737

[Quoted text hidden]



Jeremy Glapion <jmg@glapionlaw.com>

---

## Walston v. NRS - Discovery Items (September 30)

**Patrick Fitzgerald** <pfitzgerald@wtlaw.com>                    Thu, Oct 10, 2024 at 6:50 PM
To: Jeremy Glapion <jmg@glapionlaw.com>
Cc: Ryan Watstein <Ryan@wtlaw.com>, Jeffrey Brown <jeff@jgbrownlaw.com>


We have represented Michael since August 16.  He was under the impression that you represented NRS, which is the only reason he spoke with you.  See attached.  Had you asked before reaching out to a former NRS employee, whose interests are potentially adverse to your client, we would have told you as much. We reserve the right to raise this issue with the Court, including its impact on the pending motion to compel.  In the interim, you are obviously not to contact Michel further or any other former NRS employee without asking us first if they are represented.

In any event, it appears we misunderstood the scope of Michael's involvement in the ringless voicemail program.  Michael left NRS months after the company first reached out to VoiceLogic and has no recollection of NRS sending ringless voicemails during his tenure.  As such, we don't see how his deposition is necessary or proportionate.


**Patrick J. Fitzgerald (bio)**
WATSTEIN TEREPKA LLP
P: (404) 400-3382
pfitzgerald@wtlaw.com
www.wtlaw.com



Jeremy Glapion <jmg@glapionlaw.com>

---

## Walston v. NRS - Discovery Items (September 30)

**Jeremy Glapion** <jmg@glapionlaw.com>                                                    Thu, Oct 10, 2024 at 7:00 PM
To: Patrick Fitzgerald <pfitzgerald@wtlaw.com>
Cc: Ryan Watstein <Ryan@wtlaw.com>, Jeffrey Brown <jeff@jgbrownlaw.com>

Per Mr. Hellerman's own declaration, you solicited him.

Further, attached please find a screenshot of my initial email to Mr. Hellerman, in which I made it clear my lawsuit was against NRS. I will forward the remainder when I am at my PC.

Finally, whether or not ringless voicemails were or were not initiated while Mr. Hellerman was there, it is indisputable that the seeds of the program began during his tenure, and understanding the origin of that program and its purpose are relevant to my case. He was also listed as the point of contact in the July 2023 campaign.

--



**Jeremy M. Glapion**
Partner

Glapion Law Firm
1704 Maxwell Drive
Wall, New Jersey 07719

Tel.: 732-455-9737

 **Jeremy Glapion <jmg@glapionlaw.com>**

## Walston v. NRS - Discovery Items (September 30)

**Ryan Watstein** <Ryan@wtlaw.com>                                        Thu, Oct 10, 2024 at 7:56 PM
To: Jeremy Glapion <jmg@glapionlaw.com>, Patrick Fitzgerald <pfitzgerald@wtlaw.com>
Cc: Jeffrey Brown <jeff@jgbrownlaw.com>

Jeremy,

You are way off base here. In every other similar instance, Plaintiff's counsel has always reached out to us to see if we represent a former employee. You didn't do that here. Instead, you sent an email that didn't disclose your potential adversity to Mr. Hellerman and that he apparently didn't even respond to. Then you called the guy two months later. He was understandably confused about who you were, as he's sworn under oath. It's clear at this point that you don't think the rules and norms apply to you.

In any event, it's clear from our conversation with him yesterday that he simply doesn't have any relevant information and that a deposition would be a waste of time and money. Please let us know when you are available to confer about your request to depose Mr. Hellerman.

Thanks,

-Ryan

**Ryan D. Watstein (bio)**

WATSTEIN TEREPKA LLP

P: 404-782-0695

ryan@wtlaw.com

www.wtlaw.com

 **Jeremy Glapion <jmg@glapionlaw.com>**

---

## Walston v. NRS - Discovery Items (September 30)

---

**Jeremy Glapion** <jmg@glapionlaw.com>                                        Thu, Oct 10, 2024 at 8:02 PM
To: Ryan Watstein <Ryan@wtlaw.com>
Cc: Patrick Fitzgerald <pfitzgerald@wtlaw.com>, Jeffrey Brown <jeff@jgbrownlaw.com>

He called me. Can you please make sure you get your facts in order before accusing me of wrongdoing (rather than shoot first ask questions later)?

