UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **RASHAD WALSTON,** on behalf of himself and all others similarly situated,<br><br>       **Plaintiff,**<br>v.<br><br>**NATIONAL RETAIL SOLUTIONS, INC. D/B/A NRS PAY,**<br><br>       **Defendant.** | Civil Case No.: 24-cv-83<br><br>District Judge: Hon. Sunil R. Harjani<br>Magistrate Judge: Jeffrey T. Gilbert |

## PLAINTIFF'S MOTION TO COMPEL

Plaintiff's Request for Production No. 76 sought:

All DOCUMENTS and/or ESI RELATING TO YOUR (including YOUR attorney(s)) COMMUNICATIONS WITH PUTATIVE CLASS MEMBERS, including the content of such COMMUNICATIONS; the results of such COMMUNICATIONS; document[s] o[r] information obtained from such COMMUNICATIONS; related COMMUNICATIONS (e.g. follow up emails or contact); DOCUMENTS and/or ESI provided to, intended to be provided to, or received from, any PUTATIVE CLASS MEMBER; and any notes, recordings, and/or other documentation associated with or obtained through COMMUNICATIONS[1] or from a PUTATIVE CLASS MEMBER.

On November 14, Defendant responded to this request, stating it was withholding documents based on work-product and attorney-client privilege. Defendant subsequently declined to produce a privilege log. On November 22, the Parties conferred on the propriety of these objections and Defendant's refusal to produce a privilege log, but the issue could not be

---

[1] "COMMUNICATIONS" for this request was generally defined to refer to attemps to contact any of the redacted telephone numbers on the putative class lists. The full request, response, and definitions are filed herewith.

1

resolved. Plaintiff now moves to compel Defendant's production of documents responsive to this request or, in the alternative, a privilege log.

## **INTRODUCTION**

For months, Defendant has argued that Plaintiff should be denied access to putative class member phone numbers in order to protect class member privacy. In granting Defendant this relief, the Court emphasized the importance of its duty to protect absent class members from invasions of privacy "simply because they are putative members of the class." October 16 Hrg. Tr., 28:8-29:8.

All the while, however, Defendant was contacting these same absent class members about this litigation—which only exists because of Defendant's unsolicited contacts with these persons in the first place. Its supposed concern about class member privacy was simply an attempt to entrench a unilateral contact scheme out of the purview of the Court and of Plaintiff's counsel.

Complicating matters is that Defendant has refused to produce anything about these communications, relying on inapplicable claims of attorney-client and work-product privilege. It has further sought to hide the full magnitude of its conduct by refusing to produce a privilege log despite being confronted with Your Honor's specific holdings and requirements, thereby precluding any meaningful inquiry into its continued unsolicited communications. This is untenable, especially in light of Defendant's misconduct toward the only third-party witness deposed to date. [Dkt. 101.]

Accordingly, Plaintiff moves to compel Defendant's production of documents responsive to Request for Production 76. Alternatively, or in addition, Plaintiff moves to compel the production of a privilege log.

2

## DISCUSSION

I. **The work-product privilege does not apply.**

"The work-product doctrine protects (1) documents and tangible things otherwise discoverable (2) prepared by or for another party or by or for that other party's representative (3) in anticipation of litigation or for trial." *In re Dealer Mgmt. Sys. Antitrust Litig.*, 335 F.R.D. 510, 520 (N.D. Ill. 2020) (Gilbert, J.) (citing *Christman v. Brauvin Realty Advisors, Inc.*, 185 F.R.D. 251, 255 (N.D. Ill. 1999). Protected work product includes "mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative during the litigation." *Bigfoot 4x4, Inc. v. The Individuals*, 2024 WL 4818743, *2 (N.D. Ill. Nov. 18, 2024) (Gilbert, J.) (citing Fed. R. Civ. Proc. 26(b)(3)B). "The burden of establishing the elements of the work-product doctrine is on the party claiming protection." *In re Dealer Mgmt. Sys. Antitrust Litig.*, 335 at 520.

  a. Documents, material, and communications received from putative class members are outside of the work-product privilege.

