# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| RASHAD WALSTON, on behalf of himself and all others similarly situated, | : | Case No. 1:24-cv-00083 |
| Plaintiff, | : | |
| v. | : | |
| NATIONAL RETAIL SOLUTIONS, INC. D/B/A NRS PAY, | : | |
| Defendant. | : | |

## NRS'S RESPONSE TO PLAINTIFF'S
## MOTION TO COMPEL

**TABLE OF CONTENTS**

I. INTRODUCTION ...................................................................................................2

II. BACKGROUND ....................................................................................................4

    A. The Parties' Pre-Motion Conferral. ............................................................4

    B. Plaintiff's Failure to Confer is Part of a Larger Scheme to Smear NRS and the Undersigned. ...............................................................6

III. ARGUMENT ..........................................................................................................8

    A. NRS Has No Obligation to Prepare a Privilege Log or Produce Records it Does Not Possess. ..........................................................8

    B. Plaintiff Failed to Adequately Confer. ......................................................10

IV. CONCLUSION .....................................................................................................11

i

## I. INTRODUCTION

When a plaintiff files a putative class action, they bear the burden to prove, among other things, that there is a way to resolve issues of liability with class-wide proof. The defendant, of course, has the right to defend itself, including by pointing to individualized issues that make it impossible to try the case on a class-wide basis.

That is why defendants routinely interview class members and then, depending on the arguments the plaintiff makes at certification about class-wide proof, rely on declarations from class members to show that individualized issues make those arguments unworkable. And that is also why plaintiffs *do not* conduct such interviews or seek to depose class members— because the need to do so would itself highlight that individual issues preclude certification. That's why Plaintiff here didn't identify any need for full phone numbers other than to establish numerosity and superiority, which the parties resolved with a stipulation.

Instead, plaintiffs often try to find a way to prevent defendants from using such declarations. The idea is that, if the evidence is unfavorable, it's better to ask the Court to ignore it. Or better yet, in an extreme case, to mislead the Court into committing reversible error and constitutional violations by prohibiting a defendant from gathering evidence.

That is exactly what's happening here. Plaintiff knows that, in every case where the undersigned has represented the defendant, the court has denied certification, including based on sworn class member statements. He also knows that, in every one of those cases, the courts rejected the plaintiffs' request to exclude such statements. So Plaintiff's counsel knows that, if he doesn't take drastic measures, he may well never recover his portion of the enormous amount he (wrongly) claims is at stake. ECF No. 101, 11.

Enter Plaintiff's trio of recent filings. Therein, he seeks to (a) reverse this Court's order declining to compel production of full phone numbers as a matter of proportionality because Plaintiff has no current need for them, (b) preclude NRS from defending itself by interviewing class members, a routine practice that defense counsel has a fiduciary obligation to undertake, and (c) compel NRS to produce work product that would reveal the core of its defense strategy, including declarations that the undersigned doesn't yet know if NRS will rely on and that are therefore work product. The latter request is the subject of Plaintiff's instant motion.

But that request doesn't even get out of the gate. That's because, in his rush to deflect and paint NRS and its counsel in an unflattering light, Plaintiff made another fundamental misstep. Kind of like when he misrepresented Mr. Hellerman's deposition testimony and failed to consider how that might rub Mr. Hellerman, who now wants to appear personally to describe how Plaintiff's use of portions of his testimony (and omission of others) was "deceptive." In any event, this time, Plaintiff's misstep was moving to compel NRS to produce documents it does not have. Specifically, Plaintiff demands that *NRS* produce investigatory communications between putative class members and *NRS's counsel*. But NRS does not possess such documents. And, under binding Seventh Circuit precedent—which NRS told Plaintiff about and Plaintiff ignored—NRS has no obligation to disclose or log documents its counsel may possess. The Court must deny the motion for that reason alone.

