IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

RASHAD WALSTON, on behalf of himself and all others similarly situated,

    Plaintiff,

v.

NATIONAL RETAIL SOLUTIONS, INC. D/B/A NRS PAY,

    Defendant.

Case No. 1:24-cv-00083

**NRS'S RESPONSE TO PLAINTIFF'S
OBJECTIONS TO ORDER ON PLAINTIFF'S MOTION TO COMPEL**

**TABLE OF CONTENTS**

I. INTRODUCTION ...................................................................................................1

II. BACKGROUND ....................................................................................................4

    A. Plaintiff Files a Motion to Compel NRS to Produce Documents. ..................4

    B. Judge Gilbert Holds a 2-Hour Hearing on the Motion on October 16. ...........5

    C. Judge Gilbert Conducts an Additional Conference on Plaintiff's Motion on November 6. ..................................................................................................6

    D. Plaintiff Continues his Efforts to Obtain the Numbers via a Variety of Misrepresentations and Meritless Filings, Ignoring this Court's Order and Causing NRS to Prejudice Itself With the Stipulation ...................................7

III. ARGUMENT ..........................................................................................................8

    A. Judge Gilbert Properly Exercised his Discretion in Refusing to Compel NRS to Produce the Full Phone Numbers. ................................9

        1. Judge Gilbert's Proportionality Analysis ............................................9

        2. Judge Gilbert's Ruling Was Not a No-Contact Order .......................11

    B. The Remaining Issues Do Not Amount to Clear Error. .............................13

IV. CONCLUSION.....................................................................................................15

i

## I. INTRODUCTION

When a plaintiff files a putative class action, they bear the burden to prove, among other things, that there is a way to resolve issues of liability with class-wide proof. The defendant, of course, has the right to defend itself, including by pointing to individualized issues that make it impossible to try the case on a class-wide basis. That is why defendants routinely interview class members and then, depending on the arguments the plaintiff makes at certification about class-wide proof, rely on declarations from class members to show that individualized issues make those arguments unworkable. And that is also why plaintiffs *do not* conduct such interviews or seek to depose class members. That discovery would suggest there are individual issues that cannot be resolved with class-wide proof.

This case is no different. Plaintiff moved to compel NRS to produce unredacted phone numbers to establish numerosity and superiority[1] for his forthcoming Rule 23 motion—not because he claimed a need to interview class members on their individual circumstances. That makes sense, since the need for such inquiries would itself preclude class certification under binding authority. *Lemon v. Int'l Union of Operating Eng'rs, Loc. No. 139, AFL-CIO*, 216 F.3d 577, 581 (7th Cir. 2000) (vacating certification where analysis depended on individual inquiries specific to each class member).

Over two hearings and extensive briefing, Plaintiff was unable to convince Judge Gilbert that he needs the full individual phone numbers at this time. Instead, and ***on Plaintiff's recommendation*** that it "would be good enough," Judge Gilbert ordered the parties to work together to prepare a stipulation that would provide Plaintiff with the information he said he needed to support his Rule 23 motion without disclosing numbers, at least at this stage.

---

[1] Plaintiff specifically claimed he needed the phone numbers to identify the quantity of persons in his proposed class and that he could identify those persons (cell phone subscribers) on a class-wide basis.

1

After extensive negotiations and two hearings, it seemed like the parties reached a compromise: NRS would pay to retain a mutually agreeable vendor to identify the phone type and carrier for each phone number contained in the campaign reports by VoiceLogic, the vendor that transmitted the ringless voicemails. ECF No. 96–1 (stipulation). NRS would then provide Plaintiff with those reports with part of the numbers redacted. ECF No. 96.

Once the parties completed this process, Judge Gilbert would decide whether the Court has sufficient information to decide certification on an informed basis, or whether Plaintiff needs the individual phone numbers. Consistent with his intent to hold open the latter issue for another day, as needed, Judge Gilbert ordered "Plaintiff's Motion to Compel Production of Unredacted Documents [48] is granted in part for the reasons stated on the record." ECF No. 87.[2]

Yet, after NRS relied and prejudiced itself based on Plaintiff's proposed compromise, Plaintiff now complains that his own proposal isn't "good enough." He wants the Court to do an about-face and order NRS to produce the unredacted telephone numbers. Accordingly, Plaintiff declined NRS's offer to jointly move to extend his Rule 72 deadline to object to Judge Gilbert's order, which would have allowed the parties to work through the stipulation before asking this Court to intervene, and he filed this objection.

