**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| RASHAD WALSTON, on behalf of himself and all others similarly situated, | : : : | Case No. 1:24-cv-00083 |
| Plaintiff, | : : | |
| v. | : : | |
| NATIONAL RETAIL SOLUTIONS, INC. D/B/A NRS PAY, | : : : | |
| Defendant. | : | |

_____

**DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION**
**<u>FOR RELIEF UNDER RULE 23(d)</u>**

## TABLE OF CONTENTS

I.     INTRODUCTION ...................................................................................................1

II.    BACKGROUND ...................................................................................................4

     A.    Michael Hellerman Agrees to Retain Watstein Terepka, Given Plaintiff's Announced Intention to Potentially Sue Employees Personally. ...................4

     B.    Plaintiff Unilaterally Contacts Mr. Hellerman Without Telling NRS Counsel.........................................................................................4

     C.    Michael Hellerman Deposition. ....................................................................6

     D.    Plaintiff Attacks NRS Counsel, Again. .........................................................9

III.    ARGUMENT ......................................................................................................10

     A.    NRS Counsel Did Not Coerce Mr. Hellerman...........................................11

     B.    Plaintiff's Remaining Arguments Are Irrelevant and Groundless. ..............13

          1.    *NRS Counsel's Past Cases.* ..............................................................13

          2.    *NRS Counsel Did Not Improperly Solicit Mr. Hellerman.* ...................15

     C.    Plaintiff's Authority Supports NRS, not Plaintiff, and Confirms that NRS is Entitled to Contact Putative Class Members. ...........................16

IV.    CONCLUSION...................................................................................................19

## TABLE OF AUTHORITIES

**Cases**

*Abdallah v. Coca-Cola,*
  186 F.R.D. 672 (N.D. Ga. 1999) ..................................................................... 18

*Arwa Chiropractic, P.C. v. Med-Care Diabetic & Med. Supplies, Inc.,*
  961 F.3d 942 (7th Cir. 2020) .......................................................................... 4

*Baldwin & Flynn v. Nat'l Safety Associates,*
  149 F.R.D. 598 (N.D. Cal. 1993) ................................................................... 18

*Bower v. Bunker Hill,*
  689 F. Supp. 1032 (E.D. Wash. 1985) ........................................................... 18

*Dawson v. Porch.com,*
  2024 WL 4765159 (W.D. Wash. Nov. 13, 2024) ........................................... 16

*Driver v. Marion Cty.,*
  859 F.3d 489 (7th Cir. 2017) ................................................................... 2, 18

*Fox v. Ritz-Carlton Hotel Compan,*
  2023 WL 2866249 (S.D. Fla. Mar. 8, 2023) ................................................. 15

*Fox v. Ritz-Carlton,*
  345 F.R.D. 358 (S.D. Fla. 2024) ............................................................ 14, 15

*Gulf Oil Co. v. Bernard,*
  452 U.S. 89 (1981) ................................................................................. 10, 11

*Katz Chiropractic, Inc. v. Diamond Respiratory Care,*
  340 F.R.D. 383 (N.D. Cal. 2021) .................................................................. 14

*Kleiner v. First Nat'l Bank of Atlant,*
  751 F.2d 1193 (11th Cir. 1985) ..................................................................... 18

*Kuhl v. Guitar Ctr. Stores, Inc.,*
  2008 WL 5244570 (N.D. Ill. Dec. 16, 2008) ................................................ 17

*Mullen v. GLV, Inc.,*
  334 F.R.D. 656 (N.D. Ill. 2020) .................................................................... 18

*Reid v. Unilever,*
  964 F. Supp. 2d 893 (N.D. Ill. 2013) ................................................. 10, 11, 17

*Rivera v. Lettire Constr. Corp.,*
  2022 WL 2718999 (S.D.N.Y. June 9, 2022) ................................................. 16

*Sliwa v. Bright House Networks, LLC,*
   2:16-cv-00235 (M.D. Fla. Dec. 17, 2018) ....................................................... 14

*Steven A. Conner DPM, P.C. v. Fox Rehab. Servs., P.C.,*
   Case No. 2:21-CV-1580 (E.D. Pa.) ........................................................... 3, 14

*Sullivan v. Saint-Gobain Performance Plastics Corp.,*
   2018 WL 11321826 (D. Vt. Dec. 28, 2018) .................................................. 16

*Wal-Mart v. Dukes,*
   564 U.S. 338 (2011) ..................................................................................... 2

**Other Authorities**

ABA Rule 4.3 ................................................................................................. 12

Model Rule 7.3 .............................................................................................. 15

**Rules**

Fed. R. Civ. P. 5.1 ......................................................................................... 6

Fed. R. Civ. P. 23 ......................................................................................... 10

## I.    INTRODUCTION

As Defendant NRS explained in its response to Plaintiff Rashad Walston's motion to compel, the plaintiff in a class action must prove that he can resolve liability on a class-wide basis with common proof. In building its defense, defendants have a right to (and routinely do) interview putative class members to explore whether the plaintiff can make that showing. Depending on the arguments the plaintiff makes at certification, defendants may rely on statements obtained in those interviews to show individual issues preclude certification.

