# EXHIBIT 2

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| RASHAD WALSTON, on behalf of himself and all others similarly situated, | Case No. 1:24-cv-00083 |
| Plaintiff, | |
| v. | |
| NATIONAL RETAIL SOLUTIONS, INC. D/B/A NRS PAY, | |
| Defendant. | |

## DECLARATION OF MICHAEL HELLERMAN

1. My name is Michael Hellerman. I am over the age of 18 years and competent to give this declaration.

2. Patrick Fitzgerald reached out to me on August 16, 2024, via call and then text. I called him the same day and we spoke for 8 minutes. During the call, I agreed to NRS retaining Watstein Terepka LLP (the "Firm") to represent me in connection with this case, to the extent my participation was required.

3. At the time, I assumed this meant the Firm would begin representing me if I was subpoenaed or otherwise needed the Firm's advice in connection with this case. That is in line with my understanding of "being represented," which is when a lawyer does something for you—like defend a client at a deposition or hearing or consult on legal issues. Here, that was to happen later, as needed, to the extent I was looped into this case.

4. The Firm did not "lie" by telling the Court that Plaintiff contacted me after I was represented. As my deposition made clear, I was admittedly confused about the timeline and the meaning of the term "representation." Part of that is because I'm not a lawyer, but

it's also due to the personal events in my life at the time, including my wife and I adopting a young child (at age one month), which impacted my ability to recall the chronology of events. But once I had a chance to look back at my phone, I was able to confirm later in the deposition that I agreed to the Firm representing me on August 16, 2024 because that's the truth. Mr. Glapion did not follow up further with me on that point after I confirmed it.

5. On October 7, I reached out to Jeremy Glapion after he sent me an email that mentioned issuing a subpoena if I failed to respond. I didn't understand what that meant, and I was unclear about Mr. Glapion's role in this case (as my testimony confirms). At the time, I assumed he was associated with NRS in some way like Patrick, an understanding that Mr. Glapion did not dispel.

6. This was nearly two months after I spoke with Patrick for 8 minutes. As I testified, I don't recall Mr. Glapion asking if I was represented by counsel or mentioning Patrick or Ryan by name. But even if he did, I may not have been able to recall them by name on the spot. Had Mr. Glapion asked if I had agreed to be represented by the same law firm as NRS in this matter or if NRS's lawyers had contacted me, I likely would have remembered. But he didn't ask that.

7. And while I now realize that Mr. Glapion emailed me on August 22 saying he "had a lawsuit against NRS," his email was vague and I did not understand that he represented *someone suing* NRS. I'm also not sure I even saw the prior email before speaking with Mr. Glapion on October 7.

8. In his emails and on the phone, Mr. Glapion certainly never indicated that I could have any personal exposure in connection with the case. He never said he was hired to sue NRS and its "agents and employees," as I now understand he stated in his engagement

letter with Plaintiff. Had I known that, or had I known that employees of other companies had been personally sued in TCPA cases in some instances (something Mr. Glapion also didn't tell me) and that Mr. Glapion was suing NRS in such a case, I wouldn't have spoken to him. Had Mr. Glapion told me *that*, I would have been worried and likely hired my own lawyer (assuming the Firm had not already agreed to represent me, as they had). But he didn't tell me any of that, so I wasn't focused on my need to have counsel present during a conversation with him.

9. On October 9, 2024, I spoke again with Patrick Fitzgerald and Ryan Watstein.



10. ███████████████████████████████████████, Patrick Fitzgerald sent me a declaration in Word format to review on October 9. ███████████████████████████████████████████████████████████████████

11. I reviewed the declaration and believed it fairly represented my employment at NRS and my conversations with Patrick and Jeremy Glapion. The declaration was in no way a "sham," as Mr. Glapion describes it in his motion.

12. I did not notice minor inaccuracies, like the month of my termination from NRS, ███████████████████████████████████████. Given that this information came from me, it's particularly bad form for Plaintiff to attack Patrick and his firm for this minor inaccuracy, which was not their fault. It's also particularly misleading for Mr. Glapion to take issue with the statement that I was briefly involved in NRS's efforts to retain VoiceLogic. As I testified at deposition, I did not personally decide to hire VoiceLogic, but I did work for NRS when it was considering whether to retain VoiceLogic's services.

13. Mr. Glapion's characterization of my testimony is deceptive, and in my view represents a continued cultural shift in the legal world, at least as I see it in the media, where lawyers distort irrelevant facts to serve their purposes. For example, Mr. Glapion omits the parts of the transcript where I confirmed the accuracy of the October 10, 2024 declaration and clarified that my earlier testimony about the timeline of the Firm's representation was due to my confusion. To be clear, I testified that I reviewed the October 10, 2024 declaration because that is the truth. That I later got confused about the start date of the Firm's representation was due to my memory, hectic schedule at the time, that this was my first deposition, and the fact that I'm not a lawyer and do not know how Mr. Glapion defines "representation." As I clarified in the deposition, it is certainly true that I agreed the Firm would be my lawyer in connection with this case on August 16. So if that's what it means to be represented, then I was represented when Mr. Glapion contacted me.

14. The Firm did nothing whatsoever to mislead me in this matter, but has instead tried to (and did) protect my interests.

15. As with my October 10 and December 6, 2024 declarations: The Firm drafted this declaration to (accurately) summarize a conversation they had with me, and I had a full opportunity to change it, which was initially sent to me in Word format.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on December 16, 2024 in New York.

*[signature]*

Michael Hellerman