UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **RASHAD WALSTON,** on behalf of himself and all others similarly situated,<br><br>                                        **Plaintiff,**<br>               v.<br><br>**NATIONAL RETAIL SOLUTIONS, INC. D/B/A NRS PAY,**<br><br>                                        **Defendant.** | Civil Case No.: 24-cv-83<br><br>District Judge: Hon. Sunil R. Harjani<br>Magistrate Judge: Jeffrey T. Gilbert |

**PLAINTIFF'S REPLY IN SUPPORT OF OBJECTIONS TO ORDER ON PLAINTIFF'S MOTION TO COMPEL**

Judge Gilbert did not find, and Defendant does not argue, that the unredacted telephone numbers are irrelevant. At a minimum, it is inescapable that Plaintiff cannot certify a class limited to cellular telephone numbers without being able to determine if that number is a cellular telephone, and the only way to do that is through the phone number itself.[1] While the stipulation process does, in theory, get Plaintiff *some* of what he needs, it is only necessary in the first instance because Plaintiff was denied the numbers themselves on speculative concerns about Plaintiff's communication with putative class members.

Here, Defendant's opposition perfectly illustrates the issue:

> [Judge Gilbert's] order was grounded in proportionality. That the proportionality analysis involved concerns about Plaintiff contacting putative class members … does not transform an order about the production of NRS's confidential documents into a gag order.

[Dkt. 115, p. 4.] However, an order that functionally prevents Plaintiff from exercising his constitutional right to communicate with putative class members is a little different than an

---

[1] This is not the only reason the numbers are relevant, as detailed in Plaintiff's Motion.

1

outright prohibition. If that order is expressly based on concerns about Plaintiff's communication with putative class members it implicates the concerns articulated in *Gulf Oil*, and its requirements must be met.

### I. Class member telephone numbers are discoverable.

#### A. Relevance

"Courts in TCPA cases have repeatedly held that outbound call lists which contain the names and telephone numbers of plaintiffs and putative class members called by defendant or by others on defendant's behalf are relevant to numerosity, commonality, and typicality and are therefore discoverable." *Gebka v. Allstate Corp.*, 2021 WL 825612, *7 (N.D. Illinois Mar. 4, 2021) (collecting cases). Cases denying discovery of class member information appear to do so only when the information sought has no relevance to the issues of the case and is instead sought *solely* to contact putative class members for extraneous, procedural issues (such as to provide notice). *See Oppenheimer Fund v. Sanders*, 437 U.S. 340, 353-54 (1978).

Here, the information is relevant for the reasons set out in Plaintiff's briefing before Judge Gilbert and on the record. [Dkts. 48, 53.] This includes numerosity, commonality, consent, willfulness, and exploring Defendant's defenses rooted in its own communications with those putative class members.[2]

#### B. Proportionality and Burden

Plaintiff agrees with Defendant that Judge Gilbert's order was rooted in proportionality and burden. It is the *basis* for the disproportionality finding with which

---

[2] It is also relevant to *post*-certification subjects such as damages, and Defendant appears to concede that discovery into individual class members could be validly compelled post-certification. [Dkt. 115, n. 10.] Discovery is not bifurcated here. While Plaintiff acknowledges Judge Gilbert's point that this could be changed very easily, it has not been, and the process for additional discovery if a class is certified—despite a single unified discovery period—is unclear.

2

Plaintiff takes issue. That is, if all factors support proportionality but for the singular concern about Plaintiff's contact with putative class members, then the proportionality analysis cannot preclude production unless those concerns meet the *Gulf Oil* standard. As Defendant appears to concede throughout its opposition, this concern was for Judge Gilbert's ruling. [Dkt. 115, p. 10] ("The cost will not come from producing the numbers, but from what Plaintiff does with them.") Furthermore, even if the Court *did* have supported concerns about communications with putative class members, the solution is not denial of Plaintiff's access to relevant contact information, but the imposition of narrow limitations on Plaintiff's communications with those class members.

