**RASHAD WALSTON vs NATIONAL RETAIL SOLUTIONS, INC.**
**Rahad W. Walston on 04/26/2024**

```
 1              IN THE UNITED STATES DISTRICT COURT
                  NORTHERN DISTRICT OF ILLINOIS
 2                     EASTERN DIVISION

 3

 4   RASHAD WALSTON,              )
                                  )
 5               Plaintiff,       )
                                  )
 6      vs.                       )   No.
                                  )   1:24-CV-00083
 7   NATIONAL RETAIL SOLUTIONS,   )
     INC.,                        )
 8                                )
                 Defendant.       )
 9                                )

10

11              THE DISCOVERY DEPOSITION OF
                    RAHAD W. WALSTON
12                   April 26, 2024
                        9:00 A.M.

13

14          Called as a witness by the Defendant

15     herein, pursuant to the provisions of the

16     Federal Rules of Civil Procedure pertaining

17     to the taking of depositions for the

18     purpose of discovery, before GLORIA

19     APOSTOLOS SIOLIDIS, C.S.R. License

20     #084-001205, duly qualified and

21     commissioned for the State of Illinois.

22

23

24
```

**RASHAD WALSTON vs NATIONAL RETAIL SOLUTIONS, INC.**
**Rahad W. Walston on 04/26/2024**

Page 6

```
 1   meant.  If you ask for the basis for the

 2   objection, but otherwise objection to form,

 3   we'll preserve form objections for the

 4   record.

 5        MR. WATSTEIN:  Yes, agreed.

 6        MR. GLAPION:  All right.

 7        BY MR. WATSTEIN:

 8    Q  And how would you prefer that I

 9   address you today?

10    A  Rashad or Mr. Walston.  It's up to

11   you.

12    Q  Okay.  Sounds good.

13           And as I believe I mentioned when

14   I walked in, my name is Ryan Watstein.

15   This is my colleague Pat Fitzgerald.  We

16   represent the defendant in this matter.  Do

17   you remember meeting me a minute ago when I

18   talked in the room?

19    A  Yes.

20    Q  And was that the first time we met?

21    A  Yes.

22    Q  And I went to shake your hand.  Do you

23   remember that?

24    A  Yes.
```

**RASHAD WALSTON vs NATIONAL RETAIL SOLUTIONS, INC.**
**Rahad W. Walston on 04/26/2024**

1    Q   And you kind of hesitated and had to

2   kind of encourage you to give me a

3   handshake.  Do you remember that?

4        MR. GLAPION:  Objection, form.

5        BY MR. WATSTEIN:

6    Q   Is that an accurate statement?

7    A   No.

8    Q   Okay.  What would be your description

9   of how we met a minute ago?

10   A   You walked in, you introduced

11  yourself, we shook hands.

12   Q   And did you introduce yourself back to

13  me?

14   A   I did.

15   Q   Immediately?

16   A   I introduced myself to you.

17   Q   Okay.  So it's your testimony that you

18  were courteous to me the first time we met?

19       MR. GLAPION:  Objection, form.

20       BY MR. WATSTEIN:

21   Q   You can answer the question?

22       MR. GLAPION:  You can answer unless I

23  tell you not.

24       THE WITNESS:  I believe so.

**RASHAD WALSTON vs NATIONAL RETAIL SOLUTIONS, INC.**
**Rahad W. Walston on 04/26/2024**

Page 8

```
 1        BY MR. WATSTEIN:

 2    Q   Okay.  I disagree, but I hope that we

 3   can kind of change the tenure of that.

 4   That was the first time we met.

 5            I'm just doing my job here.  I'm

 6   here to ask you questions.  You're here to

 7   give answers in a lawsuit that you filed.

 8   So, you know, I would just ask please don't

 9   bear any hostility towards me; this is just

10   my job.  Okay?

11    A   Of course.

12    Q   Have you ever been deposed before?

13    A   No, I haven't.

14    Q   Have you ever served as a witness

15   under oath in any court proceeding?

16    A   No, I have not.

17    Q   Okay.  So I'm just going to go over a

18   few ground rules just so we're on the same

19   page and it makes it easier for the court

20   reporter and for the videographer.  Does

21   that sound good?

22    A   That's fine.

23    Q   And some of these, your lawyer may

24   have already gone over with you, but these
```

