**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| RASHAD WALSTON, on behalf of himself and all others similarly situated, | : | Case No. 1:24-cv-00083 |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| NATIONAL RETAIL SOLUTIONS, INC. D/B/A NRS PAY, | : | |
| | : | |
| Defendant. | : | |

_____/

**DEFENDANT'S REPLY IN SUPPORT
OF ITS MOTION TO DENY CLASS CERTIFICATION**

## <u>TABLE OF CONTENTS</u>

I.     INTRODUCTION ........................................................................................................1

II.    ARGUMENT: PLAINTIFF CANNOT MEET HIS
BURDEN TO SHOW ADEQUACY ..........................................................................3

    A.    Counsel's Triple Handcuff Terms Preclude Adequacy............................................3

    B.    Counsel's Various Excuses for His Triple
Handcuff Terms Are Meritless ................................................................................5

    C.    Amending After Getting Caught Doesn't Wipe the Slate Clean...........................10

    D.    Counsel's Claims that His Handcuff Terms Were Not
"Used" or "Triggered" Are Irrelevant and False ...................................................11

    E.    Counsel's Multiple Additional False Statements Confirm Inadequacy ................13

    F.    Counsel's Arguments that the Rules Don't Apply to Him Fail.............................14

    G.    Plaintiff's Arguments to Exclude NRS's Experts are Meritless ...........................15

III.    CONCLUSION .........................................................................................................15

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Ansur Am. Ins. v. Borland*,
   2024 WL 4355155 (S.D. Ill. Sept. 30, 2024) ...........................................................................15

*Blanchard v. EdgeMark Financial*,
   175 F.R.D. 293 (N.D. Ill. 1997) ..............................................................................................15

*Bodner v. Oreck Direct*,
   2007 WL 1223777 (N.D. Cal. Apr. 25, 2007)..........................................................................15

*Buller v. Owner Operator Indep. Driver Risk Retention Grp.*,
   461 F. Supp. 2d 757 (S.D. Ill. 2006) .......................................................................................14

*Client Funding Sols. v. Crim.*,
   943 F. Supp. 2d 849 (N.D. Ill. 2013).................................................................................4, 15

*Cowen v. Bank United of Texas, FSB*,
   70 F.3d 937 (7th Cir. 1995) .......................................................................................................9

*Creative Montessori v. Ashford Gear*,
   662 F.3d 913 (7th Cir. 2011) ...........................................................................................passim

*Daniels v. Bursey*,
   2004 WL 2358291 (N.D. Ill. Oct. 21, 2004) .............................................................................7

*In re General Motors Corp.*,
   55 F.3d 768 (3d Cir. 1995) ...................................................................................................7, 8

*In re Ocean Bank*,
   2007 WL 1063042 (N.D. Ill. Apr. 9, 2007)..............................................................................6

*In re Quintus*,
   201 F.R.D. 475 (N.D. Cal. 2001) .........................................................................................1, 6

*In re Salem*,
   465 F.3d 767 (7th Cir. 2006) ...................................................................................................15

*Jamison v. First Credit Servs., Inc.*,
   290 F.R.D. 92 (N.D. Ill. 2013) ................................................................................................10

*Joseph v. Drew*,
   36 Cal. 2d 575 (1950)................................................................................................................4

*Kulig v. Midland Funding*,
   2014 WL 5017817 (S.D.N.Y. Sept. 26, 2014) ...................................................................6, 13

*Loatman v. Summit Bank*,
    174 F.R.D. 592 (D.N.J. 1997*)* ...................................................................................9

*Logiudice v. Intelemedia*,
    2018 WL 2011188 (M.D. Fla. Apr. 30, 2018) ....................................................2, 13

*Morlan v. Universal Guar. Life Ins. Co.*,
    298 F.3d 609 (7th Cir. 2002) ...................................................................................7

*Reliable Money v. McKnight*,
    704 F.3d 49 (7th Cir. 2013). ............................................................................passim

*Sliwa v. Bright House Networks*,
    333 F.R.D. 255 (M.D. Fla. 2019) ...........................................................................10

*Strickland v. Francis*,
    738 F.2d 1542 (11th Cir. 1984) ...............................................................................4

*Williams v. Bd. of Educ. of Chicago*,
    2022 WL 17082571 (N.D. Ill. Nov. 18, 2022) ...............................................1, 8, 10

*Woods v. Google*,
    2018 WL 4030570 (N.D. Cal. Aug. 23, 2018) .....................................................5, 7

