# EXHIBIT 4

RASHAD WALSTON vs NATIONAL RETAIL SOLUTIONS, INC.
Rahad W. Walston on 04/26/2024

1                IN THE UNITED STATES DISTRICT COURT
                   NORTHERN DISTRICT OF ILLINOIS
2                        EASTERN DIVISION

3

4    RASHAD WALSTON,              )
                                  )
5                 Plaintiff,      )
                                  )
6       vs.                       )   No.
                                  )   1:24-CV-00083
7    NATIONAL RETAIL SOLUTIONS,   )
     INC.,                        )
8                                 )
                  Defendant.      )
9                                 )

10

11            THE DISCOVERY DEPOSITION OF
                   RAHAD W. WALSTON
                    April 26, 2024
12                    9:00 A.M.

13

14          Called as a witness by the Defendant

15    herein, pursuant to the provisions of the

16    Federal Rules of Civil Procedure pertaining

17    to the taking of depositions for the

18    purpose of discovery, before GLORIA

19    APOSTOLOS SIOLIDIS, C.S.R. License

20    #084-001205, duly qualified and

21    commissioned for the State of Illinois.

22

23

24

**RASHAD WALSTON vs NATIONAL RETAIL SOLUTIONS, INC.**
**Rahad W. Walston on 04/26/2024**

Page 32

1   out is why?

2       MR. GLAPION:  Objection, form.  But

3   you can answer I mean to the extent there

4   was a question.

5       BY MR. WATSTEIN:

6    Q  Yeah.  My question is, why did you

7   pick Indiana as opposed to Illinois to have

8   an office in?

9    A  I like northwest Indiana.

10   Q  Okay.  But you don't live there?

11   A  Not currently.

12   Q  Have you ever lived there?

13   A  No, but I was considering it.

14   Q  Okay.  Why were you considering it?

15   A  Because I like northwest Indiana.

16   Q  What about it do you like?

17   A  It's not Chicago.

18   Q  Okay.  Is it a suburb?

19   A  No, it's Indiana, the state of

20  Indiana.

21   Q  I understand that.  But you can have,

22  you know, a city that's on state lines and

23  have a suburb in another state.  That's

24  what I'm trying to figure out.  I'm not

**RASHAD WALSTON vs NATIONAL RETAIL SOLUTIONS, INC.**
**Rahad W. Walston on 04/26/2024**

Page 33

```
 1   familiar with the area.

 2     A   I don't understand your question.

 3     Q   Okay.  But I'm -- you said you like it

 4   because it's not Chicago, right?

 5     A   Correct.

 6     Q   Okay.  Can you just explain what you

 7   mean by that?

 8     A   Hammond, Indiana is a city that's not

 9   Chicago, Illinois.

10     Q   I understand that and I don't know

11   if -- you seem like you're really annoyed,

12   hostile.

13           I'm really just -- you have to

14   understand, I don't know your life story.

15   I'm asking you these questions to try to

16   move this deposition along, get the

17   information I need so we can all go home,

18   and you just seem very hostile.

19     MR. GLAPION:  Objection to the form of

20   this.  I know we agreed to objection to

21   form, but this is twice now the implication

22   has been you put a characterization on the

23   record implying that my client, or stating

24   that my client is hostile.
```

**RASHAD WALSTON vs NATIONAL RETAIL SOLUTIONS, INC.**
**Rahad W. Walston on 04/26/2024**

```
 1              We have a videographer.  We have
 2    a court reporter that will reflect as
 3    needed without the narrative of that.
 4         MR. WATSTEIN:  I agree that the video
 5    will reflect the witness's demeanor, but I
 6    guess -- first of all, I'm entitled to make
 7    my own record; and second of all, like I
 8    said, I'm just trying to do my job.
 9              I thought that maybe we could
10    have a little more of a civil discourse,
11    move things along a little bit easier.  And
12    the reason I'm pointing out your apparent
13    hostility, maybe it's just your everyday
14    demeanor.
15         MR. GLAPION:  Objection.
16         BY MR. WATSTEIN:
17      Q  But you seem like very unhappy to be
18    here and kind of directing some animosity
19    towards me, and I guess I'm trying to
20    figure out why and also trying to figure
21    out what I can do to ease it along so we
22    get along a little bit better, because I'm
23    not trying to give you a hard time, I'm
24    just trying to learn the story here.
```

**RASHAD WALSTON vs NATIONAL RETAIL SOLUTIONS, INC.**
**Rahad W. Walston on 04/26/2024**

Page 86

1    wrongful?

