IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| RASHAD WALSTON, on behalf of himself and all others similarly situated, | |
| **Plaintiff,** | No. 24 C 83 |
| v. | Jeffrey T. Gilbert<br>United States Magistrate Judge |
| NATIONAL RETAIL SOLUTIONS, INC. d/b/a NRS PAY, | |
| **Defendant.** | |

## ORDER

Plaintiff Rashad Walston ("Plaintiff") filed this putative class action against Defendant National Retail Solutions, Inc. d/b/a NRS Pay ("Defendant" or "NRS"), alleging NRS sent prerecorded ringless voicemails to Plaintiff, and other similarly situated individuals, without consent in violation of the Telephone Consumer Protection Act. This matter is before the Court on (1) Plaintiff's Motion for Relief Under Rule 23(d) [ECF No. 101], (2) Plaintiff's Motion to Compel [ECF No. 102], (3) Defendant's Motion to Seal Defendant's Opposition to Plaintiff's Rule 23(d) Motion [ECF No.117], and (4) Defendant's Motion for Leave to File Surreply [ECF No. 125].[1]

**A. Plaintiff's Motion for Relief Under Rule 23(d) and Defendant's Motion to Seal Defendant's Opposition to Plaintiff's Rule 23(d) Motion**

In his Motion for Relief Under Rule 23(d) [ECF No. 101], Plaintiff asks the Court to prohibit NRS from (1) contacting putative class members, (2) enforcing any agreements obtained from putative class members after the start of this litigation, and (3) otherwise using any information obtained from any putative class members. Plaintiff's Motion for Relief Under Rule 23(d) is denied for the reasons discussed below.

In *Gulf Oil Co. v. Bernard,* 452 U.S. 89 (1981), the United States Supreme Court held that district courts have the authority pursuant to Federal Rule of Civil Procedure 23(d) to restrict communications between a party and prospective class

---

[1] The Court assumes familiarity with the underlying facts and disputes in this case.

members. 452 U.S. at 100. The Supreme Court recognized there is "a potential for abuse" in communications with class members and concluded that district courts have "both the duty and the broad authority to exercise control over a class action and to enter appropriate orders governing the conduct of counsel and parties." *Id.* While acknowledging the potential for abuse in communications with potential class members and simultaneously recognizing the parties' right to communicate with them, the Supreme Court held:

> [A]n order limiting communications between parties and potential class members should be based on a clear record and specific findings that reflect a weighing of the need for a limitation and the potential interference with the rights of the parties.... In addition, such a weighing—identifying the potential abuses being addressed—should result in a carefully drawn order that limits speech as little as possible, consistent with the rights of the parties under the circumstances.

*Id.* at 101-02. A district court may restrict communications with a putative class when a party has engaged in or has threatened to engage in "coercive, misleading, or other abusive communications." *Reid v. Unilever U.S., Inc.*, 964 F. Supp. 2d 893, 926 (N.D. Ill. 2013).

The moving party has the burden of establishing "a specific record … of the particular abuses by which it is threatened." *Gulf Oil Co.,* 452 U.S. at 102 (quoting *Coles v. Marsh,* 560 F.2d 186, 189 (3d Cir. 1977)). Accordingly, before the Court can even consider whether to enter an order that restricts NRS's or its counsel's ability to contact putative class members, Plaintiff must meet his burden of demonstrating that NRS and/or its counsel have engaged in, or have threatened to engage in, coercive, misleading, or other abusive communications with putative class members. *See Camilotes v. Resurrection Health Care Corp.*, 2012 WL 245202, at *4 (N.D. Ill. Jan. 25, 2012).[2] "[T]he mere possibility of abuses does not justify routine adoption of a communications ban…." *Gulf Oil Co.,* 452 U.S. at 104. Moreover, without a showing of actual harm, there must be some other evidence that justifies interfering with a defendant's ability to communicate with individuals who are yet to be a member of any class. *See Wiginton v. C.B. Richard Ellis,* No., 2003 WL 22232907, at *3 (N.D. Ill. Sept.16, 2003).

