## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| RASHAD WALSTON, on behalf of himself and all others similarly situated, | : | Case No. 1:24-cv-00083 |
| Plaintiff, | : | |
| v. | : | |
| NATIONAL RETAIL SOLUTIONS, INC. D/B/A NRS PAY, | : | |
| Defendant. | : | |

## NRS'S SURREPLY IN OPPOSITION TO PLAINTIFF'S
## MOTION TO COMPEL

## INTRODUCTION

NRS files this sur-reply to respond to authority and arguments Plaintiff saved for his reply brief, as he continues to do despite NRS's repeated objections. *See* Nov. 12 Transcript, ECF No. 100, 19:4–25 (raising Plaintiff's pattern of "three-page motion[s] with a 12-page reply the day before the hearing"). Plaintiff failed to respond to NRS's authority on seeking documents possessed solely by counsel during his pre-motion conferral, or even in his opening brief. As such, NRS focused on that issue in its response, rather than addressing work product privilege. Plaintiff's litigation by surprise tactics are improper and grounds alone to deny the motion, especially given that Plaintiff seeks core attorney work product—even more of it than he sought before he filed this motion.

Specifically, Plaintiff asks NRS's counsel to turn over work product exploring NRS's potential class certification defenses. His request includes "[a]ll documents . . . relating to . . . communications with putative class members, including the content of such communications; the results of such communications" and documents "provided to, intended to be provided to, or received from" putative class members, and any "notes . . . or other documentation associated with or obtained through" those communications. ECF No. 102-1, 7, 9 (capitalization removed).

Plaintiff asks counsel to turn over its work product even though NRS did not create and does not possess those documents, and may never use them. Indeed, the information Plaintiff seeks is evidence NRS counsel *may* be compiling to defend against arguments Plaintiff has *not yet made* in his *not-yet-filed* certification motion. This is materially different than, for example, a defendant in a personal injury case declining to turn over information about potential witnesses who saw an accident. None of the work product Plaintiff seeks has

anything to do with *his* claims or NRS's defenses to *his* claims. It relates solely to NRS's potential arguments opposing a class certification motion Plaintiff has not yet filed containing arguments that NRS hasn't yet seen. Thus, NRS may not even use this work product.

Knowing that he seeks clearly work-product-protected documents, Plaintiff disguises his request in reply as a compromise, offering to settle for the same information if presented in a privilege log. But whether in a document production or in a privilege log, Plaintiff is not entitled to NRS's counsel's assessment of potential defenses to class certification before Plaintiff even files his motion.

The Court should reject Plaintiff's new arguments and authority and deny his motion for at least three reasons. First, Plaintiff's failure to confer prejudiced NRS as he again saved authority for his reply, requiring additional briefing and expense. NRS could have responded to that authority without additional expense had Plaintiff presented it during conferral (when the parties could have reached a compromise) or even in his opening brief. But Plaintiff didn't do that, and the local rules prohibit litigation by ambush, which Plaintiff has made a centerpiece of his briefing strategy in this case. Second, NRS doesn't need to produce a privilege log for collateral items within *counsel's* exclusive possession in an ongoing lawsuit, nor does NRS need to produce those collateral items. The authority Plaintiff cites in reply doesn't change that. Third, all documents responsive to Request No. 76 are protected work product, so NRS doesn't need to produce them.

### A. Plaintiff Concedes He Failed to Confer.

Plaintiff doesn't dispute that he failed to confer on the attorney-in-possession issue, which alone is grounds to deny the motion. Pre-motion conferral is especially important here, as presenting that authority, rather than saving it for reply, could narrow the numerous issues

3

before the Court. The legal questions at issue here (attorney-in-possession and work product) are highly fact-intensive and some "of the most frequently litigated issues in federal practice," meaning that there are any number of cases either party might rely on. *Henderson v. Zurn*, 131 F.R.D. 560, 569 (S.D. Ind. 1990); § 2023 The Work–Product Rule—The 1970 Amendment, 8 Fed. Prac. & Proc. Civ. § 2023 (3d ed.) (work product privilege is the "most frequently litigated discovery issue"). That Plaintiff and NRS each cite a host of cases on these questions with opposing results highlights the need for conferral. *See also Rayome v. Abt Elecs.*, 2024 WL 1435098, at *4 (N.D. Ill. Apr. 3, 2024) ("It may behoove [the parties] to [reach an agreement through conferral] because courts have great discretion to resolve discovery disputes").

