UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **RASHAD WALSTON,** on behalf of himself and all others similarly situated,<br><br>**Plaintiff,**<br>v.<br><br>**NATIONAL RETAIL SOLUTIONS, INC. D/B/A NRS PAY,**<br><br>Defendant. | Civil Case No.: 24-cv-83<br><br>District Judge: Hon. Sunil R. Harjani<br>Magistrate Judge: Jeffrey T. Gilbert<br><br>**Plaintiff's Motion for Leave to File Third Amended Complaint** |

Rashad Walston ("Plaintiff") through his undersigned counsel, hereby moves, pursuant to Fed. R. Civ. P. 15(a)(2) for leave to amend the complaint in this matter for the sole purpose of updating and narrowing his class definition. In support, Plaintiff states:

1. Plaintiff filed the instant matter on January 3, 2024. [Dkt. 1.]

2. On March 19, 2024, the Court entered a partial scheduling order and set the deadline for amended pleadings as June 12, 2024. [Dkt. 13.]

3. On June 12, 2024, Plaintiff sought leave to file his First Amended Complaint ("FAC"). [Dkt. 29.]

4. Leave was granted, and the FAC was filed, on June 24. [Dkt. 34; 35.]

5. On August 30, the Court reset the Amended Pleading deadline to September 30, 2024. [Dkt. 55.]

6. On September 30, 2024, with the Court's leave, Plaintiff filed a Second Amended Complaint ("SAC").

7. Plaintiff now requests leave to file a Third Amended Complaint ("TAC") for the purpose

of narrowing the class definition.

8. This Motion is made from an abundance of caution. While the Seventh Circuit does not require an amendment to the complaint to propose a modified class definition, a plaintiff must still put their class definition on the table at an early practicable time. *See, e.g., Chapman v. First Index, Inc.*, 796 F.3d 783, 785 (7th Cir. 2015).

9. Because the deadline for amended pleadings passed on September 30, 2024, any amendment would technically require a modification of the scheduling order to accommodate the amendment proposed here.

10. Fed. R. Civ. P. 16(b)(4) requires "good cause" to modify a scheduling order. *Alito v. Town of Lisbon*, 651 F.3d 715, 719 (7th Cir. 2011).

11. "In making a Rule 16(b) good-cause determination, the primary consideration for the district courts is the diligence of the party seeking amendment." *Id.* at 720. "[A]mong the aims of Rule 16 are to prevent parties from delaying or procrastinating and to keep the case moving toward trial." *Id.*

12. The currently operative definition is as follows:

    Between October 26, 2020 and January 3, 2024, all persons within the United States who received on their cellular telephone a ringless voicemail sent by Defendant using VoiceLogic's services or by VoiceLogic on Defendant's behalf.

13. In late February 2025, however, Plaintiff learned that the call records AT&T was willing/able to produce for its brands (to which Plaintiff was a subscriber) were different from the records the other two main carriers (Verizon and T-Mobile) were willing/able to produce.

14. Specifically, AT&T was willing to (and did) produce documents in response to a subpoena asking for records showing calls *from* the telephone numbers used for Defendant's calls *to*

    AT&T subscribers, even if the *"from"* telephone numbers were not themselves AT&T numbers.

15. Verizon and T-Mobile indicated that they could *not* do it this way and could only produce records defined by their subscribers (e.g., "call records for [Verizon/T-Mobile telephone number]").

16. The practical difference is that AT&T can (and has) produced records, in response to a single subpoena, showing calls to AT&T and AT&T brand subscribers from the numbers used for Defendant's ringless voicemail campaigns, while Verizon and T-Mobile would potentially require thousands of subpoenas, one for each of its subscribers.

17. Accordingly, Plaintiff decided to narrow the class definition to wireless numbers assigned to AT&T or one of its brands at the time of the received RVM.

18. Although Plaintiff first learned of the carrier-specific record limitations in February, he notified Defendant of his intent to narrow the class definition during a March 3 telephone call, a March 8 email, and additional instances throughout March.

19. On April 3, Plaintiff provided Defendant with a near-final definition, while noting that "slight tweaks" should be anticipated:

> Between October 26, 2020 and January 3, 2024, all persons in the United States who received a voicemail—sent by Defendant using VoiceLogic's ringless voicemail service, or by VoiceLogic using its ringless voicemail service on Defendant's behalf—on a cellular telephone number that, at the time of the voicemail, was assigned to AT&T or one of its wireless brands or subsidiaries.

20. Plaintiff asked if Defendant would consent to the amendment, but the Parties tabled the issue pending mediation, which was conducted unsuccessfully on April 29.

21. The revision proposed here is near identical in substance to the April 3 proposal, with minor tweaks to language and formatting:

All persons in the United States who, between October 26, 2020, and January 3, 2024:

(i) Received, on a cellular telephone, a voicemail;

(ii) sent by or on behalf of Defendant using VoiceLogic's ringless-voicemail service; and

(iii) the cellular telephone number that received the voicemail was assigned to AT&T or one of its wireless brands when the voicemail was received.

22. A redlined version of the proposed TAC is attached to this filing. As seen, the only changes are the class definition, minor adjustments to paragraphs linked to the class definition (e.g., noting Plaintiff was a subscriber to an AT&T wireless brand); minor technical additions and corrections (e.g., "Eastern Division" in the caption); and minor formatting changes (e.g., font).

23. Because there is no undue delay, bad faith, nor dilatory motive; the amendment will not impact the operative schedule in any way; and Defendant is not prejudiced by the timing of the amendment (as it was notified promptly) or its narrowed scope, Plaintiff respectfully submits that good cause is present to allow this post-deadline amendment to the complaint, if necessary, and respectfully requests that the Court allow Plaintiff to file his Third Amended Complaint.

24. Defendant has indicated that it will not oppose this request, but it declined to consent under Fed. R. Civ. P. 15(a)(2).

**Dated:** May 17, 2025  s/ Jeremy M. Glapion
Jeremy M. Glapion (NJ Bar: 145972015)
**THE GLAPION LAW FIRM, LLC**
1704 Maxwell Drive
Wall, New Jersey 07719
Tel: 732.455.9737
Fax: 732.965.8006
jmg@glapionlaw.com