**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| **RASHAD WALSTON,** on behalf of himself and all others similarly situated,<br><br>**Plaintiff,**<br>v.<br><br>**NATIONAL RETAIL SOLUTIONS, INC. D/B/A NRS PAY,**<br><br>**Defendant.** | Civil Case No.: 24-cv-83<br>District Judge: Hon. Sunil R. Harjani<br>Magistrate Judge: Hon. Jeffrey T. Gilbert |

**THIRD AMENDED CLASS ACTION COMPLAINT**

**INTRODUCTION**

1. This action arises out of Defendant National Retail Solutions, Inc.'s ("NRS") prerecorded telemarketing telephone calls to cellular telephone numbers without the prior express written consent of the called party, in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227(b).

2. Plaintiff Walston was one such called party.

3. Despite never providing his telephone number or having any interaction with NRS, Defendant placed multiple prerecorded telemarketing calls to his cellular telephone number soliciting him to use its point of sale ("POS") system.

4. Defendant did so by utilizing the "ringless voicemail" services of a third-party marketing firm, Infolink Communications Ltd. d/b/a VoiceLogic ("VoiceLogic"), to which it provided the telephone numbers to be called, the prerecorded voice files to be used, and instructions on how and when to send those ringless voicemails.

**JURISDICTION AND VENUE**

5. This Court has subject matter jurisdiction under 28 U.S.C. § 1331, as this action arises under the TCPA, which is a federal statute.

6. The Court has personal jurisdiction over Defendant because Defendant conducts significant business in this District and committed tortious acts directed at this District.

7. Venue is proper in this District because Defendant conducts significant amounts of business transactions within this District, because some of the wrongful conduct giving rise to this case occurred in and was directed to this District.

**PARTIES**

8. Plaintiff is, and at all relevant times herein was, a resident of Chicago, Illinois.

9. Plaintiff is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

10. Plaintiff is, and at all times mentioned herein was, the "called party" with respect to the telephone number at issue herein, 773-###-4088.

11. Defendant NRS is, and at all times mentioned herein was, a Delaware corporation headquartered at 520 Broad Street, Newark, NJ 07102.

12. Defendant NRS is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

13. Defendant NRS is, and at all times mentioned herein was, a division of IDT Corporation.

**CALLS TO PLAINTIFF**

14. Plaintiff's telephone number is 773-###-4088.

15. Plaintiff's telephone number is and was a cellular telephone number.

16. Plaintiff is the regular user of this telephone number.

17. Plaintiff received prerecorded voicemails from Defendant on at least the following dates:

- March 7, 2022
- May 19, 2022
- August 8, 2022
- March 20, 2023

2

- May 4, 2023
- July 31, 2023
- October 12, 2023

18. All the above calls were prerecorded rather than a live person leaving a voicemail.

19. Plaintiff knows that these calls were prerecorded due to his familiarity with normal human mannerisms, speaking, and intonations, as well as through comparison of the messages.

20. For example, the March 20, 2023 and May 4, 2023 voicemails are literally identical—not just in terms of content, but in terms of background and ambient noise, inflections, pauses, etc.

21. Specifically, the March 20, 2023 voicemail is 42 seconds long and states:

Hi, this is Alex from NRSPay Credit Card Processing. Accepting credit cards doesn't have to be expensive. NRSPay offers our cost-cutting cash discount program. If you process over $18,000 a month, you pay no monthly fee. With NRSPay Cash Discount, your point-of-sale system calculates dual pricing, so you can offer your customers a discount for paying with cash. The plan includes a free credit card reader with no long-term contract and no early termination fee. Check out NRSPay.com to learn more about our cash discount plan, or you can call me back at this number.

22. The May 4, 2023 voicemail is also 42 seconds long, and identically states:

Hi, this is Alex from NRSPay Credit Card Processing. Accepting credit cards doesn't have to be expensive. NRSPay offers our cost-cutting cash discount program. If you process over $18,000 a month, you pay no monthly fee. With NRSPay Cash Discount, your point-of-sale system calculates dual pricing, so you can offer your customers a discount for paying with cash. The plan includes a free credit card reader with no long-term contract and no early termination fee. Check out NRSPay.com to learn more about our cash discount plan, or you can call me back at this number.

