# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| **RASHAD WALSTON,** on behalf of himself and all others similarly situated,<br><br>       Plaintiff<br>  v.<br><br>**NATIONAL RETAIL SOLUTIONS, INC. d/b/a NRS PAY,**<br><br>       Defendant | Civil Case No.: 24-cv-83<br><br>**District Judge**: Hon. Sunil R. Harjani<br>**Magistrate Judge**: Hon. Jeffrey T. Gilbert |

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO EXTEND DISCOVERY**

Contents

Introduction ................................................................................................................................... 1
LEGAL STANDARD ................................................................................................................... 2
DISCUSSION ................................................................................................................................ 3

   1.   Defendant's request here is made with the opposite of diligence. ..................................... 3
   2.   Defendant's ostensible reasons to extend the discovery period are nonsensical. ............... 4

      2.1.   Re-deposition of Plaintiff ............................................................................................ 4

         2.1.1.   "Withheld Documents" ....................................................................................... 5
         2.1.2.   Defendant inquired about re-deposing Plaintiff *back in January*. ..................... 6
         2.1.3.   The denial of Defendant's Motion to Deny is the law of the case. ...................... 7
         2.1.4.   Shoreway Printing is a red herring with no relevance to this case. ..................... 8
         2.1.5.   Defendant's request to re-depose Plaintiff is part of a continued harassment campaign. ........................................................................................................................... 9

      2.2.   Third Amended Complaint ....................................................................................... 10

         2.2.1.   Defendant has long known of Plaintiff's intent to narrow the class definition.. 10
         2.2.2.   Plaintiff did not have to amend his complaint to modify the class definition. .... 11
         2.2.3.   Discovery into non-AT&T carriers has no relevance to this case. .................... 11

   3.   Defendant's appeal to "fairness" is predicated on revisionist history. ............................ 13
   4.   An extension would prejudice Plaintiff and needlessly complicate expert discovery. ...... 14

CONCLUSION ............................................................................................................................ 15

## **INTRODUCTION**

With barely more than 24 hours remaining in a 15-month discovery period, Defendant asks the Court to grant it a 45-day extension to conduct the discovery it chose not to pursue for over a year. While it submits two main reasons for this—neither of which come anywhere close to meeting the good cause standard—the truth is that Defendant is realizing the folly of its decision to do almost nothing during the discovery period.

This is not an exaggeration. Defendant last served discovery requests on Plaintiff on April 29—of *2024*. Other than a March 2025 subpoena on Plaintiff's counsel (fishing for non-existent documents), that's it. No subpoenas; no depositions; no requests for production; no interrogatories; no requests for admission.

Courts rightfully have "little sympathy for litigants who fail to act diligently during the discovery period and then request an enlargement of the discovery deadline at the eleventh hour to serve additional discovery requests." *Whole Woman's Health Alliance v. Hill*, 2019 WL 10886795, *1 (S.D. Ind. Oct. 8, 2019).

Defendant's proffered reasons for the proposed extension are independently inadequate. Defendant asks the Court to allow it to re-depose Plaintiff on the purported basis that Plaintiff withheld documents. But putting that claim in a docket caption does not make it true. Those "withheld" documents—engagement agreements—were not only *not* withheld, they were fully produced by September of *2024*. What is more is that this *entire issue* was briefed in the Motion to Deny, which Judge Harjani denied in March. [Dkt 76, Defendant's October 18, 2024 Motion to Deny, pp. 6-9.]; [Dkt. 123, Plaintiff's December 27, 2024 Opposition, pp. 3-6.]; [Dkt. 153, Judge Harjani's denial of Defendant's Motion.]

1

As an alternative, backdoor method to re-gaining access to Plaintiff, Defendant asks the Court to compel a deposition of Plaintiff's business, non-party Shoreway Printing, LLC. Setting aside that there is nothing to compel—there is no pending subpoena—Shoreway Printing is irrelevant to this litigation.

In truth, these efforts are part of Defendant's continued harassment campaign of Plaintiff for daring to hold it accountable. It wants Plaintiff out, and it has decided the best way to do that is through attrition and bullying.

Defendant also claims that Plaintiff's Third Amended Complaint ("TAC")—which was filed solely to narrow the class definition to AT&T/AT&T brand carriers and which Defendant did not oppose—somehow allows it to obtain discovery into other carriers, such as Verizon and T-Mobile. Those carriers are irrelevant, and Defendant submits nothing to the contrary.

