### IN THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF ILLINOIS

RASHAD WALSTON, on behalf of himself   :  Case No. 1:24-cv-00083
and all others similarly situated,         :

                        :

        Plaintiff,            :

                        :

v.                             :

                        :

NATIONAL RETAIL SOLUTIONS, INC.  :
D/B/A NRS PAY,               :

                        :

        Defendant.          :

_____/

### DEFENDANT'S REPLY IN SUPPORT OF
### ITS MOTION TO RE-DEPOSE PLAINTIFF AND EXTEND DISCOVERY

This case started with a letter from Plaintiff Rashad Walston. He demanded a cash payment from Defendant NRS. After counsel got involved, he said Plaintiff "wasn't interested" in that anymore. Instead, Plaintiff was a committed representative who only cared about "the class" and was willing to do anything for it. His lawyer too. He claimed that an individual settlement, which his client previously demanded, was unethical because of a supposed fiduciary obligation to the entire (uncertified) class. He even used handcuff provisions to prevent his own client from settling the case to "protect the class."

But actions speak louder than words. Setting aside that counsel has settled most of his class actions individually rather than on a class basis, barely a week ago he amended his class definition to drop two-thirds of the class. NRS has had no chance to explore what Plaintiff thinks about that decision, or whether he even knew about it. Despite his professed commitment to this case, all Plaintiff has done to date in this matter is sit for a 3.5-hour (on the record) deposition. NRS, on the other hand, will put up two witnesses (that Plaintiff

already deposed) for their second depositions this week. And it's doing so notwithstanding that Plaintiff is seeking millions from NRS, not the other way around.

These straightforward facts confirms that counsel's insult-filled diatribe about "harassment" is just a ruse. Counsel didn't even ask his client if he would be willing to spend a half day on a second deposition when he filed his response brief (a point he confirmed during conferral). The reason is apparent: NRS only needs to finish Plaintiff's deposition in a second session because (a) counsel refused before Plaintiff's initial deposition to produce the engagement letters he used to suppress Plaintiff's ability to settle the case, as Plaintiff's own letter said was his goal, and (b) counsel amended most of the class out of the case right before discovery closed. Counsel understandably doesn't want his client to be questioned about these things, so he opposes anything that would put NRS in contact with his client.

On top of claiming "harassment," he tries to avoid a short extension and deposition by claiming NRS has been "remarkably passive." Setting aside the contradiction inherent in accusing an adversary of being "harassing" and "remarkably passive" in the same brief, Plaintiff's allegations are wrong. NRS has spent thousands of hours reviewing documents, responding to Plaintiff's hundreds of written discovery requests and numerous discovery motions, and engaging in significant motion practice. That NRS tried to take the temperature down and avoid more motion practice while it mediated and tried to settle the case is not "sitting idly." It's being reasonable.

But the reality of where things now stand is this: the parties' mediation was unsuccessful. Plaintiff then amended his complaint (on May 21). He tries to distract the Court from that by saying he disclosed the possible class change earlier. But NRS cannot file a motion based on Plaintiff's statements that he may do something at some point in the future,

depending on the outcome of an alleged investigation to which NRS was not privy. NRS can only litigate the case before it. So Plaintiff's decision to amend a week before the close of discovery is a problem of his own making.

The self-inflicted issues caused by Plaintiff's amendment, along with the failure of mediation, justify the short extension NRS seeks. The Supreme Court mandates that this Court to perform a "rigorous analysis that the prerequisites of Rule 23(a) have been satisfied," including adequacy of Plaintiff and counsel. *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 161 (1982). The only way this Court (and the Seventh Circuit, to the extent NRS must appeal this Court's decision on certification) can conduct the compulsory rigorous evidentiary analysis is if NRS is permitted to finish Plaintiff's deposition and test counsel's untested statements about Verizon and T-Mobile records. Denying NRS that opportunity would inject error into these proceedings.

That's particularly true given that the requested extension will not prejudice Plaintiff. It will not even impact the remaining case schedule. The proposed discovery is related to adequacy and non-AT&T carrier records. Plaintiff doesn't even claim that his experts will testify about those subjects, so the information won't impact their reports. If anything, the requested extension should *benefit* Plaintiff by giving him a chance to disprove what the evidence suggests.

The Court should grant NRS's motion.

## ARGUMENT

### A. The Court should Compel Plaintiff to Finish His Deposition so the Court Can Conduct a Rigorous Rule 23 Analysis.

The Court should grant NRS's timely request to finish Plaintiff's deposition. He withheld his engagement letter before the first deposition so NRS couldn't question him about

it, he very recently narrowed his class by nearly two-thirds, and NRS was trying to contact Shoreway Printing when it communicated with Plaintiff's phone. Each of these points justifies Plaintiff spending a half day completing his deposition.