--

 **Jeremy M. Glapion**
Partner

Glapion Law Firm
1704 Maxwell Drive
Wall, New Jersey 07719

Tel.: 732-455-9737



**Jeremy Glapion <jmg@glapionlaw.com>**

## Walston v. NRS - Discovery Items (September 30)

**Ryan Watstein** <Ryan@wtlaw.com>                                          Thu, Oct 10, 2024 at 8:07 PM
To: Jeremy Glapion <jmg@glapionlaw.com>
Cc: Patrick Fitzgerald <pfitzgerald@wtlaw.com>, Jeffrey Brown <jeff@jgbrownlaw.com>

Two months after you sent an email?

 **Jeremy Glapion** <jmg@glapionlaw.com>

---

## Walston v. NRS - Discovery Items (September 30)

**Jeremy Glapion** <jmg@glapionlaw.com>                                    Thu, Oct 10, 2024 at 8:49 PM
To: Ryan Watstein <Ryan@wtlaw.com>
Cc: Patrick Fitzgerald <pfitzgerald@wtlaw.com>, Jeffrey Brown <jeff@jgbrownlaw.com>

Ryan:

This is truly exhausting. I have no interest in further engagement in the mudslinging.

This is all I'll say on this topic tonight.

1. Please see attached the full scope of my correspondence with Michael. I contacted him via email on August 22, three days after Diana Stern made clear that Mr. Hellerman had relevant information. I made clear that I was an attorney with a case *against* NRS. I followed up again on August 26. On October 7, I followed up once more.

2. In response to this October 7 email, he called me. After our call concluded, I emailed once again to memorialize the main points of our call.

3. Your claim that you've represented Michael since August 16 makes little sense, and I'd again ask that you produce your representation agreement with Mr. Hellerman.

4. I intend to subpoena Mr. Hellerman's deposition. As a courtesy, and out of an abundance of caution, and without waiver of any arguments related to the propriety of your representation of Mr. Hellerman, I will issue this subpoena to you.

5. If you choose to refuse to produce Mr. Hellerman in response to this subpoena, we can confer at that time.

6. In Mr. Hellerman's declaration, he makes it clear that Pat solicited him and induced him to retain your firm with legal representation paid for by someone else. Notwithstanding the conflict of interest, this is a clear and admitted violation of the RPC. What am I missing on this front?

7. Finally, with regard to Pat's instruction "you are not to contact … any other former NRS employee without asking us first", there is no basis for this instruction. I will treat it accordingly.

Thank you for your prompt attention to these issues.

Best,
Jeremy

--

 **Jeremy M. Glapion**
Partner

Glapion Law Firm
1704 Maxwell Drive
Wall, New Jersey 07719

Tel.: 732-455-9737

 Gmail                                          **Jeremy Glapion <jmg@glapionlaw.com>**

---

## Walston v. NRS - Discovery Items (September 30)

**Jeremy Glapion** <jmg@glapionlaw.com>                    Mon, Oct 14, 2024 at 2:04 PM
To: Patrick Fitzgerald <pfitzgerald@wtlaw.com>
Cc: Ryan Watstein <Ryan@wtlaw.com>, Jeffrey Brown <jeff@jgbrownlaw.com>

Counsel:

I hope you had a good weekend. Following up again on the below items:

1. Amendment to RFP 51.
2. Acceptable accommodations for Rui.
3. Status of rolling production.
4. Production of Mr. Hellerman's representation agreement.
5. Mr. Hellerman's deposition.

Thank you.