At the outset, it seems undisputed that the discovery request at issue calls for documents and tangible things otherwise discoverable. Defendant did not object otherwise. *See, e.g.*, *Whitlow v. Martin*, 259 F.R.D. 349, 354 (C.D. Ill. 2009) (failure to make a timely objection to a Rule 34 request waives that objection). Indeed, communications, documents, and material exchanged with putative class members are, at minimum, relevant to Defendant's defenses. Plaintiff presumes further that the material being withheld is considered to be prepared "in anticipation of litigation or for trial".

This leaves the second requirement: that the material has been "prepared by or for another party or by or for that other party's representative" and that it covers the mental impressions, conclusions, opinions, or legal theories of Defendant or its attorney(s). For at

3

least a subset of the requested material, Defendant's claims of privilege immediately fail. Specifically, responses, documents, and materials *from* putative class members *to* Defendant are not material prepared by or for another party or for that other party's representative. They certainly do not constitute the thoughts and impressions of Defendant's counsel, but are instead the thoughts and impressions of the putative class members. This does not change just because Defendant initiated the communication.

A recent case from the Northern District of California is directly on point. *Depina v. FedEx Ground Package Sys., Inc.*, 2024 WL 1650847 (N.D. Cal. Apr. 16, 2024). In *Depina*, the plaintiff's counsel sent a survey to putative class members, and the defendant sought to compel production of that survey, responses to that survey, and communications with putative class members. Plaintiff argued both attorney-client and work-product privilege. The court fully rejected both claims. Regarding the work-product claim, it held that "the responses to the surveys are not work product, as they are the thoughts and impression of the putative class members and not the lawyers' thoughts and impressions." *Id.* at *2. As for communications, it held similarly, explaining that "communications between Plaintiff's counsel and prospective class members that were made outside the survey might contain some attorney work product in the part of the communication from the lawyer, but again, comments from the prospective class members are not protected." *Id.*

Most, if not all, cases are in accord with this simple fact: responses, communications, and material prepared or sent *by* a putative class member are not protected by work product privilege because they were not prepared by the attorneys. *See, e.g.*, *Vallone v. CAN Fin. Corp.*, 2002 WL 1726524, *1 (N.D. Ill. Mar. 19, 2002) (finding no work product privilege "because the responses were prepared by the persons responding, not by attorneys[.]"); *Smith v. CEVA*

4

*Logistics U.S., Inc.*, 2012 WL 12973191, *2 (C.D. Cal. Mar. 8, 2012); *Kurlander v. Kroenke Arena Co., LLC*, 2017 WL 3084473, *5 (D. Colo. July 20, 2017) ("Defendant cites no cases, and this court could find none, that suggest a party can claim work product protection over communication authored by third parties with whom it has no relationship."); *Agee v. Wayne Farms, LLC*, 2007 WL 2903208, *2 (S.D. Miss. 2007) (rejecting work product privilege on answers to questions by putative class members).

Accordingly, materials, documents, and communications about this litigation that any putative class member sent *to* Defendant, even at Defendant's request or invitation, are not work-product and must be produced.

    b. <u>Defendant waived the work-product privilege.</u>

For the rest—such as communications, documents, or material sent *to* putative class members—Defendant waived work product protection.

    **1. Legal Standard**

"The voluntary disclose of attorney work product to an adversary waives work product protection." *Eagle Compressors, Inc. v. HEC Liquidating Corp.*, 206 F.R.D. 474, 479 (N.D. Ill. 2002). The privilege is also waived when the protected communications are disclosed in a manner that "substantially increases the opportunity for potential adversaries to obtain the information." *Vardon Golf Co., Inc. v. Karsten Mfg. Corp.*, 213 F.R.D. 528, 534 (N.D. Ill. 2003); *Behnia v. Shapiro*, 176 F.R.D. 277, 279 (N.D. Ill. 1997). Such a waiver occurs where disclosure "is inconsistent with the maintenance of secrecy from the disclosing party's adversary." *United States v. Sanmina Corp.*, 968 F.3d 1107, 1121 (9th Cir. 2020).