Moreover, Plaintiff failed to satisfy his obligation to confer before filing this motion. LR 37.2. During pre-motion conferrals, the parties discussed whether NRS must produce a *privilege log*. Plaintiff refused to respond to NRS's arguments and caselaw. He then moved to compel *documents* reflecting communications between putative class members and the

3

undersigned counsel—a more complicated topic that Plaintiff did not raise and the parties did not discuss. He omits the parties' conferral communications from his motion for this reason.

If Plaintiff chooses to subpoena NRS's counsel, NRS will explain in detail why any declarations it has obtained but not yet decided to use (and may not use at all) are work product and need not be produced, after the parties confer on that issue. But for now, that issue is not ripe. So the Court should ignore Plaintiff's latest attempt to use outlandish, baseless, and false allegations to deflect from NRS's pending adequacy challenge. It should follow the Seventh Circuit's mandate and deny Plaintiff's motion.

## II. BACKGROUND

### A. The Parties' Pre-Motion Conferral.

On November 14, 2024, NRS responded to Plaintiff's Fifth Set of RFAs, including his request about NRS contacting putative class members after January 3, 2024 ECF No. 97-1, 3–4. Because that request includes communications unrelated to this litigation between NRS's *customers*—who NRS obviously communicates with—NRS admitted the request.[1] *Id.* NRS explained that this was the reason it was admitting that RFA. ECF No. 97-2, 3.

Plaintiff ignored that explanation, choosing to read NRS's response to his RFA as it best suited him: as an admission that NRS was engaging in "clandestine" communications with an "untold" number of putative class members. Plaintiff then contacted NRS alleging that its response to Plaintiff's RFP Number 76, seeking "COMMUNICATIONS WITH

---

[1] Plaintiff subsequently blamed NRS for not clarifying Plaintiff's unartfully drafted request. ECF No. 97, 12 n.5. But, setting aside that is not NRS's job, NRS on several occasions—including in writing—informed Plaintiff that it was admitting the RFA for that reason. ECF No. 97-2, 3; *Apotex Corp. v. Merck & Co.*, 229 F.R.D. 142, 148 (N.D. Ill. 2005) (absent such a formal discovery request, "a civil litigant has no independent obligation to volunteer information to its opponent").

4

PUTATIVE CLASS MEMBERS" after January 3, 2023, was deficient. Nov. 21 Email, attached as Exhibit 1. He explained "I don't necessarily concede that work-product is applicable," but in the meantime, he was "entitled to a privilege log" (suggesting he would revisit the work-product issue later, depending on what communications existed). *Id.* at 2.

The parties scheduled a call on November 22 to confer on Plaintiff's request for a privilege log. *Id.* Consistent with Plaintiff's pre-call demands, the focus of the call was on NRS's obligation to produce a ***privilege log*** for any investigatory communications that might have occurred between the undersigned and putative class members. Declaration of Patrick Fitzgerald, attached as Exhibit 2. Plaintiff's own memorialization of that call confirms as much, stating "[y]ou agreed to let me know your position on ***a work-product privilege log*** on or before Wednesday[.]" Nov. 22 Email, attached as Exhibit 3 (emphasis added).

As promised, NRS identified its position on the privilege log, explaining that it had no obligation to produce one for two reasons: (1) any such communications, if they exist, would be possessed by its counsel, not NRS, and (2) that documents created after a lawsuit commences are presumed privileged anyway, without the need for a log.[2] Ex. 3, 3. Plaintiff did not respond to either point, stating only that "[w]e will move to compel *a privilege log*." Ex. 3, 1 (emphasis added). Because Plaintiff's counsel did not raise the issue, NRS did *not* provide its position on the circumstances in which *documents* such as declarations drafted by

---

[2] NRS likewise directly addressed Your Honor's prior holdings in *Madigan v. Illinois High School Association*, 2014 WL 517969, *4 (N.D. Ill. Feb. 10, 2014) and *Amarillo v. Artist Senior Living Mgmt LLC*, 2022 WL 672747, *3 (N.D. Ill. Mar. 7, 2022) during the conferral. As NRS noted, those cases stand for the unremarkable position that a privilege log is generally required for pre-suit communications. The parties did not argue whether investigatory documents that may be *possessed by counsel* fall within the scope of Rule 34.