At the same time, he moved to prohibit NRS from contacting putative class members based on his misrepresentations and omissions about testimony of a former NRS employee—distortions so bad the witness characterized Plaintiff's motion as "deceptive" and offered to testify to that in person, a move Plaintiff tellingly opposed. ECF Nos. 101, 106-1.[3]

---

[2] Contrary to Plaintiff's description of the docket entry (at 1), Judge Gilbert's written order did not deny the motion to compel in part.

[3] Plaintiff alternatively moved to compel NRS to produce the **same phone numbers at issue in this objection**, making his refusal to extend his Rule 72 especially puzzling. ECF No. 101, 15.

2

In addition to being frivolous as explained in the opposition attached hereto as Exhibit 1, that motion raises the same First Amendment concerns he accuses Judge Gilbert of infringing. It also raises additional, grave Due Process concerns since it asks the Court to eliminate NRS's ability to defend itself by using its own documents to show individualized issues that preclude certification. Plaintiff also moved to compel NRS to produce communications with putative class members, documents it doesn't possess. ECF No. 102.

Through this trio of unnecessary briefs, Plaintiff disregarded this Court's order to "take the tone of this litigation down a few notches and [] not file unnecessary motions or response briefs[.]" ECF No. 95. Instead, Plaintiff repeated the same *ad hominem* personal attacks that Judge Gilbert already rejected, and added more, such as his outrageous, false, and admitted total speculation that NRS was "abusing" putative class members and forcing them to sign releases. ECF No. 101, 2 n.3. Plaintiff's counsel even admitted that he manually searched through each of lead counsel's published decision to see if he could find any "dirt" on him. That didn't yield anything, so he just made things up.

Like his other motions, Plaintiff's instant objection must be denied, as it falls far short of establishing a "clear error." Instead, the objection distorts Judge Gilbert's order in an attempt to convince this Court to substitute its own opinion. Plaintiff argues that because Judge Gilbert voiced concerns about Plaintiff contacting putative class members, his order refusing to immediately compel NRS to produce their individual phone numbers is effectively a prohibition on such contact, violating the First Amendment. And though the parties just started working through the stipulation, Plaintiff complains that it's unfairly tilted in NRS's favor, raising issues Plaintiff told Judge Gilbert the stipulation would resolve.

3

None of Plaintiff's grievances show any error, much less a "clear error," which is an "extremely deferential standard of review." *Pinkston v. Madry*, 440 F.3d 879, 888 (7th Cir. 2006). As Plaintiff acknowledges, Judge Gilbert explicitly refused his invitation to enter a "bar on communicating with class members." Oct. 16 Hearing Tr., 37:6–18, 47:22–48:1. Instead, his order was grounded in proportionality. That the proportionality analysis involved concerns about Plaintiff contacting putative class members given the pending adequacy issues does not transform an order about the production of NRS's confidential documents into a gag order. And Plaintiff's complaints about the compromise being unfairly tilted in NRS's favor all involve issues that fall squarely within Judge Gilbert's discretion.

The stipulation was a compromise and, by its nature, both parties had reservations. Of course, Plaintiff would prefer to have the full phone numbers right now. NRS isn't thrilled that it needs to pay a vendor to identify the line type for each phone number in the campaign reports, surrendering a potential class defense and helping Plaintiff's case. And NRS is especially concerned given Plaintiff has multiple pending motions demanding the phone numbers, even after NRS produced six campaign reports in reliance on the stipulation. But none of those concerns equate to clear error. The Court must overrule Plaintiff's objections.

## II. BACKGROUND

### A. Plaintiff Files a Motion to Compel NRS to Produce Documents.

On August 22, 2024, Plaintiff filed a motion to compel unredacted phone numbers. He argued that he needed the individual numbers so he could retain a vendor to confirm the number of cell phone subscribers in his proposed class for numerosity purposes. He also claimed that he needed to show that he could identify cell phone subscribers on a class-wide basis. ECF No. 48. He claimed that because discovery isn't bifurcated, he was entitled to information beyond what is relevant to certification. NRS opposed, arguing that Rule 23

limits pre-certification discovery to information that the Court needs to conduct a Rule 23 analysis, and Plaintiff did not need the full phone numbers for that purpose. ECF No. 56. The Court scheduled a hearing on the motion for October 16.