That is also why plaintiffs *do not* conduct such interviews—because the plaintiff's job is to prove the court can assess liability without getting into the minutiae of individual experiences. The necessity of conducting such interviews would confirm the presence of individual issues that prevent certification. Plaintiff here, for example, didn't identify any need for full phone numbers other than to establish numerosity, which the parties resolved with a stipulation. ECF No. 104; October 16 Hearing Tr., 14:9–15:24, ECF No. 94.

Plaintiffs instead typically argue that the individual issues defendants point to don't matter legally. Sometimes plaintiffs also try to find a way to prevent defendants from using such declarations. The idea is that, if the evidence is unfavorable, then ask the Court to ignore it. Or better yet, in an extreme case, to mislead the Court into committing reversible error and constitutional violations by prohibiting a defendant from gathering evidence altogether.

The latter is Plaintiff's goal here. He knows that, in every case where defense counsel has represented the defendant, the court has denied certification, including based on sworn class member statements. So Plaintiff's counsel knows that, if he doesn't take drastic measures to stop interviews, the truth may prevent him from recovering his portion of the enormous amount of fees he (wrongly) claims (at 11) are at stake.

Plaintiff thus asks the Court to prohibit NRS from contacting putative class members, which the Court already rejected. October 16 Hearing Tr., 37:13–18, 47:22–48:14. Except now, he goes a step further and asks the Court to prohibit NRS from relying on evidence that he hasn't seen yet but suspects won't help his case. Plaintiff's proposal would violate NRS's First Amendment and Due Process rights and deprive the Court of evidence it needs to conduct a "rigorous analysis" of each Rule 23 factor. *See Driver v. Marion Cty.*, 859 F.3d 489, 493 (7th Cir. 2017) (quoting *Wal-Mart v. Dukes*, 564 U.S. 338, 350-51 (2011)).

Binding authority squarely precludes this extraordinary ask. Plaintiff concedes his burden is to show a clear record of coercive or misleading communications with putative class members—but he doesn't attempt to satisfy it. He instead outlandishly and baselessly claims (at 2), with no evidence, that the order is necessary to prevent NRS's counsel, Watstein Terepka, LLP ("NRS Counsel"), from bribing putative class members with "free trials of [their] services," forcing class members to sign releases, drafting false declarations, and representing adverse parties on both sides of a dispute. The Court should strongly condemn these baseless attacks and deny Plaintiff's motion.

That's particularly true because Plaintiff not only has no evidence that NRS coerced or misled putative class members in *this* case, but in *any* of NRS Counsel's approximately 500 past class actions. Despite dredging up a few cases and misciting them (as he unsuccessfully did when he moved to preemptively seal NRS's motion to deny certification), he omits that *every single court* rejected arguments like the one he makes here, finding nothing at all improper about defendants' routine gathering and use of declarations. He also omits that in some of these cases, the putative class member declarants later *testified at trial* with zero evidence of impropriety. *See, e.g.*, *Steven A. Conner DPM, P.C. v. Fox Rehab. Servs., P.C.*, Case No. 2:21-CV-

2

1580, ECF Nos. 58, 61, 84, 147 (E.D. Pa.) (denying certification, notwithstanding plaintiff's charge of coercive declarations, which proved false when the declarants testified at trial). There is simply nothing—not one instance—in NRS Counsel's approximately 500 class action representations, that would even suggest misleading a putative class member.

Because of that, Plaintiff has no choice but to base his extraordinary request entirely on distortions of and omissions from the deposition of a former NRS employee, Michael Hellerman, who is *not even a putative class member*. These distortions and omissions are so significant that Mr. Hellerman himself called them "deceptive" (his words). And he offered to testify live to reiterate this point (which Court should accept since the degree of Plaintiff's deception is relevant to NRS's pending adequacy challenge). ECF No. 106-1.

In any event, the truth about Mr. Hellerman is this: he agreed to be represented by NRS Counsel on August 16, 2024, the day on which NRS Counsel Pat Fitzgerald had an 8-minute conversation with him, established in the attached phone records. NRS Counsel agreed to this representation because Plaintiff's counsel said, in writing, that he *was engaged to sue NRS's "employees" and "agents" personally*, in addition to NRS itself. ECF No. 76-3, 211 (Plaintiff's engagement letter). So it was crucial to protect past employees like Mr. Hellerman with representation, a commonplace arrangement that severance agreements often require.

Notwithstanding this, Plaintiff's counsel did not check with NRS Counsel before he reached out to Mr. Hellerman. And when he spoke with him, Plaintiff's counsel wasn't clear about who he represented. As Mr. Hellerman testified, he thought Plaintiff's counsel *represented NRS* because Plaintiff's counsel didn't mention he was *suing* NRS. Hellerman Dep., ECF No. 108-1, 7:9–22, 16:1–25, 57:17–58:10. And he *certainly* never told Mr. Hellerman their interests were directly adverse as required under ABA Rule 4.3.