> *i. Denial of production of class member contact information rooted in concerns about communication with contact must satisfy Gulf Oil.*

"[P]laintiffs have a right to contact members of the putative class." *Williams v. Chartwell Fin. Servs., Ltd.*, 204 F.3d 748, 759 (7th Cir. 2000)[3] (citing *Gulf Oil Co. v. Bernard*, 452 U.S. 89 (1981)). It is true, as Defendant points out, that the technical context of *Williams* and several other cases differ. But the *Gulf Oil* holding was broad and did not depend on the precise (or even absolute) nature of the order. Specifically, Justice Powell wrote for a unanimous Court:

> We are faced with the unquestionable assertion by respondents that the order created **at least potential difficulties** for them as they sought to vindicate the legal rights of a class…. The order **interfered with their efforts** to inform potential class members of the existence of this lawsuit … [and] **made it more difficult** for the … class representatives … to obtain information about the merits of the case from the persons they sought to represent.

*Gulf Oil*, 452 U.S. at 101 (emphases added). It is for these reasons "an order limiting communications between parties and potential class members should be based on a clear

---

[3] Plaintiff mistakenly contributed this quote directly to *Gulf Oil* in his opening brief. It was *Williams*, citing (not quoting) *Gulf Oil*. Plaintiff apologizes for the error.

record and specific findings that reflect a weighing of the need for a limitation and the potential interference with the rights of the parties." *Id.* While *Gulf Oil* involved a gag order, if the denial of Plaintiff's access to putative class member contact information here was rooted in concerns about Plaintiff's contact similarly created "at least potential difficulties" for or "interfered with" and "made more difficult" Plaintiff's class litigation efforts, it is difficult to see why it should be treated differently.

Your Honor's opinion in *Hossfeld* appears to agree, at least implicitly. In *Hossfeld*, the plaintiff moved to compel production of putative class member contact information. 2021 WL 4819498, *2 (N.D. Ill. Oct. 15, 2021). Your Honor recognized the defendant's privacy concerns but found that "the most prudent course at this stage" was to compel production and issue a protective order, deferring the *Gulf Oil* concerns to a later date should the plaintiff seek to communicate with class members.[4] *Id.* at *6.

Defendant briefly makes the argument that Judge Gilbert's order was justified because of concerns raised in Defendant's Motion to Deny. *Gulf Oil* forecloses this, as well, finding reliance upon unproven allegations of misconduct to justify communications bans would be procedurally improper. *Id.* at 103 n.18.

> ii. *Impediments to the exercise of a right sufficient to deny that right are treated the same as a denial of that right.*

Defendant argues that *Gulf Oil* does not apply because there is *technically* not a no-contact order, so Plaintiff is *technically* free to contact whomever he wants (including putative class members) in connection with his case. Defendant's argument is a bit like telling someone

---

[4] The reliance on *Hossfeld* is not intended to signify that a difference of opinion satisfies "clear error". *Hossfeld* just happens to be one of the most on point cases. *Hossfeld*, at least implicitly, seems to stand for the principal advanced here: concerns about putative class member contact are insufficient to overcome relevance absent meeting the *Gulf Oil* requirements.

4

they can bake a cake, but they are not allowed to use the oven. Explicit *denial* of a right is not what triggers heightened scrutiny; *infringement* on a right is. *See, e.g., Elrod v. Burns*, 427 U.S. 347, 362 (1976) (exacting scrutiny applies when government action inevitably causes even an indirect and unintended impairment of First Amendment rights). It is indisputable that the denial of Plaintiff's access to class member contact information makes it *significantly* harder (if not impossible) for Plaintiff to contact those putative class members. Furthermore, the Court's refusal to compel the production of unredacted telephone numbers as a means to prevent Plaintiff from contacting those putative class members would make little sense unless the Court agreed that the denial would make it significantly harder to exercise that right.

Second, Defendant has actively fought against Plaintiff's efforts to obtain class member contact information from other sources. For example, when Plaintiff sought to subpoena the vendor from which Defendant purchased its phone numbers for the same list Defendant purchased,[5] Defendant asked that Plaintiff withdraw the request until Judge Gilbert ruled on the Motion to Compel. Ex. A.

Defendant's citation to *Jimmy John's* is inapposite. 2016 WL 8950085 (N.D. Ill. Apr. 12, 2016). *Jimmy John's* stands for the basic proposition that the right to contact putative class members *alone* is typically insufficient to justify the discovery of class member contact information. *Id.* at *2. The class member contact information must otherwise be discoverable.

This is not the situation here. No one meaningfully disputes that the class member contact information is *relevant* for reasons beyond contact. Furthermore, even contact alone would support relevance in this case, as Defendant has admitted to unilateral contact with

---

[5] Though Defendant repeatedly claims Plaintiff seeks business records, the actual telephone numbers were purchased from a third-party vendor.

those witnesses and Plaintiff is entitled to discovery into Defendant's defenses and witnesses. As such, the sought information falls within the scope of legitimate discovery.