**RASHAD WALSTON vs NATIONAL RETAIL SOLUTIONS, INC.**
Rahad W. Walston on 04/26/2024

```
 1     Q   And how would you describe this
 2  lawsuit, or what would you describe it to
 3  be about?
 4     MR. GLAPION:  Objection to form.  Go
 5  ahead.
 6     THE WITNESS:  TCPA loan.
 7     BY MR. WATSTEIN:
 8     Q   Okay.  Understood.  That's the Federal
 9  Statute you're suing under, right?
10     A   Correct.
11     Q   And I guess my question is more of why
12  did you file this lawsuit?
13     A   I was tired of being harassed by your
14  client, by -- I'll just refer to them as
15  NRS Pay.  I was tired of being harassed by
16  them.
17     Q   And it's about telephone calls, right?
18     A   Correct.  And also voicemail messages.
19     Q   Okay.  And actually, to put a finer
20  point on that, you say the case is about
21  voicemail messages, right?
22     A   Illegal robotic voicemail messages.
23     Q   Right.  And just to be clear, though,
24  you never actually received a phone call
```

**RASHAD WALSTON vs NATIONAL RETAIL SOLUTIONS, INC.**
Rahad W. Walston on 04/26/2024

Page 124

1    $800.00.

2      Q   Okay.

3      A   And I said $800.00 is not good enough.

4    And I maybe have thrown out some amounts of

5    maybe $3,000.00 or $4,000.00, in that

6    range, $5,000.00.  But I never said you

7    have to give me $9,800.00, exactly what's

8    in this letter.  I did not say that.

9      Q   Okay.  So basically, let me see if I

10   can accurately summarize.

11           Basically, he offered you $800.00

12   and you came back with something like

13   that's not good enough; it's going to have

14   to be higher than that, maybe $4,000.00,

15   $5,000.00, something like that, and he said

16   I'll get back to you?

17     A   No, that's not what he said.  What he

18   said is, come on -- this is generally what

19   he said.  He said, "Come on, man."  But I

20   do remember specifically, he said, "We're a

21   small company.  We can't afford this type

22   of money.  Let's make today a good day."

23   And he asked me to call him back.

24           But he reiterated, he said that

**RASHAD WALSTON vs NATIONAL RETAIL SOLUTIONS, INC.**
**Rahad W. Walston on 04/26/2024**

1  he was NRS Pay.  They are a small company.

2  That he would have to get approval to issue

3  out anything over $800.00.  And he asked

4  me, and I said that's not good enough.  So

5  he asked me to call him back at some point.

6        He said he will be in and out of

7  meetings that day; to give him a call back.

8  And I said, "I'll give you a call back."  I

9  said, "I'll give you a call back."

10  **Q  Okay.  So I think I understand now.**

11        **So basically, he offered $800.00.**

12  **You said that's not good enough.  It's**

13  **going to take something more like $4,000.00**

14  **or $5,000.00?**

15  A  At least, at least.

16  **Q  At least.  Okay.  And then he said, "I**

17  **have to get authority for that, or see if I**

18  **can get authority for that; why don't you**

19  **call me back?"**

20  A  No.  He said, "We're a small company.

21  We cannot afford that.  I would have to get

22  authority to do anything over $800.00."  He

23  never said that he's going to check to get

24  authority.  He said, "I will have to get

**RASHAD WALSTON vs NATIONAL RETAIL SOLUTIONS, INC.**
**Rahad W. Walston on 04/26/2024**

1   authority."  He made it seem like that was

2   it, $800.00 flat, that's it.

3      Q   Okay.  But he said he would have to

4   get authority for something over $800.00,

5   and the way that you guys left it was there

6   would potentially be another discussion?

7      A   I believe so, yes.

8      Q   Okay.  So you made clear that your

9   position was you didn't need the whole

10  $9,800.00, but you needed it to be several

11  thousands?

12     A   At least, yes, for -- yeah.

13     Q   Okay.  Oh, one more thing.

14          Okay.  So if you can turn to the

15  attachments to Defendant's Exhibit No. 6?