**Rules**

Fed. R. Civ. P. 23,
    advisory committee notes to 2003 amendment ........................................................8

## I.    INTRODUCTION

NRS's motion established that Counsel sought to bypass the bedrock rule that a lawyer cannot also serve as a class representative. He did that with three handcuff terms in his engagement letter that rendered his client an inadequate "figurehead plaintiff[.]" *Williams v. Bd. of Educ. of Chicago*, 2022 WL 17082571, at *2 (N.D. Ill. Nov. 18, 2022). That's because one of Plaintiff's fundamental "responsibilities" is to serve as a check on putative class counsel by "decid[ing] whether and when the case should be settled." *In re Quintus*, 201 F.R.D. 475, 481 (N.D. Cal. 2001). Counsel took that away, and he now concedes it was intentional; the terms are his "standard agreement." ECF 123 n. 2 & 11. By doing so, he created "serious doubt that counsel will represent the class loyally," which is all that is required to deny "class certification." *Reliable Money v. McKnight*, 704 F.3d 489, 495 (7th Cir. 2013). All three prongs of the Seventh Circuit's test for "serious doubt" confirm this result—and Plaintiff failed to even respond to two of them.

Plaintiff's response is otherwise replete with false statements of fact, positions contrary to Counsel's conduct, and misstatements of law. And he could not find an expert to rebut NRS's *two* or support any of his arguments, despite the long extension he obtained for that purpose.

The response thus confirms the Court should grant NRS's motion. Counsel concedes (at 17), for example, that he intentionally imposed terms, like the springing fee that "most courts" have held "usurp the plaintiff's role," and did nothing to ensure his engagement adequately preserved the Rule 23-mandated balance of power between lawyer and client. Plaintiff tries to spin this by claiming Counsel is a hero for removing improper handcuff terms only *after* NRS raised concerns. But it's Plaintiff and Counsel's responsibility to "negotiate a reasonable [engagement]," and their failure to do so precludes finding them "adequate." *In re Quintus*, 201 F.R.D. at 482.

Counsel's refusal to fix the handcuff terms until he was caught does not absolve him—it makes the misconduct worse. Robinson Dep., attached as Ex. 1, 303:5–21. To borrow Plaintiff's

analogy (at 1), his counsel is the fox that only flees when he's caught in the coop. Otherwise, he feasts. And feast he has. Plaintiff touts (at 9) the millions in class resolutions his counsel obtained. But how much better would the classes have fared if Counsel hadn't silenced class representatives with his "standard" handcuff terms? Counsel's proposals here—including a "reversionary" settlement where NRS would pay "as little as possible"—suggest the answer is substantial. ECF No. 76-1, 346–47; Watstein Decl., attached as Ex. 2, ¶ 6.

The response also conspicuously leaves out a critical part of Counsel's feast: the individual settlements he *routinely* obtains under his standard agreement. This omission is egregious. Counsel tries to defend the handcuff terms by arguing (at 16, 17, 20) that "settlement offers in excess of a putative lead plaintiff's damages" are "the most sinister" settlement "strategy." Yet *Counsel routinely settles individually*, and he all but conceded after filing his response that he does so "in excess of a putative lead plaintiff's damages." Terepka Decl., attached as Ex. 3, Ex. A. Because of this cap, these individual settlements would disproportionately enrich Counsel to the detriment of his clients. Counsel refused NRS's requests for additional information on this point. *Id.* Counsel's arguments to this Court and his conduct are thus opposites. And he's covering that up.

Along these same lines, the response also contains verifiably false statements. Counsel claims (at 9) his record is "spotless" and "his integrity has never been questioned." But at least one court sanctioned Counsel by name for failing to involve his client in the settlement process. *Logiudice v. Intelemedia*, 2018 WL 2011188, at *2 (M.D. Fla. Apr. 30, 2018). That's exactly what he did here by imposing triple handcuff terms that made sure Counsel controlled the case.

Courts in this circuit and others have found that conduct *far less* concerning than Counsel's unprecedented triple-handcuff precluded adequacy. One of NRS's experts even testified that she has never seen anything like the engagement letters in her 50 years of practice, including

representing numerous plaintiffs' class action attorneys. Robinson Dep., 296:12–297:13. Under the applicable Seventh Circuit test, the Court must grant NRS's motion.