2      A   It's difficult for me to remember

3    everything that they did for all creditors.

4    I know some sent what you call dunning

5    letters.  There's a legal language in the

6    letters.  Some placed illegal calls.  Some

7    left illegal voicemails.  It was a variety

8    of things these different creditors and

9    collection agencies did.

10     Q   Okay.  But can you point specifically

11   to what you think they did that was

12   wrongful?

13     A   Blitt and Gaines specifically?

14     Q   Any of the creditors?

15     A   Yeah.  Just the stuff I mentioned like

16   sending dunning letters, illegal calls

17   maybe before or after a certain time.  Some

18   had illegal voicemail messages.  So it was

19   a variety of things.

20     Q   Right.  And I guess as a followup,

21   what I'm interesting in is as opposed to

22   you just saying they were illegal, what is

23   it that harmed you?  What is it that you

24   took issue with from like and ordinary

**RASHAD WALSTON vs NATIONAL RETAIL SOLUTIONS, INC.**
Rahad W. Walston on 04/26/2024

Page 87

1    citizen perspective, stepping away from

2    what's legal and illegal?

3         MR. GLAPION:  Objection to form.  But

4    you can answer if you understand it.

5         THE WITNESS:  Yeah, I don't really

6    understand that question.

7         BY MR. WATSTEIN:

8      Q  Sure.  So what is the conduct that you

9    took issue with that these creditors

10   engaged in?

11     A  They engaged in practices to try to

12   collect funds from me illegally.

13              And I believe that the majority,

14   if not all citizens in my position want to

15   have a right to defend themselves.  Many

16   people don't know.  But me in particular, I

17   try to find out solutions so I'm not being

18   harmed in that way.

19              So I guess to sum up your

20   question is just they were trying to

21   collect funds from me in an illegal way

22   that I felt wasn't acceptable.

23     Q  Okay.  And again, what I'm trying to

24   figure out is what is it that you took

**RASHAD WALSTON vs NATIONAL RETAIL SOLUTIONS, INC.**
**Rahad W. Walston on 04/26/2024**

Page 88

```
1    issue with about their collection --

2    specifically, what conduct by them did you

3    deem to be harmful or illegal?

4         MR. GLAPION:  Objection to form.

5         THE WITNESS:  Harassing calls.

6    Harassing voicemail messages.  Harassing

7    letters.  Things to try to hurt and

8    intimidate me.

9         BY MR. WATSTEIN:

10   Q  Can you give me any examples?

11   A  Honestly, not at this time.  I don't

12   have the letters in front of me.  That was

13   a while ago.  But everything that I've just

14   mentioned are things that would hurt the

15   average American citizen.  That's what I

16   am, just an average Joe.

17   Q  Okay.  But you don't dispute that you

18   owed money in all of those instances,

19   right?

20        MR. GLAPION:  Objection to form.

21        THE WITNESS:  I did owe money.

22        BY MR. WATSTEIN:

23   Q  You did?

24   A  Yes.  And that's why I paid it back.
```

**RASHAD WALSTON vs NATIONAL RETAIL SOLUTIONS, INC.**
Rahad W. Walston on 04/26/2024

Page 122

```
1          THE WITNESS:  That is correct.

2          BY MR. WATSTEIN:

3      Q   Okay.  And it was the CEO named Elie,

4   right?

5      A   That is correct.

6      Q   Okay.  And as I understand the

7   conversation, Elie apologized for any

8   inconvenience to you; is that right?

9          MR. GLAPION:  Objection to form.

10         THE WITNESS:  I don't remember an

11  apology, no.

12         BY MR. WATSTEIN:

13     Q   Okay.  And as I understand it -- well,

14  let me back up.  You say you don't remember

15  an apology.  You don't remember one way or

16  another?

17     A   I don't remember him apologizing.

18     Q   Okay.  Do you remember him not

19  apologizing?  Are you saying he did not

20  apologize?

21         MR. GLAPION:  Objection to form.

22         THE WITNESS:  I'm saying that I cannot

23  recall him apologizing.  I can't recall him

24  saying hey, man, I'm sorry that my company
```