---

[2] *See also Jones v. Nat'l Council of Young Men's Christian Ass'ns,* 2011 WL 1312162, at *6 (N.D. Ill. Mar. 31, 2011) (denying motion for protective order when the plaintiffs did not demonstrate that defense counsel engaged in "coercive behavior to obtain declarations from putative class members" and when the plaintiffs did not show any "actual or imminent abuse" by the defendants); *O'Brien v. Morse,* 2002 WL 1290392, at *2 (N.D. Ill. June 11, 2002) ("A protective order should only be issued if the record reflects a clear finding of potential abuse.").

2

Based on the record before the Court, Plaintiff has completely failed to satisfy his burden of establishing "a clear record" that shows NRS or its counsel have engaged in or threatened to engage in coercive, misleading, or other abusive communications with any putative class members in this case. In fact, the only communications Plaintiff relies upon in support of this Motion for Rule 23(d) Relief are NRS's counsel's communications with Michael Hellerman, a former NRS employee who was identified as a witness who potentially had relevant knowledge. Plaintiff attempts to portray NRS's counsel's communications with and eventual representation of Mr. Hellerman as somehow coercive, misleading and abusive. The Court disagrees with Plaintiff's characterizations, and the Court will not go down the rabbit hole of attempting to decipher the parties' accusations about each other's conduct in regard to Mr. Hellerman.

Suffice to say, the Court is not persuaded by Plaintiff's argument that NRS's counsel's communications with a former NRS employee and third-party witness is evidence that NRS or its counsel have engaged in coercive, misleading, or abusive communications with any putative class members. Significantly, it is not disputed that Mr. Hellerman *is not* a putative class member; he is a former NRS employee. In the Court's view, NRS's counsel's communications with Mr. Hellerman does not have any bearing on their potential communications with putative class members or their ability to communicate with them. In fact, Plaintiff has not submitted any evidence of communications between NRS or its counsel and putative class members, let alone evidence of actual coercion, abuse or threats by NRS or its counsel. Nor has Plaintiff persuaded the Court there is any imminent threat of abuse by NRS or its counsel. Because Plaintiff has not summited any such evidence, the Court, in its discretion, will not restrict NRS's or its attorneys' ability to communicate with putative class members at this time.

Plaintiff also asks the Court to prevent NRS from enforcing any agreements or using any information it has obtained from putative class members to remedy NRS's purported violations of Federal Rule of Civil Procedure 23. As discussed above, Plaintiff has not established that NRS or its counsel even have had any communications, let alone coercive or abusive ones, with potential class members that could undermine the purposes of Rule 23. Accordingly, the Court also denies Plaintiff's request to prevent NRS from using any information it may have obtained since this litigation was filed or enforcing any agreements it may have entered into at this time. Such an order is a drastic remedy and premature in this case when there is absolutely no evidence in the record that NRS has engaged in any abusive or coercive conduct. *See Reid*, 964 F. Supp. 2d at 926-31.

Finally, when NRS responded to Plaintiff's Motion for Rule 23(d) Relief, it filed a redacted opposition brief [ECF No. 118] with redacted declarations, which are attached as exhibits to its response brief, in conjunction with its Motion to Seal Defendant's Opposition to Plaintiff's Rule 23(d) Motion [ECF No. 117]. In the Motion to Seal, NRS says that it discusses in its response brief (supported by the attached declarations) the content of some communications between Mr. Hellerman and attorneys from Watstein Terepka LLP, who represent both NRS and Mr. Hellerman. It is NRS's position that its response brief and the attached declarations do not reveal any legal advice the attorneys provided Mr. Hellerman, and it does not believe the communications discussed are privileged. Motion to Seal [ECF No. 117], at 2. ("The Response and declarations do not reveal the content of communications where Watstein Terepka LLP provided Mr. Hellerman with legal advice. Accordingly, the firm does not believe the parts of those communications, or the references in the response or declarations are privileged.").