But Plaintiff declined to confer. What's worse, he did not respond to NRS's authority about its obligation to produce documents solely possessed by its counsel *until his reply*, which he filed a mere two days after NRS's response, depriving NRS of an opportunity to assess and respond to his possession argument.[1] Plaintiff's failure to confer on this issue is reason enough to deny the motion, especially given his history of engaging in similar litigation-by-surprise (or litigation-by-reply) tactics. *See, e.g.*, ECF 100, 19:4–25 (raising Plaintiff's practice of refusing to address the merits of his argument until reply); ECF No. 73, 1–2 (same).

### B. NRS Does Not Need To Create a Privilege Log For or Produce Evidence Possessed Solely by Counsel.

In any event, nothing in Plaintiff's reply changes that NRS has no obligation to produce evidence solely possessed by its attorneys, or to prepare a privilege log relating to such documents. As for the latter, the Seventh Circuit held that a respondent has no

---

[1] In contrast, Plaintiff did address NRS's presumptive privilege argument in his opening motion that NRS had previewed before Plaintiff moved, evidencing a deliberate failure to respond to NRS's possession argument. ECF No. 102, 12 (citing *Rayome,* 2024 WL 1435098, at *4); ECF No. 112-3, 3– 4 (NRS citing *Rayome* during conferral).

obligation to prepare a privilege log for documents possessed by its law firm and thus does not waive a privilege objection by failing to do so. *Sandra T.E. v. S. Berwyn Sch. Dist. 100*, 600 F.3d 612, 623 (7th Cir. 2010). That's because you don't have to create a privilege log of documents you don't have.

Nor does NRS have an obligation to produce documents in the sole possession of its counsel. The Northern District of Illinois cases Plaintiff cites for the first time in reply (at 2–5) do not justify jettisoning the Seventh Circuit's instruction that even for "**current counsel**, Rule 34 would not be the correct discovery tool for gaining access to work product held by an attorney." *Hobley v. Burge*, 433 F.3d 946, 950 (7th Cir. 2006) (emphasis added). For starters, *Webster Bank, N.A. v. Pierce & Assocs.* did not address *Hobley*, nor did the responding party even make the argument that it didn't possess the requested documents. 2017 WL 11560211, at *1 (N.D. Ill. Aug. 15, 2017); Case No.: 1:16-cv-2522, ECF 83 (response to motion to compel). And though *Boyd Group., Inc. v. D'Orazio* discussed *Hobley*, it did not analyze the Seventh Circuit opinion that if the law firm were the respondent's current counsel, Rule 34 would still not be the correct discovery tool. 2015 WL 5321262 (N.D. Ill. Sept. 11, 2015).

*Webster* and *Boyd* are also factually distinguishable as both cases involved attorney case files from which the litigation arose, rather than the current law firm's collateral investigative efforts in defending litigation. *Webster*, 2017 WL 11560211, at *1–2 (plaintiff put *its attorney's files directly at issue* by bringing a legal malpractice claim and therefore couldn't avoid producing them by hiding behind the fact that former counsel had them); *Boyd*, 2015 WL 5321262, at *3–4 (respondent couldn't avoid producing the purchase and sale documents at issue in that case by arguing his attorney possessed them). Here, the investigative file Plaintiff seeks through Rule 34 is not related to documents organizing the ringless voicemails he

5

complains about and thus do not give rise to his claims. Instead, the documents are files NRS counsel prepared in defending this litigation, which, depending on the arguments Plaintiff makes about classwide proof, NRS counsel may never use.

These facts are like those in *Novelty*, where the court found that a party did not possess documents his *current counsel* had *created*[2] that counsel *hadn't shared* with the party. 2010 WL 11561280, at *6. That's the same situation here in all three ways.

Keep the unremarkable origin of this doctrine in view: parties cannot evade their duties to produce documents in response to Rule 34 requests by *turning **their** documents over* to their attorneys. *See* 8 C. Wright and A. Miller, *Federal Practice and Procedure,* § 2210 at 621 (1984). That's fair, but that's not what Plaintiff seeks. Instead, he demands documents regarding NRS counsel's work, beyond what NRS even knows (*e.g.*, the names of individuals NRS counsel chose to interview, who didn't answer, who hung up, who changed their mind, etc.). Under those circumstances, Rule 34 is not the proper tool.