23. What's more, the waveforms (i.e. the visual representation that shows how loud or quiet the sound is at different moments in the file) of both audio files is identical, as seen in the two figures below:

- March 20 Waveform:



- May 4 Waveform:



24. Upon information and belief, it would be nearly impossible for two audio files to have identical length, content, and waveforms *without* the audio used to create the files being identical—that is, prerecorded.

25. In addition, the ringless voicemail service VoiceLogic offers—known as Voicecasting—only uses messages "pre-recorded" by the customer (here, Defendant NRS).[1]

26. In other words, VoiceLogic's ringless voicemail service *requires* a prerecorded message.

---

[1] *See* https://voicelogic.com/ringless-voicemail/, *last accessed* August 2, 2024.

4

27. Discovery obtained to date (such as the files used on the ringless voicemail calls to Plaintiff) has also confirmed that each call to Plaintiff was prerecorded.

**TELEMARKETING AND CONSENT**

28. The content of Defendant's ringless voicemails make clear that the calls are telemarketing, which the TCPA defines as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person." 47 C.F.R. § 64.1200(f)(13).

29. All of Defendant's ringless voicemail campaigns it ran through VoiceLogic were to encourage the purchase or rental of its goods and services (such as its point-of-sale system).

30. Defendant used at least five different scripts as part of its VoiceLogic ringless voicemail campaigns, all of which were intended to market its goods and services such as NRSPay Cash Discount; credit card processing services; point-of-sale systems; EBT services; and cash advance services.

31. All of Defendant's ringless voicemails were therefore telemarketing.

32. The TCPA has strict rules regarding prerecorded telemarketing calls to cell phones.

33. Specifically, section 227(b) of the TCPA prohibits making "any call … using … an artificial or prerecorded voice … to any telephone number assigned to a… cellular telephone service" without the prior express consent of the called party. 47 U.S.C. § 227(b)(1)(A)(iii).

34. Importantly, unlike other sections of the TCPA,[2] the prohibition on unconsented prerecorded calls applies to calls to *any* cell phone, no matter how it is used (i.e. even if used by a

---

[2] For example, the do-not-call list provisions of the TCPA expressly only protect "residential telephone subscribers", which could preclude numbers registered to a business rather than an individual. 47 C.F.R. § 64.1200(C).

5

business). *See, e.g. Callier v. Multiplan, Inc.*, 2021 U.S. Dist. LEXIS 256747, *21 (W.D. Tex. Aug. 26, 2021).

35. When the prerecorded call introduces an advertisement or constitutes telemarketing, like Defendant's calls here, the consent requirement is heightened to "prior express *written* consent."

36. "Prior express written consent" requires a signed writing that clearly authorizes the seller to deliver to the person called advertisements or telemarketing messages using an automatic telephone dialing system or an artificial or prerecorded voice. 47 C.F.R. § 64.1200(f)(9).

37. This written agreement must clearly and conspicuously disclose that the calls would be made using an automatic telephone dialing system or an artificial or prerecorded voice, and that the person is not required to sign the agreement as a condition of purchasing any property, goods, or services. *Id.* at (f)(9)(i)(A-B).

38. Plaintiff provided no consent whatsoever here, and certainly not the kind that would rise to the level of prior express written consent.

39. First, Plaintiff never provided Defendant with his telephone number in the first place.

40. Instead, it appears that Defendant purchased or otherwise obtained Plaintiff's telephone number from a third-party database.

41. For example, Defendant purchased telephone numbers—likely including Plaintiff's—from a company called AmeriList.

42. This is significant because Defendant *knew* it did not have consent from anyone on this list, but utilized those numbers for prerecorded telemarketing anyway.

43. Second, even if Plaintiff *had* provided his telephone number to Defendant—which he did not—Defendant did not obtain legally sufficient prior express written consent.

44. None of the locations through which Defendant solicited telephone numbers prior to the initiation of this litigation (an example of which is shown below) contained sufficient disclosures to qualify as prior express written consent (e.g. that calls might be made using a prerecorded or artificial voice):



## VIOLATIONS

45. Because Defendant lacked any consent, let alone prior express written consent, to place prerecorded telemarketing calls (including ringless voicemails) to Plaintiff, Defendant's prerecorded telemarketing calls (including ringless voicemails) to Plaintiff's cellular telephone violate § 227(b) of the TCPA.

46. Because Defendant did not obtain sufficient consent for prerecorded telemarketing

7

calls (including ringless voicemails) as a matter of course, *all* of its prerecorded telemarketing calls to cellular telephones of putative class members violated the TCPA.