## LEGAL STANDARD

"[A] scheduling order can be modified upon a showing of good cause." *United States ex rel. Derrick v. Roche Diagnostics Corp.*, 2019 WL 10367989, *1 (N.D. Ill. July 12, 2019) (Gilbert, J.) "The primary consideration in making a good cause determination is the diligence of the party seeking the amendment." *Id.* (citing *Alioto v. Town of Lisbon*, 651 F.3d 715, 720 (7th Cir. 2011)). Defendant has shown the opposite of good cause and diligence.

"Eleventh hour motions for extensions of deadlines are viewed with disfavor—as attempts to obtain an extension by default." *Yost v. Carroll*, 2022 WL 888945, *1 (N.D. Ill. Mar. 25, 2022). "When parties wait until the last minute to comply with a deadline, they are playing with fire." *Spears v. City of* Indianapolis, 74 F.3d 153, 157 (7th Cir. 1996); *see also Royce v. Michael R. Needle P.C.*, 950 F.3d 939, 947 (7th Cir. 2020). The timing of such a motion is "all too often premised on

2

the hope that the tactic will leave the judge with no choice but to grant the motion." *Yost*, 2022 WL at *1.

## DISCUSSION

1. <u>**Defendant's request here is made with the opposite of diligence.**</u>

In short, if Defendant had discovery it needed to conduct, it should have made some efforts at conducting it, especially since all the facts on which it now bases its last-minute request have long been known. Instead, Defendant sat idly. Defendant does not need an extension of time to conduct discovery; it wants one to patchwork its mistakes.

At times, it felt like Defendant forgot the discovery period was open. It has not served a single written discovery request on Plaintiff since April 29, 2024, and none at all since a fishing-expedition subpoena on Plaintiff's counsel in March 2025.

Otherwise, the only sign of life it showed is in January, when it asked to re-depose Plaintiff. Exhibit A. When Plaintiff's counsel would not agree, Defendant claimed it would make a Motion. Exhibit B. It did not.

Defendant's approach to discovery in this case has been remarkably passive—unprecedented, in Plaintiff's counsel's experience—for litigation of this magnitude and stage. A litigant and its attorneys are entitled to choose their strategy but choosing a bad one is not good cause for a do-over. Courts have "little sympathy for litigants who fail to act diligently during the discovery period and then request an enlargement of the discovery deadline at the eleventh hour to serve additional discovery requests." *Whole Woman's Health Alliance v. Hill*, 2019 WL 10886795, *1 (S.D. Ind. Oct. 8, 2019).

Defendant's complete lack of interest in conducting discovery is not mere argument, it is demonstrable fact. In nearly every *jointly* filed status report with the Court, Defendant made its

3

lack of interest evident. On October 30, 2024, the Parties jointly indicated the bulk of written discovery was complete, and Defendant did not mention any additional depositions. [Dkt. 84.] On January 30, 2025, the only referenced depositions were of Defendant's 30(b)(6) witnesses. [Dkt. 137.] On March 5, 2025, the parties submitted a status report specifically responding to the Court's request that the Parties identify all depositions that either side intends to take "based on available information". [Dkt. 141.] The only identified depositions were depositions Plaintiff sought to take. [Dkt. 148.] On April 10, the only identified discovery was, once again, only those depositions Plaintiff sought to take.

It was the same on May 5 and May 13. The Parties confirmed that "there are no other depositions currently planned", other than Defendant's 30(b)(6). [Dkt. 162.] The Parties also noted that the 30(b)(6) deposition and outstanding discovery issues were to be discussed on May 15. They were, and at no point on that call did Defendant indicate any desire to extend the discovery period or discuss any of the reasons it provides in its Motion. Exhibit C.

As discussed more below, *all of these status reports* were filed after it received the supposedly "withheld" documents were produced; all status reports after January 7, 2025 were after the Parties had conferred on re-deposing Plaintiff; and all status reports after March 3, 2025 were submitted with knowledge that Plaintiff intended to narrow his class definition.

2. **Defendant's ostensible reasons to extend the discovery period are nonsensical.**

Even if the timing of Defendant's Motion were appropriate, its submitted reasons are not.

   **2.1. Re-deposition of Plaintiff**

Defendant asks for a 45-day extension of fact discovery in part to "compel" Plaintiff to sit for a supplemental deposition, individually and on behalf of his company Shoreway Printing, LLC. [Dkt. 170, ¶ 7.]