Courts permit a second deposition so long as it is "consistent with Rule 26(b)(2)[,]" including whether the second deposition "would be unnecessarily cumulative, whether the party requesting the deposition has had other opportunities to obtain the same information, and whether the burden of a second deposition outweighs its potential benefit." *Eaton Corp. v. Weeks*, 2014 WL 700466, at *3 (E.D. Mich. Feb. 24, 2014). To that end, courts routinely allow a second deposition where "new information comes to light relating to the subject of that deposition . . . new allegations are made in pleadings, or new documents are produced[.]" *Id.; see also Howard v. Securitas Sec. Servs. USA, Inc.*, 2011 WL 1483329, at *2 (N.D. Ill. Apr. 19, 2011) (allowing second deposition to ask witness about newly produced emails). All of these factors weigh in favor of allowing NRS to finish Plaintiff's deposition.

1.     <u>Plaintiff Failed to Produce Key Documents Before His Deposition.</u>

To begin, NRS never had an opportunity to depose Plaintiff about his engagement letters. Plaintiff doesn't even dispute that he failed to disclose it until months after his deposition. But he still blames NRS (at 5-6) for asking for a second deposition, claiming NRS rushed to depose Plaintiff instead of giving him authority to produce the engagement letter beforehand. His arguments are meritless.

Plaintiff's own discovery response proves NRS had no choice but to proceed with Plaintiff's deposition without the engagement letter. He objected to NRS's request for the letter, arguing it wasn't discoverable without a "*showing*" of "relevance or necessity." ECF No. 76–1, 38 (emphasis added) (citing *Blaise v. Transworld Sys.*, 2022 WL 3026946, *3 (N.D.

4

Ill. Aug. 1, 2022)). NRS disagreed with Plaintiff's position (and still does) but proceeded with the deposition at Plaintiff's insistence. It was only by chance that Plaintiff speculated in his deposition that his engagement letter "probably does" have a provision giving his lawyer permission to approve or reject a settlement, which is the only reason Plaintiff disclosed the engagement letter.

Plaintiff, in other words, could have avoided a second deposition had he just timely produced his engagement letter. He declined and, instead, invited two depositions by withholding documents he knew were important, which is why he removed the fee-shifting provision term before eventually disclosing the letter to NRS in July. ECF No. 76-1, 51.

NRS thus never had an opportunity to obtain the same information earlier in the case. Plaintiff simply hoped NRS wouldn't follow up.

> 2.   A Second Deposition Is Necessary for the Court's Rigorous Rule 23 Analysis.

Notwithstanding the Court's ruling on NRS's motion to deny class certification, his testimony about the engagement letter is still necessary for a mandatory rigorous Rule 23 analysis.

First, it remains Plaintiff's burden "to prove that each of the required elements for class certification under Rule 23 has been satisfied," including adequacy, even after Judge Harjani denied NRS's motion to deny certification. *See Spagnola v. Chubb Corp.*, 264 F.R.D. 76, 92 (S.D.N.Y. 2010). Without Plaintiff's testimony about the engagement letter, the Court cannot conduct the "rigorous analysis" of Rule 23 that the Supreme Court requires. *Falcon*, 457 U.S. at 161. That means NRS is *still* entitled to question Plaintiff about his engagement letter.

Throughout this case, Plaintiff touted that he actively participated in this case. ECF No. 123, 14 ("He has asked insightful questions, made suggestions, corrections, and

clarifications, and has not hesitated to provide his input."). Yet, he balks when NRS asks to examine him on the engagement letter and his decision to substantially narrow his class. That hesitance, alone, raises questions about his willingness to "protect the interests of the class." *Pope v. Harvard Banschares, Inc.*, 240 F.R.D. 383, 390 (N.D. Ill. 2006). NRS's employees, Elie Katz and Diana Stern, in contrast, volunteered to sit for a second deposition as NRS's representatives later this week. Despite only sitting through half a deposition, Plaintiff claims (at 10) he is tired. But he's seeking tens of millions from NRS, refused to disclose his engagement letter before his first deposition, and then jettisoned two thirds of the class right before the close of discovery. So Plaintiff invited this scrutiny.

The "law of the case" isn't a justification to prevent this additional discovery. *See United States v. Cap. Tax Corp.*, 2011 WL 589615, at *4 (N.D. Ill. Feb. 10, 2011) (court's ruling denying motion to dismiss on equitable estoppel grounds did not prevent defendant from obtaining evidence to support that theory in discovery). New evidence is a well-established exception to that rule. *Wilder v. Apfel*, 153 F.3d 799, 803 (7th Cir. 1998) ("New evidence can furnish compelling grounds for departure from a previous ruling."). If a party was forbidden from obtaining otherwise relevant evidence because the district court ruled on an issue, the new evidence exception would be meaningless.