Best,
Jeremy

--

   **Jeremy M. Glapion**
Partner

Glapion Law Firm
1704 Maxwell Drive
Wall, New Jersey 07719

Tel.: 732-455-9737

 **Jeremy Glapion <jmg@glapionlaw.com>**

---

## Walston v. NRS - Discovery Items (September 30)

**Patrick Fitzgerald** <pfitzgerald@wtlaw.com>                                    Tue, Oct 15, 2024 at 8:31 PM
To: Jeremy Glapion <jmg@glapionlaw.com>
Cc: Ryan Watstein <Ryan@wtlaw.com>, Jeffrey Brown <jeff@jgbrownlaw.com>

Jeremy,

Addressing the points in this email:

First, regarding the rolling production, please see this link to our latest production, attached.  The password
is █████████████          Let us know if you have trouble accessing.

We will have the amendment to RFP No. 51 shortly, hopefully this week.

Regarding Rui's deposition: his neurologist provided the attached letter, but he didn't specify what accommodations he
would need.  We are following up for more guidance.

Regarding your claim that we improperly "solicited" Michael, that is preposterous. Rule 7.3 regulates certain live
solicitation "significantly" motivated by "the *lawyer's or law firm's* pecuniary gain[.]" We offered to represent Michael
because he is a former employee of our client, not because Watstein Terepka was looking for new business.  *See,
e.g.*, *Sullivan v. Saint-Gobain Performance Plastics Corp.*, 2018 WL 11321826, at *2 (D. Vt. Dec. 28, 2018) (collecting
cases and opinions that contacting a former employee and offering to represent them is commonplace and doesn't violate
Rule 7.3).  In fact, representing Michael *should* lead to *less* legal work for our firm, not more.  Pecuniary gain
had nothing to do with it.

Moreover, there is no *potential* (much less actual) conflict between Michael and NRS.  As Michael mentioned in his
statement, he had very little to do with the ringless voicemail campaign.  But even if he was more intimately involved, his
interests would still be aligned with NRS and our representing him in a deposition arising out of his employment would be
proper.  *See, e.g.*, *Sullivan*, 2018 WL 11321826, at *4 ("[N]othing in the rules prohibits concurrent representation of an
employer and its present or former employees, and such representation has been recognized as an appropriate practice
by this court and others."). Again, this type of concurrent representation is commonplace, as I'm sure you know.

As to your questions about any engagement letter with Michael, you are not entitled to that information. We
are not class counsel with an adequacy burden; you are. That you are even raising this issue is nothing but
a harassment tactic, and you know it. We ask that you stop trying to deflect from your own misconduct.

Relatedly, Michael doesn't have any specific recollection of the ringless voicemail campaign, which isn't surprising given
he left four months after NRS first reached out to VoiceLogic.  We expect a deposition, especially an in-person one, will be
a waste of everyone's time.  Nevertheless, we can discuss this further tomorrow, either before or after the hearing.

[Quoted text hidden]

---

**2 attachments**

 **VOL002 (2).zip**
14176K

 **Rui DaCosta.pdf**
458K

 **Gmail**                                                     Jeremy Glapion <jmg@glapionlaw.com>

## Walston v. NRS - Discovery Items (September 30)

**Jeremy Glapion** <jmg@glapionlaw.com>                         Tue, Oct 15, 2024 at 8:37 PM
To: Patrick Fitzgerald <pfitzgerald@wtlaw.com>
Cc: Ryan Watstein <Ryan@wtlaw.com>, Jeffrey Brown <jeff@jgbrownlaw.com>

I will once again disregard your mudslinging and insults and ask that you stop the same.

Regarding Michael's deposition: I am willing to conduct a Rule 37 conference on Michael but any attempt to hinder or interfere with my ability to talk to Michael will result in Motion practice, including potentially a motion to disqualify your representation of Michael (if that even exists).

Given Michael's representation to me on the phone, I am skeptical that you actually represented him at the time you informed me you did. If you're not willing to produce even a redacted representation agreement, I will assume this is accurate.