"Under this standard, the voluntary disclosure of work product to an adversary or a conduit to an adversary waives work-product protection for that material." *Id.* (citing *United States v. Deloitte LLP*, 610 F.3d 129, 140 (D.C. Cir. 2010).

### 2. Putative class members are adversaries or potential adversaries to Defendant.

The key question for waiver due to disclosure to a potential adversary is whether the recipient could be the disclosing party's adversary in the sort of litigation the work product documents address. *Deloitte*, 610 F.3d at 140.

Here, putative absent class members are, without question, actually or potentially adversarial to Defendant in the *exact* litigation the work product documents address. *Cf. e.g.*, *Dondore v. NGK Metals Corp.*, 152 F. Supp. 2d 662, 666 (E.D. Pa. 2001) ("If defense counsel or counsel otherwise *adverse to their interests* is allowed to interview and take statements from often unsophisticated putative class members… the benefits of class action litigation could be seriously undermined) (emphasis added); *Agerbink v. Model Service LLC*, 2015 WL 6473005 (S.D.N.Y. Oct. 27, 2015) (criticizing defendant for its failure to disclose adverse interests to putative class members).

As it stands, each putative class member is an actual or potential adversary Defendant in a certified class action. It is, without question, in Defendant's interests to take advantage of these putative class members to either help defeat class certification or to reduce their overall exposure in the event of class certification—outcomes necessarily adverse to the putative class members with whom it is communicating. Furthermore, Defendant has raised numerous generally applicable defenses distinctly adversarial to putative class members, even before a

6

class is certified.[2] Other defenses are applicable to some unknown subset of putative class members, placing that unknown subset directly adversarial to Defendant.[3]

If a class is certified, those class members become definitively and legally (versus just "factually") adversarial to Defendant. "Once a class has been certified, the [ethical] rules governing communications apply as though each class member is a client of class counsel…. [D]efendant's and their attorneys may communicate … with class members … but only through class counsel." *Blanchard v. EdgeMark Fin. Corp.*, 175 F.R.D. 293, 301 (N.D. Ill. Aug. 25, 1997) (emphasizing throughout that defendant is adverse to such class members).

Accordingly, Defendant's disclosure to putative class members of any material otherwise protected under the work-product privilege was a disclosure to an actual or potential adversary, thereby waiving that privilege.

### 3. Defendant's disclosure to putative class members is inconsistent with confidentiality or secrecy.

In the alternative, Defendant waived work product privilege by disclosure to a "conduit to an adversary"—i.e., Plaintiff—despite no justified expectation of confidentiality. The relevant inquiry is "whether the disclosing party had a reasonable basis for believing that the recipient would keep the disclosed material confidential." *Deloitte*, 610 F.3d at 141. This may arise from common litigation interests or a "relatively strong and sufficiently unqualified" confidentiality agreement. *Id.* Simple promises or qualified agreements of confidentiality (e.g., "to the extent possible" are insufficient to avoid waiver. *Id.*

---

[2] For example, Defendant raises several meritless affirmative defenses that are adversarial to everyone with a putative TCPA claim against it, such as standing (i.e. ringless voicemails do not give rise to Article III standing), First Amendment (i.e. the TCPA violates the First Amendment), ringless voicemails do not count as calls under the TCPA, and bona fide error. [Dkt. 70, pp. 34-39.]

[3] For example, Defendant claims some putative class members provided consent and that some putative class members are subject to arbitration, class waiver, and release provisions. *Id.*

7

Courts overwhelmingly hold that "communicat[ions] with [putative class members] without any agreement or indication that the recipients would keep the communications confidential" waives work product protections as to those communications. *Briggs v. OS Restaurant Servs., LLC*, 2019 WL 7195620, *3 (C.D. Cal. Sept. 10, 2019); *see also, e.g.*, *Depina*, 2024 WL 1650847 at *2 (finding waiver of work product privilege for material and communications exchanged between plaintiff's counsel[4] and putative class members because "it is unlikely that … counsel's portion of communication with putative class members, which arguably might be attorney work product, was made in a confidential manner"); *Hudson v. General Dynamics Corp.*, 186 F.R.D. 271, 277 (D. Conn. 1999); Newberg and Rubenstein on Class Actions, § 9:22 (6th Ed.) ("Courts have also found any work-product privilege to have been waived when the questionnaires themselves were not kept confidential…. As noted above, the … analysis is presented here in relation to the question of client questionnaires, but the structure of the analysis would be applicable to any claim of work-product privilege that arose in the course of proposed discovery of absent class members.")