5

counsel and that would expose counsel's core case strategy before counsel even decided whether to use them, need to be produced.

Hoping to avoid needless motion practice, NRS followed up with Plaintiff again on November 29, noting that he "failed to rebut" NRS's caselaw and urging him to reconsider filing another needless motion. Ex. 3, 1. Plaintiff didn't substantively respond; he simply reiterated that NRS must produce a log. *Id.* Later that day, Plaintiff filed his motion. Therein, Plaintiff sought to compel *communications* with putative class members—which the parties never conferred about—and sought a privilege log only as alternative relief. ECF No. 102.

### B. Plaintiff's Failure to Confer is Part of a Larger Scheme to Smear NRS and the Undersigned.

Plaintiff's rush to file a motion filled with adjectives instead of conferring is unsurprising at this point. It is part of a continuing effort to attack NRS's counsel to make this litigation about issues other than the merits. For example, shortly before Plaintiff filed his motion to compel, he moved to prohibit NRS from interviewing putative class members. ECF No. 101. That motion is based on misrepresentations and omissions of and cherry-picked testimony about NRS's counsel's routine representation of a former NRS employee— misrepresentations and omissions so bad that the witness, Mr. Hellerman, himself labeled them "deceptive" and indicated he would appear in person to dispel them. ECF Nos. 106–1, 108. Plaintiff opposes that, since Mr. Hellerman's testimony would further expose Plaintiff's attacks as manufactured.

As for this motion, Plaintiff calculated that NRS not producing a privilege log would support his Rule 23(d) motion, making potential communications with putative class members seem secretive (even though Plaintiff admits he knows that defense counsel

6

routinely interviews class members).³ Accordingly, rather than ask NRS about its position outlined in its November 27 post-conferral email, Plaintiff simply filed this motion, asking to compel communications he hadn't even confirmed existed or conferred with NRS about.

Plaintiff did the same thing when he moved to appeal this Court's order on his motion to compel. ECF No. 97. NRS wanted to focus on completing discovery, rather than immediately responding to yet another motion. So when Plaintiff told NRS that he needed to preserve his right to object to the Court's November 7 Order (ECF No. 87), NRS proposed jointly moving to hold Plaintiff's deadline to object in abeyance. Nov. 7 Email, attached as Exhibit 4, 11. That way, the parties could work through the compromise and stipulation Your Honor ordered when it ruled on Plaintiff's motion to compel the putative class members' phone numbers "before having to raise it with Judge Harjani." *Id.*; ECF No. 87.

Rather than take this commonsense approach to reduce the briefing burden, Plaintiff saw an opportunity to derail NRS's counsel's investigation with personal attacks and stop NRS from obtaining evidence that would show this case cannot be tried with common proof on a class-wide basis. Accordingly, Plaintiff rejected NRS's proposed compromise and appealed this Court's order immediately, before the stipulation had even been filed. Ex. 4, 4.

Thus, Plaintiff's motion is part of a larger, connected strategy to falsely make NRS and the undersigned out to be bad actors. It was, for this reason, in Plaintiff's interest to pay lip

---

³ Among the more outlandish insinuations, Plaintiff baselessly speculates (at 9) about NRS counsel attempting to represent a putative class member and whether that engagement would be appropriate. Of course, the undersigned has not sought to represent any of the putative class members in this case, nor has it *ever* engaged in such conduct in the thousands of such interviews it has conducted in other actions. Nor has the undersigned sought to obtain releases from putative class members, ever, in any case. These are just more false, inflammatory allegations for which Plaintiff has no factual basis.

service to Rule 37.2 and rush to file this motion. But the Court cannot compel NRS to produce documents it does not possess. Nor should it reward Plaintiff for his theater. The Court should deny Plaintiff's motion.