### B. Judge Gilbert Holds a 2-Hour Hearing on the Motion on October 16.

During the hearing, Judge Gilbert agreed that Plaintiff was entitled to information to argue his motion to certify a class. He explained that the parties needed to prioritize discovery relevant to class certification as the motion needs to be filed "as early in the case as you can." Oct. 16 Hearing Tr., 46:3–6. That discovery wasn't bifurcated, Judge Gilbert explained, wasn't a "gotcha" that Plaintiff could use to "get everything now." *Id.* at 56:5–7. "[Y]ou are not entitled to take all discovery, even of relevant information, unless it is proportional to the needs of the case and not unduly burdensome for any number of reasons," he explained to Plaintiff. *Id.* at 24:16–19. Accordingly, Judge Gilbert said he wanted the parties to identify "the information plaintiff is going to need . . . to argue for class certification." *Id.* at 26:20–25.

Judge Gilbert rightly wasn't convinced that Plaintiff needed the full phone numbers to argue certification, questioning why needed them "to get a class certified on the issue of numerosity or anything else, frankly." *Id.* at 13:7–15, 23:3–8. And though he signaled concern about the putative class members' privacy, he also acknowledged that if "the only way plaintiff can get that information is by the actual cell phone numbers, then I am not averse to doing that." *Id.* at 28:5–18. Judge Gilbert also refused to consider Plaintiff's request for "bar on communicating with class members," or even NRS's fallback position of a one-way bar on Plaintiff pre-certification. *Id.* at 37:6–18, 47:22–48:1; ECF No. 56, 7 n.1. In rejecting these proposals, Judge Gilbert cited the difficulty of policing the order and its potential impact on the parties' First Amendment rights. Oct. 16 Hearing Tr.*,* 47:22–48:25.

5

Plaintiff explained that he would be willing to accept a stipulation "that these [the numbers in the VoiceLogic campaign reports] are cell numbers, and [NRS is] not challenging that[.]" *Id.* at 49:15–50:23. He said that "would be good enough . . . until we revisit this issue later." *Id.* at 50:21–23. On Plaintiff's recommendation, Judge Gilbert instructed the parties to work on a compromise. *Id.* at 58:7–13. The Court then entered a minute entry to that effect, taking Plaintiff's motion to compel under advisement. ECF No. 74.

After the hearing, the parties began working on a stipulation. However, they had a dispute about using a vendor to identify the carrier type and the ability to reliably distinguish between cellular telephone and VOIP service providers. Accordingly, the parties asked Judge Gilbert for a conference, which he scheduled on November 6, 2024. ECF No. 85.

    **C.    Judge Gilbert Conducts an Additional Conference on Plaintiff's Motion on November 6.**

During the November 6 conference, Judge Gilbert again stressed that he wanted to give Plaintiff "the information you need for a portion of your class certification briefing to show numerosity and that a class action is the superior way of dealing with this, rather than individual cases." Nov. 6 Hearing Tr., 7:13–8:11. Though he did not believe Plaintiff needed the full phone numbers before certification, he left that question open. He explained "if [Defendant] can't do what you need, Mr. Glapion, then we come back and you got to get something else." Nov. 6, 2024 Transcript at 13:10–12. He also warned NRS that if it couldn't address Plaintiff's concerns through the stipulation, he would consider "giving plaintiff all the data[.]" *Id.* at 26:19–24. Thus, notwithstanding his concerns, Judge Gilbert was ready to compel that data if Plaintiff could establish he needed the information to argue certification. Consistent with his intent to leave that question open, Judge Gilbert entered an order on November 7, granting Plaintiff's motion in part. ECF No. 87.

6

**D. Plaintiff Continues his Efforts to Obtain the Numbers via a Variety of Misrepresentations and Meritless Filings, Ignoring this Court's Order and Causing NRS to Prejudice Itself With the Stipulation**

On November 7, 2024, Plaintiff advised that if Judge Gilbert entered an order on his motion to compel, he would need to preserve his "arguments that I am entitled to the unredacted numbers." Email, ECF No. 112-4, 14. NRS recommended moving for an extension so the parties could work through the stipulation "before having to raise it with Judge Harjani." *Id.* at 11. At first, Plaintiff seemed open to that, suggesting the parties ask the Court to stay the Rule 72 deadline or Judge Gilbert modify his order to hold the motion in abeyance. *Id.* at 10. NRS told Plaintiff that either proposal was acceptable. *Id.* at 8.