3

Plaintiff's attempt to wield his own misconduct as a sword against NRS is a new low. And it's precisely why he opposed Mr. Hellerman appearing at a hearing on this matter—to protect the illusion of impropriety he manufactured. ECF No. 108. The Court should deny Plaintiff's motion and condemn his continued improper tactics.

## II.     BACKGROUND

### A.     Michael Hellerman Agrees to Retain Watstein Terepka, Given Plaintiff's Announced Intention to Potentially Sue Employees Personally.

Plaintiff's engagement letter says he was retained to sue NRS and its "employees" and "agents." ECF No. 76-3, 211. So when NRS learned that Mr. Hellerman might have supervised the ringless voicemails, it immediately reached out to him to ensure he and NRS were protected.[1] Specifically, NRS Counsel Pat Fitzgerald contacted Mr. Hellerman on August 16, 2024, first by call and then a follow-up text message. Declaration of Patrick Fitzgerald, attached as Exhibit 1.[2] Mr. Hellerman responded by calling NRS Counsel (Mr. Fitzgerald), and the two spoke for eight minutes. *Id.*, Ex. A. ████████████████████ ████████████████████████████████████████████████████ *Id.* ¶ 4. Mr. Hellerman agreed to the firm representing him. *Id.* ¶ 5.

### B.     Plaintiff Unilaterally Contacts Mr. Hellerman Without Telling NRS Counsel.

Opposing counsel (particularly those hired to sue employees personally) typically ask a company's counsel if they represent former employees before contacting those persons.

---

[1] See, e.g., *Arwa Chiropractic, P.C. v. Med-Care Diabetic & Med. Supplies, Inc.*, 961 F.3d 942, 947 (7th Cir. 2020) (acknowledging that a corporate officers may be liable for company's TCPA violations where "the person had direct, personal participation in or personally authorized the conduct found to have violated the statute."). NRS Counsel denies that any personal liability would be warranted in this case, but some lawyers sue employees to increase leverage. It is therefore critical to protect such employees.

[2] These communications are redacted and filed under seal to preserve attorney-client privilege.

Plaintiff's counsel didn't do that here. Instead, he unilaterally contacted Mr. Hellerman on August 22, 2024. ECF No. 101-1, 16–17. He followed up with Mr. Hellerman, and when he didn't respond, was more insistent, stating that it was "important that I get to discuss this case with you and I hate surprising people with subpoenas." ECF No. 101-1, 16–17. Understandably concerned and confused, Mr. Hellerman called Plaintiff's counsel back.

On that call, Plaintiff's counsel failed to disclose his position or his adversity to Mr. Hellerman. His August 22 email—which Mr. Hellerman did not by then even recall receiving—vaguely mentioned Mr. Glapion was "an attorney . . . with a pending lawsuit against NRS[.]" ECF No. 101-1, 16; Hellerman Dep., 57:17–58:10. But during the October 7 call, Plaintiff's counsel did not mention that he was suing NRS. December 16 Declaration of Michael Hellerman, attached as Exhibit 2; Hellerman Dep., 57:17–58:10. And while Plaintiff's counsel testifies that he asked Mr. Hellerman if he was represented by counsel, Mr. Hellerman doesn't remember that. Hellerman Dep., 7:9–22. But Mr. Hellerman certainly *does* remember Plaintiff's counsel's failure to disclose adversity, much less that Plaintiff might sue Mr. Hellerman personally depending on what he learned. Hellerman Dep., 59:6–16. Had he known *that*, he wouldn't have spoken to Plaintiff's counsel. Dec. 10 Hellerman Decl. ¶ 8.

On October 7, Plaintiff's counsel told NRS that he intended to take Mr. Hellerman's deposition, revealing for the first time that he spoke with the former NRS employee without even asking NRS Counsel if it represented him. ECF No. 101-1, 19–23. NRS Counsel immediately responded that this was improper because NRS Counsel had represented Mr. Hellerman since August 16. *Id.* Plaintiff's counsel responded that Mr. Hellerman said he had "never heard of" Mr. Fitzgerald or Watstein Terepka, despite the definitive phone records attached hereto proving that impossible. *Id.* at 21.

To get to the bottom of these excuses, NRS Counsel contacted Mr. Hellerman on October 9, 2024. ████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████ October 10, 2024 Michael Hellerman Declaration, ECF No. 101, 33–34; Hellerman Dep., 16:1–18:8. As he also testified in his deposition, Mr. Hellerman wouldn't have "said anything, if [he] understood that" it "could be used in a lawsuit." Hellerman Dep., 22:5–11.

Beyond confirming Plaintiff's counsel's inadequate disclosure of his adversary, ████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████ Hellerman Dep., 29:25–30:8, 31:8–18. Later that day, NRS Counsel prepared a declaration summarizing the October 9 call, sent it to Mr. Hellerman in Word format ████

████████████████████████ *Id.*, Ex. B (email on October 9, 2024 at 12:20 PM). He returned the executed declaration on October 10, 2024. *Id.* (email on October 10, 2024 at 11:49 AM).