Finally, Defendant argues that scrutinizing the "motivations behind a decision to deny a motion to compel…would create First Amendment scrutiny in any case where the court refuses to disclose records containing contact information[.]" [Dkt. 115, p.13.] Not so. Here, the Court declined to compel the production of unredacted phone numbers to Plaintiff *expressly* out of concerns rooted in Plaintiff's potential contact with these putative class members. Scrutinizing this *express* reasoning has no relevance to whether courts can or should similarly scrutinize decisions *not* expressly rooted in communication.

## II. Any limitation must be narrowly tailored.

Allowing Defendant to withhold class member telephone numbers due to concerns about Plaintiff's communication is an extremely broad remedy to that concern. It has the functional effect of not only preventing Plaintiff from contacting putative class members, but also using the numbers for *any* purpose whatsoever without further agreement and cooperation of Defendant. As it stands, while Plaintiff would not run afoul of Judge Gilbert's order if he spoke with a putative class member, the only way that could happen is a circumstance in which the putative class member called Plaintiff. Any affirmative outreach or investigation is precluded because Plaintiff is not permitted their contact information.

It is difficult to reconcile an order with such a broad impact on communication with the *Gulf Oil* concerns. Even in the context of evidence of *actual* solicitation of putative class members, courts are reluctant to impose a full bar on communications given the interests identified in *Gulf Oil*. *See Hamm v. TBC Corp.*, 597 F. Supp. 2d 1338, 1353 (S.D. Fla. 2009).

## III. The implications of Judge Gilbert's order here illustrate the importance of adhering closely to *Gulf Oil*.

6

### A. Defendant is actively utilizing information from a pool of witnesses—to whom it is adversarial—while denying Plaintiff the right to do the same.

"Courts have identified two circumstances in which party communications with class members may be considered coercive: unilateral communications, in other words, communications made by only one side in the case; and the existence of a business relationship between class members and the class opponent." *Mullen v. GLV, Inc.*, 334 F.R.D. 656, 662 (N.D. Ill. 2020). *Both* concerns are implicated in this case, but only the former is directly at issue here, as the underlying order entrenches this unilateral communications scheme.

The ramifications are significant. First, Defendant is developing its case through communications with third-party witnesses to whom it is adversarial, and Plaintiff has no ability to monitor or challenge these communications or any evidence obtained therefrom. Defendant does not hide that its goal is to "interview class members", wait to see Plaintiff's Motion for Class Certification, and then tailor class member declarations in opposition to Plaintiff's arguments. [Dkt. 112, p. 2; Dkt. 115, p.1.]

Second, the order's impact on other rules is unclear. For example, Defendant has contacted putative class members with the goal to obtain declarations for use in opposing class certification but has not supplemented its initial disclosures or prior discovery responses.

Defendant seems to be teeing up the argument that it is not required to do so. It has resisted production of documents related to these communications by funneling them through defense counsel and making the remarkable claim that they are not discoverable because counsel, rather than Defendant itself, is in possession of them. [Dkts. 108, 112, 113.] In its opposition here, it notes that the Court can allow discovery into those individual class members *if a class is certified*, signaling its intent to withhold such discovery until that point.

7

[Dkt. 115, n. 10.] As Defendant and this Court is likely aware, however, class certification is often the decisive issue in a consumer class action. If Defendant intends to use individual class member discovery to *oppose certification*, Plaintiff is entitled to that same discovery to *support* certification, even if just to explore the propriety of whatever Defendant obtains.

Defendant also argues it would be illogical for Plaintiff to take discovery from individual class members, as this would ostensibly defeat class certification. However, there are myriad ways this may not be the case, such as discovery tailored specifically to confirm the accuracy (and origin) of any evidence Defendant obtains from these class members. If Plaintiff makes a mistake in deposing or interviewing the individual class members, Defendant can raise that "mistake" in opposition to class certification.

B. Judge Gilbert's order has implications beyond just Defendant's production.

Judge Gilbert's order has broader consequences than just what *Defendant* is required to produce. First, it severely limits or convolutes limits the third-party discovery Plaintiff can obtain. Plaintiff cannot subpoena the third party from which Defendant purchased its records because those records would contain class member telephone numbers. Plaintiff cannot receive the campaign reports directly from VoiceLogic (Defendant's call vendor), requiring a convoluted process where the reports are produced from VoiceLogic to Defendant to the third-party data analyst, back to Defendant, and then to Plaintiff. Plaintiff cannot issue subpoenas to VoiceLogic's telephone provider to supplement its internally kept campaign reports because that would reveal class member phone numbers.