16  So you can go to Page No. 4.

17     A   Okay.

18     Q   So you see, is this a screenshot of

19  your phone?

20     A   It is, yes.

21     Q   Okay.  And it says blocked in the

22  upper left-hand corner, right?

23     A   That is correct.

24     Q   Okay.  And so can you explain to me

**RASHAD WALSTON vs NATIONAL RETAIL SOLUTIONS, INC.**
**Rahad W. Walston on 04/26/2024**

1   sense.

2      A   Yeah.   That's difficult for me to say

3   as well, because it depends on the Courts

4   and the Judge and what they feel is

5   appropriate justice for not only myself,

6   but the other maybe hundreds of thousands

7   of other people that have been harmed by

8   your client's company.   So I can't say,

9   specifically.

10     **Q   Would it surprise you to know that**

11  **nobody else has complained about any**

12  **unwanted phone calls from NRS Pay?**

13        MR. GLAPION:   Objection to form.

14        THE WITNESS:   Would it surprise me?

15  No, because most people don't necessarily

16  enforce their rights.

17          But I'm hoping not to be an

18  advocate for people who want to.   A lot of

19  people are tired of a lot of things, but

20  they don't say anything.   I'm hoping that I

21  can be chosen to be that advocate for other

22  people, so I can explain to them that they

23  do have rights and they shouldn't be

24  harassed.

**RASHAD WALSTON vs NATIONAL RETAIL SOLUTIONS, INC.**
**Rahad W. Walston on 04/26/2024**

Page 144

1    actually asked for them, and that

2    contacting you was an accident, right?

3         MR. GLAPION:  Objection to form.

4         THE WITNESS:  Them contacting me was

5    an accident?  I don't think it is.

6         BY MR. WATSTEIN:

7    Q   Okay.  What makes you say that?

8    A   So a company contacted me, by my

9    records, 18 times, how is that an accident?

10            There's been times I've dialed

11   the wrong telephone number, somebody else

12   picks up, or nobody picks up, I say hey,

13   that's the wrong number.  Then I dial the

14   right number.  So I don't understand how

15   that could be an accident.

16   Q   But you never reached out to them to

17   tell them to stop, right?

18   A   Not to my recollection, no.

19   Q   And how is it that you understand that

20   you would be compensated in this case if

21   there is some sort of settlement or

22   successful resolution in court?

23   A   Well, according to the law, I should

24   be -- if I am compensated something, it

**RASHAD WALSTON vs NATIONAL RETAIL SOLUTIONS, INC.**
**Rahad W. Walston on 04/26/2024**

Page 145

```
 1   will be the standard amount of whatever the

 2   Courts find.

 3            I don't know if it's -- if

 4   they'll label it as a general or malicious,

 5   which of course goes between $500.00 and

 6   $1,500.00.  I also know that they have a

 7   class of representative awards.  And I know

 8   a little bit about that, but that's not my

 9   intention.

10     Q  What's your intention?

11     A  Like I said previously, to do justice.

12     Q  Okay.  I guess I'm just trying to

13   understand, what does justice entail?

14   Money for you and other people?

15     A  It can include that, yes.

16     Q  How much money?

17        MR. GLAPION:  Objection to form to

18   both that question and this question.

19        THE WITNESS:  I can't say a specific

20   amount.

21        BY MR. WATSTEIN:

22     Q  Well, I guess, you know, what I'm

23   looking for is how much do you feel like

24   you and others should recover apiece?  What
```

**RASHAD WALSTON vs NATIONAL RETAIL SOLUTIONS, INC.**
**Rahad W. Walston on 04/26/2024**

1  do you think a successful resolution in

2  this case would be a class settlement or a

3  judgment?  Or what would be successful to

4  you in your eyes?

5      MR. GLAPION:  Objection to form.

6      THE WITNESS:  That's something I have

7  to discuss with my legal team.

8      BY MR. WATSTEIN:

9   Q  You haven't given that any thought?

10   A  Yeah, I've thought about it, but I'm

11  not 100 percent sure.