## II.    ARGUMENT: PLAINTIFF CANNOT MEET HIS BURDEN TO SHOW ADEQUACY

### A.    Counsel's Triple Handcuff Terms Preclude Adequacy

"Serious doubt that counsel will represent the class loyally" is all that is required to deny "class certification." *Reliable Money*, 704 F.3d at 495. The Seventh's Circuit test for "serious doubt" has three independent prongs. Did counsel "jeopardize the integrity" of the proceedings with ethical violations? *Id.* "Create a direct conflict between counsel and the class"? Prejudice "one of the parties"? *Id.* at 499. If the answer to any of these questions is yes, serious doubt exists.

NRS has established serious doubt under all three prongs, and Plaintiff failed to address two of them (jeopardy and conflicts, as discussed below). Counsel's triple handcuff terms jeopardize the integrity of these proceedings by stripping Plaintiff of the power to decide whether and when to settle. *Id.* at 489. That's a crucial check against sell-out deals that enrich counsel at the expense of the class and a variety of other circumstances that would militate in favor of not pursuing a class recovery, such as unfavorable circuit law, a bad forum, and so on. *Id.* That alone precludes adequacy under this prong of the "serious doubt" standard. *Id.* But there is more. The handcuff terms also "create[d] a direct conflict between counsel and the class" because the terms put Counsel's interests above his client and the class. *Id.* at 498. This prong of the serious doubt test independently precludes adequacy. These points are alone enough to show "prejudice" to "one of the parties," again independently precluding adequacy under the third prong. *Id.* at 499.

There is still more prejudice in this case though: The parties agree this dispute started with *Plaintiff* demanding an individual settlement, not any "pickoff" attempt from NRS. Plaintiff testified he continued to be open to such a settlement as low as $4,000 when he spoke with NRS's CEO. Walston Dep., attached as Ex. 4, 124:3–125:15. But once Counsel entered the picture,

3

Walston's interest in individual settlement evaporated. And Counsel used the handcuff terms to reject a much higher offer without telling his client first. ECF No. 76-1, 280–283. This all shows that Counsel's terms served their purpose of improperly obstructing individual settlement.

NRS supported all these points with testimony from two preeminent ethics experts. Plaintiff's failure to submit a rebuttal report is especially telling because he sought a months-long extension to obtain one and claimed he had an expert retainer "on his desk." Nov. 12 Hearing Tr., ECF No. 100, 14:15–16. That failure speaks for itself. *Joseph v. Drew*, 36 Cal. 2d 575, 579 (1950) (uncontradicted expert testimony accepted where the other side could have but did not call expert).

That is doubly true because Counsel's violations of the Rules of Professional Conduct that bear on adequacy are the proper subject for expert opinion. As this Court has recognized, the Rules of Professional Conduct are "specialized and complex," distinguishing it from general litigation experience. *Client Funding Sols. v. Crim.,* 943 F. Supp. 2d 849, 859 (N.D. Ill. 2013). A factfinder should not "arbitrarily ignore the experts in favor of the observations of laymen," much less the self-serving and contradictory arguments of Counsel. *Strickland v. Francis*, 738 F.2d 1542, 1552 (11th Cir. 1984). NRS's experts offer opinions based on their unique time at the ARDC, including that the only remedy here is denying certification. Robinson Dep., 280:4–14, 283:12–284:4 (explaining why disciplinary authorities cannot address adequacy concerns).

The arguments Plaintiff couldn't find an expert to back confirm NRS's motion must be granted. Counsel concedes that he included the handcuff provisions to stifle his client's ability to settle, "jeopardiz[ing] the integrity" of the proceedings and "creat[ing] conflicts between counsel and the class." *Reliable Money*, 704 F.3d at 495. For example, Counsel concedes (at 17) he imposed a springing fee term that could result in a potentially bankrupting legal bill in the event Plaintiff "accept[ed] a settlement offer" against his "written advice." And he "acknowledges" (at

17) "most courts have found" this obviously improper term "problematic" because "it could usurp the plaintiff's role." He also concedes (at 19) that his statutory cap "effectively removed" the normal "incentives" for Plaintiff to settle, and (at 21) that "reasonable offer restriction" allowed him to reject offers without communicating them to his client.

Plaintiff has thus effectively conceded that the terms jeopardized the integrity of the proceedings, created a conflict between counsel and the class, and prejudiced the class—any one of which precludes him from proving adequacy. Plaintiff fails to even argue, much less with expert support, that these terms did not create "a direct conflict between counsel and the class." *Reliable Money*, 704 F.3d 489; *see also* ECF 76-3 at 17-19 (unrebutted expert report establishing conflict). He likewise fails to argue these handcuff terms did not "jeopardize the integrity" of these proceedings. *Id.* Counsel merely claims in a footnote (at 18 n.10) without any authority that this prong of the "serious doubt" test is "largely the same" as prejudice. That's not true. The plain meaning of "jeopardize" is to create a risk of harm or prejudice, regardless of whether it occurred.