**RASHAD WALSTON vs NATIONAL RETAIL SOLUTIONS, INC.**
**Rahad W. Walston on 04/26/2024**

Page 123

1  called you.  I don't remember that at all.

2      BY MR. WATSTEIN:

3    Q   Okay.  Do you remember Elie saying

4  that NRS wanted to make it right for your

5  frustration, or something to that effect?

6      MR. GLAPION:  Objection to form.

7      THE WITNESS:  Something similar to

8  that, yes.

9      BY MR. WATSTEIN:

10   Q   Okay.  And as I understand it, he

11  offered you some amount of money; is that

12  right?

13   A   That is correct.

14   Q   Okay.  And in your view, it wasn't

15  sufficient; then you effectively reiterated

16  that basically, it's going to take

17  $9,800.00 to resolve this?

18      MR. GLAPION:  Objection to form.

19      THE WITNESS:  That is not correct.

20      BY MR. WATSTEIN:

21   Q   Okay.  What's incorrect about that?

22   A   I did not say he had to pay $9,800.00.

23   Q   Okay.  Well, what did you say then?

24   A   I said that what he offered me was

**RASHAD WALSTON vs NATIONAL RETAIL SOLUTIONS, INC.**
**Rahad W. Walston on 04/26/2024**

Page 124

1   $800.00.

2     Q  Okay.

3    A  And I said $800.00 is not good enough.

4   And I maybe have thrown out some amounts of

5   maybe $3,000.00 or $4,000.00, in that

6   range, $5,000.00.  But I never said you

7   have to give me $9,800.00, exactly what's

8   in this letter.  I did not say that.

9     Q  Okay.  So basically, let me see if I

10  can accurately summarize.

11         Basically, he offered you $800.00

12  and you came back with something like

13  that's not good enough; it's going to have

14  to be higher than that, maybe $4,000.00,

15  $5,000.00, something like that, and he said

16  I'll get back to you?

17    A  No, that's not what he said.  What he

18  said is, come on -- this is generally what

19  he said.  He said, "Come on, man."  But I

20  do remember specifically, he said, "We're a

21  small company.  We can't afford this type

22  of money.  Let's make today a good day."

23  And he asked me to call him back.

24         But he reiterated, he said that

**RASHAD WALSTON vs NATIONAL RETAIL SOLUTIONS, INC.**
**Rahad W. Walston on 04/26/2024**

Page 125

1    he was NRS Pay.  They are a small company.

2    That he would have to get approval to issue

3    out anything over $800.00.  And he asked

4    me, and I said that's not good enough.  So

5    he asked me to call him back at some point.

6              He said he will be in and out of

7    meetings that day; to give him a call back.

8    And I said, "I'll give you a call back."  I

9    said, "I'll give you a call back."

10   Q  Okay.  So I think I understand now.

11             So basically, he offered $800.00.

12   You said that's not good enough.  It's

13   going to take something more like $4,000.00

14   or $5,000.00?

15   A  At least, at least.

16   Q  At least.  Okay.  And then he said, "I

17   have to get authority for that, or see if I

18   can get authority for that; why don't you

19   call me back?"

20   A  No.  He said, "We're a small company.

21   We cannot afford that.  I would have to get

22   authority to do anything over $800.00."  He

23   never said that he's going to check to get

24   authority.  He said, "I will have to get

**RASHAD WALSTON vs NATIONAL RETAIL SOLUTIONS, INC.**
**Rahad W. Walston on 04/26/2024**

1    authority."  He made it seem like that was

2    it, $800.00 flat, that's it.