As a precaution prior to filing the response brief, however, NRS's counsel asked Plaintiff to agree that referencing those communications in the response brief and supporting declarations would not waive attorney-client privilege. Plaintiff did not agree. In an attempt to prevent Plaintiff from arguing that Watstein Terepka LLP waived the attorney-client privilege by discussing its communications with Mr. Hellerman in the response brief, NRS filed a Motion to Seal parts of its response and the attached declarations that reference the communications between Mr. Hellerman and attorneys from Watstein Terepka LLP and submitted the unredacted brief and declarations for an *in camera* review, asking the Court to confirm the communications in question do not waive attorney-client privilege. The Court cannot and will not do that, and it does not believe it is necessary to do so.

As a basic proposition of law, the Court agrees that discussing in a court filing attorney-client communications that do not contain the provision of legal advice does not waive the attorney-client privilege. *United States v. Nat'l Ass'n of Realtors*, 242 F.R.D. 491, 494 (N.D. Ill. 2007) ("Documents that contain no request for legal advice, nor give legal advice, fall outside the scope of the privilege."). The Court, however, will not give NRS an advisory opinion that the content it is being asked to review is or is not privileged without Plaintiff being able to weigh in. The bottom line is that NRS says in the Motion to Seal that it does not believe its response brief or the attached declarations contain any confidential information, and therefore, it has not articulated good cause to justify filing anything under seal at this time. *In re Specht*, 622 F.3d 697, 701 (7th Cir. 2010) ("Documents that affect the disposition of federal litigation are presumptively open to public view, even if the litigants strongly prefer secrecy, unless a statute, rule or privilege justifies confidentiality."). Accordingly, Defendant's Motion to Seal Defendant's Opposition to Plaintiff's Rule 23(d) Motion is denied.

4

For all these reasons, Plaintiff's Motion for Relief Under Rule 23(d) [ECF No. 101] is denied, and Defendant's Motion to Seal Defendant's Opposition to Plaintiff's Rule 23(d) Motion [ECF No. 117] also is denied. NRS is directed to file an unredacted copy of its response brief and the attached declarations via the CM/ECF system.

### B. Plaintiff's Motion to Compel and Defendant's Motion for Leave to File Surreply

In his Motion to Compel [ECF No. 102], Plaintiff seeks to compel NRS to produce documents that are responsive to his Request for Production ("RFP") No. 76 seeking communications with putative class members after this litigation started. For the reasons discussed below, Plaintiff's Motion to Compel is denied. Defendant's Motion for Leave to File Surreply [ECF No. 125] is granted because the surreply responds to new arguments made by Plaintiff in his reply brief in support of the Motion to Compel [ECF No. 113]. NRS shall file that surreply separately via the CM/ECF system.

Plaintiff's RFP No. 76 and NRS's response are as follows:

**REQUEST FOR PRODUCTION NO. 76:**
For purposes of this request, the time period begins January 3, 2024. All DOCUMENTS and/or ESI RELATING TO YOUR (including YOUR attorney(s)) COMMUNICATIONS WITH PUTATIVE CLASS MEMBERS, including the content of such COMMUNICATIONS; the results of such COMMUNICATIONS; document of information obtained from such COMMUNICATIONS; related COMMUNICATIONS (e.g. follow up emails or contact); DOCUMENTS and/or ESI provided to, intended to be provided to, or received from, any PUTATIVE CLASS MEMBER; and any notes, recordings, and/or other documentation associated with or obtained through COMMUNICATIONS or from a PUTATIVE CLASS MEMBER.

**RESPONSE:**
Defendant references and incorporates its objection to "YOUR," as set forth above. Defendant responds on behalf of NRS alone.

Defendant objects to this Request because it seeks documents protected from discovery under the attorney–client privilege, the work product doctrine, or any other privilege recognized by law. Specifically, the Request encompasses documents that reflect Defendant's counsel's mental impressions, conclusions, opinions, or legal theories developed in the course of investigating Plaintiff's claims. Such materials, including notes, analyses, and other preparatory documents, were created in anticipation of litigation and are therefore protected from disclosure under the work product doctrine and the attorney–client privilege.