Because NRS does not possess the documents sought, it has no obligation to produce them, or prepare a privilege log on behalf of its lawyer explaining why those documents are work product. Plaintiff's motion should therefore be denied for this independent reason.

### C. Plaintiff Seeks Documents Protected By Work Product Privilege That Has Not Been Waived.[3]

---

[2] *Trustees of the Chicago Reg. Council of Carpenters Pension Fund v. Drive Constr.* tracks this principle, clarifying that the court should trace the document in question back to its origin to conduct the "fact-intensive" determination of whether the party has the legal right to obtain them. 2022 WL 2237621 (N.D. Ill. June 22, 2022) (quoting *Novelty, Inc. v. Mountain View Mktg., Inc.*, 2010 WL 11561280, at *6 (S.D. Ind. Jan. 29, 2010) (the issue in question is "resolved by tracing their origin")). The attorney's having created the document at issue weighs against finding that the party has the legal right to it. *Id.*

[3] This is a preview of NRS counsel's arguments, in the event that Plaintiff subpoenas NRS counsel for the requested documents. Should the Court grant Plaintiff's motion, NRS will produce a privilege log "sufficiently detailed to allow the court to determine whether [NRS] has discharged its burden of establishing the applicability of the privilege" "without revealing information itself privileged or protected." *RBS Citizens, N.A. v. Husain*, 291 F.R.D. 209, 218 (N.D. Ill. 2013) (quoting Fed. R. Civ. P. 26(b)(5)(A)(ii)). Therefore, it will not include the identity of undisclosed possible witnesses. *See*

Setting aside the possession issue, the documents sought are off-limits because they are plainly protected work product. Request Number 76 includes documents related to communications with putative class members, including "notes . . . or other documentation associated with or obtained through" the same. ECF No. 102-1, 7, 9. These documents fall squarely within work product privilege, which has not been waived. Nor has Plaintiff shown a substantial need for that information. In fact, Plaintiff hasn't and couldn't show *any* need, since the information he seeks relates to interviews of individual putative class members, and he needs to show a way to prove his case with *classwide*, *non-individualized* proof.

In any event, the work product doctrine protects "documents and tangible things that are prepared in anticipation of litigation or for trial *by or for* another party or its representative[.]" Rule 26(b)(3)(A) (emphasis added); *Appleton Papers, Inc. v. E.P.A.,* 702 F.3d 1018, 1023 (7th Cir. 2012). The work product doctrine creates "a protected area in which the lawyer can prepare his case free from adversarial scrutiny." *Id.* at 1024. The doctrine's fundamental purposes are: "(1) to protect an attorney's thought processes and mental impressions against disclosure; and (2) to limit the circumstances in which attorneys may piggyback on the fact-finding investigation of their more diligent counterparts." *Sandra*, 600 F.3d at 622. Both the identity of and work product related to putative class member interviewees are protected by the work product privilege.

---

*U.S. ex rel. Jacobs v. Advanced Dermatology & Skin Cancer Specialists, P.C.*, 2023 WL 9005630, at *9–10 (C.D. Cal. Dec. 18, 2023) ("Only in rare circumstances[,] some of the pertinent information to be included on a privilege log affecting the applicability of the claim, such as the identity of a client, or **the identity of undisclosed witnesses**, may itself be privileged. In those rare circumstances, 'the Rule provides that such information need not be disclosed' on a privilege log." (cleaned up)).

7

1. **The Identity of *Prospective* Putative Class Member Witnesses Is Protected By Work Product Privilege.**

Request Number 76 makes no distinction between putative class members NRS counsel interviewed but decided not to use, those it's considering using, and those it may yet interview. ECF No. 102-1, 7, 9 (defining communication to include "any attempt, successful or not, to dial or call"). His request includes which witnesses NRS counsel deems helpful and harmful, especially if NRS has to identify witnesses it doesn't end up using.

NRS counsel communicates with putative class members in anticipation of arguments it *suspects* Plaintiff *may raise* about classwide proof, which may never come to fruition. Plaintiff has already amended his class definition multiple times, and NRS doesn't know what definition he will ultimately propose or what he will ultimately argue as to how he will prove his claims with classwide proof. So NRS doesn't know whether any interviewees will become defense witnesses. If Plaintiff wants to file his class certification motion early, he can do so. But until then, NRS's efforts are squarely protected by the work product privilege as both opinion and factual work product, as it can only speculate as to what its defense will be.