47. A violation of § 227(b) carries minimum statutory damages of $500 per call, and up to $1,500 per call if the violations were found to be willful and/or knowing. 47 U.S.C. § 227(b)(3).

48. Given that Defendant purchased thousands of telephone numbers from databases, knew it did not have consent, and placed unsolicited prerecorded telemarketing calls (including ringless voicemails) to those numbers anyway, the violations were willful and/or knowing.

### DIRECT AND VICARIOUS LIABILTY

49. Defendant's calls to Plaintiff and putative class members were, at least in part, ringless voicemails.

50. "Ringless voicemails" are calls under the TCPA.

51. "Ringless voicemails" involve manipulating the voicemail system in such a way that allows a telemarketer to directly deposit a prerecorded message into a target's voicemail box, often without ringing the phone.

52. Unlike a standard phone call, which can often be ignored, the ringless voicemail process forces a recipient to deal with it at some point because voicemail capacity is limited and each voicemail necessarily takes up some of that capacity (and storage on the device).

53. Defendant utilized the ringless voicemail services of third-party entity VoiceLogic.

54. VoiceLogic's ringless voicemail services *only* use prerecorded or artificial voice messages rather than live calls.

55. According to VoiceLogic's description[3] of its ringless voicemail service:

---

[3] https://voicelogic.com/ringless-voicemail/, last accessed August 2, 2024.

> Voicecasting is … our Ringless Voicemail service. It is a software system that will deliver a message to someone's voicemail without ringing their phone. The message is pre-recorded by you, and broadcasted to thousands of voice mail boxes using our Ringless Voicemail Services.

56. To use VoiceLogic's services, Defendant created an account with VoiceLogic.

57. Defendant provided VoiceLogic with the telephone numbers to which ringless voicemails should be sent.

58. Defendant provided VoiceLogic prerecorded voice messages to be used.

59. Defendant provided VoiceLogic with instructions on when to send these ringless voicemails.

60. Defendant provided VoiceLogic with a telephone number that Defendant owns for VoiceLogic to use as the caller ID for the ringless voicemails.

61. Specifically, for the calls to Plaintiff, Defendant provided VoiceLogic with telephone number 973-649-9264, a number its parent company, IDT, has owned since October 26, 2020.

62. The form Defendant submitted to begin its ringless broadcasting campaigns looked identical or substantially similar to the following:

9



63. As shown in the screenshot, Defendant provides the date to transmit the calls, the time to transmit the calls, the date to complete transmission, the number of recipients, uploads the voice file and list of telephone numbers, decides between ring or ringless voicemails, and provides the display number.

64. Defendant paid VoiceLogic for this service through the purchase of credits.

10

65. Each attempted ringless voicemail would deplete one of Defendant's purchased credits.

66. Defendant's extreme involvement with the placement of these calls is sufficient to make it directly liable, even if the final step of placing the calls was done by VoiceLogic.

67. As the FCC held in its 2013 discussion of vicarious liability in the TCPA context, while there is typically a distinction between a call made by a seller and call made by a telemarketer on the seller's behalf, "one can imagine a circumstance in which a seller is so involved in the placing of a specific telephone call as to be directly liable for initiating it – by giving the third party specific and comprehensive instructions as to timing and the manner of the call, for example." *In re Dish Network, LLC*, 28 FCC Rcd. 6574, ¶ 27.

68. In the alternative, Defendant is liable for any illegal calls described herein under several agency principles.

69. First, VoiceLogic acted with Defendant's express actual authority, which occurs "when the principal expressly grants the agent the authority to perform a particular act." *Aranda v. Caribbean Cruise Line, Inc.*, 179 F. Supp. 3d 817, 831 (N.D. Ill. 2016).

70. As described above, Defendant provided VoiceLogic with express actual authority to place these calls on its behalf by, *inter alia*, providing the prerecorded files to be used, the list of telephone numbers to be used, the timing of the calls, and instructing VoiceLogic to make the calls.

71. This would be sufficient for implied actual authority as well, which occurs "when the principal's reasonably interpreted words or conduct would cause an agent to believe that the principal consents to have an act done on her behalf." *Id.*

72. Second, the above would be sufficient for apparent authority, which occurs when

11

the principal "speak[s], write[s], or otherwise act[s] toward a third party" in a way that makes the "third party reasonably believe that [the principal] has consented to an action done on his behalf by someone purporting to act for him." *Bridgeview Health Care Ctr., Ltd.*, 816 F.3d 935, 939 (7th Cir. 2016).