4

Setting aside that there is nothing to compel—Defendant has not issued a subpoena to Shoreway Printing, LLC—allowing an additional deposition of Plaintiff would be manifestly unjust.

2.1.1. "Withheld Documents"

Defendant claims it is entitled to depose Plaintiff because Plaintiff "withheld documents". [Dkt. 170, ¶¶ 5, 11.] This claim is detached from facts. Fortunately, because this issue was already briefed months ago in Defendant's denied Motion to Deny, Plaintiff can, in part, copy directly from his opposition:

> On March 13, 2024, Defendant served Requests for Production, one of which sought Plaintiff's representation agreement(s). On April 19 (the due date), Counsel told Defendant's counsel that Plaintiff would not produce copies of the representation agreements but would reconsider if Defendant identified case law to the contrary. Glapion Decl., ¶¶ 12-19; Ex. E (pp. 41-42).[1] Defendant agreed to provide this. *Id*

[Dkt 123, p. 4.]

Not mentioned in this paragraph is that Defendant had a deposition of Plaintiff scheduled for April 26, 2024—the deposition it now claims it could not conduct fairly because of Plaintiff's April 19 objections. But this week gap, which was a gap of Defendant's own making, still left plenty of time for Defendant to postpone the deposition pending a resolution of the engagement agreement issue. At the time, discovery was not set to close until December 13, 2024. [Dkt. 15.] Defendant's remedy was to move to compel or ask to move the deposition. It strategically chose neither. Instead—continuing from previous briefing—

> Defendant agreed to provide this [case law]. *Id.* Defendant said nothing further in April. Or May. Or June. Or most of July. It was not until July 23—an inexplicable gap of 95 days from when Counsel requested case law—that Defendant resurrected

---

[1] Exhibit and declaration references in these copied paragraphs are to the corresponding opposition brief at Dkt. 123.

5

the issue and provided a single relevant case. Ex. F (p. 45.)

Plaintiff produced the operative agreements eight days after that long-promised case law was provided. In short, nothing was wrongfully withheld. The Parties engaged in the meet-and-confer process as required, and it worked as designed. Plaintiff backed down when Defendant provided the case law it promised. Defendant had all "withheld" documents by *September 2024*.

Yet again, as it did with pursuing the documents themselves, Defendant sat on its hands before raising this concern.

### 2.1.2. Defendant inquired about re-deposing Plaintiff *back in January*.

In fact, it was not until January 2, 2025 that Defendant raised the issue of re-deposing Plaintiff. Even then, this request was not tied to "withheld documents." Defendant's counsel emailed Plaintiff's counsel and asked to re-depose Plaintiff, writing that "[g]iven Walston's declaration in response to the motion to deny class certification, we also intend to depose him again to evaluate how the engagement terms impacted him." Exhibit A. Plaintiff immediately responded that any such effort would be opposed, and raised the inexplicable delay in using Mr. Walston's declaration—which had been provided to Defendant on October 26, Exhibit D—as a basis to re-depose him in January. Exhibit A. The Parties conferred on this and other topics on January 7, with Plaintiff offering to allow interrogatories (exceeding the 25 cap) instead of a deposition. Defendant declined this offer and claimed it would consider moving to compel additional testimony. Exhibit B. It did not.

**Importantly,** this request came 25 days (and the conferral came 20 days) before Defendant's reply in support of its Motion to Deny was filed. Yet Defendant did not move to compel additional testimony then. Nor did it so move (or even reference the possibility) in February. Or March. Or April. Or nearly all of May.

6

But suddenly, on the eve of discovery, Defendant needs an extension of time to attempt to re-depose Plaintiff due to "questions related to adequacy surrounding the engagement letter" questions which were resolved when Judge Harjani denied Defendant's related Motion on March 12? [Dkt. 153.] Despite foregoing this "battle" when the additional testimony it claims it needs would be most relevant?

Defendant's attempted sleight of hand must also be laid bare. No one told Defendant to expedite its deposition of Plaintiff. No one told Defendant to file a Motion to Deny, which even this Court acknowledged as procedurally odd. Oct. 16 Hrg. Tr., 5:17-6:10. If Defendant felt that it received inadequate testimony from Plaintiff to support its Motion to Deny, it was under no obligation to file it when it did. It could have taken class certification in the ordinary course or resolved issues surrounding that testimony before filing. Instead, Defendant stuck to its plan. It now asks the Court to treat its Motion to Deny as a bifurcation of sorts, giving Defendant a bite at Plaintiff *before* the Motion to Deny, and, having lost that battle, another bite before Class Certification. That is simply not how it works. Defendant's ill-conceived procedural does not change anything.