Judge Harjani denied NRS's motion, finding there was no evidence of a conflict between Plaintiff and counsel and that Plaintiff amended the engagement letter in a manner that "does not raise integrity concerns." ECF No. 153, 2–3. NRS disagrees with the ruling based on the evidence that was presented. Nevertheless, NRS is entitled to conduct additional discovery to investigate this point in opposition to Plaintiff's upcoming motion for class

certification. That's particularly true given Plaintiff's refusal to produce the engagement letters until NRS took Plaintiff's deposition and established a need for them.

Second, Plaintiff's recent Third Amended Complaint independently justifies compelling him to sit for another deposition. NRS is entitled to ask him about his alleged decision to narrow his class by nearly two-thirds, which is relevant to adequacy. Whether Plaintiff will satisfy his obligation to protect the interests of class members is "perhaps the most significant of the prerequisites to a determination of class certification," in fact. *Pope*, 240 F.R.D. at 390 (cleaned up). But NRS couldn't ask Plaintiff about the amended class definition until he filed his Third Amended Complaint on May 21, 2025. ECF No. 167

Plaintiff blames (at 12) NRS for this too, of course, pointing to NRS's failure to identify an additional deposition of Plaintiff in its status reports. But the parties submitted all those reports *before* Plaintiff filed the Third-Amended Complaint.

Third, NRS is entitled to obtain testimony from Plaintiff on behalf of his company, Shoreway Printing, which NRS tried to contact. Plaintiff (at 2, 8) blames NRS for failing to issue a subpoena on Shoreway Printing, but he told NRS that under no circumstances would he agree to that deposition. So everyone agrees that a subpoena would have been futile. This justifies compelling Plaintiff's deposition on yet another independent ground.

### 3.   NRS Exercised Reasonable Diligence.

Plaintiff's diligence arguments are all red herrings. NRS *did* exercise diligence, notwithstanding its attempt to resolve the adequacy issue without re-deposing Plaintiff. In October, NRS believed it had sufficient evidence to defeat class certification on adequacy grounds after consulting with its (unrebutted) ethics experts. Rather than continuing to collect potentially unnecessary discovery and engaging in unnecessary motion practice to compel a

second deposition, NRS filed its motion to deny certification on adequacy grounds. ECF No. 76. "The duty to investigate does not force defense lawyers to scour the globe on the off chance something will turn up; reasonably diligent counsel may draw a line when they have good reason to think further investigation would be a waste." *Webster v. Watson*, 975 F.3d 667, 683 (7th Cir. 2020). NRS reasonably determined that, consistent with the Seventh Circuit precedent about moving to deny class certification, there was no reason to delay the motion. *Kasalo v. Harris & Harris, Ltd.*, 656 F.3d 557, 563 (7th Cir. 2011) (explaining that a motion to deny class certification is appropriate where "additional discovery would not be useful in resolving the class determination").

The same is true with respect to NRS's demand to take Plaintiff's deposition in January. Though NRS was entitled to re-depose Plaintiff given his declaration, NRS ultimately decided it wasn't worth the delay. Plaintiff had already delayed resolution enough by obtaining a near two-month extension to the briefing schedule. ECF Nos. 79, 95. Of course, had NRS realized the Court would deny its motion, it would have sought to re-depose Plaintiff before filing its motion. But reasonable diligence doesn't require perfect hindsight.

NRS's choice to wait to file this motion until after the Court denied its motion to deny certification is likewise reasonable. In March, the parties began negotiating mediation, hoping to resolve this case. It took time to agree to those terms, and the parties agreed it was "more productive to focus their full efforts and attention on the upcoming mediation," than continue discovery fights. ECF No. 157. NRS reasonably concluded that asking to re-depose Plaintiff might jeopardize the parties' efforts, so it waited until after the parties exhausted their settlement negotiations.

None of that shows a lack of diligence. It shows reasonableness.

4.    A Second Deposition Is Neither Duplicative Nor Harassing.

Finally, a second deposition is neither duplicative nor "harassment," as Plaintiff puts it. It's not duplicative because NRS asks Plaintiff to testify about issues he's never discussed. It's by no means harassment either. The anticipated deposition involves issues that are all relevant, as described above. And Plaintiff's last deposition lasted only 3.5 hours on the record, meaning NRS is not even asking Plaintiff to exceed the 7-hour limit for a single deposition. Rule 30(d). It's instead just asking him to "participate[] actively in the lawsuit, such as by testifying at deposition and trial[.]" ECF No. 76-1, 119.

Plaintiff's feigned exhaustion about NRS's settlement efforts (at 9–10) is unbelievable. Plaintiff opened this case by making an individual demand. All NRS did was respond to that, at Judge Harjani's urging. His lawyer then employed an engagement letter that took the option off the table, which Judge Harjani recognized "impeded Walston's ability to independently consider settlement." ECF No. 153, 3. NRS is entitled to explore Plaintiff's decision-making, both in response to Plaintiff's forthcoming motion to certify and, if necessary, on appeal.