--



**Jeremy M. Glapion**
Partner

Glapion Law Firm
1704 Maxwell Drive
Wall, New Jersey 07719

Tel.: 732-455-9737

# EXHIBIT E

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| RASHAD WALSTON, on behalf of himself and all others similarly situated, | : : : | Case No. 1:24-cv-00083 |
| Plaintiff, | : : | |
| v. | : : | |
| NATIONAL RETAIL SOLUTIONS, INC. D/B/A NRS PAY, | : : : | |
| Defendant. | : | |

_____/

## <u>DECLARATION OF MICHAEL HELLERMAN</u>

1.      My name is Michael Hellerman.  I am over the age of 18 years and competent to give this declaration.

2.      I was an employee of National Retail Solutions, Inc. from May 2018 until April 2020.  In that role, I was briefly involved in NRS's efforts to retain VoiceLogic, including a brief phone call with a VoiceLogic representative.

3.      I do not recall NRS initiating a ringless voicemail campaign during my tenure at the company.

4.      On August 16, 2024, counsel for NRS, Patrick Fitzgerald of Watstein Terepka LLP, contacted me and advised that NRS would pay for the firm to represent me in connection with this matter.  I agreed to that representation.

5.      On October 7, 2024, counsel for Plaintiff Rashad Walston, Jeremy Glapion, contacted me about this matter.  Because of the way Mr. Glapion presented himself, I mistakenly believed that Mr. Glapion represented NRS and assumed he was NRS's counsel.

I told Mr. Glapion that I did not recall NRS initiating a ringless voicemail campaign during my time at the company.

6.      Had I realized Mr. Glapion represented a party adverse to NRS, and potentially adverse to me, I would have told him that I was represented by counsel and declined to speak with him.

7.      I confirm that I want Watstein Terepka to continue representing me in this matter.

Executed on October 10, 2024 in New Jersey.


_____
Michael Hellerman

# EXHIBIT F

Page 1

1                    UNITED STATES DISTRICT COURT
                     NORTHERN DISTRICT OF ILLINOIS.
2                    CIVIL CASE NO. 24-cv-83

3
                                     :
4    RASHAD WALSTON, on behalf       :
     of himself and all others       :
5    similarly situated,             :   DEPOSITION UPON
                                     :   ORAL EXAMINATION
6         Plaintiffs,                :        OF
                                     :   MICHAEL HELLERMAN
7    V.                              :
                                     :
8    NATIONAL RETAIL                 :
     SOLUTIONS, INC. D/B/A NRS       :
9    PAY,                            :
                                     :
10        Defendant.                 :
                                     :
11                                   :
     ------------------------    X
12
13              TRANSCRIPT of the stenographic notes of
14   the proceedings in the above-entitled matter, as
15   taken by and before ELLEN J. GODINO, CCR, RPR, CRCR,
16   held via ZOOM VIDEOCONFERENCE from various locations,
17   with the witness located at 255 Thompkins Avenue,
18   Brooklyn, New York, on Thursday, November 14, 2024,
19   commencing at 9:30 a.m.
20
21
22
23
24
25

1       A.    No.  You sent me an email that

2  requested I make a phone call.

3       Q.    And in terms of the actual phone call,

4  who initiated that phone call?

5       A.    I did.

6       Q.    On that phone call, do you recall the

7  substance of the conversation that we had?

8       A.    Not really.

9       Q.    Do you recall on that -- whether I

10  asked if you were represented by counsel?

11       A.    I don't remember specifically, no.

12       Q.    Do you recall if I asked if you knew

13  the name Ryan Watstein?

14       A.    I don't remember you asking me that,

15  no.

16       Q.    Do you recall if I asked if you knew

17  the name Patrick Fitzgerald?

18       A.    No, I don't recall that from the

19  conversation.

20       Q.    Do you recall if I asked if you had

21  heard of Watstein Terepka?