Here, Defendant had no basis for any belief that communications or exchanges with putative class members would or could be kept confidential.[5] Instead, it is likely—if not a near certainty—that such communications will eventually make their way to Plaintiff's counsel (either through Defendant's own disclosure, a putative class member's independent effort, or

---

[4] This finding as it pertains to a *plaintiff*'s communications is significant, because the arguments are even *stronger* that Defendant had no expectation of confidentiality in its communications with putative class members, many of whom are likely already annoyed with Defendant's prior unwanted communications.

[5] Consider a scenario where Plaintiff had access to putative class member witnesses and was permitted to serve a single RFP on each class member asking for all documents it provided to, or was provided to it by, Defendant or its counsel. There would clearly be no claims of work-product privilege for such documents. That Plaintiff is *not* allowed to serve this request does not provide them a protection they would not otherwise have.

8

subsequent to the certification of a class), even if too late for Plaintiff to make use of them. Accordingly, Defendant waived work product privilege.

## II. Attorney-client privilege does not apply.

Though this warrants little discussion, the attorney-client privilege does not apply. "The Seventh Circuit has articulated the following test for the existence of the attorney-client privilege: (1) where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) except the protection be waived." *In re Dealer Mgmt. Sys. Antitrust Litig.*, 335 F.R.D. at 513-14 (citing *United States v. White*, 950 F.2d 426, 430 (7th Cir. 1991)).

It is hard to imagine how Defendant's communications with putative class members about this litigation members could at all satisfy this test. Even if some putative class members inexplicably retained or sought to retain Defendant's counsel, serious inquiry must be made into the propriety of that representation, such as whether the obvious conflicts were properly disclosed and could be waived.

Even in the context of a *plaintiff's* communications with putative class members pre-certification, courts find no attorney-client privilege protections when these individuals did not seek to engage plaintiff's counsel as their attorney. *See, e.g.*, *Briggs*, 2019 WL 7195620 at *3.

## III. There is a substantial need for the requested material.

To the extent the Court finds the work-product privilege applies and was *not* waived, Plaintiff's substantial need for this otherwise protected information overcomes any such claim. Fed. R. Civ. P. 26(b)(3)(A)(ii); *see Hickman v. Taylor*, 329 US 495, 511-12 (1947) (a court

9

may order disclosure of work product where the party seeking disclosure shows that it has a substantial need for the materials and cannot obtain their substantial equivalent by other means).

Communications with absent class members must be "fair and accurate and must not be misleading, intimidating, or coercive." *McCowen v. Trimac Transp. Servs. (W.), Inc.*, 2015 WL 5184473, at *5 (N.D. Cal. Sept. 4, 2015); *see also Mullen v. GLV, Inc.*, 334 F.R.D. 656, 661-62 (N.D. Ill. 2020). As detailed in Plaintiff's simultaneously filed Rule 23(d) motion, docket entry 101, there are substantial questions regarding the propriety and admissibility of the lone third party declaration produced to date and Defendant's communications with that third party witness. These issues were uncovered only through discovery targeted at that witness, which included challenging the witness on the origin and accuracy of that declaration.

Without access to Defendant's communications and documents exchanged with putative class members, as well as the identities of these putative class members, Plaintiff has no way to assess the propriety and admissibility of any documents obtained from those putative class members, despite Defendant's underhanded tactics in obtaining the same from another third-party witness.