### III. ARGUMENT

#### A. NRS Has No Obligation to Prepare a Privilege Log or Produce Records it Does Not Possess.

Initially, the Court must deny the motion because the records sought are not within NRS's possession, custody, or control. The party seeking production has the burden to establish the responding party's "control over those documents." *Meridian Lab'ys, Inc. v. OncoGenerix USA, Inc.*, 333 F.R.D. 131, 135 (N.D. Ill. 2019). To that end, that the responding *attorney* may possess documents doesn't mean those documents are within the *party's* control. *Trustees of Chicago Reg'l Council of Carpenters Pension Fund v. Drive Constr., Inc.*, 2022 WL 2237621, at *2 (N.D. Ill. June 22, 2022) (plaintiff had no obligation to produce retainer agreement between former employees and plaintiff's counsel); *Fulton v. Foley*, 2018 WL 11199090, at *1 (N.D. Ill. Aug. 28, 2018) (documents possessed by a party's attorney "are not subject to Rule 34, even if the same attorney represents the party in the current matter").

On the contrary, the Seventh Circuit has made clear that Rule 34 doesn't extend to the party's attorneys. *Hobley v. Burge*, 433 F.3d 946, 950 (7th Cir. 2006) ("[E]ven if Jones Day were the City's current counsel, Rule 34 would not be the correct discovery tool for gaining access to work product held by an attorney."). Citing *Hickman v. Taylor*, the court explained that Rule 34 "is limited to parties to the proceeding, thereby excluding their counsel or agents." *Id.* (quoting 329 U.S. 495, 504 (1947)); *see also Drive Constr.*, 2022 WL 2237621, at *2 (citing *Hobley*, holding because plaintiff's counsel "is not a party to this lawsuit," defendant could not use Rule 34 to obtain documents); *Novelty, Inc. v. Mountain View Mktg., Inc.*, 2010

8

WL 11561280, at *6 (S.D. Ind. Jan. 29, 2010) (citing *Hobley*, holding that counsel had no obligation under Rule 34 to produce "files that counsel has never shared with [the responding party]"). Accordingly, the "issue of whether documents in possession of a party's attorney are under the control of the party [for purposes of Rule 34] is resolved by tracing their origin; if the items were originally produced by the party or the party's agents and then turned over to the attorney, they are considered under the party's control." *Drive Constr.*, 2022 WL 2237621, at *2 (cleaned up).

Here, Plaintiff seeks litigation-related documents reflecting communications between putative class members and the undersigned, revealing details about the investigation into Plaintiff's class allegations, or a privilege log describing those documents.[4] However, to the extent those documents exist, NRS doesn't possess them—and it certainly didn't create them. Fitzgerald Decl. ¶ 6. Accordingly, NRS has no obligation to produce those documents or prepare a privilege log describing them.[5]

To be clear, there are numerous additional reasons why *NRS's counsel* is not required to produce such communications either, to the extent Plaintiff later subpoenas counsel. *See, e.g., Inst. for the Dev. of Earth Awareness v. People for the Ethical Treatment of Animals*, 272 F.R.D. 124, 125 (S.D.N.Y. 2011) ("[E]xecuted affidavits of non-party witnesses remain[] work product until the lawyer elect[s] to serve and file them. Until the moment of service and filing, the

---

[4] During their meet and confer, Plaintiff did not ask NRS to produce communications with its own customers. Fitzgerald Decl. ¶ 5. Those documents, which NRS does possess, are therefore outside the scope of this motion.

[5] Though Plaintiff attempted to expand the scope of his Rule 34 request to "includ[e] YOUR attorney(s)[,]" Rule 34 is not "the correct discovery tool" to obtain such documents. *Burge*, 433 F.3d at 950.

lawyer reserves the right to reverse course and refrain from using the affidavits."); *Brantley v. Ferrell Elec., Inc.*, 112 F. Supp. 3d 1348, 1357 (S.D. Ga. 2015) (executed affidavits remained work product until counsel elected to serve and file them). But until Plaintiff seeks the documents in question through subpoena, the work product question is not ripe.[6] Plaintiff hasn't yet done that here, so the Court must deny Plaintiff's motion and save these questions for another day, as the Court cannot compel NRS to produce documents it doesn't possess.