At the same time, Plaintiff used the November 14 deposition of Michael Hellerman, a former NRS employee, to manufacture an angle to re-ask Judge Gilbert to compel the phone numbers and prohibit NRS from investigating Plaintiff's class allegations. By distorting Mr. Hellerman's deposition testimony, Plaintiff accused the undersigned of "coercing" Hellerman to sign a "sham" declaration, which Plaintiff argued justified prohibiting NRS from contacting putative class members and allowing Plaintiff to contact those class members by compelling NRS to produce their phone numbers. *See generally* ECF No. 101.

Plaintiff's charges were severe, and Judge Gilbert initially scheduled a hearing on the motion for December 19. ECF No. 103. But the attack was frivolous. Mr. Hellerman himself called Plaintiff's motion "deceptive" and volunteered to attend the hearing in person to set the record straight. ECF Nos. 106, 106-1. Plaintiff knew Hellerman would expose his manufactured attack and further bolster NRS's pending motion to deny certification on adequacy grounds. So he opposed NRS's request, claiming it would turn his side-show into the "circus" it already was, and asking the Court to keep the hearing date. ECF No. 108. Plaintiff also asked the Court for an interim order prohibiting communications with putative

7

class members until after the hearing. *Id.*; ECF No. 110. After the parties previewed their arguments, Judge Gilbert canceled the hearing and declined any prohibition. ECF No. 111.

Plaintiff wants the Court to give him all the data, regardless of whether he needs it, and prevent NRS from obtaining information that might hurt his case. Consistent with that approach, Plaintiff rejected NRS's offer to extend his Rule 72 deadline and filed this objection before NRS even executed the stipulation. Notwithstanding Plaintiff reneging on his compromise, NRS executed the stipulation and has worked to meet its obligations under the same. NRS has already produced six VoiceLogic campaign reports with the carrier identified.

Beyond the prejudice it would cause to NRS, Plaintiff hasn't come close to identifying a clear error and the Court must overrule his objection.

### III.   ARGUMENT

"A magistrate judge's ruling on a nondispositive matter may be reversed only on a finding that the order is clearly erroneous or contrary to law." *Guster-Hines v. McDonald's USA, LLC*, 2024 WL 4476155, at *2 (N.D. Ill. Oct. 11, 2024) (cleaned up). "Clear error is an extremely deferential standard of review, and will only be found to exist where the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Pinkston*, 440 F.3d at 888 (internal citations and quotations omitted). In other words, the error must strike the Court "as wrong with the force of a 5 week old, unrefrigerated, dead fish." *S Indus., Inc. v. Centra 2000, Inc.*, 249 F.3d 625, 627 (7th Cir. 2001).

Though Plaintiff's recent filings certainly smell fishy, that hasn't helped him satisfy this heavy burden. Judge Gilbert properly held that Plaintiff did not need the full phone numbers to argue certification based on Plaintiff's own contentions about what he needed over two hearings that spanned almost three hours. And his order refusing to immediately compel NRS to produce the individual phone numbers for each putative class member in no

way implicates Plaintiff's First Amendment rights. Plaintiff's remaining complaints about the compromise being unfairly tilted in NRS's favor involve issues that fall squarely within Judge Gilbert's discretion to identify the proportional scope of discovery.

> **A. Judge Gilbert Properly Exercised his Discretion in Refusing to Compel NRS to Produce the Full Phone Numbers.**
>
> > *1. Judge Gilbert's Proportionality Analysis.*

Initially, Judge Gilbert correctly declined to compel NRS to disclose the full phone numbers based on proportionality. Proportionality is a "realistic assessment of actual need[s]" of the case. *Metcalf v. Ross*, 2021 WL 1577799, at *2 (N.D. Ill. Apr. 22, 2021) (cleaned up). Determining what the moving party actually needs may "require the active involvement of … the federal judge to guide decisions respecting the scope of discovery." *Id.* This, in turn, requires analyzing "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, *the importance of the discovery in resolving the issues*, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *Motorola Sols., Inc. v. Hytera Commc'ns Corp.*, 365 F. Supp. 3d 916, 924 (N.D. Ill. 2019). The court has "wide discretion in balancing these factors and deciding the appropriate scope of proportional discovery." *DeBoard v. Union at Crescent, LP*, 2023 WL 2930823, at *1 (S.D. Ind. Apr. 13, 2023).