### C.    Michael Hellerman Deposition.

In light of Plaintiff contacting a represented party and failing to disclose his adversity, NRS told Plaintiff to refrain from contacting current or former NRS employees in connection with this matter without checking if NRS Counsel represented them.  ECF No. 101-1, 25–28. He refused. *Id.* NRS Counsel likewise told Plaintiff that, contrary to all counsel's prior belief,

---

[3] Given Mr. Hellerman's limited involvement and lack of conflict, NRS Counsel followed its normal practice of not asking a former employee to sign a written engagement letter, which Plaintiff acknowledges is permissible under Rule 1.5.

Mr. Hellerman had a limited role in the ringless voicemails and his deposition would likely be a waste of time for both parties. *Id.* at 25.

Nevertheless, Plaintiff insisted on taking his deposition. Notwithstanding his false characterization (at 6–7), NRS Counsel never "sought to block" Mr. Hellerman's deposition. NRS Counsel didn't even threaten to move for protection or a time limit, much less actually do so. They instead coordinated the deposition and agreed for all involved to appear remotely, saving both parties' time and resources. Fitzgerald Decl. ¶ 13.

During the deposition, Plaintiff barely touched the merits he claimed were the basis for his request to depose Mr. Hellerman. Instead, he questioned him about the circumstances and dates of his representation by NRS Counsel, asking the same questions over and over to confuse the witness. Given the irrelevance of these points to the merits in the case, Mr. Hellerman did not memorize dates or research what it meant to be "represented." There was no reason to do that, as NRS's representation of Mr. Hellerman, a former employee called to testify about his work for the company, is mundane and was corroborated by phone records establishing the relevant dates. Fitzgerald Decl. ¶ 5; *id.*, Ex. A.

And while Plaintiff selects pieces of the transcript to accuse NRS Counsel of lying to the Court about representing Mr. Hellerman, the full transcript reveals he was simply confused about the term "represented" and the timeline of events when Plaintiff's counsel was questioning him. For example:

> Q. Sure. If you were not represented by counsel at the time of our conversation, how would you have been able to tell me that you were represented by counsel and declined to speak with me?
> A. Okay, let's – I wasn't represented. Therefore, let's just say that because I didn't have representation, I really didn't know my role in this or what my rights in this were. So I probably would not have said anything, if I understood that, you know, this could be used in a lawsuit. How's that? Does that help a little bit?
> . . .

7

Q. So if an attorney represented to me that they represented you in connection with this matter on August 16th, is that true?

A. You have to ask me that again.

Q. If an attorney told me that they represented you in connection with this case since August 16th, is that true?

MR. FITZGERALD: Objection.

A. Yeah.

Q. I feel like we're maybe on a different – we're talking about different things here.

. . .

Q. The one thing I could say about me is I don't remember dates very well at all. So this is really not going to give you much clarity. I don't know.

Hellerman Dep., 21:24–22:11, 47:19–25, 48:18–23; *see also* 52:4–11 (confirming declaration testimony that he agreed to retain NRS Counsel on August 16).

On re-direct, after Mr. Hellerman went back and confirmed his phone records, he explained exactly this, in addition to confirming that he agreed to NRS Counsel representing him when they first spoke on August 16. Here is that testimony, which Plaintiff omitted:

Q. []When we talk about whether or not you're represented, you don't – you might not know the legal significance of that. Is that correct?

A. That's right, I don't.

Q. Now, you testified in this declaration that I contacted you on August 16th. Do you remember that?

A. Yes.

Q. And do you remember speaking with me and, as you testified here, that NRS would pay to represent you in this matter, and that you had representation?

A. Yes.

Q. So you were represented by counsel as of August 16th. Is that correct?

A. Yeah, I looked at my text messages. That's when we first spoke.

*Id.* at 55:12–22, 56:7–13. Unbeknownst to either lawyer, Mr. Hellerman had recently adopted an infant before the initial August call, further impacting his ability to correctly recall the exact timeline. Dec. 16 Hellerman Declaration ¶ 4.

Plaintiff's charge that NRS Counsel prepared a sham declaration likewise falls flat. Mr. Hellerman not only testified that he reviewed the October 10 declaration before signing it, he also repeatedly confirmed the material statements therein:

8

Q. And in this document, you wrote – or you testified in this declaration that "Counsel for NRS, Patrick Fitzgerald, contacted me and advised that NRS would pay for the firm to represent me in connection with this matter."
Do you see that, in Paragraph 4?[4]
A. Yes.
Q. Is that accurate?
A. Yeah.
. . .