Second, it requires Plaintiff to rely on Defendant's goodwill to litigate crucial elements of his case. For example, Plaintiff cannot serve preservation requests (e.g., for historical data) on the carriers for each telephone number because Plaintiff does not have the phone numbers.

Plaintiff must rely on Defendant to do this. Plaintiff cannot authenticate the documents with VoiceLogic because Plaintiff is being denied access to the originals (so must rely on Defendant's agreement to or involvement in the authentication process). In effect, it allows Defendant to serve as a "special master" for Plaintiff's discovery.

Third, it requires Plaintiff to be fully prescient about *all* ways this information might be relevant to the litigation. Defendant's opposition explicitly illustrates this point. Though the authentication issue was raised privately with Defendant, it argues that because Plaintiff did not say the magic word "authentication" before Judge Gilbert, he is barred from raising that as a basis for production. This "complete prescience" is an incredibly high standard, especially when Plaintiff has already demonstrated relevance to other topics.

### IV. Procedural Miscellany

#### A. Plaintiff agreed to the stipulation process because he had no other option.

Defendant places emphasis on the fact that Plaintiff agreed to the ongoing stipulation process. But what else could Plaintiff do? When it became clear that Judge Gilbert would not compel the production of unredacted telephone numbers at this time, Plaintiff elected against cutting off his nose to spite his face and actively worked out a proposal with Defendant for as much information as possible. At no point did Plaintiff agree that he was not entitled to the unredacted phone numbers. *E.g.,* Oct. 16 Hrg. Tr., 37:6-18. The stipulation is only necessary because Plaintiff was barred from accessing the phone numbers.

#### B. The stipulation does not prejudice Defendant.

Defendant claims that it would be prejudiced if the Court were to require its production of class member phone numbers because it already stipulated. The stipulation contemplates this possibility and automatically voids upon a pre-certification order requiring the production of more than 400 unredacted telephone numbers. [Dkt. 104, ¶ 6.] This was

included via agreement with Defendant *expressly* due to its concerns about prejudice should the Court agree with Plaintiff's objections. Ex. B.

### C. Judge Gilbert's order was a denial of Plaintiff's Motion to Compel.

Defendant claims that Judge Gilbert's written order did not deny the motion to compel in part. [Dkt. 115, p.2 n.2.] It is undisputed that the order did not grant the relief Plaintiff sought: production of the phone numbers. Even Defendant later characterizes this as a denial. *Id.* at 12 ("[T]his [motion] involves the denial of a motion to compel…."]

### D. "Tabling" the Rule 72 objections.

Defendant is correct in noting that the Parties initially discussed a process of tabling Plaintiff's deadline to file Rule 72 objections. Plaintiff elected not to take this approach for three reasons: first, while Plaintiff believes the deadline for Rule 72 objections can be extended, there are few cases directly on point. Second, in the event Plaintiff the deadline could not be extended (or the Court declined an extension), Plaintiff would risk waiving objections on an issue of crucial importance. Finally, during the pendency of any extension, the unilateral communications scheme described above would be in place.

## V. Other pending filings.

Defendant takes issue with Plaintiff, Plaintiff's counsel, and other filings pending before Judge Gilbert. Judge Gilbert will rule on those filings in due course. Plaintiff stands by their propriety. Plaintiff's refusal to return fire or rebut Defendant's mudslinging here is in an effort at comity rather than concession. Defendant might disagree with Plaintiff's Rule 72 objections, but this Motion was perfectly appropriate, both in substance and tone. In the future, if the Court takes issue with the tone or propriety of a brief or Motion, it would be far more productive to allow the Court to raise it rather than the Parties spending half of each filing seeking to "poison the well" (or responding to the same).

Dated: December 23, 2024    s/ Jeremy M. Glapion
                                                  Jeremy M. Glapion
                                                  The Glapion Law Firm, LLC
                                                  1704 Maxwell Drive
                                                  Wall, New Jersey 07719
                                                  Tel: 732-455-9737
                                                  Fax: 732-965-8006
                                                  jmg@glapionlaw.com
                                                  Counsel for Plaintiff and the Putative Class