12   Q  What do you understand to be -- do you

13  understand, is this an individual action,

14  or is this a proposed class action?

15   A  It's a proposed class action lawsuit.

16   Q  What does that mean to you?

17   A  The class of people who have been

18  afflicted similar to how I've been

19  inflicted, if not exactly the same.

20   Q  Okay.  Do you know what your role is

21  in that class action?

22   A  If I have the opportunity and the

23  honor to be selected, I will be the lead

24  person.  I'll be the lead representative,

**RASHAD WALSTON vs NATIONAL RETAIL SOLUTIONS, INC.**
**Rahad W. Walston on 04/26/2024**

1  the lead plaintiff.  In that turn, I'll

2  have to know what's going on with the case.

3  I have to attend depositions like I am now.

4  If there's any trial action, I have to

5  attend that.  I have to be fully invested

6  in the case, which I'm willing to do.

7  **Q  And can you tell me what's happened in**

8  **the case thus far?**

9  A  Yes.  Prior negotiations.  Then the

10  lawsuit was filed earlier this year, very

11  early this year.  Interrogation questions

12  were presented.

13        There's also been actions on our

14  part to ask you for certain documentation

15  and things of that nature.  You've got a

16  copy of my phone records.

17  **Q  Anything else you can think of?**

18  A  Interrogation questions.  Requests for

19  information from you and your client.  And

20  that's the general basis of it.  Just a

21  general basis back and forth.

22        But I did name some specific

23  things and interrogation questions, the

24  lawsuit being filed here in Illinois, the

**RASHAD WALSTON vs NATIONAL RETAIL SOLUTIONS, INC.**
**Rahad W. Walston on 04/26/2024**

Page 149

1    Northern District of Illinois court.

2      **Q  Do you understand what the typical**

3    **differences are in settlement recovery**

4    **between an individual plaintiff action and**

5    **a class action for the named plaintiff?**

6        MR. GLAPION:  Objection to form.

7        THE WITNESS:  I have an overview of

8    it.

9        BY MR. WATSTEIN:

10     **Q  Okay.  Tell me what your understanding**

11   **is.**

12     A  An individual, you settle a case, the

13   individual gets money.  If you have a class

14   action lawsuit, you settle a case, the

15   entire class gets money, compensation or

16   whatever.

17     **Q  It isn't your understanding that the**

18   **entire class would usually get basically**

19   **the same amount that the individual would**

20   **have gotten?**

21       MR. GLAPION:  Objection to form.  Go

22   ahead.

23       THE WITNESS:  No.  I know that as an

24   individual, it depends.  It depends.  I'm

**RASHAD WALSTON vs NATIONAL RETAIL SOLUTIONS, INC.**
**Rahad W. Walston on 04/26/2024**

Page 155

1    Q  Okay.  Why don't you turn to page 17.

2   At the top it says, second sentence, "Class

3   counsel requests 36 percent of the first

4   $10 million and 28 percent of the remaining

5   $5 million, for a total of $5 million."  Do

6   you see that?

7    A  Yes, I do.

8    Q  As the class representative in this

9   case whose job is to look out for the

10  class, do you think it's fair that an

11  attorney can request $5 million in fees

12  when he has obtained $100.00 per claimant

13  in damages?

14      MR. GLAPION:  Objection to form.

15      THE WITNESS:  The attorney is taking

16  all the risk.  It takes a lot of time and

17  effort to file lawsuits.  Things of that

18  nature.  So I believe they are compensating

19  their costs.  Of course they deserve to

20  make a living as well.

21          So what I think is fair is what

22  the justice system or the Judge allows.

23  That's my definition of what's fair.

24

**RASHAD WALSTON vs NATIONAL RETAIL SOLUTIONS, INC.**
Rahad W. Walston on 04/26/2024

1   engagement letter?

2     A  I believe so, yes.  There is a

3   document that I had to sign, yes.

4     Q  When did you sign those,

5   approximately?

6     A  On two occasions.  When Mr. Glapion

7   first decided to investigate on my behalf,

8   and then after that there was another

9   document I had to sign.

10    Q  Was the second document like a

11  document totally engaging him to represent

12  you in a lawsuit?