In sum, Counsel concedes he imposed triple handcuff terms that usurped Plaintiff's role in deciding whether and when to settle a case. The terms were "the functional equivalent of allowing that counsel to serve as both class representative and class attorney," depriving the putative class of a crucial "check" on counsel. *Woods v. Google*, 2018 WL 4030570, at *4 (N.D. Cal. Aug. 23, 2018). NRS has thus shown "serious" doubt about Counsel's loyalty. *Reliable Money*, 704 F.3d 489. The Court must grant the motion under Seventh Circuit authority on this ground alone.

### B. Counsel's Various Excuses for His Triple Handcuff Terms Are Meritless

So what is Counsel's excuse for imposing these unprecedented triple handcuff terms as his standard on consumer clients? He claims he didn't know better, and that he removed the springing fee because NRS "identified" it as improper. This is false. NRS could not "identify" it because Counsel refused to produce the engagement letter NRS requested for months, only relenting after

NRS deposed Plaintiff. Counsel claims (at 4) that he removed the term after NRS "confronted" him with contrary case law. That is not true either. The cases NRS sent in its July 23 email didn't mention a springing fee; only that engagement letters are discoverable.[1] ECF No. 76-1, 47–48. **Counsel thus removed the springing fee on his own before NRS knew about the term**. He thus knew all along it was improper, and he once again misstated the facts to mislead the Court. That is unacceptable anywhere, but *particularly* in response to a challenge on Counsel's adequacy.

And of course he knew better. It is now undisputed that both the case law and long-settled rules of professional conduct confirm that any terms restraining a client's right to settle are improper. *See, e.g.*, ECF 123 at 4 (Plaintiff's response citing 2007 case that terms removing class representative's control are improper). Counsel "owe[s] a fiduciary obligation . . . to their clients" to avoid imposing unethical terms on consumers who "lack" the "sophistication" to " enable them to monitor" counsel. *Creative Montessori v. Ashford Gear*, 662 F.3d 913, 917 (7th Cir. 2011).

To make matters worse, the terms in Counsel's standard agreement would confuse almost *anyone*. They prominently say at the very beginning: "**You will not have to pay for the firm's services**." That's not true. The later fine print says clients "will be responsible for payment of our base lodestar amount" if they accept a settlement Counsel doesn't like. ECF No. 76-1, 115–16. Given this misleading language, Plaintiff and Counsel did "not negotiate a reasonable [engagement agreement]." *In re Quintus*, 201 F.R.D. at 481 (plaintiff inadequate for this reason).

Counsel's decision to triple-handcuff unsuspecting consumers with confusing terms "goes to the core of" of his adequacy. *Kulig v. Midland Funding*, 2014 WL 5017817, at *5 (S.D.N.Y. Sept. 26, 2014). "Counsel's" argument otherwise "reveals a fundamental misunderstanding regarding a bedrock, mandatory professional duty applicable to any attorney-client relationship."

---

[1] *In re Ocean Bank*, 2007 WL 1063042, at 7 (N.D. Ill. Apr. 9, 2007) involved an engagement letter giving counsel authority to decide whether to settle.

6

*Id.* So do his attacks on NRS counsel (at 4-5, 12–13), including that its *NRS's* fault that he delayed drafting an ethical agreement.

Counsel's next excuse (at 16) is that he had a duty to putative class members to handcuff his client. This argument fails under binding Seventh Circuit authority. "[T]here is no class action" until certification, so Counsel has no duty to non-existent class members. *Morlan v. Universal Guar. Life Ins. Co.*, 298 F.3d 609, 616 (7th Cir. 2002). Nor would settling individually breach any non-existent duty. Counsel knows that, as he routinely settles putative class actions individually. Terepka Decl. ¶ 5. And, as this Court knows, *the vast majority* of putative class actions settle on an individual basis. Does that mean thousands of plaintiffs' lawyers breach their duties every year with individual settlements? Of course not. Such settlements have "no preclusive effect on [their] claims," and "the statute of limitations is tolled" during the case. *Daniels v. Bursey*, 2004 WL 2358291, at *1 (N.D. Ill. Oct. 21, 2004).