3      Q  Okay.  But he said he would have to

4    get authority for something over $800.00,

5    and the way that you guys left it was there

6    would potentially be another discussion?

7      A  I believe so, yes.

8      Q  Okay.  So you made clear that your

9    position was you didn't need the whole

10   $9,800.00, but you needed it to be several

11   thousands?

12     A  At least, yes, for -- yeah.

13     Q  Okay.  Oh, one more thing.

14           Okay.  So if you can turn to the

15   attachments to Defendant's Exhibit No. 6?

16   So you can go to Page No. 4.

17     A  Okay.

18     Q  So you see, is this a screenshot of

19   your phone?

20     A  It is, yes.

21     Q  Okay.  And it says blocked in the

22   upper left-hand corner, right?

23     A  That is correct.

24     Q  Okay.  And so can you explain to me

**RASHAD WALSTON vs NATIONAL RETAIL SOLUTIONS, INC.**
Rahad W. Walston on 04/26/2024

Page 127

1   how you navigate to this page on your

2   phone?

3        MR. GLAPION:  Objection to form.

4        THE WITNESS:  This is off my old

5   phone.  This is an iPhone 6.  I don't

6   currently have that phone right now.

7             Are you asking me to pull out my

8   phone and navigate it?

9        BY MR. WATSTEIN:

10   Q  No.  I'm just asking if you can recall

11  how you navigated to this page effectively?

12   A  Yes.  What you do is you go to your

13  call history.  Scroll all the way down to

14  the bottom half section.  I believe it's

15  deleted messages.  Then you have blocked

16  calls.  You hit blocked calls, and it shows

17  all your blocked calls and all your blocked

18  voicemail messages.  It's something in that

19  realm.

20        BY MR. WATSTEIN:

21   Q  Okay.  And to be clear, you weren't

22  using any sort of call blocking app, it was

23  just what comes standard on the iPhone?

24   A  Yeah.  Just the standard iPhone

**RASHAD WALSTON vs NATIONAL RETAIL SOLUTIONS, INC.**
**Rahad W. Walston on 04/26/2024**

Page 128

1   blocking feature.

2     Q   Okay.  And if you scroll through these

3   screenshots that are attached to this

4   demand letter, you'll see that there are

5   screenshots of, it looks like seven

6   communications from what you contend is

7   that NRS Pay number; is that right?

8     A   Correct.

9     Q   Okay.  And they are numbered 1

10  through 7 at the top right.  Do you see

11  that?

12    A   Correct, yes.

13    Q   Did you put that numbering on there?

14    A   The number in the circle, yes.

15    Q   Okay.  That's your handwriting?

16    A   Yes.

17    Q   Okay.  And what you'll see is the

18  numbers 1 through 6 for the calls that are

19  labeled in the upper right-hand corner,

20  number 1 through 6 all say blocked?

21    A   Right.

22    Q   And the seventh one says voicemail in

23  the upper left-hand corner?

24    A   Yes.

RASHAD WALSTON vs NATIONAL RETAIL SOLUTIONS, INC.
Rahad W. Walston on 04/26/2024

Page 162

1        MR. GLAPION:  You were asking about an

2   agreement and he said he would need to --

3   we can read that back.  I believe he said

4   without consulting with attorneys, he would

5   not want to settle anything individually.

6        MR. WATSTEIN:  Why don't you read back

7   what he said?

8        (The record was so read

9         by the court reporter.)

10       MR. GLAPION:  And I will renew that

11  objection in terms of any attorney/client

12  privilege.  I think that's what you were

13  asking for, correct?

14       MR. WATSTEIN:  You know what?  Strike

15  my question, because he's already answered

16  it before I even asked it.

17       BY MR. WATSTEIN:

18   Q  So why is it that you would not be

19  willing to settle this case individually?

20   A  That's something I have to discuss

21  with my legal team, Mr. Glapion.

22   Q  But I'm not asking your legal team,

23  I'm asking you, and that's something --

24            You know part of this process is

**RASHAD WALSTON vs NATIONAL RETAIL SOLUTIONS, INC.**
Rahad W. Walston on 04/26/2024

Page 163

1    I have the right to ask you questions, and

2    that's what I'm doing now.  I'm not

3    interested in his answer.  I can get that

4    answer from him separately.  I'm interested

5    in your answer.