5

> Accordingly, Defendant will not produce such documents and is withholding documents on this basis.
>
> Subject to the above objections, pursuant to which Defendant is withholding certain documents, Defendant will produce discoverable responsive documents within its possession.

Motion to Compel [ECF No. 102-2], at Ex. 2.

Prior to Plaintiff filing his Motion to Compel, counsel for the parties attempted to meet and confer about their dispute, and the record shows they exchanged some emails and had a telephone call. It appears that counsel minimally discussed the applicability of the work product doctrine in the context of their dispute about RFP No. 76, but it is not clear whether the parties completed the meet and confer process. Plaintiff also asked NRS to produce a privilege log of the documents it is withholding. Motion to Compel [ECF No. 102], at 2-3. NRS, however, refused to provide a privilege log and gave Plaintiff some case law in support of its position, asserting that it does not have an obligation to produce a privilege log because: (1) any communications with putative class members, if they exist, are possessed by its counsel, not NRS; and (2) documents created after a lawsuit is filed are presumed privileged and a privilege log is not required. Response to Motion to Compel [ECF No. 112], at 5. NRS says that Plaintiff never responded to NRS's case law prior to filing the Motion to Compel.

NRS argues that Plaintiff's Motion to Compel should be denied because he did not satisfy the meet and confer obligations imposed by Local Rule 37.2 prior to filing the Motion. That may be true, but the Court cannot say the breakdown of communication in this case is entirely Plaintiff's fault.[3] Although the parties may not have completed the conferral process required by Local Rule 37.2 prior to Plaintiff filing this Motion to Compel, the Court recognizes they likely would not have resolved their dispute even if they had complied with the Local Rule, and this Motion probably

---

[3] "The "good faith" requirement of the Local Rule 37.2 is significant and meaningful, and demands more than empty adherence to a meaningless form." *Rayome v. Abt Elecs.*, 2024 WL 1435098, at *4 (N.D. Ill. Apr. 3, 2024). Just because the parties exchanged some emails and had a telephone conversation does not mean they conferred in good faith. *See, e.g., 25 W. Ave. LLC v. Lester*, 2024 WL 1075213, at *1 (N.D. Ill. Mar. 12, 2024) ("Good faith isn't evinced by both sides simply digging in and refusing to budge."); *Gunn v. Stevens Security & Training Servs., Inc.*, 2018 WL 1737518, at *3 (N.D. Ill. 2018) ("A party that steadfastly maintains a position without support is not engaging in a good faith discussion."); *Chicago Reg. Council of Carpenters Pension Fund v. Celtic Floor Covering, Inc.*, 316 F.Supp.3d 1044, 1046 (N.D. Ill. 2018) ("An ultimatum on one side, met with steadfast defiance on the other, is not a good faith discussion."); *Infowhyse GmbH v. Fleetwood Grp.*, 2016 WL 4063168, at *1 (N.D. Ill. 2016) (holding that "adamantly clinging to the positions with which they began" amounts to a failure "to comply, in good faith, with the requirements of Local Rule 37.2").

6

would have been filed anyway. The Court, therefore, declines to deny Plaintiff's Motion to Compel for failure to comply with Local Rule 37.2.

In his Motion to Compel, Plaintiff argues generally that the attorney-client privilege and work product doctrine do not apply to communications NRS or its counsel may have had with putative class members and, to the extent NRS or its counsel communicated with putative class members or sent and received documents to or from any putative class member, those non-privileged documents must be produced. Motion to Compel [ECF No. 102], at 3-10. Plaintiff also argues, at a minimum, he is entitled to a privilege log for communications that took place after the litigation commenced whether between NRS and its counsel or between NRS or its counsel and putative class members if NRS contends any of those documents are covered by the attorney-client privilege or work product doctrine. Motion to Compel [ECF No. 102], at 10-14. In response, NRS argues that (1) it is not required to provide a privilege log for communications with its counsel that occurred after Plaintiff filed this lawsuit, and (2) it does not have an obligation to produce documents it does not possess—consistent with its contention that documents in the possession of defense counsel are not within NRS's possession, custody, or control. Response to Motion to Compel [ECF No. 112], at 8-10.