Both of work product's fundamental purposes apply in these circumstances, as the requested information would reveal counsel's "thought processes and mental impressions" of NRS's defense and allow Plaintiff to "piggyback" on NRS counsel's investigation rather than conduct it himself. *Sandra*, 600 F.3d at 621–22. "Notably, the identity of witnesses interviewed can be opinion work product, in that it can reveal which witnesses counsel considers important, revealing mental impressions and trial strategy." *Dennis v. Good Deal Charlie, Inc.*, 2022 WL 62919, at *3 (S.D. Cal. Jan. 6, 2022) (internal quotation omitted)); *In re Linerboard Antitrust Litig.*, 237 F.R.D. 373, 386 (E.D. Pa. 2006) (selection of witnesses to interview "constitute[d] core work product"); *see also Lloyd v. Covanta Plymouth Renewable*

*Energy, LLC*, 532 F. Supp. 3d 259, 262 (E.D. Pa. 2021) (granting motion to conduct third-party interviews without disclosure of individuals selected).

Plaintiff's claim (at 8) that the name of any declarants are subject to Rule 26(a)(1)'s disclosure requirement is also unfounded. Rule 26(a)(1) only requires NRS to identify the persons it "may use to *support* its claims *or defenses*[,]" not anyone with knowledge. *See City of Chicago v. Purdue Pharma L.P.*, 2017 WL 2819948 (N.D. Ill. Mar. 3, 2017) (allowing plaintiff to limit disclosures to persons it planned to *use* in litigation, not the whole universe of witnesses). The disclosure requirement and work product privilege complement: a party doesn't have to disclose all possible witnesses, because such information is protected while that is still being evaluated. Again, putative class members are not ordinary witnesses, and their participation may ultimately be unnecessary, depending on the arguments Plaintiff makes about classwide proof. Moreover, neither NRS nor its counsel even know the names of many of the putative class members.

### 2. Declarations and Communications With Putative Class Members Are Protected By Work Product Privilege.

Similarly, declarations and communications that NRS counsel obtains but has not decided whether to use are protected by work product privilege. Work product privilege extends to third-party statements responding to counsel's investigative efforts related to litigation *prepared for NRS* and in most cases prepared *by* NRS counsel. *See, e.g.*, *Gordon v. Caribbean Cruise Line, Inc.*, 2018 WL 11436767, at *3 (N.D. Ill. Sept. 18, 2018) ("Declarations drafted for possible future use during litigation constitute work product."); *Mitchell v. Archer Daniels Midland Co.*, 329 F.R.D. 178, 181 (E.D. Tenn. 2019) (audio recordings of witness interviews were trial preparation materials protected by Rule 26(b)(3)); *Lujan v. Cabana Mgmt., Inc.*, 284 F.R.D. 50, 60 (E.D.N.Y. 2012) (that declarations recited factual statements did not

change the fact that they were drafted for "possible use in conjunction with a motion" and thus "qualify for work product protection up until the time" they were publicly filed); *In re Linerboard Antitrust Litig.*, 237 F.R.D. at 384 n. 10 (signed declarations are protected work product).

The cases Plaintiff cites finding witness statements are not protected work product are inapposite. *Vallone* did not address that work product protection applies to both opinion and fact-based statements, and also suggested a different result when attorneys (rather than the witnesses themselves) draft the statements. 2002 WL 1726524, at *1 (N.D. Ill. Mar. 19, 2002). *Smith* actually supports NRS's position, holding that the trial plan was work product and reasoning that timing—not just the nature of the documents—impacted these questions. 2012 WL 12973191 (C.D. Cal. Mar. 8, 2012). Production was ordered only upon the requesting party's demonstration of a substantial need, where the *scheduled* trial date was *within four months*. *Id.* In contrast, the utility of these witness interviews here will depend in large part on the arguments Plaintiff makes about classwide proof when he files his Rule 23 motion.[4] This Court should follow the courts directly addressing this question and hold that witness statements and communications with putative class members are protected until used.

### 3. NRS has Not Waived Work Product Privilege.

Plaintiff hasn't established that NRS waived work product privilege. Disclosing work product to a third party only amounts to waiver where it "substantially increase[s] the opportunity" that the adverse party will obtain the documents. *Appleton,* 702 F.3d at 1023; *see also Towne Place Condo. Ass'n v. Phil. Indem. Ins. Co.*, 284 F. Supp. 3d 889, 898 (N.D. Ill.