73. Finally, this would be sufficient for ratification, which occurs "when an agent acts for the principal's benefit and the principal does not repudiate the agent's actions." *Aranda*, 179 F. Supp. 3d at 831.

74. As such, Defendant is either directly or vicariously liable for any illegal calls VoiceLogic placed on its behalf, including the calls to Plaintiff here.

## CLASS ACTION ALLEGATIONS

75. Plaintiff brings this action under Fed. R. Civ. P. 23 on behalf of a class defined as:

All persons in the United States who, between October 26, 2020, and January 3, 2024:

(i) Received, on a cellular telephone, a voicemail;

(ii) sent by or on behalf of Defendant using VoiceLogic's ringless-voicemail service; and

(iii) the cellular telephone number that received the voicemail was assigned to AT&T or one of its wireless brands when the voicemail was received.

76. Excluded from the Class are Defendant and any entities in which Defendant has a controlling interest; Defendant's agents and employees; any Judge and Magistrate Judge to whom this action is assigned and any member of their staffs and immediate families; and any claims for personal injury, wrongful death, and/or emotional distress.

### Numerosity and Ascertainability

77. The putative members of the Class for whose benefit this action is brought are so

numerous that joinder of all members is impracticable.

78. The exact number and identities of the persons who fit within the Class are ascertainable in that Defendant and third-parties maintain written and electronically stored data showing:

    a. The dates and times Defendant sent (or had VoiceLogic send) its ringless voicemails;

    b. The telephone numbers to which Defendant (or had VoiceLogic send) its ringless voicemails;

    c. Which of those voicemails were successfully delivered;

    d. The purpose and content of its ringless voicemails.

79. The Class is comprised of thousands of individuals nationwide, covering tens of thousands of calls (and class-wide damages likely north of $25 million, minimum).

80. Plaintiff Walston is a member of the Class because Plaintiff received at least one voicemail sent by Defendant (or VoiceLogic on Defendant's behalf) using VoiceLogic's ringless voicemail service on his cellular telephone number, which was assigned to Cricket Wireless (AT&T's brand) at the time of receipt.

**Commonality**

81. There are common questions of law and fact affecting the rights of the members of the Class, including, *inter alia*, the following:

    a. From where Defendant obtained Class Member telephone numbers;

    b. Whether Defendant sent or caused to be sent the ringless voicemails;

    c. Whether ringless voicemails are calls under the TCPA;

13

    d. Whether Defendant's ringless voicemails constitute telemarketing;

    e. Whether Defendant has any evidence of prior express written consent from Class Members;

    f. Whether Plaintiff and the Class were damaged thereby, and the extent of damages for such violations; and

    g. Whether Defendant should be enjoined from engaging in such conduct in the future.

### Typicality

82. Plaintiff's claims are typical of the claims of members of the Class in that they arise from Defendant's uniform conduct and are based on the same legal theories.

83. Plaintiff has no interests antagonistic to, or in conflict with, the Class.

84. On information and belief, Plaintiff avers that Defendant treated him in same manner as it has thousands of individuals.

### Adequacy of Representation

85. Plaintiff will thoroughly and adequately protect the interests of the Class, as Plaintiff and his retained counsel do not have any conflicts of interest with the proposed Class; Plaintiff's counsel is experienced in class actions of this type and can adequately represent the interests of the class; and Plaintiff and his counsel have adequate financial resources to assure that the interests of the class will not be harmed.

### Superiority

86. Defendant has acted and refused to act on grounds generally applicable to the Class, thereby making injunctive and declaratory relief appropriate for the Class.

87. The prosecution of separate actions by individual Class Members would create a

risk of inconsistent or varying adjudications.

88. A class action provides a fair and efficient method for adjudication of the controversy.

89. Common questions will predominate, and there will be no unusual manageability issues.

90. The prosecution of separate actions would risk confronting Defendant with incompatible standards of conduct.

91. There does not appear to be any litigation already commenced by or against members of the class involving the same issues.