Further, while Defendant claims it needs Plaintiff's additional testimony to appeal the Motion to Deny ruling, it is unclear how testimony developed *after* the ruling because of Defendant's own inaction can support an appeal.

2.1.3. <u>The denial of Defendant's Motion to Deny is the law of the case.</u>

Defendant claims that it is entitled to obtain testimony on Rule 23's adequacy element despite the denial of NRS's Motion to Deny. [Dkt. 170, ¶ 12.] This is true—and it had more than a year to do so. But the only testimony it claims to need as the basis for its Motion here is testimony pertaining to Plaintiff and his counsel's adequacy stemming from the engagement agreements.

7

Defendant made these arguments and lost. *That* door is closed. *See, e.g.*, *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 815-16 (1988) ("As most commonly defined, the doctrine [of the law of the case] posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages of the same case.")

  2.1.4. <u>Shoreway Printing is a red herring with no relevance to this case.</u>

As an alternative attempt, Defendant asks the Court to compel a 30(b)(6) deposition of Shoreway Printing LLC.

First, this is procedurally improper, as there is no subpoena pending. While Defendant claims it did this for efficiency, it did this because, absent Plaintiff's agreement, it would not be able to comply with Local Rule 16.1(4).

Second, Defendant's request does not just ask that it be allowed to depose Shoreway Printing LLC, it impliedly asks the Court to order that Plaintiff must be Shoreway Printing's designee. But 30(b)(6) allows the subpoenaed entity to designate anyone "who consents to testify on its behalf". That may be Plaintiff Walston, or it may be literally any other person who can be properly prepared *and* consents to testifying on behalf of Shoreway Printing.

Third, Shoreway Printing has no relevance to this case. Defendant claims—without evidence submitted or produced in discovery—that it intended to reach Shoreway Printing, *not* Plaintiff. This is not only irrelevant, but illogical. Defendant blindly placed telemarketing calls *en masse* using an automated line-jamming phone system to a list of purchased numbers. Its only intent was to fill voicemails in hopes that the recipient would buy Defendant's products or services. It did not care who it reached.

Fourth, Defendant has been aware of Shoreway Printing for more than a year. Plaintiff disclosed its existence in his April 26, 2024 deposition. Walston Depo. Tr., 46:9-17. Until now, Defendant never so much as mentioned Shoreway Printing, let alone sought its deposition.

Fifth, though omitted from its Motion, Defendant represented prior to its Motion that it waited until now because it discovered the "Amerilist[2] list containing Plaintiff's number [on May 27, 2025], which identified Shoreway Printing LLC." Exhibit E. But this claim is false.

On March 10, 2025, after more than a year of Plaintiff asking, Defendant created and produced a list of nearly 30,000 telephone numbers it called—including Plaintiff's—and indicated the source of that number (either "Appears on List Supplied by Amerilist" or an online opt-in). For Plaintiff's number, Defendant stated that Plaintiff's number "Appears on List Supplied by Amerilist." If Defendant knew on March 10 that Plaintiff's number appeared on a list supplied by Amerilist, how could Defendant not have discovered the list containing Plaintiff's number until May 27? And if it derived that knowledge from something other than the list itself, why has that source of knowledge not been produced? Such inconsistency calls into question the accuracy of Defendant's representations in discovery.

### 2.1.5. Defendant's request to re-depose Plaintiff is part of a continued harassment campaign.

Defendant's request must also be viewed in the context of its approach to this litigation, which has consistently focused on attacking Plaintiff personally rather than addressing the substantive claims. Defendant aggressively opened Plaintiff's deposition in April 2024 by

---

[2] Amerilist is the company from which Plaintiff alleges Defendant purchased most, but not all, of its telephone numbers called.

9

criticizing Plaintiff for not shaking Defendant's counsel's hand fast enough and being insufficiently courteous. Walston Depo. Tr. pp. 6-8.

Defendant then used settlement negotiations in which Plaintiff engaged in good faith (prior to obtaining counsel) to try to enforce a plainly non-existent settlement that Plaintiff did not want. Judge Harjani denied this Motion as wholly without merit. [Dkt. 31.]