**B.    The Court Should Extend Fact Discovery Because Plaintiff Waited Until Days Before the Close of Discovery to Disclose Documents Related to His Decision to Substantially Narrow his Class.**

There is also good cause to extend the fact discovery deadline so NRS can investigate T-Mobile and Verizon records. Plaintiff filed the Third Amended Complaint on May 21, and he waited until May 22 to disclose communications with T-Mobile and Verizon.

1.    NRS Exercised Reasonable Diligence in Investigating the Carriers.

NRS exercised reasonable diligence investigating the carriers. To start, Plaintiff's counsel failed to disclose his communications with T-Mobile and Verizon—in connection

with a subpoena he served on January 20, 2025—until May 20, 2025. May 20, 2025 Email Corr., attached as Exhibit 1.[1] As he mentions in his response (at 10), he told NRS that he intended to narrow his class to AT&T subscribers. He later explained that Verizon and T-Mobile did not have records that would allow him to establish liability on a classwide basis. ECF No. 163, ¶ 16. However, the T-Mobile communications revealed that Plaintiff's investigation was cursory at best. T-Mobile's counsel directed his inquiry to the Law Enforcement Relations Department, and Plaintiff hasn't produced his communications (if any) with that department.

When Plaintiff defended the engagement letter, he insisted that he had an obligation to every putative class member as soon as he filed a class action. NRS is entitled to examine the records Plaintiff considered when he decided to exclude thousands of putative class members. This is not "speak[ing] to the manager," as he glibly suggests (at 13). Rather, NRS's examination of the carriers involves whether Plaintiff will "protect the different, separate, and distinct interests of the putative class members." *Pope*, 240 F.R.D. 383, 390 (cleaned up)

Furthermore, whether the T-Mobile and Verizon subscribers could assert a claim on a classwide basis is relevant to future settlement negotiations. NRS cannot resolve this case if those subscribers could assert a claim.

## 2. The Extension Will Not Prejudice Plaintiff.

Finally, a brief extension will not prejudice Plaintiff. Prejudice requires a factual showing that there is a "reduction in the plaintiff's ability to meet the defense on the merits[.]"

---

[1] Plaintiff denied that the communications were responsive to NRS's Request for Production Number 12, asking for communications "between YOU and any third party . . . that REFER OR RELATE TO the allegations . . . in . . . YOUR COMPLAINT[.]" ECF No. 76-1, 23. However, Plaintiff did not object to NRS's request for production on the ground that it sought documents that Plaintiff doesn't possess. *Id.*

10

*Glob. Tech. & Trading, Inc. v. Tech Mahindra Ltd.*, 789 F.3d 730, 732 (7th Cir. 2015). Here, Plaintiff doesn't claim his three expert reports deal with the adequacy issues or non-AT&T carrier records that NRS intends to examine. Rather, he claims (at 14) he may need an extra expert witness. Plaintiff previously obtained a near two-month extension to retain an expert witness when the parties briefed adequacy. ECF No. 136, 8. If Plaintiff didn't retain an expert then, there's no reason to believe he intends to do so now.

## <u>CONCLUSION</u>

For these reasons, the Court should compel Plaintiff to sit for a second deposition and extend the fact discovery deadline by 45 days (through July 14, 2025).

DATED:        June 3, 2025.

Respectfully submitted,

*/s/ Ryan D. Watstein*
Ryan D. Watstein (admitted *pro hac vice*)
ryan@wtlaw.com
Patrick J. Fitzgerald (admitted *pro hac vice*)
pfitzgerald@wtlaw.com
Alexander T. Terepka (admitted *pro hac vice*)
**WATSTEIN TEREPKA LLP**
75 14th Street NE, Suite 2600
Atlanta, Georgia 30309
Tel: (404) 782-9821
Fax: (404) 537-1650

Justin M. Penn, ARDC 6283726
jpenn@hinshawlaw.com
**HINSHAW & CULBERTSON LLP**
151 North Franklin Street, Suite 2500
Chicago, Illinois 60606
Tel:  (312) 704-3000

*Counsel for Defendant*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 3, 2025, I caused to be electronically filed a true and correct copy of the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record.

<u><em>/s/ Ryan D. Watstein</em></u><br>Ryan D. Watstein (admitted <em>pro hac vice</em>)

# EXHIBIT 1

| | |
|---|---|
| **Subject:** | Re: Walston v. NRS - Outstanding Issues 5/5/25 |
| **Date:** | Tuesday, May 20, 2025 at 3:08:35 PM Eastern Daylight Time |
| **From:** | Jeremy Glapion |
| **To:** | Patrick Fitzgerald |
| **CC:** | Ryan Watstein, Jeffrey Brown |
| **Attachments:** | Verizon Subpoena Responses.zip, T-Mobile Emails.pdf |

[Warning – external]

Hi Pat:

**Re Narrowing**: I'm willing to do that, but I actually think it's less about my *case* and more about what topics are necessitating a second witness, at least at first pass. If your position is that the quantity of topics alone requires two witnesses, we should be able to figure something out. If your position is that, no matter what, testimony on the VoiceLogic relationship will require two witnesses—I'm not sure if we will be able to avoid that. For example, off the top of my head and without committing to it, I think we could avoid topics 13a, b, d, e, k; but not necessarily something like 13c. Can you clarify your thoughts?