22       A.    No, I don't remember that either.

23       Q.    I know a lot of these will seem

24  repetitive; it's just, you know, there's a million

25  different ways to ask things, so I just want to make

```
 1    sure.

 2         A.    Sure.

 3         Q.    Bear with me.  Were you represented by

 4    counsel at the time of that phone call?

 5               MR. FITZGERALD:  Objection.

 6         A.    No.

 7         Q.    And are you represented by counsel

 8    right now?

 9               MR. FITZGERALD:  Objection.

10         Q.    You can answer.

11         A.    Oh, although he objected, I can answer?

12               MR. FITZGERALD:  Yeah, you can answer

13    unless I instruct you not to answer.

14         A.    I think I am.

15         Q.    And just to be clear, and I know -- I

16    assume that Pat is objecting to the extent anything

17    is going to get into privilege.  I don't want you to

18    tell me any conversations between you and any of

19    your attorneys.  So if anything is eliciting that,

20    take a second; because my focus is just more on --

21    is not on the conversation, because there's a

22    privilege there that I'm not trying to get involved

23    with.

24         A.    Okay.

25         Q.    But are you represented by counsel
```

1    right now?

2            A.      Yes.

3            Q.      Who is your counsel?

4            A.      Pat Fitzgerald.

5            Q.      Are you paying for Mr. Fitzgerald's

6    representation?

7            A.      I am not.

8            Q.      How did that representation come about,

9    without getting into the substance of any

10   conversation between you and Mr. Fitzgerald, how did

11   that representation come about?

12           A.      He reached out to me.

13           Q.      And at the time he reached out to you,

14   had you been looking for counsel?

15           A.      I was not.

16           Q.      Have you been represented by counsel in

17   any previous lawsuits?

18           A.      In my lifetime?

19           Q.      In your lifetime, have you hired an

20   attorney?

21           A.      Of course, sure.

22           Q.      Do you have an attorney that you

23   typically go to for legal matters?

24           A.      No, not like a family or personal

25   attorney?  My wife.

Page 10

1          Q.     Was your wife involved at all in
2      retaining Mr. Fitzgerald?
3          A.     No.
4          Q.     Do you have a sense of whether
5      Mr. Fitzgerald is being paid for your
6      representation?
7          A.     No idea.
8          Q.     When you mentioned before that
9      Mr. Fitzgerald reached out to you, without getting
10     into the substance of that conversation, how did he
11     reach out to you?
12                MR. FITZGERALD:  Objection.
13         A.     I believe initially an email.
14         Q.     Was there any telephonic communication?
15         A.     I don't believe so, not initially.
16         Q.     Have you signed an agreement with
17     Mr. Fitzgerald for your representation?
18                MR. FITZGERALD:  Objection.
19         A.     You know, I honestly don't remember.
20         Q.     Have you signed an agreement with any
21     attorney in connection with this deposition?
22         A.     No.
23         Q.     Have you signed an agreement with any
24     attorney in connection with the pending lawsuit that
25     my client has against National Retail Solutions?

Page 11

1          A.      No.

2          Q.      Give me one second.

3                  Did you execute a declaration in

4     connection with this matter?

5          A.      Can you expand on that for me?

6          Q.      Sure.  A declaration being a document

7     called "Declaration of Michael Hellerman" which

8     lists various paragraphs of under oath or sworn

9     statements.  Do you recall executing something like

10    that?

11         A.      I'm a terrible witness; I don't

12    remember.

13         Q.      It's completely okay.  I understand it

14    can be a stressful process, and things fly out of

15    your memory.  Especially if you have young kids, I

16    get it.

17         A.      Young kids, a couple of businesses, you

18    know, all that.

19         Q.      I completely understand.

20                 Well, actually backing up to our

21    conversation, did you at all feel that I deceived

22    you in any way about my role in this case?

23         A.      No.  I didn't understand it.  When we

24    spoke, I really didn't understand the relationship

25    or what was -- what transpired.