## IV. At a minimum, a privilege log is required.

Defendant has surreptitiously contacted or attempted to contact untold numbers of putative class members, all the while arguing that putative class member privacy must be protected and standing quietly while the Court emphasized the importance of respecting that privacy. Once forced to admit to this contact, Defendant took steps to hide its scope and magnitude. It immediately sought to downplay the admission as being based on contacts with putative class members who had become customers. It raised the dubious claims of attorney-

client and work-product privilege discussed here. When pressed on the black letter requirement of a privilege log, Defendant refused to produce one—even after being confronted with Your Honor's standing order regarding privilege logs and multiple cases from *this Court* requiring a privilege log for all privilege claims.

More than anything else, Defendant's panicked efforts to hide the scope of its communications with putative class members with whom it is adversarial are alone sufficient to require further inquiry through, at minimum, a privilege log.

The law is fully in accord. Claims of privilege "must be made and sustained on a question-by-question or document-by-document basis; a blanket claim of privilege is unacceptable." *United States v. Lawless*, 709 F.2d 485, 487 (7th Cir. 1983). To that end, Your Honor's procedure on privilege logs provides that "[i]n the event that a party withholds otherwise discoverable information on the ground of privilege, the withholding party generally must provide a log of the documents withheld on the ground of privilege."[6] Your Honor has repeatedly held the same. *Amarillo v. Artist Senior Living Mgmt. LLC*, 2022 WL 672747, *3 (N.D. Ill. Mar. 7, 2022) (Gilbert, J.) ("If Defendants are not producing any responsive documents based on the assertion of attorney-client privilege, the work product doctrine, or any other privilege, then they must produce a privilege log for the documents being withheld pursuant to Rule 26(b)(5)."); *People ex. Rel. Madigan v. Illinois High School Association*, 2014 WL 517969, *4 (N.D. Ill. Feb. 10, 2014) (Gilbert, J.) (compelling production of a privilege log on claims of work-product, attorney-client, and common interest privilege).[7]

---

[6] https://www.ilnd.uscourts.gov/judge-cmp-detail.aspx?cmpid=612, last accessed November 29, 2024.

[7] Plaintiff emailed these cases to Defendant as part of the Rule 37 process, and Defendant responded that these cases were irrelevant and did not change its position.

Defendant has argued privately that a privilege log is not required for documents created after the litigation began and cited several cases ostensibly with that holding.[8] For example, one recent court recognized a trend in finding that documents created after the litigation began are not required to be included on a privilege log. *Rayome v. Abt Electronics*, 2024 WL 1435098, *3 (N.D. Ill. Apr. 3, 2024) (Cole, J.). But a closer read of *Rayome* shows it to be inapplicable to the facts here.

First, the documents at issue in *Rayome* were communications between the defendant and its counsel, not Defendant and third-party witnesses. *Id.* at *2.

Second, while the *Rayome* court spoke generally about the conflict between strict adherence to Fed. R. Civ. P. 26(b)(5) and the burden of creating a privilege log for material created *after* litigation commenced, it focused on the facts that "post-Complaint material … would be a poor substitute for documents generated leading up to and during the incident" and the burden of logging all such communications between the defendant and its counsel. *Id.* at *3. Here, the withheld documents are relevant to *more* than just the allegations in Plaintiff's complaint, but to Defendant's affirmative defenses, likely including standing, arbitration, and class waiver. In a worst case scenario, Defendant is actively obtaining releases or arbitration clauses or class waivers from putative class members in an effort to cap liability or altogether defeat class certification. Defendants frequently undertake such efforts. *See, e.g.*, *Kater v. Churchill Downs Inc.*, 423 F. Supp. 3d 1055, 1062 (W.D. Wash. 2019) (collecting cases); *Cheverez v. Plains All American Pipeline, LP*, 2016 WL 861107 (C.D. Cal. Mar. 3, 2016); *Friedman v. Intervet Inc.*, 730 F. Supp. 2d 758 (N.D. Ohio 2010).

---

[8] Inconsistently, however, Defendant has *previously* produced a privilege log for documents created after this litigation began, detailing communications with third party VoiceLogic between March 11, 2024 and May 21, 2024.