### B. Plaintiff Failed to Adequately Confer.

Nor should the Court reward Plaintiff's failure to confer. Rule 37.2 requires a "good faith attempts to resolve differences[.]" L.R. 37.2. A party obviously fails to satisfy Rule 37.2 when it fails to raise the issue that it ultimately moves to compel on. *Bilek v. Fed. Ins. Co.*, 2022 WL 18912277, at *5 (N.D. Ill. Dec. 12, 2022) ("Because plaintiff did not exhaust her meet-and-confer obligations on this issue, it is not ripe for judicial resolution"). Nor can a party meet the good faith requirement where it refuses to acknowledge or respond to the opposing party's position. *Harper v. Cent. Wire, Inc.*, 2021 WL 4472604, at *1 (N.D. Ill. June 11, 2021) (refusing to grant a motion to compel where plaintiff, during calls, "did nothing more than cling to the position it began with.").

Here, Plaintiff failed to confer as to whether documents related to communications between putative class members and the undersigned are subject to work product privilege. Plaintiff did not even raise that issue during the conferral call. Fitzgerald Decl. ¶ 4. It wasn't until the day Plaintiff filed the motion that he told NRS, by email, that he intended to argue those communications were not protected by work product privilege. Ex. 3, 1. As Plaintiff

---

[6] The undersigned will substantively respond to Plaintiff's work product arguments if and when he serves a proper subpoena.

10

failed to raise this issue, much less "in person or by telephone," as Rule 37.2 requires, the Court must deny his motion. *Ruebe v. Partnerre Ireland Ins.*, 2019 WL 7562661, at *1 (N.D. Ill. Dec. 20, 2019) ("Emails and letters are not enough under Rule 37.2" (quotation omitted)).

Moreover, Plaintiff deliberately failed to satisfy his obligation to confer in good faith as to NRS's obligation to prepare a privilege log. NRS specifically identified that "Rule 34 would not be the correct discovery tool for gaining access to work product held by an attorney" in its November 27 email. Ex. 3, 3 (citing *Hobley*, 433 F.3d at 950). And in its November 29 email, NRS reiterated that Plaintiff "failed to rebut" that caselaw. *Id.* But, seeing an opportunity to paint the undersigned in an unflattering light, Plaintiff failed to respond to those issues before filing his motion. As Plaintiff failed to acknowledge or respond to NRS's position, he did not satisfy his obligation to confer in good faith.

## IV. CONCLUSION

The Court has repeatedly asked the parties to tone down their rhetoric and try to reach a compromise before filing motions. NRS has made those same requests to Plaintiff's counsel and before this Court (Your Honor may recall Mr. Watstein specifically noting his desire that the personal attacks cease at the outset of the last hearing). The Court should not reward Plaintiff for doing the exact opposite. If Plaintiff needs to move after serving a subpoena, conferring with NRS, and considering its position, that is fine. But for now, the Court must follow the Seventh Circuit's mandate and deny Plaintiff's motion.

*[Signature Appears on Following Page]*

11

DATED: December 9, 2024.

        Respectfully submitted,

        */s/ Patrick J. Fitzgerald*
        Ryan D. Watstein (*admitted pro hac vice*)
        ryan@wtlaw.com
        Patrick J. Fitzgerald (*admitted pro hac vice*)
        pfitzgerald@wtlaw.com
        **WATSTEIN TEREPKA LLP**
        1055 Howell Mill Road, 8th Floor
        Atlanta, Georgia 30318
        Tel: (404) 782-9821
        Fax: (404) 537-1650

        Justin M. Penn, ARDC 6283726
        jpenn@hinshawlaw.com
        **HINSHAW & CULBERTSON LLP**
        151 North Franklin Street, Suite 2500
        Chicago, Illinois 60606
        Tel: (312) 704-3000

        *Counsel for Defendant*

**CERTIFICATE OF SERVICE**

      I hereby certify that on December 9, 2024, I caused to be electronically filed a true and correct copy of the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record.

                                               */s/ Patrick J. Fitzgerald*
                                               Patrick J. Fitzgerald