This is the exact analysis Judge Gilbert performed through two hearings. He correctly held that the relevant question is whether the full phone numbers are relevant to certification. That discovery wasn't bifurcated isn't a "gotcha" Plaintiff can use to "get everything now." Oct. 16 Hearing Tr., 56:5–7. And while Plaintiff complains that he has a single period in which to complete discovery, Judge Gilbert acknowledged they could extend the discovery

9

deadline—and he recently did that with NRS's consent. *Id.* at 24:11–15; ECF No. 114 (extending fact discovery deadline to February).[4]

Throughout the hearings, Plaintiff was unable to convince Judge Gilbert that he needed the individual phone numbers to argue certification. In other words, Judge Gilbert found that the full numbers were not so important as to justify compelling NRS to produce them. That Judge Gilbert didn't explicitly address the cost of producing the full phone numbers, as Plaintiff complains (at 11), is no reason to jettison his balancing the proportionality factors. Plaintiff's view on cost is also overly simplistic and erroneous. The cost will not come from producing the numbers, but from what Plaintiff does with them. Plaintiff turned NRS's benign and commonplace representation of a former NRS employee who Plaintiff's counsel aimed to potentially sue personally (*see* ECF No. 76-3, 211) into a sideshow that has cost NRS close to a hundred thousand dollars, with a half dozen related briefs, depositions, and potentially live witness testimony. ECF Nos. 102, 106, 108, 110. As Judge Gilbert recognized, there is a significant likelihood that compelling the phone numbers at this time would lead to additional motion practice. Nov. 6 Hearing Tr., 9:7–20.

That another judge would have come to a different conclusion on balancing proportionality does nothing to prove a clear error. "Magistrate judges have extremely broad discretion in controlling discovery when matters are referred to them for discovery supervision." *St. Paul Guardian Ins. Co. v. Walsh Constr. Co.*, 2022 WL 1642311, at *1 (N.D. Ill. Mar. 30, 2022). As a result, "in most instances, two decision-makers – on virtually

---

[4] If the class is certified, the Court may allow additional discovery "directed at individual class members[,]" as courts do in virtually every certified class action. *See, e.g., Rogers v. Baxter Int'l Inc.*, 2007 WL 2908829, at *1 (N.D. Ill. Oct. 4, 2007) (describing the scope of post-certification discovery); *see also R & D Bus. Sys. v. Xerox Corp.*, 150 F.R.D. 87, 90 (E.D. Tex. 1993) (extending discovery deadline after certification).

identical facts – may arrive at opposite conclusions, both of which constitute appropriate exercises of discretion." *Rayome v. Abt Elecs.*, 2024 WL 1435098, at *4 (N.D. Ill. Apr. 3, 2024).

Accordingly, Plaintiff's reference (at 7–9) to other courts finding similar information discoverable is irrelevant. And Plaintiff's extensive reliance on *Hossfeled v. Allstate*, 2021 WL 4819498 (N.D. Ill. Oct. 15, 2021) is a transparent attempt to convince this Court to improperly substitute its opinion for the magistrate judge. *Africano v. Atrium Med. Corp.*, 2020 WL 5691596, at *2 (N.D. Ill. Sept. 3, 2020) ("[T]he district court may not reverse the magistrate judge's decision simply because the district court judge would have come to a different conclusion." (cleaned up)).

What's more, Plaintiff glosses over the fact that *Hossfeld* conditioned disclosure on ***the plaintiff refraining from contacting the persons on list***. 2021 WL 4819498, at *6. Plaintiff (at 9) claims the moving party did not respond to the argument that he wanted to solicit putative class members , seeming to imply that the Court committed error because it was unaware of the First Amendment concerns (notwithstanding its citation to *Williams v. Chartwell Financial Servs.*, 204 F.3d 748, 759 (7th Cir. 2000)). As explained below, however, a ruling on a motion to compel, even a compromise like the one Your Honor ordered in *Hossfeld*, doesn't violate the moving party's First Amendment rights. That's particularly true as to Judge Gilbert's Order, since it did not contain a no-contact component, as explained immediately below.