Q. "Because of the way Mr. Glapion presented himself, I mistakenly believed that Mr. Glapion represented NRS and assumed he was NRS's counsel."
Do you see that?
A. Yes, and that's correct.
Q. A moment ago, and I'll look at the realtime, I believe you testified to that you didn't understand it when we spoke, "we" being you and me in this scenario?
A. Correct.
Q. You didn't understand the relationship.
A. Correct.
Q. Can you reconcile what it says in paragraph 5 about your understanding of the relationship, and that testimony that you just provided?
MR. FITZGERALD: Objection.
A. I understood that you were counsel in this pending lawsuit between NRS and whoever was suing NRS, that's what I understood. But I didn't understand who you represented.
Q. But here it says that you had assumed I was NRS's counsel. Did you assume I was NRS's counsel?
A. At first I did, yeah.

*Id.* at 16:1–25; *see also* 51:22–24 (confirming he reviewed the declaration), 57:17–58:10

(confirming Hellerman didn't recall receiving Aug. 22 email).

**D.    Plaintiff Attacks NRS Counsel, Again.**

The transcript was clear that Mr. Hellerman was simply initially confused about the term "representation" and the timeline. Nevertheless, presumably still upset about NRS's motion challenging his adequacy, a routine practice that defense counsel has a fiduciary obligation to undertake in *any and every* class action where it is an issue, Plaintiff's counsel cherry-picked from the deposition and filed this motion. In it, he accuses NRS Counsel of

---

[4] Plaintiff's counsel conveniently failed to mention the August 16 date before questioning Mr. Hellerman about the date he agreed to retain NRS Counsel.

lying that it represented Mr. Hellerman, and asks the Court to enter a no-contact order that he wrongly accuses the Court of entering against him. ECF No. 97.

When NRS Counsel told him about the motion, Mr. Hellerman described Plaintiff's characterization of his testimony as "deceptive" and volunteered to appear in person to further set the record straight. ECF No. 106-1. In the meantime, he provided the Court with a declaration, briefly summarizing his thoughts on Plaintiff's motion. *Id.* But Plaintiff wanted to preserve the veneer of impropriety, so he opposed Mr. Hellerman's attendance, claiming it would turn his side-show into a "circus," which it already is. ECF No. 108.

NRS now opposes Plaintiff's motion, which has cost NRS tens of thousands of dollars of needless expense.

## III. ARGUMENT

As Plaintiff concedes, the standard to restrict communications under Rule 23(d) is high. The Court may only act when a party has engaged in "coercive, misleading, or other abusive communications" with them. *Reid v. Unilever*, 964 F. Supp. 2d 893, 926 (N.D. Ill. 2013). Coercion is "[c]ompulsion by physical force or threat of physical force" or "[c]onduct that constitutes the improper use of economic power to compel another to submit to the wishes of one who wields it." *Id.* And courts can't impose such restrictions "without a specific record showing by the moving party of the particular abuses by which it is threatened." *See Gulf Oil Co. v. Bernard*, 452 U.S. 89, 102 (1981) (reversing finding the lower court abused its discretion when entering contact order). For example, the *Reid* Court refused to impose a limitation, finding, notwithstanding the defendant **sent putative class members releases**, the plaintiff failed to meet his burden. *Id.* at 928. The Court explained that "[n]one of the class

10

members are dependent on Unilever for their financial livelihood," so there was no risk of coercion, nor evidence that the defendant misled a class member. *Id.* at 928-29.

The movant bears the burden of making this showing. *Gulf Oil*, 452 U.S. at 101-02. The First Amendment requires this, as the Supreme Court explained: "[The no-contact] order involved serious restraints on expression [which] counsels caution on the part of the district court[.]." *Id.* (cleaned up).[5] "Where there are no threats to the *potential class members* for participating in a class action, nor any evidence that a party misled the *potential class members* or discouraged their participation in the suit, courts have found that the moving party has failed to meet its burden." *Reid*, 964 F. Supp. at 929 (cits. omitted and emphasis added).

Here, there is no evidence that NRS Counsel coerced or misled anyone, or that there is a threat of such conduct. Mr. Hellerman, who is not a putative class member, signed the October declaration after reviewing and confirming its contents, which are accurate except for the dates of employment that came from Mr. Hellerman. Nor is there any evidence that NRS Counsel has ever, in any case, done anything to mislead or coerce a putative class member. Plaintiff's remaining charges are groundless and have nothing to do with any threatened coercion or misleading and are thus completely irrelevant to Rule 23(d) analysis.

Rather, the evidence is only that Plaintiff's counsel seeks to mislead the Court with a "deceptive" motion. The Court should deny it.

### A.    NRS Counsel Did Not Coerce Mr. Hellerman.

On the facts, Plaintiff falls short of showing NRS Counsel coerced or misled a putative class member, or that there is any risk of similar conduct. For starters, Mr. Hellerman isn't a

---

[5] Plaintiff's counsel will inevitably claim that his own speech was restricted when the Court refused to compel the production of full phone numbers. That's wrong. The Court didn't prevent Plaintiff from contacting anyone—it simply denied the Plaintiff's request for documents. ECF No. 87.

current NRS employee. He was free to refuse to sign the declaration. He voluntarily chose to sign it anyway. Yet, Plaintiff characterizes his declaration as a "sham" because Mr. Hellerman: (1) allegedly didn't explain how Plaintiff's counsel misled him during his October 7 call; and (2) didn't make any changes to the declaration. Plaintiff leaves out that Mr. Hellerman testified he reviewed the October 10 declaration before signing it and confirmed the material statements therein. Hellerman Dep., 16:1–5; 15:11–19, 52:4–24; 51:15–24. That, alone, defeats Plaintiff's motion.