13    A  I believe so.  If I'm not mistaken, I

14  believe so, yes.

15    Q  And do you know how Mr. Glapion is to

16  be compensated under the agreement?

17    A  He will receive attorney fees if there

18  is some type of settlement.

19    Q  Okay.  If there's a class settlement,

20  he would get some percentage of it?

21    A  Correct.

22    Q  What if you decided that you wanted to

23  settle the case individually?

24    A  That's not --

**RASHAD WALSTON vs NATIONAL RETAIL SOLUTIONS, INC.**
**Rahad W. Walston on 04/26/2024**

Page 161

1      MR. GLAPION:  Objection to form.  Go

2   ahead.

3      THE WITNESS:  That's not something I

4   would want to do.

5      BY MR. WATSTEIN:

6   **Q  But what if you decided that?  What if**

7   **you learned that you didn't have a good**

8   **case and you decide that you wanted to**

9   **settle individually?  Would you be able to**

10  **do that?**

11  A  That's not something I would be

12  interested in doing.

13  **Q  Why not?**

14  A  Not at this time.  And especially

15  speaking with legal counsel, Mr. Glapion, I

16  wouldn't be interested in any type of

17  individual settlement.

18  **Q  So based on your conversations with**

19  **your lawyer, you're not interested in any**

20  **type of individual settlement?**

21     MR. GLAPION:  Objection to form and

22  attorney/client privilege.

23     MR. WATSTEIN:  Well, he opened the

24  door.

**RASHAD WALSTON vs NATIONAL RETAIL SOLUTIONS, INC.**
**Rahad W. Walston on 04/26/2024**

```
1        MR. GLAPION:  You were asking about an

2   agreement and he said he would need to --

3   we can read that back.  I believe he said

4   without consulting with attorneys, he would

5   not want to settle anything individually.

6        MR. WATSTEIN:  Why don't you read back

7   what he said?

8        (The record was so read

9         by the court reporter.)

10       MR. GLAPION:  And I will renew that

11  objection in terms of any attorney/client

12  privilege.  I think that's what you were

13  asking for, correct?

14       MR. WATSTEIN:  You know what?  Strike

15  my question, because he's already answered

16  it before I even asked it.

17       BY MR. WATSTEIN:

18    Q  So why is it that you would not be

19  willing to settle this case individually?

20    A  That's something I have to discuss

21  with my legal team, Mr. Glapion.

22    Q  But I'm not asking your legal team,

23  I'm asking you, and that's something --

24            You know part of this process is
```

**RASHAD WALSTON vs NATIONAL RETAIL SOLUTIONS, INC.**
Rahad W. Walston on 04/26/2024

Page 163

1  I have the right to ask you questions, and

2  that's what I'm doing now.  I'm not

3  interested in his answer.  I can get that

4  answer from him separately.  I'm interested

5  in your answer.

6           If what you're telling me is that

7  this is your lawyer's decision, fine.  But

8  --

9    A  No, that's not what I was telling you.

10   Q  Okay.  Then tell me, why is it that

11  you would not be interested in settling the

12  case individually?

13   A  You know what?  I want other people to

14  get justice.  It hasn't been me that's just

15  been harmed by this company, in my opinion.

16           One thing I didn't mention

17  earlier, the phone call I got from Mr. Elie

18  Katz, he initially, you know, asked me my

19  name and did I live at this address, and

20  attempted to try to intimidate me, belittle

21  me, make me feel less than.  I didn't

22  mention that.  And you know, that was

23  hurtful to me.

24           So after that conversation, what

**RASHAD WALSTON vs NATIONAL RETAIL SOLUTIONS, INC.**
**Rahad W. Walston on 04/26/2024**

Page 164

1   went through my head, I thought if they're

2   willing to do this to me, have they done

3   this to other people?  Will they do this to

4   other people?

5          So I'm at the point now where I

6   like to see justice for multiple people,

7   not just myself.

8    **Q  Let me understand.  I don't**

9   **understand.  What you're saying is that**

10  **Mr. Katz called you to see -- you got a**

11  **phone call.  You sent a letter and you got**

12  **a phone call back from the CEO of a**

13  **company, right?**

14   A  That's correct.  But in the demand

15  letter I specified to do not call me.  I

16  specified to email me to make sure that any

17  contact with me should be via email.