Instead, just the opposite of what Counsel contends is true: usurping the representative's prerogative to decide what is best is what prejudices the class. The representative's job is to act as a check on counsel. *Woods*, 2018 WL 4030570, at *4. And there are dozens of reasons an individual settlement may be in the best interest of the client and putative class, including some the lawyer may not like. The client may decide a change in circumstances makes him unsuitable to continue serving, that counsel is unsatisfactory, or that counsel wants to enrich themselves with a "sell out" deal. Robinson Dep., 286:12–287:7 (describing the client's right to change his mind). The representative needs to be free to decide: Should I continue litigating, risking a bad outcome that extinguishes everyone else's claims? Or should I settle my claim individually and let everyone pursue a much better deal on their own? Counsel created a conflict with the putative class by stopping Plaintiff from even considering these questions. Robinson Dep., 308:1–310:8.

Counsel's out-of-circuit authority does not explain or excuse his conduct. *In re General Motors Corp.* addressed an old version of Rule 23 that was amended long ago to clarify there is no pre-certification duty to obtain court approval to dismiss a putative class action. *See* 55 F.3d at 800; *see also* Rule 23 adv. comm. notes to 2003 amendment. The case had nothing to do with *pre-*certification duties and it certainly did not say that the lawyer can paternalistically protect the class from his own client. To the contrary, *In re Gen. Motors* warns of the risk of lawyers monopolizing settlement negotiations, so that case supports *NRS's* position, not Counsel's. *Id.*; *see also Creative Montessori,* 662 F.3d at 917 (warning of the risk counsel may "sell out the class" for "generous compensation" in the absence of an independent representative). That's exactly what Counsel tried to do here when he proposed a reversionary settlement so NRS would pay "as little as possible[.]" Watstein Decl. ¶ 6.

Counsel even says (at 19) that he imposed handcuff terms because he needed to protect the putative class from his own client's pre-certification "leverag[ing]" for his "own benefit." This argument further confirms inadequacy. "[T]here is no basis for the Court to find the named plaintiff trustworthy enough to protect the interests of the class" given Counsel had "so little trust in his own client's abilities." *Williams*, 2022 WL 4182434, at *5 (quotation omitted).

Counsel's purported need to protect class members is also flatly contradicted by his other positions. On the one hand, he claims his client was a threat to the putative class without the handcuff terms. On the other, he claims (at 18) that "before Counsel was retained" his client "decided to seek justice for everyone else" and thus would never consider an individual settlement. Then why impose the improper handcuff terms at all? These positions are irreconcilable.

Further rebutting any purported desire to protect putative class members, the handcuff terms just put Counsel's interests above everyone else. The terms gave Counsel increasing veto

power over any individual settlement by allowing him to "spring" hundreds of thousands in hourly fees on Plaintiff if he settled. The reasonable offer term empowered Counsel to just decline offers without communicating them, taking Plaintiff out of the picture. And the statutory cap doesn't prevent individual settlement. It just ensures *Plaintiff* doesn't benefit from it. By Plaintiff's own math, the statutory cap alone would mean his Counsel would pocket 90% of a $285,000 settlement. That creates an *incentive* for *Counsel* to sell out the class. And it could mean Counsel kept 90% or more of the "$1 million"-plus settlements he boasts of (at 9).

In fact, NRS asked Counsel to provide simple information to disprove what the public dockets and his statements (at 16) show: He routinely accepts "sinister" (his words) "settlement offers in excess of a putative lead plaintiff's damages." Terepka Decl. ¶ 5. That evidence would confirm that his conduct is the opposite of his arguments here. It would likewise show that *Counsel* uses the statutory cap to sell out clients by pocketing an overwhelming share of his individual settlements. In response, Counsel walked back the "sinister" argument, claiming "[t]hat is not the argument that was made," and refusing to provide information without a subpoena. *Id.*, Ex. A.[2]

That aside, reliance on a decades-old out-of-circuit district court decision (*Loatman*) to claim there is something "sinister" about individual settlements is contrary to binding and well-settled authority. *Cowen v. Bank United of Texas*, FSB, 70 F.3d 937, 941 (7th Cir. 1995) (resolving individual claims "does not seem to us improper"); *see also* above at 7–8.

Most remarkably, however, is Counsel's claims (at 1, 11) that NRS's motion attacks people who are "not wealthy." That is absurd. Counsel has enriched himself handsomely[3] by imposing triple handcuff terms as his "standard" for consumer clients, including a statutory cap that ensures

---

[2] Given Counsel's concessions and in the interest of avoiding disputes, NRS did not serve a subpoena but reserves the right to do so in the future (including if the Court expresses interest in seeing the results).