6            If what you're telling me is that

7    this is your lawyer's decision, fine.  But

8    --

9     A  No, that's not what I was telling you.

10    Q  Okay.  Then tell me, why is it that

11    you would not be interested in settling the

12    case individually?

13    A  You know what?  I want other people to

14    get justice.  It hasn't been me that's just

15    been harmed by this company, in my opinion.

16            One thing I didn't mention

17    earlier, the phone call I got from Mr. Elie

18    Katz, he initially, you know, asked me my

19    name and did I live at this address, and

20    attempted to try to intimidate me, belittle

21    me, make me feel less than.  I didn't

22    mention that.  And you know, that was

23    hurtful to me.

24            So after that conversation, what

**RASHAD WALSTON vs NATIONAL RETAIL SOLUTIONS, INC.**
**Rahad W. Walston on 04/26/2024**

Page 164

1   went through my head, I thought if they're

2   willing to do this to me, have they done

3   this to other people?  Will they do this to

4   other people?

5          So I'm at the point now where I

6   like to see justice for multiple people,

7   not just myself.

8   Q  Let me understand.  I don't

9   understand.  What you're saying is that

10  Mr. Katz called you to see -- you got a

11  phone call.  You sent a letter and you got

12  a phone call back from the CEO of a

13  company, right?

14  A  That's correct.  But in the demand

15  letter I specified to do not call me.  I

16  specified to email me to make sure that any

17  contact with me should be via email.

18          So a direct phone call from

19  Mr. Elie Katz from the jump was a form of

20  intimidation and try and push me around.

21          I insisted specifically do not

22  contact me, via email.  He deviated from

23  that.

24  Q  Okay.  Don't you think, though -- I'm

**RASHAD WALSTON vs NATIONAL RETAIL SOLUTIONS, INC.**
**Rahad W. Walston on 04/26/2024**

Page 165

1   not trying to argue with you; I'm just

2   saying don't you think that a lot of people

3   would appreciate getting a call from the

4   CEO because it shows that somebody at that

5   level is taking your letter seriously

6   enough to spend the time on it?

7       MR. GLAPION:  Objection to form.

8       THE WITNESS:  Absolutely not.  Not in

9   the manner he called, no.

10      BY MR. WATSTEIN:

11   Q  And you say that the manner was

12   intimidating because he confirmed that he

13   was speaking to the right person?  I'm not

14   sure I follow.

15   A  He said is this Rashad Walston from

16   some address, and attempts to him saying,

17   what I got from it was that yes, I know who

18   you are; I know where you live.  He said an

19   incorrect address.

20          I said, "This is Rashad.  I don't

21   stay at that address."  I think I asked

22   who's calling.  And then he said, "Is this

23   R. W. Walston as well?"  And I said, "Yes.

24   Who is this?"  And then that's when we

**RASHAD WALSTON vs NATIONAL RETAIL SOLUTIONS, INC.**
**Rahad W. Walston on 04/26/2024**

Page 166

1   began talking.

2          But like I said, in the demand

3   letter I asked for nobody to call me.  I

4   asked for all communication via email.

5   That's it.

6          So in my view, I felt that was a

7   form of just another attempt at being

8   harassed, trying to be intimidated, trying

9   to be pushed around.

10   Q   Okay.  I understand what you're

11   saying, I guess.  I wouldn't necessarily

12   interpret that the same way.  Usually when

13   I take the time to pick up the phone and

14   call somebody and speak to them, it's

15   because it's out of a showing of respect.

16      MR. GLAPION:  Objection.

17   BY MR. WATSTEIN:

18   Q   So anyways, I'm not here to testify.

19   I'm not like I said here to argue with you.

20   It's interesting that you took it that way.

21      MR. GLAPION:  Objection to form.

22      BY MR. WATSTEIN:

23   Q   Do you know if the engagement letter

24   permits you to settle your case

RASHAD WALSTON vs NATIONAL RETAIL SOLUTIONS, INC.
Rahad W. Walston on 04/26/2024

Page 167

1    individually, should you want to, without a

2    monetary penalty?