At base, Plaintiff essentially argues NRS must produce any communications it *or its counsel* may have had with putative class members as those documents do not enjoy any privilege shielding them from production. NRS says it has no documents reflecting any communications between it and putative class members. And to the extent its counsel may have communicated with putative class members, documents reflecting those communications are counsel's work product, and they are not in NRS's possession, custody, and control. Cutting through all the general discussion about attorney work product and privilege, Plaintiff wants documents in the possession of NRS's defense counsel, and NRS says Plaintiff cannot get those documents with a motion to compel directed at NRS.[4]

As a general proposition of law, the Court agrees with Plaintiff that communications between NRS itself (not its attorneys) and putative class members and any documents sent by NRS (again not by its attorneys) or received from putative class members about this litigation are not protected by the work product doctrine. Plaintiff's Motion to Compel [ECF No. 102], at 4-5 (citing cases). If NRS itself has

---

[4] As an aside, there appears to be little doubt that defense counsel has been communicating with putative class members as Plaintiff suspects, or at least NRS strongly creates that impression. In its proposed surreply, NRS says if the Court grants Plaintiff's Motion to Compel, it will produce a privilege log but "it will not include the identity of undisclosed possible witnesses." *See* Proposed Surreply [ECF No. 125-1] at 6, n.3. That is as close as it comes to an admission that, as Plaintiff believes, defense counsel has been communicating with putative class members who NRS may identify or use as witnesses in the context of briefing about class certification or other issues.

communicated with putative class members about this litigation after January 3, 2024, then it must produce those documents to Plaintiff. But that does not appear to be what has been occurring. In its pre-filing communications with Plaintiff and in response to Plaintiff's Motion to Compel, NRS says that any communications with putative class members, if they exist, are possessed by its counsel, not by NRS, and it cannot produce them.[5]

Plaintiff cites *Webster Bank, N.A. v. Pierce & Associates, P.C.*, 2017 WL 11560211 (N.D. Ill. Aug. 15, 2017) (Gilbert, M.J.), for the proposition that a party must produce documents in its attorney's possession. Plaintiff's Reply [ECF No. 113], at 2. That case, however, does not stand for such a broad proposition. In that case, the plaintiff Bank already had produced the bulk of the documents the defendant was requesting, including documents in its counsel's files from an earlier lawsuit, undercutting an argument that the Bank did not have possession, custody, or control of the documents the defendant was seeking. *See* Plaintiff Webster Bank, N.A.'s Opposition to Defendant's Motion to Compel, Case No. 16-cv-2522, [ECF No. 83] ("Bank's Opposition Brief"), at 1 ("The majority of the [responsive, non-privileged] documents and information sought by Defendant in its Motion to Compel have already been produced by Webster in discovery and/or are equally available to Defendant."). *See also Webster Bank*, 2017 WL 11560211, at *1. In addition, the Bank in that case did not argue that it did not have any additional responsive documents; it argued that any documents that were responsive to the defendant's requests that had not already been produced were protected by the attorney-client privilege and work product doctrine. The documents in dispute were "communication between [the Bank] and [its counsel] relating to the underlying litigation, and any notes, memoranda, and research created by [counsel]." Bank's Opposition Brief, at 1. It was in this context that the Court ordered the Bank to produce responsive, non-privileged documents in its lawyer's files to the extent they had not already been produced by the Bank. *Webster Bank,* 2017 WL 11560211, at *3 ("If the Bank already has produced all of the documents, it should so certify.").