---

[4] The investigations in *Kurlander* and *Agee* weren't conducted by counsel or the party, and the party asserting privilege failed to show the requested documents were prepared in anticipation of litigation. 2017 WL 3084473 (D. Col. July 20, 2017); 2007 WL 2903208 (S.D. Miss. Oct. 1, 2007).

2018) ("[D]isclosure to a third party does not automatically waive work-product protection."). The party asserting waiver has the burden to prove it. *Towne Place*, 284 F. Supp. 3d at 899.

That the putative class members may ultimately become adverse to NRS does not mean they are currently adverse such that disclosure to one putative class member waives work product privilege for any of the communications or related documents. Until a class is certified, "there is no class action but merely the prospect of one; the only action is the suit by the named plaintiffs." *Morlan v. Univ. Guar. Life Ins. Co.*, 298 F.3d 609, 616 (7th Cir. 2002).[5]

The cases Plaintiff relies on (at ECF No. 102, 8) don't support his argument that NRS is *currently* adverse to putative class members. In those cases, the *defendant* sought the *plaintiff's* communications with the *defendant's* employees. Unsurprisingly, courts in those cases found that communications with employees were likely to make their way back to the defendant because employees are often loyal to their employer or otherwise communicate about their employment under the gaze of their employer. *Depina v. FedEx Ground Package Sys., Inc.*, 2024 WL 1650847 (N.D. Cal. Apr. 16, 2024) (where the *plaintiff's* counsel mass distributed a survey to the *defendant's* employees the court was unconvinced they practically could have maintained secrecy from the *defendant* employer while doing so); *Hudson v. Gen. Dynamics Corp.*, 186 F.R.D. 271, 276 (D. Conn. 1999) (similar, and further inapposite as it was not even a putative class action and the court didn't clarify whether it was analyzing attorney-client or work-product privilege, which carry differing waiver rules); *Briggs v. OS Restaurant Servs., LLC*, 2019 WL 7195620, at *2, 4 (C.D. Cal. Sept. 10, 2019) (similar, and further inapposite

---

[5] Plaintiff's reliance on *Blanchard v. EdgeMark Fin. Corp.* is therefore misplaced. 175 F.R.D. 293, 297 (N.D. Ill. 1997). In that case, the communications in question occurred after the class was certified.

11

waiver was found where the plaintiff and the plaintiff's counsel had each **filed** affidavits summarizing the very communications they claimed were privileged).

That the statements were made without a confidentiality agreement doesn't waive work product privilege either. A confidentiality agreement "may be sufficient but not a necessary element of a finding of non-waiver." *Kato*, 2020 WL 7698373, at *10 (work product privilege for communications with non-party counsel not waived despite no confidentiality agreement). Rather, the question is whether disclosure to a third party "eliminates that confidentiality." *Miller*, 17 F. Supp. 3d at 731. Here, Plaintiff has not carried his burden to show that NRS counsel's communicating with putative class members was *uniformly* likely to increase the chances Plaintiff would access that information, regardless of the individual putative class member's beliefs about the case.

## CONCLUSION

This Court should deny Plaintiff's attempt to circumvent the rules by avoiding conferral and once again dumping newly invoked authority into his reply brief.

*[Signature on Following Page]*

DATED: February 24, 2025.

                                          Respectfully submitted,

/s/ *Patrick J. Fitzgerald*
Ryan D. Watstein (*admitted pro hac vice*)
ryan@wtlaw.com
Patrick J. Fitzgerald (*admitted pro hac vice*)
pfitzgerald@wtlaw.com
**WATSTEIN TEREPKA LLP**
1055 Howell Mill Road, 8th Floor
Atlanta, Georgia 30318
Tel: (404) 782-9821
Fax: (404) 537-1650

Justin M. Penn, ARDC 6283726
jpenn@hinshawlaw.com
**HINSHAW & CULBERTSON LLP**
151 North Franklin Street, Suite 2500
Chicago, Illinois 60606
Tel: (312) 704-3000

*Counsel for Defendant*

**CERTIFICATE OF SERVICE**

I hereby certify that on February 24, 2025, I caused to be electronically filed a true and correct copy of the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record.

/s/ Patrick J. Fitzgerald