92. The forum is appropriate, as discussed above.

93. The expense of individual litigation and the limited recovery in individual litigation justify a class action.

**FIRST CAUSE OF ACTION**
**Violations of the TCPA, 47 U.S.C. § 227(b)**

94. Plaintiff incorporates the previous allegations as if set forth herein.

95. Section 227(b) of the TCPA prohibits making "any call … using … an artificial or prerecorded voice … to any telephone number assigned to a… cellular telephone service" without the prior express consent of the called party. 47 U.S.C. § 227(b)(1)(A)(iii).

96. Plaintiff and putative Class Members all received ringless voicemails from Defendant on their cellular telephone numbers.

97. Ringless voicemails are calls under the TCPA.

98. All of Defendant's ringless voicemails used a prerecorded voice message.

99. When a prerecorded call introduces an advertisement or constitutes telemarketing,

15

the consent requirement is heightened to "prior express *written* consent."

100. The TCPA defines telemarketing as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person." 47 C.F.R. § 64.1200(f)(13).

101. All of Defendant's ringless voicemails were for these purposes.

102. Therefore, the heightened "prior express written consent" requirement applies to Defendant's ringless voicemails to Plaintiff and putative Class Members.

103. "Prior express written consent" requires a signed writing that clearly authorizes the seller to deliver to the person called advertisements or telemarketing messages using an automatic telephone dialing system or an artificial or prerecorded voice. 47 C.F.R. § 64.1200(f)(9).

104. This written agreement must clearly and conspicuously disclose that the calls would be made using an automatic telephone dialing system or an artificial or prerecorded voice, and that the person is not required to sign the agreement as a condition of purchasing any property, goods, or services. *Id.* at (f)(9)(i)(A-B).

105. Defendant did not obtain *any* form of consent from Plaintiff or putative Class Members.

106. In fact, Defendant purchased most, if not all, of putative Class Members' phone numbers from a third party.

107. Even if it obtained the telephone numbers directly, however, the mechanisms through which it did so do not contain the required disclosures (in form or substance) necessary for "prior express written consent".

108. Accordingly, Defendant lacked consent.

109. Accordingly, all of Defendant's ringless voicemails to Plaintiff and putative Class Members violate the TCPA.

110. Plaintiff and putative Class Members are entitled to minimum statutory damages of $500 per violative call, and up to $1,500 per call if the violations are found to be willful and/or knowing. 47 U.S.C. § 227(b)(3).

111. Because Defendant intentionally sent ringless voicemails *en masse* for years to telephone numbers it knew it had no consent to call, Defendant's conduct is willful, and damages should be trebled to $1,500.

112. Each member of the putative Class has Article III standing as unwanted prerecorded calls invaded their privacy and intruded upon their seclusion, which is the exact harm the TCPA was designed to prevent.

113. In addition, voicemails necessarily take up both voicemail capacity and storage capacity on a device.

114. Such injuries are sufficient for Article III standing in the Seventh Circuit. *See, e.g. Gadelhak v. AT&T Servs.*, 950 F.3d 458, 461-63 (2020) (Barrett, J.); *Koester v. Pelican Inv. Holdings Grp., LLC*, 2023 U.S. Dist. LEXIS 23825, *3 (N.D. Ill. Feb. 10, 2023) (citing *Gadelhak*, which dealt with unwanted text messages, and noting that there is no material difference between unwanted phone calls or voicemails).

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Walston, individually and on behalf of the proposed Class, prays for the following relief:

A. An order certifying the Class as defined above, appointing Plaintiff Walston as the

representative of the Class, and appointing his counsel as Class Counsel;

B. An order declaring that Defendant's actions, as set out above, violate 47 U.S.C. § 227(b);.

C. An award of injunctive and other equitable relief as necessary to protect the interests of the Class, including, *inter alia*, an order prohibiting Defendant from engaging in the wrongful and unlawful acts described herein;

D. An award of statutory damages for violations of 47 U.S.C. § 227(b);

E. An award of enhanced damages for willfulness;

F. Such other and further relief that the Court deems just.

## JURY DEMAND

Plaintiff requests a trial by jury of all claims that can be so tried.

Dated: May 17, 2025          s/ Jeremy M. Glapion
                             Jeremy M. Glapion
                             **THE GLAPION LAW FIRM, LLC**
                             1704 Maxwell Drive
                             Wall, New Jersey 07719
                             Tel: 732-455-9737
                             Fax: 732-965-8006
                             jmg@glapionlaw.com
                             (*Pro Hac Vice*)

*Counsel for Plaintiff and the Putative Class*

[Deleted: May 16, 2025]

18