Once that failed, Defendant, continuing to struggle with consent, spent its efforts case trying to pick Plaintiff off with individual settlements offers he repeatedly indicated he did not want. When Plaintiff rejected those attempts, Defendant attacked his integrity and wealth, portraying him as a puppet who is too poor to decline their generous offers because he declared bankruptcy 20 years ago. [Dkt. 123, pp. 1; 11-12.]

For Plaintiff—a hard working family man and devoted father with a master's degree—such constant and *public* belittlement takes a toll and exceeds the bounds of zealous advocacy. It would be truly unjust to reward Defendant's dilatory conduct with another attempt.

### 2.2. Third Amended Complaint

Defendant also claims the Third Amended Complaint ("TAC") entitles it to discovery to "test the accuracy of Plaintiff's assertions" regarding his reasons for narrowing the class definition to AT&T subscribers only. [Dkt. 170, p. 3.] This is not only dilatory, but it makes little sense.

#### 2.2.1. Defendant has long known of Plaintiff's intent to narrow the class definition.

On March 3, 2025, Plaintiff's informed Defendant's counsel that Plaintiff would likely be narrowing his class definition from one covering ringless voicemails to *all* cell phone numbers to one covering ringless voicemails to AT&T/AT&T brand numbers only. Plaintiff re-confirmed this intent throughout March.

On April 3, Plaintiff provided the exact class definition intended, which differs from the definition in the TAC in only non-substantive ways. Exhibit F (redacted in spirit of Rule 408).

In fact, Plaintiff intended to seek leave to amend in April, but chose, after discussing with Defendant, to defer the amendment until after the unsuccessful April 29 mediation.

On May 17, 2025, Plaintiff sought leave to amend. [Dkt. 163.] The redline attached thereto shows that the only substantive changes were to the class definition and related paragraphs. [Dkt. 163-1.] Defendant did not oppose. [Dkt. 165.]

### 2.2.2. Plaintiff did not have to amend his complaint to modify the class definition.

Plaintiff was not required to amend his complaint to submit a narrower class definition than that contained in the previous complaint. *See, e.g., Chapman v. First Index, Inc.*, 796 F.3d 783, 785 (7th Cir. 2015). Plaintiff did so—and made sure to repeatedly remind Defendant about it ahead of time—primarily to avoid spending unnecessarily pages fighting about this issue in Plaintiff's forthcoming Motion for Class Certification.

But this is significant for another reason: if Plaintiff could have narrowed the class definition in his Motion for Class Certification without requiring discovery to be re-opened, why should doing it in an amended complaint for the convenience of both Parties be treated differently? Especially since it adds no new claims and it narrows the class to a sub-version of the previous definition.

### 2.2.3. Discovery into non-AT&T carriers has no relevance to this case.

Defendant's request for discover into non-AT&T carriers not only fails on timing and procedure, it fails on substance. Defendant claims it is entitled to explore whether Verizon and T-Mobile *can* produce call records in a manner they indicated to Plaintiff that they could not. But to what end? For starters, this has no relevance to the case. Plaintiff's TAC limits his class allegations to AT&T and its subsidiaries and brands. "When a plaintiff files an amended complaint, the

11

amended complaint supersedes the original complaint." *Scott v. Chuhak & Tecson, P.C.*, 725 F.3d 772, 782 (7th Cir. 2013). Defendant's proposed discovery into what records T-Mobile and Verizon maintain are no longer relevant to any allegations in the TAC. Put another way, if the TAC—which has superseded all complaints—were the operative complaint at the outset of this case, Defendant would clearly have no argument for serving subpoenas on T-Mobile and Verizon. It is no different now.

Perhaps in recognition, Defendant claims it has the right to verify the main *basis* for Plaintiff's amendment to the class definition. But if it wanted to explore that basis, it could have done so nearly three months ago when first informed. It could have served its own discovery on those other carriers throughout. It could have also opposed Plaintiff's request for leave to amend. This last point is key because if Plaintiff anticipated opposition, he would have gone into more detail about the many reasons narrowing the class makes sense. These not only include representations non-AT&T carriers made about what they could produce,[3] but concerns about the propriety of limiting the class to include not just AT&T carriers, but non-AT&T carriers to which Plaintiff did not subscribe. This is especially so if the records other carriers could produce require a different analysis than the AT&T records to get to the same data.

---

[3] Defendant oversimplifies the records Verizon and T-Mobile said they could/would not produce. The issue has been whether carriers can produce records defined by calls from non-subscribers *to* subscribers, rather than only those defined by reference to a subscriber. AT&T said they could do the former; Verizon and T-Mobile did not think they could.