**Bifurcating Merits/Cert Experts**: I can try to get you something tomorrow or Thursday.

**Verizon & T-Mobile Subpoenas**: Attaching what I got from Verizon (not bates stamped). T-Mobile was odd because they kicked it to an outside counsel. I don't think they ever actually produced anything because they told me they couldn't do the production the way I was asking.

Attaching the correspondence with that counsel here.

--

**Jeremy M. Glapion**
Partner

Glapion Law Firm
1704 Maxwell Drive
Wall, New Jersey 07719

Tel.: 732-455-9737


On Tue, May 20, 2025 at 2:11 PM, Patrick Fitzgerald <pfitzgerald@wtlaw.com> wrote:

Hi Jeremy,

Following up on a few points.

**Narrowing 30(b)(6) Topics**: We're interested in a stipulation, but we're reluctant to adopt the depositions wholesale. Can you identify the testimony Plaintiff wants NRS to adopt and the topics that would obviate? We'll then run that past the client and get a stipulation on file. I

tried doing that on my own, but found myself having to guess at Plaintiff's case.

**Bifurcating Merits Experts**: We're interested in bifurcating class certification and merits experts. Can you send us a proposed motion?

**Putative class member communications**: How about a joint motion to extend the deadline to move to compel these communications until 30 days after the Court rules on class certification? We could include this in the bifurcation motion.

**Verizon and T-Mobile Second Subpoena**: One item we didn't discuss on the call: Did Verizon and T-Mobile produce a written response to the January 19, 2025 subpoena? If so, can you forward that?

**Patrick J. Fitzgerald (bio)**

WATSTEIN TEREPKA LLP

P: (404) 400-3382

pfitzgerald@wtlaw.com

www.wtlaw.com

---

**From:** Jeremy Glapion <jmg@glapionlaw.com>
**Date:** Friday, May 16, 2025 at 2:26 PM
**To:** Patrick Fitzgerald <pfitzgerald@wtlaw.com>
**Cc:** Ryan Watstein <Ryan@wtlaw.com>, Jeffrey Brown <jeff@jgbrownlaw.com>
**Subject:** Re: Walston v. NRS - Outstanding Issues 5/5/25

[Warning – external]

Pat:

Pleasure speaking with you yesterday. Memorializing some points from our call and timeline targets.

Priority Items (targeting early next week):

1. **Authentication**: We agreed most Plaintiff- and NRS-produced documents could likely be authenticated by stipulation. You offered to identify any specific subset that raises concerns.

   a. **Wayback**: I indicated I would provide PDFs and links to any wayback snapshots I'd like to use to determine whether they could be authenticated by stipulation

   b. **Voicemail Transcripts**: We agreed to stipulate to the authenticity/accuracy of the voicemail transcripts (essentially waiving evidentiary objections to these versus the audio files themselves) to allow those to be used in lieu of the available, but cumbersome, voice files themselves.

   c. **Process**: Reciprocal RFAs with an expedited (pre-deposition) response timeline for authentication. Possibly a joint stip for the voicemail transcripts?

2. **Expert Discovery Bifurcation**: You indicated openness to bifurcating expert discovery between class certification and merits experts, pending client confirmation.

3. "**Pickle**" Documents: You indicated you would provide contextual documents— communications between the recipient and NRS/NRS counsel—but not privileged communications between NRS and its counsel exclusively. I'd like the settlement agreement (if any) as well, and you offered to produce this or let me know if any issues producing this after checking notice requirements.

4. **Full Number Access**: I asked whether your client would allow my summary witness access to the unredacted phone numbers, upon written agreement or an updated confidentiality order that he would *not* share the unredacted phone numbers with me. This seems to balance your concerns with my goal to prove of class certification to the broadest possible *Labcorp* holding by actually doing the analysis now rather than proposing the analysis to be done. This is something I would potentially move on, but it seems hopefully agreeable. You expressed openness to this but would need to discuss with client.

   a. Note: the unredacted information I'd want the summary witness to have would be from the two AT&T productions of the call and the PacificEast reports so his data comparison could focus on the agreed upon wireless numbers.

5. **Absent Class Member Communications**: I indicated that I don't *want* to move to compel these, but I feel compelled to do so if I want preserve the argument that they should have been produced before use. I'm open to creative solutions on this front, however.

Additional Items (by end of next week)

1. **RFA 49**: You agreed to amend the response re *awareness* of VoiceLogic running any ringless voicemail campaign for NRS without authorization, though you were uncertain whether it will be an admission or denial. Note: If denied, this topic will need to be added to the 30(b)(6) deposition list.