Page 15

```
 1    see the new document, "Declaration of Michael

 2    Hellerman"?  Is that showing up?

 3              MR. FITZGERALD:  I see it.

 4         Q.    Do you see it, Michael?

 5         A.    I do.

 6         Q.    I'm going to scroll down.  Is that your

 7    signature?

 8         A.    It is.

 9         Q.    Do you recall executing this document?

10         A.    I do now.

11         Q.    And in this document, you wrote -- or

12    you testified in this declaration that "Counsel for

13    NRS, Patrick Fitzgerald, contacted me and advised

14    that NRS would pay for the firm to represent me in

15    connection with this matter."

16              Do you see that, in Paragraph 4?

17         A.    Yes.

18         Q.    Is that accurate?

19         A.    Yeah.

20         Q.    And is that your understanding of --

21    excuse me, is your understanding that Mr. Fitzgerald

22    is paid by NRS for your representation?

23              MR. FITZGERALD:  Objection.

24         A.    Yes.

25         Q.    And in paragraph 5, you -- it states,
```

Page 19

1    in your declaration, that you assumed I was NRS's

2    counsel.  Because so far, I --

3              A.    Jeremy, go back to the email that I

4    read.

5              Q.    Correct.

6              A.    I didn't read the previous emails, I

7    only read the one that said, "hey," right?

8              Q.    And I understand that.  And I'm not --

9    I am trying to -- is there anything that I did that

10   you can recall that gave you the impression that I

11   was NRS's counsel?

12             A.    No, not specifically, no.

13             Q.    So the assumption that you made that I

14   was NRS's counsel was based on what?

15             A.    I'm guessing based on vagueness.

16             Q.    Did you write this declaration?

17             A.    No.

18             Q.    Did you make any changes to this

19   declaration?

20             A.    No.

21             Q.    Do you understand who wrote this

22   declaration?

23             A.    Yeah.

24             Q.    Who wrote this declaration?

25             A.    The attorneys representing me and NRS.

Page 20

1        Q.     And do you understand when -- do you

2 know when you first saw this declaration?

3        A.     Go to the page above it.  Is it dated?

4        Q.     It looks like it was executed, it was

5 executed on October 10th?

6        A.     That's the day I saw it.

7        Q.     Is it your testimony then that you

8 signed it the same day you saw it?

9        A.     Correct.

10        Q.     Are you good?

11        A.     Yeah, yeah.  Just my lack of headphone

12 thing was frustrating, but whatever.

13        Q.     Your camera also keeps blurring you out

14 and everyone else.  But it's okay, we're not being

15 recorded, so it's totally fine.

16        You also signed -- you signed this

17 declaration that also states, "Had I realized

18 Mr. Glapion represented a party adverse to NRS, I

19 would have told him that I was represented by

20 counsel and declined to speak with him."

21        Do you see that?

22        A.     Yes.

23        Q.     What counsel were you represented by at

24 the time of our phone call?

25        A.     I was not.

Page 41

```
 1        A.      Absolutely.
 2        Q.      So I just want to clarify, going back
 3   to our initial conversations, and whether you were
 4   represented by counsel or not.  So just to be
 5   perfectly clear, on our phone call you were not
 6   represented by counsel.  Is that correct?
 7        A.      That's right.
 8        Q.      And did you, at any point subsequent to
 9   that, sign any sort of representation or engagement
10   agreement with any attorney?
11             MR. FITZGERALD:  Objection.
12        A.      The only thing I signed was the piece
13   of paper you showed me.
14        Q.      So your understanding of Mr. Fitzgerald
15   being your attorney comes -- can you explain -- how
16   is he your attorney, I guess is my question?
17             MR. FITZGERALD:  Objection.
18        A.      Doesn't the document basically say that
19   Mr. Fitzgerald represents NRS.  When I was an
20   employee at the time, I would be represented under
21   their -- under their counsel.
22        Q.      So as of -- and I think this is
23   hopefully an easy one, but we spoke on October --
24   you and I spoke on October 7th for -- in terms of --
25   our phone call was October 7th.  Does that match
```

1    your recollection?