Third, Judge Cole refused to rule on this question in *Rayome*. *Id.* at *4. Less than two weeks later, however, Judge Cole revisited this issue in *Fleury v. Union Pacific Railroad Co.*, 2024 WL 1620613 (N.D. Ill. Apr. 15, 2024) (Cole, J.) Judge Cole again recognized concerns about the burden of requiring a privilege log for post-Complaint privilege logs but provided more clarity on the considerations. His Honor summarized *Rayome* as a case about "whether post-complaint privilege logs are worth the effort required" and noted this was an analysis to be made on a case-by-case basis. *Id.* at *5. Judge Cole nevertheless rejected out-of-hand any application of such "post-Complaint" limitation to the privilege at issue (common interest) because that privilege could not be assumed and must be shown on a document-by-document basis (rather than on a blanket claim). Therefore, a privilege log was required *regardless* of when those documents were created. *Id.* at *7.

Here, work product privilege, like the common interest privilege, must be shown on a document-by-document basis. *Tierney v. BNSF Railway Co.*, 2024 WL 4647854, *6 (W.D. Wisc. Oct. 31, 2024) (citing *United States v. Lawless*, 709 F.2d at 487).

Furthermore, logging "post-Complaint" material is clearly "worth the effort." First, there is no other way for the Court to assess how Defendant's communications might implicate its duty to protect absent class members. *See, e.g., Hoffman-La Roche Inc. v. Sperling*, 493 U.S. 165, 171 (1989) ("[A] district court has both the duty and the broad authority to exercise control over a class action and to enter appropriate orders governing the conduct of counsel and the parties.")

Second, as mentioned, the withheld documents are relevant to *more* than just the allegations in Plaintiff's complaint but to Defendant's affirmative defenses.

13

Third, any "burden" of logging such communications is self-inflicted: it can only be significant if the volume of unsolicited communication with and material obtained from putative class members is also significant. This is not a scenario where Plaintiff seeks to create "busy" work in compelling Defendant to produce a privilege log for all ordinary-course communications between Defendant and its attorneys. Indeed, throughout this case, Plaintiff has repeatedly waived insistence on a privilege log in such circumstances (while reserving the right to insist on one in others). Ultimately, it was Defendant's decision to unilaterally contact some arbitrary (and, to date, unknown) number of putative class members and engage in some unknown amount of communication with them. It cannot now refuse to produce a privilege log because it contacted *so many* of them that telling Plaintiff or the Court would be overly burdensome. This, in itself, is concerning.

## **CONCLUSION**

Defendant has unilaterally continued to contact the same putative class members it is accused of harassing for the past four years, all the while successfully arguing that the privacy of these absent class members must be protected. When confronted on these communications, Defendant sought to hide their nature and volume behind questionable claims of privilege and a refusal to produce the required privilege log. It is exceedingly obvious at this point that, for whatever reason, Defendant wants to hide the magnitude and scope of its communications with absent class members. Allowing it to do so prevents the Court from protecting putative class members, risks irreparable harm to those same putative class members, and would be prejudicial to Plaintiff, who would be left with no ability to address these undisclosed witnesses and related undisclosed evidence before the close of discovery.

For the reasons above, Plaintiff respectfully requests that the Court compel Defendant to produce any withheld material responsive to Request for Production 76. At a minimum, Defendant must produce a privilege log for any withheld material.

Dated: November 29, 2024

s/ Jeremy M. Glapion
Jeremy M. Glapion
The Glapion Law Firm, LLC
1704 Maxwell Drive
Wall, New Jersey 07719
Tel: 732-455-9737
Fax: 732-965-8006
jmg@glapionlaw.com

Counsel for Plaintiff and the Putative Class

### CERTIFICATION OF SERVICE

I hereby certify that on November 29, 2024, I filed the foregoing document using the CM/ECF system which will send notice of electronic filing to all counsel of record.

### CERTIFICATION OF RULE 37.2 COMPLIANCE

On November 22, 2024, the Parties conferred telephonically on, among other things, Defendant's work-product privilege claims and privilege log. Defendant declined to produce a privilege log or produce the documents.

s/ Jeremy M. Glapion