### 2. Judge Gilbert's Ruling Was Not a No-Contact Order.

Plaintiff cannot convince the Court to intervene on a matter that was clearly within Judge Gilbert's discretion, so he tries to reframe the order as a prohibition on contacting putative class members implicating his freedom of speech. But Plaintiff's characterization is wrong, as Judge Gilbert specifically declined to enter such an order.

11

*Chartwell*, which Plaintiff heavily relies on, didn't even involve a motion to compel. 204 F.3d 748. Rather, there, the Seventh Circuit reversed the district court for entering a **protective order** that **affirmatively** "prohibited the plaintiffs from contacting members of the putative class of Chartwell's customers." *Chartwell*, 204 F.3d at 759 (citing *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 100–01 (1981)). The Seventh Circuit explained such an order needs to be supported by "a clear record and specific findings" of misconduct. *Id.* Even then, the Seventh Circuit did "not say that the District Court was wrong," just that the record was insufficient to support a prohibition. *Id.* at 760.

This case doesn't involve a no-contact protective order at all, and the record supporting Judge Gilbert's order is significant. Judge Gilbert explicitly declined to enter such an order, even when *Plaintiff himself proposed a* "two-way bar on communicating with class members" as an alternative to what Judge Gilbert ultimately ordered. Oct. 16 Hearing Tr., 37:6–18, 47:22–48:1. Rather, this case involves the denial of a motion to compel NRS's business records on proportionality grounds. The order places no limits on speech, and indeed Plaintiff is still free to contact whomever he wants in connection with this case.

Such a ruling doesn't implicate *Chartwell* at all, which "'does not address whether a defendant has an obligation to produce contact information to facilitate plaintiff's pre-certification contact with putative class members.'" *In re Jimmy John's Overtime Litig.*, 2016 WL 8950085, at *2 (N.D. Ill. Apr. 12, 2016) (quoting *Swelnis v. Universal Fid.*, 2014 WL 1571323, at *2 (N.D. Ind. Apr. 17, 2014)). On the contrary, "*Chartwell* charts a court for restricting Plaintiffs' access to contact information of putative class members, as opposed to compelling its production." *In re Jimmy John's Overtime Litig.*, 2016 WL 8950085, at *2. And "potential for abuse created in class actions" may very well justify refusing to compel defendants from disclosing contact information on proportionality grounds without

12

implicating First Amendment rights. *Id.* (refusing to compel contact information where defendant agreed to provide that information to a third-party administrator). This Court certainly thought so when it issued its ruling in *Hossfeld*, which (unlike Judge Gilbert's order) did have a plaintiff-only no-contact component.

Plaintiff hasn't cited a single case where a reviewing court scrutinized motivations behind a decision to deny a **motion to compel** to drum up a First Amendment issue. Such a ruling would create First Amendment scrutiny in any case where the court refuses to disclose records containing contact information, needlessly injecting free speech concerns into the Court's proportionality analysis. Those concerns would also prohibit courts from imposing reasonable conditions on disclosure, like Your Honor did in *Hossfeld*. That makes no sense and is not the law, and the Court should reject Plaintiff's First Amendment argument.

Accordingly, Judge Gilbert rightly pointed to the pending motion to deny class certification as an additional concern, weighing against compelling NRS to disclose the phone numbers on proportionality grounds. Nov. 6 Hearing Tr., 9:7–20. Judge Gilbert recognized the reality of that pending motion to deny certification. That he wanted to avoid inviting disputes about improper solicitation and chose not to compel the phone numbers is not the same as prohibiting Plaintiff from contacting putative class members.