Nevertheless, the record shows the accuracy of the statements at issue too, including that Plaintiff misled Mr. Hellerman by failing to disclose his adversity. Plaintiff's counsel was hired to sue NRS's "agents and employees[.]" ECF No. 76-3, 211.Yet he never told Mr. Hellerman during the October 7 call that he was suing NRS, or that based on Diana Stern's testimony, he suspected Mr. Hellerman might be liable. Hellerman Dep., 58:2–10. Under ABA Rule 4.3, Plaintiff's counsel had an obligation to make those disclosures. ABA Rule 4.3, cmt. [1] ("In order to avoid a misunderstanding, a lawyer will typically need to identify the lawyer's client and, where necessary, explain that the client has interests opposed to those of the unrepresented person.").

The only actual (but innocuous) error in Mr. Hellerman's declaration is that he stopped working for NRS in April 2020 instead of March 2020 (a month difference). NRS Counsel obtained that information from Mr. Hellerman himself. Dec. 16 Hellerman Decl. ¶ 12.[6] In any event, that's a far cry from a "sham" Plaintiff makes the declaration out to be.

---

[6] Plaintiff also takes issue with Mr. Hellerman testifying that he wasn't briefly involved in "NRS's efforts to retain VoiceLogic," but Mr. Hellerman was simply explaining that he wasn't the decisionmaker. Hellerman Dep., 24:16–19, 58:11–16. He later clarified that he did work with NRS when it was deciding whether to hire VoiceLogic. *Id.* at 30:6–14, 58:11–16.

Plaintiff also falsely charges (at 7–8) that NRS Counsel "lied" to the Court about when it represented Mr. Hellerman. Plaintiff's motion omits key passages from the transcript, like Mr. Hellerman confirming, after checking his phone records, that he agreed to be "represented by counsel as of August 16th[.]" Hellerman Dep., 22:5–11 (identifying his confusion about the term "represented" and his role in this case); 49:22–25 (testifying that he doesn't remember dates very well), 56:7–13, 55:12–22 (explaining he is not a lawyer and doesn't understand the significance of being "represented"). The accuracy of Mr. Hellerman's confirmatory testimony is further supported by the text messages, phone records, and declarations of counsel attached hereto. *See supra* Part II, A. Nothing shows NRS Counsel "coerced" or "misled" Mr. Hellerman. Just the opposite; NRS Counsel attempted to protect him against Plaintiff's counsel, who was hired to sue employees individually, if he could. Accordingly, the Court must deny Plaintiff's motion.

**B.    Plaintiff's Remaining Arguments Are Irrelevant and Groundless.**

Plaintiff's remaining charges have nothing to do with NRS misleading or coercing a putative class member and thus have no bearing on his Request for Rule 23(d) relief. Instead, they are continued needless attacks against NRS Counsel, which further underscore Plaintiff's counsel's inadequacy.

### 1.    *NRS Counsel's Past Cases.*

In the motion, Plaintiff (at 2–3) goes through NRS Counsel's past cases in an attempt to dig up any dirt he can, no matter how irrelevant. Plaintiff did the same thing when he sought to preemptively seal NRS's motion to deny class certification. ECF No. 69, 1–3. Not only is this unprofessional, none of the examples he cites are evidence of coercion or misleading a putative class member. In fact, many of the cases he cites confirms that Plaintiff's

motion to restrict NRS's communications with putative class members should be denied, just as similar requests have been in NRS Counsel's other cases.

Plaintiff first cites (at 2) *Katz Chiropractic, Inc. v. Diamond Respiratory Care*, to identify that NRS Counsel contact putative class members pre-certification. 340 F.R.D. 383 (N.D. Cal. 2021). Notwithstanding Plaintiff's insinuation, this is standard practice. Moreover, he omits—no doubt intentionally—that the court in that case *denied* the plaintiff's motion to strike those declarations and then relied on them to *deny* class certification in a putative TCPA class action. *See* 340 F.R.D. at 386, n.2 (denying motion to strike); *id.* at 388–89. No court has *ever* struck any such declarations obtained by NRS Counsel, and no court has *ever* prevented them from contacting putative class members.[7] *See, e.g.*, *Fox v. Ritz-Carlton*, 345 F.R.D. 358, 367 (S.D. Fla. 2024) (denying certification in TCPA class action in which counsel submitted putative class member declarations); *Sliwa v. Bright House Networks, LLC*, 2:16-cv-00235, ECF No. 206 (M.D. Fla. Dec. 17, 2018) (same); *Fox Rehab*, 2:21-CV-1580, ECF Nos. 84, 88 (denying motion to strike declarations from putative class members, many whom went on to testify at trial, confirming their declaration testimony).