18          So a direct phone call from

19  Mr. Elie Katz from the jump was a form of

20  intimidation and try and push me around.

21          I insisted specifically do not

22  contact me, via email.  He deviated from

23  that.

24   **Q  Okay.  Don't you think, though -- I'm**

**RASHAD WALSTON vs NATIONAL RETAIL SOLUTIONS, INC.**
Rahad W. Walston on 04/26/2024

Page 165

1  not trying to argue with you; I'm just

2  saying don't you think that a lot of people

3  would appreciate getting a call from the

4  CEO because it shows that somebody at that

5  level is taking your letter seriously

6  enough to spend the time on it?

7      MR. GLAPION:  Objection to form.

8      THE WITNESS:  Absolutely not.  Not in

9  the manner he called, no.

10     BY MR. WATSTEIN:

11   Q  And you say that the manner was

12  intimidating because he confirmed that he

13  was speaking to the right person?  I'm not

14  sure I follow.

15   A  He said is this Rashad Walston from

16  some address, and attempts to him saying,

17  what I got from it was that yes, I know who

18  you are; I know where you live.  He said an

19  incorrect address.

20         I said, "This is Rashad.  I don't

21  stay at that address."  I think I asked

22  who's calling.  And then he said, "Is this

23  R. W. Walston as well?"  And I said, "Yes.

24  Who is this?"  And then that's when we

**RASHAD WALSTON vs NATIONAL RETAIL SOLUTIONS, INC.**
**Rahad W. Walston on 04/26/2024**

Page 166

1  began talking.

2        But like I said, in the demand

3  letter I asked for nobody to call me.  I

4  asked for all communication via email.

5  That's it.

6        So in my view, I felt that was a

7  form of just another attempt at being

8  harassed, trying to be intimidated, trying

9  to be pushed around.

10   Q  Okay.  I understand what you're

11  saying, I guess.  I wouldn't necessarily

12  interpret that the same way.  Usually when

13  I take the time to pick up the phone and

14  call somebody and speak to them, it's

15  because it's out of a showing of respect.

16      MR. GLAPION:  Objection.

17  BY MR. WATSTEIN:

18   Q  So anyways, I'm not here to testify.

19  I'm not like I said here to argue with you.

20  It's interesting that you took it that way.

21      MR. GLAPION:  Objection to form.

22      BY MR. WATSTEIN:

23   Q  Do you know if the engagement letter

24  permits you to settle your case

Page 167

1    individually, should you want to, without a

2    monetary penalty?

3       A  I'm not 100 percent sure of that.  I

4    don't know.

5       Q  Do you know whether it gives your

6    lawyer the ability to approve any sort of

7    settlement that you might want to enter

8    into?

9       A  Without my knowledge?

10      Q  Not without your knowledge, but do you

11   know whether it gives your lawyer a right

12   to approve or reject any sort of settlement

13   that you might want to enter into?

14      A  I'm not 100 percent sure, but it

15   probably does.

16             I mean I don't know if you're

17   asking just if he can just make the

18   decision without consulting with me?  Is

19   that what you're asking?  Or just we both

20   come up with a settlement or an amount or

21   something like that, and we agree upon it?

22   So I'm not 100 percent sure.

23      Q  Well, why don't you just explain to me

24   in other words what the engagement letter

RASHAD WALSTON vs NATIONAL RETAIL SOLUTIONS, INC.
Rahad W. Walston on 04/26/2024

Page 168

1    provides about how settlement discussions

2    will be conducted?

3      A  It will be a conversation with me and

4    the legal team.

5      Q  Okay.  But who gets to make the final

6    decision as to whether or not it settles,

7    do you know?

8      A  I'm saying it would be both of us.  It

9    would be a collaborative.

10     Q  Okay.  So both have to agree is your

11   assumption?

12     A  Correct.  I'm not 100 percent sure,

13   but that's my assumption, yes.

14     Q  Okay.

15        MR. WATSTEIN:  This will be Defendant's

16   Exhibit No. 9.

17        (The document was so marked

18         by the court reporter.)