[3] *See* ECF 123 at 9-10 (touting over $30 million in class settlements and $1 million in individual).

they cannot recover actual damages (which the TCPA allows) and that he keeps the lion's share of whatever he gets from clients' claims. He did so with confusing, contradictory language in his engagement letters. His client here either didn't notice or didn't remember these terms, suggesting Counsel didn't adequately disclose them. Walston Dep., 166:23–168:9. He then rejected offers without communicating them to his client. *See* below at 12. And he did all these things to protect his own interest and power over the case, to the detriment of the putative class and a client whose role Counsel admits (at 11) he views as "nominal." *These* abusive practices exploit "consumers" who "lack" the "sophistication" to catch them, not NRS's motion seeking stop them. *Creative Montessori*, 662 F.3d at 917; *see also* Robinson Dep., 289:25–292:15.

### C.    Amending After Getting Caught Doesn't Wipe the Slate Clean

NRS's motion also established (at 21-22) that Counsel cannot cure his violations by amending them after getting caught. Counsel argues "yes I can" by twisting the case law to claim (at 2) it holds that any "issues can be cured via amendment." That is wrong. "Belatedly abolishing" improper terms that "strip" Plaintiff's "decision-making authority" does not address the concerns created by imposing them "in the first place." *Williams*, 2022 WL 17082571, at *3.

That is especially true here because the deceptive, improper triple handcuff terms Counsel admits is his "standard agreement" are unprecedented. Not one of Plaintiff's cases involved counsel who imposed all three terms. NRS's unrebutted expert confirmed she hadn't seen such draconian handcuff terms in 50 years. If she had, she "*would say what were you thinking?*" Robinson Dep., 296:12–297:13 (emphasis added). And in contrast to Counsel's factually different cases that denied certification on other grounds, NRS's motion squarely presents adequacy for decision. *See, e.g.*, *Sliwa v. Bright House Networks*, 333 F.R.D. 255, 278 (M.D. Fla. 2019).

The record establishing inadequacy is also much stronger here. Unrefuted expert testimony shows that Counsel's severe violations created a conflict between him and the class and there's

"no escape provision" in the rules to fix the violations after getting "caught." ECF 76-3 at 9-19. Rather, such conduct makes the violations "worse." Robinson Dep., 303:5–21. The unrebutted expert testimony further established the discipline process is no substitute for judicial action. Robinson Dep., 280:4–14, 283:12–284:4. It can only address "future" harm and cannot address the integrity of proceedings and conflicts Counsel created. *Id.,* 283:12–284:4, 301:3–5.

Allowing Counsel to just amend would "condone [and thus] invite, unethical conduct," *Creative Montessori*, 662 F.3d at 917, by sending this message: "It's acceptable for attorneys to handcuff consumers for personal financial gain. There will there be no consequences. You will be even rewarded, so long as you do it correctly. In fact, here's a roadmap. Impose 'standard' handcuff provisions with all your consumer clients with confusing language to prevent them from settling at the outset, before the parties invest substantial time and resources. Delay discovery by refusing to produce your engagement letter. Then remove these terms at the last minute *after* they have served their purpose. Last, get appointed class counsel and recover millions." This Court obviously cannot issue such an order. The Seventh Circuit and common sense require more.

### D.    Counsel's Claims that His Handcuff Terms Were Not "Used" or "Triggered" Are Irrelevant and False

The response also argues (at 17-22) that the handcuff terms can't show inadequacy because those terms were not "used" or "triggered." These arguments are meritless for several reasons.

First, whether the terms were "used" or "triggered" is beside the point because that is not this Circuit's test for "serious doubt that counsel will represent the class loyally." *Reliable Money*, 704 F.3d 489 (setting forth three prongs); *see* also *supra* at 3. Counsel doesn't dispute two of those.

The argument that the handcuff terms were not "used" or "triggered" is also false. Counsel "used" all the terms by putting them in his engagement letter behind deceptive language that said Plaintiff didn't have to pay anything. And the record shows these terms were triggered during the

11

litigation, preventing the parties from settling. The record, for example, is now undisputed that the springing fee would have swallowed NRS's $35,000 offer. Counsel now concedes (at 10) he has "more than 450 hours and $20,000" into this case. So he obviously had at least 55 hours six months in, which is all it would take for the "base lodestar amount" to exceed NRS's offer (Counsel's $650 rate times 55 hours exceeds $35,000). The result would be Plaintiff owing his lawyer money if he accepted. That "triggered" the springing fee by giving Counsel veto power to force Plaintiff "to disregard . . . his individual claim[s]." Robinson Dep., 308:19–310:22.