3      A  I'm not 100 percent sure of that.  I

4    don't know.

5      Q  Do you know whether it gives your

6    lawyer the ability to approve any sort of

7    settlement that you might want to enter

8    into?

9      A  Without my knowledge?

10     Q  Not without your knowledge, but do you

11   know whether it gives your lawyer a right

12   to approve or reject any sort of settlement

13   that you might want to enter into?

14     A  I'm not 100 percent sure, but it

15   probably does.

16            I mean I don't know if you're

17   asking just if he can just make the

18   decision without consulting with me?  Is

19   that what you're asking?  Or just we both

20   come up with a settlement or an amount or

21   something like that, and we agree upon it?

22   So I'm not 100 percent sure.

23     Q  Well, why don't you just explain to me

24   in other words what the engagement letter

**RASHAD WALSTON vs NATIONAL RETAIL SOLUTIONS, INC.**
**Rahad W. Walston on 04/26/2024**

Page 168

1    provides about how settlement discussions

2    will be conducted?

3       A  It will be a conversation with me and

4    the legal team.

5       Q  Okay.  But who gets to make the final

6    decision as to whether or not it settles,

7    do you know?

8       A  I'm saying it would be both of us.  It

9    would be a collaborative.

10      Q  Okay.  So both have to agree is your

11   assumption?

12      A  Correct.  I'm not 100 percent sure,

13   but that's my assumption, yes.

14      Q  Okay.

15         MR. WATSTEIN:  This will be Defendant's

16   Exhibit No. 9.

17         (The document was so marked

18          by the court reporter.)

19         BY MR. WATSTEIN:

20      Q  Let me know once you've had a chance

21   to review this document that's been marked

22   as Defendant's Exhibit No. 9, Mr. Walston.

23      A  Okay.

24      Q  Do you recognize this letter,

**RASHAD WALSTON vs NATIONAL RETAIL SOLUTIONS, INC.**
Rahad W. Walston on 04/26/2024

Page 169

1    Mr. Walston?

2      A   No, I've never seen this letter

3    before.

4      Q   Do you keep your voicemail clear

5    regularly, or do you ever allow your

6    voicemail to get full such that you can't

7    receive additional messages?

8      A   It depends.  I generally try to

9    delete.  Sometimes I want to delete

10   unwanted voicemails.  Sometimes I don't.

11   Sometimes it just accumulates.  So it

12   depends.

13            I don't have any hey, this is

14   a -- it's a weekly thing or every month,

15   hey, I've got to go through and clean up my

16   phone; I don't necessarily do that.  It's

17   just on occasion.

18     Q   Okay.  But are there occasions over

19   the last few years that your voicemail has

20   become full?

21     A   Pretty close to, yes.

22     Q   Well, pretty close to, or full?  Two

23   different things.

24            MR. GLAPION:  Objection to form.

**RASHAD WALSTON vs NATIONAL RETAIL SOLUTIONS, INC.**
**Rahad W. Walston on 04/26/2024**

Page 170

1        THE WITNESS:  I can't think of a time

2    where my voicemail messages were at maximum

3    where I couldn't receive any voicemail

4    messages, but my storage was extremely

5    limited from voicemail and other data and

6    stuff, so I had to delete.

7        BY MR. WATSTEIN:

8     Q   Okay.  So because you did that,

9    cleared out your voicemail before you got

10   to max capacity, you can't speak to what

11   would happen if one of these communications

12   from NRS was sent to a phone with full

13   voicemail, right?

14       MR. GLAPION:  Objection to form.

15       THE WITNESS:  So you're asking me do I

16   understand the ramifications of somebody

17   sending a robo call, a robo voicemail

18   message to somebody whose voicemail box is

19   already full?

20       BY MR. WATSTEIN:

21    Q   Correct.  I'm asking if you could

22   speak to what would occur if NRS tried to

23   send one of these communications to

24   somebody with a full mailbox.  Can you