Plaintiff also appears to be seeking communications between NRS and its counsel that occurred after this lawsuit was filed that may reflect or discuss counsel's potential communications with putative class members (presumably also after the lawsuit was filed), or at least a privilege log of any such communications. The Court,

---

[5] Plaintiff argues NRS admitted it had contacted putative class members after the lawsuit was filed on January 3, 2024, in one of its responses to Plaintiff's Fifth Set of Requests for Admissions ("RFA"). *See* [ECF No. 97-1], at 3-4. Because NRS says that request for admission is not limited in scope and is broad enough to include communications with its customers unrelated to this litigation, and since NRS obviously communicates with its customers on a regular basis, NRS admitted the request. *Id.* NRS says it explained to Plaintiff's counsel why it answered the RFA in that manner. *See* [ECF No. 97-2], at 3. In the Court's view, that "admission," with NRS's explanation, establishes nothing for purposes of Plaintiff's Motion to Compel.

8

again, agrees with the general proposition of law asserted by Plaintiff that if a party is not producing responsive documents based on the assertion of the attorney-client privilege or the work product doctrine, then the party must produce a privilege log for the documents being withheld pursuant to Federal Rule 26(b)(5). *See Amarillo v. Artist Senior Living Mgmt. LLC*, 2022 WL 672747, *3 (N.D. Ill. Mar. 7, 2022). But, again, the issue is more nuanced in this case. The Court does not understand NRS itself to be withholding any documents or communications with third parties based on privilege. Rather, the Court understands that NRS is withholding documents and communications with its attorneys created after the lawsuit was filed on January 3, 2024, based on the attorney-client privilege and work product doctrine, and NRS has refused to produce a privilege log as to those documents.

If the Court's understanding is accurate, then the Court is not convinced at this time that NRS should be required to prepare a privilege log identifying all its communications with its counsel after Plaintiff filed his complaint in this case. As Magistrate Judge Cole in this district recently noted, "[o]nce litigation commences, it becomes more and more likely that documents and communications between a party and its counsel qualify as privileged, and documents created by counsel qualify as 'work product.'" *Rayome v. Abt Elecs.*, 2024 WL 1435098, at *4 (N.D. Ill. Apr. 3, 2024). Judge Cole also recognized a possible "trend" in which some courts are not enforcing strict adherence with Federal Rule 26(b)(5)(A)(ii) and not requiring privilege logs for communications between a client and his counsel that occur after litigation has commenced. *Id.* (citing cases). But Judge Cole also noted that a decision whether a party should be required to log post-complaint communications with counsel frequently depends on "a sliding scale" analysis. *Id.* Plaintiff, however, argues there are decisions in which courts have required a log of post-filing communications and that a decision about whether such communications should be logged should be made on a case-by-case basis. Motion to Compel [ECF No. 102], at 10-13. If Plaintiff is seeking a log of NRS's communications with its counsel after this lawsuit was filed, it has not yet persuaded the Court why it should require NRS to log those communications as of now. In the Court's view, that would be a potentially burdensome undertaking with little upside. Moreover, at the end of the day, it appears Plaintiff really is after defense counsel's communications with putative class members, not NRS's communications, if any, with its counsel about those communications with class members. Therefore, at least as of now, the utility of a log under these circumstances is not at all clear.

This leaves Plaintiff's desire to obtain from NRS any communications between its counsel and putative class members. NRS, again, says it does not possess any communications its counsel may have had with third parties, who may or may not be putative class members; nor does NRS possess any documents or notes prepared by its attorneys about those communications. The Seventh Circuit has made clear that a request for documents pursuant to Federal Rule 34 does not extend to a party's attorneys. *Hobley v. Burge*, 433 F.3d 946, 950 (7th Cir. 2006) ("[E]ven if Jones Day

9

were the City's current counsel, Rule 34 would not be the correct discovery tool for gaining access to work product held by an attorney."). The Seventh Circuit explained that Rule 34 "is limited to parties to the proceeding, thereby excluding their counsel or agents." *Id.* (citing *Hickman v. Taylor* 329 U.S. 495, 504 (1947)).[6] If the documents at issue originally were in the possession of a party and then turned over to the attorney, then those documents would be deemed in the possession, custody or control of the party. *See e,g., Drive Constr.*, 2022 WL 2237621, at \*2. If, however, a party never had possession of the documents in question, then those documents are not in their possession, custody, or control and that party cannot be required to produce something it never had in its possession.