For example, AT&T can produce call logs showing all calls from non-AT&T number 555-1212 passing over their network on a certain date, resulting in a list of sometimes calls made by 555-1212 to different AT&T subscribers on that day. Verizon and T-Mobile, on the other hand, would require hundreds of different subpoenas, one for each of *their* subscribers.

Plaintiff suspects Defendant's goal is two-fold. First, it wants to use this case to conduct discovery into carriers no longer implicated in this suit, to assess its risk of, get a head start on, future litigation from a Verizon or T-Mobile plaintiff file suit. Second, it wants to metaphorically "speak to the manager" at T-Mobile's and Verizon's subpoena compliance department, in hopes it gets different answer than that given to Plaintiff and then use that different answer attack Plaintiff's counsel's integrity.

3. **Defendant's appeal to "fairness" is predicated on revisionist history.**

In hopes the Court's sense of fairness will override the complete lack of good-faith basis for the discovery extension sought, Defendant claims "it's unfair to extend the schedule *several* times to allow Plaintiff to take four depositions—of the same individuals he *already* deposed individually—while preventing NRS from re-deposing Plaintiff[.]" [Dkt. 170, ¶ 13.] This is revisionist history and misleads the Court.

First, there are no "duplicate" depositions. Plaintiff has taken five depositions: Diana Stern (Defendant's VP of Marketing); Michael Hellerman (Defendant's former employee); Elie Katz (Defendant's CEO); VoiceLogic (Defendant's third-party vendor); and Mary Robinson (Defendant's ethics expert obtained for its denied Motion to Deny). These depositions were all properly noticed, properly conducted, and taken once.

Plaintiff also noticed Defendant's 30(b)(6) deposition months ago.[4] For this deposition, *Defendant* has decided to put forth two witnesses previously deposed. Plaintiff had no say in this, nor does Plaintiff care who Defendant puts up. Defendant is within its right to put up the same

---

[4] Those depositions are scheduled for June 4 and June 5, which is after the discovery period only because Defendant had a convenient "miscommunication" with its witness forcing it to be rescheduled from May 19. [Dkt. 162.]

13

witnesses, but to blame Plaintiff for this decision, and compare that to its request to re-depose *the same witness* for no good reason, is unserious.

Second, the schedule was not extended to "allow Plaintiff to take four depositions." The docket doesn't lie. The schedule was extended—jointly—for reasons benefitting *both Parties, as stated in the corresponding* docket entries. The Parties' first extension was to "accommodate depositions." [Dkt. 109.] The second extension was because the deposition of key third-party VoiceLogic—in which both Parties participated—could not be conducted in time; because Defendant still had not completed its rolling production; and because Defendant had not provided dates for the noticed deposition of its CEO or 30(b)(6) deposition. [Dkt. 140, ¶¶ 5-9.] The third extension was to accommodate the Parties' failed mediation. In that Motion, the Parties made clear that "most anticipated discovery has been completed[.]" [Dkt. 157, ¶¶ 4-7.]

Suggesting these were solely to benefit Plaintiff is false. Defendant could have taken advantage of them. It chose not to do so.

**4. An extension would prejudice Plaintiff and needlessly complicate expert discovery.**

Defendant claims that the extension will not have any impact on expert discovery. [Dkt. 170.] This is false. Plaintiff currently intends to introduce three expert witnesses for class certification and has already spent significant time and money engaging with these witnesses on the facts currently present in this case and with the expectation that, this far into the case, those facts would not change. The reports—due June 5—are in near final form. Additional facts, discovery, testimony may not only force reports to be re-written, but may require additional expert witnesses (e.g., if Defendant is permitted to again argue Plaintiff's adequacy related to the engagement agreements).

14

## CONCLUSION

Defendant's request to extend discovery comes nowhere close to good faith. Its request for leave to re-depose Plaintiff is not only untimely and procedurally improper, but would countenance Defendant's harassment and attrition campaign. Its request for discovery into non-AT&T carriers is irrelevant. Its Motion would merely delay this case and complicate expert discovery. Plaintiff respectfully asks that the Court deny Defendant's Motion.

Date: May 29, 2025 */s/ Jeremy M. Glapion*
Jeremy M. Glapion
**THE GLAPION LAW FIRM, LLC**
1704 Maxwell Drive
Wall, New Jersey 07719
Tel: 732.455.9737
Fax: 732.709.5150
jmg@glapionlaw.com