2. **Unknown Number Sources**: You agreed to bates stamp the source of numbers

documents and amend the relevant interrogatory response(s) to clarify this is what NRS has been able to find to date, and is still investigating the source of other numbers *not* listed and whether any of the numbers listed were obtained from sources other than those identified.

3. **Prior Testimony Adoption**: You'll review whether NRS will adopt VoiceLogic, Ellie, and Diana's prior testimony to potentially narrow 30(b)(6) topics—at least so we can get down to one witness.

    a. If helpful, I offered to indicate what topics I think could be mooted via this method, but it would not obviate the need for a deposition altogether.

Please let me know if I missed or misstated anything. Have a great weekend.


Best,

Jeremy




--



**Jeremy M. Glapion**

Partner

Glapion Law Firm
1704 Maxwell Drive
Wall, New Jersey 07719

Tel.: 732-455-9737




On Mon, May 12, 2025 at 2:17 PM, Jeremy Glapion <jmg@glapionlaw.com> wrote:

Hi Pat:


To get us organized:


**In advance of the call**:

1. Attaching a "with-consent" draft of the Motion for Leave to Amend. Let me know if your client consents or if changes are needed to obtain that consent.
2. Status report (see other email).

**Topics for the call**:

1. Remaining deposition issues and logistics. I have attached my updated 30b6 notice to this email.
2. Authentication.
3. Additional "pickle" documents.
4. RFA 49 amendment; amending rog responses to point to your number source identification (and bates numbering the same)
5. Website opt-in list being "non-exhaustive"
6. Production of communications with absent class members
7. Expert logistics

Let me know if you have anything to add to either group.

--



**Jeremy M. Glapion**

Partner

Glapion Law Firm
1704 Maxwell Drive
Wall, New Jersey 07719

Tel.: 732-455-9737

On Sun, May 11, 2025 at 7:15 PM, Patrick Fitzgerald <pfitzgerald@wtlaw.com> wrote:

> Hi Jeremy,
>
> I'm free to jump on a call on Thursday at 2. Can you send an invite?
>
> Pat
>
>
> **Patrick J. Fitzgerald (bio)**
>
> WATSTEIN TEREPKA LLP

P: (404) 400-3382

pfitzgerald@wtlaw.com

www.wtlaw.com

---

**From:** Patrick Fitzgerald <pfitzgerald@wtlaw.com>
**Date:** Thursday, May 8, 2025 at 2:46 PM
**To:** Jeremy Glapion <jmg@glapionlaw.com>
**Cc:** Ryan Watstein <Ryan@wtlaw.com>, Jeffrey Brown <jeff@jgbrownlaw.com>
**Subject:** Re: Walston v. NRS - Outstanding Issues 5/5/25

Yep. That works on the updated notice. And I'll follow up with dates re outstanding items call shortly.

**Patrick J. Fitzgerald (bio)**

WATSTEIN TEREPKA LLP

P: (404) 400-3382

pfitzgerald@wtlaw.com

www.wtlaw.com

---

**From:** Jeremy Glapion <jmg@glapionlaw.com>
**Date:** Thursday, May 8, 2025 at 2:44 PM
**To:** Patrick Fitzgerald <pfitzgerald@wtlaw.com>
**Cc:** Ryan Watstein <Ryan@wtlaw.com>, Jeffrey Brown <jeff@jgbrownlaw.com>
**Subject:** Re: Walston v. NRS - Outstanding Issues 5/5/25

[Warning – external]

OK, I can do June 4. With that change, can I get you the updated 30b6 next week?

It probably also makes sense to get a call on the calendar for next week to walk through the outstanding items list. I'm pretty open next Tuesday (after 10:30 am) and Thursday (hard stop at 4 pm).

\-\-



**Jeremy M. Glapion**

Partner

Glapion Law Firm
1704 Maxwell Drive
Wall, New Jersey 07719

Tel.: 732-455-9737

On Thu, May 08, 2025 at 2:40 PM, Patrick Fitzgerald <pfitzgerald@wtlaw.com> wrote:

Thank you. Yes, that's correct. We've got a hold on June 4.

**Patrick J. Fitzgerald (bio)**

WATSTEIN TEREPKA LLP

P: (404) 400-3382

pfitzgerald@wtlaw.com

www.wtlaw.com

---

**From:** Jeremy Glapion <jmg@glapionlaw.com>
**Date:** Thursday, May 8, 2025 at 2:39 PM
**To:** Patrick Fitzgerald <pfitzgerald@wtlaw.com>
**Cc:** Ryan Watstein <Ryan@wtlaw.com>, Jeffrey Brown <jeff@jgbrownlaw.com>
**Subject:** Re: Walston v. NRS - Outstanding Issues 5/5/25

[Warning – external]

So just to run this to ground—are June 4 or 5 the only dates that work between 5/16 and then?