2         A.    I wouldn't know the specific date, but

3    okay.

4         Q.    I'm just -- I'll throw this back up,

5    just because -- you know what, I won't bother.

6              On October 7th, were you represented by

7    counsel?

8              MR. FITZGERALD:   Objection.

9         A.    I believe that's when I signed that

10   declaration, October 7th, wasn't it?

11        Q.    I can't testify for you, but the date

12   on the declaration is October 10th.

13        A.    Yes.   So I retained counsel I guess, if

14   that's how you would refer to it, on the 10th.

15        Q.    And were you represented by counsel on

16   August 16th?

17             MR. FITZGERALD:   Objection.

18        A.    No.

19        Q.    And you are not paying anything for

20   counsel.  Is that what you testified before?

21        A.    Correct.

22        Q.    Would you have retained counsel for

23   this if you had to pay for counsel?

24        A.    No.

25        Q.    On the phone call that we had, at any

Page 44

1                True or false, you were an employee of

2   National Retail Solutions until April 2020?

3        A.     Actually, it was till March.

4        Q.     So that would be false?

5        A.     Yeah, that's false.

6        Q.     And you were involved in NRS's efforts

7   to retain VoiceLogic.  Is that true or false?

8            MR. FITZGERALD:  Objection.

9        A.     That's false.

10       Q.     Because of the way I, Jeremy Glapion,

11  presented myself, you mistakenly believed that I

12  represented NRS.  Is that true or false?

13       A.     True.

14       Q.     Can you elaborate on how I presented

15  myself that would have made you think I represented

16  NRS?

17       A.     I just think I didn't understand.

18       Q.     But what I'm trying to get at is the

19  first part of that, because of the way I presented

20  myself you believed I represented NRS?

21       A.     I just believe it was a little vague.

22       Q.     Did I, at any point, say that I

23  represented NRS?

24       A.     Oh, probably not.

25       Q.     Did I explain to you that I was

Page 45

1    interested in learning about NRS's phone calls?

2         A.    No.

3         Q.    And when you say it was vague, can you

4    elaborate on what was vague about our conversations?

5         A.    I understood it to mean that -- not

6    that to "mean," but that you were an attorney, for

7    lack of better terminology, involved in a lawsuit

8    between whoever the plaintiff is and NRS.

9         Q.    So I just want to be very clear on

10   this, because it's a significant sort of allegation

11   in the legal and ethics space --

12        A.    Yeah.

13        Q.    If I were to have deceived you into

14   thinking I represented NRS.  That's why I'm drilling

15   down on this --

16        A.    That's fine.  I don't believe that you

17   deceived me.  I just believe that I didn't quite

18   understand.

19        Q.    So --

20        A.    There's a difference.

21        Q.    And I appreciate that.

22              So was it anything that I said that

23   made you believe that I represented NRS?

24              MR. FITZGERALD:  Objection.

25        A.    I can't point to anything specifically,

Page 46

1    no.
2         Q.      Was there anything I did that made you
3    believe I represented NRS?
4         A.      No.
5              MR. FITZGERALD:  Objection.
6         Q.      Is it true that you assumed that I was
7    NRS's attorney?
8         A.      Yes.
9         Q.      So a moment ago, you testified that you
10   understood our conversation to mean that I was an
11   attorney involved in a lawsuit between whoever the
12   plaintiff is, and NRS.  Is that accurate?
13        A.      Yes.
14        Q.      But you're also now testifying that you
15   assumed that I was NRS's counsel.  Is that correct?
16        A.      Yes, when I say "an attorney involved
17   in," I didn't say who you represented.
18        Q.      So can you clarify what made you assume
19   that I was NRS's counsel, rather than the
20   plaintiff's counsel?
21        A.      I honestly -- I can't give you a
22   specific.
23        Q.      That was your own independent
24   assumption.  Is that fair?
25        A.      Correct.