B.  **The Remaining Issues Do Not Amount to Clear Error.**

The remaining issues Plaintiff identifies fall squarely within a magistrate judge's significant discretion to determine what discovery is proportional to the needs of the case and therefore do not amount to a clear error. Plaintiff complains (at 13–15) that the compromise demonstrates that the phone numbers are relevant and thus should be compelled; Plaintiff only has a single discovery period (which the Court just extended and can further extend if a class is certified) and going through the compromise will cause unnecessary delay; Plaintiff

13

will not be able to check NRS's work; NRS should have no say in who Plaintiff hires to identify line types; and that the compromise will create issues authenticating and preserving records.[5] But these are all questions of proportionality, and Plaintiff raised most of these issues (except for the authentication issue below) in briefing or during the hearing. Oct. 16 Hearing Tr., 15:8–10 (need to subpoena carriers); ECF No. 57, 5, 7 (outsourcing litigation to NRS, checking NRS's work, ability to rely on his own expert). Moreover, Plaintiff told the Court that the proposed stipulation would be "equally sufficient" to resolve those concerns. Oct. 16 Hearing Tr., 52;2–8. Judge Gilbert, considering the information Plaintiff said he needed and that a stipulation was an acceptable solution, thus properly found there was no need to compel NRS to produce the individual phone numbers. *Id.* at 55:7–56:15.

      Plaintiff is also estopped from raising these concerns. NRS relied on Plaintiff's promise that the stipulation would resolve the issues in his motion to compel and has spent considerable resources satisfying its obligations under the stipulation, including by producing six VoiceLogic campaign reports. After demanding NRS jump through these hoops, Plaintiff cannot turn around and renounce the stipulation. *The Boler Co. v. Arvinmeritor, Inc.,* 2004 WL 1595310, at *2 (N.D. Ill. July 16, 2004) (describing judicial estoppel). Plaintiff's objections are also premature. The parties just started working through the stipulation, so there's no telling whether or how these issues will manifest. The Court already extended the fact discovery deadline. ECF No. 114. Had Plaintiff agreed to move to extend the Rule 72 deadline, as NRS offered, the parties would have had a chance to work through this process and had an opportunity to address them without having to brief the issues now.

---

[5] Plaintiff's reliance on "the *ipse dixit* that the information is relevant" is misplaced as relevance is not "outcome-determinative." *Motorola*, 365 F. Supp. 3d at 925 (N.D. Ill. 2019) (criticizing plaintiff for focusing on relevance when the question was whether discovery sought was proportional). Judge Gilbert explained exactly this point to Plaintiff at the initial hearing. Oct. 16 Hearing Tr., 24:11–19.

14

As to Plaintiff's authentication argument, he didn't raise it with Judge Gilbert and therefore waived it. *United States v. Melgar*, 227 F.3d 1038, 1040 (7th Cir. 2000) ("[A]rguments not made before a magistrate judge are normally waived."). In any event, assuming the Court overrules Plaintiff's objection, NRS will agree not to raise an authenticity challenge on that point so long as Plaintiff does not have the unredacted VoiceLogic campaign reports. Thus, Plaintiff's concern is meritless.

## IV. CONCLUSION

During the course of two hearings and extensive briefing, Judge Gilbert went to great lengths to make a proportional discovery ruling. He hasn't prohibited either party from contacting putative class members, notwithstanding Plaintiff's own suggestion that he do so. As such, Plaintiff's attempt to reframe the order as a First Amendment violation falls flat. And while Plaintiff would certainly prefer to have the phone numbers now and has filed multiple motions demanding the same relief, it was Judge Gilbert's call, and he properly exercised his discretion. The Court must overrule Plaintiff's objection.

*[Signature Appears on Following Page]*

DATED: December 16, 2024.

    Respectfully submitted,

    */s/ Patrick J. Fitzgerald*
    Ryan D. Watstein (*admitted pro hac vice*)
    ryan@wtlaw.com
    Patrick J. Fitzgerald (*admitted pro hac vice*)
    pfitzgerald@wtlaw.com
    **WATSTEIN TEREPKA LLP**
    1055 Howell Mill Road, 8th Floor
    Atlanta, Georgia 30318
    Tel: (404) 782-9821
    Fax: (404) 537-1650

    Justin M. Penn, ARDC 6283726
    jpenn@hinshawlaw.com
    **HINSHAW & CULBERTSON LLP**
    151 North Franklin Street, Suite 2500
    Chicago, Illinois 60606
    Tel: (312) 704-3000

    *Counsel for Defendant*

**CERTIFICATE OF SERVICE**

I hereby certify that on December 16, 2024, I caused to be electronically filed a true and correct copy of the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record.

                                           */s/ Patrick J. Fitzgerald*
                                           Patrick J. Fitzgerald