Plaintiff also once again dredges up *Fox v. Ritz-Carlton Hotel Company, LLC* (at 3), just like he did in his preemptive motion to seal (ECF No. 69, 3). This attack, too, is groundless. The Court made no finding actual impropriety and disqualified local counsel to avoid the *appearance of impropriety*, after the magistrate judge voluntarily recused given local counsel's

---

[7] Plaintiff also implies (at 3) that NRS Counsel are contacting putative class members to obtain releases or arbitration agreements. That is a preposterous and baseless allegation. NRS's counsel has never done that in any case and isn't doing so now. NRS asserted an arbitration defense in its Answer to preserve its rights in case it determined that some of the putative class, including NRS's customers, had entered into arbitration agreements with NRS, not because its counsel is engaged in a secret campaign to obtain releases that include such provisions.

prior employment (and after the magistrate judge granted summary judgment in the defendant's favor). 2023 WL 2866249, *2 (S.D. Fla. Mar. 8, 2023). In any event, that decision had nothing to do with NRS Counsel contacting putative class members; Plaintiff raises it here just to attempt to embarrass. But it does have some relevance: the Court there went on to deny class certification and dismiss the case, relying on putative class member declarations. *Ritz-Carlton*, 345 F.R.D. 358, 367 (denying certification in TCPA class action in which counsel submitted putative class member declarations). That, of course, is what Plaintiff is worried about here, and it's why he filed this desperate, meritless motion.

### 2. *NRS Counsel Did Not Improperly Solicit Mr. Hellerman.*

Plaintiff's "improper solicitation" arguments (at 7) are also legally irrelevant. Whether a lawyer seeks to represent a former employee for pecuniary gain has nothing to do with whether they deceived or coerced class members, the relevant standard here.

In any event, NRS Counsel did not engage in an improper live solicitation. Model Rule 7.3 prohibits "live person-to-person contact *when a significant motive for the lawyer's doing so is the lawyer's or law firm's pecuniary gain*[.]" (emphasis added). The point of this rule is to prevent lawyers from soliciting people who have recently gone through traumatic experiences who may be unable "to fully evaluate all available alternatives" like injury victims, to file a lawsuit. Model Rule 7.3, cmt. [2].

So, as several courts have acknowledged, Rule 7.3 is not implicated when a company agrees to represent a former employee who might be called to testify—an arrangement that is "commonplace" even where, as here, the employee ultimately proves not to be a potential target of the lawsuit itself. *Rivera v. Lettire Constr. Corp.*, 2022 WL 2718999, at *1 (S.D.N.Y. June 9, 2022) ("[W]hen witnesses are current or former employees of a defendant, as is the

case for several of the Witnesses here, such an arrangement is commonplace."); *Sullivan v. Saint-Gobain Performance Plastics Corp.*, 2018 WL 11321826, at \*2 (D. Vt. Dec. 28, 2018) (collecting cases and opinions that contacting a former employee and offering to represent them did not amount to an improper live solicitation as they were not motivated by pecuniary gain). And because the lawyer is acting in the interest of his clients and not for "the lawyer's or law firm's pecuniary gain," those kinds of arrangements fall outside the scope of Rule 7.3. *Rivera*, 2022 WL 2718999, at \*1.

Plaintiff's attacks about alleged improper live solicitation are also disingenuous, cynical, and would lead to dangerous results. NRS Counsel reached out to Mr. Hellerman and offered their representation—at no charge to him—*to protect him and NRS*, given Plaintiff's announced intent to sue employees personally. Fitzgerald Decl. ¶ 3. NRS Counsel's intent was to increase efficiencies and *avoid* collateral disputes, like this motion, *reducing* NRS's expenses. *Id.* NRS, for its part, rightfully wanted to protect its former employee from liability for the work he did for the company. Had it proven that Mr. Hellerman was involved in the ringless voicemails, Plaintiff's proposal would leave him defenseless, possibly exposed to millions in liability and legal expenses. *See, e.g.*, *Dawson v. Porch.com,* 2024 WL 4765159, at \*3 (W.D. Wash. Nov. 13, 2024) (declining to dismiss TCPA claims against corporate officers). In any event, as there was no pecuniary motivation, Rule 7.3's prohibition doesn't apply.

## C. Plaintiff's Authority Supports NRS, not Plaintiff, and Confirms that NRS is Entitled to Contact Putative Class Members.

Next, the nature of this case doesn't justify blindly restricting NRS's First Amendment rights, and none of Plaintiff's "authority" says otherwise.

To start, Plaintiff charges without citation (at 11) that this case involves "brazen harassment" and that there is "exposure in excess of \$150 million." However, Plaintiff hasn't

identified a single person other than his client who has complained about these calls. Additionally, this is not a case where a large portion of the putative class members are NRS's employees, nor is there a business relationship that would make them dependent on NRS. *See, e.g., Reid*, 964 F. Supp. at 929 (refusing to impose Rule 23(d) restrictions, commenting there was no business relationship that made class members dependent on defendant). NRS has competitors, so even its customers can ignore NRS's questions without repercussion.