19        BY MR. WATSTEIN:

20     Q  Let me know once you've had a chance

21   to review this document that's been marked

22   as Defendant's Exhibit No. 9, Mr. Walston.

23     A  Okay.

24     Q  Do you recognize this letter,

**RASHAD WALSTON vs NATIONAL RETAIL SOLUTIONS, INC.**
**Rahad W. Walston on 04/26/2024**

1    Exhibit 7, second paragraph, do you see the

2    line that says the settlement creates a

3    $15 million non-reversionary fund?

4     A   Yes.

5     Q   Do you believe it's fair for an

6    attorney to ask for $5 million from a

7    $15 million non-reversionary fund?

8     A   I believe if that's what the Court

9    awarded, then yes.

10    Q   We talked briefly -- excuse me,

11    actually.

12            Do you know who ultimately

13    decides if a class action settlement is

14    fair?

15    A   If it goes to trial, the Judge.

16    Q   In terms of a settlement; do you know

17    if there's a class action settlement, do

18    you know who decides?

19    A   Generally, it's the class

20    representative.

21    Q   We touched also on Exhibit 9 and that

22    you had -- am I correct in saying you said

23    you had never seen this letter?  Was that

24    your testimony?

**RASHAD WALSTON vs NATIONAL RETAIL SOLUTIONS, INC.**
**Rahad W. Walston on 04/26/2024**

Page 189

```
 1     A   That's correct.

 2     Q   Were you aware that defendant had

 3  attempted to accept the original $9,800.00

 4  settlement?

 5     A   Yes.

 6     Q   And you were aware of that prior to

 7  the filing of the lawsuit?

 8     A   Yes, I was.

 9     Q   Just the last few questions, and then

10  we can all get out of here subject to any

11  further questions.

12             Did you receive calls from

13  defendant?

14     A   I did, yes.

15     Q   Did you receive voicemails from

16  defendant?

17     A   Yes, I did.

18     Q   Were these voicemails pre-recorded?

19     A   Yes, they were.

20     Q   Did they all begin with the same

21  series of beeps discussed previously?

22     A   Yes, they did.

23     Q   Did you ever give defendant your

24  telephone number?
```

**RASHAD WALSTON vs NATIONAL RETAIL SOLUTIONS, INC.**
**Rahad W. Walston on 04/26/2024**

Page 190

1    A  No, I did not.

2    Q  Have you ever heard of a company

3  called IDT?

4    A  Yes, I have now.  Yes, I have.

5    Q  But prior to this lawsuit, had you

6  heard of a company called IDT?

7    A  No, I haven't.

8    Q  Did you ever give IDT your telephone

9  number?

10   A  No, I did not.

11   Q  Prior to this lawsuit, did you ever

12  give IDT your telephone number?

13   A  No, I did not.

14   Q  Is this lawsuit an individual case, a

15  class case, or something else?

16   A  It's a class case.

17   Q  Did you authorize its filing as a

18  class?

19   A  Yes.

20   Q  Were you promised anything to bring

21  this as a potential class?

22   A  No, I was not.

23   Q  Were you induced in any way to bring

24  this as a potential class?

**RASHAD WALSTON vs NATIONAL RETAIL SOLUTIONS, INC.**
**Rahad W. Walston on 04/26/2024**

1    A  No, I was not.

2    **Q  Were you bullied or pressured in any**

3    **way to bring this as a potential class?**

4    A  No, I was not.

5    **Q  As this is a class case, what does**

6    **that mean to you in terms of your duties**

7    **and obligations?**

8    A  As far as me being the representative,

9    or just the class as a whole?

10   **Q  You authorized this filing as a class,**

11   **as you just said a moment ago?**

12   A  Yes.

13   **Q  What does filing it as a class mean to**

14   **you?**

15   A  That means multiple people could have

16   been afflicted by the defendant, and that

17   they will receive justice, potentially, or

18   they will be involved in the lawsuit as

19   well.

20   **Q  And do you take that -- is that**

21   **important to you that there may be other**

22   **people out there that were affected by**

23   **this?**

24   A  Yeah.  As I said previously, it's