Counsel also argues (at 18) that the springing fee could not have been "used or triggered" because Plaintiff "did not recall" it. The opposite is true. Plaintiff's inability to remember confirms that Counsel successfully misled his consumer client into accepting unethical terms that stripped him of his role, precluding adequacy. Robinson Dep., 290:7–12. Counsel is also estopped from using Plaintiff's testimony about the handcuff terms against NRS, since he withheld the terms and then refused to let NRS depose Plaintiff about them. Watstein Decl. ¶ 7.

The settlement cap was also "triggered." As Counsel admits (at 19), the point of that cap was to disincentivize Plaintiff (*but not Counsel*, who got everything over the cap) from settling individually. That worked because Plaintiff was disincentivized when the case could have been resolved before both parties incurred enormous time and expense. Counsel likewise used the "reasonable offer" restriction. He claims (at 21) there is "no evidence" he "failed to convey a settlement offer." But that is, yet again, false. It took Counsel 68 minutes to reject NRS's $35,000 offer. ECF No. 76-1, 280–283. "**Yesterday** I conferred with my client," he explained when doing so, confirming that he did not communicate the offer before rejecting it. *Id.*

Counsel does not even try to argue he conveyed the offer to his client beforehand, despite his representations to the Court. He merely plays evidentiary games by claiming (at 21) NRS has

12

"no evidence" to prove the absence of a communication—ignoring that Counsel refused NRS's attempt to obtain such evidence by deposing Plaintiff, as explained above. In any event, it is *Plaintiff's* burden to prove adequacy. And the record here shows he and Counsel disregarded "the discussion and evaluation of settlement offers" even though that is perhaps the "most significant point of contact" between them during a class action. *Kulig*, 2014 WL 5017817, at *6.

The bottom line is that this is the rare case where the unrebutted record shows handcuff terms served their purpose. It is undisputed that this case started with *Plaintiff* demanding an individual settlement. ECF No. 22-1, 6–8. But as soon as Counsel got involved and imposed triple handcuff terms on a consumer client, all progress stopped, even when the Court expressly asked the parties to "try to settle it for real[.]" June 11 Hearing Tr., ECF No. 51, 11:16–22. Self-serving and contradictory testimony can't rebut this record. Counsel claims (at 18), for example, that Plaintiff lost all interest in an individual settlement because of a November call with NRS's CEO Elie Katz. But Plaintiff himself testified that he was open to accepting as much as "maybe $3,000 or $4,000, in that range[.]" Walston Dep., 124:3–125:15. There will *never* be stronger evidence than this, in any case, that the handcuff terms served their purpose.

### E.  Counsel's Multiple Additional False Statements Confirm Inadequacy

Further compounding his inadequacy, Counsel makes two additional verifiably false claims in the response. First, he claims (at 9) his record is "spotless" and "his integrity has never been questioned." That's false. At least one Court sanctioned him by name for showing up at mediation without his client despite requiring his client to "attend and participate." *Logiudice*, 2018 WL 2011188, at *2. Counsel's excuses for his misconduct there echo his excuses here: He "simply claim[ed] that he overlooked" basic rules about his client's participation in settlement. *Id.*

Second, Plaintiff claims (at 6-7) that NRS is "hid[ing]" his counsel's offer to participate in a settlement conference. This is false too. The conference wasn't Plaintiff's idea or "offer." It was

*NRS counsel's offer* and that's already in the record—it's not hidden. ECF 76-1 at 4 ("[P]rovide this communication to your client and let us know his response to having a settlement conference"). Even more egregiously, Counsel claims (at 7) that NRS "ignored" the possibility of a settlement conference. But NRS's counsel tried to take Plaintiff up on (its own) offer of such a conference numerous times, including in-person. Watstein Decl. ¶ 5. In sum, Counsel nonsensically says that NRS ignored its own offer for a conference and hides that now. In reality, *Counsel* repeatedly declined NRS's offer and hides that now. These false statements about the same conduct he was previously sanctioned for (not involving his client in settlement) are more evidence of inadequacy.