The Court notes that Plaintiff argues NRS's counsel's communications with putative class members, if any, and any notes and documents created by counsel which are part of its investigation in this case are not protected by the work product doctrine and that NRS should not be able "to funnel documents through its counsel to shield them from discovery." Reply in Support of Motion to Compel [ECF No. 113] at 7. NRS disputes Plaintiff's characterization about "funneling" documents to counsel and argues that it cannot be compelled in any event to produce documents that contain its lawyer's thought processes, mental impressions and trial strategy. Proposed Sur-reply [ECF No. 125-1], at 6-10. Both Plaintiff and NRS again cite case law for general propositions of law relating to the work product doctrine and what types of documents constitute work product and are protected, what must be disclosed, and when the work product privilege is waived. Because, for the reasons discussed above, documents in the possession of NRS's counsel are not within the ambit of Plaintiff's Motion to Compel filed against NRS, the applicability of the work produce doctrine as to those documents or possible exceptions to it are not issues squarely before the Court at this time, and the Court will not speculate about how it would decide that issue if it were presented. The Court would need more information to decide this issue in the context of any documents in defense counsel's possession, but that is not how Plaintiff has presented the issue as of now with a motion to compel directed to NRS.

The Court, therefore, concludes that documents in the sole possession of NRS's counsel, which have not been shared with NRS, are not in NRS's possession for purposes of Plaintiff's Motion to Compel. As such, NRS does not have any obligation to prepare a privilege log describing documents it does not have, and the Court will not compel it to produce something it does not have in its possession. Accordingly, Plaintiff's Motion to Compel is denied.

---

[6] *See also Trustees of Chicago Reg'l Council of Carpenters Pension Fund v. Drive Constr., Inc.*, 2022 WL 2237621, at \*2 (N.D. Ill. June 22, 2022) (citing *Hobley* and holding that because plaintiff's counsel "is not a party to this lawsuit," defendant could not use Rule 34 to obtain documents); *Novelty, Inc. v. Mountain View Mktg., Inc.*, 2010 WL 11561280, at \*6 (S.D. Ind. Jan. 29, 2010) (citing *Hobley* and holding that counsel had no obligation under Rule 34 to produce "files that counsel has never shared with [the responding party]").

10

This, of course, may not be the end of this story. Whether any documents containing defense counsel's communications with putative class members would be subject to production pursuant to a subpoena properly served on NRS's counsel is beyond the scope of Plaintiff's Motion to Compel now before the Court. The Court recognizes that issue may be before the Court in the future. At that time, the Court would expect NRS and defense counsel to be forthright about whether such communications exist, when they occurred, the subject of those communications, and who may have been party to those communications in a proper log that will enable the Court to better understand any privileges being asserted. The Court notes NRS or its counsel say they will resist identifying "undisclosed possible witnesses," in any privilege log, *see* Proposed Surreply [ECF No. 125-1] at 6, n.3, but that issue is beyond the scope of this Order for the reasons discussed above though the Court recognizes it may need to decide it in the future based upon more focused briefing by the parties than has occurred as of now.

For all the reasons discussed in this Order, Plaintiff's Motion for Relief Under Rule 23(d) [ECF No. 101] is denied; Plaintiff's Motion to Compel [ECF No. 102] is denied; Defendant's Motion to Seal [ECF No. 117] is denied; and Defendant's Motion for Leave to File Surreply [ECF No. 125] is granted.

It is so ordered.

Jeffrey T. Gilbert
United States Magistrate Judge

Dated: February 21, 2025