--


**Jeremy M. Glapion**

Partner

Glapion Law Firm
1704 Maxwell Drive
Wall, New Jersey 07719

Tel.: 732-455-9737

On Wed, May 07, 2025 at 12:17 PM, Patrick Fitzgerald <pfitzgerald@wtlaw.com> wrote:

> Thank you.  My in-laws are going to be in town that week for my son's second birthday, and I know Ryan's slammed the last week of May and has family visiting.
>
> **Patrick J. Fitzgerald (bio)**
>
> WATSTEIN TEREPKA LLP
>
> P: (404) 400-3382
>
> pfitzgerald@wtlaw.com
>
> www.wtlaw.com

---

**From:** Jeremy Glapion <jmg@glapionlaw.com>
**Date:** Wednesday, May 7, 2025 at 11:21 AM
**To:** Patrick Fitzgerald <pfitzgerald@wtlaw.com>
**Cc:** Ryan Watstein <Ryan@wtlaw.com>, Jeffrey Brown <jeff@jgbrownlaw.com>

**Subject:** Re: Walston v. NRS - Outstanding Issues 5/5/25

[Warning – external]

That could work but it's right on the expert disclosure deadline. Between the two I'd prefer the 4th. What about next Friday May 16? Or the last week of May?

--

 **Jeremy M. Glapion**

Partner

Glapion Law Firm
1704 Maxwell Drive
Wall, New Jersey 07719

Tel.: 732-455-9737

On Wed, May 7, 2025 at 10:12 AM, Patrick Fitzgerald <pfitzgerald@wtlaw.com> wrote:

> On the 30(b)(6) depo, we had a miscommunication; Elie's going to be flying out of the country on May 19. Does June 4 or 5 work?
>
> **Patrick J. Fitzgerald (bio)**
>
> WATSTEIN TEREPKA LLP
>
> P: (404) 400-3382
>
> pfitzgerald@wtlaw.com
>
> www.wtlaw.com

---

**From:** Jeremy Glapion <jmg@glapionlaw.com>
**Date:** Tuesday, May 6, 2025 at 11:36 AM
**To:** Patrick Fitzgerald <pfitzgerald@wtlaw.com>
**Cc:** Ryan Watstein <Ryan@wtlaw.com>, Jeffrey Brown <jeff@jgbrownlaw.com>
**Subject:** Re: Walston v. NRS - Outstanding Issues 5/5/25

[Warning – external]

Congrats on the move—hopefully Elie loves it as much as the other one.

--

 **Jeremy M. Glapion**

Partner

Glapion Law Firm
1704 Maxwell Drive
Wall, New Jersey 07719

Tel.: 732-455-9737

On Tue, May 6, 2025 at 11:33 AM, Patrick Fitzgerald <pfitzgerald@wtlaw.com> wrote:

> Hi Jeremy,
>
> We're moving into a new office, so things have been hectic. We'll get back to you on these shortly (should be tomorrow).
>
> **Patrick J. Fitzgerald (bio)**
>
> WATSTEIN TEREPKA LLP
>
> P: (404) 400-3382
>
> pfitzgerald@wtlaw.com
>
> www.wtlaw.com

---

**From:** Jeremy Glapion <jmg@glapionlaw.com>
**Date:** Monday, May 5, 2025 at 11:38 AM
**To:** Patrick Fitzgerald <pfitzgerald@wtlaw.com>
**Cc:** Ryan Watstein <Ryan@wtlaw.com>, Jeffrey Brown <jeff@jgbrownlaw.com>
**Subject:** Re: Walston v. NRS - Outstanding Issues 5/5/25

[Warning – external]

Hi all —

Reviewed the status report. Good with me to file.

Topics 1, 3, 4, and 5a-c still need to be discussed/addressed (see top email in this chain).

On top of that:

6. I intend to rely on a summary witness in part for class cert. Broadly speaking, they will be synthesizing the various records related to telephone numbers and calls. They will not be rendering an opinion, and I do not intend to put him forward as an expert. I can't find a clear answer on when such witnesses are supposed to be disclosed, but it seems more efficient to handle it during expert discovery rather than now, especially since I can't file the Motion until after that period anyway. **Are you OK with this approach**?

7. I would like to move to amend the class definition this week. I know you asked to see the Motion, but the content of the motion, in part, depends on whether you consent. The main difference is that without consent, I will feel more obligated to more strongly explain the differences between the records available (I've shared my concerns about that as it pertains to possibly resolving later), whereas with consent I can more generally say that the case has focused on AT&T for several months and there's no prejudice because its narrower, you've known about it, and you consent.

8. I will get you an updated deposition notice by Friday.

9. Re authentication of NRS' documents: can we do this for all or most by stipulation? Are there any categories or specific documents where that would be an issue? This is specifically for NRS' directly-produced documents, not VoiceLogic.