Page 49

```
1    here.  The document that we just discussed was dated
2    October 10th.  Do you remember that?
3            A.    Yes.
4            Q.    And that was the date that you are
5    testifying that you first became represented by
6    counsel.  Correct?
7            A.    Yes.
8            Q.    And my question was, if an attorney
9    told me they represented you in connection with this
10   case since August 16th, is that accurate?
11           A.    No.  I might have had conversations,
12   but I didn't retain anybody, agree with anybody.  I
13   didn't.
14           Q.    I believe we talked before that you and
15   Mr. Fitzgerald spoke on the phone on August 16,
16   2024.  Do you recall that conversation with --
17   excuse me, do you recall that testimony?
18           A.    Yeah.
19           Q.    Had you spoken with Mr. Fitzgerald
20   between August 16, 2024 and our phone call?
21                 MR. FITZGERALD:  Objection.
22           A.    The one thing I could say about me is I
23   don't remember dates very well at all.  So this is
24   really not going to give you much clarity.  I don't
25   know.
```

```
1              (A brief recess takes place.)
2              MR. GLAPION:  I know I said I was done,
3    but I did have a couple more, if you don't mind.
4    And literally just a couple more questions, whenever
5    Michael is ready.
6              THE WITNESS:  I'm ready.
7    EXAMINATION BY MR. GLAPION:
8         Q.    I apologize for saying I was done; I
9    had a couple more that I just wanted to ask.
10             Do you understand the scope of your --
11   of Attorney Fitzgerald's representation of you?
12             MR. FITZGERALD:  Objection.
13        A.    Can you expand on "scope"?
14        Q.    Do you understand what Attorney
15   Fitzgerald is representing you for?
16             MR. FITZGERALD:  Objection.
17        A.    Partially.
18        Q.    What is your understanding of that,
19   what he's representing you for?
20        A.    To both legally advise me, and, you
21   know, to let me know what my rights are.  And to
22   represent me in this case against NRS, who was my
23   employer.
24        Q.    Do you know if the representation
25   terminates at the end of this deposition?
```

Page 59

```
 1    yourself are not an attorney?
 2          A.     That's probably a good reason.
 3          Q.     Okay.
 4                 MR. FITZGERALD:  I think that's
 5    everything I had.
 6                 MR. GLAPION:  I've got a few follow-up.
 7    And eventually these stop, but I do -- I do have a
 8    little bit of follow-up.
 9    EXAMINATION BY MR. GLAPION:
10          Q.     Did I ever, in any conversation that
11    you and I had, Mr. Hellerman, say that you might be
12    liable for these phone calls?
13          A.     No.
14          Q.     Did I ever imply that you might be
15    liable for these phone calls?
16          A.     No.
17          Q.     There's been some back-and-forth
18    testimony on when you were represented by counsel.
19    And I hate to keep beating on this point, so let's
20    make it simple.
21                 Between that August 16 conversation
22    with Attorney Fitzgerald, until that October 10
23    declaration that we've discussed, did you sign
24    anything in connection with this case?
25          A.     No.
```

Page 60

1      Q.      Did you sign a representation

2   agreement?

3      A.      No.

4      Q.      Did you sign an engagement agreement?

5      A.      No.

6      Q.      Did you sign anything outlining the

7   scope of their representation of you?

8      A.      No.

9      Q.      On October 7th, when we had that phone

10  call, did you believe that you were represented by

11  counsel?

12     A.      No.

13     Q.      When you testified a moment ago that

14  you reviewed text messages, how many text messages

15  were there?

16     A.      Not very many.

17     Q.      Were they text messages from Attorney

18  Fitzgerald?

19     A.      Yeah.

20     Q.      And were those on the same date as your

21  October 16th phone call?

22     A.      Yeah.

23     Q.      Were they before the phone call or

24  after?

25     A.      I can look; I don't remember.