But even if the nature of this case were different, and there was a coercive relationship, the Court cannot impose restrictions without cause. *Reid*, 964 F. Supp. at 929 (even where there is an inherently coercive relationship "the Court must also have a clear record of the abusive litigation tactics"). As explained above, Plaintiff has come forward with no evidence of such abusive litigation tactics in this case, or in any of NRS Counsel's prior cases.

No court would prohibit communications with putative class members absent evidence of coercion, which Plaintiff failed to establish. Defendants facing high-exposure class actions have a right to speak with putative class members and to defend themselves with evidence. *Kuhl v. Guitar Ctr. Stores, Inc.*, 2008 WL 5244570, at *5 (N.D. Ill. Dec. 16, 2008) (defense counsel allowed to interview putative class members as "part of defendants' internal investigation into the validity of the allegations in plaintiffs' complaint and related exposure").

Pre-certification communication with putative class members is crucial because it's one of the few (if only times) a defendant may initiate such contact before certification, after which time the putative class members become Plaintiff's counsel's clients subject to Rule 4.2. Courts also benefit from that contact and the declarations it produces when performing the "rigorous" analysis mandated by Rule 23. *See Driver*, 859 F.3d at 492–93. That Plaintiff's

counsel wants to keep this information from the Court, of course, reiterates its critical importance.

The cases Plaintiff cites (at 12–14) almost all involve *post-certification* contact with class members, which is far more complicated because they are "regarded as clients of class counsel." *Baldwin & Flynn v. National Safety Associates*, 149 F.R.D. 598, 600 (N.D. Cal. 1993)*; Mullen v. GLV, Inc.*, 334 F.R.D. 656, 664 (N.D. Ill. 2020) (quoted in sentence); *Kleiner v. First National Bank of Atlanta*, 751 F.2d 1193, 1207 (11th Cir. 1985) (explaining that defense counsel had an obligation to refrain from contacting class members after certification); *Bower v. Bunker Hill*, 689 F. Supp. 1032, 1033 (E.D. Wash. 1985) (prohibiting communication after the court certified a class action). *Kleiner* is particularly inapt as the communications in question were between a lender and its customers, an inherently coercive relationship, took place near the class notice period, and were conducted by non-lawyer loan officers who were encouraged to convince class members to opt-out. *Kleiner*, 751 F.2d at 1196–98.

The *pre*-certification contact case Plaintiff cites—*Abdallah v. Coca-Cola*—involves a unique relationship that can be inherently intimidating: One between *employees and an employer that could fire them*. 186 F.R.D. 672, 679 (N.D. Ga. 1999). But even in that context, the court refused to prohibit Coca-Cola from contacting putative class member employees so long as it gave them a short disclosure. *Id.* ("Coca–Cola may continue to share its views about this lawsuit with its employees, but all such communications must contain the following language: The foregoing represents Coca–Cola's opinion of this lawsuit . . . .'").

The facts here couldn't be more different: No class has been certified so the putative class members are not Plaintiff's clients. Plaintiff knows that. Yet he cites these inapplicable cases anyway, knowing that the Court relying on them would be reversible error.

18

## IV.    CONCLUSION

Litigation between parties can be acrimonious. But attorneys exist to manage that acrimony and resolve disputes professionally. They are not supposed to replace good-faith legal arguments with personal attacks in hopes that doing so will give them a leg-up in litigation. But Plaintiff's counsel continues to do that, repeating the same baseless accusations NRS previously flagged to this Court as inappropriate, underscoring his inadequacy. The evidence mentioned above confirms that NRS did not "lie" about or coerce Mr. Hellerman's testimony or engage in a "coverup" of any sort. The law likewise confirms that Plaintiff's motion is groundless at every level. The Could should deny the motion in full and remind Plaintiff's counsel that, even though his client is adverse to NRS in this litigation, counsel are still colleagues before the Court.

*[Signature Appears on Following Page]*

DATED:     December 16, 2024.

Respectfully submitted,

*/s/ Ryan D. Watstein*

Ryan D. Watstein (*admitted pro hac vice*)
ryan@wtlaw.com
Patrick J. Fitzgerald (*admitted pro hac vice*)
pfitzgerald@wtlaw.com
**WATSTEIN TEREPKA LLP**
1055 Howell Mill Road, 8th Floor
Atlanta, Georgia 30318
Tel: (404) 782-9821
Fax: (404) 537-1650

Justin M. Penn, ARDC 6283726
jpenn@hinshawlaw.com
**HINSHAW & CULBERTSON LLP**
151 North Franklin Street, Suite 2500
Chicago, Illinois 60606
Tel:  (312) 704-3000

*Counsel for Defendant*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 16, 2024, I caused to be electronically filed a true and correct copy of the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record.

*/s/ Ryan D. Watstein*
Ryan D. Watstein