### F. Counsel's Arguments that the Rules Don't Apply to Him Fail

Counsel also argues that the rules don't apply to him at all. He claims (at 16-17), for instance, that the Model Rules say that some violations may not "necessarily warrant any other nondisciplinary remedy." That is beside the point here. The Seventh Circuit is clear that "[m]isconduct by class counsel that creates a serious doubt that counsel will represent the class loyally requires denial of class certification." *Creative Montessori*, 662 F.3d 913, 918. That is especially applicable here given the unrebutted expert record that disciplinary remedies cannot preserve the integrity of judicial proceedings. *See* above at 4.

Counsel also suggests (at 15-16) that the rules at issue here may not apply to class actions. But he offers no coherent reason and fails to rebut NRS's experts. RSMD Report, 12–13; *see also Buller v. Owner Operator Indep. Driver Risk Retention Grp.*, 461 F. Supp. 2d 757, 764 (S.D. Ill. 2006) (precertification settlements are treated like individual claims and are governed by Rule 41). Nor could he. Rules against seizing control of a case, creating conflicts of interest, failing to convey settlement offers, and taking unreasonable fees apply *more* strongly to cases involving "consumers" who lack resources and "sophistication" to protect themselves. *Creative Montessori*, 662 F.3d at 917. *Blanchard v. EdgeMark Financial* is not contrary. 175 F.R.D. 293, 307 (N.D. Ill.

1997). It addressed *post*-certification duties and was decided before the amendment to Rule 23 discussed above at 8. In contrast, no class has been certified here.

### G.    Plaintiff's Arguments to Exclude NRS's Experts are Meritless

Recognizing the weakness of his indefensible position, Plaintiff asks to exclude NRS's experts. The request is frivolous. NRS has more than satisfied its "lessened" burden for the Court to consider its preeminent experts' opinions. *In re Salem*, 465 F.3d 767, 777 (7th Cir. 2006). Courts have previously allowed both to testify as experts, including in class actions. *See, e.g.*, *Client Funding,* 943 F. Supp. 2d at 859 (permitting Ms. Robinson as expert); *Ansur Am. Ins. v. Borland*, 2024 WL 4355155, at *4 (S.D. Ill. Sept. 30, 2024) (permitting Ms. Montgomery); Robinson Dep. at 25:21–28:25. Nor are NRS's experts offering legal conclusions. Professional standards are an appropriate subject for expert testimony, as discussed above at 4.

Plaintiff's final argument is that "speaking objections" justify the Court disregarding expert evidence. Justice would never permit excluding highly probative evidence on a thin, irrelevant technicality. NRS could otherwise exclude *Plaintiff's* deposition for Counsel's speaking objections, ending his case by default. Walston Dep., 33:19-24, 87:3-6. NRS also made its expert available *for ten hours* of testimony, during which 99% of objections were to "form."

### III.    CONCLUSION

The unprecedented triple handcuff terms Counsel imposed with confusing language on a consumer client create "serious doubt that counsel will represent the class loyally." *Reliable Money*, 704 F.3d at 495. All three prongs of the Seventh Circuit's analysis independently compel this conclusion. And Plaintiff has failed to contest two of them at all. To permit this case to proceed as a class action "in such circumstances would be to place this [C]ourt's imprimatur on litigation practices" that are "inconsistent with the standards of federal class action suits." *Bodner v. Oreck Direct*, 2007 WL 1223777, at *3 (N.D. Cal. Apr. 25, 2007). The Court should grant NRS's motion.

DATED:        January 27, 2025.

Respectfully submitted,

*/s/ Alexander D. Terepka*
Ryan D. Watstein (*admitted pro hac vice*)
ryan@wtlaw.com
Patrick J. Fitzgerald (*admitted pro hac vice*)
pfitzgerald@wtlaw.com
Alexander D. Terepka (*admitted pro hac vice*)
alex@wtlaw.com
**WATSTEIN TEREPKA LLP**
1055 Howell Mill Road, 8th Floor
Atlanta, Georgia 30318
Tel: (404) 782-9821
Fax: (404) 537-1650

Justin M. Penn, ARDC 6283726
jpenn@hinshawlaw.com
**HINSHAW & CULBERTSON LLP**
151 North Franklin Street, Suite 2500
Chicago, Illinois 60606
Tel:  (312) 704-3000

*Counsel for Defendant*

## CERTIFICATE OF SERVICE

I hereby certify that on January 27, 2025, I caused to be electronically filed a true and correct copy of the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record.

*/s/ Alexander D. Terepka*
Alexander D. Terepka