Best,

Jeremy

--

**Jeremy M. Glapion**

Partner

Glapion Law Firm
1704 Maxwell Drive
Wall, New Jersey 07719

Tel.: 732-455-9737

On Fri, Apr 18, 2025 at 9:47 PM, Jeremy Glapion <jmg@glapionlaw.com> wrote:

This works. I'll file in a bit (or more likely tomorrow).

--

**Jeremy M. Glapion**

Partner

Glapion Law Firm
1704 Maxwell Drive
Wall, New Jersey 07719

Tel.: 732-455-9737

On Fri, Apr 18, 2025 at 9:32 PM, Patrick Fitzgerald <pfitzgerald@wtlaw.com> wrote:

Jeremy,

Here's our minor tweak.

Pat

**Patrick J. Fitzgerald (bio)**

WATSTEIN TEREPKA LLP

P: (404) 400-3382

pfitzgerald@wtlaw.com

www.wtlaw.com

---

**From:** Jeremy Glapion <jmg@glapionlaw.com>
**Date:** Thursday, April 17, 2025 at 1:23 PM
**To:** Patrick Fitzgerald <pfitzgerald@wtlaw.com>
**Cc:** Ryan Watstein <Ryan@wtlaw.com>, Jeffrey Brown <jeff@jgbrownlaw.com>
**Subject:** Re: Walston v. NRS - Outstanding Issues 4/14/25

[Warning – external]

Pat:

Nice speaking with you earlier.

I'm attaching a draft motion to reset the discovery deadline to May 28 (28 days) to accommodate the mediation. Let me know if you have any changes or if it's good to file.

Otherwise, the only items I asked for prior to mediation are 1) information on the "pickle" and 2) the privilege log updates.

Keep me posted, please.

Best,

Jeremy


--

**Jeremy M. Glapion**

Partner

Glapion Law Firm
1704 Maxwell Drive
Wall, New Jersey 07719

Tel.: 732-455-9737


On Tue, Apr 15, 2025 at 9:48 AM, Jeremy Glapion <jmg@glapionlaw.com> wrote:

> Hi Pat:
>
>
> I am free most of Thursday, with a hard stop at 3 pm.
>
>
> --
>
> **Jeremy M. Glapion**
>
> Partner
>
> Glapion Law Firm
> 1704 Maxwell Drive
> Wall, New Jersey 07719
>
> Tel.: 732-455-9737
>
>
> On Tue, Apr 15, 2025 at 9:32 AM, Patrick Fitzgerald <pfitzgerald@wtlaw.com> wrote:
>
>> Jeremy,

Regarding the privilege log, what's your availability on Thursday? We will follow up on the other items shortly.

**Patrick J. Fitzgerald**

WATSTEIN TEREPKA <sup>LLP</sup>

pfitzgerald@wtlaw.com

www.wtlaw.com

---

**From:** Jeremy Glapion <jmg@glapionlaw.com>
**Sent:** Monday, April 14, 2025 2:48:47 PM
**To:** Ryan Watstein <Ryan@wtlaw.com>; Patrick Fitzgerald <pfitzgerald@wtlaw.com>
**Cc:** Jeffrey Brown <jeff@jgbrownlaw.com>
**Subject:** Walston v. NRS - Outstanding Issues 4/14/25

[Warning – external]

Counsel:

I hope everyone had a good weekend. Wanted to flag some questions and outstanding issues:

1. **Schedule**

   a. I believe it would be efficient to bifurcate expert discovery. Set deadlines for our class expert discovery period in line with my previous email and only revisit merits experts if the class is certified.

2. **30(b)(6) Deposition**

   a. I'm working on a final amended notice that I hope to have you this week.

   b. Are there certain topics that are necessitating more than one witness? If there are minor topics that are

requiring the second witness, maybe there's a way to narrow.

c.   Are you able to disclose who the witnesses will be yet? If not, when will you?

3.  **Documents**

a.   As discussed on the record at Elie's deposition, I would like any documents related to the "pickle" that was settled (see NRS_002023).

4.  **Amendments**

a.   Amendment to RFA 49 (see Jan 7 email) re awareness of VoiceLogic exceeding authority

b.   Amendment to rog responses to explicitly point to your number source identification. Or a separate formal stipulation as to what those are.

5.  **Outstanding questions/issues**

a.   Privilege log - need rule 37 on adequacy of the produced log

b.   Any update on the "missing" numbers?

c.   Asked on March 10: I remember how the customer list can be non-exhaustive (different phone number), but can you remind me how the website opt-in list can be non-exhaustive?

d.   Notice of Affiliates

Anything else? When should we hop on a call for, at minimum, 5(a)?

--



**Jeremy M. Glapion**

Partner

Glapion Law Firm
1704 Maxwell Drive
Wall, New Jersey 07719

Tel.: 732-455-9737